UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

LEON PETERS,[1]

                                        Plaintiff,

v.                                                          9:22-cv-0638
                                                            (DNH/TWD)

ULSTER COUNTY SHERIFFS DEPARTMENT/EMPLOYEES, et al.,

                                        Defendants.

_____

APPEARANCES:                                          OF COUNSEL:

LEON PETERS
*Plaintiff, pro se*
22-R-1965
Orleans Correctional Facility
3531 Gaines Basin Road
Albion, NY 14411

SOKOLOFF STERN LLP                                    KIMBERLY H. LEE, ESQ.
Attorneys for Defendants
P.O. Box 509
63 Washington Street
PO Box 509
Poughkeepsie, NY 12602-0509

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

**<u>REPORT-RECOMMENDATION AND ORDER</u>**

## I.    INTRODUCTION

This matter has been referred for a report and recommendation by the Honorable David

N. Hurd, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule

_____

[1] Plaintiffs Christopher Arrotta and Donovan Holliet, Jr. were terminated from this action. Dkt. No. 14. Since Plaintiff Leon Peters is the only remaining Plaintiff, the Court directs the caption be amended to reflect Leon Peters is the sole remaining Plaintiff.

72.3(c).  Plaintiff Leon Peters commenced this action alleging violations of his rights under the United States Constitution while he was confined at the Ulster County Jail.  *See generally*, Dkt. Nos. 4, 23.  Currently before the Court is a motion to dismiss Plaintiff's amended complaint, filed by Defendants Ulster County Jail and Ulster County Sheriff's Department.  Dkt. No. 44.

## II.    RELEVANT BACKGROUND

### A.  Complaint

Plaintiffs Christopher Arrotta, Leon Peters, and Donovan Holliet, Jr. commenced this action by filing a complaint, along with applications to proceed *in forma pauperis* ("IFP"), with the U.S. District Court for the Southern District of New York on May 31, 2022.  *See* Dkt. Nos. 1-7.  On June 8, 2022, the Hon. Laura Taylor Swain, Chief United States District Judge, transferred the action to this District.  *See* Dkt. No. 8.  By Order dated July 7, 2022, the Hon. Gary L. Sharpe, Senior United States District Judge, denied the Plaintiffs' IFP applications as incomplete and ordered the Plaintiffs to either: (1) pay the Court's filing fee in full; or (2) submit a completed, signed, and certified IFP application.  Dkt. No. 10.  Plaintiff Leon Peters (hereinafter, "Plaintiff") subsequently filed a completed, signed, and certified IFP application.  Dkt. No. 11.

By Order dated September 14, 2022, Judge Sharpe granted Plaintiff's IFP application and conducted a sufficiency review of the complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.  *See* Dkt. No. 14 at 12.[2]  The Court liberally construed the complaint as containing First Amendment claims related to Plaintiff's religious freedoms pursuant to 42 U.S.C. § 1983 ("Section 1983").  *See id*. at 7.

---

[2] Citations refer to the pagination generated by CM/ECF, the Court's electronic filing system. Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

More specifically, the Court first construed the complaint as alleging a violation of Plaintiff's rights under the Free Exercise Clause of the First Amendment, but determined:

> even assuming Peters' religious beliefs were "sincerely held," the complaint lacks any facts establishing that his beliefs were "substantially burdened." The complaint contains vague accusations that Peters' religious requests were denied without specific dates, times, and facts suggesting that any named defendant was personally involved in the decisions to deny Peters' requests. The allegations, without more, fail to plausibly suggest that defendants burdened Peters' right to freely practice his religion.

*Id*. at 9. The Court next explained "[u]nder New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued," and accordingly, dismissed Plaintiff's "claims against the Ulster County Sheriffs Department/Employees and Ulster County Jail Administration/Employees." *Id*. at 10 (internal quotations and citation omitted). However, in deference to Plaintiff's *pro se* status, the Court "construe[d] the claims against the Ulster County Sheriffs Department/Employees and Ulster County Jail Administration/Employees as if they had been brought against Ulster County," and determined the complaint "lack[ed] any facts plausibly suggesting that Ulster County created or enforced a policy of unconstitutional acts or knew of and disregarded any unconstitutional acts perpetrated by individual defendants" such that municipal liability under *Monell* would be proper, and dismissed Plaintiff's claims against Ulster County. *Id*. at 10-11.

Finally, the Court noted while Plaintiff "identified Lieutenants John Does, Sergeants John Does, Corporals John/Jane Does, and Officers John/Jane Does as defendants in the list of parties," such parties were "not referenced anywhere in the body of the complaint or causes of actions," therefore, because Plaintiff had "not pleaded facts suggesting that the aforementioned defendants were personally involved in any conduct that violated [his] constitutional rights, the

complaint fails to state a cognizable claim against them." *Id*. at 11.[3]  Because Plaintiff's claims were dismissed without prejudice, Plaintiff was given thirty days to file an amended complaint. *Id*. at 12.

### B. Amended Complaint

Plaintiff filed an amended complaint on January 3, 2023.  *See generally*, Dkt. No. 23. Plaintiff's amended pleading reiterated his First Amendment claims and included a new cause of action pursuant to the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc-2000cc-5.  *See id*. at 4-8.

By Order dated February 3, 2023, Judge Sharpe accepted the amended complaint for filing and conducted a sufficiency review of the pleading.  *See generally*, Dkt. No. 24.  The Court first determined the new factual allegations in Plaintiff's amended complaint did not cure the deficiencies with respect to his First Amendment claim, as Plaintiff's "general accusations against unidentified 'employees, officers, sergeants, and corporals' without dates, times, places, or references to a specific defendant" were "too vague to provide any sort of notice of a claim against any particular defendant."  *Id*. at 4 (citations omitted).  Further, Plaintiff had not "pleaded facts suggesting that any named defendant was personally involved in any conduct that violated his constitutional rights" and, while the amened pleading contained "new allegations against C.O. Hunt and a 'Deacon/Chaplain,' . . . these individuals are not identified as defendants in the caption or list of parties."  *Id*. at 4-5.  Accordingly, the Court dismissed Plaintiff's First Amendment claims.  *See id*. at 5.  Finally, the Court noted Plaintiff sought only monetary

---

[3] Additionally, Judge Sharpe determined, "[t]he Court need not decide whether Glatt Kosher Foods/Meat Mart and/or Trinity Foods Service were acting under color of state law within the meaning of 42 U.S.C. § 1983 because Peters fails to sufficiently allege a violation of his First Amendment rights."  Dkt. No. 14 at 9, n.5.

damages, and explained the "RLUIPA does not authorize claims for monetary damages,"
therefore, the Court dismissed Plaintiff's RLUIPA claims for failure to state a claim upon which
relief may be granted. *See id*. at 5-6 (internal quotations and citation omitted).

Plaintiff appealed the dismissal of his amended complaint to the Second Circuit Court of
Appeals. *See generally*, Dkt. Nos. 26-27. By Order dated July 27, 2023, the Second Circuit
vacated in part and remanded the District Court's judgment dismissing Plaintiff's amended
complaint. *See* Dkt. No. 28.[4] The Court of Appeals found, with respect to Plaintiff's claims
under the RLUIPA, "the district court did not address whether the Ulster County Jail employees,
as county officials, should be treated as state officials for purposes of state sovereign immunity."
*Id*. at 1 (citations omitted). Next, the Second Circuit concluded "the district court did not address
whether Appellant sufficiently alleged personal involvement under 42 U.S.C. § 1983, or an
official policy or custom under *Monell v. Department of Social Services*, . . . in light of his
assertion that he could identify specific defendants by photograph, and his identification of C.O.
Hunt in the amended complaint." *Id*. at 2 (citations omitted). Additionally, "the district court
did not consider whether Appellant asserted other causes of action, including, but not limited to,
an Establishment Clause claim, an equal protection claim, and other free exercise claims, in
addition to the free exercise claim it recognized." *Id*. (citations omitted). The Court of Appeals
instructed "[o]n remand, the district court should consider all of these issues, as well as any
others that arise, with the benefit of a response from Appellees." *Id*. (citations omitted).

In accordance with the Second Circuit's mandate, Judge Sharpe ordered this case be
reopened for further proceedings and that a response is required with respect to Plaintiff's: "(1)

---

[4] The Court of Appeals first found Plaintiff's appeal of dismissal of his "claims against Glatt
Kosher Foods/Meat Mart and Trinity Food Service lack[ed] an arguable basis either in law or in
fact . . . ." Dkt. No. 28 at 1 (internal quotations and citations omitted).

First Amendment and RLUIPA claims against Ulster County Sheriff's Department/Employees, Ulster County Jail Administration/Employees, and Doe defendants; (2) Establishment Clause claims against Ulster County Sheriff's Department/Employees, Ulster County Jail Administration/Employees, and Doe defendants; and (3) equal protection claims against Ulster County Sheriff's Department/Employees, Ulster County Jail Administration/Employees, and Doe defendants[.]"  Dkt. No. 30 at 2.  Counsel subsequently appeared on behalf of "Ulster County Sheriff's Department" and "Ulster County Jail."  *See* Dkt. Nos. 34-35.  By Text Order dated February 21, 2024, this case was reassigned to Judge Hurd for all further proceedings. Dkt. No. 43.

### C.  Motion to Dismiss

On March 1, 2024, counsel for the Ulster County Sheriff's Department and Ulster County Jail filed a motion to dismiss Plaintiff's amended complaint pursuant to Fed. R. Civ. P. 12(b)(6). *See generally*, Dkt. No. 44.  The Defendants argue dismissal of the amended complaint is warranted because: (1) the Ulster County Sheriff's Department and the Ulster County Jail are merely administrative agencies of the County, therefore, they are not legal entities which can be sued; (2) Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"); (3) RLUIPA does not authorize claims for monetary damages; (4) Plaintiff failed to plead the personal involvement of any defendant in the alleged constitutional deprivations; (5) Plaintiff fails to state a cognizable Free Exercise claim; (6) Plaintiff fails to sufficiently allege an Establishment Clause claim; (7) to the extent the amended complaint is construed as raising a claim against C.O. Hunt, he would be entitled to qualified immunity; and (8) Ulster County is immune from punitive damages.  *See* Dkt. No. 44-6 at 10-18.

Plaintiff filed a response in opposition to the Defendants' motion to dismiss.  *See generally*, Dkt. No. 48.  Plaintiff also filed a motion to appoint counsel.  *See generally*, Dkt. No. 49.  The Defendants submitted a reply in further support of their motion.  *See generally*, Dkt. No. 50.

## III.    LEGAL STANDARD

A defendant may move to dismiss a complaint "for failure to state a claim upon which relief can be granted" under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The motion tests the legal sufficiency of the complaint and whether it conforms to Rule 8(a)(2) of the Federal Rules of Civil Procedure.  To survive a motion to dismiss, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

> Determining whether a complaint states a plausible claim for relief . . . requires the reviewing court to draw on its judicial experience and common sense . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.

*Iqbal*, 556 U.S. at 679 (internal quotations and citations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim that is plausible on its face."  *Id*. at 570.  While Rule 8(a)(2) "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me-accusation."  *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted).  A complaint which "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" does not suffice.  *Id*. (citation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Where a party is proceeding *pro se*, the court is obliged to "read [the *pro se* party's] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (courts remain obligated to construe *pro se* complaints liberally even after *Twombly*). In considering a Rule 12(b)(6) motion, "the court considers the complaint, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (citation and internal quotation marks omitted). Furthermore,

> [t]he mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual allegations are consistent with the allegations of the plaintiff's complaint.

*Robles v. Bleau*, No. 9:07-CV-0464, 2008 WL 4693153, at *6 and n.41 (N.D.N.Y. Oct. 22, 2008) (collecting cases); *see also*, *e.g.*, *Donhauser v. Goord*, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004) (where a *pro se* plaintiff is faced with a motion to dismiss, a court may consider materials outside of the complaint "to the extent they are consistent with the allegations in the complaint."), *vacated in part on other grounds*, 317 F. Supp. 2d 160 (N.D.N.Y. 2004).

## IV.    ANALYSIS

Afforded the most liberal construction, Plaintiff's amended complaint alleges violations of his rights under the First Amendment's Free Exercise and Establishment Clauses, as well as the Fourteenth Amendment's Equal Protection Clause, by: the Ulster County Sheriff's Department; Ulster County Jail; Ulster County; Ulster County Sheriff's Department Lieutenant John Does, Sergeant John Does, Corporal John and Jane Does, and Officer John and Jane Does; as well as Ulster County Jail John and Jane Doe employees, pursuant to the RLUIPA and Section 1983. *See generally*, Dkt. No. 23; *see also*, *e.g.*, *Publicola v. Lomenzo*, 54 F.4th 108, 111 (2d Cir. 2022) (court to liberally construe submissions by *pro se* litigants to raise the strongest arguments they suggest).

### A.  RLUIPA Claims

The RLUIPA provides "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person" is (1) "in furtherance of a compelling governmental interest; and (2) "the least restrictive means of furthering that compelling governmental interest." 42 U.S.C.A. § 2000cc-1(a). However, it is well established that the RLUIPA does not authorize claims for monetary damages against state officers in either their official or individual capacities. *Holland v. Goord*, 758 F.3d 215, 224 (2d Cir. 2014); *Washington v. Gonyea*, 731 F.3d 143, 145-46 (2d Cir. 2013) (citing *Sossamon v. Texas*, 563 U.S. 277, 280 (2011)); *see also*, *e.g.*, *Fox v. Lee*, No. 9:15-CV-0390 (TJM/CFH), 2015 WL 13949048, at *3 (N.D.N.Y. July 17, 2015).

Furthermore, "'[i]n this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility.'" *Shepherd v.*

*Goord*, 662 F.3d 603, 610 (2d Cir. 2011) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d

Cir. 2006)).  As a result, RLUIPA claims against an institution seeking injunctive or declaratory

relief are subject to dismissal where the plaintiff is no longer housed at that institution.  *See*, *e.g.*,

*Trapani v. Pullen*, No. 9:14-CV-00556 (TJM/TWD), 2016 WL 1295137, at *12 (N.D.N.Y. Feb.

18, 2016) (recommending dismissal of the plaintiff's RLUIPA claims, without leave to amend,

"because Plaintiff is no longer housed at Coxsackie, where the alleged violations occurred.")

(citing *Salahuddin*, 467 F.3d at 272), *report and recommendation adopted*, 2016 WL 1060307

(N.D.N.Y. Mar. 15, 2016).

Here, Plaintiff's amended complaint seeks only monetary relief, *see* Dkt. No. 23 at 8, and

he is no longer housed at the Ulster County Jail, where the alleged violations of his rights

occurred, *see* Dkt. No. 40 (indicating, as of January 26, 2024, Plaintiff was housed at Orleans

Correctional Facility).  Therefore, the undersigned recommends dismissal of Plaintiff's claims

under the RLUIPA.  *See id*.; *see also*, *e.g.*, *Jones v. Smith*, No. 9:09-CV-1058 (GLS/ATB), 2015

WL 5750136, at *24 (N.D.N.Y. Sept. 30, 2015).

## B.  Section 1983 Claims

As an initial matter, with respect to Plaintiff's claims against the individual defendants,

"[i]t is well settled that, in order to establish a defendant's individual liability in a suit brought

under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the

alleged constitutional deprivation."  *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir.

2013) (citations omitted); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994).  Thus, "a

Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and

the injuries suffered.'"  *Austin v. Pappas*, No. 1:04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y.

Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)).  Furthermore,

"[d]ismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff." *Bradshaw v. Annucci*, No. 9:23-CV-0602 (MAD/ML), 2023 WL 4744735, at *13 (N.D.N.Y. July 24, 2023) (citing *Cipriani v. Buffardi*, No. 9:06-CV-0889 (GTS/DRH), 2007 WL 607341, at *1 (N.D.N.Y. Feb. 20, 2007)) (additional citation omitted).

Next, with respect to the defendant entities, "[u]nder New York law, a county is a municipal corporation capable of bringing suit and being sued." *Baker v. Willett*, 42 F. Supp. 2d 192, 198 (N.D.N.Y. 1999) (citing N.Y. Gen. Mun. Law § 2). However, "departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued." *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002) (citations omitted); *see also, e.g., Smith v. Oneida Cnty. Sheriff Dep't*, No. 6:24-CV-0687 (GTS/MJK), 2024 WL 3063725, at *2 (N.D.N.Y. June 20, 2024), *report and recommendation adopted sub nom.*, 2024 WL 4799461 (N.D.N.Y. Nov. 15, 2024). Therefore, county sheriff's departments and correctional facilities cannot be sued. *See, e.g., Lawrence v. Shattick, et al.*, No. 8:24-CV-656 (MAD/DJS), 2025 WL 542587, at *5 (N.D.N.Y. Feb. 19, 2025) (explaining, "[b]ecause a sheriff's department does not exist separate and apart from the municipality and does not have its own legal identity, it cannot sue or be sued," and, "[f]or these same reasons, a county correctional facility cannot be sued under Section 1983" and dismissing the plaintiff's causes of action against the St. Lawrence County Correctional Facility and St. Lawrence County Sheriff's Department with prejudice) (internal quotations and citations omitted).

Accordingly, the undersigned recommends the motion to dismiss by Defendants Ulster County Jail and Ulster County Sheriff's Department be granted and Plaintiff's claims against

Ulster County Jail and Ulster County Sheriff's Department be dismissed with prejudice.  In

deference to Plaintiff's *pro se* status, however, the Court construes Plaintiff's constitutional

claims to be alleged against *Ulster County*.  Thus, the undersigned recommends that the County

of Ulster be substituted in place of Defendants Ulster County Jail and Ulster County Sheriff's

Department.  It is further recommended that the Clerk of Court be directed to amend the caption

of this action to replace the Ulster County Jail and the Ulster County Sheriff's Department with

the County of Ulster.  *See generally*, *Davis v. Erie Cnty. Sheriff Dep't*, No. 17-CV-955, 2019

WL 4926289, at *2 (W.D.N.Y. Oct. 7, 2019); *Jones v. Westchester Cnty. Dep't of Corr. Med.

Dep't*, 557 F. Supp. 2d 408, 416 n.4 (S.D.N.Y. 2008).

A municipality such as Ulster County "is liable under section 1983 only if the deprivation

of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of

the municipality."  *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 62 (2d Cir. 2014) (citing

*Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978)).  "The policy or

custom need not be memorialized in a specific rule or regulation," *Kern v. City of Rochester*, 93

F.3d 38, 44 (2d Cir. 1996) (citations omitted), and "may be pronounced or tacit and reflected in

either action or inaction."  *Cash v. Cnty. of Erie*, 654 F.3d 324, 334 (2d Cir. 2011).  Municipal

liability under *Monell* may be established by way of:

> (1) a policy formally adopted and endorsed by the municipality; (2)
> actions taken by policymaking officials that caused the particular
> deprivation alleged; (3) practices by subordinate officials that are
> not expressly authorized but are so widespread and consistent that
> policymakers must have been aware of them; or (4) a failure by
> policymakers to train or supervise that amounts to "deliberate
> indifference" to the rights of those who come into contact with the
> inadequately trained or supervised municipal employees.

*Crawley v. City of Syracuse*, 496 F. Supp. 3d 718, 729 (N.D.N.Y. 2020) (citing *Deferio v. City of

Syracuse*, 770 F. App'x 587, 589 (2d Cir. 2019) (Summary Order)) (additional citation omitted).

"Once a plaintiff has demonstrated the existence of a municipal policy, a plaintiff must then establish a causal connection, or an 'affirmative link,' between the policy and the deprivation of his constitutional rights." *Deferio*, 770 F. App'x at 590 (citing *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985)).

### 1. Free Exercise Clause

The First Amendment states "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I. "Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause." *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). "'Balanced against the constitutional protections afforded prison inmates, including the right to free exercise of religion, [however,] are the interests of prison officials charged with complex duties arising from administration of the penal system.'" *Id.* (quoting *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990)). To state a claim under the Free Exercise Clause, a "prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Salahuddin*, 467 F.3d at 274-75.

Plaintiff's first cause of action alleges he "was denied Hallal meat's and sweet's to fulfill my Islamic observance of Eid" and "was told by the countless employees of the Ulster County Jail that they do not Need to provide or do the wish to provide any allowance for the Muslim religion." Dkt. No. 23 at 4. Plaintiff's second cause of action states "Juma'ah . . . is a sacred day for Muslim's and is to be hold as a congregational prayer . . . not to be prayed separately as individuals" and alleges he "was wrongfully denied Juma'ah Services and was told that Ulster County Jail do not provide Juma'ah services by officers, sergeants, and corpurals." *Id.*

Plaintiff's third cause of action alleges "[w]hile being detain at the Ulster County Jail from April 1, 2021 'to' August 30 2022," he was denied his Muslim "religious diet 'Hallal.'" *Id*. at 5. Plaintiff's fourth cause of action asserts "from April 1, 2021 'to' August 30 2022," he "was wrongfully denied a paid Muslim spiritual leader and was told by countless employees at the Ulster County Jail that there is only going to be Christian and Jewish spiritual leaders at there facility, there is no room nore is there going to be any room for a Muslim spiritual leader and to stop asking cause ain't nothing changing." *Id*. Plaintiff's sixth cause of action concerns a "chaplain cart," as "every week" the Plaintiff "would ask for something to read for my religion which is (Muslim) or why don't the Muslim's have a space on his cart that he bring to the pod's every week for religious reading and worshipping" and "was told that he will look into it but it's not his job . . . ." *Id*. at 7.

   While each of these causes of action implicate Plaintiff's right to exercise his religious beliefs, the claims lack any allegation of personal involvement by any of the individual, *i.e.*, the "Doe" defendants. Because Plaintiff has not alleged any connection between the defendants and these injuries, these allegations fail to state a claim against any of the individual defendants. *See*, *e.g.*, *Austin*, 2008 WL 857528, at *2.

   Plaintiff's seventh cause of action states "while on observance of the Islamic Holy month known as Ramadan at Ulster County Jail, defendants allowed on numerous occassions me . . . to be served food's for consumption that were unclean, impure, and contaminated with foreign object's," and, as a result:

> on April 6, 2022 I was force to fast without food because my breakfast meal came uncook and with three Big Ant's in it and was witness by two people C.O. Macdonald and Col Klepeis who was on f-pod when my ramadan meal was served and with no time to change it and not knowing what will come from the kitchen next I had to fast with nothing to eat[.]

Dkt. No. 23 at 7-8.  Though this claim accuses "defendants" of wrongdoing, because Plaintiff

fails to specify *which* individual defendant, if any, was personally involved in this alleged

violation of his right to free exercise, the cause of action fails to state a claim against any

individual defendant.  *See Ying Li v. City of New York*, 246 F. Supp. 3d 578, 598 (E.D.N.Y.

2017) ("Pleadings that do not differentiate which defendant was involved in the unlawful

conduct are insufficient to state a claim.") (citations omitted); *see also, e.g.*, *Williams v. Leach*,

No. 5:24-CV-0721 (BKS/TWD), 2024 WL 3339881, at *5 (N.D.N.Y. July 8, 2024), *report and

recommendation adopted*, 2024 WL 4291332 (N.D.N.Y. Sept. 25, 2024).

Next, Plaintiff's fifth cause of action alleges "one or more correctional officer's violating

my constitutional rights a[t] the Ulster County Jail."  Dkt. No. 23 at 6.  He states:

> on 4-29-2021 at approximately 3:45 AM the housing officer C.O.
> Hunt Violated my Constitutional first amendment right by
> infringing upon my religious practices by not only mishandling my
> Ramadan meals that are to be Sealed, Blessed and distributed by a
> Muslim, he also place said meal on the stairs, as well as not changed
> his gloves before distributing the meals which is highly unsanitary
> and unhygienic.  When I brought it to his attention and ask for a
> different and propper meal I was yelled at and denied by C.O. Hunt
> . . . denying me my meal to begin my fast, forcing me to fast without
> food until the sun go's down, because it was the month of Ramadan.
> also on April 2, 2022, the first day of Ramadan I receive my meal
> (Ramadan breakfast) way after the sun rising up and way after I have
> to stop eating . . . . and on April 22, 2022 C.O. Hunt work f-pod the
> Ramadan meal arrived at 4:04 AM, I told C.O. Hunt that I do not eat
> the food the facility provide because it is not Hallal.  I was ignored.
> I ask again to be let out my sell to prepare my meal for fast . . . [but
> was not allowed out of his cell early enough, therefore,] I had to fast
> until the sun set with nothing to eat . . . .

*Id*.  While, unlike the aforementioned causes of action, this claim identifies an individual

involved in an alleged deprivation of Plaintiff's constitutional rights, "C.O. Hunt" is not named

as a defendant, *see id*. at 2, therefore, this Court will not treat him as such.  *See, e.g., Alaei v.*

*State Univ. of New York at Albany*, No. 1:21-CV-00377 (BKS/TWD), 2022 WL 4094450, at *2 n.5 ("Stark is not named as a Defendant in this action and the Court does not treat him as such.") (N.D.N.Y. Sept. 7, 2022); *see also* Fed. R. Civ. P. 10.

In deference to his *pro se* status, the undersigned recommends Plaintiff be afforded leave to amend his free exercise claims to cure these deficiencies with respect to the individuals allegedly involved.

Finally, while Plaintiff has not explicitly identified an Ulster County policy underlying the alleged violations of his right to exercise his religious beliefs, when afforded a more liberal construction, the amended complaint suggests a practice by Ulster County subordinates so widespread and consistent that policymakers must have been aware of it. Therefore, the undersigned recommends Plaintiff's *Monell* free exercise claim against Ulster County requires a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion by Ulster County.[5]

### 2. Establishment Clause

"The Establishment Clause guarantees at a minimum that the government may not 'coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which establishes a [state] religion or religious faith, or tends to do so.'" *Muhammad v. City of*

---

[5] Generally, "[e]stablishing the liability of the municipality requires a showing that the plaintiff suffered a tort in violation of federal law committed by the municipal actors [acting in furtherance of the municipality's] custom or policy." *Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013). However, the Second Circuit has also recognized that "constitutional injuries may be found to exist . . . in the absence of individual liability, [where] the injuries complained of are not solely attributable to the actions of named individual defendants." *Barrett v. Orange Cnty. Hum. Rts. Comm'n*, 194 F.3d 341, 350 (2d Cir. 1999) ("[E]ven in situations where the acts or omissions of individual employees do not violate an individual's constitutional rights, 'the combined acts or omissions of several employees acting under a governmental policy or custom may violate' those rights.").

*New York Dep't of Corr.*, 904 F. Supp. 161, 197 (S.D.N.Y. 1995) (quoting *Lee v. Weisman*, 505 U.S. 577, 587 (1992)) (additional quotations and citation omitted). "The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." *Larson v. Valente*, 456 U.S. 228, 244 (1982). "However, in the prison setting, this test is tempered by an inmate's free exercise rights and legitimate penological interests." *Hamilton v. New York State Dep't of Corr. & Cmty. Supervision*, No. 9:18-CV-1312 (MAD/CFH), 2019 WL 2352981, at *14 (N.D.N.Y. June 4, 2019) (citing *Pugh v. Goord*, 571 F. Supp. 2d 477, 494 (S.D.N.Y. 2008)).

Plaintiff's fourth cause of action, regarding the lack of a "full time paid muslim spiritual leader at Ulster County Jail," alleges "establishing Christianity and Jew's as the state's religions at Ulster County Jail[.]" Dkt. No. 23 at 5. As an initial matter, this allegation does not accuse any specific defendant(s) of wrongdoing, therefore, fails to state a claim. *See*, *e.g.*, *Ying Li*, 246 F. Supp. 3d at 598. In any event, such a conclusory accusation of establishing a state religion does not amount to a cognizable Establishment Clause claim.[6]

### 3. Equal Protection Clause

The Fourteenth Amendment's Equal Protection Clause mandates equal treatment under the law. U.S. Const. amend. XIV, § 1. Essential to that protection is the guarantee that similarly-situated persons be treated equally. *See City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). More specifically,

> the Equal Protection Clause "bars the government from selective adverse treatment of individuals compared with other similarly

---

[6] As discussed above and below, to the extent Plaintiff seeks to recover for the defendants' alleged interference with his exercise of his Muslim beliefs, such conduct is properly assessed under the Free Exercise Clause, and, to the extent Plaintiff contends he, as a Muslim individual, was treated differently than similarly situated individuals possessing other religious beliefs, such allegations are properly assessed under the Fourteenth Amendment's Equal Protection Clause.

> situated individuals if such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."

*Vega v. Artus*, 610 F. Supp. 2d 185, 209 (N.D.N.Y. 2009) (quoting *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005)) (additional quotations and citations omitted).

"To prove a violation of the Equal Protection Clause . . . a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination." *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005) (citing *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995)). The plaintiff "also must show that the disparity in treatment cannot survive the appropriate level of scrutiny which, in the prison setting, means that he must demonstrate that his treatment was not 'reasonably related to [any] legitimate penological interests.'" *Id*. (quoting *Shaw v. Murphy*, 532 U.S. 223, 225 (2001)).

In his second cause of action, concerning the denial of Juma'ah services, Plaintiff alleges he "witness Jew's holding mass, Christians having the Sunday church in the Multipurpose room on the teir." Dkt. No. 23 at 4. In connection with his third cause of action, regarding the lack of Hallal diet meals, Plaintiff avers he "was told to Accept the State substituted Kosher," which "show's the states and Ulster County Jail appceptance and favouritism to other religion, with total disregard and Mistreatment for the Muslim religion and the Islamic community." *Id*. at 5. In connection with his fourth cause of action, concerning the lack of a Muslim spiritual leader at the Ulster County Jail, Plaintiff avers he was told "there is only going to be Christian and Jewish Spiritual leaders at there facility . . . ." *Id*. In his seventh cause of action, regarding the lack of Muslim reading materials, Plaintiff states he observed "a chaplain cart with Christian and Jewish Books, phamplet's, prayer beed's, Holy water, Ash, and when any of the Holiday's come around the cart would have the Season's Holiday Card's ect. . . . ." *Id*. at 7.

As discussed above in connection with Plaintiff's Free Exercise claims, these causes of action contain no allegations of personal involvement by any of the individual "Doe" defendants. Accordingly, for the reasons previously discussed, these allegations necessarily fail to state a claim against any of the individual defendants.

However, Plaintiff's allegations that Muslim inmates were denied the ability to conduct and/or attend religious services, receive meals compliant with their religious diet, and access a spiritual leader and religious materials, while similarly situated inmates with other religious beliefs were afforded those same liberties, is sufficient to support a claim of discrimination in violation of the Equal Protection clause. *See*, *e.g.*, *Scott v. Uhler*, No. 9:16-CV-0403 (TJM/CFH), 2018 WL 3130670, at *5 (N.D.N.Y. May 24, 2018), *report and recommendation adopted*, 2018 WL 3130592 (N.D.N.Y. June 25, 2018). A liberal construction of the amended complaint suggests these resulted from a consistent and widespread practice sufficient to support Ulster County's liability under *Monell*. Therefore, the undersigned recommends Plaintiff's Equal Protection clause claim against Ulster County requires a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion by the County.

## V.    MOTION FOR COUNSEL

Finally, Plaintiff has filed a motion to appoint counsel. *See generally*, Dkt. No. 49. Plaintiff argues because he is confined in the Orleans C.F. "RRU," he "do[es] not have access to the law library on a daily basis," and seeks appointment of counsel to "help to better understand" the law and respond to the Defendants. *Id*. at 1.

"A party has no constitutionally guaranteed right to the assistance of counsel in a civil case." *Leftridge v. Connecticut State Trooper Officer No. 1283*, 640 F.3d 62, 68 (2d Cir. 2011)

(citing *United States v. Coven*, 662 F.2d 162, 176 (2d Cir. 1981), *cert. denied*, 456 U.S. 916

(1982)).  Before evaluating a request for appointment of counsel, a party must first demonstrate

that he is unable to obtain counsel through the private sector or public interest firms.  *Cooper v.*

*A. Sargenti Co., Inc.*, 877 F.2d 170, 173-74 (2d Cir. 1989) (citing *Hodge v. Police Officers*, 802

F.2d 58, 61 (2d Cir. 1986)).  Next, courts cannot utilize a bright-line test in determining whether

counsel should be appointed on behalf of an indigent party.  *Hendricks v. Coughlin*, 114 F.3d

390, 392-93 (2d Cir. 1997).  Instead, a number of factors must be carefully considered by the

Court in ruling upon such a motion.

As a threshold matter, the Court should ascertain whether the indigent's claims seem

likely to be of substance.  *See Leftridge*, 640 F.3d at 69.  If the court finds the claims have

substance, the court should then consider:

> the indigent's ability to investigate the crucial facts, whether
> conflicting evidence implicating the need for cross-examination will
> be the major proof presented to the fact finder, the indigent's ability
> to present the case, the complexity of the legal issues and any special
> reason in th[e] case why appointment of counsel would be more
> likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994) (quoting *Hodge*, 802

F.2d at 61-62).  This is not to say that all, or indeed any, of these factors are controlling in a

particular case.  Rather, each case must be decided on its own facts.  *Velasquez v. O'Keefe*, 899

F. Supp. 972, 974 (N.D.N.Y. 1995) (citing *Hodge*, 802 F.2d at 61).

For purposes of Plaintiff's application, the Court will assume, without deciding, that the

case may be of substance.  As an initial matter, Plaintiff's motion fails to make the requisite

showing that he has been unable to obtain counsel through the private sector or public interest

firms.  Furthermore, a review of the issues in dispute are not overly complex.  This case is early

in the litigation process, however, it appears, to date, Plaintiff has been able to effectively litigate

this action.  Additionally, while it is possible there will be conflicting evidence implicating the need for cross-examination at the time of the trial of this matter, as is the case in many actions brought by *pro se* litigants, "this factor alone is not determinative of a motion for appointment of counsel." *Velasquez*, 899 F. Supp. at 974.  The undersigned is unaware of any special reason why appointment of counsel *at this time* would be more likely to lead to a just determination of this litigation.  Finally, it is highly probable that this Court will appoint trial counsel at the final pretrial conference if this case survives dispositive motions.

Accordingly, appointment of counsel at this time is not warranted.  *See*, *e.g.*, *Israel v. City of Syracuse*, No. 5:21-CV-0915 (DNH/ML), 2021 WL 7161914, at *9 (N.D.N.Y. Dec. 9, 2021), *report and recommendation adopted*, 2022 WL 18587 (N.D.N.Y. Jan. 3, 2022); *Lawrence*, 2025 WL 542587, at *9 (denying the plaintiff's request to appoint counsel "particularly in light of the early stage of this action.") (citing *Gervasio v. Diaz*, No. 9:20-CV-0346 (TJM/DJS), 2020 WL 3496423, at *2 (N.D.N.Y. June 29, 2020)).

## VI.    CONCLUSION

After carefully reviewing the record, the parties' submissions, and the applicable law, and for the reasons stated herein, it is hereby

**RECOMMENDED** that Defendants' motion to dismiss (Dkt. No. 44) be **GRANTED** and that Defendants Ulster County Sheriff's Department and Ulster County Jail be terminated from this action; and it is further

**RECOMMENDED** that the County of Ulster be substituted in place of Defendants Ulster County Jail and Ulster County Sheriff's Department; and it is further

**RECOMMENDED** that the Court require an answer to Plaintiff's amended complaint, to the extent it asserts the following claims: (1) First Amendment Free Exercise claim against

Ulster County; and (2) Fourteenth Amendment Equal Protection claim against Ulster County; and it is further

**RECOMMENDED** that Plaintiff be afforded leave to amend the operative pleading, to the extent he seeks to assert a First Amendment Free Exercise claim against any individual defendant, pursuant to 42 U.S.C. § 1983; and it is further

**RECOMMENDED** that Plaintiff's motion to appoint counsel (Dkt. No. 49) be **DENIED** without prejudice; and it is further

**ORDERED** that the Clerk provide to Plaintiff a copy of this Report-Recommendation and Order, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.[7]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**IT IS SO ORDERED.**

---

[7] If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

Dated: February 28, 2025
        Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

2008 WL 4693153

Only the Westlaw citation is currently available.

United States District Court,

N.D. New York.

Raymond ROBLES, Plaintiff,

v.

K. BLEAU, Correctional Officer, Riverview C.F.; Peacock, Correctional Sergeant, Riverview C.F.;

R. Varkiar, Senior Counsel, Riverview C.F.; and New York State Dep't of Corr. Servs., Defendants.

No. 9:07-CV-0464.

|

Oct. 22, 2008.

**Attorneys and Law Firms**

Raymond Robles, Cape Vincent, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General for the State of New York, David L. Cochran, Esq., of Counsel, New York, NY, for Defendants.

**DECISION & ORDER**

THOMAS J. McAVOY, Senior District Judge.

**\*1** This *pro se* civil rights action, brought pursuant to 42 U.S.C. § 1983, was referred to the Hon. George H. Lowe, United States Magistrate Judge, for a Report-Recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).

The Report-Recommendation dated September 12, 2008 recommended that Defendants motion to dismiss be granted in part and denied in part. Specifically, Judge Lowe recommended that Plaintiff's Fourteenth Amendment procedural due process claim against Defendant Varkiar regarding his disciplinary hearing be dismissed if, within thirty (30) days from the filing of this Final Order, Plaintiff does not file an Amended Complaint that successfully states a Fourteenth Amendment procedural due process claim. It was recommended that Plaintiff's remaining claims be dismissed with prejudice.

Plaintiff filed objections to the Report-Recommendation, essentially raising the same arguments presented to the Magistrate Judge.

When objections to a magistrate judge's Report-Recommendation are lodged, the Court makes a *"de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *See* 28 U.S.C. § 636(b)(1). After such a review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

Having reviewed the record *de novo* and having considered the issues raised in the Plaintiff's objections, this Court has determined to accept and adopt the recommendation of Magistrate Judge Lowe for the reasons stated in the Report-Recommendation.

It is therefore

**ORDERED** that Defendants motion to dismiss be **GRANTED** in part and **DENIED** in part.

**IT IS SO ORDERED.**

*REPORT-RECOMMENDATION*

GEORGE H. LOWE, United States Magistrate Judge.

This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been referred to me by the Honorable Thomas J. McAvoy, Senior United States District Judge, for Report and Recommendation with regard to any dispositive motions filed, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Generally, in his Complaint, Raymond Robles ("Plaintiff") alleges that three employees of the New York State Department of Correctional Services ("DOCS"), as well as DOCS itself, violated his rights under the Eighth and Fourteenth Amendments when they (1) required him to submit to a random urinalysis test when they knew he was taking a medication that would prevent him from providing a urine sample, and (2) charged, convicted, and punished him with eighty-seven days in a Special Housing Unit for refusing to provide a urine sample. (*See generally* Dkt. No. 1 [Plf.'s Compl.].) Currently pending before the Court is Defendants' motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). (Dkt. No. 16.) For the reasons that follow, I recommend that Defendants' motion be granted in part and denied in part.

**I. BACKGROUND**

**A. Summary of Plaintiff's Complaint**

**\*2** As Defendants correctly observe in their Memorandum of Law, Plaintiff's Complaint-which describes the events giving rise to his claims in two brief paragraphs without identifying any role played by Defendants in those events-is hardly a model of *fair notice* under Fed.R.Civ.P. 8(a)(2). (Dkt. No. 1, ¶¶ 6-7 [Plf.'s Compl.].) However, as explained below in Part II of this Report-Recommendation, the mandate to read the papers of *pro se* civil rights litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint. [1] Here, I find that the factual allegations contained in Plaintiff's Response Affidavit are consistent with the factual allegations of his Complaint. As a result, in construing Plaintiff's Complaint, I will consider his Response Affidavit as effectively amending the factual allegations of his Complaint. Thus construed, Plaintiff's Complaint alleges as follows:

1. On November 6, 2006, at about 7:28 a.m., Plaintiff was directed to report to the drug testing center at Riverview C.F.; [2]

2. Upon arriving at the drug testing center, Plaintiff was informed by Correctional Officer K. Bleau ("Defendant Bleau") that he had been randomly selected to submit to urinalysis drug testing; [3]

3. Defendant Bleau asked Plaintiff if he would provide a urine sample, and Plaintiff responded yes; [4]

4. Defendant Bleau then asked Plaintiff if he was taking any medications, and Plaintiff explained that (1) yes, he was taking Flomax and Omeprazole due to a prostate condition and a stomach problem, and (2) "d[ue] to the medication [s]" and the fact that he had used the bathroom at approximately 7:10 a.m. that morning, he would need more water in order to urinate; [5]

5. As Plaintiff was explaining these facts to Defendant Bleau, Defendant Bleau became upset and walked away from Plaintiff; [6]

2008 WL 4693153

6. When he returned, Defendant Bleau then informed Plaintiff that, pursuant to DOCS Directive 4937, Plaintiff had three hours provide a urine sample or he would be considered to be refusing to provide the urine sample; [7]

7. Defendant Bleau then gave Plaintiff a cup of water at approximately 7:30 a.m., and a second cup of water at approximately 9:30 a.m., but did not give him a third cup of water at approximately 8:30 a.m., as required by Part D.4. of DOCS Directive 4937; [8]

8. At approximately 10:30 a.m., Plaintiff was still unable to provide a urine sample; [9]

9. At that time, Defendant Bleau notified Correctional Sergeant Peacock ("Defendant Peacock") that Plaintiff was refusing a direct order to provide a urine sample; [10]

10. When Plaintiff tried to explain to Defendant Peacock that his medical condition prevented him from providing the urine sample, Defendant Peacock responded, "Shut up and put [your] hands behind [your] back"; [11]

**\*3** 11. Both Defendants Bleau and Peacock failed to investigate or inquire as to why Plaintiff had been prescribed Flomax and Omeprazole, or what the potential side effects of those drugs were, although that information was readily obtainable from medical staff at Riverview C.F.; [12]

12. Instead, Defendants Bleau and/or Peacock escorted Plaintiff to the Riverview C.F. Special Housing Unit ("S.H.U."); [13]

13. On November 7, 2006, at about 8:55 a.m., while Plaintiff was in S.H.U., he was served with a copy of a misbehavior report authored by Defendant Bleau, charging him with (1) failing to comply with the urinalysis testing procedure, and (2) refusing a direct order to provide a urine sample; [14]

14. On November 10, 2006, Senior Correctional Counselor R. Varkiar conducted Plaintiff's disciplinary hearing on the misbehavior report; [15]

15. At the hearing, when Plaintiff entered a plea of "Not guilty, with an explanation," Defendant Varkiar gave Plaintiff "an opportunity to explain [him] self"; [16]

16. Plaintiff explained that he had a medical condition that prevented him from providing a urine sample, that he had attempted to inform Defendant Bleau of this medical condition (but Defendant Bleau walked away from Plaintiff), and that he had attempted to inform Defendant Peacock of this medical condition (but Defendant Peacock told Plaintiff to "[s]hut up"); [17]

17. Defendant Varkiar then made a telephone call; when he was done with the call, he told Plaintiff that (1) he had called the medical unit at Riverview C.F. to ask whether or not the medication that Plaintiff was taking would prevent him from urinating, and (2) someone in the medical unit had responded that no, the medication should not prevent Plaintiff from urinating; [18]

18. Plaintiff then attempted to explain to Defendant Varkiar *why* he was taking one of the medications, specifically, to remedy a prostate problem that itself interfered with his ability to urinate; [19]

19. However, Defendant Varkiar failed to call back the person in the medical unit at Riverview C.F. and request that he or she again answer the question he had posed before, taking into account Plaintiff's prostate condition as shown by his medical records; [20]

**Robles v. Bleau, Not Reported in F.Supp.2d (2008)**
Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 27 of 353

2008 WL 4693153

20. As a result, Defendant Varkiar found Plaintiff guilty of both disciplinary charges, and sentenced him to ninety (90) days in S.H.U ., with a corresponding loss of privileges; [21]

21. At the conclusion of the hearing, Plaintiff received a written copy of the hearing disposition, which stated that the evidence relied on included (1) the statements in the written misbehavior report of Defendant Bleau (which Defendant Varkiar stated were credible), and (2) Plaintiff's own hearing testimony (which Defendant Varkiar stated was not credible); [22]

22. On November 27, 2006, Plaintiff appealed his conviction to DOCS Director of Special Housing, Donald Selsky, who reversed the conviction on January 19, 2007; [23] and

**\*4** 23. On February 1, 2007, Plaintiff was finally released from S.H.U., after spending eighty-seven (87) days there. [24]

It should be noted that, in addition to asserting constitutional claims against Defendants Bleau, Peacock, and Varkiar in their individual or personal capacities, Plaintiff's Complaint asserts a constitutional claim also against DOCS itself. It should also be noted that, as relief for Defendants' actions, Plaintiff requests money damages but no injunctive relief. [25]

#### B. Summary of Grounds in Support of Defendants' Motion

Generally, Defendants' motion to dismiss for failure to state a claim is premised on two grounds: (1) Plaintiff's claim against DOCS is barred by the Eleventh Amendment; and (2) the allegations of Plaintiff's Complaint are too lacking in detail to give Defendants *fair notice* under Fed.R.Civ.P. 8(a)(2). (Dkt. No. 16, Part 2, at 2-5 [Defs.' Memo. of Law].)

## II. LEGAL STANDARD GOVERNING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

Under Fed.R.Civ.P. 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). It has long been understood that a defendant may base such a motion on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2); [26] or (2) a challenge to the legal cognizability of the claim. [27]

Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2) [emphasis added]. By requiring this "showing," Fed.R.Civ.P. 8(a)(2) requires that the pleading contain a short and plain statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." [28] The main purpose of this rule is to "facilitate a proper decision on the merits." [29] A complaint that fails to comply with this rule "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims." [30]

The Supreme Court has long characterized this pleading requirement under Fed.R.Civ.P. 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement. [31] However, it is well established that even this liberal notice pleading standard "has its limits." [32] As a result, several Supreme Court decisions, and Second Circuit decisions, exist holding that a pleading has failed to meet this liberal notice pleading standard. [33]

Most notably, in the recent decision of *Bell Atlantic Corporation v. Twombly*, the Supreme Court, in reversing an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1, "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 550 U.S. 544, ---- - ----, 127 S.Ct. 1955, 1968-69, 167 L.Ed.2d 929 (2007). [34] Rather than

**WESTLAW**    © 2025 Thomson Reuters. No claim to original U.S. Government Works.    4

turning on the *conceivability* of an actionable claim, the Court clarified, the Fed.R.Civ.P. 8 "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965-74.

**\*5** More specifically, the Court reasoned that, by requiring that a pleading "show[ ] that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2) requires that the pleading give the defendant "fair notice" of (1) the nature of the claim and (2) the "grounds" on which the claim rests. *Id.* at 1965, n. 3 [citation omitted]. While this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading contain at least "some factual allegation[s]." *Id.* [citations omitted]. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]" assuming, of course, that all the allegations in the complaint are true. *Id.* at 1965 [citations omitted]. What this means, on a practical level, is that there must be "plausible grounds to infer [actionable conduct]," or, in other words, "enough fact to raise a reasonable expectation that discovery will reveal evidence of [actionable conduct]." *Id.*

As have other Circuits, the Second Circuit has repeatedly recognized that the clarified plausibility standard that was articulated by the Supreme Court in *Twombly* governs *all* claims, not merely antitrust claims brought under 15 U.S.C. § 1 (as were the claims in *Twombly* ). [35] The Second Circuit has also recognized that this *plausibility* standard governs claims brought even by *pro se* litigants (although the plausibility of those claims is be assessed generously, in light of the special solicitude normally afforded *pro se* litigants). [36]

It should be emphasized that Fed.R.Civ.P. 8's plausibly standard, explained in *Twombly,* was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus,* in which the Court stated, "Specific facts are not necessary" to successfully state a claim under Fed.R.Civ.P. 8(a)(2). *Erickson v. Pardus,* 551 U.S. 89, ----, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) [citation omitted]. That statement was merely an abbreviation of the often-repeated point of law-first offered in *Conley* and repeated in *Twombly*-that a pleading need not "set out in detail the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly,* 127 S.Ct. 1965, n. 3 (citing *Conley v. Gibson,* 355 U.S. 41, 47 [1957] ). That statement in no way meant that all pleadings may achieve the requirement of giving a defendant "fair notice" of the nature of the nature of the claim and the "grounds" on which the claim rests without ever having to allege any facts whatsoever. [37] There must still be enough fact alleged to raise a right to relief above the speculative level to a plausible level, so that the defendant may know what the claims are and the grounds on which they rest (in order to shape a defense).

Having said all of that, it should also be emphasized that, "[i]n reviewing a complaint for dismissal under Fed.R.Civ.P. 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." [38] "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se.*" [39] In other words, as stated above, while all pleadings are to be construed liberally under Fed.R.Civ.P. 8(e), *pro se* civil rights pleadings are to be construed with an *extra* degree of liberality . [40]

**\*6** For example, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint. [41] Moreover, "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest." [42] Furthermore, when addressing a *pro se* complaint, generally a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." [43] Of course, an opportunity to amend is not required where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it." [44] In addition, granting a *pro se* plaintiff an opportunity to amend is not required where the plaintiff has already been given a chance to amend his pleading. [45]

2008 WL 4693153

However, while this special leniency may somewhat loosen the procedural rules governing the form of pleadings (as the Second Circuit very recently observed), [46] it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed.R.Civ.P. 8, 10 and 12. [47] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.R.Civ.P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow. [48] Stated more plainly, when a plaintiff is proceeding *pro se,* "all normal rules of pleading are not absolutely suspended." [49]

## III. ANALYSIS

### A. Whether Plaintiff's Claim Against DOCS is Barred by the Eleventh Amendment

For the reasons offered by Defendants in their Memorandum of Law, I agree with them that Plaintiff's constitutional claims against Defendant DOCS are barred by the Eleventh Amendment to the United States Constitution. (Dkt. No. 16, Part 2, at 2-3 [Defs.' Mem. of Law].) In the interest of brevity, I will not repeat the well-established points of law that they correctly cite in support of their argument. Instead, I will only add three points that Defendants do *not* make in their succinct argument: (1) where it has been successfully demonstrated that a defendant is entitled to sovereign immunity under the Eleventh Amendment, the federal court lacks subject matter jurisdiction over the case (or claim), and "the case [or claim] *must* be stricken from the docket"; [50] (2) Plaintiff's civil rights claims against Defendant DOCS (an entity) are barred also by the express language of 42 U.S.C. § 1983, which confers liability upon only any *"person* who ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws ...." " [51] ; and (3) because the defect with this claim is substantive rather than merely formal, better pleading will not cure it, and thus it should be dismissed with prejudice. [52]

**\*7** For all of these reasons, I recommend that the Court dismiss with prejudice Plaintiff's claims against Defendant DOCS.

It should be noted that, in addition to barring Plaintiff's constitutional claims against Defendant DOCS, the Eleventh Amendment would also bar any claim by Plaintiff against Defendants Bleau, Peacock and Varkiar in their official capacities. [53] However, because I do not even liberally construe Plaintiff's Complaint (and Response Affidavit) as asserting such claims, no need exists to recommend the dismissal of those claims. (*See generally* Dkt. No 1, 17.)

### B. Whether the Allegations of Plaintiff's Complaint Are Too Lacking in Detail to Give Defendants *Fair Notice* under Fed.R.Civ.P. 8(a)(2)

For the reasons offered by Defendants in their Memorandum of Law, I agree with them that Plaintiff's Complaint-when considered alone-is too lacking in detail to give Defendants the fair notice that is required under Fed.R.Civ.P. 8(a)(2). (Dkt. No. 16, Part 2, at 3-5 [Defs.' Mem. of Law].) However, as explained above in Part II of this Report-Recommendation, the mandate to read the papers of *pro se* civil rights litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint. [54] Here, when construing Plaintiff's Complaint together with his Response Affidavit, I find that Plaintiff's allegations *are* detailed enough to give Defendants the fair notice that is required under Fed.R.Civ.P. 8(a)(2). *See, supra,* Part I.A. of this Report-Recommendation.

However, this does not end the Court's analysis of Plaintiff's Complaint because, even where a defendant has not advanced a certain argument on a motion to dismiss in a *pro se* prisoner civil rights case, a district court may (and, indeed, has a duty to) *sua sponte* address whether the pleading in such a case has successfully stated a claim upon which relief may be granted. [55] Here, Plaintiff's Complaint is plagued by several defects (some substantive and some formal) [56] that simply cannot be overlooked.

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 30 of 353
**Robles v. Bleau, Not Reported in F.Supp.2d (2008)**
2008 WL 4693153

### C. Whether Plaintiff Has Stated an Actionable Claim Against Defendants Bleau, Peacock and Varkiar Arising Out of Plaintiff's Being Required to Provide a Urine Sample Given Their Knowledge of His Medications and/or Medical Condition

Among Plaintiff's claims is a claim that "[i]t is neither lawful nor [ ] reasonable to expect an Inmate to perform a bodily function on command when you know or should know that his medical condition and prescribed treatment plan indicate that when he urinates[,] and when he [can] not[,] can be beyond his control." (Dkt. No. 17, at 5 [Plf.'s Response Affid.].) I liberally construe this claim as one of harassment or perhaps inadequate-prison-conditions under the Eighth Amendment. (To the extent that this allegation is also used to support a procedural due process claim under the Fourteenth Amendment, I address that claim below in Parts III.D. and III.E. of this Report-Recommendation.)

**\*8**  The problem with Plaintiff's Eighth Amendment claim is that the rather detailed facts alleged by him in support of that claim do not suggest in any way that any of the three individual Defendants were acting with the sort of mental state that is required for them to incur liability under the Eighth Amendment, namely, *deliberate indifference.* Deliberate indifference is a state of mind akin to *criminal recklessness,* which involves *knowing* of and disregarding an excessive risk to inmate health or safety. [57] Here, Plaintiff himself alleges that the three individual Defendants did not in fact *understand* that he could not urinate due to his prostate condition. Indeed, as he was trying to explain his medical condition to Defendants, (1) Defendant Bleau became angry and "walked away" from Plaintiff, (2) Defendant Peacock told Plaintiff to "[s]hut up," and (3) Defendant Varkiar failed to call back the person in the medical unit of Riverview C.F. and ask him or her to report (to Varkiar) the impact of Plaintiff's prostate condition on his ability to urinate. *See, supra,* Part I.A. of this Report-Recommendation. [58]

At its heart, Plaintiff's Eighth Amendment claim alleges that the three individual Defendants *should have known* that he could not urinate during the time in question due to his enlarged prostate, but that they did not know that fact because they *failed to investigate* the nature and effects of his prostate condition. In other words, his Eighth Amendment claim is one of *negligence.* Such a claim is simply not actionable under the Eighth Amendment (or any constitutional provision). As is often observed, "[D]eliberate indifference describes a state of mind more blameworthy than negligence." [59] Finally, because the defect with this detailed claim is substantive rather than merely formal, I find that better pleading will not cure it. [60]

For all of these reasons, I recommend that the Court dismiss with prejudice Plaintiff's Eighth Amendment claim.

### D. Whether Plaintiff Has Stated an Actionable Claim Against Defendants Bleau and Peacock Arising Out of His Receipt of an Erroneous or False Misbehavior Report

It is well established that "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schneider,* 105 F.3d 857, 862 (2d Cir.1997) (citing *Freeman v. Rideout,* 808 F.2d 949, 951 [2d Cir.1986] ). [61] Rather, the only way that false accusations contained in a misbehavior report can rise to the level of a constitutional violation is when there is "more, such as retaliation against the prisoner for exercising a constitutional right." *Boddie,* 105 F.3d at 862; *accord, Murray v. Pataki,* 03-CV-1263, 2007 U.S. Dist. LEXIS 26959, at \*26, 2007 WL 965345 (N.D.N.Y. March 5, 2007) (Treece, M.J.) [citations omitted].

Here, Plaintiff alleges no actionable conduct regarding his being issued the misbehavior report in question, such as retaliation against him for exercising a constitutional right. *See, supra,* Part I.A. of this Report-Recommendation. Moreover, because the defect with this detailed claim is substantive rather than merely formal, I find that better pleading will not cure it. [62]

**\*9**  For these reasons, I recommend that the Court dismiss with prejudice Plaintiff's Fourteenth Amendment false-misbehavior-report claim.

### E. Whether Plaintiff Has Stated an Actionable Claim Against Defendant Varkiar Arising Out of Plaintiff's Erroneous or Unjustified Disciplinary Conviction

"[Courts] examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State ...; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient .... " *Kentucky Dept. of Corr. v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989). With regard to the first question, in 1995, the Supreme Court held in *Sandin v. Connor* that liberty interests protected by the Fourteenth Amendment's Due Process Clause will not arise from the use of mandatory language of a particular state law or regulation, but "will generally be limited to freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Connor,* 515 U.S. 472, 483-484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

Here, Plaintiff alleges that the disciplinary hearing conducted by Defendant Varkiar resulted in a sentence of eighty-seven (87) days in the Riverview C.F. S.H.U. with a corresponding loss of privileges. *See, supra,* Part I.A. of this Report-Recommendation. Numerous district courts in this Circuit have issued well-reasoned decisions finding no atypical and significant hardship experienced by inmates who served sentences in S.H.U. of far more than the eighty-seven (87) days alleged here-even where the conditions of confinement in the S.H.U. were, to varying degrees, more restrictive than those in the prison's general population. [63] As a result, I find that Plaintiff has not alleged facts plausibly suggesting that he possessed, during the disciplinary hearing, a liberty interest that was protected by the Fourteenth Amendment.

However, such a finding leads only to a recommendation that this claim be dismissed *without* prejudice. This is because it is conceivable to me that Plaintiff's Complaint and Response Affidavit-which are silent with regard to the conditions of confinement he experienced in the Riverview C.F. S.H.U.-may be amended so as to allege facts plausibly suggesting that those conditions were so restrictive as to impose on Plaintiff an *atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life* (thus conferring on him a protected liberty interest under the Fourteenth Amendment).

I should also point out that, even assuming (for the sake of argument) that Plaintiff possessed a protected liberty interest with regard to his disciplinary hearing, I find that he has alleged facts plausibly suggesting that he was, in fact, given all the process that he was due under the circumstances. Specifically, Plaintiff alleges that he was given the following: (1) timely notice of the misbehavior report: (2) an "opportunity to explain [him]self" at his disciplinary hearing; (3) a written disciplinary hearing disposition; (4) a disciplinary hearing disposition that was based on at least some evidence (e.g., his own hearing testimony, which Defendant Varkiar found to be not credible); and (5) an opportunity to appeal the disciplinary hearing disposition (which he did so successfully). *See, supra,* Part I.A. of this Report-Recommendation.

**\*10** Of course, the defect that Plaintiff alleges occurred at his disciplinary hearing was Defendant Varkiar's failure to use the telephone to call back the person in the medical unit at Riverview C .F. and request that he or she again answer the question of whether Plaintiff was physically unable to urinate, taking into account his prostate condition as shown by his medical records. *Id.* Generally, it is not the duty of an impartial hearing officer to conduct an investigation of the merit of the disciplinary charges against an inmate; rather, the duty of a hearing officer is merely to review the evidence presented to him at the disciplinary hearing, and in *certain circumstances* identify defense witnesses for the inmate. [64] Here, I find that Plaintiff has alleged no circumstances conferring on Defendant Varkiar a duty to call back the medical unit at Riverview C.F. For example, I find that Plaintiff's Complaint and Response Affidavit are devoid of any allegation that, at his disciplinary hearing, he requested and was denied an adjournment of the hearing so that, with the help of a legal assistant, he could obtain his medical records and call as a witness a member of the medical unit, in order that he himself could introduce testimony that his prostate condition prevented him from urinating during the time in question. *See, supra,* Part I.A. of this Report-Recommendation. However, again, such a finding leads only to a recommendation that this claim be dismissed *without* prejudice, because it is conceivable to me that Plaintiff's Complaint and Response Affidavit may be amended to allege facts plausibly suggesting that, at his disciplinary hearing, he made, and was denied, such a request.

For these reasons, I recommend that the Court dismiss Plaintiff's Fourteenth Amendment procedural due process claim regarding his disciplinary hearing if, within thirty (30) days from the date of the Court's final Order on this Report-Recommendation, Plaintiff does not file an Amended Complaint that successfully states a Fourteenth Amendment procedural due process claim regarding his disciplinary hearing.

Finally, two points bear mentioning. First, to the extent that Plaintiff is attempting to allege that his procedural due process rights were violated at his disciplinary hearing also because Defendant Bleau violated Part D.4. of DOCS Directive 4937 by giving Plaintiff only two cups of water during the three-hour period in question, that allegation is not actionable under the circumstances. Section 1983 provides, in pertinent part, "Every person who ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by *the Constitution and laws,* shall be liable to the party injured ...." 42 U.S.C. § 1983 [emphasis added]. The term "the Constitution and laws" refers to the United States Constitution and *federal* laws. [65] A violation of a state law or regulation, *in and of itself,* does not give rise to liability under 42 U.S.C. § 1983. [66] Furthermore, the violation of a DOCS Directive, alone, is not even a violation of New York State law or regulation; [67] this is because a DOCS Directive is "merely a system the [DOCS] Commissioner has established to assist him in exercising his discretion," which he retains, despite any violation of that Directive. [68]

**\*11** Second, in making the above recommendation (that Plaintiff be required to file an Amended Complaint that successfully states a Fourteenth Amendment procedural due process claim regarding his disciplinary hearing, upon penalty of dismissal), I am in no way "issuing specific instructions [to Plaintiff] mandating the content and format of the putative amended complaint"-instructions that the Second Circuit recently found erroneous in the case of *Sealed Plaintiff v. Sealed Defendant # 1,* No. 06-1590, 2008 WL 3294864, at \*6 (2d Cir. Aug.12, 2008). Rather, I am merely reporting my finding that Plaintiff's current Fourteenth Amendment procedural due process claim regarding his disciplinary hearing fails to state a claim upon which relief might be granted, as pleaded.

**ACCORDINGLY,** it is

**RECOMMENDED** that Defendants' motion to dismiss for failure to state a claim (Dkt. No. 16) be ***GRANTED* in part** and ***DENIED* in part** in the following respects:

(1) Plaintiff's Fourteenth Amendment procedural due process claim against Defendant Varkiar regarding his disciplinary hearing be ***DISMISSED*** if, within thirty (30) days from the date of the Court's final Order on this Report-Recommendation, Plaintiff does not file an Amended Complaint that successfully states a Fourteenth Amendment procedural due process claim regarding his disciplinary hearing; and

(2) The other claims asserted in Plaintiff's Complaint (as effectively amended by his Response Affidavit) be ***DISMISSED* with prejudice,** and without condition.

**ANY OBJECTIONS to this Report-Recommendation must be filed with the Clerk of this Court within TEN (10) WORKING DAYS, PLUS THREE (3) CALENDAR DAYS from the date of this Report-Recommendation (unless the third calendar day is a legal holiday, in which case add a fourth calendar day).** *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); N.D.N.Y. L.R. 72.1(c); Fed.R.Civ.P. 6(a)(2), (d).

**BE ADVISED that the District Court, on** *de novo* **review, will ordinarily refuse to consider arguments, case law and/or evidentiary material that could have been, but was not, presented to the Magistrate Judge in the first instance.** [69]

2008 WL 4693153

**BE ALSO ADVISED that the failure to file timely objections to this Report-Recommendation will PRECLUDE LATER APPELLATE REVIEW of any Order of judgment that will be entered.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of H.H.S.,* 892 F.2d 15 [2d Cir.1989] ).

30    *Gonzales v. Wing,* 167 F.R.D. 352, 355 (N.D.N.Y.1996) (McAvoy, J.), *aff'd,* 113 F.3d 1229 (2d Cir.1997) (unpublished table opinion), *accord, Hudson v. Artuz,* 95-CV-4768, 1998 WL 832708, at *2 (S.D.N.Y. Nov.30, 1998), *Flores v. Bessereau,* 98-CV-0293, 1998 WL 315087, at *1 (N.D.N.Y. June 8, 1998) (Pooler, J .). Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history. *See, e.g., Photopaint Technol., LLC v. Smartlens Corp.,* 335 F.3d 152, 156 (2d Cir.2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.,* 104 F.3d 355 [2d Cir.1996] ).

1    *See, infra,* note 41 of this Report-Recommendation (citing cases).

2    (Dkt. No. 17, at 4 [Plf.'s Response Affid.].)

3    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 4 [Plf.'s Response Affid.].)

4    (Dkt. No. 17, at 4 [Plf.'s Response Affid.]; Dkt. No. 17, at 8 [Ex. 1 to Plf.'s Response Affid., attaching completed form entitled, "Request for Urinalysis Test"].)

5    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 4 [Plf.'s Response Affid.]; Dkt. No. 17, at 8 [Ex. 1 to Plf.'s Response Affid., attaching completed form entitled, "Request for Urinalysis Test"]; Dkt. No. 17, at 14 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006].)

6    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 14 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006].)

7    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 4 [Plf.'s Response Affid.]; Dkt. No. 17, at 10 [Ex. 3 to Plf.'s Response Affid ., attaching page from DOCS Directive 4937].)

8    (Dkt. No. 1, ¶ 7 [Plf.'s Compl.]; Dkt. No. 17, at 4, 5 [Plf.'s Response Affid.]; Dkt. No. 17, at 10 [Ex. 3 to Plf.'s Response Affid., attaching page from DOCS Directive 4937].)

9    (Dkt. No. 1, ¶¶ 6-7 [Plf.'s Compl.]; Dkt. No. 17, at 4 [Plf .'s Response Affid.]; Dkt. No. 17, at 11 [Ex. 4 to Plf.'s Response Affid., attaching Inmate Misbehavior Report].)

10    (Dkt. No. 17, at 11 [Ex. 4 to Plf.'s Response Affid., attaching Inmate Misbehavior Report].)

11    (Dkt. No. 17, at 5 [Plf.'s Response Affid.].)

12    (Dkt. No. 1, ¶ 7 [Plf.'s Compl.]; Dkt. No. 17, at 4, 5 [Plf.'s Response Affid.]; Dkt. No. 17, at 9 [Ex. 2 to Plf.'s Response Affid., attaching page of his Ambulatory Health Record].)

13    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 5 [Plf.'s Response Affid.].)

14    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 11 [Ex. 4 to Plf.'s Response Affid ., attaching Inmate Misbehavior Report].)

15    (Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition].)

16    (Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition].)

17    (*Id.*)

18    (Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition]; Dkt. No. 17, at 15 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006].)

19    (Dkt. No. 17, at 2-3 [Plf.'s Response Affid.]; Dkt. No. 17, at 14-15 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006]; Dkt. No. 17, at 17 [Ex. 6 to Plf.'s Response Affid., attaching page of information about Flomax].)

20    (Dkt. No. 1, ¶ 7 [Plf.'s Compl.]; Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 17 [Ex. 6 to Plf.'s Response Affid ., attaching page of information about Flomax].)

21    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition].)

22    (Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition]; Dkt. No. 17, at 3 [Plf.'s Response Affid.].)

23    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 3-4 [Plf.'s Response Affid.]; Dkt. No. 17, at 15 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006]; Dkt. No. 17, at 16 [Ex. 8 to Plf.'s Response Affid., attaching Donald Selsky's Review of Superintendent's Hearing, issued on January 19, 2007].)

24    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 2 [Plf.'s Response Affid.].)

25    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.].)

26    *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") [citations omitted]; *Princeton Indus., Inc. v. Rem,* 39 B.R. 140, 143 (Bankr.S.D.N.Y.1984) ("The motion under F.R.Civ.P. 12(b) (6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a) (2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello,* 55 F.R.D. 72, 74 (S.D.N.Y.1972) ("This motion under Fed.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.' ").

27    *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest.... In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon,* 360 F.3d 73, 80 (2d Cir.2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas,* 308 F.3d 180, 187 (2d Cir.2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation ... fails as a matter of law.") [citation omitted]; *Kittay v. Kornstein,* 230 F.3d 531, 541 (2d Cir.2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,* 379 F.Supp.2d 348, 370 (S.D.N.Y.2005) ( "Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6) ].") [citation omitted]; *Util. Metal Research & Generac Power Sys.,* 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5, 2004 WL 2613993 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a]

2008 WL 4693153

); *accord, Straker v. Metro Trans. Auth.,* 331 F.Supp.2d 91, 101-102 (E.D.N.Y.2004); *Tangorre v. Mako's, Inc.,* 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7, 2002 WL 313156 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion-one aimed at the sufficiency of the pleadings under Rule 8 [a], and the other aimed at the legal sufficiency of the claims).

28    *Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336, 125 S.Ct. 1627, 1634, 161 L.Ed.2d 577 (2005) (holding that the complaint failed to meet this test) [citation omitted; emphasis added]; *see also Swierkiewicz,* 534 U .S. at 512 [citation omitted]; *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) [citation omitted].

29    *Swierkiewicz,* 534 U.S. at 514 (quoting *Conley,* 355 U.S. at 48); *see also Simmons v. Abruzzo,* 49 F.3d 83, 86 (2d Cir.1995) ("Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.") [citation omitted]; *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988) ("[T]he principle function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.") [citations omitted].

31    *See, e.g., Swierkiewicz,* 534 U.S. at 513-514 (noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake.").

32    2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed.2003).

33    *See, e.g., Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, ---- - ----, 127 S.Ct. 1955, 1964-1974, 167 L.Ed.2d 929 (2007) (pleading did not meet Rule 8[a][2]'s liberal requirement), *accord, Dura Pharmaceuticals,* 125 S.Ct. at 1634-1635, *Christopher v. Harbury,* 536 U.S. 403, 416-422, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002), *Freedom Holdings, Inc. v. Spitzer,* 357 F.3d 205, 234-235 (2d Cir.2004), *Gmurzynska v. Hutton,* 355 F.3d 206, 208-209 (2d Cir.2004). Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz. See, e.g., Salvador v. Adirondack Park Agency of the State of N.Y.,* No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr.26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a] [2] ). Although these decisions are not themselves precedential authority, *see* Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after *Swierkiewicz,* of certain cases from within the Second Circuit interpreting Rule 8(a)(2). *See Khan v. Ashcroft,* 352 F.3d 521, 525 (2d Cir.2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS,* 244 F.3d 81 [2d Cir.2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr,* 533 U.S. 289 [2001] ).

34    The Court in *Twombly* further explained: "The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been adequately stated, it may be supported by showing any set of facts consistent with the allegations in the complaint.... *Conley,* then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Twombly,* 127 S.Ct. at 1969.

35    *See, e.g., Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir.2008) (in civil rights action, stating that "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim up relief that is plausible on its face.' ") [citation omitted]; *Goldstein v. Pataki,* 07-CV-2537, 2008 U.S.App. LEXIS 2241, at *14, 2008 WL 269100 (2d Cir. Feb. 1, 2008) (in civil rights action, stating that "*Twombly* requires ... that the complaint's '[f]actual allegations be enough to raise a right to relief above the speculative level ....' ") [internal citation omitted]; *ATSI Comm'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98, n. 2 (2d Cir.2007) ("We have declined to read Twombly's flexible 'plausibility standard' as relating only to antitrust cases.") [citation omitted]; *Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir.2007) (in prisoner civil rights action, stating, "[W]e believe the [Supreme] Court [in *Bell Atlantic Corp. v. Twombly* ] is ... requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible."* ) [emphasis in original].

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 36 of 353
**Robles v. Bleau, Not Reported in F.Supp.2d (2008)**

2008 WL 4693153

36    *See, e.g., Jacobs v. Mostow,* 281 F. App'x 85, 87 (2d Cir. March 27, 2008) (in pro se action, stating, "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim up relief that is plausible on its face.' ") [citation omitted] (summary order, cited in accordance with Local Rule 32.1[c][1] ); *Boykin v. KeyCorp.,* 521 F.3d 202, 215-16 (2d Cir.2008) (finding that borrower's *pro se* complaint sufficiently presented a *"plausible* claim of disparate treatment," under Fair Housing Act, to give lenders fair notice of her discrimination claim based on lenders' denial of her home equity loan application) [emphasis added].

37    For example, in *Erickson,* a district court had dismissed a *pro se* prisoner's civil rights complaint because, although the complaint was otherwise factually specific as to how the prisoner's hepatis C medication had been wrongfully terminated by prison officials for a period of approximately 18 months, the complaint (according to the district court) failed to allege facts plausibly suggesting that the termination caused the prisoner "substantial harm." 127 S.Ct. at 2199. The Supreme Court vacated and remanded the case because (1) under Fed.R.Civ.P. 8 and *Twombly,* all that is required is a "a short and plain statement of the claim" sufficient to "give the defendant fair notice" of the claim and "the grounds upon which it rests," and (2) the plaintiff had alleged that the termination of his hepatitis C medication for 18 months was "endangering [his] life" and that he was "still in need of treatment for [the] disease." *Id.* at 2200. While *Erickson* does not elaborate much further on its rationale, a careful reading of the decision (and the dissent by Justice Thomas) reveals a point that is perhaps so obvious that it did not need mentioning in the short decision: a claim of deliberate indifference to a serious medical need under the Eighth Amendment involves two elements, i.e., the existence of a sufficiently serious medical need possessed by the plaintiff, and the existence of a deliberately indifferent mental state possessed by prison officials with regard to that sufficiently serious medical need. The *Erickson* decision had to do with only the first element, not the second element. *Id.* at 2199-2200. In particular, the decision was merely recognizing that an allegation by a plaintiff that, during the relevant time period, he suffered from hepatis C is, in and of itself, a factual allegation plausibly suggesting that he possessed a sufficiently serious medical need; the plaintiff need not *also* allege that he suffered an independent and "substantial injury" as a result of the termination of his hepatis C medication. *Id.* This point of law is hardly a novel one. For example, numerous decisions, from district courts within the Second Circuit alone, have found that suffering from hepatitis C constitutes having a serious medical need for purposes of the Eighth Amendment. *See, e .g., Rose v. Alvees,* 01-CV-0648, 2004 WL 2026481, at *6 (W.D.N.Y. Sept.9, 2004); *Verley v. Goord,* 02-CV-1182, 2004 WL 526740, at *10 n. 11 (S.D.N.Y. Jan.23, 2004); *Johnson v. Wright,* 234 F.Supp.2d 352, 360 (S.D.N.Y.2002); *McKenna v. Wright,* 01-CV-6571, 2002 WL 338375, at *6 (S.D.N.Y. March 4, 2002); *Carbonell v. Goord,* 99-CV-3208, 2000 WL 760751, at *9 (S.D.N.Y. June 13, 2000).

38    *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994) (affirming grant of motion to dismiss) [citation omitted]; *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994).

39    *Hernandez,* 18 F.3d at 136 [citation omitted]; *Deravin v. Kerik,* 335 F.3d 195, 200 (2d Cir.2003) [citations omitted]; *Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 619 (2d Cir.1999) [citation omitted].

40    *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) ("[A] *pro se* complaint ... must be held to less stringent standards than formal pleadings drafted by lawyers ....") [internal quotation marks and citation omitted]; *McEachin v. McGinnis,* 357 F.3d 197, 200 (2d Cir.2004) ("[W]hen the plaintiff proceeds pro se, ... a court is obliged to construe his pleadings liberally, particularly when they allege civil rights violations.") [citation omitted].

41    "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss. However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum." *Gadson v. Goord,* 96-CV-7544, 1997 WL 714878, at *1, n. 2 (S.D.N.Y. Nov.17, 1997) (citing, *inter alia, Gil v. Mooney,* 824 F.2d 192, 195 [2d Cir.1987] [considering plaintiff's response affidavit on motion to dismiss] ). Stated another way, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.' " *Donhauser v. Goord,* 314 F.Supp.2d 119, 212 (N.D.N.Y.2004) (considering factual allegations contained in plaintiff's opposition papers) [citations omitted], *vacated in part on other grounds,* 317 F.Supp.2d 160

2008 WL 4693153

(N.D.N.Y.2004). This authority is premised, not only on case law, but on Rule 15 of the Federal Rules of Civil Procedure, which permits a plaintiff, as a matter of right, to amend his complaint once at any time before the service of a responsive pleading-which a motion to dismiss is not. *See Washington v. James,* 782 F.2d 1134, 1138-39 (2d Cir.1986) (considering subsequent affidavit as amending *pro se* complaint, on motion to dismiss) [citations omitted].

42   *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) [internal quotation and citation omitted].

43   *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) [internal quotation and citation omitted]; *see also* Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires").

44   *Cuoco,* 222 F.3d at 112 (finding that repleading would be futile) [citation omitted]; *see also Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) [citation omitted].

45   *Muniz v. Goord,* 04-CV-0479, 2007 WL 2027912, at *2, n. 14 (N.D.Y.Y. July 11, 2007) (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord,* 04-CV-1433, 2007 WL 201109, at *5, n. 34 (N.D.N.Y. Jan.23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.,* 04-CV-1262, 2007 WL 119453, at *2, n. 13 (N.D.N.Y. Jan.10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins v. Fed. Bur. of Prisons,* 05-CV-0904, 2007 WL 37404, at *4, n. 30 (N.D.N.Y. Jan.4, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Goros v. Cent. Office Review Comm.,* 03-CV-0407, 2006 WL 2794415, at *5, n. 18 (N.D.N.Y. Sept., 26, 2006) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Williams v. Weaver,* 03-CV-0912, 2006 WL 2799417, at *4, n .16 (N.D.N.Y. Sept. 26, 2006) (Kahn, J., adopting report-recommendation of Lowe, M.J.).

46   *See Sealed Plaintiff v. Sealed Defendant # 1,* No. 06-1590, 2008 WL 3294864, at *5 (2d Cir. Aug.12, 2008) ("[The obligation to construe the pleadings of *pro se* litigants liberally] entails, at the very least, a permissive application of the rules governing the form of pleadings.") [internal quotation marks and citation omitted]; *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) ("[R]easonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training ... should not be impaired by harsh application of technical rules.") [citation omitted].

47   *See Prezzi v. Schelter,* 469 F.2d 691, 692 (2d Cir.1972) (extra liberal pleading standard set forth in *Haines v. Kerner,* 404 U.S. 519 [1972], did not save *pro se* complaint from dismissal for failing to comply with Fed.R.Civ.P. 8] ); *accord, Shoemaker v. State of Cal.,* 101 F.3d 108 (2d Cir.1996) (citing *Prezzi v. Schelter,* 469 F.2d 691) [unpublished disposition cited only to acknowledge the continued precedential effect of *Prezzi v. Schelter,* 469 F.2d 691, within the Second Circuit]; *accord, Praseuth v. Werbe,* 99 F.3d 402 (2d Cir.1995).

48   *See McNeil v. U.S.,* 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed ... we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Faretta v. California,* 422 U.S. 806, 834, n. 46, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) ("The right of self-representation is not a license ... not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *cf. Phillips v. Girdich,* 408 F.3d 124, 128, 130 (2d Cir.2005) (acknowledging that *pro se* plaintiff's complaint could be dismissed for failing to comply with Rules 8 and 10 if his mistakes either "undermine the purpose of notice pleading [ ]or prejudice the adverse party").

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 38 of 353
**Robles v. Bleau, Not Reported in F.Supp.2d (2008)**

2008 WL 4693153

49    *Stinson v. Sheriff's Dep't of Sullivan Cty.,* 499 F.Supp. 259, 262 & n. 9 (S.D.N.Y.1980); *accord, Standley v. Dennison,* 05-CV-1033, 2007 WL 2406909, at *6, n. 27 (N.D.N.Y. Aug.21, 2007) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Muniz v. Goord,* 04-CV-0479, 2007 WL 2027912, at *2 (N.D.Y.Y. July 11, 2007) (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *DiProjetto v. Morris Protective Serv.,* 489 F.Supp.2d 305, 307 (W.D.N.Y.2007); *Cosby v. City of White Plains,* 04-CV-5829, 2007 WL 853203, at *3 (S.D.N.Y. Feb.9, 2007); *Lopez v. Wright,* 05-CV-1568, 2007 WL 388919, at *3, n. 11 (N.D.N.Y. Jan.31, 2007) (Mordue, C.J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord,* 04-CV-1433, 2007 WL 201109, at *5 (N.D.N.Y. Jan.23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.,* 04-CV-1262, 2007 WL 119453, at *2, n. 13 (N.D.N.Y. Jan.10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins v. Fed. Bur. of Prisons,* 05-CV-0904, 2007 WL 37404, at *4 (N.D.N.Y. Jan.4, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.).

50    *McGinty v. State of New York,* 251 F.3d 84, 100 (2d Cir.2001) [citation omitted]; *see also* Fed.R.Civ.P. 12(h)(3).

51    42 U.S.C. § 1983 [emphasis added].

52    *See, supra,* note 44 of this Report-Recommendation.

53    *See Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir.1993) ("The immunity to which a state's official may be entitled in a § 1983 action depends initially on the capacity in which he is sued. To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."); *Severino v. Negron,* 996 F.2d 1439, 1441 (2d Cir.1993) ( "[I]t is clear that the Eleventh Amendment does not permit suit [under Section 1983] for money damages against state officials in their official capacities."); *Farid v. Smith,* 850 F.2d 917, 921 (2d Cir.1988) ("The eleventh amendment bars recovery against an employee who is sued in his official capacity, but does not protect him from personal liability if he is sued in his 'individual' or 'personal' capacity."); *see also Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) ("Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.... As such, it is no different from a suit against the State itself.... We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); *Kentucky v. Graham,* 473 U.S. 159, 165-66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity."); *see also Holloway v. Selsky,* 05-CV-0501, 2007 WL 433375, at *4 (N.D.N.Y. Feb.6, 2007) (Sharpe, J.) [citing cases].

54    *See, infra,* note 41 of this Report-Recommendation (citing cases).

55    The authority to conduct this *sua sponte* analysis is derived from two sources: (1) 28 U.S.C. § 1915(e)(2)(B)(ii), which provides that "the court shall dismiss [a] case [brought by a prisoner proceeding *in forma pauperis* ] at any time if the court determines that ... the action ... is frivolous or malicious[,] ... fails to state a claim on which relief may be granted[,] ... or ... seeks monetary relief against a defendant who is immune from such relief"; and (2) 28 U.S.C. § 1915A(b), which provides that, "[o]n review, the court shall ... dismiss the [prisoner's] complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted ...."

56    As explained above in Part II of this Report-Recommendation, a dismissal for failure to state a claim may be based not only on a successful challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2), but also on a successful challenge to the legal cognizability of the claims asserted in the pleading. *See, supra,* notes 26 and 27 of this Report-Recommendation.

57    *Farmer v. Brennan,* 511 U.S. 825, 827, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) ("[S]ubjective recklessness as used in the criminal law is a familiar and workable standard that is consistent with the Cruel and Unusual Punishments Clause

as interpreted in our cases, and we adopt it as the test for "deliberate indifference" under the Eighth Amendment."); *Hemmings v. Gorczyk,* 134 F.3d 104, 108 (2d Cir.1998) ("The required state of mind [for a deliberate indifference claim under the Eighth Amendment], equivalent to criminal recklessness, is that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and he must also draw the inference.") [internal quotation marks and citations omitted]; *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996) ("The subjective element requires a state of mind that is the equivalent of criminal recklessness ....") [citation omitted]; *accord, Koehl v. Greene,* 06-CV-0478, 2007 WL 2846905, at \*17, n. 98 (N.D.N.Y. Sept.26, 2007) (Kahn, J.), *Richards v. Goord,* 04-CV-1433, 2007 WL 201109, at \*15, n. 124 (N.D.N.Y. Jan.23, 2007) (Kahn, J.), *Salaam v. Adams,* 03-CV-0517, 2006 WL 2827687, at \*10, n. 59 (N.D.N.Y. Sept.29, 2006) (Kahn, J.).

58    In addition, it is worth noting that Plaintiff's explanation to Defendant Bleau consisted of a statement that Plaintiff could not urinate because of his prostate *medication,* not because of his prostate *condition. See, supra,* Part I.A. of this Report-Recommendation. As a result, Defendant Bleau would not have become *aware* of the reason for Plaintiff's inability to urinate (which Plaintiff now alleges was his prostate *condition,* not his prostate *medication* ), even if Defendant Bleau had remained in Plaintiff's presence and listened to his explanation.

59    *Farmer v. Brennan,* 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) ("[D]eliberate indifference [for purposes of an Eighth Amendment claim] describes a state of mind more blameworthy than negligence."); *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Murphy v. Grabo,* 94-CV-1684, 1998 WL 166840, at \*4 (N.D.N.Y. Apr.9, 1998) (Pooler, J .) ("Deliberate indifference, whether evidenced by [prison] medical staff or by [prison] officials who allegedly disregard the instructions of [prison] medical staff, requires more than negligence.... Disagreement with prescribed treatment does not rise to the level of a constitutional claim.... Additionally, negligence by physicians, even amounting to malpractice, does not become a constitutional violation merely because the plaintiff is an inmate.... Thus, claims of malpractice or disagreement with treatment are not actionable under section 1983.") [citations omitted].").

60    *See, supra,* note 44 of this Report-Recommendation.

61    *Accord, Lugo v. Van Orden,* 07-CV-0879, 2008 U.S. Dist. LEXIS 56707, at \*7, 2008 WL 2884925 (N.D.N.Y. July 23, 2008) (McAvoy, J.); *Darvie v. Countryman,* 08-CV-0715, 2008 U.S. Dist. LEXIS 60931, 2008 WL 3286250 (N.D.N.Y. Aug. 7, 2008) (Sharpe, J.), *adopting* 2008 U.S. Dist. LEXIS 52797, at \*18, n. 5, 2008 WL 2725071 (N.D.N.Y. July 10, 2008) (Lowe, M.J.); *Anderson v. Banks,* 06-CV-0625, 2008 U.S. Dist. LEXIS 60896, at \*16-17, 2008 WL 3285917 (N.D.N.Y. May 19, 2008) (Homer, M.J.), *adopted by* 2008 U.S. Dist. LEXIS 60932, 2008 WL 3285917 (N.D.N.Y. Aug. 6, 2008) (Sharpe, J.); *Stewartson v. Almstead,* 04-CV-1097, 2008 U.S. Dist. LEXIS 22178, at \*7, 2008 WL 783367 (N.D.N.Y. March 20, 2008) (McAvoy, J.); *McEachin v. Goord,* 06-CV-1192, 2008 U.S. Dist. LEXIS 27479, at \*12, 2008 WL 1788440 (N.D.N.Y. Feb. 8, 2008) (Treece, M.J.), *adopted by* 2008 U.S. Dist. LEXIS 31879, 2008 WL 1788440 (N.D.N.Y. Apr. 17, 2008) (Hurd, J.); *Murray v. Pataki,* 03-CV-1263, 2007 U.S. Dist. LEXIS 26959, at \*27, 2007 WL 965345 (N.D.N.Y. March 5, 2007) (Treece, M.J.), *adopted by* 2007 U.S. Dist. LEXIS 23065, 2007 WL 956941 (N.D.N.Y. March 29, 2007) (Kahn, J.); *Madera v. Goord,* 103 F.Supp.2d 536, 542 (N.D.N.Y.2000) (Kahn, J., adopting Report-Recommendation by Di Bianco, M.J.).

62    *See, supra,* note 44 of this Report-Recommendation.

63    *See, e.g., Spence v. Senkowski,* 91-CV-0955, 1998 WL 214719, at \*3 (N.D.N.Y. Apr.17, 1998) (McCurn, J.) (180 days that plaintiff spent in S.H.U., where he was subjected to numerous conditions of confinement that were more restrictive than those in general population, did not constitute atypical and significant hardship in relation to ordinary incidents of prison life); *accord, Husbands v. McClellan,* 990 F.Supp. 214, 217-19 (W.D.N.Y.1998) (180 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Warren v. Irvin,* 985

F.Supp. 350, 353-56 (W.D.N.Y.1997) (161 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Ruiz v. Selsky,* 96-CV-2003, 1997 WL 137448, at *4-6 (S.D.N.Y.1997) (192 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Horne v. Coughlin,* 949 F.Supp. 112, 116-17 (N.D.N.Y.1996) (Smith, M.J.) (180 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Nogueras v. Coughlin,* 94-CV-4094, 1996 WL 487951, at *4-5 (S.D.N.Y. Aug.27, 1996) (210 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Carter v. Carriero,* 905 F.Supp. 99, 103-04 (W.D.N.Y.1995) (270 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population).

64    *Jackson v. Onondaga County,* 05-CV-1393, 2008 U.S. Dist. LEXIS 64930, at *40 & n. 46, 549 F. Supp. 2d 204 (N.D.N.Y. Jan. 8, 2008) (Lowe, M.J.) [citations omitted], *adopted on* de novo *review by* 05-CV-1393, 2008 U.S. Dist. LEXIS 22175, 2008 WL 782655 (N.D.N.Y. March 20, 2008) (McAvoy, J.); *see also Martin v. Mitchell,* 92-CV-0716, 1995 U.S. Dist. LEXIS 19006, at *10-12, 1995 WL 760651 (N.D.N.Y. Nov. 24, 1995) (McAvoy, C.J.) (rejecting plaintiff's assertion that prison disciplinary hearing officer "had a duty to investigate the identity of [a correction officer identified by the plaintiff merely as] 'Budd' and call him to testify"); *Hampton v. McGinnis,* 89-CV-6344, 1992 U.S. Dist. LEXIS 15696, at *6, 1992 WL 309553 (S.D.N.Y. Oct. 15, 1992) ("[I]t was not [the disciplinary hearing officer's] duty to investigate [the prisoner's assault] claim, and plaintiff was not precluded from offering his own evidence on that subject."); *cf. Kingsley v. Bureau of Prisons,* 937 F.2d 26, 31 (2d Cir.1991) (under circumstances, a hearing officer did have a duty to identify the name of the plaintiff's desired witness because [1] the plaintiff had an "especially compelling" need for the witness, [2] the witness's identity was "readily available" to the hearing officer, [3] the plaintiff had arrived at the prison only five days earlier, [4] fulfilling the request would not have delayed the imposition of "swift discipline," and [5] "no other institutional objective was implicated").

65    *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) ("The terms of § 1983 make plain two elements that are necessary for recovery. First, the plaintiff must prove that the defendant has deprived him of a right secured by the 'Constitution and laws' *of the United States."* ) (emphasis added); *Patterson v. Coughlin,* 761 F.2d 886, 890 (2d Cir.1985) ("Recovery under 42 U.S.C. § 1983 ... is premised upon a showing, first, that the defendant has denied the plaintiff a constitutional or *federal* statutory right ....") (citation omitted; emphasis added); *Fluent v. Salamanca Indian Lease Auth.,* 847 F.Supp. 1046, 1056 (W.D.N.Y.1994) ("The initial inquiry in a § 1983 action is whether the Plaintiff has been deprived of a right 'secured by the Constitution and laws' *of the United States."* ) [emphasis added].

66    *See Doe v. Conn. Dept. of Child & Youth Servs.,* 911 F.2d 868, 869 (2d Cir.1990) ("[A] violation of state law neither gives [plaintiff] a § 1983 claim nor deprives defendants of the defense of qualified immunity to a proper § 1983 claim."); *Patterson,* 761 F.2d at 891 ("[A] state employee's failure to conform to state law does not in itself violate the Constitution and is not alone actionable under § 1983 ....") (citation omitted); *Murray v. Michael,* 03-CV-1434, 2005 WL 2204985, at * 10 (N.D.N.Y. Sept.7, 2005) (DiBianco, M.J.) ("[A]ny violations of state regulations governing the procedures for disciplinary hearings ... do not rise to the level of constitutional violations.") (citation omitted); *Rivera v. Wohlrab,* 232 F.Supp.2d 117, 123 (S.D.N.Y.2002) ("[V]iolations of state law procedural requirements do not alone constitute a deprivation of due process since '[f]ederal constitutional standards rather than state law define the requirements of procedural due process.' ") (citing *Russell v. Coughlin,* 910 F.2d 75, 78 n. 1 [2d Cir.1990] ).

67    *See Rivera v. Wohlrab,* 232 F.Supp.2d 117, 123 (S.D.N.Y.2002) (citation omitted); *Lopez v. Reynolds,* 998 F.Supp. 252, 259 (W.D.N.Y.1997).

68    *See Farinaro v. Coughlin,* 642 F.Supp. 276, 280 (S.D.N.Y.1986).

69    *See, e.g., Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137-38 (2d Cir.1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World*

*Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40 n. 3 (2d Cir.1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *Alexander v. Evans,* 88-CV-5309, 1993 WL 427409, at * 18 n. 8 (S.D.N.Y. Sept.30, 1993) (declining to consider affidavit of expert witness that was not before magistrate) [citation omitted]; *see also Murr v. U.S.,* 200 F.3d 895, 902, n. 1 (6th Cir.2000) ("Petitioner's failure to raise this claim before the magistrate constitutes waiver."); *Marshall v. Chater,* 75 F.3d 1421, 1426 (10th Cir.1996) ("Issues raised for the first time in objections to the magistrate judge's recommendations are deemed waived.") [citations omitted]; *Cupit v. Whitley,* 28 F.3d 532, 535 (5th Cir.1994) ("By waiting until after the magistrate judge had issued its findings and recommendations [to raise its procedural default argument] ... Respondent has waived procedural default ... objection [ ].") [citations omitted]; *Greenhow v. Sec'y of Health & Human Servs.,* 863 F.2d 633, 638-39 (9th Cir.1988) ("[A]llowing parties to litigate fully their case before the magistrate and, if unsuccessful, to change their strategy and present a different theory to the district court would frustrate the purpose of the Magistrates Act."), *overruled on other grounds by U.S. v. Hardesty,* 977 F.2d 1347 (9th Cir.1992); *Patterson-Leitch Co. Inc. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 990-91 (1st Cir.1988) ("[A]n unsuccessful party is not entitled as of right to de novo review by the judge of an argument never seasonably raised before the magistrate.") [citation omitted].

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 4693153

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Fox v. Lee, Not Reported in Fed. Supp. (2015)

2015 WL 13949048

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 42 of 353

2015 WL 13949048
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Javell FOX, Plaintiff,

v.

Superintendent LEE, et al., Defendants.

9:15-CV-0390 (TJM/CFH)
|
Signed July 17, 2015

**Attorneys and Law Firms**

JAVELL FOX, 12-B-1626, Plaintiff, pro se, Eastern NY Correctional Facility, Box 338, Naponoch, NY 12458.

**DECISION AND ORDER**

THOMAS J. MCAVOY, Senior United States District Judge

## I. INTRODUCTION

**\*1** Plaintiff Javell Fox commenced this action by filing a pro se complaint pursuant to 42 U.S.C. § 1983 ("Section 1983") and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc. [1] Dkt. No. 1 ("Compl."). Plaintiff seeks leave to proceed with this action in forma pauperis. Dkt. No. 2 ("IFP Application"). Plaintiff also requests appointment of counsel and preliminary injunctive relief. Dkt. Nos. 4, 5. Plaintiff is incarcerated in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") and has not paid the statutory filing fee.

[1]  Plaintiff has four other civil actions pending in this District. *See Fox v. Zennamo*, No. 6:15-CV-0587 (LEK/ATB); *Fox v. Labatte*, No. 9:15-CV-0144 (LEK/RFT); *Fox v. D'Amico*, No. 9:15-CV-0257 (MAD/DEP); and *Fox v. Hobbie*, No. 6:15-CV-0616 (LEK/ATB).

## II. DISCUSSION

### A. IFP Application

Upon review of plaintiff's IFP Application (Dkt. No. 2), the Court finds that plaintiff has demonstrated sufficient economic need and may commence this action without prepayment of the filing fee. Thus, plaintiff's IFP Application is granted. [2]

[2]  "28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010). "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id.* (citing 28 U.S.C. § 1915(b) and *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

### B. Initial Screening

Section 1915(e) directs that, when a plaintiff seeks to proceed in forma pauperis, "(2) ... the court shall dismiss the case at any time if the court determines that – ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [3]

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 43 of 353

**Fox v. Lee, Not Reported in Fed. Supp. (2015)**

2015 WL 13949048

Thus, even if a plaintiff meets the financial criteria to commence an action in forma pauperis, it is the court's responsibility to determine whether the plaintiff may properly maintain the complaint that he filed in this District before the court may permit the plaintiff to proceed with this action in forma pauperis. *See id.*

3     To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

Likewise, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (stating that both sections 1915 and 1915A are available to evaluate prisoner pro se complaints).

 **\*2**  In reviewing a pro se complaint, the court has a duty to show liberality toward pro se litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and should exercise "extreme caution ... in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted). Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Although the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal quotation marks and alterations omitted).

### C. Review of the Complaint

Plaintiff alleges misconduct against twenty-four defendants that allegedly occurred while he was incarcerated at Eastern New York Correctional Facility ("Eastern C.F."). Plaintiff's lengthy complaint details various constitutional and statutory violations including, among other things, harassment, retaliation against him for his filing of grievances, interference with his religious practices, denial of his rights to due process of law at disciplinary hearings, excessive force, inadequate conditions of confinement, interference with his access to the courts, and conspiracy to violate his rights. *See generally* Compl. For a more complete statement of plaintiff's claims, refer to the complaint.

Construed liberally, plaintiff alleges the following claims: (1) First Amendment Free Exercise Clause and RLUIPA claims against defendants Madison, Miller, Williamson, Cruz, and Vanacore; (2) claims that defendants Bey and Cruz verbally harassed plaintiff; (3) a claim that defendants Waugh, Connor, and Williamson conducted an improper cell search; (4) First Amendment retaliation claims against defendants Lee, Madison, Kozak, Bey, Simmons, Wendland, Henry, Lifield, Bradley, Schadel, Williamson, Cruz, Vanacore, and Barg; (5) an Eighth Amendment excessive force claim against defendant Cruz; (6) claims that defendants Calao, Jennings and Labatte interfered with his First Amendment right of access to the courts; (7) Fourteenth Amendment due process claims against defendants Simmons, Wendland, and Russo; (8) failure-to-investigate claims against defendants Lee, Webbe, and Russo; (9) an Eighth Amendment conditions-of-confinement claim against defendant Cuomo; (10) a claim that defendants Simmons and Sullivan violated DOCCS directives; (11) conspiracy claims against defendants

**Fox v. Lee, Not Reported in Fed. Supp. (2015)**
Case 9:22-cv-00638-DNH-TWD   Document 58   Filed 02/28/25   Page 44 of 353
2015 WL 13949048

Lee, Madison, Webbe, Russo, and Sullivan; and (12) supervisory claims against defendants Lee and Annucci.[4] Plaintiff seeks monetary damages. Compl. at 36-39. For a more complete statement of plaintiff's claims, refer to the complaint.

[4]    Apart from his claim that he was housed in a cell with no feed-up slot, plaintiff alleges that he was subjected to various other inadequate conditions of confinement including cold temperatures, in violation of the Eighth Amendment but he does not attribute this alleged misconduct to any defendant. *See* Compl. at 15-16, 25-26. Insofar as plaintiff alleges these conditions in support of his Fourteenth Amendment due process claims against defendants Simmons, Wendland, and Russo, as discussed below, those claims survive sua sponte review.

Plaintiff brings this action pursuant to Section 1983, which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted); *see also Myers v. Wollowitz*, No. 6:95-CV-0272 (TJM/RWS), 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (stating that "§ 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights." (citation omitted)). "Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted).

### 1. Money Damages Pursuant to RLUIPA

 **\*3**   RLUIPA does not authorize claims for monetary damages against state officers in either their official or individual capacities. *Washington v. Gonyea*, 731 F.3d 143, 145-46 (2d Cir. 2013) (per curiam) (citing *Sossamon v. Texas*, —— U.S. ——, 131 S.Ct. 1651, 1663 (2011)); *see also Jouvert v. New York*, No. 9:10-CV-0930 (MAD/CFH), 2012 WL 6964386, at *5 (N.D.N.Y. Oct. 23, 2012) ("[M]onetary claims against state defendants in their official capacities are unavailable under the RLUIPA because the Act does not unambiguously waive sovereign immunity.... Similarly, monetary claims against individual defendants in their individual capacities raise constitutional concerns. Because the RLUIPA was enacted pursuant to the Spending Clause rather than § 5 of the Fourteenth Amendment, which entrusts Congress with the power to enforce the provisions of the Fourteenth Amendment, Congress lacked constitutional authority to enforce RLUIPA against individual defendants in their individual capacities.") (citations omitted); *see also Pilgrim v. Artus*, No. 9:07-CV-1001 (GLS/RFT), 2010 WL 3724883, at *15-16 (N.D.N.Y. Mar. 18, 2010) (discussing Eleventh Amendment immunity and RLUIPA decisions in this Circuit).

Here, insofar as plaintiff seeks monetary damages against defendants in their official or individual capacities under RLUIPA, those claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).

### 2. Verbal Harassment

Verbal harassment and name calling, absent physical injury, are not constitutional violations cognizable under 42 U.S.C. § 1983 ("Section 1983"). *See Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) (per curiam); *Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) ("verbal harassment or profanity alone, unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983") (quotation omitted); *see also Rivera v. Goord*, 119 F. Supp. 2d 327, 342 (S.D.N.Y. 2000) (collecting cases); *Baskerville v. Goord*, No. 97-CV-6413, 2000 WL 897153, at *3 (S.D.N.Y. July 6, 2000) ("Mere verbal abuse or the use of ... slurs or epithets reflecting ... prejudice, although reprehensible, does not form the basis of a claim pursuant to § 1983."). This principle holds true even when the harassment concerns a plaintiff's religion. *See, e.g., Hamilton v. Erhardt*, No. 10-CV-6234, 2011 WL 3476475, at *4 (W.D.N.Y. Aug. 9, 2011) (holding that verbal taunting does not amount to a constitutional violation "even where such verbal harassment pertains to the plaintiff's race or religion.").

**Fox v. Lee, Not Reported in Fed. Supp. (2015)**
Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 45 of 353
2015 WL 13949048

Plaintiff's claims against defendants Bey and Cruz based on verbal harassment are dismissed pursuant to 28 U.S.C. 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 3. Cell Search

The Supreme Court has ruled that inmates have no constitutional protection from cell searches, even those conducted for retaliatory reasons. *See Hudson v. Palmer*, 468 U.S. 517, 530 (1984) ("[T]he Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells."); *see also Walker v. Keyser*, No. 98 Civ. 5217, 2001 WL 1160588, at *9 (S.D.N.Y. Oct. 17, 2001) ("Even retaliatory searches are not actionable under § 1983.").

Thus, to the extent that plaintiff alleges that defendants Waugh, Connor, and Williamson conducted an improper or retaliatory search of his cell, that claim is dismissed pursuant to 28 U.S.C. 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 4. First Amendment Retaliation

Courts must approach claims of retaliation " 'with skepticism and particular care' because 'virtually any adverse action taken against a prisoner by a prison official–even those otherwise not rising to the level of a constitutional violation–can be characterized as a constitutionally proscribed retaliatory act.' " *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (quoting *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)). To state a plausible claim, a plaintiff asserting a First Amendment retaliation claim must advance "non-conclusory" allegations establishing "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action." *Davis*, 320 F.3d at 352 (quoting *Dawes*, 239 F.3d at 492). "[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).

**\*4** Since plaintiff alleges that the various defendants retaliated against him because he filed grievances, plaintiff satisfies the first prong of the retaliation test. *See Baskerville v. Blot*, 224 F. Supp. 2d 723, 731 (S.D.N.Y. 2002) (citing cases) ("A prisoner's filing of a grievance against a corrections officer is protected by the First Amendment.").

#### a. Defendants Henry, Lifield, Bradley, and Schadel

To meet the second prong of the retaliation test, plaintiff must allege that defendants took adverse action against him because he filed the grievance. The Second Circuit has defined "adverse action" as "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising ... constitutional rights.' " *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004) (citation omitted) (omission in original). This objective test applies even if the plaintiff was not himself subjectively deterred from exercising his rights. *Id.* Conduct that is de minimis does not give rise to actionable retaliation. What is de minimis varies according to context. *Dawes*, 239 F.3d at 493. As the Second Circuit has pointed out, "[p]risoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before a [retaliatory] action taken against them is considered adverse." *Dawes*, 239 F.3d at 491 (*quoting Thaddeus-X v. Blatter*, 175 F.3d 378, 386-87 (6th Cir. 1999) (en banc) (per curiam)). If a retaliatory act against an inmate would not be likely to "chill a person of ordinary firmness from continuing to engage" in a protected activity, "the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection." *Dawes,* 239 F.3d at 493.

Plaintiff alleges that in retaliation for his grievances, defendants Henry and Lifield denied him his weekly phone call on January 7, 2015, and defendants Bradley and Schadel denied him another phone call on March 6, 2015. Compl. at 26. This conduct,

**Fox v. Lee, Not Reported in Fed. Supp. (2015)**
Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 46 of 353
2015 WL 13949048

the loss of one telephone call on two separate occasions months apart, is de minimis and does not amount to adverse action necessary to support a retaliation claim.

Thus, plaintiff's First Amendment retaliation claims against defendants Henry, Lifield, Bradley, and Schadel are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

#### b. Defendants Lee, Madison, Kozak, Bey, Simmons, Wendland, Williamson, Cruz, Vanacore, and Barg

Mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see e.g. Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), defendants Lee, Madison, Kozak, Bey, Simmons, Wendland, Williamson, Cruz, Vanacore, and Barg are directed to respond to the First Amendment retaliation claims against them. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

### 5. Failure-to-Investigate Claims

Plaintiff claims that defendants Lee, Webbe, and Russo failed adequately investigate his grievances. *See* Compl. at 12-14. However, "the law is clear that plaintiff has no constitutional right to have his grievances processed at all, or if processed, to have the procedure done properly." *Avent v. Doe*, No. 9:05-CV-1311, 2008 WL 877176, at *8 (N.D.N.Y. Mar. 31, 2008); *accord, e.g., Crenshaw v. Hartman*, 681 F. Supp. 2d 412, 416 (W.D.N.Y. 2010); *see also, e.g., Torres v. Mazzuca*, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003) ("The corrections officers' failure to properly address Torres's grievances by conducting a thorough investigation to his satisfaction does not create a cause of action for denial of due process because Torres was not deprived of a protected liberty interest.") (*citing, inter alia, Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993)) (per curiam) ("[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates. Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment.") (quotation omitted). Because plaintiff "does not have a protected liberty interest in having his grievances investigated at the level of thoroughness that he desires," he therefore "cannot assert a due process claim as to such failures." *Torres*, 246 F. Supp. 2d at 342. To the extent that plaintiff attempts to assert a separate constitutional claim of "failure to investigate," the law is also clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials. *Bernstein v. New York*, 591 F. Supp. 2d 448, 460 (S.D.N.Y. 2008) (collecting cases).

**\*5** Plaintiff's failure-to-investigate claims against defendants Lee, Webbe, and Russo are dismissed pursuant to 28 U.S.C. 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 6. Eighth Amendment Conditions-of-Confinement Claim Against Defendant Governor Cuomo

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment." U.S. Const. amend. VIII. The Second Circuit, in addressing the needs protected by the Eighth Amendment, has stated that sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." *Wolfish v. Levi*, 573 F.2d 118, 125 (2d Cir. 1978), *rev'd on other grounds sub nom. Bell v. Wolfish*, 441 U.S. 520 (1979); *Lareau v. Manson*, 651 F.2d 96, 106 (2d Cir. 1981). "To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). Not every governmental action affecting the interests or well-being of a prisoner is actionable under the Eighth Amendment. "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *see also Gaston v. Coughlin*, 249 F.3d 156, 163 (2d Cir. 2001).

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 47 of 353
Fox v. Lee, Not Reported in Fed. Supp. (2015)
2015 WL 13949048

To demonstrate that the conditions of confinement constitute cruel and unusual punishment in violation of the Eighth Amendment, a plaintiff must satisfy both an objective and subjective element. *See Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996). A plaintiff must demonstrate that (1) the conditions of confinement resulted in "unquestioned and serious deprivations of basic human needs," *Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir. 1985); *see also Jolly*, 76 F.3d at 480, and (2) that the defendants acted with "deliberate indifference." *Wilson v. Seiter*, 501 U.S. 294, 303-04 (1991).

The personal involvement of a defendant is a prerequisite for the assessment of liability in a Section 1983 action, *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), and the doctrine of respondeat superior is inapplicable to these claims. *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981); *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973). If the defendant is a supervisory official, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct. *See Polk Cnty.*, 454 U.S. at 325; *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). In other words, supervisory officials may not be held liable merely because they held a position of authority. *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Rather, supervisory personnel may be considered "personally involved" only if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citing *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986)). [5]

[5]     Whether all five *Colon* factors for supervisor liability remain available in light of the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), has been debated by the district courts in this circuit. *See, e.g., Pearce v. Estate of Longo*, 766 F. Supp. 2d 367, 376 (N.D.N.Y. 2011), *rev'd in part on other grounds sub nom., Pearce v. Labella*, 473 F. App'x 16 (2d Cir. 2012) (recognizing that several district courts in the Second Circuit have debated *Iqbal*'s impact on the five Colon factors); *Kleehammer v. Monroe Cnty.*, 743 F. Supp. 2d 175, 185 (W.D.N.Y. 2010) (holding that "[o]nly the first and part of the third Colon categories pass Iqbal's muster...."); *D'Olimpio v. Crisafi*, 718 F. Supp. 2d 340, 347 (S.D.N.Y. 2010) (disagreeing that Iqbal eliminated Colon's personal involvement standard). Regardless of whether *Colon* or an *Iqbal*-limited standard applies, plaintiff has failed to allege the personal involvement of defendant Cuomo in any actionable wrongdoing.

**\*6** Thus, a plaintiff must demonstrate some tangible connection between the constitutional violation alleged and the particular defendant. *See Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not survive sua sponte review. *Id.* (alterations and internal quotations omitted). Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

Here, plaintiff claims that while he was at Eastern C.F., he was confined in a cell without a feed-up slot, and he had to climb his cell bars to reach his food trays. Compl. at 22, 25. At one point, while climbing his bars, he fell and suffered serious injuries. *Id.* Construing the complaint liberally, plaintiff claims that defendant Governor Cuomo is responsible for plaintiff's injuries because he "failed to check on the living establishment of [plaintiff] and his fellow inmates at Eastern NY Correctional Facility" and he gave funds to the Commissioner of DOCCS but failed to make sure that Eastern C.F. had feed-up slots. *Id.* at 22. These allegations fail to demonstrate that defendant Cuomo was personally involved the alleged wrongdoing that led to plaintiff's fall or injury at Eastern C.F. Instead, it appears that plaintiff names defendant Cuomo simply because he is the Governor of the State of New York. *See, e.g., Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002) (affirming dismissal of claim against governor because plaintiff failed to allege governor's personal involvement in prison's smoking policies). There are also no facts to plausibly suggest that defendant Governor Cuomo knew that plaintiff was housed in a cell without a feed-up slot, or that even if he did, that he was aware of a risk to plaintiff's safety, and deliberately disregarded that risk. *See Coronado v. Goord*, No. 99 Civ. 1674, 2000 WL 1372834, at \*7 (S.D.N.Y. Sept. 25, 2000) (dismissing Eighth Amendment claim against Governor

**Fox v. Lee, Not Reported in Fed. Supp. (2015)**
Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 48 of 353
2015 WL 13949048

for failure to show that he knew of and deliberately disregarded a substantial risk of serious harm to inmates that may have been caused by the combination of overcrowding and understaffing at the prison). Indeed, plaintiff himself refers to defendant Cuomo's conduct as "neglect," *see* Compl. at 22, which does not rise to the level of deliberate indifference.

Defendant Cuomo, and all claims against him, are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 7. DOCCS Directives

A Section 1983 claim brought in federal court is not the appropriate forum to raise violations of prison regulations or state law. *See Hyman v. Holder*, No. 96 Civ. 7748, 2001 WL 262665, at *6 (S.D.N.Y. Mar. 15, 2001) (the failure to follow a New York State DOCCS Directive or prison regulation does not give rise to a federal constitutional claim); *see also Patterson v. Coughlin*, 761 F.2d 886, 891 (2d Cir. 1985) ("[A] state employee's failure to conform to state law does not itself violate the Constitution and is not alone actionable under § 1983 ...."); *Fluent v. Salamanca Indian Lease Auth.*, 847 F. Supp. 1046, 1056 (W.D.N.Y. 1994) (Section 1983 imposes liability for violations of rights protected by the Constitution and laws of the United States, not for violations arising solely out of state or common-law principles). Thus, to the extent plaintiff claims that defendants have failed to comply with state laws or regulations, he has failed to state a claim under Section 1983.

**\*7** The claims that defendants Simmons and Sullivan violated DOCCS directives are dismissed pursuant to 28 U.S.C. § 1915(e) (2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 8. Conspiracy Claims

A conspiracy claim under Section 1983 must allege that: (1) an agreement existed between two or more state actors to act in concert to inflict an unconstitutional injury on plaintiff and (2) an overt act was committed in furtherance of that goal. *Ciambriello v. County of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002). Vague and conclusory allegations that defendants have engaged in a conspiracy must be dismissed. *Ciambriello*, 292 F.3d at 325; *see also Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss."); *Brown v. City of Oneonta*, 106 F.3d 1125, 1133 (2d Cir. 1997) (complaints containing only conclusory, vague or general allegations of a conspiracy to deprive a person of constitutional rights do not state a claim for relief). To state a conspiracy claim, plaintiff "must provide some factual basis supporting a meeting of the minds." *See Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003). Thus, plaintiff must "make an effort to provide some details of time and place and the alleged effects of the conspiracy ... [including] facts to demonstrate that the defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Warren v. Fischl*, 33 F. Supp. 2d 171, 177 (E.D.N.Y. 1999) (citations omitted).

Here, plaintiff does not assert any facts giving rise to a conspiracy, but instead makes only vague statements that defendants somehow acted in concert to deny him rights. *See, e.g.*, Compl. at 12-13 (alleging that defendant Webbe was "conspiring" with defendant Madison to violate plaintiff's rights); *id.* at 19 (alleging that defendant Webbe "conspired" with defendants Sullivan, Lee, and Russo). Aside from plaintiff's conclusory statements that defendants conspired, the complaint alleges no facts upon which it may be plausibly inferred that the defendants came to an agreement, or a "meeting of the minds," to violate his constitutional rights. *See Iqbal*, 556 U.S. at 680-81 (allegations that the defendants "willfully and maliciously agreed to subject" the plaintiff to harsh conditions of confinement "solely on account of his religion, race, and/or national origin" found conclusory); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (finding allegations of conspiracy "baseless" where the plaintiff "offer[ed] not a single fact to corroborate her allegation of a 'meeting of the minds' among the conspirators"); *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (dismissal of "conclusory, vague or general allegations of conspiracy to deprive a person of constitutional rights" is proper).

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 49 of 353

Fox v. Lee, Not Reported in Fed. Supp. (2015)

2015 WL 13949048

The conspiracy claims against defendants Lee, Madison, Webbe, Russo, and Sullivan are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 9. Remainder of the Claims

**\*8**  Mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see e.g. Sealed Plaintiff*, 537 F.3d at 191, the Court finds that the following remaining claims survive sua sponte review and require a response: (1) the First Amendment Free Exercise Clause and RLUIPA claims against defendants Madison, Miller, Williamson, Cruz, and Vanacore; (2) the First Amendment retaliation claims against defendants Lee, Madison, Kozak, Bey, Simmons, Wendland, Williamson, Cruz, Vanacore, and Barg; (3) the Eighth Amendment excessive force claim against defendant Cruz; (4) claims that defendants Calao, Jennings and Labatte interfered with plaintiff's First Amendment right of access to the courts; (5) the Fourteenth Amendment due process claims against defendants Simmons, Wendland, and Russo; and (6) the supervisory claims against defendants Lee and Annucci. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

### D. Motion for Appointment of Counsel

Turning to plaintiff's motion for appointment of counsel (Dkt. No. 4), courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin*, 114 F.3d 390, 392-93 (2d Cir. 1997). Instead, a number of factors must be carefully considered by the court in ruling upon such a motion:

> [The Court] should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994) (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986)). This is not to say that all, or indeed any, of these factors are controlling in a particular case. Rather, each case must be decided on its own facts. *Velasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. 1995) (McAvoy, C.J.) (citing *Hodge*, 802 F.2d at 61). The Court must consider the issue of appointment carefully because "every assignment of a volunteer lawyer to an undeserving client deprives society of a volunteer lawyer available for a deserving cause." *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 172 (2d Cir. 1989).

Even if the Court were to assume, for purposes of this motion, that plaintiff's position seems likely to be of substance, the relevant factors weigh decidedly against granting plaintiff's motion at this time. For example: (1) the case does not present novel or complex issues; (2) it appears to the Court as though, to date, plaintiff has been able to effectively litigate this action; (3) while it is possible that there will be conflicting evidence implicating the need for cross-examination at the time of the trial, as is the case in many actions brought under Section 1983 by pro se litigants, "this factor alone is not determinative of a motion for appointment of counsel," *Velasquez*, 899 F. Supp. at 974; (4) if this case survives any dispositive motions filed by defendants, it is highly probable that this Court will appoint trial counsel at the final pretrial conference; and (5) this Court is unaware of any special reasons why appointment of counsel at this time would be more likely to lead to a just determination of this litigation. Thus, plaintiff's motion for the appointment of counsel is denied.

**Fox v. Lee, Not Reported in Fed. Supp. (2015)**
2015 WL 13949048

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 50 of 353

## E. Motion for Preliminary Injunctive Relief

"In general, district courts may grant a preliminary injunction where a plaintiff demonstrates 'irreparable harm' and meets one of two related standards: 'either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party.' " *Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir. 2014) (quoting *Lynch v. City of N.Y.*, 589 F.3d 94, 98 (2d Cir. 2009) (internal quotation marks omitted)). However, when the moving party seeks a "mandatory injunction that alters the status quo by commanding a positive act," the burden is even higher. *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 (2d Cir. 2011) (citing *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 n.4 (2d Cir. 2010) (internal quotation marks omitted)). A mandatory preliminary injunction "should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." *Cacchillo*, 638 F.3d at 406 (citing *Citigroup Global Mkts.*, 598 F.3d at 35 n.4) (internal quotation marks omitted); *see also Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995) (a plaintiff seeking a mandatory injunction must make a "clear" or "substantial" showing of a likelihood of success on the merits of his claim). The same standards used to review a request for a preliminary injunction govern consideration of an application for a temporary restraining order. *Local 1814, Int'l Longshoremen's Ass'n, AFL-CIO v. New York Shipping Ass'n, Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992); *Perri v. Bloomberg*, No. 06-CV-0403, 2008 WL 2944642, at * 2 (E.D.N.Y. Jul. 31, 2008). The district court has wide discretion in determining whether to grant preliminary injunctive relief. *Moore v. Consol. Edison Co. of New York, Inc.*, 409 F.3d 506, 510 (2d Cir. 2005).

**\*9** Plaintiff requests preliminary injunctive relief (1) ordering Kingston County District Attorney D. Holley Carnright to "execute charges against all above named defendants" in accordance with "the criminal charges" drafted by plaintiff; (2) directing Kingston City Court Judge Lawrence E. Ball "to file all charges against officials pursuant to criminal procedure law 100.55 and 20.50" and to act impartially despite the official status of the defendants; (3) enjoining defendant Commissioner Annucci from transferring plaintiff out of Eastern C.F.; and (4) enjoining the defendants from punishing plaintiff for refusing to cut his hair, denying plaintiff copies, or transferring him from Eastern C.F. for refusing to cut his hair. Dkt. No. 5 at 7-9; *see also* Dkt. No. 5-1 at 5-125.

Even if the Court were to assume that plaintiff alleges irreparable harm, his motion would be denied for his failure to demonstrate, with evidence, a likelihood of success on the merits of his underlying claims, or sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in his favor. *See Ivy Mar Co. v. C.R. Seasons Ltd.*, 907 F. Supp. 547, 561 (E.D.N.Y. 1995) ("[B]are allegations, without more, are insufficient for the issuance of a preliminary injunction."); *Hancock v. Essential Res., Inc.,* 792 F. Supp. 924, 928 (S.D.N.Y. 1992) ("Preliminary injunctive relief cannot rest on mere hypotheticals.").

Additionally, to the extent that plaintiff seeks to enjoin the actions of non-parties, namely District Attorney Carnright and Judge Ball, the Court lacks subject matter jurisdiction to enjoin their actions. *See Stewart v. United States I.N.S.*, 762 F.2d 193, 198-99 (2d Cir. 1985) (preliminary injunctive relief may be obtained "[o]nly after an action has been commenced"); *Williams v. State University of New York*, 635 F. Supp. 1243, 1246 (E.D.N.Y. 1986) ("prior to the filing of a complaint a court lacks subject matter jurisdiction and is powerless to grant preliminary injunctive relief"); *In re Rationis Enterprises, Inc. of Panama*, 261 F.3d 264, 270 (2d Cir. 2001) ("A court may not grant a final, or even an interlocutory, injunction over a party over whom it does not have personal jurisdiction.").

Finally, there is no basis upon which this Court may properly grant plaintiff's request that he remain in Eastern C.F. Plaintiff's desire to be confined in a specific correctional facility is not sufficient to warrant the requested judicial relief. Indeed, it is the New York State DOCCS, and not this Court, that determines where plaintiff will be housed during his period of incarceration. *See Meachum v. Fano*, 427 U.S. 215, 229 (1976) (stating that "[t]he federal courts do not sit to supervise state prisons, the administration of which is [of] acute interest to the States" (citations omitted)); *Olim v. Wakinekona*, 461 U.S. 238, 248-49 (1983) (stating that inmates have no right to be confined in a particular state or particular prison within a given state); *Montayne v. Haymes*, 427 U.S. 236, 243 (1976) (holding that New York state prisoners have no right to incarceration at a particular prison

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 51 of 353

**Fox v. Lee, Not Reported in Fed. Supp. (2015)**

2015 WL 13949048

facility). It is well-established that DOCCS has "broad leeway in deciding where to house the inmates under its protective care, be it state or county jail." *McFadden v. Solfaro*, Nos. 95 Civ. 1148, 95 Civ. 3790, 1998 WL 199923, *10 (S.D.N.Y. Apr. 23, 1998).

Accordingly, for the foregoing reasons, plaintiff's motion for preliminary injunctive relief (Dkt. No. 5) is denied.

### III. CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that plaintiff's IFP Application (Dkt. No. 2) is **GRANTED**. [6] The Clerk shall provide the Superintendent of the facility that plaintiff has designated as his current location with a copy of plaintiff's inmate authorization form (Dkt. No. 3) and notify that official that plaintiff has filed this action and is required to pay to the Northern District of New York the entire statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915; and it is further

[6] Although his IFP Application has been granted, plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

 **\*10  ORDERED** that the Clerk provide a copy of plaintiff's inmate authorization form to the Financial Deputy of the Clerk's Office; and it is further

**ORDERED** that the claims for monetary damages under RLUIPA are **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b); [7] and it is further

[7] Generally, when a district court dismisses a pro se action sua sponte, the plaintiff will be allowed to amend his action. *See Gomez v. USAA Fed. Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999). However, an opportunity to amend is not required where the defects in the plaintiff's claims are substantive rather than merely formal, such that any amendment would be futile. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Pucci v. Brown*, 423 Fed. App'x 77, 78 (2d Cir. 2011). Amendment of these claims would be futile.

**ORDERED** that the following claims survive sua sponte review and require a response: (1) the First Amendment Free Exercise Clause and RLUIPA claims against defendants Madison, Miller, Williamson, Cruz, and Vanacore; (2) the First Amendment retaliation claims against defendants Lee, Madison, Kozak, Bey, Simmons, Wendland, Williamson, Cruz, Vanacore, and Barg; (3) the Eighth Amendment excessive force claim against defendant Cruz; (4) the claims that defendants Calao, Jennings and Labatte interfered with plaintiff's First Amendment right of access to the courts; (5) the Fourteenth Amendment due process claims against defendants Simmons, Wendland, and Russo; and (6) the supervisory claims against defendants Lee and Annucci; and it is further

**ORDERED** that all remaining claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted; [8] and it is further

[8] Should plaintiff seek to pursue any of the claims dismissed without prejudice, he must file an amended complaint that complies with Rule 15 of the Federal Rules of Civil Procedure. Any amended complaint, which shall supersede and replace the original complaint in its entirety, must allege claims of misconduct or wrongdoing against each named defendant which plaintiff has a legal right to pursue, and over which this Court may properly exercise jurisdiction. Any amended complaint filed by plaintiff must also comply with the pleading requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure.

**ORDERED** that defendants Waugh, Connor, Webbe, Cuomo, Henry, Lifield, Bradley, Schadel, and Sullivan are **DISMISSED without prejudice** in accordance with 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted; and it is further

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 52 of 353

Fox v. Lee, Not Reported in Fed. Supp. (2015)
2015 WL 13949048

**ORDERED** that upon receipt from plaintiff of the documents required for service of process, the Clerk shall issue summonses and forward them, along with copies of the complaint, to the United States Marshal for service upon the remaining defendants. The Clerk shall forward a copy of the summons and complaint by mail to the Office of the New York State Attorney General, together with a copy of this Decision and Order; and it is further

**ORDERED** that a response to the complaint be filed by the remaining defendants, or their counsel, as provided for in the Federal Rules of Civil Procedure; and it is further

 **\*11**  **ORDERED** that plaintiff's motion for appointment of counsel (Dkt. No. 4) is **DENIED**; and it is further

**ORDERED** that plaintiff's motion for preliminary injunctive relief (Dkt. No. 5) is **DENIED**; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions; motions will be decided on submitted papers, without oral argument, unless otherwise ordered by this Court. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; his failure to do so will result in the dismissal of this action**; and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on plaintiff.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2015 WL 13949048

---

**End of Document**                                            © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:22-cv-00638-DNH-TWD   Document 58   Filed 02/28/25   Page 53 of 353
Trapani v. Pullen, Not Reported in Fed. Supp. (2016)
2016 WL 1295137

2016 WL 1295137
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Damian TRAPANI, Plaintiff,

v.

Brian PULLEN, et al., Defendants.

9:14-CV-00556 (TJM/TWD)
|
Signed February 17, 2016
|
Filed 02/18/2016

**Attorneys and Law Firms**

DAMIAN TRAPANI, 32911, Schenectady County Jail, 320 Veeder Avenue, Schenectady, New York 12307, Plaintiff pro se.

HON. ERIC T. SCHNEIDERMAN, Attorney General for the State of New York, The Capitol, OF COUNSEL: HELENA LYNCH, ESQ., Albany, New York 12224, Counsel for Defendants.

### ORDER AND REPORT-RECOMMENDATION

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

**\*1** This *pro se* action commenced under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000, *et seq.,* has been referred to this Court for Report and Recommendation by the Honorable Thomas J. McAvoy, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). The matter is now before the Court on Defendants' motion to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 41(b) and Local Rule 10.1, or in the alternative, to dismiss certain claims in Plaintiff's Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 23.) Plaintiff has opposed the motion. (Dkt. No. 32.) For the reasons explained herein, the Court recommends that Defendants' Rule 41(b) motion to dismiss be denied as moot, and that Defendants' Rule 12(b)(6) motion to dismiss be granted in part and denied in part.

### I. PROCEDURAL HISTORY

At all times relevant to this action, Plaintiff was a prisoner in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). (Dkt. No. 1 at 11. [1]) On May 12, 2014, Plaintiff commenced this action naming forty-nine employees of DOCCS as Defendants, alleging violations of his rights under the First, Fourth, Eighth, and Fourteenth Amendments, and RLUIPA. *Id.* at 6–11. Plaintiff's claims arise from events that occurred between October 2013 and December 2013 at Coxsackie Correctional Facility ("Coxsackie"), Elmira Correctional Facility ("Elmira"), and Upstate Correctional Facility ("Upstate"). *Id.* at 11–43.

[1]    Unless otherwise noted, page references to documents identified by docket number are to the original page number, not the page number assigned by the Court's CM/ECF electronic docketing system.

On January 21, 2015, Judge McAvoy granted Plaintiff's application to proceed *in forma pauperis* and issued a Decision and Order severing and transferring the claims against eleven of the Defendants relating to Elmira to the Western District of New York. (Dkt. No. 12.) The following claims allegedly occurring at Coxsackie and Upstate survived the Court's *sua sponte* review

2016 WL 1295137

pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b): (1) Eighth Amendment excessive force claims against Defendants James G. McKeown ("McKeown"), John P. Bonafede ("Bonafede"), S. Ranze ("Ranze"), S. Lamare [2] ("LaMare"), John Does # # 16–20, and Daniel F. Martusello, Jr., [3] ("Martuscello"); (2) Eighth Amendment failure to intervene claim against Defendant D. Dixon ("Dixon"); (3) First Amendment retaliation claim against Defendants Brian Pullen ("Pullen") and Megan McGlynn ("McGlynn"); (4) First Amendment free exercise against claim against Defendants C. King ("King"), S. Syed ("Syed"), and Jane Doe # 5; and (5) RLUIPA claim against King, Syed, and Jane Doe # 5. (Dkt. No. 12 at 35–37.)

[2]    This Defendant's name is spelled "Lamare" in the caption. The Court will use Defendants' spelling and refer to this Defendant as "LaMare". (Dkt. No. 23.)

[3]    This Defendant's name is spelled "Martusello" in the caption. The Court will use Defendants' spelling and refer to this Defendant as "Martuscello". (Dkt. No. 23.)

**\*2**  On March 23, 2015, Defendants moved to dismiss Plaintiff's Complaint with prejudice pursuant to Rule 41(b) and Local Rule 10.1 based on Plaintiff's failure to notify the Court of his change of address. (Dkt. No. 23–3 at 2–4.) In the alternative, Defendants moved to dismiss certain claims in Plaintiff's Complaint for failure to state a claim pursuant to Rule 12(b)(6). *Id.* at 5–12. Specifically, Defendants move to dismiss (1) all claims stated against Martuscello, Pullen, McGlynn, King, Syed, LaMare, John Does # # 16–20, and Jane Doe # 5; and (2) all claims seeking declaratory and injunctive relief. *Id.* On March 25, 2015, McKeown, Bonafede, Ranze, and Dixon timely answered Plaintiff's Complaint. (Dkt. No. 24.)

On April 14, 2015, Judge McAvoy issued an Order instructing Plaintiff to provide the Clerk with his current address. (Dkt. No. 26.) Plaintiff has since complied with that Order (Dkt. No. 28) and in light of his *pro se* status, this Court granted Plaintiff an extension of time to file a response to Defendants' Rule 12(b)(6) motion. (Dkt. No. 29.) Plaintiff timely opposed the motion. (Dkt. No. 32.) Defendants have filed a reply. (Dkt. No. 34.)

## II. BACKGROUND
The following relevant facts are derived from the face of Plaintiff's Complaint and are accepted as true for the purposes of deciding the pending motion to dismiss. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007).

On October 29, 2013, Plaintiff arrived at Coxsackie and "made known to staff that he is from the same county where the facility was situated in, and ha[s] family and past associations with staff that worked or still work at the facility." (Dkt. No. 1 at 11–12.) Despite providing DOCCS with this information, Plaintiff was placed in general population housing. *Id.* at 12.

On November 10, 2013, Plaintiff was issued a false misbehavior report for "openly engaging in the solitary act." *Id.* The next day, Plaintiff was threatened by DOCCS staff. *Id.* On November 12, 2013, Plaintiff was placed on keeplock. *Id.* at 13. That same day, McKeown, Bonafede, and Ranze escorted Plaintiff to the primary care unit, where they proceeded to "mercilessly and savagely beat" Plaintiff without provocation. *Id.* at 14, 47. McKeown, Bonafede, and Ranze continued to punch Plaintiff even after Sergeant Dixon, who was "responsible for overseeing the security of the primary care unit," made his presence known. *Id.* at 14–15. After this incident, Plaintiff was examined by a nurse. *Id.* at 15. To prevent possible false criminal charges from being lodged against him, Plaintiff lied and stated that he "reamed" his head against a wall himself. *Id.* Later that evening, Plaintiff was transferred to Elmira. *Id.* at 15–16.

On November 19, 2013, Plaintiff was transferred back to Coxsackie and was placed in the special housing unit ("SHU"). *Id.* at 23. Thereafter, Plaintiff was issued three misbehavior reports. *Id.* Two of the reports related to Plaintiff "openly masturbating" on November 11, 2013. *Id.* at 24. The third report was issued by McKeown to justify the November 12, 2013, assault. *Id.* On December 2, 2013, Plaintiff pleaded "not guilty" to all charges. *Id.* at 24, 27. The Superintendent's hearings were adjourned and resumed on December 9, 2013. *Id.* at 27. At that time, Plaintiff changed his plea of "not guilty" to "guilty" in order to retain his good time credits. *Id.* at 27–28. Plaintiff was found guilty of the charges issued in all three November misbehavior reports. *Id.*

2016 WL 1295137

at 38. Plaintiff appealed the decisions, which were reversed by Albert Prack, Director of Special Housing/Disciplinary Program of DOCCS. *Id.*

**\*3** On December 2, 2013, Plaintiff was verbally "accosted" by King at his SHU cell window. *Id.* at 25. On December 3, 2013, McGlynn notarized an "Affidavit of Service" for Plaintiff. *Id.* at 26. Plaintiff claims that "attached" to the Affidavit of Service were "several handwritten Inmate Grievance Complaints" that Plaintiff "intended to send" to Coxsackie's Inmate Grievance Resolution Committee, one of which "could have indirectly implicated" McGlynn as the Offender Rehabilitation Coordinator assigned to the SHU. *Id.* Later that evening, Plaintiff mailed the notarized Affidavit of Service and grievances.[4] *Id.*

| 4 | Plaintiff avers that on December 3, 2013, he used the prisoner grievance system available at Coxsackie to grieve the issues that occurred between November 10, 2013, and November 19, 2013. (Dkt. No. 1 at 44.) At every level these grievances were denied, either directly or through lack of timely response or no response. *Id.* |
|---|---|

Three days later, on December 6, 2013, Pullen approached Plaintiff's cell "unannounced and without notice" to deliver documents that Plaintiff had requested. *Id.* Thereafter, Pullen "wrote [Plaintiff] up" for "lewdly exposing himself." *Id.* at 26–27. McGlynn, who was with Pullen when the alleged misconduct occurred, signed as a witness to a November 6, 2013, misbehavior report even though she "did not witness the incident per se." *Id.* at 27. At the Superintendent's hearing involving this misbehavior report, Plaintiff was permitted to view the video surveillance of the "so called incident" and Pullen and McGlynn were called as witnesses. *Id.* at 33. Even though there was "absolutely no evidence adduced" during this hearing, Plaintiff was found guilty of the charges. *Id.* at 33. The decision was affirmed on January 2, 2014, by D. Venettozzi, Acting Director of Special Housing/ Inmate Disciplinary Program of DOCCS. *Id.* at 8, 38.

While at Coxsackie, Plaintiff, "a professed adherent to the Jewish religion" was deprived of Kosher meals from December 6, 2013, until December 20, 2013. *Id.* at 27, 49.

Plaintiff tried using the prisoner grievance system at Coxsackie to resolve the problems that arose subsequent to December 3, 2013, but was held "incommunicado by the corrections staff he was trying to complain of." *Id.* at 44.

On December 20, 2013, Plaintiff was transferred to Upstate. *Id.* at 38–39. Upon his arrival, Plaintiff was "mercilessly beat" by LaMare and John Does # # 16–20. *Id.* at 39–40. Plaintiff was kicked, punched with closed fists, and repeatedly struck in the groin area with a nightstick. *Id.* at 40. John Doe # 16 choked Plaintiff and threatened further physical harm, including strangling Plaintiff to death, if he did "any of the acts he was accused of doing at his former facility" while housed at Upstate. *Id.*

Plaintiff claims that within twenty-one days of his arrival at Upstate, he "resubmitted" grievances to Upstate because the grievance procedure was "unavailable" to him at Coxsackie. *Id.* at 44. Plaintiff's grievances were dismissed as untimely, and his appeals for late consideration were denied "even though the grievance procedure at Coxsackie was unavailable to him." *Id.* Plaintiff further argued that the grievances contained "several related incidents," including the December 20, 2013, use of excessive force incident, which "were by themselves timely," and therefore should have been considered on the merits. *Id.* at 44–45. However, Plaintiff also states that he was "unable to make a separate grievance for review, without fear of retaliation, for the excessive use of force incident occurring upon his arrival at Upstate." *Id.* at 45. Finally, Plaintiff claims that he "exhausted all available administrative appeals for each and every disciplinary action taken against him." *Id.*

## III. LEGAL STANDARD GOVERNING RULE 12(b)(6) MOTIONS TO DISMISS

**\*4** A defendant may move to dismiss a complaint "for failure to state a claim upon which relief can be granted" under Rule 12(b)(6). The motion tests the formal legal sufficiency of the complaint by determining whether it conforms to Federal Rule of Civil Procedure 8(a)(2), which requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bush v. Masiello,* 55 F.R.D. 72, 74 (S.D.N.Y.1972). Satisfaction of the requirement that a plaintiff "show" that he or she is entitled to relief requires that the complaint "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,*

2016 WL 1295137

550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id.* at 679 (internal citation and punctuation omitted).

A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim that is plausible on its face." *Twombly,* 550 U.S. at 570. While Rule 8(a)(2) "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-harmed-me-accusation." *Iqbal,* 556 U.S. at 678 (citation and internal quotation marks omitted). A complaint which "tenders 'naked assertion[s]' devoid of 'further factual enhancement' " does not suffice. *Id.* (citation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678.

Where a party is proceeding *pro se,* the court is obliged to "read [the *pro se* party's] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *See Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994); *see also Harris v. Mills,* 572 F.3d 66, 72 (2d Cir.2009) (courts remain obligated to construe *pro se* complaints liberally even after *Twombly* ). "The mandate to read the papers of pro se litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual allegations are consistent with the allegations of the plaintiff's complaint." *Robles v. Bleau,* No. 07–CV–0464, 2008 WL 4693153, at *6 and n.41, 2008 U.S. Dist. LEXIS 110029, at *26–27 and n.41 (N.D.N.Y. Oct. 22, 2008) [5] (collecting cases); *Donhauser v. Goord,* 314 F.Supp.2d 119, 121 (N.D.N.Y.2004) (where a *pro se* is faced with a motion to dismiss, a court may consider materials outside of the complaint "to the extent they are consistent with the allegations in the complaint"), *vacated in part on other grounds,* 317 F.Supp.2d 160 (N.D.N.Y.2004); *see also Gil v. Mooney,* 824 F.2d 192, 195 (2d Cir.1987) (in reviewing district court's dismissal of *pro se* plaintiff's claim, Second Circuit considered plaintiff's affidavit submitted in opposition to motion to dismiss).

[5]    The Court will provide Plaintiff with copies of all unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders,* 557 F.3d 76 (2d Cir.2009) (per curiam).

Where a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Id.* at 112 (citation omitted).

## IV. ANALYSIS

**\*5**  Defendants moved to dismiss Plaintiff's Complaint with prejudice pursuant to Rule 41(b) and Local Rule 10.1 based on Plaintiff's failure to notify the Court of his change of address. (Dkt. No. 23–3 at 2–4.) Because Plaintiff has since notified the Clerk of his current address, the Court recommends denying Defendants' Rule 41(b) motion to dismiss as moot.

Defendants moved in the alternative pursuant to Rule 12(b)(6) to dismiss certain claims in Plaintiff's Complaint for failure to state a claim. *Id.* at 5–12. Specifically, Defendants argue that (1) all claims against Pullen, McGlynn, King, Syed, LaMare, John Does # # 16–20, and Jane Doe # 5 should be dismissed based on Plaintiff's failure to exhaust his administrative remedies; (2) the Eighth Amendment supervisory claim against Martuscello should be dismissed for failure to state a claim; (3) the First

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 57 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Amendment retaliation claim against Pullen and McGlynn should be dismissed for failure to state a claim; (4) the RLUIPA claim should be dismissed as moot; and (5) Plaintiff's claims for declaratory and injunctive relief should be dismissed as moot. *Id.*

A. *Exhaustion of Administrative Remedies*

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (2015). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002).

In order to properly exhaust administrative remedies under the PLRA, inmates are required to complete the administrative review process in accordance with the rules applicable to the particular institution to which they are confined. *Jones v. Bock,* 549 U.S. 199, 218 (2007) (citing *Woodford v. Ngo,* 548 U.S. 81, 88 (2006)). In New York State prisons, DOCCS has a well-established three-step inmate grievance program. N.Y. Comp.Codes R. & Regs. tit. 7, § 701.5 (2016).

First, the prison inmate must submit a grievance to the clerk within twenty-one days of the alleged action. *Id.* § 701.5(a)(1). The Inmate Grievance Program Committee ("IGPC") must hold a hearing within sixteen days and issue a written decision within two days of the hearing. *Id.* §§ 701.5(b)(2)(i), (ii). Second, the prison inmate may appeal the IGPC's decision, within seven days of receipt, to the facility superintendent. *Id.* § 701.5(c)(1). Third and finally, the prison inmate may appeal the facility superintendent's decision to the Central Office Review Committee ("CORC") within seven days of receipt. *Id.* §§ 701.5(d)(i), (ii). CORC has thirty days to review the appeal and issue a decision. *Id.* § 701.5(d)(2)(ii). If a prisoner has failed to properly follow each of the applicable steps prior to commencing litigation, he has failed to exhaust his administrative remedies. *Woodford,* 548 U.S. at 93.

Significantly, even if Plaintiff failed to exhaust available administrative remedies before commencing this action, that failure might be excusable. The Second Circuit has held that a three-part inquiry is appropriate where a plaintiff has failed to exhaust his available administrative remedies. *Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004). [6]

[6]     The Second Circuit has not yet decided whether the *Hemphill* rule has survived the Supreme Court's decision in *Woodford,* 548 U.S. 81. *Amado v. Andrews,* 655 F.3d 89, 102 (2d Cir.2011).

**\*6**  First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner." *Id.* (citation omitted). Second, if administrative remedies were available,

> the court should ... inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it ... or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense.

*Id.* (citations omitted).

Third, if the remedies were available and defendant did not forfeit and was not estopped from raising the non-exhaustion defense, "the court should consider whether special circumstances have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." *Id.* (citations and internal quotations omitted). Justification "must be determined by looking at the circumstances which might understandably lead ... uncounselled prisoners to fail to grieve in the normally required way." *Giano v. Goord,* 380 F.3d 670, 678 (2d Cir.2004).

2016 WL 1295137

The failure of a prisoner to satisfy the PLRA's exhaustion requirement is an affirmative defense that must be raised by a defendant in response to an inmate suit. *Jones v. Bock,* 549 U.S. 199, 216 (2007); *Jenkins v. Haubert,* 179 F.3d 19, 28–29 (2d Cir.1999). Thus, a prisoner has no independent duty to plead facts plausibly suggesting that he exhausted his available remedies in order to state an actionable civil rights claim. *Jones,* 549 U.S. at 211–17. However, this "is not to say that failure to exhaust cannot be a basis for dismissal for failure to state a claim." *Id.* at 216. If a prisoner chooses to plead facts regarding exhaustion, and those facts show that he failed to exhaust his available administrative remedies, then his complaint may be dismissed for failure to state a claim. *Id.* at 215–16. "Simply stated, if a prisoner says nothing or little about exhaustion in his pro se civil rights complaint, he is likely protected from a [Rule] 12(b)(6) motion to dismiss premised on failure to exhaust. However, if he says too much about exhaustion in that complaint so that his non-exhaustion is readily apparent, he may 'plead himself out of court,' as the saying goes." *McCloud v. Tureglio,* No. 9:07–CV–0650, 2008 WL 1772305, at *11, 2008 U.S. Dist. LEXIS 124388, at *40 (N.D.N.Y. Apr. 15, 2008). This is what happened here, according to Defendants.

Defendants argue that Plaintiff "conceded" that he failed to exhaust (1) the First Amendment retaliation claim against Pullen and McGlynn; (2) the First Amendment free exercise claim against King, Syed and Jane Doe # 5; and (3) the Eighth Amendment excessive force claim against LaMare and John Does # # 16–20, and therefore the claims must be dismissed. (Dkt. No. 23–3 at 5–8.) The Court disagrees.

Typically, "the exhaustion defense is one that is not particularly well-suited for resolution for a motion to dismiss, absent the clearest indication in a plaintiff's complaint that a failure to exhaust has occurred." *Lewis v. Havernack,* No. 9:12–CV–0031(GLS/DEP), 2013 WL 1294606, at *4, 2013 U.S. Dist. LEXIS 48471, at *12–13 (N.D.N.Y. Mar. 28, 2013); *Laporte v. Fisher,* No. 11–CV–9458 (PKK)(HBP), 2012 WL 5278543, at *5, 2012 U.S. Dist. LEXIS 154203, at *13 (S.D.N.Y. Oct. 24, 2012) ("Dismissal pursuant to Rule 12(b)(6) for failure to exhaust is thus appropriate only where nonexhaustion is apparent from the face of the complaint.") (citing *McCoy v. Goord,* 255 F.Supp.2d 233, 251 (S.D.N.Y.2003)).

 **\*7** Here, Defendants argue that Plaintiff conceded that he failed to exhaust his administrative remedies for incidents arising at Coxsackie subsequent to December 3, 2013. (Dkt. No. 23–3 at 7.) Moreover, despite Plaintiff's allegations that he was "held incommunicado by the corrections staff he was trying to complain of," Defendants argue that Plaintiff fails to identify an affirmative act by an official that prevented him from using Coxsackie's grievance procedure. *Id.* "However, it is Defendants' burden to demonstrate nonexhaustion, not Plaintiff's burden to plead exhaustion with particularity." *Barnes v. County of Monroe,* 85 F.Supp.3d 696 (W.D.N.Y.2015); *see also Bailey v. Fortier,* No. 9:09–CV–0742 (GLS/DEP), 2012 WL 6935254, at*6, 2012 U.S. Dist. LEXIS 190646, at *15 (N.D.N.Y. Oct. 4, 2012) (the "ultimate burden of proof with respect to the exhaustion defense, remains, at all times, with the defendant"); *see also Garvin v. Rivera,* No. 13–cv–7054 (RJS), 2015 WL 876464, at *5, 2015 U.S. Dist. LEXIS 24616, at *13 (S.D.N.Y. Feb. 28, 2015) ("[I]t is unrealistic to expect a pro se plaintiff to know that the inclusion of facts reflecting his failure to exhaust administrative remedies triggers an affirmative duty to plead additional facts concerning the relevant *Hemphill* factors that would excuse his failure to exhaust.") Because nonexhaustion is thus not apparent from the face of Plaintiff's Complaint, including whether a *Hemphill* exception applies, dismissal is not appropriate.

With respect to the Eighth Amendment excessive force claim occurring at Upstate, Plaintiff alleges that he was "mercilessly beat" by LaMare and John Does # # 16–20. *Id.* at 39–40. Plaintiff states that he was unable to make a "separate grievance for review, without fear of retaliation, for the excessive use of force incident occurring upon his arrival at Upstate." *Id.* at 45. By isolating this statement, Defendants argue that Plaintiff conceded that he failed to exhaust his administrative remedies, and therefore this claim should be dismissed. (Dkt. No. 232 at 6.) However, Plaintiff further alleges that while John Doe # 16 was strangling him, John Doe # 16 "threatened" Plaintiff with further physical harm, including strangling Plaintiff to death if Plaintiff engaged in lewd conduct or any assaults on staff. (Dkt. No. 1 at 40.) Plaintiff alleges he was repeatedly struck by John Doe # 16 and was told that if "he goes along with the program and [does] not make an issue of the incident it will all end." *Id.*

Here, Plaintiff's Eighth Amendment excessive force claim against LaMare and John Does # # 16–20 cannot be dismissed for failure to exhaust administrative remedies. *See Hemphill,* 380 F.3d at 690 (petitioner's allegations of threats may estop defendants

2016 WL 1295137

from asserting exhaustion defense); *Ziemba v. Wezner,* 366 F.3d 161, 162–63 (2d Cir.2004) (exhaustion defense may be estopped where *inter alia,* defendants allegedly beat and threatened petitioner).

In his opposition, Plaintiff attempts to "clarify" the record and declares that he submitted grievances to Coxsackie and Upstate, which were returned to Plaintiff as "untimely" even though mitigating circumstances warranted an exception to the time period. (Dkt. No. 32 at 7–8. [7] ) He further claims that he believes "at least one" grievance was "reinstated for response." *Id.* at 8. Finally, Plaintiff alleges that he sustained "severe injuries that left him somewhat incapable of participating in the grievance program." *Id.*

[7]    Page references to Plaintiff's opposition brief (Dkt. No. 32) are to the automatic pages assigned by the Court's CM/ECF electronic system.

Notwithstanding the inconsistencies between Plaintiff's Complaint and opposition brief, liberally construing Plaintiff's Complaint and affording him the benefit of every reasonable inference, the Court concludes that it would be inappropriate at this stage in the litigation to dismiss Plaintiff's Eighth Amendment excessive force claim for failure to exhaust administrative remedies. *See, e.g., Roland v. Wenz,* No. 10–CV–0089 (GLS/DEP), 2010 WL 2834828, at *4, 2010 U.S. Dist. LEXIS 72009, at *16 (N.D.N.Y. May 24, 2010) (plaintiff's claim that he exhausted administrative remedies should be "fully probed" before his complaint can be dismissed) (citing *Gayle v. Benware,* No. 08 Civ. 8017, 2009 WL 2223910, at *5–6, 2009 U.S. Dist. LEXIS 131369, at *8–12 (S.D.N.Y. Jul. 27, 2009) (denying motion to dismiss where plaintiff conceded in his complaint that he had not filed a grievance but in response to defendant's motion alleged for the first time that he had attempted to file a grievance, but staff prevented him from doing so)).

**\*8**    Accordingly, the Court recommends denying Defendants' Rule 12(b)(6) motion to dismiss (1) the First Amendment retaliation claim against Pullen and McGlynn; (2) the First Amendment free exercise claim against King, Syed and Jane Doe # 5; and (3) the Eighth Amendment excessive force claim against LaMare and John Does # # 16–20 based upon Plaintiff's failure to exhaust his administrative remedies under the PLRA. The Court expresses no opinion as to whether Plaintiff's claims can withstand a properly filed motion for summary judgment.

B. *Eighth Amendment Excessive Force Claim Against Defendant Martuscello*

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia,* the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven,* 720 F.3d 133, 138 (2d Cir.2013) (citations omitted). "Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal,* 556 U.S. at 67 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior."). "Holding a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement." *Groves v. Davis,* No. 9:11–CV– 1317 (GTS/RFT), 2012 WL 651919, at *6, 2012 U.S. Dist. LEXIS 25367, at *22–23 (N.D.N.Y. Feb. 28, 2012) (citing *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977)); *see also Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003) (a "mere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections ... in a § 1983 claim") (quoting *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985)). Therefore, "a plaintiff must ... allege a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986).

The Second Circuit has held that personal involvement by a supervisor necessary to state a claim under § 1983 may be found where: "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." *Colon,* 58 F.3d at 873. [8]

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 60 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

8  The Second Circuit has expressly declined to determine whether *Iqbal* eliminated any of the *Colon* bases for liability. *See Grullon,* 720 F.3d at 139.

On November 12, 2013, McKeown, Bonafede, and Ranze "mercilessly and savagely beat" Plaintiff without provocation. (Dkt. No. 1 at 14, 46–47.) Plaintiff brings a supervisory liability claim against, Martuscello, the Superintendent of Coxsackie. *Id.* at 7, 46–47. Plaintiff alleges that Martuscello "was deliberately indifferent" to Plaintiff's safety by failing to respond to concerns that Plaintiff expressed about his safety prior to the date he was subjected to the excessive force. *Id.* at 46–47. Plaintiff alleges that on October, 29, 2013, he "made known to staff that he is from the same county where the facility was located in, and ha[s] family and past associations with staff that worked or still worked at the facility. *Id.* at 11–12. Despite providing staff with this information, Plaintiff was placed in general population. *Id.* Plaintiff alleges that Martuscello allowed staff under his control to repeatedly abuse him "even after receiving a letter" that informed Martuscello that Plaintiff "possibly" knew several of the staff members, his family worked at Coxsackie and that his Inmate I.D. card was confiscated. *Id.* at 46–47. Finally, Plaintiff argues that by "acknowledging receipt of Inmate Grievance Complaints and responding thereto," Martuscello showed "deliberate indifference by not protecting him against these abuses." *Id.* at 47.

 **\*9**  Plaintiff's arguments do not establish Martuscello's personal involvement under any of the *Colon* categories. A prisoner's allegation that a supervisory official failed to respond to a grievance is insufficient to establish that the official "failed to remedy that violation after learning of it through a report or appeal" or "exhibited deliberate indifference ... by failing to act on information indicating that the violation was occurring." *Rivera v. Goord,* 119 F.Supp.2d 327, 344–45 (S.D.N.Y.2000); *see also Watson v. McGinnis,* 964 F.Supp. 127, 130 (S.D.N.Y.1997) ("The law is clear that allegations that an official ignored a prisoner's letter are insufficient to establish liability.").

Moreover, Plaintiff's allegation the he submitted grievance complaints to Martuscello after the alleged incident of excessive force does not support an inference that Martuscello was personally involved in that incident. *Bridgewater v. Taylor,* 832 F.Supp.2d 337, 348 (S.D.N.Y.2011); *see also Harnett v. Barr,* 538 F.Supp.2d 511, 524–25 (N.D.N.Y.2008) ("If the official is confronted with a violation that has already occurred and is not ongoing, then the official will not be found personally responsible for failing to 'remedy' a violation.").

Furthermore, conclusory claims that a supervisory official has failed to provide proper training and supervision or created a policy, without facts showing personal involvement, are legally insufficient to state a claim under any of the categories identified in *Colon. See Bridgewater,* 832 F.Supp.2d at 348; *White v. Fischer,* No. 9:09–CV–240 (DNH/DEP), 2010 WL 624081, at \*6, 2010 U.S. Dist. LEXIS 15492, at \*19 (N.D.N.Y. Feb. 18, 2010) ("Vague and conclusory allegations that a supervisor failed to train or properly monitor the actions of subordinate employees will not suffice to establish the requisite personal involvement and support a finding of liability."); *see also Pettus v. Morgenthau,* 554 F.3d 293, 300 (2d Cir.2009) (vague and conclusory allegations that a supervisor has failed to properly monitor the actions of subordinate employees do not suffice to establish the requisite personal involvement and support a finding of liability); *Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987) (dismissal of a § 1983 claim is proper where plaintiff does no more than allege defendant was in charge of the prison).

The only factual allegations showing direct participation by Martuscello is that after receiving Plaintiff's letter, Martuscello "knew or should have known the potential threat of having Plaintiff at Coxsackie." (Dkt. No. 32 at 9.) Plaintiff avers that Martuscello "spoke" with Plaintiff about his family on at least two occasions. *Id*. However, it is well-settled that a prisoner has no constitutional right to serve his sentence in any particular institution or to be transferred from one facility to another. *See Olim v. Wakinekona,* 461 U.S. 238, 249–50 (1983); *Meachum v. Fano,* 427 U.S. 215, 224–25 (1976); *Prins v. Coughlin,* 76 F.3d 504, 507 (2d Cir.1997); *see also Taylor v. Levesque,* 246 Fed. App'x 772, 774 (2d Cir.2007) (a prisoner has no constitutional rights to a security classification of his choosing). The Supreme Court recognized in *Turner v. Safley,* that the placement and transfer of inmates are examples of "inordinately difficult" undertakings as to which the courts "accord deference to the appropriate prison authorities." 482 U.S. 78, 84–85 (1987). Therefore, "prison officials have broad discretion to transfer prisoners." *Meriwether v. Coughlin,* 879 F.2d 1037, 1045 (2d Cir.1989). Because Plaintiff has no constitutional right to be transferred to a particular

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 61 of 353

*Trapani v. Pullen, Not Reported in Fed. Supp. (2016)*
2016 WL 1295137

correctional facility or security classification of his choosing, Martuscello cannot be held liable to Plaintiff for violation of § 1983 under any of the *Colon* factors. *See Colon,* 58 F.3d at 873.

**\*10**  Given the conclusory nature of Plaintiff's Eighth Amendment supervisory liability claim against Martuscello, the Court recommends dismissal for failure to state a claim, with leave to amend granted in deference to Plaintiff's *pro se* status.


C. *First Amendment Retaliation Claim Against Defendants Pullen and McGlynn*

Claims of retaliation find their roots in the First Amendment. *See Gill v. Pidlypchak,* 389 F.3d 379, 380–81 (2d Cir.2004). Central to such claims is the notion that in a prison setting, corrections officials may not take actions that would have a chilling effect upon an inmate's exercise of First Amendment rights. *Id.* at 381–83. Because of the relative ease with which claims of retaliation can be incanted, however, courts have scrutinized such retaliation claims with particular care. *See Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983), *overruled on other grounds, Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002).

To state a plausible First Amendment retaliation claim, an inmate must advance non-conclusory allegations establishing "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) there was a causal connection between the protected speech and the adverse action." *Davis v. Goord,* 320 F.3d 346, 352 (2d Cir.2003) (quoting *Dawes v. Walker,* 239 F.3d 489, 492 (2d Cir.2001), *overruled on other grounds, Swierkiewicz,* 534 U.S. at 508); *see Pidlypchak,* 389 F.3d at 380. "An allegation that a prison official filed false disciplinary charges in retaliation for the exercise of a constitutionally protected right, such as the filing of a grievance, states a claim under § 1983. *Gayle v. Gonyea,* 313 F.3d 677, 682 (2d Cir.2002).

For a retaliation claim to survive a motion to dismiss, it must be "supported by specific and detailed factual allegations, not stated in wholly conclusory terms." *Friedl v. City of New York,* 210 F.3d 79, 86 (2d. Cir.2000) (citation and quotation marks omitted). An "unsupported, speculative, and conclusory" allegation of retaliatory conduct may be dismissed on the pleadings. *Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir.1997) (citations and quotation marks omitted).

An inmate bears the burden of showing that "the protected conduct was a substantial or motivating factor" in the defendants' decision to take action against the plaintiff. *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996). In evaluating whether a causal connection exists between the plaintiff's protected activity and a prison official's actions, "a number of factors may be considered, including: (i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his or her motivation." *Baskerville v. Blot,* 224 F.Supp.2d 723, 732 (S.D.N.Y.2002) (citing *Colon,* 58 F.3d at 873). "The causal connection must be sufficient to support an inference that the protected conduct played a substantial part in the adverse action." *Id.* A showing of temporal proximity, without more, has been found insufficient to survive summary judgment. *See Roseboro v. Gillespie,* 791 F.Supp.2d 353, 370 (S.D.N.Y.2011) (citations omitted).

**\*11**  Plaintiff claims that on December 6, 2013, he was issued a false misbehavior report in retaliation for filing grievances on December 3, 2013. (Dkt. No. 1 at 26.) On December 6, 2013, Pullen charged Plaintiff with "lewdly exposing himself." *Id.* at 26–27. McGlynn, "who did not witness the incident per se," signed as a witness to the December 6, 2013, misbehavior report. *Id.* Plaintiff further alleges that on December 3, 2013, McGlynn notarized an "Affidavit of Service" at Plaintiff's SHU cell window. *Id.* Attached to the Affidavit of Service were several handwritten grievances that Plaintiff intended to send to Coxsackie's Inmate Grievance Committee, "one of which ... could have indirectly implicated" McGlynn. *Id.* Later that evening, Plaintiff mailed the notarized Affidavit of Service and grievances.[9] *Id.*

9        As discussed above, on December 3, 2013, Plaintiff used Coxsackie's grievance program to grieve the issues that occurred between November 10, 2013, and November 19, 2013. (Dtk. No. 1 at 44.)

Other than the temporal proximity, Plaintiff does not allege any facts plausibly suggesting a causal connection between the protected activity and the adverse conduct. In this case, Pullen authored the December 6, 2013, misbehavior report. *Id.* Plaintiff

2016 WL 1295137

fails to allege any facts that the grievances mailed on December 3, 2013, implicated Pullen, or that Pullen was even aware of the grievances. "As a general matter, it is difficult to establish one defendant's retaliation for complaints against another defendant." *Hare v. Hayden,* No. 09 Civ. 3135(RWS), 2011 WL 1453789, at *4, 2011 U.S. Dist. LEXIS 40683, at *12–13, (S.D.N.Y. Apr. 14, 2011) (citing *Wright v. Goord,* 554 F.3d 255, 274 (2d Cir.2009) (dismissing retaliation claims against a corrections officer when only alleged basis for retaliation was complaint about an incident involving another corrections officer)); *see also Roseboro,* 791 F.Supp.2d at 369 (the plaintiff failed to provide any basis to believe that a corrections counselor would retaliate for a grievance that she was not personally named in).

Moreover, there is no indication other than Plaintiff's conclusory allegation to this effect, that Plaintiff's grievances implicated McGlynn or that she was even aware that the grievances were attached to the Affidavit of Service. (Dkt. No. 1 at 26.) In his opposition, Plaintiff pleads no additional facts suggesting a causal connection. Rather, Plaintiff posits the following question: "if the grievance was annexed to the affidavit of service, then shouldn't it been read, or at least cursory so in order to verify its contents for the sake of the notary public being administered[?]" (Dkt. No. 32 at 10.)

With respect to the other factors that may be considered, Plaintiff admits that he was found guilty of the charges set forth in the December 6, 2013, misbehavior report at his disciplinary hearing. *Id.* at 33. The guilty finding was affirmed on appeal. *Id.* at 38. Plaintiff's Complaint is void of any statements allegedly made by Pullen or McGlynn concerning their motivation. Finally, Plaintiff pleads no facts suggesting that his prior good disciplinary records would weigh in his favor.

Given the conclusory nature of Plaintiff's First Amendment retaliation claim against Pullen and McGlynn, the Court recommends dismissal for failure to state a claim, with leave to amend granted in deference to Plaintiff's *pro se* status.

D. *RLUIPA Claim Against King, Syed, and Jane Doe # 5*
Plaintiff alleges that King, Syed, and Jane Doe # 5 deprived Plaintiff of his Kosher meals at Coxsackie for two weeks in violation of his rights under RLUIPA. (Dkt. No. 1 at 27, 49.) Defendants argue that this claim must be dismissed because money damages are not available under RLUIPA, and that Plaintiff's claims for declaratory and injunctive relief are moot because Plaintiff is no longer housed at Coxsackie. *Id.* at 14. Defendants are correct, and Plaintiff concedes as much. (Dkt. No. 32 at 11.)

**\*12** Section 3 of RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise" of an institutionalized person unless the government shows that the burden imposed "is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering" that interest. 42 U.S.C. § 2000cc–1(a). RLUIPA does not authorize claims for monetary damages against state officers in either their official or individual capacities. *Holland v. Goord,* 758 F.3d 215, 224 (2d Cir.2014); *see also Washington v. Gonyea,* 731 F.3d 143, 145–46 (2d Cir.2013) (per curiam) (citing *Sossamon v. Texas,* 563 U.S. 277, 280 (2011)). Plaintiff's RLUIPA claim for injunctive and declaratory relief is subject to dismissal because Plaintiff is no longer housed at Coxsackie, where the alleged violations occurred. *See Salahuddin v. Goord,* 467 F.3d 263, 272 (2d Cir.2006) (an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility). Therefore, the Court recommends dismissing Plaintiff's RLUIPA claim against King, Syed, and Jane Doe # 5 without leave to amend.

E. *Declaratory and Injunctive Relief*
As discussed above, all of Plaintiff's surviving claims in this action arose of out occurrences while he was housed at Coxsackie and Upstate. (Dkt. No. 1.) "In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility." *Shepherd v. Goord,* 662 F.3d 603, 610 (2d Cir.2011) (quoting *Salahuddin,* 467 F.3d at 272); *see also Prins v. Coughlin,* 76 F.3d 504, 506 (2d Cir.1996). After filing his Complaint, Plaintiff notified the Court that he was transferred from Upstate to Clinton Correctional Facility. (Dkt. No. 8.) Plaintiff was released from DOCCS custody on February 10, 2015. (Dkt. No. 23–3 at 3.) Plaintiff is currently confined at the Schenectady County Jail. (Dkt. No. 36.) Because Plaintiff is no longer housed at Coxsackie or Upstate, Plaintiff's claims for injunctive and declaratory relief are moot. Therefore, the Court recommends dismissing Plaintiff's claim for injunctive and declaratory relief without leave to amend.

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 63 of 353

**Trapani v. Pullen, Not Reported in Fed. Supp. (2016)**

2016 WL 1295137

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that Defendants' Rule 41(b) motion (Dkt. No. 23) to dismiss Plaintiff's Complaint (Dkt. No. 1) be **DENIED** as moot; and it is further

**RECOMMENDED** that Defendants Rule 12(b)(6) motion (Dkt. No. 23) to dismiss certain claims in Plaintiff's Complaint (Dkt. No. 1) be **GRANTED** in part and **DENIED** in part; and it is further

**RECOMMENDED** that Defendants' Rule 12(b)(6) motion be **DENIED** as to the following claims: (1) Eighth Amendment excessive force claim against Defendant LaMare and Defendants John Does # # 16–20; and (2) First Amendment free exercise claim against Defendant King, Defendant Syed, and Defendant Jane Doe # 5; and it is further

**RECOMMENDED** that Defendants' Rule 12(b)(6) motion be **GRANTED WITH LEAVE TO AMEND** as to the following claims: (1) Eighth Amendment excessive force claim against Defendant Martuscello; and (2) First Amendment retaliation claim against Defendant Pullen and Defendant McGlynn; and it is further

**RECOMMENDED** that Defendants' Rule 12(b)(6) motion be **GRANTED WITHOUT LEAVE TO AMEND** as to the following claims: (1) RLUIPA claim against Defendant King, Defendant Syed, and Defendant Jane Doe # 5; and (2) all claims seeking declaratory and injunctive relief; and it is further

**RECOMMENDED** that the case be **DISMISSED** against Defendant Martuscello, Defendant Pullen, and Defendant McGlynn; and it is further

**ORDERED** that the Clerk provide to Plaintiff a copy of this Order and Report–Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders,* 557 F.3d 76 (2d Cir.2009) (per curiam).

**\*13** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. ***FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW****.Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72.

2016 WL 1295137

Bailey v. Fortier, Not Reported in F.Supp.2d (2012)
2012 WL 6935254

2012 WL 6935254
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Everton BAILEY, Plaintiff,
v.
M. FORTIER, Defendant.

Civ. Action No. 9:09–CV–0742 (GLS/DEP).
|
Oct. 4, 2012.

**Attorneys and Law Firms**

Hancock Estabrook LLP, Michael J. Sciotti, Esq., Robert Thorpe, Esq., of Counsel, Syracuse, NY, for Plaintiff.

Hon. Richard S. Hartunian, United States Attorney, Charles E. Roberts, Esq., Assistant U.S. Attorney, of counsel, Syracuse, NY, for Defendant.

**REPORT AND RECOMMENDATION**

DAVID E. PEEBLES, United States Magistrate Judge.

*1 Plaintiff Everton Bailey, a federal prison inmate, has commenced this *Bivens*[1] action against defendant Michelle Fortier, a corrections officer stationed at the prison facility in which Bailey was confined at the relevant times, alleging deprivation of his civil rights. Bailey's claims are based upon Fortier's alleged failure to protect him from an assault by a cellmate, despite having registered prior complaints expressing fear for his safety.

Currently at the forefront of the action is the threshold question of whether Bailey, who admits that he did not file a grievance following the procedures in place at Bureau of Prisons ("BOP") facilities, should be excused from the requirement of exhausting administrative remedies before commencing suit due to the alleged refusal of prison officials to provide him with the forms necessary to file a grievance. Because I find, based upon an evidentiary hearing conducted, that Bailey was not prevented by the actions of prison officials from filing a grievance regarding his claim against Fortier, and that he has offered no special circumstances providing a basis to excuse his failure to exhaust administrative

remedies, I recommend that his complaint be dismissed on this procedural basis, without addressing its merits.

**I. BACKGROUND**

Bailey is a federal prison inmate currently being held in the custody of the BOP as a result of a 2007 criminal conviction entered in the United States District Court for the Eastern District of Pennsylvania. *See generally* Complaint (Dkt. No. 1); *see also* VanWeelden Decl. (Dkt. No. 10–4) ¶ 5; June 20, 2012 Hearing Transcript (Dkt. No. 44) at p. 84.[2] While he is presently housed in another BOP facility, at times relevant to this litigation Bailey was designated by the BOP to the Ray Brook Federal Correctional Institution ("FCI Ray Brook"), located in Ray Brook, New York. *Id.*

On the morning of February 23, 2009, while housed in a six-person cell in the Mohawk Housing Unit at FCI Ray Brook, Bailey was confronted and physically assaulted by one of his cellmates after being accused of stealing that inmate's prayer oil. Complaint (Dkt. No. 1) ¶¶ 8–9; *see also* VanWeelden Decl. (Dkt. No. 10–4) Exh. D. Bailey reported the incident to Fortier, and requested that he be moved to another cell. Complaint (Dkt. No. 1) ¶ 10. That request was denied, and Bailey was directed by Fortier to return to his cell in light of an impending inmate count. *Id.* at ¶ 11.

Following the inmate count, Bailey again was accosted by the same inmate, who on this occasion threw hot oil from a ceramic mug onto his face.[3] Complaint (Dkt. No. 1) ¶ 13; VanWeelden Decl. (Dkt. No. 10–4) Exh. D; Tr. 100, 145. Bailey suffered second degree burns to his face resulting in his being hospitalized at an outside medical facility for a period of fourteen days. Complaint (Dkt. No. 1) ¶¶ 13–14; Tr. 32, 84–85. Upon his return to FCI Ray Brook, Bailey was placed in a special housing unit ("SHU") cell, where he remained until he was transferred to another BOP facility. Tr. 59–60, 85.

*2 The BOP has established an Administrative Remedy Program ("ARP"), comprised of a four-step administrative process through which inmates can seek formal internal review of any complaint regarding any aspect of their imprisonment. Tr. 10; 28 C.F.R. § 542.10 *et seq.*; *see also Macias v. Zenk*, 495 F.3d 37, 42 (2d Cir.2007). In accordance with the established ARP protocol, an inmate must first attempt informal resolution of his or her complaint by presenting the issue informally to staff, and staff must attempt to resolve the issue. 28 C.F.R. § 542.13(a); *see also Johnson v. Testman*, 380 F.3d 691, 693 (2d Cir.2004). This

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 65 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)
2016 WL 1295137

Bailey v. Fortier, Not Reported in F.Supp.2d (2012)
2012 WL 6935254

informal, initial procedure typically begins with the filing of a "cop-out," which can be submitted either on a BP-8 form available to inmates through several sources, including their assigned counselors, or on paper of any other description. Tr. 10, 22, 27, 66-67, 129, 142.

If the complaint cannot be resolved informally, the inmate may next submit a formal written Administrative Remedy Request ("ARR") to the warden of the facility, utilizing a BP-9 form, within twenty calendar days of the event that generated the inmate's complaint.[4] Tr. 22, 52, 44, 28 C.F.R. § 542.14(a); *see also Johnson, 380 F.3d at 693.* That twenty-day period, however, can be extended in appropriate circumstances.[5] Tr. 33, 54, 144. If that formal request is denied, the inmate may next appeal the matter to the appropriate BOP Regional Director, utilizing a BP-10 form, within twenty calendar days of the date the grievance is denied by the facility warden. Tr. 22; 28 C.F.R. § 542.15(a); *see also Johnson, 380 F.3d at 693.* An unfavorable decision from the Regional Director can then be appealed to the General Counsel's office, utilizing a BP-11 form, within twenty calendar days of the date of the Regional Director's response. Tr. 22; 28 C.F.R. § 542.15(a).

Despite the existence of the ARP, Bailey did not avail himself of that process by filing a grievance regarding the assault or the defendant's alleged failure to protect him from it. Tr. 101-02, 106. Bailey claims that he requested the appropriate forms for commencing the grievance process from several prison workers, including Hawley Snyder, Barbara Darrah, and the warden at FCI Ray Brook. Tr. 86-88, 91, 93-95, 107-09. Employees at FCI Ray Brook, however, uniformly testified that Bailey never requested the appropriate grievance forms from them. *See* Tr. 72, 131, 146-47, 153, 155, 168; *see also* Tr. 49 (Robin Van Weelden); 161 (Jean Marie Diehl); 166 (Michelle Gonyea). I credit the testimony of defendant's witnesses and find that Bailey failed to ask his corrections counselor, or any other BOP employee at FCI Ray Brook, for the necessary forms to commence the grievance process.

The record also reflects that Bailey had abundant opportunity to secure the necessary grievance forms. In February and March of 2009, he was assigned a unit team that included Barbara Darrah, his unit manager; Michelle Gonyea, a case worker; Hawley Snyder, his assigned corrections counselor; and one other corrections counselor.[6] Tr. 46, 86, 140-41. Members of Bailey's unit team, particularly his corrections counselor, were in frequent contact with him. *See, e.g.,* Tr. 126, 129-30, 140-41, 165.

*3 Various other BOP officials were also in regular contact with Bailey, making periodic rounds of the FCI Ray Brook SHU. Tr. 35. For example, at the times relevant to this litigation, the facility's warden typically visited the SHU every Wednesday morning, normally accompanied by Robin Van Weelden, who in February 2009 served as a legal assistant, as well as one or two associate wardens, a corrections captain, and unit team members. Tr. 35, 55. When making those rounds the group would proceed from cell to cell, knocking on doors and asking whether an inmate in a particular cell wished to voice any needs. Tr. 57. In addition, Barbara Darrah, as a unit manager, was required to visit inmates in the SHU twice weekly, although she testified that she was in that portion of the facility "pretty much daily." Tr. 126. When visiting the SHU, Darrah generally carried with her a folder of various forms, including BP-8, BP-9, BP-10, BP-11 and cop-out forms, earning her the nickname "the form lady." Tr. 70-71, 120, 124-27, 131. Like the warden and the warden's group, when visiting the SHU facility Darrah normally would proceed from cell-to-cell. Tr. 128. Similarly Michelle Gonyea, as plaintiff's case manager during February and March of 2009, was required to visit the SHU at least once weekly. Tr. 165.

Despite all of those visits and requests as to whether he needed anything, Bailey did not ask any of those individuals for the forms necessary to grieve Fortier's alleged failure to protect him from harm. Tr. 161-62, 166, 49-50, 72, 132, 144, 154-55, 161, 166.

As previously indicated, plaintiff was absent from FCI Ray Brook receiving outside treatment for his injuries during the fourteen-day period immediately following the inmate assault. In accordance with FCI Ray Brook policy requiring visits by prison officials to any inmate hospitalized for more than five days, Darrah, as plaintiff's unit manager, visited him in or about March of 2009, while he was a patient at the Adirondack Medical Center in Saranac Lake, in order to insure that his needs were being met. Tr. 133. When asked on that occasion whether he needed anything, Bailey replied, "No."[7] *Id.*

**II. PROCEDURAL HISTORY**

Bailey commenced this action on June 29, 2009. Dkt. No. 1. His complaint identifies Corrections Officer M. Fortier as the sole named defendant, and alleges that she violated his

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 66 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Bailey v. Fortier, Not Reported in F.Supp.2d (2012)

2012 WL 6935254

constitutional rights by failing to protect him from foreseeable harm. *Id.*

On January 8, 2010, prior to answering, Fortier moved to dismiss Bailey's complaint for failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure or, alternatively, for summary judgment pursuant to Rule 56. Dkt. No. 10. The sole basis for Fortier's motion was her contention that Bailey's complaint is subject to dismissal based upon his failure to exhaust available administrative remedies before commencing suit, as required under 42 U.S.C. § 1997e(a). That motion resulted in my issuance of a report on August 30, 2010, recommending that the motion be denied, based upon the existence of genuine disputes of material fact to be resolved before addressing whether a proper basis for excusing the governing exhaustion requirement had been demonstrated. Dkt. No. 19. That recommendation was adopted by Chief District Judge Gary L. Sharpe on October 12, 2010. Dkt. No. 21.

*4 Following the issuance and acceptance of my report and recommendation, the parties were afforded the opportunity to engage in discovery, and a scheduling order was entered requiring, *inter alia*, that any additional dispositive motions be filed on or before October 3, 2011. *See* Dkt. No. 23. All deadlines under that scheduling order have passed, without the filing of any additional motions, and the case is now trial-ready. In light of the existence of a threshold procedural issue regarding exhaustion, the matter was referred to me for the purpose of conducting an evidentiary hearing, pursuant to *Messa v. Goord,* 652 F.3d 305 (2d Cir.2011), in order to develop the record concerning Bailey's efforts to satisfy his exhaustion requirement. *See* Text Entry 11/02/11. That hearing was conducted on June 20, 2012, *see* Text Entry 6/20/12, and, following the close of the hearing, decision was reserved pending briefing by the parties.[8], [9]

**III. DISCUSSION**

**A. Governing Legal Principles**

The Prison Litigation Reform Act of 1996 ("PLRA"), Pub.L. No. 104–134, 110 Stat. 1321 (1996), which imposes several restrictions on the ability of prisoners to maintain federal civil rights actions, expressly requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42

U.S.C. § 1997e(a); *see Woodford v. Ngo,* 548 U.S. 81, 84, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006); *Hargrove v. Riley,* No. CV–04–4587, 2007 WL 389003, at *5–6 (E.D.N.Y. Jan.31, 2007)." [T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 992, 152 L.Ed.2d 12 (2002). An inmate plaintiff's complaint is subject to dismissal if the evidence establishes that he or she failed to properly exhaust available remedies prior to commencing the action, his or her complaint is subject to dismissal. *See Pettus v. McCoy,* No. 04–CV–0471, 2006 WL 2639369, at *1 (N.D.N.Y. Sept. 13, 2006) (McAvoy, J.); *see also Woodford,* 548 U.S. at 94–95, 126 S.Ct. at 2387–88 (holding that the PLRA requires "proper exhaustion" of available remedies). "Proper exhaustion" requires a plaintiff to procedurally exhaust his or her claims by "compl[ying] with the system's critical procedural rules." *Woodford,* 548 U.S. at 95, 126 S.Ct. at 2388; *see also Macias,* 495 F.3d at 43 (citing *Woodford* ). Complete exhaustion has not occurred, for purposes of the PLRA, until all of the steps of that available process have been taken, *Macias,* 495 F.3d at 44; *see also Johnson v. Rowley,* 569 F.3d 40, 45 (2d Cir.2009); *Strong v. Lapin,* No. 90–CV–3522, 2010 WL 276206, at *4 (E.D.N.Y. Jan.15, 2010) ("Until the BOP's Central Office considers the appeal, no administrative remedy is considered to be fully exhausted.").

*5 In a series of decisions rendered since the enactment of the PLRA, the Second Circuit has crafted a three-part test for determining whether dismissal of an inmate plaintiff's complaint is warranted in the event of a failure to satisfy the PLRA's exhaustion requirement. *Macias,* 495 F.3d at 41; *see Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004). Under the prescribed rubric, a court must first determine whether administrative remedies were available to the plaintiff at the relevant times. *Macias,* 495 F.3d at 41; *Hemphill,* 380 F.3d at 686. If such a remedy existed and was available, the court must next examine whether the defendant should be deemed to have forfeited the affirmative defense of non-exhaustion by failing to properly raise or preserve it, or whether, through the defendant's own actions preventing the plaintiff from exhausting otherwise available remedies, he or she should be estopped from asserting failure to exhaust as a defense. *Id.* In the event the proffered defense survives these first two levels of scrutiny, the court must determine whether the plaintiff has established the existence of special circumstances sufficient "to justify the failure to comply with applicable administrative procedural requirements.[10], [11] *Id.*

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.    14

2016 WL 1295137

Bailey v. Fortier, Not Reported in F.Supp.2d (2012)
2012 WL 6935254

**B. Burden of Proof**

Before applying the foregoing legal principles, I must first consider who bears the burden of proof, and whether that burden shifts throughout the analysis prescribed under *Hemphill*.

As an affirmative defense, *Jones v. Bock,* 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007), exhaustion is a claim upon which the party asserting it typically bears the ultimate burden of proving its essential elements by a preponderance of the evidence. *Soria v. Girdich,* No. 9:04–CV–727, 2007 WL 4790807, at *2 (N.D.N.Y. Dec. 2007) (DiBianco, M.J.) (citing *McCoy v. Goord,* 255 F.Supp.2d 233, 247 (S.D.N.Y.2003)); *McFadzin v. Selsky,* No. 9:04–CV–83(FJS/RFT), 2005 WL 2128851, at *4 (N.D.N.Y. Aug.30, 2005) (Scullin, C.J.) (citing *Howard v. Goord,* No. 98–CV–7471, 1999 WL 1288679, *3 (E.D.N.Y. Dec. 28, 1999)), *aff'd in part, vacated in part,*225 F. App'x 36 (2d Cir.2007). The issue is somewhat complicated, however, by consideration of the three-part analysis mandated by *Hemphill* and related cases because that line of cases incorporates concepts—such as estoppel, for example—that typically require the party asserting them to bear the ultimate burden of proof. *See e.g., Abbas v. Dixon,* 480 F.3d 636, 642 (2d Cir.2007) ("The plaintiff bears the burden of showing that the action was brought within a reasonable period of time after the facts giving rise to the equitable tolling or equitable estoppel ...."); *In re Heflin,* 464 B.R. 545, 554 (D.Conn.2011) ("The burden of providing every element of an estoppel is upon the party seeking to set up the estoppel.") (citing *Comm'r v. Union Pac. R.R. Co.,* 86 F.2d 637, 640 (2d Cir.1936)).

*6 Also complicating matters is the fact that several courts have held that once a defendant satisfies the burden of demonstrating that an inmate has failed to exhaust administrative remedies, it then becomes incumbent upon the plaintiff to counter with a showing of unavailability, estoppel, or special circumstances. *See, e.g., Murray v. Palmer,* No. 9:03–CV–1010 (GTS/GHL), 2010 WL 1235591, at *4 and n. 17 (N.D.N.Y. Mar.31, 2010) (Suddaby, J.); *see also Calloway v. Grimshaw,* No. 9:09–CV–1354, 2011 WL 4345299, at *5 and n. 5 (N.D.N.Y. Aug.10, 2011) (Lowe, M.J.) (citing cases); *report and recommendation adopted,*2011 WL 4345296 (N.D.N.Y. Sep.15, 2011) (McAvoy, S.J.); *Cohn v. KeySpan Corp.,* 713 F.Supp.2d 143, 155 (E.D.N.Y.2010) (finding that, in the employment discrimination context, defendants bear the burden of establishing the affirmative defense of failure to timely exhaust his administrative remedies, but

once defendants have done so, the plaintiff must plead and prove facts supporting equitable avoidance of the defense.). Those decisions, while referencing the burden of proof on an affirmative defense, seem to primarily address an inmate's burden of *production,* or of going forward, to show facts that would form the basis for finding of unavailability, estoppel, or a finding of special circumstances, rather than speaking to the ultimate burden of *persuasion.*

I have been unable to uncover any cases squarely holding that the defendant bears the ultimate burden of proof with regard to all elements of a *Hemphill* analysis. In the final analysis, however, *Hemphill* addresses all of the elements a court is required to consider when analyzing an exhaustion defense. *See Macias,* 495 F.3d at 41 ("In *Hemphill* we "read together" [a series of cases] and formulated a three-part test....") (emphasis added). Therefore, I recommend a finding that, while the burden of production may shift to the plaintiff when a court undertakes a *Hemphill* analysis, the ultimate burden of proof with respect to the exhaustion defense remains, at all times, with the defendant. *See Soria,* 2007 WL 4790807, at *2 ("[A]s with other affirmative defenses, the defendant has the burden of proof to show that plaintiff failed to exhaust his administrative remedies.").

**C. Application of Governing Legal Principles**

**1. Availability of Administrative Remedy**

In this instance, the question of whether the ARP was available to Bailey is at the heart of the exhaustion analysis. The hearing testimony confirmed, and Bailey admitted, that at all times relevant to this litigation, there was an inmate grievance procedure in place at FCI Ray Brook. This, however, does not necessarily mean that it was "available" to the plaintiff.

Bailey contends that the grievance process was not available to him in light of the alleged refusal of prison officials to provide him with the forms necessary to file an ARP and pursue the grievance to culmination. Having considered the competing testimony, however, I conclude that Fortier has established, by a preponderance of the evidence, that the forms necessary to pursue a grievance in accordance with the ARP in place at FCI Ray Brook were available to Bailey through several sources, but were not requested. As such, Fortier has satisfied the first *Hemphill* factor.

**2. Presentation of Defense/Estoppel**

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 68 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Bailey v. Fortier, Not Reported in F.Supp.2d (2012)

2012 WL 6935254

*7 The focus of the second prong of the *Hemphill* analysis is upon "whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense."*Hemphill*, 380 F.3d at 686 (citations omitted). In her answer, Fortier raised exhaustion as a defense in a timely fashion. *See* Answer (Dkt. No. 22) Second Defense ("Plaintiff clearly failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)."). Bailey argues, however, that his failure to follow the prescribed grievance process was a direct result of the refusal of prison officials to cooperate in his efforts to grieve the matter.

" 'Generally, a defendant in an action may not be estopped from asserting the affirmative defense of failure to exhaust administrative remedies based on the actions (or inactions) of other individuals.' "*Atkins v. Menard,* No. 9:11–CV–9366, 2012 WL 4026840, at *3 (N.D.N.Y. Sept.12, 2012) (Suddaby, J.) (citing *Murray,* 2010 WL 1235591, at *5 and n. 26 (collecting cases)). Put differently, a plaintiff must allege that a defendant named in the lawsuit acted to interfere with his ability to exhaust in order to establish a basis to estop that defendant from invoking the exhaustion defense. *Calloway,* 2011 WL 4345299, at *4 (citing *Bennett v. James,* 737 F.Supp.2d 219, 226 (S.D.N.Y.2010), *aff'd,*441 F. App'x 816 (2d Cir.2011)) (other citations omitted).

The question of whether, in this instance, prison officials should be estopped from asserting failure to exhaust as an affirmative defense as a result of their conduct is inextricably intertwined with the question of availability of the remedy. Assuming, however, that this presents a distinct inquiry, the court must examine whether, through her conduct, Fortier has provided a basis to estop her from asserting an exhaustion defense.

In this instance, Bailey does not allege that Fortier engaged in a campaign to preclude him from filing a grievance regarding her actions. Instead, his focus is upon the alleged refusal of other officials at FCI Ray Brook to provide him with necessary forms and cooperate in his efforts to present his grievance against Fortier. Accordingly, Bailey has failed to present any evidence that would support an estoppel against the defendant from raising the issue of exhaustion. *Atkins,* 2012 WL 4026840, at * 3. Therefore, I conclude that Fortier has proven, by a preponderance of the evidence, that she did

not, through her own actions, preclude Bailey from taking advantage of the ARP and therefore should not be estopped from asserting the defense.

**3. Special Circumstances**

The third, catchall factor that must be considered under the Second Circuit's prescribed exhaustion rubric centers upon whether special circumstances sufficient to justify excusing the plaintiff's failure to exhaust administrative remedies have been demonstrated. *Hemphill,* 380 F.3d at 689;*see also Giano,* 380 F.3d at 676–77; *Hargrove,* 2007 WL 389003, at *10. Among the circumstances potentially qualifying as "special" under this prong of the test is where a plaintiff's reasonable interpretation of applicable regulations regarding the grievance process differs from that of prison officials and leads him or her to conclude that the dispute is not grievable.*Giano,* 380 F.3d at 676–77;*see also Hargrove,* 2007 WL 389003, at *10 (quoting and citing *Giano* ). Special circumstances may also exist where a facility's "[f]ailure to provide grievance deposit boxes, denial of forms and writing materials, and a refusal to accept or forward plaintiff's appeals-which effectively rendered the grievance process unavailable to him."*Murray,* 2010 WL 1235591, at *6 (quoting *Sandlin v. Poole,* 488 (W.D.N.Y.2008) (noting that "[s]uch facts support a finding that defendant's are estopped from relying on exhaustion defense as 'special circumstances' excusing plaintiff's failure to exhaust")).

*8 During the evidentiary hearing, Bailey testified to his awareness of the existence of the ARP at FCI Ray Brook. *See, e.g.,* Tr. 102. Bailey's testimony regarding his alleged efforts to secure the forms necessary to pursue the grievance plainly evidences his knowledge of the requirement that he exhaust available administrative remedies, and negates a finding of any reasonable belief on his part that the dispute in issue was not grievable and could not have been presented through the BOP's internal grievance process. Accordingly, again allocating the ultimate burden of proof on the issue of special circumstances to the defendant, I nonetheless conclude that she has demonstrated, by a preponderance of the evidence, the absence of any special circumstances that would serve to excuse plaintiff's failure to exhaust administrative remedies.

**IV. SUMMARY AND RECOMMENDATION**

The credible testimony and evidence adduced at the recent hearing, held to address the merits of defendant's exhaustion defense, establishes that (1) Bailey failed to avail himself of the BOP grievance process, which was available to

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 69 of 353
Trapani v. Pullen, Not Reported in Fed. Supp. (2016)
2016 WL 1295137

Bailey v. Fortier, Not Reported in F.Supp.2d (2012)
2012 WL 6935254

him, before commencing this action; (2) Fortier did not, through her actions, preclude Bailey from filing a grievance regarding the claims set forth in his complaint, or otherwise engage in conduct for which she should be estopped from asserting failure to exhaust as an affirmative defense; and (3) Bailey has offered no special circumstances warranting that he be excused from the PLRA's exhaustion requirement. Accordingly, it is therefore hereby respectfully

RECOMMENDED, that plaintiff's complaint in this action be DISMISSED, based upon his failure to comply with the exhaustion requirements of 42 U.S.C. § 1997e(a).

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such

objections must be filed with the Clerk of the Court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; Roldan v. Racette, 984 F.2d 85 (2d Cir.1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 6935254

Footnotes

1    Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).
2    The June 20, 2012 Hearing Transcript (Dkt. No. 44) will hereinafter be cited as "Tr. ____."
3    According to Bailey, there were no corrections officers present in his cell unit at the time of the assault. Complaint (Dkt. No. 1) ¶ 13.
4    Plaintiff was aware of the twenty-day limitation for filing a BP–9 form to initiate the formal grievance process. Tr. 103.
5    Here, the record demonstrates that in light of his circumstances, including the fourteen-day period of hospitalization following the incident, Bailey almost certainly would have been granted relief from that requirement had such a request been made. See Tr. 43, 144. I note, parenthetically, that the handbook provided to inmates at FCI Ray Brook does not address the possibility of requesting an extension of the twenty-day time limit for filing a BP–9. See Tr. 34, 43.
6    Jean Marie Diehl took over as plaintiff's correction counselor in or about September 2009, shortly before Snyder's retirement from the BOP. Tr. 140, 163.
7    During the hearing Bailey testified that he did not recall Darrah visiting him. See Tr. 114. Once again, I credit the testimony of Darrah over that of the Bailey with respect to this issue.
8    The hearing was conducted by video conference, with Bailey participating and testifying from the Kentucky federal correctional facility in which he is currently being held, pursuant to Rule 43(a) of the Federal Rules of Civil Procedure. See Rivera v. Santirocco, 814 F.2d 859, 862 (2d Cir.1987). At the outset of the hearing I placed upon the record the factors which I considered in declining to exercise my discretion to require that Bailey be produced in person for the evidentiary hearing. See Tr. 3.
9    Attorney Michael J. Sciotti, Esq., of the firm of Hancock & Estabrook, LLP, was appointed in January 2012 to represent the plaintiff in this action, pro bono, at the hearing. The court wishes to express its thanks to Attorney Sciotti and his co-counsel, Robert Thorpe, Esq., for their energetic and diligent efforts on behalf of the plaintiff.
10   In Macias, which, like this action, involved an Eighth Amendment claim under Bivens, as well as claims under the Federal Court Claims Act, 28 U.S.C. § 2671 et seq., defendants asserted that plaintiff's complaint was subject to dismissal under the PLRA based upon his failure to exhaust available administrative remedies. Macias, 495 F.3d at 40. Reiterating the importance of exhaustion in both a substantive and a procedural sense, the Second Circuit concluded that, while a prisoner may have substantively exhausted remedies by making informal complaints regarding the conditions at issue, the PLRA, as illuminated by Woodford, 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368, requires proper procedural exhaustion through the available grievance channels. Id. at 41.The court left open, however, the possibility that, notwithstanding the Supreme Court's decision in Woodford, a defendant could be precluded from asserting failure to exhaust available administrative remedies in the event of a finding that threats by prison officials may have deterred compliance with the PLRA exhaustion requirements, including under Hemphill. Id. at 44–45.The court in Macias also noted that the plaintiff in that case did not assert that the available internal remedial scheme was so confusing as to excuse his failure to avail himself of that process, thereby obviating the need for the court to determine what effect, if any, Woodford would

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 70 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Bailey v. Fortier, Not Reported in F.Supp.2d (2012)

2012 WL 6935254

have upon the *Hemphill* holding to the effect that a reasonable misinterpretation of the available scheme could justify an inmate's failure to follow the procedural rules. See *Amador v. Superintendents of Dep't of Correctional Serv.*, No. 03 CIV. 0650 (KTD/CWG), 2007 WL 4326747, at *6 (S.D.N.Y. Dec.4, 2007). It therefore appears that the teachings of *Hemphill* remain intact, at least with regard to the first two points of inquiry. *Id.* at *7

11    In practicality, these three prongs of the prescribed test, though perhaps intellectually distinct, plainly admit of significant overlap. *See Hargrove*, 2007 WL 389003, at *8 n. 14; *see also Giano v. Goord*, 380 F.3d 670, 677 n. 6 (2d Cir.2004).

End of Document                                    © 2016 Thomson Reuters. No claim to original U.S. Government Works.

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

85 F.Supp.3d 696
United States District Court,
W.D. New York.

Jessie J. BARNES, 09–B–2707, Plaintiff,
v.
COUNTY OF MONROE, et al., Defendants.

No. 10–CV–6164 EAW.
|
Signed Feb. 10, 2015.

**Synopsis**

**Background:** State inmate brought § 1983 action against county, county officials, and correctional officers, alleging that officers used excessive force against him and that he was subjected to unconstitutional conditions of confinement during his pretrial detention. Defendants moved for judgment on the pleadings.

**Holdings:** The District Court, Elizabeth A. Wolford, J., held that:

[1] fact that judge reached unfavorable decision in another, unrelated matter provided no basis for recusal;

[2] inmate failed to state municipal liability claim;

[3] county executive was not subject to liability;

[4] inmate stated excessive force claim;

[5] inmate stated conspiracy claim;

[6] inmate stated failure-to-protect claim; and

[7] inmate stated conditions-of-confinement claim.

Motion granted in part and denied in part.

West Headnotes (118)

[1]   **Federal Civil Procedure**
      ⚖ Judgment on the Pleadings

Motions for judgment on the pleadings are evaluated by the same standard applicable to motions to dismiss for failure to state a claim. Fed.Rules Civ.Proc.Rule 12(b)(6), (c), 28 U.S.C.A.

Cases that cite this headnote

[2]   **Federal Civil Procedure**
      ⚖ Time for motion

Motions for judgment on the pleadings must be made after the close of the pleadings, but early enough not to delay trial. Fed.Rules Civ.Proc.Rule 12(c), 28 U.S.C.A.

Cases that cite this headnote

[3]   **Federal Civil Procedure**
      ⚖ Matters considered in general

In considering a motion to dismiss for failure to state a claim, district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

Cases that cite this headnote

[4]   **Federal Civil Procedure**
      ⚖ Matters considered in general

On motion to dismiss for failure to state a claim, complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are "integral" to the complaint. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

Cases that cite this headnote

[5]   **Federal Civil Procedure**
      ⚖ Pro Se or Lay Pleadings

On motions to dismiss for failure to state claim, pro se litigants generally are entitled to a liberal construction of their pleadings, which should be read to raise the strongest arguments that they suggest. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 72 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

Cases that cite this headnote

**[6]    Federal Civil Procedure**
          Insufficiency in general
       **Federal Civil Procedure**
          Matters deemed admitted; acceptance as true of allegations in complaint

Although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice to overcome **motion** to **dismiss** for failure to state a claim, even in a pro se case. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

Cases that cite this headnote

**[7]    Federal Civil Procedure**
          Construction of pleadings

In ruling on **motion** to **dismiss** for failure to state claim, district court may not invent factual allegations plaintiff has not pled. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

Cases that cite this headnote

**[8]    Judges**
          Determination of objections

Recusal motions are committed to the sound discretion of the district court. 28 U.S.C.A. § 455(a).

Cases that cite this headnote

**[9]    Judges**
          Bias and Prejudice

In cases where a judge's impartiality might reasonably be questioned, the issue for consideration on motion for recusal is not whether the judge is in fact subjectively impartial, but whether the objective facts suggest impartiality. 28 U.S.C.A. § 455(a).

Cases that cite this headnote

**[10]   Judges**
          Bias and Prejudice

Fact that district court judge reached unfavorable decision in another, unrelated matter provided no basis for recusal on ground that judge was racially biased, in African-American inmate's § 1983 action alleging that he was subjected to unconstitutional conditions of confinement during his pretrial detention. 28 U.S.C.A. § 455(a); 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[11]   Counties**
          Acts of officers or agents

County did not assume liability, pursuant to local law, for alleged acts of county sheriff or his deputies in placing racial minorities incarcerated in county jail in unsafe and unsanitary conditions, and thus county was not subject to liability, under respondeat superior theory, for alleged violations of New York law by sheriff and deputies.

Cases that cite this headnote

**[12]   Civil Rights**
          Governmental Ordinance, Policy, Practice, or Custom

Municipality can be held liable under § 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality. 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[13]   Civil Rights**
          Governmental Ordinance, Policy, Practice, or Custom

To assert a claim of municipal liability under § 1983, a plaintiff must allege the existence of a policy or custom that caused injury, and a direct causal connection between that policy or custom and the deprivation of a constitutional right. 42 U.S.C.A. § 1983.

WESTLAW  © 2016 Thomson Reuters. No claim to original U.S. Government Works.                    2

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

Cases that cite this headnote

**[14]    Civil Rights**
⊷ Acts of officers and employees in general;
vicarious liability and respondeat superior in
general

Absent custom, policy, or usage that caused
injury, a municipality cannot be held liable under
§ 1983 on a respondeat superior basis for the tort
of its employee. 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[15]    Civil Rights**
⊷ Governmental Ordinance, Policy, Practice,
or Custom

To prevail on a § 1983 claim against a municipal
entity, a plaintiff must show: (1) actions taken
under color of law, (2) deprivation of a
constitutional or statutory right, (3) causation, (4)
damages, and (5) that an official policy of the
municipality caused the constitutional injury. 42
U.S.C.A. § 1983.

Cases that cite this headnote

**[16]    Civil Rights**
⊷ Governmental Ordinance, Policy, Practice,
or Custom

**Civil Rights**
⊷ Lack of Control, Training, or Supervision;
Knowledge and Inaction

Municipal policy that could subject municipality
to liability under § 1983 may be pronounced or
tacit and reflected in either action or inaction. 42
U.S.C.A. § 1983.

Cases that cite this headnote

**[17]    Civil Rights**
⊷ Governmental Ordinance, Policy, Practice,
or Custom

Official municipal policy that could subject
municipality to liability under § 1983 includes
the decisions of a government's lawmakers, the
acts of its policymaking officials, and practices

so persistent and widespread as to practically
have the force of law. 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[18]    Civil Rights**
⊷ Prisons and jails; probation and parole

African-American pretrial detainee's allegations
that county had discriminatory policy of housing
minorities together at county jail, which led to
"rampant" gang activity, failed to state § 1983
municipal liability claim, absent allegations
regarding sanctioned county policy stating that
minority inmates should be placed in certain
housing, or allegations that jail's practices were
so persistent and widespread as to practically
have force of law. 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[19]    Civil Rights**
⊷ Complaint in general

Mere assertion that a municipality has an
unconstitutional custom or policy is insufficient
in the absence of allegations of fact tending
to support, at least circumstantially, such an
inference, for purposes of § 1983 municipal
liability claim. 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[20]    Civil Rights**
⊷ Complaint in general

Where a plaintiff can show only misbehaving
officers, but has not alleged an official policy that
led to the constitutional or statutory violation,
his § 1983 municipal liability claim must fail. 42
U.S.C.A. § 1983.

Cases that cite this headnote

**[21]    Constitutional Law**
⊷ **Prisoners**

An inmate has no constitutional right to have his
grievances processed at all, or if processed, to
have the procedure done properly.

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 74 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

Cases that cite this headnote

**[22]    Civil Rights**
↳ Prisons and jails; probation and parole

Pretrial detainee's conclusory allegations that
county maintained grievance program at jail that
was biased and prejudicial failed to state § 1983
municipal liability claim, absent allegations that
county had custom, policy, or usage that led
to deprivation of his constitutional rights. 42
U.S.C.A. § 1983.

Cases that cite this headnote

**[23]    Sheriffs and Constables**
↳ Liabilities for acts or omissions of deputies
or assistants

Under New York law, a county sheriff cannot be
held personally liable on the basis of respondeat
superior for the alleged negligent acts of his
deputies.

Cases that cite this headnote

**[24]    Civil Rights**
↳ Persons Liable in General

Personal involvement of defendants in alleged
constitutional deprivations is a prerequisite to an
award of damages under § 1983. 42 U.S.C.A. §
1983.

Cases that cite this headnote

**[25]    Civil Rights**
↳ Criminal law enforcement; prisons

Within the Second Circuit, it is generally
accepted that a supervisory defendant may have
been personally involved in a constitutional
deprivation within the meaning of § 1983 if he:
(1) directly participated in the alleged infraction,
(2) after learning of the violation, failed to
remedy the wrong, (3) created a policy or
custom under which unconstitutional practices
occurred or allowed such policy or custom to
continue, (4) was grossly negligent in managing
subordinates who caused the unlawful condition
or event, or (5) exhibited deliberate indifference

to the rights of inmates by failing to act on
information indicating that unconstitutional acts
were occurring. 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[26]    Civil Rights**
↳ Criminal law enforcement; prisons

Mere linkage in the prison chain of command is
insufficient to implicate a state commissioner of
corrections or a prison superintendent in a § 1983
claim. 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[27]    Civil Rights**
↳ Criminal law enforcement; prisons

County sheriff's receipt of African-American
pretrial detainee's grievances, by itself, did not
amount to personal involvement that would
subject sheriff to liability under § 1983 for
inmate's alleged constitutional deprivations. 42
U.S.C.A. § 1983.

Cases that cite this headnote

**[28]    Civil Rights**
↳ Vicarious liability and respondeat superior
in general; supervisory liability in general

Absent an underlying constitutional violation,
there can be no supervisory liability under §
1983. 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[29]    Civil Rights**
↳ Criminal law enforcement; prisons

Pretrial detainee's allegations that county
executive engaged in "gross negligent
management" of various county jail officers and
supported "unconscionable tyranny" of placing
all minorities in special housing unit (SHU)
failed to state § 1983 claim against executive,
in her individual capacity, absent allegations
that constitutional violations occurred for any of
the underlying events that executive negligently
mismanaged. 42 U.S.C.A. § 1983.

WESTLAW    © 2016 Thomson Reuters. No claim to original U.S. Government Works.        4

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 75 of 353

**Trapani v. Pullen, Not Reported in Fed. Supp. (2016)**

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

Cases that cite this headnote

**[30]  Prisons**
⬅ Actions and litigation

Prison Litigation Reform Act's (PLRA) strict administrative exhaustion requirement applies in actions brought by pretrial detainees. Prison Litigation Reform Act of 1995, § 101(a), 42 U.S.C.A. § 1997e(a).

Cases that cite this headnote

**[31]  Prisons**
⬅ Exhaustion of Other Remedies

Prison Litigation Reform Act's (PLRA) administrative exhaustion provision requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. Prison Litigation Reform Act of 1995, § 101(a), 42 U.S.C.A. § 1997e(a).

Cases that cite this headnote

**[32]  Prisons**
⬅ Exhaustion of Other Remedies

Prison Litigation Reform Act's (PLRA) administrative exhaustion provision affords prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being hauled into court, and also creates an administrative record that facilitates judicial review. Prison Litigation Reform Act of 1995, § 101(a), 42 U.S.C.A. § 1997e(a).

Cases that cite this headnote

**[33]  Prisons**
⬅ Pleading

Only circumstance in which it is appropriate to dismiss complaint on nonexhaustion grounds under Prison Litigation Reform Act (PLRA) is when it is apparent from face of complaint that plaintiff failed to exhaust his administrative

remedies. Prison Litigation Reform Act of 1995, § 101(a), 42 U.S.C.A. § 1997e(a).

Cases that cite this headnote

**[34]  Civil Rights**
⬅ Prisons and jails; probation and parole

Dismissal of inmate's § 1983 complaint for failure to exhaust administrative remedies under Prison Litigation Reform Act (PLRA) was inappropriate at **motion** to **dismiss** stage; although inmate made some allegations that he filed grievances and appeals as to his underlying concerns, he did not discuss his pursuit of administrative remedies as to each and every claim. 42 U.S.C.A. § 1983; Prison Litigation Reform Act of 1995, § 101(a), 42 U.S.C.A. § 1997e(a).

Cases that cite this headnote

**[35]  Evidence**
⬅ Proceedings in other courts
**Federal Civil Procedure**
⬅ Matters considered

Prior state court actions in which the New York Supreme Court, Appellate Division, dismissed inmate's Article 78 petitions seeking review of his disciplinary hearings were matters of public record, and thus district court, in reviewing motion for judgment on the pleadings, would take judicial notice of state court actions, in inmate's § 1983 action alleging that he was subjected to unconstitutional conditions of confinement. Fed.Rules Civ.Proc.Rule 12(c), 28 U.S.C.A.; 42 U.S.C.A. § 1983; N.Y.McKinney's CPLR 7801 et seq.

Cases that cite this headnote

**[36]  Evidence**
⬅ Proceedings in other courts
**Evidence**
⬅ Official proceedings and acts

A district court may take judicial notice of matters of public record, including decisions in prior state court.

WESTLAW  © 2016 Thomson Reuters. No claim to original U.S. Government Works.                5

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 76 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)
2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

Cases that cite this headnote

[37]  **Evidence**
      ← Nature and scope in general
      **Federal Civil Procedure**
      ← Matters considered

In the context of a motion for judgment on the pleadings, district court should generally take judicial notice to determine what statements documents contain, not for the truth of the matters asserted. Fed.Rules Civ.Proc.Rule 12(c), 28 U.S.C.A.

Cases that cite this headnote

[38]  **Judgment**
      ← Matters which were not or could not have been adjudicated

Res judicata did not bar inmate's § 1983 action against county officials, alleging that he was subjected to unconstitutional conditions of confinement during his pretrial detention, based upon inmate's prior Article 78 proceedings in New York seeking review of his placement in special housing unit (SHU) as result of prison disciplinary hearings; § 1983 claims could not have been raised in Article 78 proceedings. 42 U.S.C.A. § 1983, N.Y.McKinney's CPLR 7801 et seq.

Cases that cite this headnote

[39]  **Judgment**
      ← Nature and requisites of former recovery as bar in general
      **Judgment**
      ← Nature and elements of bar or estoppel by former adjudication

"Claim preclusion," known as "res judicata," requires that a final judgment on the merits of an action be given preclusive effect, barring parties as well as those in privity with them from relitigating in a subsequent action a claim which was or could have been raised in the prior suit.

Cases that cite this headnote

[40]  **Judgment**
      ← Identity of Cause of Action or Relief Sought

New York plaintiff is not barred under doctrine of res judicata from seeking damages, in federal court, on civil rights claims by reason of a prior judgment on the same underlying facts in an Article 78 proceeding and therefore that action cannot give the damages relief demanded in a civil rights suit. N.Y.McKinney's CPLR 7801 et seq.

Cases that cite this headnote

[41]  **Judgment**
      ← Scope and Extent of Estoppel in General
      **Judgment**
      ← Matters actually litigated and determined

Under New York law, the doctrine of "collateral estoppel" precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity, whether or not the tribunals or causes of action are the same.

Cases that cite this headnote

[42]  **Judgment**
      ← Scope and Extent of Estoppel in General

Collateral estoppel may bar a plaintiff from bringing an action in federal court pursuant to § 1983. 42 U.S.C.A. § 1983.

Cases that cite this headnote

[43]  **Judgment**
      ← Scope and Extent of Estoppel in General
      **Judgment**
      ← Matters actually litigated and determined
      **Judgment**
      ← Essentials of Adjudication

There are two requirements for the application of collateral estoppel to an issue under New York law: (1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 77 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

had a full and fair opportunity to litigate the issue in the first proceeding.

Cases that cite this headnote

**[44]    Judgment**
    ← Scope and Extent of Estoppel in General

To determine whether first action provided a full and fair opportunity to litigate, as required for application of collateral estoppel to an issue under New York law, requires consideration of: the nature of the forum and the importance of the claim in the prior litigation, the incentive and initiative to litigate and the actual extent of litigation, the competence and expertise of counsel, the availability of new evidence, the differences in the applicable law and the foreseeability of future litigation.

Cases that cite this headnote

**[45]    Judgment**
    ← Nature of state tribunal's proceedings

**Judgment**
    ← Issues or Questions Presented

Former pretrial detainee was collaterally estopped from raising in § 1983 action his challenges to certain disciplinary hearings and orders which resulted in his placement in special housing unit (SHU) at county jail, since state court had already examined those challenges in inmate's Article 78 proceedings pursuant to New York law. 42 U.S.C.A. § 1983; N.Y.McKinney's CPLR 7801 et seq.

Cases that cite this headnote

**[46]    Civil Rights**
    ← Arrest and detention

Pretrial detainee who is subjected to excessive force may bring a claim under § 1983. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[47]    Constitutional Law**
    ← Safety and security

Because the Eighth Amendment's protection from cruel and unusual punishment does not apply until after conviction and sentence, the right of pretrial detainees to be free from excessive force amounting to punishment is protected by the Due Process Clause of the Fourteenth Amendment. U.S.C.A. Const.Amends. 8, 14.

1 Cases that cite this headnote

**[48]    Constitutional Law**
    ← Threats, harassment, and use of force

**Sentencing and Punishment**
    ← Use of force

Second Circuit applies the same standard to excessive force claims brought under the Fourteenth Amendment as under the Eighth Amendment. U.S.C.A. Const.Amends. 8, 14.

Cases that cite this headnote

**[49]    Constitutional Law**
    ← Safety and security

Analysis provided by the Supreme Court in *Hudson v. McMillian*, that requires a sentenced prisoner to satisfy both an objective and subjective prong to establish an Eighth Amendment violation, also applies to excessive force claims brought by a pretrial detainee under the Fourteenth Amendment. U.S.C.A. Const.Amends. 8, 14.

Cases that cite this headnote

**[50]    Sentencing and Punishment**
    ← Scope of Prohibition

Objective component of claim of cruel and unusual punishment under Eighth Amendment focuses on harm done, in light of contemporary standards of decency. U.S.C.A. Const.Amend. 8.

Cases that cite this headnote

**[51]    Sentencing and Punishment**
    ← Use of force

WESTLAW  © 2016 Thomson Reuters. No claim to original U.S. Government Works.                                                      7

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 78 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

Eighth Amendment's prohibition against cruel and unusual punishment does not extend to de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind. U.S.C.A. Const.Amend. 8.

Cases that cite this headnote

[52]  **Sentencing and Punishment**
     ← Use of force

Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's Eighth Amendment rights. U.S.C.A. Const.Amend. 8.

Cases that cite this headnote

[53]  **Sentencing and Punishment**
     ← Use of force

Subjective requirement of Eighth Amendment excessive force claim is satisfied if the defendant acted wantonly with a sufficiently culpable state of mind. U.S.C.A. Const.Amend. 8.

Cases that cite this headnote

[54]  **Constitutional Law**
     ← Safety and security

Where a state official is accused of using excessive physical force against a pretrial detainee, in violation of the detainee's due process rights, the inquiry turns on whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. U.S.C.A. Const.Amend. 14.

Cases that cite this headnote

[55]  **Constitutional Law**
     ← Safety and security
     **Prisons**
     ← Use of force

Former pretrial detainee's allegation that county correctional officer used excessive force when he responded to fight between detainee and fellow inmates, and jumped on detainee's back, striking

him in face and knocking out tooth, and that officer was not merely using force to maintain or restore discipline, but that entire incident was "premeditated," stated § 1983 excessive force claim against officer under Due Process Clause. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

Cases that cite this headnote

[56]  **Constitutional Law**
     ← Safety and security
     **Prisons**
     ← Use of force

Former pretrial detainee's allegations that county correctional officers used excessive force when they pushed him face-first into glass window, pushed him to floor, kicked, stomped on, and punched him, used handcuffs to inflict pain, that as result of altercation, inmate urinated and defecated on himself, and experienced dizziness and concussion, and that force used on him was in response to his reaching for legal papers and attempting to steady himself, stated § 1983 excessive force claim against officers under Due Process Clause. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

Cases that cite this headnote

[57]  **Conspiracy**
     ← Conspiracy to Interfere with Civil Rights

To state a conspiracy claim in violation of constitutional rights under § 1983, a plaintiff must allege: (1) an agreement between two or more state actors or between a state actor and a private entity, (2) to act in concert to inflict an unconstitutional injury, and (3) an overt act done in furtherance of that goal causing damages. 42 U.S.C.A. § 1983.

Cases that cite this headnote

[58]  **Conspiracy**
     ← Combination

"Intracorporate conspiracy doctrine" provides that if conspiratorial conduct challenged under § 1983 is essentially a single act by a single corporation acting exclusively through its own

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 79 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)
2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

officers and employees, each acting within the scope of his employment, there can be no actionable conspiracy. 42 U.S.C.A. § 1983.

Cases that cite this headnote

[59] **Conspiracy**
← Combination

Exception to intracorporate conspiracy doctrine applies in § 1983 action when individual employees are pursuing personal interests wholly separate and apart from the entity. 42 U.S.C.A. § 1983.

Cases that cite this headnote

[60] **Conspiracy**
← Pleading

While exact specifics are not required to state conspiracy claim in violation of constitutional rights under § 1983, pleadings must present facts tending to show agreement and concerted action. 42 U.S.C.A. § 1983.

Cases that cite this headnote

[61] **Conspiracy**
← Pleading

Plaintiff alleging conspiracy in violation of constitutional rights under § 1983 is required to make effort to provide some details of time and place and alleged effects of the conspiracy, including facts to demonstrate that defendants entered into agreement, express or tacit, to achieve unlawful end. 42 U.S.C.A. § 1983.

Cases that cite this headnote

[62] **Conspiracy**
← Pleading

Bare allegations of a conspiracy supported only by allegations of conduct easily explained as individual action are insufficient to state conspiracy claim in violation of constitutional rights under § 1983. 42 U.S.C.A. § 1983.

Cases that cite this headnote

[63] **Conspiracy**
← Pleading

Former pretrial detainee's allegations that county correctional officer who responded to fight between detainee and other inmates "collaborated" with fellow officers to delay emergency call, allowing detainee to be attacked by inmates, stated conspiracy claim in violation of constitutional rights under § 1983. 42 U.S.C.A. § 1983.

Cases that cite this headnote

[64] **Conspiracy**
← Conspiracy to Interfere with Civil Rights

**Constitutional Law**
← Other particular conditions

**Prisons**
← Particular violations, punishments, deprivations, and conditions

Even if county correctional officers conspired to cover up theft of pretrial detainee's personal property, officers' actions did not violate inmate's due process rights, since detainee had state remedies available to him for alleged deprivation, thus precluding detainee's § 1983 conspiracy claim. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

Cases that cite this headnote

[65] **Civil Rights**
← Nature and elements of civil actions

In order to bring a valid § 1983 claim, a plaintiff must establish that he was deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law. 42 U.S.C.A. § 1983.

Cases that cite this headnote

[66] **Constitutional Law**
← Property and employment

Even an intentional deprivation of an inmate's property that is random and unauthorized does not give rise to a § 1983 due process claim so

WESTLAW  © 2016 Thomson Reuters. No claim to original U.S. Government Works.

9

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

long as adequate state post-deprivation remedies are available. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

Cases that cite this headnote

[67]  **Conspiracy**
    ⟜ Conspiracy to Interfere with Civil Rights

Absent an underlying constitutional injury, a civil rights conspiracy claim under § 1983 cannot survive. 42 U.S.C.A. § 1983.

Cases that cite this headnote

[68]  **Constitutional Law**
    ⟜ Conditions

As opposed to deliberate indifference claims brought by post-conviction **prisoners**, which arise under the Eighth Amendment, claims for deliberate indifference brought by state pretrial detainees arise under the Fourteenth Amendment. U.S.C.A. Const.Amends. 8, 14.

Cases that cite this headnote

[69]  **Sentencing and Punishment**
    ⟜ Conditions of Confinement

Eighth Amendment requires that prison officials take reasonable measure to guarantee the safety of inmates in their custody. U.S.C.A. Const.Amend. 8.

Cases that cite this headnote

[70]  **Civil Rights**
    ⟜ Use of force; protection from violence

Prison official's failure to protect **prisoner** from harm may form basis of § 1983 claim. 42 U.S.C.A. § 1983.

Cases that cite this headnote

[71]  **Sentencing and Punishment**
    ⟜ Protection from violence

Prison officials have duty under Eighth Amendment to protect **prisoners** from violence

at hands of other **prisoners**. U.S.C.A. Const.Amend. 8.

Cases that cite this headnote

[72]  **Sentencing and Punishment**
    ⟜ Protection from violence

To state an Eighth Amendment failure-to-protect claim under § 1983, a plaintiff must establish two conditions: first, plaintiff must establish that he is incarcerated under conditions posing substantial risk of serious harm, and second, plaintiff must demonstrate that defendant prison officials possessed sufficient culpable intent of deliberate indifference. U.S.C.A. Const.Amend. 8, 42 U.S.C.A. § 1983.

1 Cases that cite this headnote

[73]  **Civil Rights**
    ⟜ Police, Investigative, or Law Enforcement Activities

For purposes of liability under § 1983, all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence. 42 U.S.C.A. § 1983.

Cases that cite this headnote

[74]  **Civil Rights**
    ⟜ Use of force; protection from violence

In order to establish § 1983 liability under failure-to-protect theory, a plaintiff must prove that the defendant in question (1) possessed actual knowledge of the use by another correction officer of excessive force, (2) had a realistic opportunity to intervene and prevent the harm from occurring, and (3) nonetheless disregarded that risk by intentionally refusing or failing to take reasonable measures to end the use of excessive force. 42 U.S.C.A. § 1983.

Cases that cite this headnote

[75]  **Constitutional Law**
    ⟜ Safety and security

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 81 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

**Prisons**
← Protection from violence, assault, or abuse

Former pretrial detainee's allegations that county correctional officers were aware of impending attack by fellow inmates and permitted attack to occur, and that officers collaborated to delay emergency response to allow detainee to be attacked by inmates, stated § 1983 failure-to-protect claim against officers under Due Process Clause. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[76]    Constitutional Law**
← Safety and security
**Prisons**
← Housing assignments; classification and security status

Former pretrial detainee failed to state § 1983 failure-to-protect claim under Due Process Clause arising from correctional officer's placing him in second floor housing, where detainee was involved in fight with two other inmates, absent allegations that officer had any knowledge that placing detainee in second floor housing posed substantial risk of harm to detainee. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[77]    Constitutional Law**
← Safety and security
**Prisons**
← Housing assignments; classification and security status

Former pretrial detainee's allegations that county correctional officers placed him in mainframe housing despite his protests, that he was subsequently attacked by three inmates, and that when he informed one officer that he did not want to return to mainframe housing, officer essentially responded that he did not care if detainee was assaulted by other inmates in mainframe housing, stated § 1983 failure-to-protect claim against officers under Due Process Clause. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[78]    Constitutional Law**
← Safety and security
**Prisons**
← Protection from violence, assault, or abuse

Former pretrial detainee's allegations that county correctional officer not only failed to protect detainee from having urine, feces, and dirty mop water thrown into his cell by fellow inmate, but that officer also let inmate out of his cell and directed him to throw those materials into detainee's cell, stated § 1983 failure-to-protect claim against officer under Due Process Clause. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[79]    Constitutional Law**
← Safety and security
**Prisons**
← Protection from violence, assault, or abuse

Former pretrial detainee's allegations that in retaliation for detainee's prior excessive use of force claim, county correctional officer was "watching and laughing" as fellow officers "dragged" detainee back to his cell, stated § 1983 failure to protect claim against officer under Due Process Clause. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[80]    Constitutional Law**
← Retaliation

Courts properly approach prisoner First Amendment retaliation claims under § 1983 with skepticism and particular care, because virtually any adverse action taken by a prison official, even those otherwise not rising to the level of a constitutional violation, can be characterized as a constitutionally proscribed retaliatory act. U.S.C.A. Const.Amend. 1; 42 U.S.C.A. § 1983.

Cases that cite this headnote

Case 9:22-cv-00638-DNH-TWD   Document 58   Filed 02/28/25   Page 82 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

**[81]** **Constitutional Law**
⬅ Particular claims

In order to survive a **motion** to **dismiss** for failure to state a claim, an inmate asserting § 1983 **First Amendment** **retaliation** claim must allege (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action. U.S.C.A. Const.Amend. 1; Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.; 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[82]** **Constitutional Law**
⬅ Prisoners

Filing of formal **prisoner** grievances is protected conduct under the **First Amendment**. U.S.C.A. Const.Amend. 1.

Cases that cite this headnote

**[83]** **Constitutional Law**
⬅ Retaliation

In context of § 1983 **First Amendment** **retaliation** claim brought by inmate, "adverse action," defined objectively, is **retaliatory** conduct that would deter a similarly situated individual of ordinary firmness from exercising constitutional rights. U.S.C.A. Const.Amend. 1; 42 U.S.C.A. § 1983.

1 Cases that cite this headnote

**[84]** **Constitutional Law**
⬅ Retaliation

In the context of **prisoner First Amendment** **retaliation** suits under § 1983, a **prisoner** need not demonstrate "actual chill"; issue is whether defendants engaged in **retaliatory** conduct that would deter a similarly situated individual of ordinary firmness from exercising his constitutional rights. U.S.C.A. Const.Amend. 1; 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[85]** **Constitutional Law**
⬅ Retaliation in general

Objective inquiry in § 1983 **First Amendment** **retaliation** claims is not static across contexts, but rather must be tailored to the different circumstances in which **retaliation** claims arise. U.S.C.A. Const.Amend. 1; 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[86]** **Constitutional Law**
⬅ Retaliation

In context of § 1983 **First Amendment** **retaliation** claim, **prisoners** may be required to tolerate more than average citizens before **retaliatory** action taken against them is considered adverse. U.S.C.A. Const.Amend. 1; 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[87]** **Constitutional Law**
⬅ Discipline and classification

**Prisoner** has a substantive due process right not to be subjected to false misconduct charges as **retaliation** for his exercise of a constitutional right such as petitioning the government for redress of grievances. U.S.C.A. Const.Amends. 1, 14.

Cases that cite this headnote

**[88]** **Constitutional Law**
⬅ Prisoners

In evaluating whether an inmate has established the necessary causal connection of a § 1983 **First Amendment retaliation** claim based on the filing of grievances, court may infer an improper or **retaliatory** motive in the adverse action from: (1) the temporal proximity of the filing to the grievance and the disciplinary action, (2) the inmate's prior good disciplinary record, (3) vindication at a hearing on the matter, and (4) statements by the defendant regarding his motive for disciplining the inmate. U.S.C.A. Const.Amend. 1; 42 U.S.C.A. § 1983.

Cases that cite this headnote

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 83 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

Cases that cite this headnote

**[89]** **Constitutional Law**
⬅ **Retaliation**

An inmate in § 1983 action can establish a causal connection that suggests **retaliation** under **First Amendment** by showing that protected activity was close in time to the adverse action. U.S.C.A. Const.Amend. 1.

Cases that cite this headnote

**[90]** **Civil Rights**
⬅ Prisons and jails; probation and parole

Former pretrial detainee's tenuous and conclusory allegation that correctional officer placed him in special housing unit (SHU) in **retaliation** for burglary of family member that may have been committed by detainee failed to state § 1983 **First Amendment retaliation** claim, absent allegation that detainee was engaging in any protected speech or conduct. U.S.C.A. Const.Amend. 1; 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[91]** **Constitutional Law**
⬅ **Prisoners**

**Prisons**
⬅ Particular violations, punishments, deprivations, and conditions

Former pretrial detainee's allegations that county correctional officer permitted theft of detainee's commissary in **retaliation** for detainee's filing of grievances, and that officer expressed his dislike for detainee because detainee had filed grievances, stated § 1983 **First Amendment retaliation** claim against officer. U.S.C.A. Const.Amend. 1; 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[92]** **Civil Rights**
⬅ Prisons and jails; probation and parole

Former pretrial detainee's allegations that county correctional officer identified detainee by

pointing at him, and that fellow officer then "humiliated and degraded" detainee for five to six hours before allegedly issuing two false misbehavior reports against detainee, failed to state § 1983 **First Amendment retaliation** claim against officers, absent allegations as to what protected activities detainee engaged in to elicit alleged **retaliatory** conduct, or as to when alleged **retaliation** occurred or reports were issued. U.S.C.A. Const.Amend. 1; 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[93]** **Prisons**
⬅ Wrongful proceedings against **prisoners**, false misconduct reports

Prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report; the only way that false accusations contained in a misbehavior report can rise to the level of a constitutional violation is where the false accusation is based on something more, such as **retaliation** against the **prisoner** for exercising a constitutional right.

Cases that cite this headnote

**[94]** **Constitutional Law**
⬅ **Retaliation**

**Constitutional Law**
⬅ **Prisoners**

**Prisons**
⬅ Particular violations, punishments, deprivations, and conditions

Former pretrial detainee's allegations that, before being placed in special housing unit (SHU), he was subjected to strip search by county correctional officer, that during course of strip search, detainee felt that he was degraded and humiliated, and he subsequently filed grievance against officer, that later the same day, officer approached detainee's cell and made sexual comments and gestures, and that other officers filed false misbehavior report against detainee in **retaliation** for detainee's grievance stated § 1983 **First Amendment retaliation** claim

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 84 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

against officers. U.S.C.A. Const.Amend. 1; 42
U.S.C.A. § 1983.

Cases that cite this headnote

[95]    **Constitutional Law**
        Particular claims

Former pretrial detainee's allegations that county
correctional officers engaged in retaliation by
issuing false misbehavior report and placing
detainee on shower and exercise deprivation
order after another officer saw copy of detainee's
legal petition earlier in the day failed to state
causation element of § 1983 First Amendment
retaliation claim, absent allegations that officers
who filed report had knowledge of his protected
activity. U.S.C.A. Const.Amend. 1; 42 U.S.C.A.
§ 1983.

Cases that cite this headnote

[96]    **Constitutional Law**
        Imprisonment and Incidents Thereof
        **Constitutional Law**
        Property and employment

To establish a due process violation of the
Fourteenth Amendment, an inmate must show
that a government official made a deliberate
decision to deprive him of his life, liberty, or
property. U.S.C.A. Const.Amend. 14.

Cases that cite this headnote

[97]    **Constitutional Law**
        Imprisonment and Incidents Thereof

Merely negligent conduct by prison officials
does not give rise to claims under the Fourteenth
Amendment. U.S.C.A. Const.Amend. 14.

Cases that cite this headnote

[98]    **Constitutional Law**
        Discipline and classification
        **Constitutional Law**
        Segregation

A prisoner's liberty interest protected by due
process is implicated by prison discipline, such

as special housing unit (SHU) confinement,
only if the discipline imposes an atypical and
significant hardship on the prisoner in relations
to the ordinary incidents of prison life. U.S.C.A.
Const.Amend. 14.

Cases that cite this headnote

[99]    **Constitutional Law**
        Segregation

Factors relevant to determining whether an
inmate endured an atypical and significant
hardship that would implicate his liberty interest
protected by due process include the extent
to which the conditions of the disciplinary
segregation differ from other routine prison
conditions and the duration of the disciplinary
segregation imposed compared to discretionary
confinement. U.S.C.A. Const.Amend. 14.

Cases that cite this headnote

[100]   **Constitutional Law**
        Segregation
        **Prisons**
        Punitive, Disciplinary, or Administrative
        Confinement

Special housing unit (SHU) confinements of
30 to 90 days fall within the "short range"
of disciplinary confinement and thus implicate
an inmate's liberty interest protected by due
process only if the conditions were more severe
than the normal SHU conditions. U.S.C.A.
Const.Amend. 14.

Cases that cite this headnote

[101]   **Constitutional Law**
        Other particular conditions
        **Prisons**
        Housing assignments; classification and
        security status

Pretrial detainee's assignment to special housing
unit (SHU) for 30 consecutive days with no
showers or exercise subjected him to abnormal
conditions of confinement that implicated his
liberty interests protected by due process.
U.S.C.A. Const.Amend. 14.

Case 9:22-cv-00638-DNH-TWD   Document 58   Filed 02/28/25   Page 85 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

Cases that cite this headnote

**[102]  Constitutional Law**
      Discipline and classification

In prison disciplinary context, constitutionally
mandated procedural due process requirements
include: (1) written notice of the charges to
the inmate, (2) the opportunity to appear at
a disciplinary hearing and present witnesses
and evidence in support of his defense, subject
to a prison facility's legitimate safety and
penological concerns, (3) a written statement by
the hearing officer explaining his decision and
the reasons for the action being taken, and (4)
in some circumstances, the right to assistance in
preparing a defense. U.S.C.A. Const.Amend. 14.

Cases that cite this headnote

**[103]  Constitutional Law**
      Particular claims

Former pretrial detainee's allegations that he was
kept in special housing unit (SHU) for six days
beyond his date of release from SHU "without
adequacy of any due process of law" as result of
county correctional officer's filing false charges
against him failed to state § 1983 procedural
due process claim, absent allegation that detainee
was denied fair opportunity to refute charges.
U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[104]  Constitutional Law**
      Particular claims

Former pretrial detainee's allegations that his
due process rights were violated when he was
required to remain in full mechanical restraints
during isolated morning exercise period for five
months failed to state § 1983 procedural due
process claim, absent allegations as to what
facts or circumstances led to that requirement,
or how he was prevented from exercising his
due process rights in relation to requirement.
U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[105]  Constitutional Law**
      Similarly situated persons;  like
circumstances

Equal Protection Clause directs state actors to
treat similarly situated people alike. U.S.C.A.
Const.Amend. 14.

Cases that cite this headnote

**[106]  Constitutional Law**
      Intentional or purposeful action requirement

To prove an equal protection violation, claimants
must prove purposeful discrimination, directed
at an identifiable or suspect class. U.S.C.A.
Const.Amend. 14.

Cases that cite this headnote

**[107]  Constitutional Law**
      Intentional or purposeful action requirement
   **Constitutional Law**
      Similarly situated persons;  like
circumstances

To prove a violation of the Equal Protection
Clause a plaintiff must demonstrate that he
was treated differently than others similarly
situated as a result of intentional or purposeful
discrimination. U.S.C.A. Const.Amend. 14.

Cases that cite this headnote

**[108]  Constitutional Law**
      Intentional or purposeful action

Proof of racially discriminatory intent or purpose
is required to show a violation of the Equal
Protection Clause. U.S.C.A. Const.Amend. 14.

Cases that cite this headnote

**[109]  Constitutional Law**
      Particular claims

African-American former pretrial detainee's
allegations that racial minorities were
disproportionately placed in special housing unit
(SHU) at county jail and subsequently deprived
of access to public information failed to state §

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

1983 equal protection claim, absent allegations that non-minority inmates who committed similar policy violations were not also placed in SHU and subject to same deprivation. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[110]  Sentencing and Punishment**
 ⟵ Conditions of Confinement

Under the Eighth Amendment, officials may not create inhumane prison conditions, deprive inmates of basic necessities, or fail to protect their health or safety; however, because society does not expect or intend prison conditions to be comfortable, only extreme deprivations are sufficient to sustain a conditions-of-confinement claim. U.S.C.A. Const.Amend. 8.

Cases that cite this headnote

**[111]  Sentencing and Punishment**
 ⟵ Conditions of Confinement
**Sentencing and Punishment**
 ⟵ Deliberate indifference in general

To state an Eighth Amendment claim based on conditions of confinement, an inmate must allege that: (1) objectively, the deprivation the inmate suffered was sufficiently serious that he was denied the minimal civilized measure of life's necessities, and (2) subjectively, the defendant official acted with a sufficiently culpable state of mind, such as deliberate indifference to inmate health or safety. U.S.C.A. Const.Amend. 8.

Cases that cite this headnote

**[112]  Constitutional Law**
 ⟵ Other particular conditions
**Prisons**
 ⟵ Particular violations, punishments, deprivations, and conditions

Former pretrial detainee's allegations that, after he was released from special housing unit (SHU), county correctional officers placed him in poorly ventilated cell where he was exposed to human excrement and bodily fluids over the course of multiple days, and that he was

subjected to extreme conditions in SHU by way of 24-hour lighting by officers, stated § 1983 conditions-of-confinement claim against officers under Due Process Clause. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[113]  Sentencing and Punishment**
 ⟵ Sanitation

Unsanitary conditions in a prison cell can, in egregious circumstances, rise to the level of cruel and unusual punishment under the Eighth Amendment. U.S.C.A. Const.Amend. 8.

Cases that cite this headnote

**[114]  Constitutional Law**
 ⟵ Other particular conditions
**Prisons**
 ⟵ Particular violations, punishments, deprivations, and conditions

Pretrial detainee's inability to shower or exercise over course of four days as result of being housed in booking cell on shower and exercise deprivation order did not rise to level of Fourteenth Amendment violation. U.S.C.A. Const.Amend. 14.

Cases that cite this headnote

**[115]  Sentencing and Punishment**
 ⟵ Housing

Requiring inmates to live in constant illumination can, under certain circumstances, rise to the level of an Eighth Amendment violation. U.S.C.A. Const.Amend. 8.

Cases that cite this headnote

**[116]  Civil Rights**
 ⟵ Prisons

African-American former pretrial detainee's allegations that county correctional officials called him a "piece of shit that likes to file grievances" and "nigger," and stated that they would kill detainee, failed to state § 1983 claim

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 87 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

based on verbal harassment, absent allegations that detainee was ever physically threatened. 42 U.S.C.A. § 1983.

Cases that cite this headnote

[117]  Prisons
        ⟵ Threats, intimidation, and harassment;
          abusive language
        Sentencing and Punishment
        ⟵ Other particular conditions
        Prison officials' verbal harassment of inmates itself does not rise to the level of a constitutional violation.

Cases that cite this headnote

[118]  Federal Civil Procedure
        ⟵ Particular Cases
        Deciding issue of qualified immunity on county defendants' motion for judgment on the pleadings was premature, in former pretrial detainee's § 1983 action, since complaint plausibly alleged several causes of action. Fed.Rules Civ.Proc.Rule 12(c), 28 U.S.C.A.; 42 U.S.C.A. § 1983.

Cases that cite this headnote

**Attorneys and Law Firms**

*708  Jessie J. Barnes, Malone, NY, pro se.

Mallorie C. Rulison, Monroe County Department of Law, Rochester, NY, for Defendants.

**DECISION AND ORDER**

ELIZABETH A. WOLFORD, District Judge.

*INTRODUCTION*

Plaintiff Jessie James Barnes ("Plaintiff"), proceeding *pro se*, is an inmate currently housed at Upstate Correctional Facility. Plaintiff brings the instant action pursuant to 42 U.S.C. § 1983, alleging that Defendants committed various

violations of Plaintiff's state and constitutional rights while he was detained at the Monroe County Jail ("MCJ") during 2008 and 2009.

Presently before the Court is the motion by Defendants County of Monroe, Monroe County Executive Maggie Brooks, Monroe County Sheriff Patrick M. O'Flynn, MCJ Superintendent Ronald Harling, Major E. Krenzer, Major Caceci, Captain Jolly, Captain Thomas, Lieutenant Dimartino, Lieutenant Lipari, Lieutenant Horan, Lieutenant Kaiser, Lieutenant Kloner, Sergeant *709 DeRosa, Sergeant Mooney, Sergeant McGowan, Sergeant Hayes, Corporal Kimball, Corporal Gatti, Corporal Guest, Corporal Knapp, Corporal Cardella, Corporal Amatore, Corporal Kennelly, Corporal Pratt, Corporal Inipoli, Corporal Preston, Corporal T. Peck, Corporal S. Peck, Corporal Shellard, Corporal Carlo, Corporal Tripoli, Corporal Messura, Deputy Kluth, Deputy Scally, Deputy Luther, Deputy Atkins, Deputy Newton, Deputy Willis, Deputy Waud, Deputy James Amico, Deputy Ellen Danehy, Deputy Isiah Raby, Deputy Fitzsimmons, Deputy Palma, Deputy Daly, Deputy Galen, Deputy DiFlores, Deputy Alberti, Jane Doe Nurse, Nurse Mary, Greg Domalski, Bradley Meister, Avis Robinson, E. Holman, Letitia Miller, Michelle Rizzo, and Todd Thibout ("County Defendants")[1] for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) (Dkt. 119), Defendant Ellie Holman's separate motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) (Dkt. 120),[2] Plaintiff's motion for recusal (Dkt. 142), and Plaintiff's request to convert Defendants' motions for judgment on the pleadings into a motion for summary judgment (Dkt. 133).

For the following reasons, the County Defendants' motion (Dkt. 119) is granted in part and denied in part, Defendant Holman's motion (Dkt. 120) is granted, and Plaintiff's request to convert Defendants' motion for judgment on the pleadings into a motion for summary judgment (Dkt. 133) is denied. In addition, Plaintiff's motion for recusal (Dkt. 142) is denied.

*PROCEDURAL BACKGROUND*

Plaintiff filed his original complaint in this matter on March 22, 2010, alleging numerous causes of action against approximately 88 Defendants, along with an application to proceed *in forma pauperis*. (Dkt. 1, 2). On April 1, 2010, the Court granted Plaintiff leave to proceed *in forma pauperis*. (Dkt. 3). In that order, the Court also dismissed Defendants

**Trapani v. Pullen, Not Reported in Fed. Supp. (2016)**

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

Ontario County and Ontario County Attorney as parties to this action. (*Id.*).

Plaintiff filed a motion to appoint counsel on April 28, 2010 (Dkt. 4), and on May 17, 2010, the Court denied his motion (Dkt. 5).

On July 6, 2010, the County Defendants filed a **motion** to **dismiss**. (Dkt. 6). On July 27, 2010, the Court added Corporal Messura as a Defendant. (Dkt. 10). Plaintiff moved to amend his complaint on August 3, 2010. (Dkt. 12). On October 6, 2010, Defendants Beilein, Harrison–Ross, and Stewart filed a motion for summary judgment. (Dkt. 18). On December 27, 2010, Plaintiff filed another motion to **\*710** amend his complaint. (Dkt. 27). On July 26, 2011, Plaintiff voluntarily dismissed Defendants Beilein, Harrison–Ross, Stewart, and the Citizen's Policy and Complaint Review Council, and the Court dismissed these parties with prejudice by Court order. (Dkt. 60, 61). On January 11, 2012, 2012 WL 92553, the Court issued an order granting Plaintiff's motion to amend his complaint (Dkt. 27), and dismissing as moot Plaintiff's additional motion to amend (Dkt. 12) as well as the County Defendants' **motion** to **dismiss** (Dkt. 6). (Dkt. 62).

On January 25, 2012, Plaintiff filed his second amended complaint. (Dkt. 64). On March 22, 2012, the Court ordered that Plaintiff's second amended complaint be amended to insert the name of Cynthia L. Muller in place of the aforementioned Jane Doe nurse. (Dkt. 78). On April 10, 2012, the County Defendants filed a motion for judgment on the pleadings. (Dkt. 82). On June 6, 2012, the Court ordered that Defendants Greg Domalski, Bradley Meister, Avis Robinson, Deputy Fitzsimmons, James Amico, and Deputy Ellen Danehy be added as Defendants in place of formerly named John Does. (Dkt. 92). Plaintiff filed a motion to amend his complaint on July 26, 2012. (Dkt. 96). On August 1, 2012, Defendants Mary Ann McQueeney and Debbie Scarpulla, two nurses employed by Correctional Medical Care, Inc. ("CMC"), filed a **motion** to **dismiss** the claims against them. (Dkt. 97).

On August 2, 2012, the Court granted Plaintiff's request to file a third amended complaint, making Plaintiff's third amended complaint the operative pleading for this matter. (Dkt. 99).

On August 2, 2012, the Court dismissed Defendants McQueeney, Scarpulla, Bye, Showers, Schultz, Wheatley, Burns, Caviccholi, Harris, Knox, Lopez, Chance, Gallina, and Potocki in accordance with Plaintiff's voluntary dismissal of these Defendants. (Dkt. 100). The outstanding motion for judgment on the pleadings (Dkt. 82) and **motion** to **dismiss** (Dkt. 97) were denied as moot. (Dkt. 99).

On February 4, 2013, the County Defendants filed a motion for judgment on the pleadings (Dkt. 119), and the remaining Defendants, Holman and Muller, filed a **motion** to **dismiss** for failure to state a claim (Dkt. 120).

The County Defendants filed a motion to stay discovery on March 7, 2013. (Dkt. 125). The remaining Defendants filed a declaration in support of this motion to stay discovery on March 13, 2013. (Dkt. 127).

On June 19, 2013, Plaintiff filed his response to Defendants' motions and requested that the County Defendants' motion be converted into a motion for summary judgment and be granted in his favor. (Dkt. 133).

On July 11, 2013, the Court dismissed Defendant Muller in accordance with Plaintiff's voluntary dismissal of this Defendant. (Dkt. 135).

The Court granted Defendants' motion to stay discovery (Dkt. 125) on September 19, 2013, 2013 WL 5298574 (Dkt. 138). On February 13, 2014, the Honorable Charles J. Siragusa, United States District Judge for the Western District of New York, transferred this case to the undersigned. (Dkt. 141).

On January 13, 2015, Plaintiff filed a motion for the recusal of the undersigned. (Dkt. 142).

### FACTUAL BACKGROUND

Plaintiff's third amended complaint against the remaining 58 Defendants asserts the following facts. (Dkt. 95).

In or about July 2008, Plaintiff was arrested, charged with burglary, and remanded to MCJ pending trial. (*Id.* at ¶ 20).

On August 7, 2008, Plaintiff was fighting with two other inmates, Trustee Eades and Tyrone Members, when Defendant Newton jumped on Plaintiff's back, struck Plaintiff in the mouth, and knocked out one of Plaintiff's front teeth. (*Id.*). Plaintiff alleges that Defendant Newton "premeditated" the attack on Plaintiff, and that Defendants Amico and Danehy "collaborated" with Defendant Newton to delay the

Case 9:22-cv-00638-DNH-TWD   Document 58   Filed 02/28/25   Page 89 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

call of a "Code 1," allowing Plaintiff to be attacked by the other inmates. (*Id.* at ¶¶ 30–32). Plaintiff claims that inmate Eades' cousin told Plaintiff on June 12, 2009, that Defendant Newton was aware that inmates Eades and Members were going to "attack" Plaintiff and indicated that he would "take care of the Code # 1 response and finish the plaintiff off himself." (*Id.* at ¶ 32).

As a result of the August 7, 2008 altercation, Plaintiff was placed in the special housing unit ("SHU") by Defendants Luther, Newton, DeRosa, Jolly, Krenzer, Horan, Kaiser, and Dimartino. (*Id.* at ¶ 75). Plaintiff was housed in SHU from August 7, 2008 through August 21, 2008, under full mechanical restraints and under a shower and exercise deprivation order. (*Id.*).

Although it was not specified in the complaint, Plaintiff must have been released at some time after August 21, 2008, because on October 9, 2008, Plaintiff was arrested after a high-speed chase and was again detained at MCJ on charges of burglary and reckless endangerment, awaiting his July 13, 2009 trial. (*Id.* at ¶ 21).

On October 11, 2008, Defendants DeRosa, Horan, and Jolly placed Plaintiff in SHU. (*Id.* at ¶ 22). Plaintiff alleges that Defendant DeRosa placed him in SHU in retaliation for the burglary of a family member that may have been committed by Plaintiff. (*Id.* at ¶ 76). Plaintiff further alleges that his placement in SHU violated his rights to due process. (*Id.* at ¶ 77). On October 16, 2008, Defendant Krenzer sent Plaintiff a memo indicating: "The circumstances of your arrest and institutional history justify actions taken and measures to isolate you." (*Id.* at ¶ 62). On October 20, 2008, Plaintiff sent "an appeal" to Defendant O'Flynn, complaining that Defendants DeRosa and Krenzer were discriminating against him and denying him due process. (*Id.* at ¶ 63). Plaintiff alleges that he sent a copy of his complaint to Defendant Brooks on March 17, 2009. (*Id.* at ¶ 25). Plaintiff further claims that he submitted a notice of temporary restraining order and preliminary injunction to Defendant Brooks on April 20, 2009, concerning Plaintiff's allegations of discrimination and denial of due process. According to Plaintiff, he effectuated service of a notice of claim on Defendant County of Monroe on June 29, 2009. (*Id.* at ¶ 27), and an Article 78 petition on August 5, 2009 (*Id.* at ¶ 28).

Plaintiff claims that housing sections 2, 2M, 3, and 3M in MCJ were areas known to have "gang activity," and that Defendants Thomas, Jolly, Dimartino, Horan, Kaiser, Hayes,

Mooney, DeRosa, McGowan, Kimball, Knupp, Cardella, Kenelly, Tripoli, S. Peck, and Carlo discriminated against Plaintiff by placing him in this housing "where gang activity is prevalent and rampant or hostile situations are most likely to occur[sic] with the Black or Hispanic ethnicity inmates of particular profile and character they deliberately and indifferently assemble in small area with same or similar tendencies and propensities for transgressions or violence...." (*Id.* at * 61). Plaintiff claims that Defendants do not place Caucasian inmates in this housing. (*Id.* at ¶ 71). Plaintiff contends that Defendants O'Flynn, Brooks, and Harling have "acquiesced" in Monroe County's alleged discriminatory "policy, practice, or *712 custom" of housing minorities together in MCJ. (*Id.* at ¶¶ 25–26, 48, 57, 61, 72–73, 94–96).

On November 7, 2008, Defendant Krenzer placed Plaintiff in second floor housing. (*Id.* at ¶ 0). On November 18, 2008, Plaintiff was beaten by "two (2) younger minorities," Acvin King and M. Jones. (*Id.* at ¶ 41). On November 19, 2008, Defendant DeRosa placed Plaintiff in SHU and allegedly stated: "They should have jumped you, you stabbed that kid in the face with a pencil the whole pitt[sic] should have kicked your ass." (*Id.* at ¶ 64). Plaintiff claims that Defendants DeRosa, Horan, Kaiser, Jolly, Amatore, Krenzer, Caceci, and Harling discriminated against Plaintiff by putting him in SHU because there is videotape evidence of King "mercifully[sic] repeatedly kicking the plaintiff in his face as he lie on the floor." (*Id.* at ¶¶ 65, 77). Plaintiff claims that he was supposed to be released from SHU on December 17, 2008, but was kept in SHU until December 23, 2008, "without adequacy of any due process of law." (*Id.* at ¶ 77). Plaintiff contends that he notified Defendants O'Flynn, Harling, and Krenzer that he was improperly placed in SHU, but that these individuals "failed to remedy the wrong." (*Id.* at ¶ 78).

After his release from SHU on December 23, 2008, Plaintiff claims that he was placed in a cell that was "atrociously unsanitary disgustingly filthy with excrement, urine, feces and spew all over walls, ceiling, floor and bars for (3) three more consecutive days where ventilation system were non-existent and cell smell toxicly[sic] aweful[sic] ..." by Defendants Jolly, Horan, Kaiser, DeRosa, McGowan, Knupp, Kennelly, Cardella, S. Peck, and Tripoli. (*Id.* at ¶ 60).

On December 26, 2008, Plaintiff informed Defendant Tripoli that he did not want to return to the mainframe housing area, and according to Plaintiff, Tripoli responded: "I don't give a fuck how many times you got your ass kicked on main-frame

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

we have decide[d] that you will only be placed in a cell on the main-frame and no place else, either you go to 3M or I will put you back in SHU." (*Id.* at ¶ 66). On January 19, 2009, Plaintiff was attacked by three other inmates. (*Id.* at ¶ 43). Plaintiff claims that Defendants Waud and Willis "bragged" about Plaintiff getting beaten up on this occasion. (*Id.* at *¶* 44).

On February 26, 2009, Plaintiff claims that he asked Defendant Waud to lock him in his cell with a large bag of commissary items at approximately 8:30 p.m. (*Id.*). Plaintiff then alleges that at approximately 9:00 p.m., Defendant Waud opened all of the cells, and Plaintiff left for a short time to brush his hair. (*Id.* at ¶ 45). When Plaintiff returned, his belongings were in disarray, and a "large amount" of commissary was taken from his cell. (*Id.*). Plaintiff claims that inmates Frye, Spivey, Ali, and Houston stole his property, and that this theft would appear on videotape. (*Id.* at ¶¶ 45, 47).

Plaintiff alleges that Defendant Waud permitted the theft of commissary to occur in **retaliation** for Plaintiff's filing of grievances, as evidenced by Defendant Waud's statement that he hated Plaintiff because "he is a piece of shit that likes to file grievances on staff." (*Id.* at ¶ 46). Plaintiff alleges that Defendants Waud, T. Peck, Mooney, Dimartino, Robertson, and Fitzsimmons "collaborated reports" to delete any references to the theft of Plaintiff's commissary. (*Id.* at ¶ 47). Plaintiff contends that Defendants Krenzer, Harling, Jolly, Dimartino, Mooney, T. Peck, Waud, Fitzsimmons, and Robinson altered the videotape evidence by deleting from the tape the time period from 8:55 p.m. through 9:30 p.m. (*Id.* at ¶ 101). Plaintiff further claims that Defendants Harling, Krenzer, Thomas, and Jolly encouraged **\*713** the falsification of records relating to the incident. (*Id.* at ¶ 48). According to Plaintiff, Defendant Monroe County continues to withhold the videotape evidence, which Plaintiff claims is in the possession of Defendants Amico, Danehy, Meister, Domalski, Miller, Rizzo, Fitzsimmons, and Robinson. (*Id.* at ¶¶ 100, 102).

Although Plaintiff does not explain what happened after the alleged theft of his commissary was discovered, Plaintiff alleges that he was taken out of the booking area on a stretcher following the incident. (*Id.* at ¶ 49). As Plaintiff was carried out on a stretcher, Plaintiff claims Defendant DeRosa called out: "Hey Jessie I see you got your ass kicked that is good for you they did a pretty good job this time." (*Id.*). When Defendant Raby asked Plaintiff how many inmates jumped him, Defendant Holman allegedly stated: "Oh Jessie Barnes always gets his ass kicked." (*Id.* at ¶ 53).

Plaintiff alleges that Nurse Muller deliberately omitted from her February 26, 2008 medical notes the fact that Plaintiff was vomiting blood, with the intention of downplaying his injuries. (*Id.* at ¶ 103). Plaintiff voluntarily dismissed Ms. Muller as a defendant to this action with prejudice, and Ms. Muller was dismissed from this matter by Court order dated July 12, 2013. (Dkt. 135).

Between February 27, 2009 and March 2, 2009, Plaintiff was housed in a booking cell, and was allegedly kept on a shower and exercise deprivation order by Defendants T. Peck, Mooney, Waud, Dimartino, and Jolly. (Dkt. 95 at ¶ 79).

On an unspecified date, Plaintiff alleges that Defendant Kluth "humiliated and degraded" Plaintiff for "5 or 6 consecutive hours" after Defendant DeRosa pointed at Plaintiff, and subsequently issued two false misbehavior reports against Plaintiff. (*Id.* at ¶ 67).

On March 2, 2009, before being placed in SHU, Plaintiff was subjected to a "degrading and humiliating strip-search" by Defendant Scally. (*Id.* at ¶ 69). Plaintiff claims that he filed a grievance against Defendant Scally on March 3, 2009, and later that day, Defendant Scally approached Plaintiff's cell and "blew-up his cheeks making jestures[sic] and stated: 'Oh Jessie suck my dick.' " (*Id.* at ¶ 92). Plaintiff claims that Defendants Atkins, Scally, Guest, Amatore, and McGowan then filed a false misbehavior report against Plaintiff in **retaliation** for Plaintiff's grievance against Defendant Scally. (*Id.* at ¶ 93). As a result of this misbehavior report, Defendants Hayes, Horan, Jolly, McGowan, Guest, Scally, Atkins, and Krenzer placed Plaintiff in SHU on a shower and exercise deprivation order for over 30 consecutive days, causing Plaintiff "extreme outrageous emotional distress, physical suffering and mental anguish." (*Id.* at ¶ 80). Plaintiff claims to have contested this determination but his grievance and subsequent appeal were denied. (*Id.* at ¶ 81).

According to Plaintiff, Defendants Krenzer and Thomas told Plaintiff that the 30-day order "may have been a bit much," and that he would be taken out of SHU on April 13, 2009, if he did not have "any write ups or bad reports." (*Id.* at ¶ 82). Plaintiff claims that Defendant Atkins intentionally "documented degenerate asinin[sic] notes, log entries, segregation reports and e-mails" between April 9, 2009, and April 12, 2009, to prevent Plaintiff's early removal from SHU. (*Id.* at ¶ 83).

Case 9:22-cv-00638-DNH-TWD   Document 58   Filed 02/28/25   Page 91 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

Plaintiff alleges that his original petition to state court was notarized on April 15, 2009, by the law librarian, and that when copies of the petition were delivered to Plaintiff's cell on April 16, 2009, Defendant Atkins saw the petition. (*Id.* at ¶ 85). Plaintiff alleges that another false misbehavior *714 report was issued against Plaintiff on April 16, 2009, in **retaliation** for Plaintiff's state court petition. (*Id.* at ¶ 86). As a result of this misbehavior report, Defendants Newton, Horan, Jolly, and Kreuzer placed Plaintiff on a shower and exercise deprivation order. (*Id.*). Plaintiff claims to have filed an administrative appeal with Defendant Harling on April 17, 2009, with respect to the new deprivation order and his concerns about the false misbehavior report. (*Id.* at * 87). Defendant Harling responded on April 21, 2009. (*Id.*).

Plaintiff claims that he was required to remain in full mechanical restraints during his isolated morning exercise period from March 2009 until August 31, 2009, and that this requirement constituted cruel and unusual punishment and violated his rights under the due process and equal protection clauses of the New York State and United States Constitutions. (*Id.* at ¶ 88).

On May 2, 2009, Plaintiff claims that Defendant Willis let inmate Clark out of his cell and instructed the inmate to throw "urine, feces, and dirty mop water in the plaintiff's cell," endangering Plaintiff's life, health, and safety. (*Id.* at ¶ 54). Plaintiff further claims that Defendant Willis took Plaintiff's personal towel that held sentimental value and threw the towel into the urine and feces. (*Id.* at ¶ 55). Plaintiff alleges that later that day Defendant Willis stood in front of Plaintiff's cell with inmate Clark and Defendant Gatti when Defendant Gatti, whom Plaintiff had never seen before, called Plaintiff a "nigger" and said that he would kill Plaintiff. (*Id.* at ¶ 56).

On May 4, 2009, Defendants Scally, Amatore, and Atkins allegedly filed a false misbehavior report against Plaintiff, which caused Plaintiff to be placed on a 23-day consecutive "styro-foam tray order," for Plaintiff "seeking redress of grievances in judicial and administrative forums." (*Id.* at ¶¶ 58, 90).

On August 12, 2009, Plaintiff alleges that he was participating in his one hour of exercise when Defendant Daly harassed Plaintiff about Plaintiff's upcoming parole hearing. (*Id.* at ¶ 33). Following this encounter, Plaintiff requested to speak with a supervisor, and was placed in a no-contact visitation cell for 45 minutes. (*Id.* at ¶ 34).

Later that day, Defendant Daly entered the visitation room at the end of Plaintiff's 50(h) deposition with the Ontario County Attorney. (*Id.* at ¶ 35). According to Plaintiff, Defendant Shellard also entered the room, and when Plaintiff reached for his legal documents, Defendant Shellard pushed Plaintiff face-first into the glass window. (*Id.*). Defendants Shellard, Daly, and Alberti then allegedly pushed Plaintiff to the floor, kicked, stomped on, and punched Plaintiff, although he was in full restraints. (*Id.* at ¶ 36). Plaintiff claims that Defendants Alberti and Daly used the handcuffs to "inflict pain and suffering on [Plaintiff] causing him to lose the feeling in his hands." (*Id.* at ¶ 37).

Plaintiff alleges he was then taken to the elevator, where Defendant Lipari was standing shaking a canister of mace and watching Plaintiff. (*Id.*). After the elevator arrived at the second floor, Plaintiff claims he was pushed into the hallway. (*Id.* at ¶ 38). Plaintiff claims that he tried to steady himself by grabbing the gate and that Defendant Galen told him not to touch the gate, and that Defendants Alberti and Daly then grabbed Plaintiff and slammed his head. (*Id.* at ¶¶ 38–39). Plaintiff claims that he urinated and defecated on himself, and experienced dizziness and a concussion. (*Id.* at ¶ 39). Plaintiff was then allegedly dragged back to his cell by Defendants Galen, Daly, and Alberti. (*Id.*).

Plaintiff also complains about conditions of confinement at MCJ. Plaintiff claims that Monroe County failed to properly *715 train or supervise Defendants Brooks and O'Flynn, resulting in the "gross negligent management" of various officers, and ultimately violations of Plaintiff's constitutional rights. (*Id.* at ¶¶ 48, 57, 61, 89, 97). For example, Plaintiff alleges that the County's failure to properly train or supervise Defendants Brooks and O'Flynn led to their negligent management of Defendants Harling and Kreuzer, who permitted Plaintiff to be housed in the mainframe section of housing at MCJ. (*Id.* at * 61).

In that same vein, Plaintiff generally claims that Defendant County of Monroe has maintained a discriminatory classification policy for over fifteen years at MCJ. (*Id.* at ¶ 71). Specifically, Plaintiff alleges that this policy involves placing all minorities in SHU for "minor or miscellaneous rule violations" resulting in the minorities' denial of access to public information. (*Id.* at ¶ 72). Further, Plaintiff claims that the conditions in SHU are extreme, insofar as the "5 ft. long lights just 3 ft. above bed remain on 24 hrs. a day no matter how hot temperature is outside and these bright lights causes [sic] sleeplessness excruciating head-aches, eye pains,

WESTLAW © 2016 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 92 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

anxiety, mental anguish and endless pain and suffering." (*Id.* at ¶ 73). Plaintiff claims that minorities are disproportionately exposed to these extreme conditions. (*Id.*).

In addition, Plaintiff claims that the County of Monroe maintains a defective grievance program at MCJ, insofar as there is bias in the program that denied Plaintiff his right to "petition government for redress of grievances under administrative forum." (*Id.* at ¶¶ 91, 95–97).

Plaintiff claims that he has filed numerous grievances, complaints, and appeals with Defendants Harling and Krenzer in relation to the alleged mistreatment by Defendants Atkins, Scally, Newton, Willis, Guest, Amatore, and DeRosa, but states that Defendants Harling and Krenzer have continued to show "deliberate indifference" to Plaintiff's concerns. (*Id.* at ¶ 59).

Plaintiff claims that Defendants Lipari and Harling provided fraudulent responses to Plaintiff's grievance 09–33, and excluded four witness statements in connection with Plaintiff's grievance 09–49, contributing to Defendant County of Monroe's "faulty" grievance program. (*Id.* at ¶ 94).

Plaintiff alleges that Defendants Lipari, Guest, S. Peck, and Shellard did not appropriately conduct their investigations against supervisors in relation to Plaintiff's grievances 09–01, 09–32, 09–35, 09–46, 09–49, 09–81, 09–88, and 09–89, in violation of Plaintiff's rights under 7 NYCRR § 701.8(d) (1) and the First and Fourteenth Amendments to the U.S. Constitution. (*Id.* at ¶ 95).

Plaintiff generally claims that the investigation into his grievance 09–01 was biased and prejudiced, in violation of his right to seek redress of grievances. (*Id.* at ¶ 96).

Plaintiff alleges that he was denied due process of law at nine disciplinary hearings. (*Id.* at ¶ 97). Plaintiff claims that eight separate provisions of the NYCRR were violated by Defendants Messura, Preston, and Pratt at these hearings. (*Id.*). Plaintiff further claims that Defendants Krenzer and Harling were notified of these violations through Plaintiff's appeals, but that Defendants knew of, were deliberately indifferent to Plaintiff's complaints and failed to remedy the wrong. (*Id.* at ¶ 98).

**DISCUSSION**

**[1]  [2]**  Rule 12(c) motions for judgment on the pleadings are evaluated by the same **standard** applicable to **motions** to **dismiss** pursuant to Fed.R.Civ.P. 12(b)(6). *Hayden v. Paterson,* 594 F.3d 150, 160 (2d Cir.2010). These motions must be made **\*716** after the close of the pleadings, "but early enough not to delay trial...." *Id.*

**[3]**  " 'In considering a **motion** to **dismiss** for failure to state a claim under Fed.R.Civ.P. 12(b)(6), a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference.' " *Newman & Schwartz v. Asplundh Tree Expert Co.,* 102 F.3d 660, 662 (2d Cir.1996) (quoting *Kramer v. Time Warner, Inc.,* 937 F.2d 767, 773 (2d Cir.1991)). A court should consider the motion "accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." *Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir.2008) (internal quotations and citation omitted). To withstand dismissal, a plaintiff must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). " 'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Turkmen v. Ashcroft,* 589 F.3d 542, 546 (2d Cir.2009) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).

"[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 (alteration in original) (internal quotations and citations omitted). Thus, "at a bare minimum, the operative **standard** requires the plaintiff [to] provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Goldstein v. Pataki,* 516 F.3d 50, 56 (2d Cir.2008) (alteration in original) (internal quotations and citations omitted).

**[4]**  "A complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." *Sira v. Morton,* 380 F.3d 57, 67 (2d Cir.2004) (citations omitted).

**[5]  [6]  [7]**  In addition, "[i]t is well-settled that *pro se* litigants generally are entitled to a liberal construction of

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

their pleadings, which should be read to raise the strongest arguments that they suggest." *Green v. United States*, 260 F.3d 78, 83 (2d Cir.2001) (internal quotations and citation omitted); *see also Hemphill v. New York*, 380 F.3d 680, 687 (2d Cir.2004) (alteration in original) (internal citation omitted) ("It is well-established that 'when [a] plaintiff proceeds *pro se* ... a court is obliged to construe his pleadings liberally, particularly when they allege civil rights violations.' "). Moreover, "a *pro se* litigant should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Satchell v. Dilworth*, 745 F.2d 781, 785 (2d Cir.1984). "Even in a *pro se* case, however, 'although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' " *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir.2010) (quoting *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir.2009)). A court may not "invent factual allegations [plaintiff] has not pled." *Id.*

### I. Plaintiff's Motion for Recusal

In a letter dated January 1, 2015, and filed January 13, 2015, Plaintiff asks that the undersigned recuse herself from this matter pursuant to 28 U.S.C. § 455(a). *717 (Dkt. 142). Plaintiff alleges in a conclusory fashion that the undersigned has racial and prejudicial biases due to her recent unfavorable decision following a bench trial in a separate matter, designated by case number 01–CV–6559, and that therefore recusal is appropriate. (*Id.*). Defendants have filed papers in response to the motion (Dkt. 144 at 2; Dkt. 145), and Plaintiff has filed reply papers (Dkt. 147). The recusal issue is a threshold issue that must be resolved before the Court may consider any substantive motion.

[8] [9] "Title 28 U.S.C. § 455(a) requires a judge to recuse [her]self 'in any proceeding in which [her] impartiality might reasonably be questioned.' " *Cox v. Onondaga Cnty. Sheriff's Dep't*, 760 F.3d 139, 150 (2d Cir.2014) (quoting 28 U.S.C. § 455(a)). "Recusal motions 'are committed to the sound discretion of the district court....' " *Abdelaziz v. N.Y.C. Transit Auth.*, No. 93–CV–5600 (FB), 1998 WL 296372, at *1 (E.D.N.Y. June 4, 1998) (quoting *United States v. Conte*, 99 F.3d 60, 65 (2d Cir.1996)). "In cases where a judge's impartiality might reasonably be questioned, the issue for consideration is not whether the judge is in fact subjectively impartial, but whether the objective facts suggest impartiality." *Williams v. LaClair*, No. 9:10–CV–635(GLS/RFT), 2013 WL 1193766, at *3 (N.D.N.Y. Jan. 29, 2013)

(citing *Litely v. United States*, 510 U.S. 540, 548, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994)).

[10] Here, the fact that the Court reached an unfavorable decision in another, unrelated matter provides no basis for recusal. *Mills v. Poole*, Nos. 1:06–cv–00842–MAT–VEB, 1:11–cv–00440–MAT, 2014 WL 4829437, at *6 (W.D.N.Y. Sept. 29, 2014) ("[Plaintiff's] allegations of bias and impartiality on the part of the undersigned ... are both conclusory and based entirely on his disagreement with the Court's decisions. This is an insufficient basis for recusal."). Put simply, there is no evidence justifying recusal nor is there any basis for recusal. Accordingly Plaintiff's motion for recusal is denied.

### II. County Defendants' Motion for Judgment on the Pleadings

#### A. Municipal Liability

Plaintiff sues the County of Monroe in its "official capacity as a municipal entity" (Dkt. 95 at ¶ 5), alleging that the County: (1) failed to "properly train or supervise Defendants Brooks and O'Flynn" (*id.* at ¶¶ 48, 57, 61, 89, 97); (2) maintained a discriminatory custom, policy, or practice of classifying inmates by race and placing those racial minorities in unsafe or unsanitary conditions (*id.* at ¶¶ 48, 60, 71, 73); and (3) maintained an unconstitutional grievance program (*id.* at ¶¶ 91, 95–97).

Defendants argue that Monroe County has not assumed liability for the acts of the County Sheriff or his deputies by local law, and therefore Monroe County cannot be liable to the extent Plaintiff alleges claims under New York State law. (Dkt. 119–2 at 4–5). Defendants also argue that Monroe County and Defendant Brooks cannot be held liable for Plaintiff's § 1983 claims because he has failed to plausibly allege that the County is responsible for developing or implementing the policies, procedures, and regulations related to the conduct of the Sheriff deputies named as Defendants. (Dkt. 119–2 at 5).

##### 1. State Law Causes of Action

[11] Plaintiff claims on numerous occasions that Monroe County "failed to properly train or supervise" Defendants Brooks and/or O'Flynn. (*See e.g.* Dkt. 95 at ¶¶ 48, 57, 61, 89). To the extent Plaintiff is attempting to assert claims under New York State law, his claims fail. Monroe County has not assumed liability for the acts of the Sheriff or

Case 9:22-cv-00638-DNH-TWD   Document 58   Filed 02/28/25   Page 94 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

his deputies by local law, and *718 therefore the County cannot be held liable to the extent Plaintiff is alleging a state law claim based upon a *respondeat superior* theory. *See D'Amico v. Corr. Med. Care, Inc.,* 120 A.D.3d 956, 959, 991 N.Y.S.2d 687 (4th Dep't 2014); *Smelts v. Meloni,* 306 A.D.2d 872, 873, 762 N.Y.S.2d 467 (4th Dep't 2003), *lv. denied* 100 N.Y.2d 516, 769 N.Y.S.2d 203, 801 N.E.2d 424 (2003). Furthermore, as discussed further below, Plaintiff fails to state any plausible claim as to Defendant Brooks' or O'Flynn's personal involvement and liability, thus negating any corresponding responsibility on the part of the County for their conduct.

### 2. Section ... 1983 Claims

[12]  [13]  [14]  "[A] municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven,* 691 F.3d 72, 80 (2d Cir.2012), *cert. denied,* ––– U.S. ––––, 134 S.Ct. 125, 187 L.Ed.2d 255 (2013). That is, "to assert a claim of municipal liability under § 1983, a plaintiff must allege the existence of a policy or custom that caused injury, and a direct causal connection between that policy or custom and the deprivation of a constitutional right." *Blyden v. N.Y.P.D.,* No. 05 CV 4740 SJF LB, 2005 WL 3388609, at *2 (E.D.N.Y. Dec. 12, 2005). "Absent such a custom, policy, or usage, a municipality cannot be held liable on a *respondeat superior* basis for the tort of its agents." *Jones,* 691 F.3d at 80.

[15]  [16]  [17]  "To prevail on a Section 1983 claim against a municipal entity, a plaintiff must show: '(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury.' " *Reid v. Nassau Cnty. Sheriff's Dep't,* No. 13–CV–1192 (SJF)(SIL), 2014 WL 4185195, at *10 (E.D.N.Y. Aug. 20, 2014) (quoting *Roe v. City of Waterbury,* 542 F.3d 31, 36 (2d Cir.2008)). "A municipal policy may be pronounced or tacit and reflected in either action or inaction." *Cash v. Cnty. of Erie,* 654 F.3d 324, 333 (2d Cir.2011). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson,* 563 U.S. 51, 131 S.Ct. 1350, 1359, 179 L.Ed.2d 417 (2011).

[18]  Plaintiff has, in a conclusory fashion, alleged that Monroe County has a discriminatory policy of housing minorities together at MCJ, which leads to "rampant" gang activity. (Dkt. 95 at ¶¶ 25–26, 48, 57, 61, 72–73, 94–96). However, Plaintiff fails to allege with any factual specifics the existence of a sanctioned County policy that states that minority inmates should be placed in certain housing. Plaintiff would be required to allege that the practices were "so persistent and widespread as to practically have the force of law." *Connick,* 131 S.Ct. at 1359. This Plaintiff has failed to do.

[19]  [20]  "The mere assertion ... that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." *Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir.1993), *overruled on other grounds, Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). Here, Plaintiff offers no allegations of fact tending to support even an inference of an official policy. "Where a plaintiff can show only misbehaving officers, but has not [alleged] an official policy that led to the constitutional or statutory violation, his claim must fail." *719 Addisvio v. Cnty. of Westchester,* No. 08 Civ. 10971(PGG), 2011 WL 2893101, at *8 (S.D.N.Y. July 14, 2011) (quotations omitted).

Plaintiff also includes numerous general allegations in his complaint that the MCJ maintains an unconstitutional grievance program. (Dkt. 95 at ¶¶ 91, 94–98).

[21]  "[T]he law is clear that plaintiff has no constitutional right to have his grievances processed at all, or if processed, to have the procedure done properly." *Hill v. Napoli,* No. 6:09–CV–6546–MAT, 2014 WL 1322476, at *14 (W.D.N.Y. Mar. 31, 2014) (internal quotation and citation omitted); *see also Green v. Herbert,* 677 F.Supp.2d 633, 639 (W.D.N.Y.2010) (inmate's claims that officer assigned to investigate his grievance conducted a biased, unfair investigation "fails because an inmate has no constitutional right to have his grievances processed or investigated in any particular manner.") (internal quotations and citation omitted).

[22]  Plaintiff contends that Monroe County maintains a grievance program that is biased and prejudicial. (Dkt. 95 at ¶¶ 91, 95–97). "Claims of hearing officer bias are common in § 1983 cases by inmate plaintiffs, and where they are based on purely conclusory allegations, they are routinely dismissed." *Washington v. Afify,* 968 F.Supp.2d 532, 541–42

Case 9:22-cv-00638-DNH-TWD     Document 58     Filed 02/28/25     Page 95 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

(W.D.N.Y.2013). "An inmate's own subjective belief that the hearing officer was biased is insufficient to create a genuine issue of material fact." *Booker v. Maly*, No. 9:12–CV–246 NAM/ATB, 2014 WL 1289579, at *11 (N.D.N.Y. Mar. 31, 2014). Plaintiff has failed to articulate any facts to support his otherwise conclusory statements that Defendant hearing officers showed any bias or prejudice toward Plaintiff or any other minority inmate. Plaintiff has also failed to plead that there is any official policy or custom supporting a biased or prejudicial grievance program.

In sum, Plaintiff's allegations against the County under § 1983 must be dismissed because he has failed to allege a plausible claim that the County had a custom, policy, or usage that led to the deprivation of Plaintiff's constitutional rights. Plaintiff's claims are conclusory in nature, and are therefore insufficient to withstand scrutiny under Fed.R.Civ.P. 12(c).

**B. Sheriff O'Flynn Liability**

Plaintiff sues Monroe County Sheriff Patrick O'Flynn in his individual capacity, alleging that Defendant O'Flynn engaged in "gross negligent management" of various officers at MCJ and supported the "unconscionable tyranny" of placing all minorities in SHU. (Dkt. 1 at ¶¶ 7, 48, 57, 61, 63, 72–73, 78, 94–96). Further, Plaintiff claims that Defendant O'Flynn received numerous complaints and appeals from Plaintiff concerning the alleged racial discrimination and unlawful conduct, and that Defendant O'Flynn "acquiesced in the application of this discrimination against the Plaintiff." (Dkt. 1 at ¶¶ 24, 63, 78). Defendants argue that Plaintiff's claims against Defendant O'Flynn fail because Plaintiff has not established personal involvement on behalf of the Sheriff. (Dkt. 119–2 at 6–7). The Court agrees.

**1. New York State Claims**

[23]   It is well settled that "the Sheriff cannot be held personally liable on the basis of respondeat superior for the alleged negligent acts of his deputies." *Schultz v. Cnty. of Monroe*, 202 A.D.2d 960, 961, 609 N.Y.S.2d 502 (4th Dep't 1994). As a result, Defendant O'Flynn may not be found liable under a *respondeat superior* theory for any alleged negligent acts performed by the County Defendants.

To the extent that Plaintiff alleges that Defendant O'Flynn is responsible for the *720 actions of his deputies under New York law, these claims are dismissed.

**2. Section 1983 Claims**

[24]   [25]   [26]   "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994) (citations omitted). As explained by the Second Circuit Court of Appeals:

> [w]ithin the Second Circuit, it is generally accepted that a supervisory defendant may have been personally involved in a constitutional deprivation within the meaning of § 1983 if he: (1) directly participated in the alleged infraction; (2) after learning of the violation, failed to remedy the wrong; (3) created a policy or custom under which unconstitutional practices occurred or allowed such policy or custom to continue; (4) was grossly negligent in managing subordinates who caused the unlawful condition or event; or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995). "Mere linkage in the prison chain of command is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim." *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir.2003) (quotation omitted).

Here, Plaintiff argues that Defendant O'Flynn was personally involved in the alleged constitutional deprivations because he "is the chief policy maker for MCJ which created conditions which unconstitutional ratifications occurred." (Dkt. 133–3 at 16). However, Plaintiff has failed to allege, beyond conclusory allegations, that there was a policy that created unconstitutional conditions at MCJ.

[27]   Further, although Plaintiff alleges that he sent Defendant O'Flynn numerous notices of his concerns about alleged constitutional deprivations, "the receipt of letters or grievances, by itself, does not amount to personal involvement." *Mateo v. Fischer*, 682 F.Supp.2d 423, 430 (S.D.N.Y.2010) (citing *Sealey v. Giltner*, 116 F.3d 47, 51

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 96 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

(2d Cir.1997)). *See also Ramsey v. Goord*, No. 05–CV–47A, 2005 WL 2000144, at *8, 2005 U.S. Dist. LEXIS 42953, at *8 (W.D.N.Y.2005) ("the fact that a prison official in the prison 'chain of command' affirms the denial of an inmate's grievance is not enough to establish the requisite personal involvement of that official"). Plaintiff has not alleged that Defendant O'Flynn responded to any of his grievances or appeals, and his conclusory allegations that Defendant O'Flynn "acquiesced" in his poor treatment on the basis of this failure to respond does not state a claim against a supervisory defendant.

[28]  In addition, Plaintiff claims that Defendant O'Flynn engaged in "gross negligent management" of various officers. (Dkt. 95 at ¶¶ 48, 57, 61, 94–96). For example, Plaintiff alleges that Defendant O'Flynn negligently managed Defendants Lipari and Harling, who allegedly filed a "fraudulent response" to Plaintiff's grievances. (*Id.* at ¶ 94). These allegations of negligent management on the part of Defendant O'Flynn lack any factual support. Moreover, as discussed in further detail later in this discussion, Plaintiff has failed to sufficiently allege that his rights were violated by the filing of a fraudulent response. Indeed, each of Plaintiff's allegations of negligent management is attached to an alleged violation that he has failed to sufficiently allege. Absent an underlying constitutional violation, there can be no supervisory liability, or negligent management. *See Murray v. Potaki*, No. 9:03–CV–1263 (LEK/RFT), 2007 WL 956941, at *7 (N.D.N.Y. Mar. 29, 2007) ("Plaintiff has failed to establish that Goord was grossly **\*721** negligent in his supervision of unknown subordinates, especially since no constitutional violation arose from this incident....").

As a result, Plaintiff's claims against Defendant O'Flynn are dismissed.

**C. Defendant Brooks**

[29]  Plaintiff sues Monroe County Executive Maggie Brooks in her individual capacity, alleging that Defendant Brooks engaged in "gross negligent management" of various officers at MCJ and supported the "unconscionable tyranny" of placing all minorities in SHU. (Dkt. 1 at ¶¶ 6, 25–26, 48, 57, 61, 72–73, 94–96). For the same reasons that Plaintiff has failed to state a claim against Defendant O'Flynn, he has failed to state a claim against Defendant Brooks. Defendant Brooks' position as chief executive of Monroe County does not suffice to state a claim against her. Plaintiff fails to offer any factual support for his conclusory allegations against Defendant Brooks, and he has not sufficiently alleged that constitutional

violations occurred for any of the underlying events that he alleges Defendant Brooks negligently managed. Accordingly, Plaintiff's claims against Defendant Brooks are dismissed.

**D. Jail Supervisors and Administrators**

Defendants argue that the claims against the MCJ supervisors and administrators must be dismissed because § 1983 liability may not be imposed merely because an individual holds a supervisory position of authority. (Dkt. 119–2 at 7–8 (citing *Colon*, 58 F.3d at 873)). Although this is an accurate statement of the law, Defendants fail to demonstrate which claims against which Defendants fail to demonstrate personal involvement. Rather, Defendants generally argue that "the actions against all Jail Supervisors and Administrators should be dismissed for lack of personal involvement." (Dkt. 119–2 at 8). To the extent that any supervisory Defendants are dismissed from this action based on lack of personal involvement, these Defendants are dismissed in the more detailed discussion below. However, the Court disagrees with Defendants that, as a matter of law, all "jail supervisors and administrators" must be dismissed. Rather, as discussed further below, Plaintiff has sufficiently alleged personal involvement by some of these Defendants.

**E. Prisoner Litigation Reform Act ("PLRA")**

[30]  Defendants contend that Plaintiff's claims are barred by the Prisoner Litigation Reform Act ("PLRA"). (Dkt. 119–2 at 12–13). Specifically, Defendants argue that Plaintiff has failed to exhaust his administrative remedies or show that he was injured with respect to the matters at issue in this litigation. (*Id.* at 12, 13). Plaintiff argues that the PLRA does not apply to him as he was a pretrial detainee at the time of the alleged violations. (Dkt. 133–3 at 24). Plaintiff's argument is without merit, because "the PLRA's strict exhaustion requirement does indeed apply in actions brought by pretrial detainees." *Baez v. Parks*, No. 02 CIV.5821 PKC DF, 2004 WL 1052779, at *5 (S.D.N.Y. May 11, 2004) (collecting cases); *see also Little v. Mun. Corp.*, 51 F.Supp.3d 473, 502–03, No. 12–CV–5851 (KMK), 2014 WL 5011091, at *19 (S.D.N.Y. Sept. 30, 2014) (applying PLRA exhaustion requirements to pretrial detainees); *Franklin v. Cnty*, No. 13 CV 3873(VB), 2014 WL 2217003, at *2 (S.D.N.Y. May 27, 2014) (same).

[31]  [32]  The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

such administrative remedies as are available once exhausted." **722** 42 U.S.C. § 1997e(a). "This administrative exhaustion provision requirement 'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.' " *Torres v. Carry,* 672 F.Supp.2d 338, 342–43 (S.D.N.Y.2009) (quoting *Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)). "This provision affords 'prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being ha[u]led into court[,]' and also creates an administrative record that facilitates judicial review." *Torres v. Anderson,* 674 F.Supp.2d 394, 397 (E.D.N.Y.2009) (quoting *Jones v. Bock,* 549 U.S. 199, 204, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007)).

[33] However, "[t]he only circumstance in which it is appropriate to dismiss a complaint on nonexhaustion grounds is when it is apparent from the face of the complaint that the plaintiff failed to exhaust his administrative remedies." *Randle v. Alexander,* 960 F.Supp.2d 457, 483 (S.D.N.Y.2013); *see also Parris v. N.Y.S. Dep't Corr. Servs.,* 947 F.Supp.2d 354, 361 (S.D.N.Y.2013) (denying **motion** to **dismiss** on grounds of exhaustion where it was not evident from the face of the complaint that plaintiff had or had not complied with the inmate grievance program); *Johnson v. Westchester Cnty. Dep't of Corr. Med. Dep't,* No. 10 Civ. 6309, 2011 WL 2946168, at *2 (S.D.N.Y. July 19, 2011) (denying a **motion** to **dismiss** when the complaint was ambiguous about exhaustion). "Most circuits that have considered the issue, ... including this circuit, have held that nonexhaustion is an affirmative defense, and that therefore defendants bear the burden of proof and **prisoner** plaintiffs need not plead exhaustion with particularity." *McCoy v. Goord,* 255 F.Supp.2d 233, 248 (S.D.N.Y.2003).

[34] Defendants have not met their burden to demonstrate that Plaintiff failed to exhaust his administrative remedies. Defendants argue that the documents attached to Plaintiff's complaint do not show that a final determination was made by the Citizen Policy and Complaint Review Council, and therefore Plaintiff has not exhausted his administrative remedies. (Dkt. 119–2 at 12). However, it is Defendants' burden to demonstrate nonexhaustion, not Plaintiff's burden to plead exhaustion with particularity. It is not apparent from the face of Plaintiff's complaint that he has failed to exhaust his administrative remedies. Although Plaintiff makes some allegations that he filed grievances and appeals as to his underlying concerns, he does not discuss his pursuit

of administrative remedies as to each and every claim. As a result, it would be inappropriate at this stage in the litigation to dismiss Plaintiff's claims for failure to exhaust his administrative remedies under the PLRA.

**F. Res Judicata /Collateral Estoppel**

Plaintiff has brought previous litigation concerning issues that overlap with the allegations he makes in his current complaint. In *Barnes v. Monroe County Sheriff,* 89 A.D.3d 1471, 933 N.Y.S.2d 630 (4th Dep't 2011), the court reviewed Plaintiff's Article 78 proceeding seeking review of the administrative hearings on November 27, 2009, and March 9, 2009, which resulted in Plaintiff's placement in SHU. The Fourth Department dismissed Plaintiff's petition. *Id.* In *Barnes v. Harling,* 96 A.D.3d 1415, 945 N.Y.S.2d 901 (4th Dep't 2012), *lv. denied,* 19 N.Y.3d 1011, 951 N.Y.S.2d 706, 976 N.E.2d 233 (2012), Plaintiff brought an Article 78 proceeding seeking review of his placement in SHU as a result of his hearings on March 11, 2009, March 25, 2009, April 16, 2009, and disciplinary orders from March 28, 2009, April 3, 2009, April 27, 2009, and May 21, 2009. **723** The Fourth Department found that Plaintiff was "not entitled to any of the relief he seeks," and the Court of Appeals denied Plaintiff's motion to appeal this determination. *Id.*

[35] [36] [37] Defendants request that this Court take judicial notice of the determinations made in these state court matters and find that Plaintiff is precluded from relitigating these issues under the doctrines of *res judicata* and collateral estoppel. " 'A court may take judicial notice of matters of public record, including ... decisions in prior state court.' " *Pacherille v. Burns,* 30 F.Supp.3d 159, 161 (N.D.N.Y.2014) (quoting *Johnson v. Pugh,* No. 11–CV–385, 2013 WL 3013661, at *2 (E.D.N.Y. June 18, 2013)). The Court takes judicial notice of these decisions from the Fourth Department. *See Stewart v. Transp. Workers Union of Greater N.Y., Local 100,* 561 F.Supp.2d 429, 435–36 (S.D.N.Y.2008) (stating that a district court may take judicial notice of matters of public record in resolving a Rule 12(c) motion). "In the context of a Rule 12(c) motion, however, the Court should generally take judicial notice 'to determine what statements [the documents] contain[ ] ... not for the truth of the matters asserted.' " *Piazza v. Fla. Union Free Sch. Dist.,* 777 F.Supp.2d 669, 678 (S.D.N.Y.2011) (quoting *Kramer v. Time Warner Inc.,* 937 F.2d 767, 774 (2d Cir.1991)) (alterations in original).

[38] [39] [40] Here, claim preclusion, or *res judicata,* does not bar Plaintiff's civil rights lawsuit based upon his prior Article 78 proceedings. "As the Second Circuit explained ...

**Trapani v. Pullen, Not Reported in Fed. Supp. (2016)**

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

claim preclusion, known as res judicata, requires that a final judgment on the merits of an action be given preclusive effect, barring parties as well as those in privity with them from relitigating in a subsequent action a claim which was or could have been raised in the prior suit." *Johnson v. McClure,* No. 9:06-CV-0431, 2009 WL 2356147, at *7 (N.D.N.Y. July 28, 2009) (citing *Marvel Characters, Inc. v. Simon,* 310 F.3d 280, 286–87 (2d Cir.2002)). In this case, Plaintiff's civil rights claims could not have been raised in the Article 78 proceedings. "[A] New York plaintiff is not barred from seeking damages, in federal court, on civil rights claims by reason of a prior judgment on the same underlying facts in an Article 78 proceeding and therefore that action cannot give the damages relief demanded in a civil rights suit such as this one." *Davis v. Halpern,* 813 F.2d 37, 39 (2d Cir.1987); *see also Leo v. N.Y.C. Dep't of Educ.,* No. 13 CV 2271(RJD)(JMA), 2014 WL 6460704, at *4 (E.D.N.Y. Nov. 17, 2014) (*res judicata* doctrine did not apply to plaintiff's § 1983 claims because plaintiff could not have received damages for violations of his civil rights in his prior Article 78 proceeding).

[41]  [42]  However, a portion of Plaintiff's claims are barred under the doctrine of issue preclusion, also known as collateral estoppel. "[U]nder New York law, the doctrine of collateral estoppel 'precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity, whether or not the tribunals or causes of action are the same.' " *Shell v. Brun,* 362 F.Supp.2d 398, 400 (W.D.N.Y.2005) (quoting *Ryan v. N.Y. Tel. Co.,* 62 N.Y.2d 494, 500, 478 N.Y.S.2d 823, 467 N.E.2d 487 (1984)). "It is well-settled that collateral estoppel may bar a plaintiff from bringing an action in federal court pursuant to 42 U.S.C. § 1983." *Id.; see also Vann v. Fischer,* No. 11 Civ.1958(KPF), 2014 WL 4188077, at *25 (S.D.N.Y. Aug. 25, 2014) (plaintiff barred in § 1983 action from relitigating issues concerning bias and due process violations during prison disciplinary proceeding that were previously raised during Article 78 proceeding).

*\*724*  [43]  There are two requirements for the application of collateral estoppel to an issue: "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *McKithen v. Brown,* 481 F.3d 89, 105 (2d Cir.2007), *cert. denied* 552 U.S. 1179, 128 S.Ct. 1218, 170 L.Ed.2d 59 (2008) (quotation omitted).

[44]  "To determine whether the first action provided a full and fair opportunity to litigate requires consideration of: the nature of the forum and the importance of the claim in the prior litigation, the incentive and initiative to litigate and the actual extent of litigation, the competence and expertise of counsel, the availability of new evidence, the differences in the applicable law and the foreseeability of future litigation." *Shell v. Brun,* 362 F.Supp.2d 398, 400 (W.D.N.Y.2005).

[45]  Here, the state court has already examined Plaintiff's challenges to his November 27, 2009, March 9, 2009, March 11, 2009, March 25, 2009, and April 16, 2009 hearings, and his disciplinary orders from March 28, 2009, April 3, 2009, April 27, 2009, and May 21, 2009, which resulted in Plaintiff's placement in SHU. It appears that Plaintiff was given a full opportunity to litigate these issues in his Article 78 proceedings. As a result, Plaintiff's claims related to these hearings and assignments to SHU must be dismissed as barred by the doctrine of collateral estoppel.

**G. Excessive Use of Force**

[46]  Plaintiff asserts § 1983 claims of excessive use of force based upon alleged incidents on August 7, 2008, and August 12, 2009. "To state a § 1983 claim, a plaintiff must allege that defendant, while acting 'under color of state law,' deprived Plaintiff of his constitutional or statutory rights." *Cunningham v. Rodriguez,* No. 01 Civ. 1123(DC), 2002 WL 31654960, at *4 (S.D.N.Y. Nov. 22, 2002) (quoting 42 U.S.C. § 1983). "A pretrial detainee who is subjected to excessive force may bring a claim under § 1983." *Id.*

[47]  [48]  "Because the Eighth Amendment's protection from cruel and unusual punishment does not apply until after conviction and sentence, the right of pretrial detainees to be free from excessive force amounting to punishment is protected by the Due Process Clause of the Fourteenth Amendment." *Addonic,* 2011 WL 2893101, at *4 (quotations omitted). "The Second Circuit applies the same **standard** to excessive force claims brought under the Fourteenth Amendment as under the Eighth Amendment." *Virella v. Pozzi,* No. 05 Civ. 10460(RWS), 2006 WL 2707394, at *3 (S.D.N.Y. Sept. 20, 2006) (citing *United States v. Walsh,* 194 F.3d 37, 47 (2d Cir.1999)).

[49]  "[T]he analysis provided by the Supreme Court in *Hudson v. McMillian,* 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992), that requires a sentenced **prisoner** to satisfy both an objective and subjective prong to establish an

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

Eighth Amendment violation also applies to excessive force claims brought by a pretrial detainee." *Perkins v. Brown*, 285 F.Supp.2d 279, 283 (E.D.N.Y.2003).

[50]    [51]    [52]    "The objective component of a claim of cruel and unusual punishment focuses on the harm done, in light of 'contemporary **standards** of decency.'" *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir.2009) (quoting *Hudson*, 503 U.S. at 8, 112 S.Ct. 995). "Nonetheless, the Eighth Amendment's prohibition against cruel and unusual force, provided that the use of force is not of a sort repugnant to the conscience of mankind.'" *Id.* at 269 (quoting *725 Hudson*, 503 U.S. at 8, 112 S.Ct. 995). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a **prisoner's** constitutional rights." *Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir.1973).

[53]    [54]    "The subjective requirement is satisfied if the defendant acted wantonly with a sufficiently culpable state of mind." *Perkins*, 285 F.Supp.2d at 283. "Where a state official is accused of using excessive physical force against a pretrial detainee, the inquiry turns on 'whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id.* (quoting *United States v. Walsh*, 194 F.3d 37, 48–49 (2d Cir.1999)).

### 1. August 7, 2008

[55]    Plaintiff alleges that Defendant Newton used excessive force on Plaintiff on August 7, 2008, when he responded to the fight between Plaintiff and inmates Eades and Members, and jumped on Plaintiff's back, striking Plaintiff in the face and knocking out a tooth. (Dkt. 95 at ¶ 20). Defendants argue that Plaintiff fails to sufficiently allege that Defendants had a culpable state of mind insofar as "any alleged force used by defendant was made in a good faith effort by defendants to maintain or restore discipline." (Dkt. 119–2 at 15). Defendants claim that the force was used because Plaintiff was fighting with other inmates and resisted the placement of handcuffs. (*Id.*).

Objectively, Plaintiff has sufficiently alleged that Defendant Newton used force above a *de minimis* level. Plaintiff claims that Defendant Newton jumped on his back and knocked out a tooth. At this early stage in the litigation, this force and subsequent injury satisfies the first prong of an excessive use of force claim. *See Tafari v. McCarthy*, 714 F.Supp.2d 317,

362 (N.D.N.Y.2010) (finding incident where officer pulled plaintiff's face into steel door, breaking his tooth, may support excessive use of force claim).

Subjectively, Plaintiff has sufficiently alleged that Defendant Newton was not merely using force to maintain or restore discipline. Taking Plaintiff's claims as true, Defendant Newton "premeditated" the whole incident and intended for Plaintiff to be attacked by two other inmates.

As a result, Plaintiff's claim of excessive use of force as against Defendant Newton relating to the August 7, 2008, incident may proceed to discovery.

### 2. August 12, 2009

[56]    Plaintiff claims that Defendants Daly, Shellard, Alberti, Galen, and Lipari used excessive force on Plaintiff on August 12, 2009. (Dkt. 95 at ¶¶ 33–39). Specifically, Plaintiff alleges that Defendant Shellard pushed Plaintiff face-first into a glass window; Defendants Shellard, Daly, and Alberti pushed Plaintiff to the floor, kicked, stomped on, and punched Plaintiff; Defendants Alberti and Daly used Plaintiff's handcuffs to inflict pain; and that Defendants Alberti and Daly "slammed Plaintiff's head." (Dkt. 95 at ¶¶ 35–39). Defendants Galen, Daly, and Alberti allegedly "dragged" Plaintiff back to his cell. (*Id.* at ¶ 39). According to Plaintiff, as a result of this altercation, he urinated and defecated on himself, and experienced dizziness and a concussion. (*Id.*). Defendants argue that Plaintiff has failed to state a claim because he fails to allege "how he was harmed on that date and/or that the force taken was unwarranted." (Dkt. 119–2 at 16).

Objectively, Plaintiff has sufficiently alleged an excessive use of force. Taking Plaintiff's allegations as true, Plaintiff was reaching for his legal papers when Defendant Shellard pushed him into a glass window and then took him to the floor, where Defendants Shellard, Daly, and Alberti proceeded to kick, stomp on, and punch *726 Plaintiff. (Dkt. 95 at ¶¶ 35–37). When Plaintiff attempted to steady himself by grabbing a gate, Defendants Alberti and Daly "slammed" Plaintiff's head, causing Plaintiff to urinate and defecate on himself, and experience dizziness and a concussion. (*Id.* at ¶¶ 38–39). Plaintiff alleges Defendants Galen, Daly, and Alberti dragged him back to his cell. (*Id.* at * 39). Contrary to Defendants' assertions, Plaintiff has sufficiently alleged how he was harmed by Defendants' actions on August 12, 2009.

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

Plaintiff has also sufficiently alleged the subjective component of his claim. Plaintiff alleges that the force used on him was in response to his reaching for legal papers and attempting to steady himself. Taken as true, the force could not have been used in a good faith effort to maintain or restore discipline, as Plaintiff had not violated any directives.

Accordingly, Plaintiff's August 12, 2009, excessive use of force claim as against Defendants Shellard, Daly, Galen, and Alberti may proceed to discovery. To the extent this claim is asserted against Defendant Lipari, it is discussed below under the failure to protect analysis.

**II. Conspiracy**

[57]  [58]  [59]   To state a conspiracy claim in violation of constitutional rights under § 1983, a plaintiff must allege: "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson,* 200 F.3d 65, 72 (2d Cir.1999). The intracorporate conspiracy doctrine provides that "if the conspiratorial conduct challenged is essentially a single act by a single corporation acting exclusively through its own ... officers[ ] and employees, each acting within the scope of his employment[,] there can be no actionable conspiracy." *O'Diah v. Neth,* No. 6:10–CV–6592(MAT), 2013 WL 6440610, at *4 (W.D.N.Y. Dec. 9, 2013) (internal quotation and citation omitted) (alterations in original). "[A]n exception to the doctrine applies when individual employees are pursuing personal interests wholly separate and apart from the entity...." *Anemone v. Metro. Transp. Auth.,* 419 F.Supp.2d 602, 604 (S.D.N.Y.2006).

[60]  [61]  [62]   "While exact specifics are not required, 'the pleadings must present facts tending to show agreement and concerted action.' " *Graham v. Peters,* No. 13–CV–705JTC, 2013 WL 5924727, at *2 (W.D.N.Y. Oct. 31, 2013) (quoting *Anilao v. Spota,* 774 F.Supp.2d 457, 512–13 (E.D.N.Y.2011)). Plaintiff is required to "make an effort to provide some details of time and place and the alleged effects of the conspiracy ... [including] facts to demonstrate that the defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Warren v. Fischl,* 33 F.Supp.2d 171, 177 (E.D.N.Y.1999) (citations omitted). "Bare allegations of a conspiracy supported by allegations of conduct easily explained as individual action are insufficient." *Booker,* 2014 WL 1289579, at *25.

**1. August 7, 2008**

[63]   Plaintiff claims that Defendants Amico and Danchy "collaborated" with Defendant Newton to permit the attack on Plaintiff by inmates Eades and Members on August 6, 2008. (Dkt. 95 at ¶¶ 30–32). Defendants contend that Plaintiff has only vaguely asserted conclusory statements of conspiracy, and therefore his conspiracy claim must be dismissed. (Dkt. 119–2 at 15).

After carefully reviewing Plaintiff's complaint and drawing all reasonable inferences in his favor, the Court concludes *727 that the facts as inartfully drafted, Plaintiff has plausibly alleged that Defendants Amico or Danchy "collaborated" with Defendant Newton in his premeditated plan to permit an inmate attack on Plaintiff. Plaintiff has alleged that Defendants engaged in an "overt act" in furtherance of the conspiracy through the delay in calling a "Code # 1." Accordingly, giving Plaintiff the benefit of the doubt, his conspiracy claim as to Defendants Amico, Danchy, and Newton may proceed to discovery.

**2. February 26, 2009**

Plaintiff claims that Defendants Waud, T. Peck, Mooney, Dimartino, Robertson, and Fitzsimmons "collaborated reports" to delete any references to the theft of Plaintiff's commissary. (Dkt. 95 at * 47). Plaintiff contends that Defendants Krenzer, Harling, Jolly, Dimartino, Mooney, T. Peck, Waud, Fitzsimmons, and Robinson altered the videotape evidence of the commissary theft by deleting the time period from 8:55 p.m. through 9:30 p.m. from the tape. (*Id.* at ¶ 101). Plaintiff suggests that Defendants Harling, Krenzer, Thomas, and Jolly encouraged the falsification of the records. (*Id.* at ¶ 48).

Plaintiff's claims are conclusory in nature. "Complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ciambriello v. Cnty. of Nassau,* 292 F.3d 307, 325 (2d Cir.2002). "While exact specifics are not required, 'the pleadings must present facts tending to show agreement and concerted action.' " *Barnes v. Prack,* No. 11–CV–857 (TJM/CFH), 2012 WL

**Trapani v. Pullen, Not Reported in Fed. Supp. (2016)**

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

7761905, at *9 (N.D.N.Y. Sept. 7, 2012) (quoting *Anilao*, 774 F.Supp.2d at 512–13). *See, e.g., Johnson v. Barney*, No. 04 Civ. 10204, 2006 WL 3714442, at *2 (S.D.N.Y. Dec. 13, 2006) (dismissing for failure to state a claim **prisoner's** conclusory allegation that defendant fabricated an investigative report as part of a conspiracy to cover up the wrongful acts of other correction officers), *aff'd*, 360 Fed.Appx. 199 (2d Cir.2010); *Barnes*, 2012 WL 7761905, at *10 (dismissing claim of conspiracy to manipulate videotape evidence where plaintiff "fail[ed] to provide any plausible information which would lend credence to his claims of an explicit or implicit agreement between any or all of [the] defendants").

**[64]    [65]    [66]    [67]** Further, Plaintiff's claims do not allege a constitutional injury as required for a conspiracy claim. "In order to bring a valid § 1983 claim, a plaintiff must establish that [he] was deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *Graham v. City of Albany*, No. 1:08–CV–892 (RFT), 2009 WL 4263510, at *9 (N.D.N.Y. Nov. 23, 2009) (quotations omitted). Even if Defendants had conspired to cover up the theft of Plaintiff's personal property, Plaintiff has not alleged a constitutional injury. As the District Court stated in *Collins v. Goord*, 438 F.Supp.2d 399 (S.D.N.Y.2006):

> Even an intentional deprivation of an inmate's property that is random and unauthorized does not give rise to a due process claim so long as adequate state post-deprivation remedies are available. New York law provides such a remedy in the form of an action before the New York Court of Claims.

*Id.* at 418–19 (dismissing inmate Plaintiff's theft of personal property claim) (internal quotations and citations omitted). In other words, because Plaintiff had state remedies available to him for the alleged deprivation, there can be no underlying constitutional injury. "Absent an **\*728** underlying constitutional injury, a civil rights conspiracy claim cannot survive." *Johnson v. Rock*, No. 9:08–CV–1013 (GLS/RFT), 2010 WL 3911389, at *7 (N.D.N.Y. Mar. 30, 2010), *adopted by Johnson v. Rock*, 2010 WL 3910153 (N.D.N.Y. Sept. 30, 2010).

Therefore, Plaintiff's claims of conspiracy related to the February 26, 2009 incident are dismissed.

**I. Failure to Protect**

**[68]** "As opposed to deliberate indifference claims brought by post-conviction **prisoners**—which arise under the Eighth Amendment—claims for deliberate indifference brought by state pretrial detainees arise under the Fourteenth Amendment." *Blake v. Kelly*, No. 12 Civ. 7245(ER), 2014 WL 4230889, at *4 (S.D.N.Y. Aug. 26, 2014). The Second Circuit has held that "[c]laims for deliberate indifference ... should be analyzed under the same **standard** irrespective of whether they are brought under the Eighth or Fourteenth Amendment." *Caiozzo v. Koreman*, 581 F.3d 63, 69–72 (2d Cir.2009).

**[69]    [70]** "The Eighth Amendment requires that prison officials take 'reasonable measure to guarantee the safety of inmates in their custody.' " *Blake*, 2014 WL 4230889, at *4 (quoting *Hayes v. New York City Dep't of Corrs.*, 84 F.3d 614, 620 (2d Cir.1996)). "Accordingly, a prison official's failure to protect a **prisoner** from harm may form the basis of a § 1983 claim." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 833, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)).

**[71]    [72]** "[P]rison officials have a duty to protect **prisoners** from violence at the hands of other **prisoners**." *Farmer*, 511 U.S. at 833, 114 S.Ct. 1970. "To state a failure-to-protect claim under § 1983, the plaintiff must establish two conditions: 'First, the plaintiff must demonstrate that he is incarcerated under conditions posing a substantial risk of serious harm. Second, the plaintiff must demonstrate that the defendant prison officials possessed [the] sufficient culpable intent' of deliberate indifference." *Randolph v. Griffin*, No. 12–CV–745S, 2014 WL 3548967, at *6 (W.D.N.Y. July 17, 2014) (quoting *Hayes*, 84 F.3d at 620).

**[73]    [74]** In addition, "all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir.1994). "In order to establish liability under this theory, a plaintiff must prove that the defendant in question (1) possessed actual knowledge of the use by another correction officer of excessive force; (2) had a realistic opportunity to intervene and prevent the harm occurring; and (3) nonetheless disregarded that risk by intentionally refusing or failing to take reasonable measures to end the use of excessive force." *Finley v. Perry*, No. 9:06–CV–1524(FJS/ATB), 2010 WL 6427496, at *5 (N.D.N.Y. July 13, 2010).

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 102 of 353

**Trapani v. Pullen, Not Reported in Fed. Supp. (2016)**

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

"[T]o recover damages against supervisory officials for the acts of their subordinates, a plaintiff must show that the defendant's personal involvement caused the constitutional deprivation." *Anderson*, 17 F.3d at 557.

### 1. August 7, 2008

[75]  Plaintiff's claims that Defendants Amico, Danchy, and Newton collaborated to delay a Code 1 response to allow Plaintiff to be attacked by other inmates may be liberally construed as a failure to protect claim. (Dkt. 95 at ¶¶ 30–32). Defendants argue that Plaintiff has "failed to plead any action which supports a deliberate indifference to protect him from other inmates." (Dkt. 119–2 at 17). The Court disagrees.

**\*729**  Plaintiff alleges that Defendants Newton, Amico, and Danchy were aware of the impending attack by inmates Eades and Members and permitted this attack to occur. (Dkt. 95 at ¶ 31). Plaintiff further claims that Defendant Newton planned the attack. (*Id.*). If these facts are taken as true, Plaintiff has sufficiently alleged that Defendants Amico, Danchy, and Newton failed to intervene to protect Plaintiff from an inmate attack and/or attack by Defendant Newton. To the extent that Plaintiff alleges a failure to protect claim in relation to the August 6, 2008 incident, that claim may proceed to discovery.

### 2. November 18, 2008

[76]  On November 7, 2008, Defendant Krenzer placed Plaintiff in second floor housing, and on November 18, 2008, Plaintiff was involved in a fight with two other inmates. (Dkt. 95 at ¶¶ 40–41).

As an initial matter, Plaintiff has failed to plead that Defendant Krenzer had any knowledge that placing Plaintiff in second floor housing posed a substantial risk of harm to Plaintiff. Further, Plaintiff has not alleged, beyond conclusory allegations, that Defendant Krenzer was deliberately indifferent to the harm that allegedly occurred as a result of the fight with two other inmates. As a result, Plaintiff's failure to protect claim related to the November 18, 2008, incident must be dismissed.

### 3. January 19, 2009

[77]  Plaintiff alleges that Defendants failed to protect him when they placed him in mainframe housing on December 26, 2009, despite his protests, and he was subsequently attacked by three inmates on January 19, 2009. (Dkt. 95 at ¶¶ 66, 43–44). Plaintiff claims that he informed Defendant Tripoli on December 26, 2008, that he did not want to return to mainframe housing, and that Defendant Tripoli essentially responded that he did not care if Plaintiff was assaulted by other inmates in mainframe housing. (*Id.* at ¶ 66). On January 19, 2009, Plaintiff was attacked by three other inmates. (*Id.* at ¶ 43). Further, Plaintiff alleges that Defendants Waud and Willis "bragged" about Plaintiff getting beaten up on this occasion. (*Id.* at ¶ 44).

Here, Plaintiff has sufficiently alleged, for the purposes of this motion, that there was a substantial risk of harm. Plaintiff claims that Defendants were aware that gang activity was "rampant" in the mainframe housing, and Plaintiff was previously attacked in mainframe housing on at least one occasion. (*Id.* at ¶¶ 40–41, 61). Further, Plaintiff explicitly told Defendant Tripoli that he was concerned about being placed in mainframe housing. (*Id.* at ¶ 66).

Plaintiff has also sufficiently alleged deliberate indifference to this substantial risk of harm. For example, Plaintiff alleges that Defendant Tripoli stated that he did not care if Plaintiff was assaulted in the mainframe housing. (*Id.* at ¶¶ 43, 66).

To the extent that Plaintiff alleges a failure to protect claim in relation to the January 19, 2008, attack by three other inmates, Plaintiff's claim may proceed to discovery.

### 4. May 2, 2009

[78]  On May 2, 2009, Plaintiff claims that Defendant Willis not only failed to protect Plaintiff from having urine, feces, and dirty mop water thrown into Plaintiff's cell by inmate Clark, but that Defendant Willis also let inmate Clark out of his cell and directed him to throw these materials into Plaintiff's cell. (Dkt. 95 at ¶¶ 54–55).

Plaintiff has sufficiently alleged that he was exposed to a substantial risk of harm. *See Hogan v. Fischer*, 738 F.3d 509, 516 (2d Cir.2013) (finding spraying an inmate with vinegar, excrement, and machine oil was "repugnant to the conscience of mankind"). Further, based on Plaintiff's allegations,  **\*730**  Defendant Willis directed this exposure to occur. Alternatively, Defendant Willis was present while

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 103 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

the exposure occurred, but failed to intervene. Accordingly, Plaintiff's failure to protect claim as against Defendant Willis may proceed to discovery.

**5. August 12, 2009**

[79] In relation to Plaintiff's August 12, 2009 excessive use of force claim, Plaintiff alleges that Defendant Lipari was "watching and laughing" while Defendants Galea, Daly, and Alberti "dragged" Plaintiff back to his cell. (Dkt. 95 at ¶ 39).

Plaintiff has sufficiently pled a failure to protect claim as against Defendant Lipari. Plaintiff has alleged that Defendant Lipari was physically present for the use of force and therefore had actual knowledge of the use of force, had an opportunity to intervene to prevent the harm from occurring, but intentionally disregarded the risk by standing back and laughing while Plaintiff was attacked by the other Defendants. See *Finley*, 2010 WL 6427496, at *5. This claim may proceed to discovery.

**J. Retaliation**

[80] [81] "Courts properly approach prisoner retaliation claims 'with skepticism and particular care,' because 'virtually any adverse action taken by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act.' " *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir.2003) (quoting *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir.2001), *overruled on other grounds, Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)). "Thus, in order to survive a motion to dismiss a complaint, a plaintiff asserting First Amendment retaliation claims must allege '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.' " *Davis*, 320 F.3d at 352 (quoting *Dawes*, 239 F.3d at 492).

[82] "The filing of formal prisoner grievances is protected conduct under the First Amendment." *Sheriff v. Poole*, 689 F.Supp.2d 470, 478 (W.D.N.Y.2010) (citing *Colon*, 58 F.3d at 872).

[83] [84] "Adverse action," defined objectively, is "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising ...

constitutional rights.' " *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir.2004) (quoting *Davis*, 320 F.3d at 353). "In other words, in the context of prisoner retaliation suits, a prisoner need not demonstrate 'actual chill.' The issue is whether defendants engaged in retaliatory conduct that would 'deter a similarly situated individual of ordinary firmness from exercising his constitutional rights.' " *Lashley v. Wakefield*, 483 F.Supp.2d 297, 300 (W.D.N.Y.2007) (quoting *Gill*, 389 F.3d at 381).

[85] [86] "This objective inquiry is not static across contexts, but rather must be tailored to the different circumstances in which retaliation claims arise." *Dawes*, 239 F.3d at 493 (internal quotation omitted). "Prisoners may be required to tolerate more ... than average citizens, before a [retaliatory] action taken against them is considered adverse." *Davis*, 320 F.3d at 353.

[87] "[A] prisoner has a substantive due process right not to be subjected to false misconduct charges as retaliation for his exercise of a constitutional right such as petitioning the government for redress of grievances." *Jones v. Coughlin*, 45 F.3d 677, 679–80 (2d Cir.1995).

[88] [89] In evaluating whether a plaintiff has established the necessary causal *731 connection of a retaliation claim, "a court may infer an improper or retaliatory motive in the adverse action from: (1) the temporal proximity of the filing to the grievance and the disciplinary action; (2) the inmate's prior good disciplinary record; (3) vindication at a hearing on the matter; and (4) statements by the defendant regarding his motive for disciplining the plaintiff." *Sheriff*, 689 F.Supp.2d at 479. "The Second Circuit has held that temporal proximity between an inmate's grievance and disciplinary action may serve as circumstantial evidence of retaliation...." *Candelaria v. Higley*, No. 04–CV–0277(MAT), 2013 WL 104910, at *9 (W.D.N.Y. Jan. 8, 2013) (citing *Colon*, 58 F.3d at 872–73). Accordingly, "[a] plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action." *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir.2009).

**1. October 11, 2009**

[90] Plaintiff contends that Defendant DeRosa placed him in SHU on October 11, 2009, in retaliation for the burglary of a family member that may have been committed by Plaintiff. (Dkt. 95 at * 76). This tenuous and conclusory

**Trapani v. Pullen, Not Reported in Fed. Supp. (2016)**

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

allegation of retaliation fails to state a claim because Plaintiff fails to allege that he was engaging in any protected speech or conduct. Instead, Plaintiff alleges that Defendant DeRosa retaliated against Plaintiff for a burglary. In the context alleged by Plaintiff, engaging in a criminal activity is not protected speech or conduct protected by the First Amendment. As a result, this retaliation claim is dismissed.

### 2. February 26, 2009

[91]   Plaintiff claims that on February 26, 2009, Defendant Waud permitted the theft of Plaintiff's commissary in retaliation for Plaintiff's filing of grievances. (Dkt. 95 at ¶ 46). According to Plaintiff, Waud had expressed his dislike for Plaintiff because Plaintiff filed grievances. (*Id.* at ¶ 46).

As previously noted, Plaintiff had engaged in a protected activity by filing grievances. In addition, the permitted theft of Plaintiff's commissary can be construed as an adverse action. Under the circumstances, these actions would be sufficient to chill a person of ordinary firmness from continuing to engage in his First Amendment activity.

Plaintiff has also sufficiently alleged a causal connection between his filing of grievances and the adverse action. Plaintiff alleges that Defendant Waud had indicated his dislike for Plaintiff because Plaintiff filed grievances, and it can be inferred from the other allegations in the complaint that this statement was made prior to the theft of Plaintiff's property. (*Id.* at ¶ 46). For the purposes of this motion, Defendant Waud's statement that Plaintiff was a "piece of shit that likes to file grievances on staff" prior to the theft of Plaintiff's commissary is sufficient to demonstrate Defendant Waud's motive to retaliate against Plaintiff. *See Shariff*, 689 F.Supp.2d at 479. Accordingly, Plaintiff's February 26, 2009 retaliation claim as against Defendant Waud may proceed to discovery.

### 3. DeRosa/Kluth Retaliation

[92]   Plaintiff does not specify a date, but claims that Defendant DeRosa identified Plaintiff by pointing to him, and that Defendant Kluth then "humiliated and degraded" Plaintiff for five to six hours before allegedly issuing two false misbehavior reports against Plaintiff. (*Id.* at ¶ 67). Construing this statement liberally, it appears that Plaintiff is alleging a retaliation claim.

[93]   Plaintiff does not state what protected activities he engaged in to elicit the *732 alleged retaliatory conduct, nor does he state when the retaliation occurred or the misbehavior reports were issued. "A prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report. The only way that false accusations contained in a misbehavior report can rise to the level of a constitutional violation is where the false accusation is based on something more, such as retaliation against the prisoner for exercising a constitutional right." *Tafari*, 714 F.Supp.2d at 372 (quotations and citations omitted).

Plaintiff's conclusory allegations are insufficient to state a retaliation claim. Plaintiff's allegations lack any specifics as to the protected activity and alleged retaliation. Under the circumstances, Plaintiff's retaliation claim against Defendants DeRosa and Kluth is simply not plausible.

### 4. March 2, 2009

[94]   On March 2, 2009, before being placed in SHU, Plaintiff was subjected to a strip search by Defendant Scally. (Dkt. 95 at ¶ 69). During the course of the strip search, Plaintiff felt that he was degraded and humiliated, and he subsequently filed a grievance against Defendant Scally. (Dkt. 95 at ¶ 92). Plaintiff alleges that later that day, Defendant Scally approached Plaintiff's cell and "blew-up his cheeks making jestures[sic] and stated: 'Oh Jessie suck my dick.' " (*Id.* at ¶ 92). Plaintiff also claims that Defendants Atkins, Scally, Guest, Amatore, and McGowan filed a false misbehavior report against Plaintiff in retaliation for Plaintiff's grievance against Defendant Scally, and that as a result of this false report, Plaintiff was placed in SHU on a shower and exercise deprivation order for over 30 consecutive days. (*Id.* at ¶¶ 80, 93).

As an initial matter, Defendant Scally's sexual comments and gestures do not constitute adverse action to sustain a retaliation claim. Insulting or disrespectful comments directed to an inmate do not rise to the level of an adverse action. *Davis*, 320 F.3d at 353 (" 'sarcastic' comments, without more, do not constitute an adverse action."). However, Plaintiff has sufficiently alleged that he was subjected to the adverse action of a false misbehavior report in response to his protected activity of filing a grievance against Defendant Scally. *See Jones*, 45 F.3d at 679–80. Plaintiff has sufficiently alleged a causal connection between his protected

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 105 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

activity and the adverse action because the events occurred within the course of one day. *See Espinal*, 558 F.3d at 129.

As a result, Plaintiff may proceed with his **retaliation** claim as against Defendants Atkins, Scally, Guest, Amatore, and McGowan, based upon events allegedly occurring on March 2, 2009.

#### 5. April 16, 2009

[95]  Plaintiff alleges that Defendants Newton, Horan, Jolly, and Krenzer engaged in **retaliation** by issuing a false misbehavior report and placing Plaintiff on a shower and exercise deprivation order on April 16, 2009, after Defendant Atkins saw a copy of Plaintiff's legal petition earlier in the day. (Dkt. 95 at ¶¶ 85–86). Plaintiff further claims that Defendant Harling was notified of this alleged violation of Plaintiff's rights but failed to do anything in response. (*Id.* at ¶ 87).

Plaintiff's pursuit of legal remedies constitutes protected activity. As previously noted, the filing of a false misbehavior report constitutes an adverse action. *See Jones*, 45 F.3d at 679–80. However, Plaintiff has failed to allege facts to support a causal connection between his protected activity and the adverse action. Plaintiff claims that Defendant Atkins viewed his legal petition, not Defendants Newton, Horan, Jolly, or Krenzer. (Dkt. 95 at ¶¶ 85–86). Plaintiff has failed to allege that the individuals he claims filed a false *733 misbehavior report against him even had knowledge of his protected activity. Accordingly, his **retaliation** claim against Defendants Newton, Horan, Jolly, and Krenzer is dismissed. As a result, Plaintiff cannot state a claim against Defendant Harling, because there is no underlying violation of Plaintiff's rights. *See Murray*, 2007 WL 956941, at *7.

#### 6. May 4, 2009

Plaintiff alleges that Defendants Scally, Amatore, and Atkins engaged in **retaliation** by filing a false misbehavior report against Plaintiff on May 4, 2009, which resulted in Plaintiff being placed on a 23–day "styro-foam tray order." (Dkt. 95 at ¶¶ 58, 90).

Again, Plaintiff alleges that Defendants filed a false misbehavior report against him in **retaliation** for his filing of grievances. However, Plaintiff does not allege when the underlying grievances were filed in relation to when the false misbehavior report was issued, nor does Plaintiff indicate that he was "vindicated" on the matter, or that Defendants made a comment indicating **retaliatory** intent. *See Shoriff*, 689 F.Supp.2d at 479. In other words, Plaintiff does not allege facts to support a causal connection between his protected activity and the adverse action.

Therefore, Plaintiff's **retaliation** claim as against Defendants Scally, Amatore, and Atkins related to the May 4, 2009 misbehavior report is dismissed.

#### K. Denial of Due Process of Law

[96]  [97]  "To establish a due process violation of the Fourteenth Amendment, an inmate must show that a government official made a deliberate decision to deprive him of his life, liberty, or property. Merely negligent conduct does not give rise to claims under the Fourteenth Amendment." *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir.2012) (citations omitted).

#### 1. Liberty Interest

[98]  [99]  "A **prisoner's** liberty interest is implicated by prison discipline, such as SHU confinement, only if the discipline imposes [an] atypical and significant hardship on the inmate in relations to the ordinary incidents of prison life." *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir 2004) (quotation omitted). "Factors relevant to determining whether the plaintiff endured an atypical and significant hardship include the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions and the duration of the disciplinary segregation imposed compared to discretionary confinement." *Id.* (quotations omitted).

[100]  SHU confinements of 30 to 90 days "fall within the 'short range' of disciplinary confinement and thus implicate a liberty interest only if 'the conditions were more severe than the normal SHU conditions.'" *Tafari*, 714 F.Supp.2d at 375 (quoting *Palmer*, 364 F.3d at 65).

#### a. March 2, 2009 SHU Assignment

[101]  Plaintiff claims that he was subjected to unconstitutional conditions of confinement when Defendants

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

Hayes, Horan, Jolly, McGowan, Guest, Scally, Atkins, and Krenzer placed Plaintiff in SHU on a shower and exercise deprivation order for over 30 consecutive days. (Dkt. 95 at ¶ 80). Plaintiff alleges that these conditions caused him "extreme outrageous emotional distress, physical suffering and mental anguish." (*Id.* at ¶ 80).

"Although courts should accord deference to prison officials in determining whether restrictions imposed upon a pretrial detainee are reasonably related to a legitimate governmental objective, the Second Circuit has held that an extreme restriction may smack of punishment so as to warrant a factual inquiry into whether such a restriction is actually related to a **\*734** legitimate governmental interest." *Valdez v. City of New York,* No. 11-CV-5194, 2014 WL 2767201, at \*2 (S.D.N.Y. June 17, 2014).

Here, the 30-day consecutive assignment to SHU is considered a "short term" assignment to SHU, and did not deny Plaintiff a liberty interest. As a result, Plaintiff may only sustain a due process claim with respect to this period of SHU time if he was subjected to abnormal conditions in SHU. At least at this stage of the litigation, Plaintiff has plausibly alleged such abnormal conditions. Plaintiff alleges that he was deprived of shower and exercise for over 30 consecutive days, a time frame that extends far beyond the two week timeframe found acceptable for such deprivations in this Circuit. *See Flake v. Peck,* No. 9:12-cv–00517 (MAD/ATB), 2014 WL 1289582, at \*22 (N.D.N.Y. Mar. 31, 2014) ("[T]his Circuit has rejected claims of shower deprivation, lasting up to two weeks.") (collecting cases); *Johnson v. Colvin,* No. 09-CV-6413-CJS, 2013 WL 775357, at \*4 (W.D.N.Y. Feb. 28, 2013) ("temporary deprivations of showers for periods of approximately two weeks ... do not satisfy the objective component of a claim of cruel and unusual punishment"); *Gardner v. Mental Health Unit of Sullivan Corr. Facility,* No. 07 Civ. 5535(WHP), 2009 WL 1834382, at \*2 (S.D.N.Y. June 17, 2009) ("denying a **prisoner** the opportunity to shower for seven days and withholding toiletries, while uncomfortable, does not endanger an inmate's health and safety").

Plaintiff may proceed with his due process claim as against Defendants Hayes, Horan, Jolly, McGowan, Guest, Scally, Atkins, and Krenzer with respect to his 30-day consecutive SHU assignment that began on March 2, 2009.

**b. SHU Assignments November 27, 2008 through August 30, 2009**

In addition to the March 2, 2009 SHU assignment, Plaintiff objects to the various SHU assignments he received between November 27, 2008 and August 30, 2009. (Dkt. 95 at ¶ 97). All but one of the assignments he contests has previously been examined and affirmed by the state courts. As a result, those claims are barred by the doctrine of collateral estoppel.

Even if Plaintiff's claims were not barred by collateral estoppel, none of the assignments to SHU that Plaintiff objects to extend beyond the "short range" of disciplinary confinement, nor does Plaintiff allege that he was subjected to abnormal conditions as to these particular assignments, and as a result, Plaintiff's allegations do not implicate a liberty interest. (*See* Dkt. 95 at ¶ ¶ 97(a)(30 days); (b)(30 days); (c)(7 days); (d)(14 days); (e)(20 days); (f)(30 days); (g)(42 days); (h)(20 days); (i)(20 days)). The single SHU assignment that Plaintiff had not contested in a prior state action resulted from a March 14, 2009 hearing imposing 14 days of SHU time. (Dkt. 95 at ¶ 97(d)). This 14 day assignment does not implicate a liberty interest and, furthermore, Plaintiff does not allege that he was subjected to abnormal conditions.

**2. Due Process**

**[102]** "The procedural safeguards to which a prison inmate is entitled before being deprived of a constitutionally cognizable liberty interest are well established, the contours of the requisite protections having been articulated in *Wolff v. McDonnell,* 418 U.S. 539, 564–69 [94 S.Ct. 2963, 411. Ed.2d 935] (1974)." *Graham,* 2013 WL 5924727, at \*2. The constitutionally mandated due process requirements include: "(1) written notice of the charges to the inmate; (2) the opportunity to appear at a disciplinary hearing and present witnesses **\*735** and evidence in support of his defense, subject to a prison facility's legitimate safety and penological concerns; (3) a written statement by the hearing officer explaining his decision and the reasons for the action being taken; and (4) in some circumstances, the right to assistance in preparing a defense." *Id.*

**a. October 11, 2008**

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 107 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

Plaintiff claims that he was placed in SHU on October 11, 2008, without due process of the law. (Dkt. 95 at ¶ 77). Although Plaintiff makes the conclusory statement that his constitutional rights were violated, Plaintiff does not allege how his due process rights were violated. Accordingly, this claim is dismissed.

#### b. November 19, 2008

[103] Plaintiff argues that his placement in SHU on November 18, 2008, was in violation of his due process rights. (Dkt. 95 at ¶ 65). Plaintiff further contends that he was supposed to be released from SHU on December 17, 2008, but was kept in SHU until December 23, 2008 "without adequacy of any due process of law" as a result of Defendant Atkins filing false reports and log entries. (Id. at ¶ 77). Here, Plaintiff's due process claims are primarily based on his allegations that the charges against him were false, and were based on false misbehavior reports. (See e.g., Dkt. 95 at ¶¶ 47, 58, 80, 93). "However, even if the charges were false, this does not amount to a due process violation as long as plaintiff was afforded a fair opportunity to refute the charges." Graham, 2013 WL 5924727, at *2. Plaintiff does not allege that he was denied a fair opportunity to refute the charges against him. Accordingly, his claim is dismissed.

#### c. March 2009—August 2009 Conditions

[104] Plaintiff alleges that the requirement that he remain in full mechanical restraints during his isolated morning exercise period from March 2009 through August 2009, violated his rights under the due process and equal protection laws of the New York State and United States Constitutions. (Dkt. 95 at ¶ 88).

Plaintiff does not allege what facts or circumstances led up to this requirement, nor does he allege how he was prevented from exercising his rights under the due process clause in relation to this requirement. Accordingly, Plaintiff's due process claim with respect to this requirement is dismissed.

#### d. Administrative Hearings November 27, 2008 through August 30, 2009

Plaintiff alleges that Defendants violated a laundry list of New York regulations as well as the Fourteenth Amendment during nine administrative hearings conducted between November 27, 2008 and August 30, 2009. (Dkt. 95 at ¶ 97). Again, Plaintiff's concerns about all but one of these hearings were previously addressed in his state court proceedings. Accordingly, Plaintiff may only raise due process claims as to the March 14, 2009 hearing in this action, which was not previously addressed in state court. Plaintiff does not raise any factual allegations to describe how his due process rights were violated at the March 14, 2009 hearing. As a result, Plaintiff's claim is dismissed.

#### e. Lack of Supervisory Response to Plaintiff's Complaints

Plaintiff claims that he filed numerous grievances, complaints, and appeals with Defendants Harling and Kreuzer in relation to the alleged mistreatment by Defendants Atkins, Scally, Newton, Willis, Guest, Amatore, and DeRosa, but states that Defendants Harling and Kreuzer continued to show "deliberate indifference" to Plaintiff's concerns. (Id. at ¶ 59).

*736 These claims against Defendants Harling and Kreuzer are dismissed. As previously noted with respect to Defendant O'Flynn, "the receipt of letters or grievances, by itself, does not amount to personal involvement." Matteo, 682 F.Supp.2d at 430 (citing Sealey, 116 F.3d at 51). The mere fact that Defendants Harling and Kreuzer received Plaintiff's numerous grievances, complaints, and appeals does not impute personal involvement to these Defendants. See Dorsey v. Fisher, No. 9:09-CV-1011GLSDEP, 2010 WL 2008966, at *12 (N.D.N.Y. May 19, 2010) ("An allegation that an official ignored a **prisoner's** letter of protest or a request for an investigation of allegations contained in the letter is insufficient to hold that official liable for the alleged violations."). To the extent that Plaintiff asserts claims against these Defendants for their failure to respond to his complaints, these claims are dismissed.

Plaintiff also claims that Defendants Lipari and Harling provided fraudulent responses to Plaintiff's grievance 09–33, and excluded four witness statements in connection with Plaintiff's grievance 09–49, contributing to Defendant County of Monroe's "faulty" grievance program. (Id. at ¶ 94).

Plaintiff's conclusory allegations are not supported by any factual allegations as to how the alleged responses were fraudulent, or how the testimony of the four witnesses

WESTLAW   © 2025 Thomson Reuters. No claim to original U.S. Government Works.                    55

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

who were allegedly excluded would have provided him due process. As a result, this claim is also dismissed.

#### f. Improper Investigations

Plaintiff alleges that Defendants Lipari, Guest, S. Peck, and Shellard did not appropriately conduct their investigations against supervisors in relation to Plaintiff's grievances 09–01, 09–32, 09–35, 09–46, 09–49, 09–81, 09–88, and 09–89, in violation of Plaintiff's rights under 7 NYCRR § 701.8(d)(1) and the First and Fourteenth Amendments to the U.S. Constitution. (*Id.* at ¶ 95). "[A]n inmate has no constitutional right to have his grievances processed or investigated in any particular manner." *Green*, 677 F.Supp.2d at 639 (internal quotations and citation omitted). Further, Plaintiff does not allege how the investigations were improper. Accordingly, these claims are dismissed.

Plaintiff generally claims that the investigation into his grievance 09–01 was biased and prejudiced, in violation of his right to redress of grievances. (*Id.* at ¶ 96).

"Claims of hearing officer bias are common in § 1983 cases by inmate plaintiffs, and where they are based on purely conclusory allegations, they are routinely dismissed." *Washington*, 968 F.Supp.2d at 541–42. "An inmate's own subjective belief that the hearing officer was biased is insufficient to create a genuine issue of material fact." *Booker*, 2014 WL 1289579, at *11. As a result, this claim is dismissed.

#### L. Equal Protection

[105]  [106]  [107]  "The equal protection clause directs state actors to treat similarly situated people alike. To prove an equal protection violation, claimants must prove purposeful discrimination, directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir.1995) (citations omitted). "In other words, '[t]o prove a violation of the Equal Protection Clause ... a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination.'" *Randle*, 960 F.Supp.2d at 476 (quoting *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir.2005) (citation omitted)).

[108]  "Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *City of Cuyahoga Falls v. Buckeye Cmty.* **\*737**

*Hope Found.*, 538 U.S. 188, 194, 123 S.Ct. 1389, 155 L.Ed.2d 349 (2003) (quotation omitted).

[109]  Here, Plaintiff makes various claims that he has been discriminated against because he is a racial minority, and that other racial minorities are similarly discriminated against. (*See, e.g.* Dkt. 95 at ¶¶ 71–74). However, Plaintiff never makes any allegations of fact to support a racially discriminatory intent or purpose for the application of otherwise neutral policies. For example, Plaintiff alleges in a conclusory fashion that racial minorities are disproportionately placed in SHU and subsequently deprived of access to public information; however, Plaintiff does not allege that non-minority inmates who commit similar policy violations were not also placed in SHU and subject to the same deprivations. (*Id.* at ¶ 73). As a result, to the extent that Plaintiff alleges violations of the equal protection clause or discrimination, these claims are dismissed.

Plaintiff alleges that the requirement that he remain in full mechanical restraints during his isolated morning exercise period from March 2009 through August 2009 violated his rights under the due process and equal protection laws of the New York State and United States Constitutions. (*Id.* at ¶ 88). However, beyond making this conclusory allegation, Plaintiff does not explain how this requirement in any way injured him or violated his rights. Accordingly, any claim Plaintiff may allege as to the requirement that he remain in full mechanical restraints during exercise from March 2009 through August 2009 is dismissed.

#### M. Conditions of Confinement

[110]  [111]  Under the Eighth Amendment, officials may not "create inhumane prison conditions, deprive inmates of basic necessities, or fail to protect their health or safety." *Overton v. Bazzetta*, 539 U.S. 126, 137, 123 S.Ct. 2162, 156 L.Ed.2d 162 (2003). However, "because society does not expect or intend prison conditions to be comfortable, only extreme deprivations are sufficient to sustain a conditions-of-confinement claim." *Blyden v. Mancusi*, 186 F.3d 252, 263 (2d Cir.1999). "To state an Eighth Amendment claim based on conditions of confinement, an inmate must allege that: (1) objectively, the deprivation the inmate suffered was sufficiently serious that he was denied the minimal civilized measure of life's necessities, and (2) subjectively, the defendant official acted with a sufficiently culpable state of mind, such as deliberate indifference to inmate health or safety." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir.2013) (internal quotations omitted).

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 109 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

The Second Circuit has explained:

> To meet the objective element, the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health. Thus, prison officials violate the Constitution when they deprive an inmate of his 'basic human needs' such as food, clothing, medical care, and safe and sanitary living conditions. There is no static test to determine whether a deprivation is sufficiently serious; the conditions themselves must be evaluated in light of contemporary **standards** of decency. Moreover, conditions of confinement may be aggregated to rise to the level of a constitutional violation, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise.

> To meet the subjective element, the plaintiff must show that the defendant acted with more than mere negligence. To constitute deliberate indifference, the prison official must know of, and disregard, an excessive risk to inmate health **\*738** or safety. Evidence that the risk was obvious or otherwise must have been known to a defendant may be sufficient for a fact finder to conclude that the defendant was actually aware of the risk.

*Id.* (quotations and citations omitted).

### 1. December 23, 2008

**[112]** Plaintiff asserts a conditions of confinement claim, insofar as he alleges that after he was released from SHU on December 23, 2008, he was placed in a cell that was "atrociously unsanitary disgustingly filthy with excrement, urine, feces and spew all over walls, ceiling, floor and bars for (3) three more consecutive days where ventilation system were non-existent and cell smell toxicly[sic] aweful[sic]...." (Dkt. 95 at ¶ 60). Defendants argue that Plaintiff has failed to meet his burden to allege that he suffered a serious deprivation and that the officials who caused the harm did so with deliberate indifference to Plaintiff's health or safety. (Dkt. 119–2 at 19).

**[113]** "[U]nsanitary conditions in a prison cell can, in egregious circumstances, rise to the level of cruel and unusual punishment." *Walker*, 717 F.3d at 127. At this stage in the litigation, Plaintiff has alleged the objective prong of his conditions of confinement claim. Plaintiff has alleged that

he was exposed to human excrement and bodily fluids in a poorly ventilated cell over the course of multiple days. *See Gaston v. Coughlin*, 249 F.3d 156, 166 (2d Cir.2001) ("We are unwilling to adopt as a matter of law the principle that it is not cruel and unusual punishment for prison officials knowingly to allow an area to remain filled with sewage and excrement for days on end.").

Although Plaintiff has not specifically alleged that Defendants had knowledge of this condition, Defendants' knowledge may be inferred by the simple fact that these Defendants must have viewed the conditions of the cell when they placed Plaintiff in it. *See Brock v. Wright*, 315 F.3d 158, 164 (2d Cir.2003) ("[E]vidence that the risk was obvious or otherwise must have been known to a defendant is sufficient to permit a jury to conclude that the defendant was actually aware of it."); *see also Gaston*, 249 F.3d at 166 (finding Plaintiff's allegation that defendant prison guards "made daily rounds of SHU" was sufficient to allege that defendants had actual knowledge of the inhumane conditions). Plaintiff has sufficiently pled that Defendants Jolly, Horan, Kaiser, DeRosa, McGowan, Knapp, Kennelly, Cardella, S. Peck, and Tripoli disregarded Plaintiff's safety by leaving him housed in these unsanitary conditions. (Dkt. 95 at ¶ 60).

### 2. February 27, 2009—March 2, 2009

**[114]** Plaintiff alleges that he was subjected to poor conditions of confinement when he was inappropriately housed in a booking cell on a shower and exercise deprivation order by Defendants T. Peck, Mooney, Waud, Dimartino, and Jolly from February 27, 2009 through March 2, 2009. (*Id.* at ¶ 79).

To the extent Plaintiff alleges that his inability to shower over the course of four days constitutes a constitutional deprivation, his claim must fail. Even a two-week suspension of shower privileges does not constitute a denial of "basic hygienic needs." *McCoy*, 255 F.Supp.2d at 260 (citing *Cruz v. Jackson*, No. 94 Civ. 2600(RWS), 1997 WL 45348, at \*6 (S.D.N.Y. Feb. 5, 1997)). Similarly, Plaintiff's exercise deprivation over the course of four days does not rise to the level of an objective constitutional violation. *See Dillon v. City of New York*, No. 12 Civ. 6746(LAP), 2013 WL 3776252, at \*4 (S.D.N.Y. July 18, 2013) ("Courts have held that deprivation of exercise for periods **\*739** as long as fourteen days does not violate the Eighth Amendment.").

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 110 of 353
Trapani v. Pullen, Not Reported in Fed. Supp. (2016)
2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

In addition, Plaintiff has entirely failed to allege the subjective portion of his claim: only arguing that he was "housed in booking" by Defendants. (Dkt. 95 at ¶ 79).

Accordingly, Plaintiff's conditions of confinement claim related to his SHU housing from February 27, 2009 through March 2, 2009, is dismissed.

### 3. Lighting in SHU

Plaintiff claims that the conditions in SHU are extreme, insofar as the lights above the beds remain on 24 hours per day, allegedly causing "sleeplessness excruciating headaches, eye pains, anxiety, mental anguish and endless pain and suffering." (Dkt. 95 at ¶ 73). Defendants do not directly address Plaintiff's allegations, stating only that Plaintiff "makes broad conclusions" including statements about "lack of reading materials, lighting, and one incident of a strip search...." (Dkt. 119–2 at 19). Defendants generally argue that Plaintiff failed to meet his burden to demonstrate a serious deprivation and deliberate indifference as to all allegations of unsanitary conditions. (Id.). Defendants have failed to sufficiently argue that Plaintiff has failed to state a claim.

**[115]** "[S]leep is critical to human existence, and conditions that prevent sleep have been held to violate the Eighth Amendment." *Walker*, 717 F.3d at 126 (citing *Tafari*, 714 F.Supp.2d at 367). "Requiring inmates to live in constant illumination can also, under certain circumstances, rise to the level of an Eighth Amendment violation." *Jones v. Rock*, No. 9:12–cv–0447 (NAM/TWD), 2013 WL 4804500, at *10 (N.D.N.Y. Sept. 6, 2013) (collecting cases). Accordingly, Plaintiff has sufficiently alleged a conditions of confinement claim under the Fourteenth Amendment with respect to his allegations that he was subjected to extreme conditions in SHU by way of the 24 hour lighting by Defendants Harling, Krenzer, Thomas, Jolly, Horan, Dimartino, and Lipari.

### N. Verbal Threats

#### 1. February 26, 2009

**[116]** Plaintiff alleges that Defendants Waud, DeRosa, and Thibaut made various verbal threats against him on February 26, 2009. Plaintiff claims that Defendant Waud called Plaintiff a "piece of shit that likes to file grievances on staff." (Dkt. 95 at ¶ 46). Plaintiff alleges that Defendant

DeRosa stated: "Hey Jessie I see you got your ass kicked that is good for you they did a pretty good job this time." (Id. at ¶ 49). Plaintiff does not allege that these statements caused him any injury.

Although these comments do not clearly represent threats, to the extent that the complaint may be read to allege an Eighth Amendment claim against Defendants Waud or DeRosa based on their alleged verbal harassment of Plaintiff on February 26, 2009, such conduct is not actionable under § 1983. *McCoy*, 255 F.Supp.2d at 261; *see also Harris v. Keane*, 962 F.Supp. 397, 406 (S.D.N.Y.1997) ("Allegations of threats, verbal harassment or profanity, without any injury or damage, do not state a claim under § 1983.").

Plaintiff also claims that Defendant Thibaut was discussing a movie with Defendant Raby when he stated: "Oh he got his ass kicked and fell back down to earth, like somebody on 3M just got their ass kicked." (Dkt. 95 at * 51). Plaintiff claims that this statement caused him to violently "shake uncontrollably." (Id. at ¶ 51). "It is well settled law in this Circuit that '42 U.S.C. § 1983 is not designed to rectify harassment or verbal abuse.'" *Murray*, 2007 WL 956941, at *8 (quoting *Gill v. Hoadley*, 261 F.Supp.2d 113, 129 (N.D.N.Y.2003)). Here, Defendant Thibaut's comment is not a threat so much as it is a comment, albeit *749 an arguably insensitive one. This comment alone cannot sustain a constitutional claim. As this is the only claim raised against Defendant Thibaut, Defendant Thibaut is dismissed from this lawsuit.

#### 2. May 2, 2009

Plaintiff alleges that Defendant Gatti stood in front of Plaintiff's cell on May 2, 2009, called Plaintiff a "nigger," and said that he would kill Plaintiff. (Dkt. 95 at ¶ 56). It is well-settled that verbal harassment and name-calling on the part of prison officials do not constitute actionable constitutional violations. *See Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir.1986). However, Defendant Gatti's alleged threat that he would kill Plaintiff presents a closer question.

**[117]** "Verbal harassment itself does not rise to the level of a constitutional violation. Verbal abuse, vulgarity, and even threats are insufficient to rise to the level of constitutional violations." *DeJesus v. Tierney*, No. 9:04–CV–298, 2006 WL 839541, at *11 (N.D.N.Y. Mar. 28, 2006); *see also Kemp v. LeClaire*, No. 03–0844, 2007 WL 776416, at *15 (W.D.N.Y.

**Trapani v. Pullen, Not Reported in Fed. Supp. (2016)**

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

Mar. 12, 2007) (statements like "your day is coming," "you'll be sent to your mother in a black box," and "you'll get your black ass kicked" not adverse actions). *Cf. Ford v. Palmer,* 539 Fed.Appx. 5, 6 (2d Cir.2013) (direct threat to poison inmate-plaintiff constituted an adverse action).

Defendant Gatti's alleged statement that he would kill Plaintiff is too general to support a constitutional claim. Plaintiff alleged that he had never interacted with Defendant Gatti before, and he does not allege that he interacted with Defendant Gatti again. In fact, this alleged threat is the only time Plaintiff even references Defendant Gatti in his complaint. (Dkt. 95 at * 56). "[P]laintiff has not alleged that he was ever physically threatened and, without more, his allegations of verbal threats, abusive language and racial epithets cannot form the basis of a section 1983 claim." *Amaker v. Foley,* No. 94–CV–0843E(SR), 2003 WL 21383010, at *4 (W.D.N.Y. Feb. 18, 2003). Accordingly, Plaintiff's claim against Defendant Gatti is dismissed.

**O. Falsification of Medical Records**

Plaintiff alleges that on February 26, 2009, former Defendant Muller deliberately omitted an incident where Plaintiff was vomiting blood from her medical notes in order to downplay his injuries. (*Id.* at ¶ 103). Plaintiff voluntarily dismissed Ms. Muller with prejudice, and Ms. Muller was dismissed from this matter by Court order on July 12, 2013. (Dkt. 135). Plaintiff does not allege that any other Defendants engaged in falsification of medical records. As a result, Plaintiff's falsification of medical records claim is dismissed.

**P. Qualified Immunity**

[118]   Defendants assert that they are entitled to qualified immunity on all of Plaintiff's claims because any conduct was made in the course of their employment and "did not reasonably violate established law." (Dkt. 119-2 at 10). "Although ... claims of qualified immunity should be decided as early as possible in a case, it would be premature to dismiss the case now on this basis. Rather, ... qualified immunity is often best decided on a motion for summary judgment when the details of the alleged deprivations are more fully developed." *Walker,* 717 F.3d at 130.

Because the Court finds that Plaintiff's complaint plausibly alleges several causes of action, further facts are required to decide the question of qualified immunity. For example, if Defendant Newton premeditated the attack on Plaintiff on August 7, 2008, this would clearly be outside of the scope of

Defendant Newton's employment, and thus would not entitle Defendant Newton to qualified immunity.

*741   Accordingly, Defendant's request for judgment on the pleadings on the basis of qualified immunity is denied.

**III. Defendant Ellie Holman's Motion for Judgment on the Pleadings**

At the time of Plaintiff's pre-trial holding at MCJ, Defendant Ellie Holman ("Ms. Holman") was employed by CMC as a registered nurse assigned to work at MCJ. (Dkt. 120–1 at ¶ 3). [3] In his complaint, Plaintiff claims that Ms. Holman "with shocking repugnant and reckless callous disregard blurted out following statement: 'Oh Jessie Barnes always gets his ass kicked' " when he arrived at the nurse's station for treatment after an altercation. (Dkt. 95 at ¶ 53). However, Plaintiff does not state how this alleged comment by Ms. Holman (which Ms. Holman denies (Dkt. 102 at ¶ 53)) impacted his rights. Further, as Ms. Holman notes, Plaintiff has failed to allege that she denied him medical care or provided him with inadequate medical care. (Dkt. 120–1 at ¶ 137). As a result, Plaintiff has entirely failed to state a claim with regard to Ms. Holman, and Ms. Holman's motion for judgment on the pleadings is granted.

**IV. Plaintiff's Request to Convert Defendants' Motion for Judgment on the Pleadings into a Motion for Summary Judgment**

Plaintiff requests that the Court convert Defendants' motion for judgment on the pleadings into a motion for summary judgment and grant Plaintiff summary judgment on the basis of "ample evidence against the Defendants" and Defendants' "generalized and conclusory **motion** to **dismiss**." (Dkt. 133–3 at 33).

"A district court must convert a motion for judgment on the pleadings into one for summary judgment if the motion includes material 'outside the pleadings' and that material is 'not excluded by the court.' " *Sira,* 380 F.3d at 66 (quoting Fed.R.Civ.P. 12(d)).

Here, there is no basis to convert Defendants' motion into a motion for summary judgment. To the extent that Plaintiff seeks summary judgment in his favor, this request is denied without prejudice as premature. *See Brunson v. Jonathan,* 727 F.Supp.2d 195, 199 (W.D.N.Y.2010) ("Factual issues remain to be decided with respect to the merits of [Plaintiff's] claims. Whether those issues may at some point be properly

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 112 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Barnes v. County of Monroe, 85 F.Supp.3d 696 (2015)

disposed of on a motion for summary judgment, on a more complete record than the one before [the Court], remains to be seen, but at this point summary judgment would plainly be premature.").

### CONCLUSION

For the foregoing reasons, County Defendants' motion (Dkt. 119) is granted in part and denied in part, Defendant Holman's motion (Dkt. 120) is granted, Plaintiff's motion for recusal (Dkt. 142) is denied, and Plaintiff's request to convert his response into a motion for summary judgment (Dkt. 133) is denied.

The Clerk of Court is directed to lift the stay of discovery (Dkt. 138).

The following claims may proceed to discovery: (1) August 7, 2008 Excessive Use of Force against Defendant Newton; **\*742** (2) August 12, 2009 Excessive Use of Force against Defendants Shellard, Daly, Galen, and Alberti; (3) August 7, 2008 Conspiracy against Defendants Amico, Danchy, and Newton; (4) August 7, 2008 Failure to Protect against Defendants Amico, Danchy, and Newton; (5) January 19, 2009 Failure to Protect against Defendants Tripoli, Waud, and Willis; (6) May 2, 2009 Failure to Protect against Defendant Willis; (7) August 12, 2009 Failure to Protect against

Defendant Lipari; (8) February 26, 2009 Retaliation against Defendant Waud; (9) March 2, 2009 Retaliation against Defendants Atkins, Scally, Guest, Amatore, and McGowan; (10) December 23, 2008 Conditions of Confinement claim against Defendants Jolly, Horan, Kaiser, DeRosa, McGowan, Knapp, Kennelly, Cardella, S. Peck, and Tripoli; (11) Conditions of Confinement lighting claim against Defendants Harling, Krenzer, Thomas, Jolly, Horan, Dimartino, and Lipari; and (12) Due Process claim as against Defendants Hayes, Horan, Jolly, McGowan, Guest, Scally, Atkins, and Krenzer with respect to Plaintiff's 30–day consecutive SHU assignment that began on March 2, 2009. The Court has considered Plaintiff's remaining claims and finds them to be without merit.

The Clerk of Court is further directed to terminate Defendants County of Monroe, Brooks, O'Flynn, Caceci, Kloner, Mooney, Kimball, Gatti, Pratt, Inipoli, Preston, T. Peck, Carlo, Messana, Kluth, Luther, Raby, Fitzsimmons, Palma, DiFlores, Jane Doe Nurse, Nurse Mary, Domalski, Meister, Robinson, Holman, Miller, Rizzo, and Thibaut as parties to this action.

SO ORDERED.

**All Citations**

85 F.Supp.3d 696

Footnotes

1    Although Defendants Kloner, Inipoli, DiFlores, Nurse Mary, and Jane Doe Nurse are each listed in the caption to this action, at no time throughout Plaintiff's third amended complaint does he allege that these individuals engaged in any activity or violated Plaintiff's rights under state or federal law. As a result, these Defendants are dismissed. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (quotation omitted).
     Further, service of the summons and complaint in this matter was never made upon Defendant Palma. Pursuant to Fed.R.Civ.P. 4(m), service of the summons and complaint must be made upon a defendant within 120 days after their filing. Plaintiff has not shown good cause for his failure to serve Defendant Palma, but simply claims that the Clerk of the Court "failed to make service" on Defendant Palma. (Dkt. 133–1 at 3; 133–3 at 23). Accordingly, Defendant Palma is dismissed.

2    Cynthia L. Muller is also listed as a Defendant on this motion, however, Plaintiff voluntarily dismissed Ms. Muller with prejudice, and Ms. Muller was dismissed by Court order on July 12, 2013. (Dkt. 135).

3    Ms. Holman was not named as a defendant in Plaintiff's original complaint, however, Judge Siragusa added Ms. Holman as a named defendant in place of 'Jane Doe Nurse working on February 27, 2009' at paragraphs 18, 61, and 62 of Plaintiff's second amended complaint, by Court order. (Dkt. 92). Plaintiff then incorporated Ms. Holman by name in his third amended complaint. (Dkt. 95 at ¶ 53).

End of Document

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 113 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Garvin v. Rivera, Slip Copy (2015)
2015 WL 876464

2015 WL 876464
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Gregory GARVIN, Plaintiff,
v.
Warden Luis RIVERA, et al., Defendants.

No. 13–cv–7054 (RJS).
|
Signed Feb. 28, 2015.

*OPINION AND ORDER*

RICHARD J. SULLIVAN, District Judge.

**\*1** Plaintiff, proceeding *pro se* and *in forma pauperis*, brings this action pursuant to 42 U.S.C. § 1983 ("section 1983") for injuries arising out of prison lockdowns that allegedly took place at the Anna M. Kross Center ("AMKC"), a prison facility on Rikers Island operated by the New York City Department of Correction (the " 'DOC"). Now before the Court is Defendants' partial motion to dismiss the Complaint, and Plaintiff's motion for the appointment of *pro bono* counsel. For the reasons set forth below, both parties' motions are denied without prejudice to renewal.

**I. BACKGROUND** [1]

Plaintiff alleges that while he was an inmate at the AMKC prison facility, two administrative lockdowns took place in late July to early August of 2013 on the tier in which he was housed-one for five days and another for three to four days. (Compl. at 4.) During these alleged lockdowns, Plaintiff claims that he was deprived of: (1) hot water; (2) showers; (3) food; (4) visits; (5) phones; (6) access to the law-library; and (7) sanitary cell conditions. (*Id.*) Plaintiff also alleges that on July 31, 2013, he was assaulted by correctional officers and denied medical treatment, ultimately suffering from: (1) a headache; (2) a swollen eye; (3) a laceration next to his eye; (4) stomach pain; (5) intense vomiting; (6) severe back pain; and (7) a bloody nose. (Compl. at 11.) As a result of the "mental duress, physical abuse, and emotional torture" caused by Defendants, Plaintiff seeks monetary damages of $750,000 and medical treatment. (Compl. at 12.)

**II. LEGAL STANDARD**

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must "provide the grounds upon which [the] claim rests." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.2007). The plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). In reviewing a Rule 12(b)(6) motion to dismiss, a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *ATSI Commc'ns*, 493 F.3d at 98. However, that tenet "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Thus, a pleading that only offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. If the plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Id.* at 570. Although the Court construes the Complaint liberally because Plaintiff is *pro se*, the complaint must still contain factual allegations that raise a "right to relief above the speculative level" in order to survive a motion to dismiss. *Dawkins v. Gonyea*, 646 F.Supp.2d 594, 603 (S.D.N.Y.2009) (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted).

**\*2** On a motion to dismiss, the Court may consider, in addition to the complaint itself, "any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint." *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir.2004) (citations and quotation marks omitted); *see also Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir.2002); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir.2002).

**III. DEFENDANTS' MOTION TO DISMISS**

Defendants raise a number of grounds why Plaintiff's conditions of confinement and deliberate indifference claims must be dismissed—including his failure to allege that

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.    61

2016 WL 1295137

Garvin v. Rivera, Slip Copy (2015)
2015 WL 876464

the lockdown was punitive in nature and his failure to allege deprivations that rise to the level of a constitutional violation.[2] As discussed below, the Court finds that while it appears from the face of the Complaints that Plaintiff has not complied with the administrative exhaustion requirement of the Prison Litigation Reform Act (the "PLRA"), Plaintiff should be given an opportunity to set forth facts that could excuse his failure to exhaust. Accordingly, the Court denies Defendants' motion to dismiss without prejudice to renewal as a motion for summary judgment on the issue of administrative exhaustion. Because Plaintiff's failure to exhaust administrative remedies would entirely dispose of Plaintiff's conditions of confinement and deliberate indifference claims, the Court does not reach the other grounds for dismissal urged by Defendants.[3]

The PLRA, which Congress passed to reform and streamline the consideration of prisoner lawsuits by federal courts, provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Because the failure to exhaust administrative remedies is an affirmative defense, prisoner plaintiffs are "not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007). However, a court may still dismiss a prison condition suit on a Rule 12(b)(6) motion if the allegations of the complaint show that the plaintiff has failed to comply with the administrative exhaustion requirement. *Id.* at 215–16 ("A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief.... [That administrative exhaustion need not be pleaded] is not to say that failure to exhaust cannot be a basis for dismissal for failure to state a claim."). In other words, although a complaint cannot be dismissed for failure to plead that administrative remedies were exhausted, it *can* be dismissed if it pleads facts demonstrating that administrative remedies were *not* exhausted. *See Williams v. Dep't of Corr.*, No. 11–cv–1515 (SAS), 2011 WL 3962596, at *5 (S .D.N.Y. Sept. 7, 2011) ("Dismissal for failure to exhaust administrative remedies is appropriate where, on the face of

the Complaint, it is clear that plaintiff did not exhaust such remedies.").

*3 The DOC administers an administrative grievance procedure, the Inmate Grievance and Request Program ("IGRP"), for inmates at its facilities, including the AMKC. The IGRP, which is set forth in DOC Directive 3376, applies to grievances about the following prison conditions: (1) clothing, (2) commissary, (3) correspondence/mail, (4) food, (5) housing, (6) law library, (7) mental and medical health complaints involving DOC personnel, (8) personal hygiene, (9) phone use, (10) recreation, and (11) religious observance and expression. IGRP App. A. Under the IGRP, a prisoner who wishes to file a grievance must file a form with IGRP staff within ten business days of the condition giving rise to the grievance. *Id.* §§ II.F, IV.D.1. IGRP staff are required to provide an "informal resolution" within five business days of receiving the form. *Id.* § II.F. The dispositions of IGRP staff are appealable through several layers of review, up to the DOC's Central Office Review Committee ("CORC").*Id.* § II.G (providing for appeal of IGRP staff's disposition to Inmate Grievance Resolution Committee, then to facility's Commanding Officer, then to the CORC). The administrative process is complete only when the CORC has issued its disposition. *Id.* The decisionmakers at each level of review must issue their decisions within certain time limits, *id.* §§ IV.G.1, H.1, I.2, J.5.a-b, and an inmate may appeal if he "does not receive a timely disposition at any stage of the IGRP process,"*id.* § IV.D.10.

Here, it is clear from the face of the Complaint that Plaintiff did not exhaust the IGRP procedure. Plaintiff specifically pleads that he initiated the administrative process by filing a grievance, but concedes that he did not appeal that decision. Specifically, in response to the question "Describe all efforts to appeal," Plaintiff wrote "N/A" because "nothing was done" following the filing of his grievance. (Compl. at 5.) Thus, Plaintiff did not exhaust administrative remedies, since he made no effort to continue the process after he received no response to his initial grievance.

However, the conclusion that Plaintiff failed to exhaust the IGRP procedure does not end the inquiry. Under certain circumstances, a plaintiff's failure to exhaust administrative remedies may be excused. This inquiry is generally guided by the three-part framework established by the Second Circuit in *Hemphill v. New York*, which considers: (1) "whether administrative remedies were in fact available to the prisoner," (2) "whether the defendants may have forfeited the

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 115 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Garvin v. Rivera, Slip Copy (2015)

2015 WL 876464

affirmative defense of non-exhaustion by failing to raise or preserve it or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense," and (3) "whether special circumstances have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements."*380 F.3d 680, 686 (2d Cir.2004).*[4]*

**\*4** Here, the first *Hemphill* factor does not excuse Plaintiff's failure to exhaust: on the face of the Complaint, it is clear that administrative relief was available to Plaintiff through the IGRP process. "To be available under the PLRA, a remedy must afford the possibility of some relief for the action complained of."*Abney v. McGinnis*, 380 F.3d 663, 667 (2d Cir.2004) (internal quotation marks omitted). There can be no dispute that each of the conditions complained of by Plaintiff falls within one of the categories to which the IGRP applies. *See* IGRP App. A. Indeed, the Complaint all but concedes that the IGRP process was in fact available to Plaintiff, and that Plaintiff started the process by filing a grievance. (Compl. at 5.) The alleged unresponsiveness of IGRP staff to Plaintiff's grievances does not alter the conclusion that administrative remedies were available to Plaintiff. As discussed above, the IGRP sets deadlines for each stage of the process—including a five-business-day turnaround time for informal resolutions by IGRP staff—and explicitly permits inmates to file appeals if they do not ' "receive a timely disposition at *any stage* of the IGRP process."IGRP § IV.D.10 (emphasis added). Courts in this Circuit have consistently held that the failure to take an available administrative appeal, even when the initial grievance receives no response, constitutes a failure to exhaust available administrative remedies. *See, e.g., Johnson v. New York City Dep't of Correction*, No. 13–cv–6799 (CM), 2014 WL 2800753, at \*6 (S.D.N.Y. June 16, 2014) ("Assuming that Plaintiff filed a timely grievance ... and received no response within five business days[,] ... Plaintiff ... could have taken the next step and requested a hearing."); *Leacock v. New York City Health Hosp. Corp.*, No. 03–cv–5440 (RMB)(GWG), 2005 WL 483363, at \*7 (S.D.N.Y. Mar. 1, 2005) ("[T]hat [plaintiff] allegedly did not receive a response to her grievance does not excuse her from failing to exhaust the appellate remedies available to her."); *Burns v. Moore*, No. 99–cv–0966 (LMM)(THK), 2002 WL 91607, at \*8 (S.D.N.Y. Jan.24, 2002) ("Thus, even if Plaintiff received no response to his initial grievance, Plaintiff could have sought the next level of review, in this case, to the prison superintendent."). Accordingly, the Court finds that administrative remedies were available to Plaintiff.

Furthermore, the Complaint does not allege any facts that would excuse non-exhaustion under the second and third *Hemphill* factors—estoppel and special circumstances. There are no allegations that AMKC staff retaliated against Plaintiff or prevented him from pursuing administrative remedies, as would be necessary to support an estoppel argument. [5] *See Ruggiero v. Cnty. of Orange*, 467 F.3d 170, 178 (2d Cir.2006). There are also no allegations of any special circumstances that would explain and justify Plaintiff's failure to complete the administrative process.

**\*5** That said, the Court is mindful that, under *Bock*, plaintiffs "are not required to specially plead or demonstrate exhaustion in their complaints."549 U.S. at 216. Thus, the Court cannot infer, from the mere absence of allegations that would support an estoppel or special circumstances argument, that no such arguments are available to Plaintiff. Where the merits of an administrative exhaustion defense cannot be determined from the face of a complaint, courts in this Circuit have frequently converted defendants' motions to dismiss to motions for summary judgment on the limited issue of administrative exhaustion. *See, e.g., McCoy v. Goord*, 255 F.Supp.2d 233, 251 (S.D.N.Y.2003); *Stevens*, 2012 WL 4948051, at \*3; *Lovick v. Schriro*, No. 12–cv–7419 (ALC) (RLE), 2014 WL 3778184, at \*5 (S.D.N.Y. July 25, 2014). The Court takes that coarse here.

To be sure, some courts in this District and elsewhere have granted motions to dismiss in cases where, on the face of the complaint, it is clear that the prisoner plaintiff did not exhaust administrative remedies and where the complaint does not allege any facts supporting application of the *Hemphill* factors. *See, e.g., Jordan v. Fed. Bureau of Prisons*, No. 09–cv–8861 (ALC), 2013 WL 1143617, at \*6 (S.D.N.Y. Mar. 19, 2013); *Martin v. City of New York*, No. 11–cv–600 (PKC) (RLE), 2012 WL 1392648, at \*6–7 (S.D.N.Y. Apr. 20, 2012). However, this approach appears to be in tension with the Supreme Court's holding in *Bock* that prisoner plaintiffs are "not required to specially plead or demonstrate exhaustion in their complaints."549 U.S. at 216. In the Court's view, it is hard to reconcile the holding of *Bock*—that a plaintiff need not allege any facts about exhaustion *at all*—with the position that if a plaintiff alleges facts supporting an inference that he did not exhaust administrative remedies, he must then plead additional facts justifying his failure to do so under *Hemphill*. *Cf. Bailey v. Fortier*, No. 09–cv–0742 (GLS) (DEP), 2012 WL 6935254, at \*5–6 (N.D.N.Y. Oct. 4, 2012) (noting this tension). Furthermore, it is unrealistic to expect a

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 116 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Garvin v. Rivera, Slip Copy (2015)
2015 WL 876464

*pro se* plaintiff to know that the inclusion of facts reflecting his failure to exhaust administrative remedies triggers an affirmative duty to plead additional facts concerning the relevant *Hemphill* factors that would excuse his failure to exhaust. Absent a clear directive from the Supreme Court or the Second Circuit, the Court declines to impose such a draconian pleading requirement. Accordingly, the Court denies Defendants' motion to dismiss without prejudice to renewal as a Rule 56 motion for summary judgment on the issue of administrative exhaustion.[6]

## IV. PLAINTIFF'S APPLICATION FOR PRO BONO COUNSEL

On May 5, 2014, Plaintiff applied for the appointment of *pro bono* counsel. (Doc. No. 30.) Plaintiff previously made two applications for appointment of *pro bono* counsel, one which was denied by Judge Schofield by Order dated November 4, 2013 and the other which was denied by this Court by Order dated April 2, 2014. (Doc. Nos. 6 & 20.) The Court concludes that its prior determination from the April 2 Order—that the balance of the *Hodge* factors weigh against the appointment of counsel at this time—remains the case. The expected next steps in this litigation will involve Defendants' summary judgment motion on Plaintiff's failure to exhaust administrative remedies. This will require Plaintiff to respond to Defendants' statement of material fact pursuant to Local Civil Rule 56.1 ("56.1 statement") and set forth facts justifying his failure to exhaust under the three-pronged *Hemphill* analysis. The Court has no reason to doubt Plaintiff's ability to represent himself in this regard or to conduct discovery with respect to the excessive force claim that remains. Accordingly, Plaintiff's application for appointment of counsel is denied without prejudice to renewal.

## V. CONCLUSION

*6 For the reasons stated above, IT IS HEREBY ORDERED THAT Defendants' partial motion to dismiss is denied without prejudice to renewal as a motion for summary judgment on

the issue of administrative exhaustion. The Clerk of the Court is respectfully directed to terminate the motion pending at docket entry 23.

IT IS FURTHER ORDERED THAT Plaintiff's application for appointment of *pro bono* counsel is denied without prejudice to renewal at a later point if additional grounds for the application are presented to the Court. Any renewed application should be accompanied by an affidavit establishing facts supporting the *Hodge* factors. The Clerk of the Court is respectfully directed to also terminate the motion pending at docket entry 30.

IT IS FURTHER ORDERED THAT Defendants shall file their motion for summary judgment no later than March 27, 2015. Plaintiff shall respond, if at all, no later than April 24, 2015. Defendant shall reply, if at all, no later than May 1, 2015. The parties shall submit 56.1 statements in connection with Defendants' motion.

The Court reminds Plaintiff that failure to submit responsive 56.1 statements will be deemed an admission of the facts set forth in Defendants' 56.1 statement. Local Civil Rule 56.1(c). The Court also reminds Plaintiff that he bears the burden of demonstrating exhaustion or excuse of exhaustion under the PLRA. Defendants shall serve Plaintiff with a copy of the notice required by Local Civil Rule 56.2, which Plaintiff should read carefully.

IT IS FURTHER ORDERED THAT discovery as to Plaintiff's conditions of confinement and deliberate indifference claims remains stayed pending resolution of Defendants' motion for summary judgment. However, IT IS FURTHER ORDERED THAT, by March 27, 2015, the parties shall submit a proposed case management plan and scheduling order as to discovery for Plaintiff's excessive force claim.

SO ORDERED.

**All Citations**

Slip Copy, 2015 WL 876464

---

Footnotes

1    The facts are drawn from the Complaint, which are assumed to be true for purposes of Defendants' motion. (Doc. No. 2
     ('Compl.').) *See, e.g., Regan v. New York State Local Ret. Sys.*, 406 F. App'x 568 (2d Cir 2011).

2    Defendants have not moved to dismiss Plaintiff's excessive force claims. (Doc. No. 25.)

WESTLAW   © 2016 Thomson Reuters. No claim to original U.S. Government Works.                                    4

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Garvin v. Rivera, Slip Copy (2015)

2015 WL 876464

3    As discussed below, in the event that the Court denies summary judgment on the issue of administrative exhaustion, Defendants will be permitted to renew their motion to dismiss on these other grounds.

4    Following the Supreme Court's decision in *Woodford v. Ngo*, 548 U.S. 81, 90–91, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006), holding that the PLRA requires "proper exhaustion" of administrative remedies in "compliance with an agency's deadlines and other critical procedural rules," the Second Circuit has noted, without holding, that the second and third prongs of the *Hemphill* analysis—estoppel and special circumstances—may no longer be applicable. *See Amador v. Andrews*, 655 F.3d 89, 102 (2d Cir.2011) ("We have questioned whether, in light of *Woodford*, the doctrines of estoppel and special circumstances survived.")(citing cases); *see also Dabney v. Pegano*, No. 13–3884, 2015 WL 664562 (2d Cir. Feb.17, 2015). Nevertheless, the Second Circuit conducted a *Hemphill* analysis in *Amador* itself, 655 F.3d at 102–04, and district courts in this Circuit have continued to apply the *Hemphill* framework following *Woodford* and *Amador*, *see, e.g., Powell v. Corr. Med. Care, Inc.*, No. 13–cv–6842 (WHP), 2014 WL 4229980, at *2 n. 3 (S.D.N.Y. Aug. 15, 2014) (collecting cases); *Stevens v. City of New York*, No. 12–cv–1918 (JPO)(JLC), 2012 WL 4948051, at *6 (S.D.N.Y. Oct. 11,2012).

5    A plaintiff may also assert an estoppel argument if defendants fail to timely assert an administrative exhaustion defense. *Hemphill*, 380 F.3d at 686. That branch of the estoppel inquiry is clearly not implicated here, since Defendants have raised their administrative exhaustion defense in this pre-answer motion to dismiss.

6    Because the administrative exhaustion issue is likely dispositive of Plaintiff's conditions of confinement and deliberate indifference claims, the Court does not address the other grounds for dismissal raised in Defendants' motion to dismiss. Defendants may renew their motion to dismiss on those grounds, if necessary, once the Court has ruled on the administrative exhaustion issue.

End of Document                                    © 2016 Thomson Reuters. No claim to original U.S. Government Works.

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Gayle v. Benware, Not Reported in F.Supp.2d (2009)

2009 WL 2223910

2009 WL 2223910
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Robert Edward GAYLE, Plaintiff,
v.
Officer C. BENWARE, Officer S. Carlson,
and Officer D. Williams, Defendants.

No. 08 Civ. 8017(RBM)(FM).
|
July 27, 2009.

**DECISION & ORDER**

RICHARD M. BERMAN, District Judge.

**I. Background**

*1 On or about September 17, 2008, Robert Edward Gayle ("Plaintiff" or "Gayle") filed a *pro se* complaint ("Complaint") pursuant to 42 U.S.C. § 1983 against Officer C. Benware, Officer S. Carlson, and Officer D. Williams (collectively, "Defendants"), alleging, among other things, that while he was incarcerated at Green Haven Correctional Facility ("Green Haven"), Defendants injured him by "punching and kicking" him while Defendants were restraining and transporting him "to [the] hospital ." (*See* Compl., dated July 3, 2008, at 3.) In his Complaint, Plaintiff alleges that he did not "file a grievance" regarding this incident. (*Id.* at 4.)

On December 29, 2008, Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ.P.") 12(b)(6), arguing, among other things, that Plaintiff "did not complete the grievance process before filing this action" and therefore failed to "exhaust his administrative remedies" as mandated by the Prisoner Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a). (Mem. of Law in Supp. of Def.'s Mot. to Dismiss Pl.'s Compl., dated Dec. 29, 2008 ("Def.'s Mem."), at 1, 3 .)

On February 18, 2009, in opposition to Defendants' motion, Plaintiff submitted an affidavit, sworn to on January 23, 2009, alleging, among other things, that he "requested a grievance form and a grievance representative, which [he] was denied" and that he "wrote [his] grievance on a regular piece of paper

and gave it to an officer to mail it out for [him]" but he "never received [any] response [because] most likely that officer never mailed it out." (Aff. of Robert Edward Gayle, sworn to on Jan. 23, 2009 ("Gayle Aff."), at 1.)

On July 6, 2009, United States Magistrate Judge Frank Maas, to whom the matter had been referred, issued a thorough report and recommendation ("Report"), recommending that Defendants' motion be denied because, among other reasons, when "taking Gayle's pleadings as a whole and construing them liberally, Gayle has made a prima facie showing that he reasonably attempted to obtain a grievance form, access a representative, and mail a grievance through prison officials."(Report at 9.)

Although the Report advised that, pursuant to 28 U.S.C. § 636(b) (1) and Fed.R.Civ.P. 6(a), 6(d), and 72, "the parties shall have ten days from the service of this [Report] to file written objections," (Report at 9), to date, neither party has filed objections. (*See* Ltr. from John Knudsen to Hon. Richard M. Berman, dated July 23, 2009 ("Defendants will not file objections to the Report").)

**For the reasons stated below, the Report is adopted in its entirety.**

**II. Standard of Review**

The Court may adopt those portions of a report and recommendation to which no objections have been made and which are not clearly erroneous. *See Thomas v. Arn,* 474 U.S. 140, 149 (1985). The Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."28 U.S.C. § 636(b)(1); *see also*Fed.R.Civ.P. 72(b); *Grassia v. Scully,* 892 F.2d 16, 19 (2d Cir.1989).

*2 Where, as here, a petitioner is proceeding *pro se,* the Court construes the petitioner's claims liberally, *see Marmolejo v. United States,* 196 F.3d 377, 378 (2d Cir.1999), and will "interpret them to raise the strongest arguments that they suggest,"*Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994).

**III. Analysis**

The facts and procedural history set forth in the Report are incorporated herein by reference. Having conducted a review of the Report (and applicable legal authorities), the Court finds that the Report is not clearly erroneous and, in fact, is in

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 119 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Gayle v. Benware, Not Reported in F.Supp.2d (2009)

2009 WL 2223910

conformity with the law. *See Pizarro v. Bartlett,* 776 F.Supp. 815, 817 (S.D.N.Y.1991).

Judge Maas properly concluded that Defendants' motion should be denied because, among other reasons, Plaintiff claims that he "reasonably attempted to [file] a grievance" but "the actions of the Green Haven staff prevented him from doing so" when they allegedly denied his requests for "a grievance form and access to a grievance representative" and allegedly failed "to mail [Plaintiff's informal] grievance." (Report at 7, 9 (citing Gayle Aff.)); *see Hemphill v. New York,* 380 F.3d 680, 688 (2d Cir.2004); *see also Lahoz v. Orange County,* No. 08 Civ. 3589, 2009 WL 666950, at \*5 (S.D.N.Y. Mar. 12, 2009) ("Because [plaintiff] was denied recourse to the grievance procedures, his failure to exhaust procedural remedies must be excused."); *Taylor v. Zerillo,* No. 08 Civ. 1484, 2008 WL 4862690, at \*2 (E.D.N.Y. Nov. 10, 2008) (denying motion to dismiss for failure to exhaust administrative remedies because, among other reasons, plaintiff alleged that he "was not given any grievance forms" and that he "complained to the warden in writing but received no response").

**IV. Conclusion and Order**

For the reasons set forth herein and therein, the Court adopts Judge Maas's Report in its entirety and denies Defendants' motion to dismiss [# 7].

**REPORT AND RECOMMENDATION TO
THE HONORABLE RICHARD M. BERMAN**

FRANK MAAS, United States Magistrate Judge.

In this prisoner civil rights action brought under 42 U.S.C. § 1983, *pro se* plaintiff Robert Gayle ("Gayle") alleges that certain corrections officers ("Defendants") at the Green Haven Correctional Facility ("Green Haven") injured him by using excessive force while restraining and transporting him. (*See*Docket No. 2 (Complaint)). The Defendants have filed a motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the ground that Gayle did not complete the requisite administrative grievance process before commencing this action. For the reasons set forth below, the Defendants' motion (Docket No. 7) should be denied.

**I. Background**

Gayle's complaint arises out of an incident that allegedly occurred at Green Haven on June 24, 2008. (Complaint ¶ II(C)). According to Gayle, during a facility frisk Defendant Officer Benware accused Gayle of throwing a slipper at him, then ordered Gayle to lie on the bed with his hands behind his back, grabbed his arms, handcuffed him from behind, and proceeded to punch and kick him. (*Id.* ¶ II(D)). Officer Benware allegedly subsequently turned Gayle over to Defendant Officers Carlson and Williams, who escorted Gayle to an outside hospital, beating him all the while. (*Id.*). Gayle contends that he suffered numerous injuries as a result of the incident, including a "transfusion for heart failure," chest abrasions, numbness in his wrist and leg, and bruising. (*Id.* ¶ III). Upon his release from the hospital, Gayle was placed in the Special Housing Unit ("SHU") at Green Haven, where he remained for twenty-eight days. (Docket No. 12) (Aff. of Robert E. Gayle, sworn to on Jan. 23, 2009 ("Gayle Aff.")).

\*3 In his complaint, Gayle conceded that he had not filed a grievance about the incident with Green Haven or any other correctional facility. (*See* Complaint ¶ IV(D)). Additionally, although the *pro se* prisoner complaint form provided spaces for Gayle to explain his failure to file a grievance, Gayle did not offer a reason or indicate that he had spoken with prison officials about his claim. (*Id.* ¶ IV(F)). Indeed, Gayle stated that he did not know whether Green Haven has a grievance procedure, or whether any grievance procedure would cover his claims. (*Id.* ¶¶ IV(B), (C)).

On December 11, 2008, I held a telephone conference with the parties during which Gayle indicated that he failed to file a formal grievance because of his physical condition and because "no one would answer to [him] filing a grievance [when he was] put into [the] SHU after coming from the hospital."(*See* Tr. of Tel. Conf. dated Dec. 11, 2008, at 3– 5). After opposing counsel indicated that the Defendants intended to move to dismiss Gayle's case based upon his failure to exhaust his remedies, I cautioned Gayle that he should, at minimum, submit an affidavit explaining why he did not or could not grieve.(*Id.* at 10).

On December 18, 2008, even before the defense motion was filed, Gayle submitted a "Notice of Motion" form to my Chambers in an apparent attempt to explain the circumstances surrounding his failure to grieve. Gayle stated that he "couldn't possi[ ]bly file a grievance under the security of the correctional facility."(*See* Notice of Mot., dated Dec. 18, 2008 ("Notice of Mot.")). He added that, "[i]n the complaint[,] it

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 120 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Gayle v. Benware, Not Reported in F.Supp.2d (2009)

2009 WL 2223910

were checked off [''not file, ['] because of security[.] It is a criminal matter of the defendants involve [d]." (*Id.*). He thus again conceded that he had not filed a grievance.

On December 29, 2008, the Defendants filed their motion to dismiss. (Docket No. 7). Thereafter, on January 8, 2009, Your Honor referred the motion to me for a Report and Recommendation. (Docket No. 9).

In opposition to the Defendants' motion, Gayle has now submitted an affidavit in which states that while he was in the SHU, he "requested a grievance form and a grievance representative, which [he] was denied and never seen."(Docket No. 12) (Gayle Aff.). Gayle further alleges that he "wrote [his] grievance on a regular piece of paper and gave it to an officer to mail it out for [him], to which [he] never received no response, most likely that officer never mailed it out".(*Id.*). Gayle's affidavit does not indicate the name of the officer to whom he allegedly gave his grievance.

**II. Applicable Law**

**A. Motion to Dismiss**

Under Rule 12(b)(6), a court may dismiss a complaint if it fails to state a claim upon which relief can be granted. In reviewing a Rule 12(b)(6) motion, the Court must accept as true all factual allegations made in the complaint and draw all reasonable inferences in favor of the plaintiff. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 164 (1993); *Newman & Schwartz v. Asplundh Tree Expert Co.,* 102 F.3d 660, 662 (2d Cir.1996). As the Supreme Court recently has explained, the issue that must be decided under Rule 12(b)(6) is whether the plaintiff's claims are "plausible." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556 (2007). This requires the Court to apply a "flexible" standard, pursuant to which a pleader must "amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible."*Iqbal v. Hasty,* 490 F.3d 143, 157–58 (2d Cir.2007) (emphasis omitted).

*4 When a party proceeds *pro se,* the Court is obligated to "read [the pro se party's] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest."*Sloane v. Mazzuca,* No. 04 Civ. 8266(KMK), 2006 WL 3096031, at *3 (S.D.N.Y. Oct. 31, 2006) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)) (brackets and ellipsis in original); *see also Davis v. Kelly,* 160 F.3d 917, 922 (2d Cir.1998) ("Though a court need not act as an advocate for *pro se* litigants, in *pro se* cases there is a

greater burden and a correlative greater responsibility upon the district court to insure that constitutional deprivations are redressed and that justice is done.") (internal quotation marks and citation omitted). This principle applies with particular force when, as in this case, a *pro se* plaintiff alleges civil rights violations. *See Sykes v. James,* 13 F.3d 515, 519 (2d Cir.1993). Moreover, because Gayle is a *pro se* litigant, the Court may appropriately consider his "additional materials, such as his opposition memorandum" in assessing the legal sufficiency of his claims. *See Crum v. Dodrill,* 562 F.Supp.2d 366, 374 n. 13 (N.D.N.Y.2008) (quoting *Gadson v. Goord,* No. 96 Civ. 7544(SS), 1997 WL 714878, at *1 n. 2 (S.D.N.Y. Nov. 17, 1997)).

**B. Prisoner Litigation Reform Act**

Under the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a), a prisoner must exhaust any available administrative remedies before he may challenge prison conditions in federal court. This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."*Porter v. Nussle,* 534 U.S. 516, 532 (2002). When a prisoner seeking damages plausibly seeks to counter a defendant's claim that he has failed to exhaust available remedies, the court must ask: "(1) whether administrative remedies were actually available, (2) whether the defendants forfeited their right to raise the affirmative defense or by their own actions precluded the plaintiff from using administrative grievance procedures, and (3) whether special circumstances have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements."*Singh v. Goord,* 520 F.Supp.2d 487, 495–96 (S.D.N.Y.2007) (citing *Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004)); *see also Ziemba v. Wezner,* 366 F.3d 161, 163 (2d Cir.2004) (failure to exhaust under the PLRA is an affirmative defense subject to estoppel).

The New York State correctional system, of which Green Haven is a unit, has implemented an Inmate Grievance Program ("IGP") which permits an inmate to file complaints with the facility's Inmate Grievance Resolution Committee ("IGRC").*See*N.Y. Comp.Codes R. & Regs. tit. 7, § 701.1(c). The inmate can appeal an adverse IGRC decision to the facility superintendent, and from there to a committee of central office staff. *Id.* A complaint must be submitted to the IGP clerk within twenty-one calendar days of the incident on an "inmate grievance complaint form," or on plain paper if the form is not readily available. *Id.* § 701.5(a)(1). The IGP

**Trapani v. Pullen, Not Reported in Fed. Supp. (2016)**

2016 WL 1295137

Gayle v. Benware, Not Reported in F.Supp.2d (2009)

2009 WL 2223910

requires that a supply of inmate grievance complaint forms be "maintained in all special housing areas and ... be given to inmates requesting them." *Id.* § 701.7(a)(1). In addition, an "IGRC staff member ... or grievance supervisor shall make rounds of all special housing areas ... at least once a week to allow inmates direct access to the program." *Id.* § 707.7(c) (1).

**III. Discussion**

*\*5  It is clear that Gayle did not file a formal grievance about the June 24 incident despite the existence of an administrative remedy. Moreover, the Defendants are understandably put out that Gayle has alleged for the first time at the eleventh hour that he attempted to file a grievance. (*See* Reply at 3). Reading Gayle's papers collectively, however, and viewing his allegations in the light most favorable to him, Gayle clearly avers that he *attempted* to file a grievance pursuant to the IGP, but that the actions of the Green Haven staff prevented him from doing so. *See Hemphill,* 380 F.3d at 686.Specifically, in his affidavit, Gayle states that while he was in the SHU, he requested a grievance form and access to a grievance representative. (Gayle Aff.). Although both are to be provided to inmates in the SHU, *see*N.Y. Comp.Codes R. & Regs. tit. 7, §§ 707.7(a)(1), (c)(1), Gayle indicates that these requests were denied. (Gayle Aff.). Gayle also states that he instead wrote his grievance on a piece of paper and gave it to an officer to mail. (*Id.*). The IGP permits this method of grieving to be employed when official complaint forms are not available. N.Y. Comp.Codes R. & Regs. tit. 7, § 701.5(a) (1). According to Gayle, he never received a response to this grievance and was concerned that the officer did not actually mail the grievance. (Gayle Aff.).

In these circumstances, Gayle's complaint cannot be dismissed for failure to exhaust administrative remedies. Admittedly, Gayle does not identify which Green Haven staff members he asked for a complaint form or representative, or the officer to whom he allegedly gave his grievance for mailing. He seems to suggest, however, that the Defendants may have impeded his access to the grievance process. (See Notice of Mot.). If any of the Defendants did, in fact, prevent Gayle from grieving pursuant to the IGP's requirements, their exhaustion defense might be forfeited. *See Hemphill,* 380 F.3d at 690 (petitioner's allegations of threats may estop defendants from asserting exhaustion defense); *Ziemba,* 366 F.3d at 162–63 (exhaustion defense may be estopped where defendants allegedly beat and threatened petitioner, and denied grievance forms and writing implements); *Sereika v. Patel,* 411 F.Supp.2d 397, 403 (S.D.N.Y.2006) ("Where a plaintiff alleges that the

defendant made misrepresentations that inhibited the plaintiff from participating in the grievance process, dismissal of the complaint for failure to exhaust is not appropriate."); *DeMartino v. Zenk,* No. 04 Civ. 3880(SLT)(LB), 2006 WL 1455456, at *5 (E.D.N.Y. May 25, 2006) (declining to hold that plaintiff failed to exhaust where defendants may have prevented plaintiff "from submitting timely grievance forms by misplacing or losing his documents, or denying him access to a photocopier").

Moreover, even if the Defendants themselves were not directly involved, interference by *any* Green Haven staff members would have rendered the IGP constructively unavailable to Gayle. "Where a prisoner has made a 'reasonable attempt' to file a grievance, and prison officials have prevented the prisoner from filing that grievance, the grievance procedures are not 'available' to the [prisoner], and thus the [PLRA] does not preclude the prisoner from suing in federal court."*Thomas v. New York State Dep't of Corr. Servs.,* No. 00 Civ. 7163(NRB), 2002 WL 31164546, at *3 (S.D.N.Y. Sept. 30, 2002); *see also Miller v. Norris,* 247 F.3d 736, 740 (8th Cir.2001) ("a remedy that prison officials prevent a prisoner from utilizing is not an available remedy" under the PLRA) (cited with approval by *Abney v. McGinnis,* 380 F.3d 663, 669 (2d Cir.2004)).

*\*6  Here, taking Gayle's pleadings as a whole and construing them liberally, Gayle has made a prima facie showing that he reasonably attempted to obtain a grievance form, access a representative, and mail a grievance through prison officials. While these assertions may ultimately not prove credible, at this preliminary stage the Court cannot say, as a matter of law, that they are implausible. Accordingly, although there is ample reason to question the veracity of Gayle's latest representations, I reluctantly conclude that the Defendants' motion must be denied.

**IV. Conclusion**

For the foregoing reasons, the Defendants' motion to dismiss the complaint, pursuant to Fed.R.Civ.P. 12(b)(6) for lack of administrative exhaustion, (Docket No. 7), should be denied.

**V. Notice of Procedure for Filing of Objections to this Report and Recommendation**

The parties shall have ten days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also*Fed.R.Civ.P. 6(a) and (d). Any

Case 9:22-cv-00638-DNH-TWD   Document 58   Filed 02/28/25   Page 122 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Gayle v. Benware, Not Reported in F.Supp.2d (2009)

2009 WL 2223910

such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Richard B. Berman and to the chambers of the undersigned at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be directed to Judge Berman. The failure to file these timely objections

will result in a waiver of those objections for purposes of appeal. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72(b); *Thomas v. Arn*, 474 U.S. 140 (1985).

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 2223910

---

End of Document

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 123 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Groves v. Davis, Not Reported in F.Supp.2d (2012)

2012 WL 651919

2012 WL 651919
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Kenneth Carl GROVES, Sr., Plaintiff,

v.

Brett DAVIS, Secure Care Treatment Aid; David
W. Sill, Secure Care Treatment Aid; Thomas
Nicolette, RN, Ward Nurse; Charmaine Bill,
Treatment Team Leader; Jill E. Carver, Social
Worker, Primary Therapist; Edwin Debroize,
Psychologist Assist; Jeff Nowicki, Chief of Mental
Health Treatment Serv.; Terri Maxymillian,
Ph.D., Dir. of Mental Health Serv.; Sgt. Sweet,
Security Services, CNYPC; Michael Hogan,
Comm'r, Dep't of Mental Health, Defendants.

No. 9:11–CV–1317 (GTS/RFT).
|
Feb. 28, 2012.

**Attorneys and Law Firms**

Kenneth Carl Groves, Sr., Marcy, NY, pro se.

*MEMORANDUM DECISION and ORDER*

Hon. GLENN T. SUDDABY, District Judge.

*1 Currently before the Court, in this *pro se* civil rights action filed by Kenneth Carl Groves, Sr. ("Plaintiff"), against numerous employees of New York State or the Central New York Psychiatric Center ("Defendants"), are Plaintiff's motion to proceed *in forma pauperis*, his motion for a temporary restraining order and preliminary injunction, and his motion for appointment of counsel. (Dkt.Nos.2, 3, 4.) [1] For the reasons set forth below, Plaintiff's motion to proceed *in forma pauperis* is granted; his motion for a preliminary injunction is denied; his motion for appointment of counsel is denied; Plaintiff's claims of deliberate indifference to his mental health needs against Defendants Bill, Carver and DeBroize are *sua sponte* dismissed with prejudice; Plaintiff's claims against Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan arising from their alleged personal involvement in the August 8, 2011 assault are *sua sponte* dismissed without prejudice and with leave to amend in this

action in accordance with Fed.R.Civ.P. 15; Sgt. Sweet is *sua sponte* dismissed without prejudice as a Defendant in this action; the Clerk is directed to issue summonses, and the U.S. Marshal is directed to effect service of process on Defendants Davis, Sill, and Nicolette.

**I. RELEVANT BACKGROUND**

On November 7, 2011, Plaintiff commenced this action *pro se* by filing a civil rights Complaint, together with a motion to proceed *in forma pauperis*.(Dkt. Nos.1, 2.) [2] Liberally construed, Plaintiff's Complaint alleges that the following constitutional violations against him occurred during his confinement at Central New York Psychiatric Center ("CNYPC"): (1) Defendants Davis and Sill used excessive force against him under the Eighth and/or Fourteenth Amendments; (2) Defendant Nicolette knew of and failed to take action to protect Plaintiff from the assault under the Eighth and/or Fourteenth Amendments; (3) Defendants Bill, Carver, and DeBroize were deliberately indifferent to his mental health needs under the Eighth and/or Fourteenth Amendments; and (4) Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, Bosco, and Hogan failed to "adequately train the staff under their supervision" and to take appropriate action in response to the incident. (*See generally*Dkt. No. 1.) For a more detailed description of Plaintiff's claims, and the factual allegations giving rise to those claims, the reader is referred to Part III.B of this Decision and Order.

**II. MOTION TO PROCEED *IN FORMA PAUPERIS***

Because Plaintiff sets forth sufficient economic need, the Court finds that Plaintiff may properly commence this action *in forma pauperis*.(Dkt. No. 2.)

**III. *SUA SPONTE* REVIEW OF PLAINTIFF'S COMPLAINT**

In light of the foregoing, the Court must now review the sufficiency of the allegations that Plaintiff has set forth in his Complaint in light of 28 U.S.C. § 1915(e)(2)(B). This is because Section 1915(e)(2)(B) directs that, when a plaintiff seeks to proceed *in forma pauperis*,"(2) ... the court shall dismiss the case at any time if the court determines that—... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."28 U.S.C. § 1915(e)(2)(B). [3]

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 124 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)
2016 WL 1295137

Groves v. Davis, Not Reported in F.Supp.2d (2012)
2012 WL 651919

**A. Governing Legal Standard**

**\*2** It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.*, 549 F.Supp.2d 204, 211, nn. 15–16 (N.D.N.Y.2008) (McAvoy, J., adopting Report–Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[ ]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed.R.Civ.P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed.R.Civ.P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F.Supp.2d at 212, n. 20 (citing Supreme Court cases). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed.R.Civ.P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F.Supp.2d at 212, n .17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F.Supp.2d at 212, n. 18 (citing Supreme Court cases); *Rusyniak v. Gensini*, 629 F.Supp.2d 203, 213 & n. 32 (N.D.N.Y.2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12–61 (3d ed.2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak*, 629 F. Supp .2d at 213, n .22 (citing Supreme Court and Second Circuit cases); see also *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949–52, 173 L.Ed.2d 868 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim because the complaint "contained allegations adequate to show that" such a violation had occurred. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S.Ct. at 1968–69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965–74.The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id* . at 1965.More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.*

**\*3** As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."*Iqbal*, 129 S.Ct. at 1949."[D]etermining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief."*Id.* at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully,"*id.*, it "does not impose a probability requirement."*Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice."*Iqbal*, 129 S.Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice.

**Trapani v. Pullen, Not Reported in Fed. Supp. (2016)**

2016 WL 1295137

Groves v. Davis, Not Reported in F.Supp.2d (2012)

2012 WL 651919

*Iqbal*, 129 S.Ct. at 1949 (internal citations and alterations omitted).Rule 8"demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."*Id.* (citations omitted).

This pleading standard applies even to *pro se* litigants. While the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed.R.Civ.P. 8, 10 and 12.[4] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.R.Civ.P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.[5] Stated more simply, when a plaintiff is proceeding *pro se*,"all normal rules of pleading are not absolutely suspended."*Jackson*, 549 F.Supp.2d at 214, n. 28 [citations omitted].[6]

**B. Analysis of Plaintiff's Complaint**

The Court prefaces its analysis of Plaintiff's Complaint by noting that, although Plaintiff is a civilly committed sex offender and no longer a prisoner, the Court will look to cases addressing prisoner's rights in analyzing Plaintiff's claims, because "confinement of civilly committed patients is similar to that of prisoners."*Holly v. Anderson*, 04–CV–1489, 2008 WL 1773093, at *7 (D.Minn. Apr.15, 2008); *see also Morgan v. Rabun*, 128 F.3d 694, 697 (8th Cir.1997) ("The governmental interests in running a state mental hospital are similar in material aspects to that of running a prison."). Thus, whereas claims of excessive force by convicted criminals are analyzed under the Eighth Amendment to the United States Constitution, because Plaintiff is a civilly committed sex offender and no longer a prisoner, his substantive rights to be free from unsafe conditions of confinement arise under the Due Process Clause of the Fourteenth Amendment. In *Youngberg v. Romeo*, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), the Court stated "[i]f it is cruel and unusual punishment to hold convicted criminals in unsafe conditions, it must be unconstitutional [under the Due Process Clause] to confine the involuntarily committed-who may not be punished at all-in unsafe conditions."*Youngberg*, 457 U.S. at 315–16. As have numerous other courts which have considered the issue, this Court has found that "the standard for analyzing a civil detainee's Fourteenth Amendment [conditions of confinement] claim is the same as the Eighth Amendment standard."*Groves v. Patterson*, 09–CV–1002,

Memorandum-Decision and Order at *15–16 (N.D.N.Y. filed Nov. 18, 2009).[7]

**1. Excessive Force Claims Against Defendants Davis, Sill and Nicolette**

*4 Plaintiff alleges that on August 8, 2011, Defendant Davis entered Plaintiff's dorm room at CNYPC and "viciously attacked and brutally assaulted and battered" him. (Dkt. No. 1 at 4.) During the course of this assault, Defendant Sill is alleged to have entered Plaintiff's room and "jump[ed] on the plaintiff's legs holding and pinning them as Defendant Davis [continued to beat Plaintiff]."(*Id.*)As alleged in the Complaint, although Defendant Nicolette knew in advance that this assault was planned, he "remained in the Nurses Station" and "did nothing to interceed [sic] or stop the brutal attack on the plaintiff."(*Id.* at 5.)

To validly assert a violation of the Eighth Amendment through the use of excessive force, an inmate must allege the following: (1) subjectively, that the defendants acted wantonly and in bad faith; and (2) objectively, that the defendants' actions violated "contemporary standards of decency." *Blyden v. Mancusi*, 186 F.3d 252, 262–63 (2d Cir.1999) (internal quotation marks omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 [1992] ).

Here, construing the factual allegations of Plaintiff's Complaint with special leniency, the Court finds that Plaintiff appears to have alleged facts plausibly suggesting that he was subjected to excessive force by Defendants Davis and Sill. In addition, by alleging that Defendants Davis, Sill and Nicolette discussed the assault in advance of it occurring, and that Nicolette was in the vicinity of Plaintiff's room and had an opportunity to intervene to prevent it, the Complaint sufficiently alleges that Defendant Nicolette was personally involved and/or failed to protect Plaintiff from the assault. *See Bhuiyan v. Wright*, 06–CV–0409, 2009 WL 3123484, at *7 (N.D.N.Y. Sept.29, 2009) (Scullin, J.) ("The fact that defendant Davis was not in the room, but was acting as a 'lookout' so that no one came into the room while plaintiff was being beaten, would not absolve him from liability for the assault. An officer's failure to intervene during another officer's use of excessive force can itself constitute an Eighth Amendment violation unless the assault is 'sudden and brief,' and the defendant had no real opportunity to prevent it."); *Jeffreys v. Rossi*, 275 F.Supp.2d 463, 474 (S.D.N.Y.2003) (holding that an officer may be personally involved in the use of excessive force if he either directly participates in the

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 126 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Groves v. Davis, Not Reported in F.Supp.2d (2012)
2012 WL 651919

assault or if he was present during the assault, yet failed to intervene on behalf of the victim, even though the officer had a reasonable opportunity to do so).

As a result, a response to these claims is required from Defendants David, Sill, and Nicolette. In so ruling, the Court expresses no opinion as to whether Plaintiff's claims can withstand a properly filed motion to dismiss or for summary judgment.

**2. Deliberate Indifference Claims Against Defendants Bill, Carver and DeBroize**

Plaintiff alleges that on August 9, 2011, the day after the alleged assault, he attempted to "discuss the incident and what transpired" with Defendants Bill and Carver. (Dkt. No. 1 at 5.) Plaintiff alleges that Defendant Bill told him, "I don't want to discuss this Mr. Groves, we're too busy for your foolishness and the matter is being investigated."(*Id.*) Plaintiff's effort to explain that he was frightened by the incident was rebuffed by Defendant Bill, who told Plaintiff to "grow up." (*Id.* at 5–6.)The following day, Plaintiff attempted to discuss the incident with Defendant Carver, his primary therapist, again without success. A further attempt at discussion later that day was met with Defendant Carver "stating to the plaintiff in a snotty tone 'grow the hell up' " (*Id.* at 6.) On August 10, 2011, Plaintiff attempted to discuss the incident "and his current fears and feelings," during his Monday afternoon "Process Group," which is facilitated by Defendant DeBroize. As alleged, Defendant DeBroize told Plaintiff and the other group members that the matter was under investigation "so no one could discuss the incident with anyone." (*Id.* at 6.)

**\*5** To state a claim of deliberate indifference to a serious medical and/or mental health need under the Eighth Amendment, a plaintiff must first allege facts plausibly suggesting that prison officials acted with "deliberate indifference to serious medical needs."*Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).²[T]he plaintiff must allege conduct that is 'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.' " *Ross v. Kelly,* 784 F.Supp. 35, 44 (W.D.N.Y.), *aff'd,*970 F.2d 896 (2d Cir.1992) (quoting *Estelle v. Gamble,* 429 U.S. at 102, 105–06). The "deliberate indifference standard embodies both an objective and a subjective prong," both of which the plaintiff must establish. *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994), *cert. denied,*513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995). "First, the alleged deprivation must be, in objective terms, 'sufficiently

serious.' " *Id.* (citations omitted). Second, the defendant "must act with a sufficiently culpable state of mind." *Id.*

With regard to the first element, generally, to be sufficiently serious for purposes of the Constitution, a medical condition must be "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir.1990) (Pratt, J. dissenting) [citations omitted], *accord, Hathaway,* 37 F.3d at 66; *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998).).⁸ Under the subjective component, a plaintiff must also allege facts plausibly suggesting that the defendant acted with "a sufficiently culpable state of mind."*Hathaway,* 37 F.3d at 66. The requisite culpable mental state is similar to that of criminal recklessness. *Wilson v. Seiter,* 501 U.S. 294, 301–03, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). A physician's negligence in treating or failing to treat a prisoner's medical condition does not implicate the Eighth Amendment and is not properly the subject of a Section 1983 action. *Estelle,* 429 U.S. at 105–06, *Chance,* 143 F.3d at 703.⁹

Here, even when construed with the utmost special liberality, Plaintiff's Complaint fails to allege facts plausibly suggesting that Defendants Bill, Carver, and DeBroize acted with deliberate indifference to Plaintiff's serious mental health condition when they declined to discuss the incident of August 8, 2011. There is nothing in the Complaint that even remotely suggests that the requested conversations were integral to Plaintiff's treatment as a convicted sex offender involuntarily committed to CNYPC, or that Defendants' refusal to discuss the incident with Plaintiff when he requested to do so caused Plaintiff to suffer any harm or worsening of his condition. In addition, Plaintiff does not allege that any of these Defendants acted with the requisite culpable state of mind.

Moreover, the statements made by Defendants Bill and Carver that he should "grow up," even if construed such verbal harassment, do not give rise to a cognizable claim that may be pursued under Section 1983. Allegations of verbal harassment are insufficient to support a Section 1983 claim. *Johnson v. Eggersdorf,* 8 F. App'x 140, 143 (2d Cir.2001); *see also Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir.1986) ("[A]llegations of verbal harassment are insufficient to base a § 1983 claim if no specific injury is alleged.").

**\*6** For these reasons, Plaintiff's deliberate indifference claims against Defendants Bill, Carver, and DeBroize are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 127 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Groves v. Davis, Not Reported in F.Supp.2d (2012)
2012 WL 651919

Fed.R.Civ.P. 12(b)(6). Moreover, because the Court cannot imagine how Plaintiff might correct this claim through better pleading, he is not granted leave to attempt to do so in an amended pleading. [19] Rather, this claim is hereby dismissed with prejudice.

**3. Failure to Supervise Claims Against Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan**

To prevail on a claim under 42 U.S.C. § 1983, a defendant must be personally involved in the plaintiff's constitutional deprivation. *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977). Generally, for purposes of 42 U.S.C. § 1983, supervisory personnel may be considered "personally involved" only if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. [11]

Holding a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement. *McKinnon,* 568 F.2d at 934. Rather, a plaintiff must demonstrate " 'a tangible connection between the acts of the defendant and the injuries suffered.' " *Austin v. Pappas,* 04–CV–7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar.31, 2008) (quoting *Bass v. Jackson,* 790 F.2d 260, 263 [2d Cir.1986] ) (other citation omitted). An official's failure to respond to grievance letters from inmates, however, "does not establish supervisory liability." *Watson v. McGinnis,* 964 F.Supp. 127, 130 (S.D.N.Y.1997). [12] Moreover, "the law is clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials." *Pine v. Seally,* 9–CV–1198, 2011 WL 856426, at *9 (N.D.N.Y. Feb.4, 2011). [13]

In his Complaint, Plaintiff alleges in wholly conclusory terms that Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan failed to "adequately train the staff under their supervision and fail[ed] to act within the scope and training of the position and job title they hold."(Dkt. No. 1 at 8.) Plaintiff alleges that he submitted a letter of complaint to Defendant Hogan and wrote to Defendant Nowicki on several occasions expressing concern his complaint had not been responded to, only to be advised that in September, 2011 that an investigation was ongoing. (*Id.* at 6–7.) Plaintiff does

not allege that any of these Defendants personally participated in the alleged assault on August 8, 2011.

Here, even when construed with the utmost special liberality, Plaintiff's Complaint fails to allege facts plausibly suggesting any personal involvement by these Defendants in the alleged used of excessive force on August 8, 2011. As a result, Plaintiff's claims against Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan arising from this incident are *sua sponte* dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Fed.R.Civ.P. 12(b)(6). This dismissal is without prejudice to Plaintiff's right to file an Amended Complaint that corrects the above-described pleading defects, and states a viable claim against these Defendants. The Court notes that, at this early stage of the case, Plaintiff has the right—without leave of the Court—to file an Amended Complaint within the time limits established by Fed.R.Civ.P. 15(a)(1)(B). However, if he seeks to file an Amended Complaint after those time limits, he must file a motion for leave to file an Amended Complaint in accordance with Fed.R.Civ.P. 15(a)(2). In either event, Plaintiff is advised that *any Amended Complaint must be a complete pleading that will replace and supersede the original Complaint in its entirety, and that may not incorporate by reference any portion of the original Complaint. See* N.D.N.Y. L.R. 7.1(a) (4).

*7 Finally, although Plaintiff names Sgt. Sweet as a Defendant in the caption of the complaint and in the listing of the parties, he has not set forth in the Complaint any allegations of fact regarding the conduct of this Defendant complained of. (*See generally* Dkt. No. 1.) As a result, the Complaint fails to state a claim upon which relief may be granted and Sgt. Sweet is dismissed from this action without prejudice to Plaintiff's right to file an Amended Complaint as set forth above.

**IV. MOTION FOR INJUNCTIVE RELIEF**

A preliminary injunction is an "extraordinary remedy that should not be granted as a routine matter." *Patton v. Dole,* 806 F.2d 24, 28 (2d Cir.1986). In most cases, to warrant the issuance of a preliminary injunction, a movant must show (a) irreparable harm and (b) either (1) a likelihood of success on the merits of the claim or (2) sufficiently serious questions going to the merits, and a balance of hardships tipping decidedly in favor of the moving party. *D.D. ex rel. V.D. v. New York City Bd. of Educ.,* 465 F.3d 503, 510 (2d Cir.2006) (quotation omitted)."The purpose of issuing a preliminary injunction is to 'preserve the status quo and prevent irreparable harm until the court has an

Case 9:22-cv-00638-DNH-TWD Document 58 Filed 02/28/25 Page 128 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Groves v. Davis, Not Reported in F.Supp.2d (2012)

2012 WL 651919

opportunity to rule on the ... merits.' " *Candelaria v. Baker*, 00–CV–912, 2006 WL 618576, at *3 (W.D.N.Y. Mar.10, 2006) (quoting *Dewose v. Herrington*, 42 F.3d 470, 471 [8th Cir.1994] ). Preliminary injunctive relief " 'should not be granted unless the movant, by a clear showing, carries the burden of persuasion.' " *Moore v. Consolidated Edison Co. of New York, Inc.*, 409 F.3d 506, 510 (2d Cir.2005) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 [1997] ). "Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances." *Moore*, 409 F.3d at 510 (citing *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992). The same standards govern consideration of an application for a temporary restraining order. *Perri v. Bloomberg*, 06–CV–0403, 2008 WL 2944642, at *2 (E.D.N.Y. Jul.31, 2008) [citation omitted]. The district court has broad discretion in determining whether to grant a preliminary injunction. *Moore*, 409 F.3d at 511.

"The Second Circuit has defined 'irreparable harm' as 'certain and imminent harm for which a monetary award does not adequately compensate,' noting that 'only harm shown to be non-compensable in terms of money damages provides the basis for awarding injunctive relief.' " *Perri*, 2008 WL 2944642, at *2 (citing *Wisdom Import Sales Co., L.L.C. v. Labatt Brewing Co., Ltd.*, 339 F.3d 101, 113–14 [2d Cir.2003] ); *see also Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir.2002) ("To establish irreparable harm, a party seeking preliminary injunctive relief must show that there is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation.") (internal quotation omitted). Speculative, remote or future injury is not the province of injunctive relief. *Los Angeles v. Lyons*, 461 U.S. 95, 111–12, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); *see also Hooks v. Howard*, 07–CV–0724, 2008 WL 2705371, at *2 (N.D.N.Y. Jul.3, 2008) (citation omitted) ("Irreparable harm must be shown to be imminent, not remote or speculative, and the injury must be such that it cannot be fully remedied by monetary damages.").

*8 Plaintiff has submitted a document entitled "Order to Show Cause for Preliminary Injunction and Tempor[ary] Restraining Order."(Dkt. No. 3.) Construed liberally, Plaintiff's submission seeks a temporary restraining order and injunctive relief enjoining Defendants from "submitting and filing false and untrue statements and reports" regarding the August 11, 2011 incident, and to "stop all retaliatory actions against the plaintiff ...." (*Id.* at 1.) Plaintiff also seeks an

"Order of Seperation [sic]" directing that Defendants Davis, Sill, Nicolette, Bill, Carver and DeBroize be "restrained from being within 100 feet from the plaintiff in any form or matter." (*Id.* at 2.)

The Court has reviewed Plaintiff's motion papers thoroughly and considered the claims asserted therein in the light most favorable to Plaintiff, as a *pro se* litigant. Based upon that review, the Court finds that the harm Plaintiff alleges is purely speculative and, therefore, not "irreparable." Plaintiff's motion is supported only by a recitation of the alleged assault in August, 2011. (*Id.* at 1–4.)Plaintiff has not supported the claims of ongoing misconduct set forth in his motion papers with any factual allegations, such as the dates on which the misconduct occurred, the nature of the injuries he claims to have suffered, the identities of the persons responsible for the conduct he seeks to enjoin, or the relationship between those actions and the claims asserted in his Complaint. Simply stated, Plaintiff's alleged fear of future wrongdoing by the Defendants is not sufficient to warrant the extraordinary remedy of preliminary injunctive relief.

The Court further notes that the requested injunctive relief cannot be granted unless there is also proof that Plaintiff has a likelihood of succeeding on the merits of his claim, or evidence that establishes sufficiently serious questions going to the merits of his claim and a balance of hardships tipping decidedly toward him. *See Covino v. Patrissi*, 967 F.2d 73, 77 (2d Cir.1992). Plaintiff has failed to submit *proof or evidence* that meets this standard. Plaintiff's allegations, standing alone, are not sufficient to entitle him to preliminary injunctive relief. *See Ivy Mar Co. v. C.R. Seasons Ltd.*, 907 F.Supp. 547, 561 (E.D.N.Y.1995) ("[B]are allegations, without more, are insufficient for the issuance of a preliminary injunction."); *Hancock v. Essential Resources, Inc.*, 792 F.Supp. 924, 928 (S.D.N.Y.1992) ("Preliminary injunctive relief cannot rest on mere hypotheticals"). Without evidence to support his claims that he is in danger from the actions of anyone at CNYPC, the Court will not credit Plaintiff's conclusory allegations that he will be retaliated against or harmed in the future.

Plaintiff has failed to establish either of the two requisite elements discussed above. As a result, Plaintiff's request for a temporary restraining order and/or injunctive relief is denied.

**V. MOTION FOR APPOINTMENT OF COUNSEL.**

*9 Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 129 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Groves v. Davis, Not Reported in F.Supp.2d (2012)

2012 WL 651919

party. *Hendricks v. Coughlin,* 114 F.3d 390, 392–93 (2d Cir.1997). Instead, a number of factors must be carefully considered by the court in ruling upon such a motion:

> [T]he district judge should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1341 (2d Cir.1994) (quoting *Hodge v. Police Officers,* 802 F.2d 58, 61 [2d Cir.1986] ). This is not to say that all, or indeed any, of these factors are controlling in a particular case.[14] Further, each case must be decided on its own facts. *Velasquez v. O'Keefe,* 899 F.Supp. 972, 974 (N.D.N.Y.1995) (McAvoy, C.J.) (citing *Hodge,* 802 F.2d at 61).

Upon due consideration, the Court finds that the relevant factors weigh decidedly against granting Plaintiff's motion at this time. For example, the Court finds as follows: (1) the case does not present novel or complex issues; (2) it appears to the Court as though, to date, Plaintiff has been able to effectively litigate this action; (3) while it is possible that there will be conflicting evidence implicating the need for cross-examination at the time of the trial, as is the case in many actions brought under 42 U.S.C. § 1983 by *pro se* litigants, "this factor alone is not determinative of a motion for appointment of counsel,"*Velasquez,* 899 F.Supp. at 974; (4) if this case survives any dispositive motions filed by Defendants, *it is highly probable that this Court will appoint trial counsel at the final pretrial conference;* (5) this Court is unaware of any special reasons why appointment of counsel at this time would be more likely to lead to a just determination of this litigation; and (6) Plaintiff's motion for counsel is not accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector.

For these reasons, Plaintiff's motion for the appointment of counsel is denied without prejudice. After the Defendants have responded to the allegations in the Complaint which survive *sua sponte* review, and the parties have undertaken discovery, Plaintiff may file a second motion for the appointment of counsel, at which time the Court may be better able to determine whether such appointment is warranted in this case. Plaintiff is advised that any second motion for appointment of counsel must be accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector.

**\*10 ACCORDINGLY,** it is

**ORDERED** that Plaintiff's motion to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED;**[15] and it is further

**ORDERED** that Plaintiff's motion for injunctive relief (Dkt. No. 3) is **DENIED;** and it is further

**ORDERED** that Plaintiff's motion for appointment of counsel (Dkt. No. 4) is **DENIED without prejudice;** and it is further

**ORDERED** that Plaintiff's claims of deliberate indifference against Defendants Bill, Carver and DeBroize are *sua sponte***DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2) (B)(ii) and Fed.R.Civ.P. 12(b)(6); and it is further

**ORDERED** that Plaintiff's claims against Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan arising from their alleged personal involvement in the August 8, 2011 incident are *sua sponte***DISMISSED without prejudice and with leave to amend** in this action in accordance with Fed.R.Civ.P. 15 (as described above in Part III.B.3. of this Decision and Order), pursuant to 28 U.S.C. § 1915(e)(2)(B) (ii) and Fed.R.Civ.P. 12(b)(6); and it is further

**ORDERED** that Defendant Sweet is *sua sponte***DISMISSED without prejudice and with leave to be reinstated** as a Defendant in this action in accordance with Fed.R.Civ.P. 15, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Fed.R.Civ.P. 12(b)(6); and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is otherwise accepted for filing (i.e., as to the claims against Defendants Davis, Sill, and Nicolette arising from the August 8, 2011 incident); and it is further

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 130 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Groves v. Davis, Not Reported in F.Supp.2d (2012)

2012 WL 651919

**ORDERED** that Plaintiff provide a summons, USM-285 form and a copy of the complaint for Defendant Davis, Sill and Nicollette for service, and upon receipt from Plaintiff of the documents required for service of process, the Clerk shall (1) issue summonses and forward them, along with copies of the Complaint to the United States Marshal for service upon the remaining Defendants, and (2) forward a copy of the summons and Complaint by mail to the Office of the New York State Attorney General, together with a copy of this Decision and Order; and it is further

**ORDERED** that, after service of process on Defendants, a response to the Complaint shall be filed by the Defendants or their counsel as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261–7367. **Any paper sent by a party to the Court**

or the Clerk must be accompanied by a certificate showing that a true and correct copy of it was mailed to all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a certificate of service showing that a copy was served upon all opposing parties or their attorneys will be stricken from the docket .Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify, in writing, the Clerk's Office and all parties or their counsel of any change in Plaintiff's address; his failure to so may result in the dismissal of this action.** All motions will be decided on submitted papers without oral argument unless otherwise ordered by the Court.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 651919

Footnotes

1    This is the fourth civil rights action filed by Plaintiff in this District. Generally, two of these actions arose out of Plaintiff's refusal to consent to a strip search and the subsequent actions taken against Plaintiff as a result of his refusal. See *Groves v. New York*, 09–CV–0406, Decision and Order (N.D.N.Y. filed May 11, 2009) (Hurd, J.) (*sua sponte* dismissing complaint pursuant to 28 U.S.C. § 1915[e][2][B] ); *Groves v. The State of New York*, 9:09–CV–0412, Decision and Order (N.D.N.Y. filed Mar. 26, 2010) (Sharpe, J.) (granting defendants' motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12[b][6] ). The third action alleged numerous violations of Plaintiff's constitutional rights during the period July 23, 2009, and August 26, 2009, and was dismissed without prejudice upon Plaintiff's request in October, 2010. See *Groves v. Maxymillian*, 9:09–CV–1002, Decision and Order (N.D.N.Y. filed Oct. 8, 2010) (Suddaby, J.). As a result, it does not appear that the current action is barred because of res judicata, collateral estoppel, and/or the rule against duplicative litigation.

2    At that time, Plaintiff also filed motions for injunctive relief and for appointment of counsel. (Dkt.Nos.3, 4.)

3    The Court notes that, similarly, Section 1915A(b) directs that a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief."28 U.S.C. § 1915A(b).

4    See *Vega v. Artus*, 610 F.Supp.2d 185, 196 & nn. 8–9 (N.D.N.Y.2009) (Suddaby, J.) (citing Second Circuit cases); *Rusyniak*, 629 F.Supp.2d at 214 & n. 34 (citing Second Circuit cases).

5    See *Vega*, 610 F.Supp.2d at 196, n. 10 (citing Supreme Court and Second Circuit cases); *Rusyniak*, 629 F.Supp.2d at 214 & n. 34 (citing Second Circuit cases).

6    It should be emphasized that Fed.R.Civ.P. 8's plausibility standard, explained in *Twombly*, was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus*, in which (when reviewing a *pro se* pleading) the Court stated, "Specific facts are not necessary" to successfully state a claim under Fed.R.Civ.P. 8(a) (2).*Erickson v. Pardus*, 551 U.S. 89, 93, 127 S.Ct. 2197, 187 L.Ed.2d 1081 (2007) [emphasis added]. That statement was merely an abbreviation of the often-repeated point of law—first offered in *Conley* and repeated in *Twombly*—that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly*, 127 S.Ct. 1965, n. 3 (citing *Conley*, 355 U.S. at 47) [emphasis added]. That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever. Clearly, there must

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 131 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Groves v. Davis, Not Reported in F.Supp.2d (2012)

2012 WL 651919

still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level. See *Rusyniak*, 629 F.Supp.2d at 214 & n. 35 (explaining holding in *Erickson* ).

7    See *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir.1996) ("[W]hile the Supreme Court has not precisely limned the duties of a custodial official under the Due Process Clause to provide needed medical treatment to a pretrial detainee, it is plain that an unconvicted detainee's rights are at least as great as those of a convicted prisoner."); *Walton v. Breeyear*, 05–CV–0194, 2007 WL 446010, at *8, n. 16 (N.D.N.Y. Feb.8, 2007) (Peebles, M.J.) (noting that pretrial detainees enjoy protections under the due process clause of the Fourteenth Amendment parallel to those afforded to sentenced prisoners by the Eighth Amendment); *Vallen v. Carrol*, 02–CV–5666, 2005 WL 2296620, at ——8–9 (S.D.N.Y. Sep.20, 2005) (finding that the Eighth Amendment standard of "deliberate indifference" is the correct one for Section 1983 claims brought by involuntarily committed mental patients based on alleged failures to protect them that violated their substantive due process rights); *Bourdon v. Roney*, 99–CV–0769, 2003 WL 21058177, at *10 (N.D.N.Y. Mar.6, 2003) (Sharpe, M.J.) ("The standard for analyzing a pretrial detainee's Fourteenth Amendment [conditions of confinement] claim is the same as the Eighth Amendment standard.").

8    Relevant factors informing this determination include whether the plaintiff suffers from an injury that a "reasonable doctor or patient would find important and worthy of comment or treatment," a condition that "significantly affects" a prisoner's daily activities, or "the existence of chronic and substantial pain." *Chance*, 143 F.3d at 702.

9    Thus, a physician who "delay[s] ... treatment based on a bad diagnosis or erroneous calculus of risks and costs" does not exhibit the mental state necessary for deliberate indifference. *Harrison*, 219 F.3d at 139. Likewise, an inmate who disagrees with the physician over the appropriate course of treatment has no claim under Section 1983 if the treatment provided is "adequate." *Chance*, 143 F.3d at 703. The word "adequate" reflects the reality that "[p]rison officials are not obligated to provide inmates with whatever care the inmates desire. Rather, prison officials fulfill their obligations under the Eighth Amendment when the care provided is 'reasonable.' " *Jones v. Westchester Cnty. Dept. of Corr.*, 557 F.Supp.2d 408, 413 (S.D.N.Y.2008). In addition, "disagreements over medications, diagnostic techniques (e .g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention are not adequate grounds for a section 1983 claim." *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F.Supp.2d 303, 312 (S.D.N.Y.2001). However, if prison officials consciously delay or otherwise fail to treat an inmate's serious medical condition "as punishment or for other invalid reasons," such conduct constitutes deliberate indifference.*Harrison*, 219 F.3d at 138.

10    The Court notes that, generally, leave to amend pleadings shall be freely granted when justice so requires. Fed.R.Civ.P. 15(a). However, an opportunity to amend is not required where amendment would be futile.*John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir.1994).*John Hancock Mut. Life Ins. Co.*, 22 F.3d at 462. The Second Circuit has explained that "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend."*Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir.1993); see *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir.2000) ("The problem with [Plaintiff's] cause of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied."). This rule is applicable even to *pro se* plaintiffs. See, e.g., *Cuoco*, 222 F.3d at 103.

11    *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995) (adding fifth prong); *Wright*, 21 F.3d at 501 (adding fifth prong); *Williams v. Smith*, 781 F.2d 319, 323–324 (2d Cir.1986) (setting forth four prongs).

12    See also *Gillard v. Rosati*, 08–CV–1104, 2011 WL 4402131, at *7 (N.D.N.Y. Aug.22, 2011) (Peebles, J.) ("It is well-established that without more, 'mere receipt of letters from an inmate by a supervisory official regarding a medical claim is insufficient to constitute personal liability.' [internal quotation marks and brackets omitted] ); *Greenwaldt v. Coughlin*, 93–CV–6551, 1995 WL 232736, at *4 (S.D.N.Y. Apr.19, 1995) ("it is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations."); *Clark v. Coughlin*, 92–CV 0920, 1993 WL 205111, at *5 n. 2 (S.D.N.Y. Jun.10, 1993) ("Courts in this jurisdiction have consistently held that an inmate's single letter does not constitute the requisite personal involvement in an alleged constitutional deprivation to trigger the Commissioner's liability.")

13    See also *Bernstein v. N.Y.*, 591 F.Supp.2d 448, 460 (S.D.N.Y.2008) ("Courts within the Second Circuit have determined that there is no constitutional right to an investigation by government officials.")[internal quotation marks, brackets and ellipsis omitted] ).

14    For example, a plaintiff's motion for counsel must always be accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector, and such a motion may be denied solely on the failure of the plaintiff to provide such documentation. See *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir.1994); *Cooper v. Sargenti Co., Inc.*, 877 F.2d 170, 172, 174 (2d Cir.1989) [citation omitted].

**Trapani v. Pullen, Not Reported in Fed. Supp. (2016)**

2016 WL 1295137

---

Groves v. Davis, Not Reported in F.Supp.2d (2012)

2012 WL 651919

15    Plaintiff should note that he will still be required to pay fees that he may incur in this action, including but not limited to copying and/or witness fees.

---

End of Document                                    © 2016 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 133 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Hare v. Hayden, Not Reported in F.Supp.2d (2011)

2011 WL 1453789

2011 WL 1453789
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Susan Lee HARE, Plaintiff,
v.
James HAYDEN et al., Defendants.

No. 09 Civ. 3135(RWS).
|
April 14, 2011.

*OPINION*

SWEET, District Judge.

*1 Defendants Reverend Maria Lopez ("Lopez"), Deputy Superintendant James Hayden ("Hayden"), and Grievance Supervisor Kim Watson ("Watson") (collectively, "Defendants") have filed motions for summary judgment. For the reasons stated below, these motions are granted.

**Prior Proceedings**

Plaintiff Susan Lee Hare ("Hare" or "Plaintiff") filed her complaint on April 1, 2009, alleging misconduct by Superintendant Ada Perez, Superintendent Elizabeth Williams, Hayden, Lopez, and Watson. Defendants Perez, Williams, Hayden, and Watson answered on September 16, 2009. Defendant Lopez answered on August 31, 2010. On November 22, 2010, the Court signed off on the stipulated dismissal of Defendants Perez and Williams.

Defendant Lopez and Defendants Hayden and Watson filed separate motions for summary judgment on December 13, 2010 and December 14, 2010, respectively. These motions were heard on submission on January 19, 2011.

**Statement of Facts**

In August 2008, Plaintiff was programmed as a Catholic clerk assisting Father O'Shea, the Catholic Chaplain at Bedford Hills Correctional Facility ("BHCF"). She was programmed for both the morning and afternoon shifts. *See* Deposition of Susan Hare, attached to Declaration of John Knudsen ("Knudsen Dec") as Exhibit A ("Hare Dep."), at 15. On August 14, 2008, a meeting occurred between Plaintiff, Father O'Shea, and Hayden. At that meeting, Father O'Shea recommended that Plaintiff remain the Catholic clerk after his retirement on August 15, and Hayden agreed that Plaintiff remain in the position. Affirmation of James Hayden ("Hayden Aff."), ¶ 3, attached to Knudsen Dec. as Exhibit C.

Plaintiff then sent a letter dated August 16, 2008 to Hayden in which she made several allegations against Reverend Lopez, including that Lopez met with Hare on August 15, that Lopez ordered the moving of a cabinet with Catholic items, and that Lopez ordered her clerks to pack up the Catholic items in the Sacristy into bags and put them out for the trash. *See* Hare Letter dated Aug. 18, 2008, attached to Knudsen Dec. at Exhibit B at Hare 27–31. The underlying theme of Plaintiff's letter appears to have been that Reverend Lopez was using her position to defile the Catholic religion. *See Id.* at 30 ("the Catholic (sic) have been defiled by this woman and her community.") In response to Plaintiff's letter and to address the allegations, Hayden set up a meeting on August 18, 2008 with Plaintiff, Lopez and two other inmates, Tuttle and Ramsey. Hayden Aff., ¶ 5.

The August 18 meeting between Plaintiff and Reverend Lopez was very contentious. Hayden Aff. ¶ 6. During the meeting, Hayden attempted to verify the allegations made in Plaintiff's August 16 letter. *See* Hare 110–11. He could not substantiate any of Plaintiff's allegations and determined that they were largely hearsay. *Id.*; Hayden Aff., ¶ 6. According to Hayden, Lopez did not attempt to attack Plaintiff during that meeting. Hayden Aff. ¶ 7; Affirmation of John Ruiz, ¶ 2, attached to Knudsen Dec as Exhibit D.

*2 Plaintiff contends that on August 18, Lopez verbally abused and physically threatened her in the chapel. Pl. Opp. Aff., at 4–7. Plaintiff claims that this interaction led to an investigation which prevented her from working as Catholic clerk. *Id.* at 4. It is unclear whether this interaction was separate from the August 18, 2008 meeting.

Plaintiff filed a grievance alleging that Reverend Lopez verbally harassed her during the August 18 meeting. *See* Hare 104–105. Hayden notified the Superintendent's Office of his personal observations during that meeting, which were incorporated into the Superintendent's response. *See* Hare 103; Hayden Aff., ¶ 8. Following the August 18 meeting, Plaintiff did not appear for her program assignment as Catholic clerk for two weeks, after which time Reverend Lopez forwarded a memorandum to counselor Greenfield on September 2, 2008, requesting that Plaintiff be removed

**Trapani v. Pullen, Not Reported in Fed. Supp. (2016)**

2016 WL 1295137

Hare v. Hayden, Not Reported in F.Supp.2d (2011)

2011 WL 1453789

from her position as Catholic clerk and noting that no new Catholic clerk should be named until a Catholic Priest had been hired. *See* Hare 42. Plaintiff contends that this report was false and that she showed up for work but was sent away. Pl. Opp. Aff. at 9. Counselor Greenfield contacted Hayden to discuss Lopez's request for Plaintiff's removal. Hayden Aff., ¶ 9. According to Hayden, Plaintiff was removed from her Catholic clerk position by him on September 8, 2008, at the latest. Hayden Aff., ¶ 11. Plaintiff contends that she was not removed until September 15, 2008. Pl. Opp. Aff. at 9.

Hayden claims to have removed Plaintiff from her position for multiple reasons. Initially, it was reported that plaintiff failed to report for two weeks for programming after Father O'Shea retired. Hayden Aff., ¶ 10; Hare 42. Also, Hayden determined that Plaintiff was being disruptive to the provision of Catholic services at Bedford Hills. Hayden Aff., ¶ 10. Hayden had investigated plaintiff's numerous allegations about Reverend Lopez and her alleged interference with the Catholic programs and could not substantiate any of them. *Id.* For example, Hayden states that Plaintiff was telling inmates and outside civilians in the Catholic community that Lopez had the cabinet with Catholic items in it moved, and had articles removed from the Sacristy. *Id.* Hayden had received a call from Deacon Lou Santore, a civilian volunteer, who had been told these claims by Plaintiff and was upset. Hayden investigated these claims and determined them to be inaccurate. *Id.* Instead, he determined that the cabinet was moved by a volunteer from the long-term inmate committee, and that Plaintiff appeared to be the only person with the combination to the Sacristy. *Id.*: Affirmation of Konwillia Magoo, ¶ 4, attached to Knudsen Dec. as Exhibit E. As part of his responsibilities as Deputy Superintendent of Programs, Hayden states that he could not allow inmates to use their programming position to disrupt the inmate and civilian volunteer populations. *Id.*

*3  Additionally, Hayden discussed this issue with all the other chaplains at the facility, who agreed that Plaintiff should no longer remain as the Catholic clerk. Hayden Aff., ¶ 11. This included Sister Mary Ann Collins, who was a part-time employee at the facility and apparently effectively acted as head of the Catholic community there. *Id.* Finally, Hayden determined that Plaintiff and Reverend Lopez were not able to work together. *Id.* Plaintiff drafted a handwritten grievance complaint on September 4, 2008, in which she complained that Reverend Lopez was retaliating against her because of her prior grievance, and asked that she "stop being harassed and retaliated against by Rev. Lopez."Hare 40–41. Defendant

Watson responded to that grievance, noting that Plaintiff no longer worked as a clerk and, thus, Reverend Lopez could no longer be harassing her. Hare 39. Watson states that this was an attempt by her to informally resolve Plaintiff's grievance. Affirmation of Kim Watson ("Watson Aff."), at ¶ 3, attached as Exhibit F to Knudsen Dec. Plaintiff did not request to have the grievance formally processed, but if she had, Watson claims she would have done so. *Id.* Plaintiff contends that she took Watson's response to mean that she could not file a grievance.

**Summary Judgment Standard**

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."Fed.R.Civ.P. 56(c). In considering a summary judgment motion, the Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inference in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party.".*Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir.1995) (internal citations and quotation marks omitted); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Affidavits submitted in opposition to summary judgment must be based on personal knowledge from a competent source, and "set forth such facts as would be admissible in evidence."*Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d Cir.2004) (quoting Fed.R.Civ.P. 56(c)). Hearsay or other evidence that would be inadmissible at trial cannot be credited to defeat a summary judgment motion. *See Id.* at 219 ("an affidavit's hearsay assertion that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial.").

**Plaintiff's Retaliation Claims are Dismissed**

In order to state a valid retaliation claim, a plaintiff must allege that her actions were protected by the Constitution, and that such "conduct was a substantial or motivating factor for the adverse actions taken by prison officials."*Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir.2003) (internal citations omitted). There must be a "causal connection between the protected [conduct] and the adverse action."*Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir.2004) (internal citation and quotations omitted)."A plaintiff cannot state a retaliation claim in wholly conclusory terms, but rather, must provide a pleading that is 'supported by specific and detailed factual allegations.' " *Anderson v. Lapolt*, No. 07 Civ. 1184, 2009

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 135 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)
2016 WL 1295137

Hare v. Hayden, Not Reported in F.Supp.2d (2011)
2011 WL 1453789

WL 3232418, at *5 (N.D.N.Y. Oct. 1, 2009) (quoting *Friedl v. City of New York,* 210 F.3d 79, 85–86 (2d Cir.2000)); *see also Sawyer v. Jowers,* No. 08 Civ. 186, 2008 WL 4791557, at *6 (N.D.Tex. Oct. 31, 2008) ("To state a claim of retaliation, the inmate must allege more than his personal belief that he is the victim of retaliation. Conclusory allegations of retaliation are not sufficient; the plaintiff must produce direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred") (internal citations omitted); *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (if plaintiff's claim of retaliation had been based on circumstantial evidence alone, and not also supported by direct evidence of defendant's admission, Court would be inclined to grant summary judgment); *Bussey v. Phillips,* 419 F.Supp.2d 569, 585 (S.D.N.Y.2006) ("In order to survive summary judgment on a retaliation claim, a plaintiff bears the burden of showing two genuine issues of material fact: first, that the plaintiff engaged in constitutionally protected conduct, and, second, that the conduct was a substantial or motivating factor for the adverse actions taken by prison officials.").

*4 Even where a plaintiff meets her burden of establishing a prima facie retaliation claim, it is still subject to dismissal if sufficient other non-retaliatory reasons to take the adverse action were present. *See Bussey,* 419 F.Supp.2d at 585; *Gayle v. Gonyea,* 313 F.3d 677, 682 (2d Cir.2002). Furthermore, inmates have no right, constitutional or otherwise, to any particular job or assignment within a prison. *Gill v. Mooney,* 824 F.2d 192, 194 (2d Cir.1987); *Hodges v. Jones,* 873 F.Supp. 737, 745 (N.D.N.Y.1995) (citing *Lane v. Reid,* 575 F.Supp. 37, 39 (S.D.N.Y.1983). Inmates can be removed from prison assignments for virtually any reason, provided that such decisions are not based on the inmate's race or religion.*Bussey,* 419 F.Supp.2d at 589 (S.D.N.Y.2006).

It should be noted that "courts must approach prisoner claims of retaliation with skepticism and particular care," as such claims are "easily fabricated" and run the risk of "unwarranted judicial intrusion into matters of general prison administration."*Dawes v. Walker,* 239 F.3d 489, 491 (2d Cir.2001), overruled on other grounds in *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002).*See also Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996) (noting that prisoner retaliation claims are " 'prone to abuse' because prisoners can claim retaliation for every decision they dislike.") (quoting *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983)); *Colon,* 58 F.3d at 872 ("because we recognize both the near inevitability of decisions and actions by prison officials to

which prisoners will take exception and the ease with which claims of retaliation may be fabricated, we examine prisoners' claims of retaliation with skepticism and particular care."); *Gill,* 824 F.2d at 194 (because of the potential for abuse, the Court of Appeals requires a "higher level of detail in pleading [retaliation claims]").

Plaintiff contends that she was removed from her position as Catholic clerk by Hayden in retaliation for her complaints against Lopez. [1] There is no dispute that Plaintiff's complaints against Lopez are protected speech and that her removal from her position as Catholic clerk was an adverse action; however, Plaintiff fails to establish the causal link between her complaints and her dismissal, particularly in light of legitimate non-discriminatory reasons for her dismissal given by Hayden.

As a general matter, it is difficult to establish one defendant's retaliation for complaints against another defendant. *See Wright v. Goord,* 554 F.3d 255, 274 (2d Cir.2009) (dismissing retaliation claim against a corrections officer when only alleged basis for retaliation was complaint about a prior incident by another corrections officer). Here, even giving Plaintiff every reasonable inference, Plaintiff fails to establish that Hayden had a motive to retaliate arising from her complaints against Lopez, and that Hayden's retaliatory motive formed the basis for her dismissal.

*5 To the extent Plaintiff contends that Hayden was incompetent or covering up Lopez's misconduct, the evidence before the Court indicates otherwise. Hayden investigated Plaintiff's claims against Reverend Lopez. The August 18, 2008 meeting between Plaintiff, Hayden and Lopez was called in order for Hayden to investigate Plaintiff's allegations in her August 16 letter, *see* Hayden Aff., ¶ 5, and at that meeting, Hayden questioned both Plaintiff and Lopez to determine the veracity of Plaintiff's allegations. *See* Hare 110–111; Hare Dep., at 73–74. Plaintiff's subsequent grievance on August 21 alleged that Lopez mistreated her during the August 18 meeting, a claim for which there was no need for Hayden to investigate since he was present for the meeting and knew what had and had not occurred. *See* Hayden Aff.,* 8. Finally, there is no evidence to indicate that Hayden was "covering up" for Lopez, and the record indicates that Hayden reasonably found Plaintiff's complaints against Lopez to be meritless. Plaintiff's allegations of a cover up are conclusory and are insufficient to meet Plaintiff's burden for a retaliation claim at the summary judgment stage. *See Graham,* 89 F.3d at 79.

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Hare v. Hayden, Not Reported in F.Supp.2d (2011)

2011 WL 1453789

Even if the Court were persuaded that there was a causal connection between Plaintiff's complaints against Lopez and her dismissal for her position as Catholic clerk, Hayden had valid, non-discriminatory reasons for dismissing her. "A finding of sufficient permissible reasons to justify state action is 'readily drawn in the context of prison administration where ... prison officials have broad administrative and discretionary authority.'" *Graham*, 89 F.3d at 79 (quoting *Lowrance v. Achtyl*, 20 F.3d 529, 535 (2d Cir.1994)). Here, Hayden identified four legitimate reasons for Plaintiff's removal: (1) she failed to show up for work for 2 weeks [2]; (2) her behavior disrupted the overall provision of Catholic services at Bedford Hills; (3) her removal was recommended by all the other chaplains, including the part-time chaplain, Sister Mary Ann Collins; and (4) the inability of Plaintiff and Lopez to work together. Hayden Aff., ¶¶ 10–11.

Plaintiff's allegations that Lopez independently retaliated against her, by preventing her from returning to her program assignment, falsely reporting her absence from her job, and otherwise acting inappropriately toward her, are belied by Plaintiff's acknowledgement that Lopez never made any statement revealing that she engaged in any conduct with the intent to retaliate against Plaintiff for writing complaint letters or for any other act by Plaintiff. (Hare Dep. at 135). Plaintiff can only point to her conclusory assumptions of Lopez's motive and has failed to adequately substantiate her claims to survive this motion for summary judgment.

Furthermore, even if Plaintiff did establish that Lopez filed a false report in retaliation for her complaints, Plaintiff cannot establish that the adverse action of her dismissal from her position as Catholic clerk by Hayden arose from that allegedly false report. As discussed above, Hayden chose to dismiss Plaintiff for three other legitimate reasons and would have done so regardless of the report. Hayden Aff., ¶¶ 10–11. *See Graham*, 89 F.3d at 79 (quoting *Lowrance*, 20 F.3d at 535).

*Plaintiff's Claim that Lopez Filed a False Misbehavior Report is Dismissed*

*6  To the extent that Plaintiff claims Lopez falsely reported her absence from work for two weeks, this allegation does not support a claim. "The Second Circuit has held that the issuance of false misbehavior reports against an inmate by corrections officers is insufficient on its own to establish a denial of due process..." [3] *Faison v. Janicki*, No. 03 Civ. 6475, 2007 WL 529310, at *4 (W.D.N.Y. Feb. 14,

2007) (citing *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir.1997)). *See also Moore v. Casselberry*, 584 F.Supp.2d 580, 582 (W.D.N.Y.2008) ("There is no basis for a constitutional claim alleging the mere filing of a false report"); *Flemings v. Kinney*, No. 02 Civ. 9989, 2004 WL 1672448, at *3 (S.D.N.Y. Jul. 27, 2004) ("[i]t is well settled that 'a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report'") (quoting *Boddie*, 105 F.3d at 862). Furthermore, the record does not support Plaintiff's assertion that Lopez's report was false. Officers Ruiz and Magoo both affirm that they were never instructed by Lopez not to allow Plaintiff to enter the chapel. Ruiz Aff., ¶ 3; Magoo Aff., ¶ 3. Lopez denies having falsified the report.

*Plaintiff's Claim that She was Unable to File a Grievance is Dismissed*

Plaintiff alleges that she was denied the right to file a grievance when Watson responded to Plaintiff's September 4, 2008 grievance, which requested that Lopez stop retaliating against her, by noting that Plaintiff no longer worked as a clerk, and thus, Reverend Lopez could not retaliate against her. *See* Hare 39–41. Watson claims to have sent this memorandum to Plaintiff in an attempt to informally resolve the grievance, which is part of Watson's responsibilities, Watson Aff. ¶ 3, but Plaintiff alleges she understood the memorandum to indicate that she was not allowed to file a grievance. Watson claims she would have formally filed the grievance if Plaintiff had contacted her and requested that it be formally filed. *Id.*

While there is a dispute of fact as to whether Plaintiff was allowed to file a grievance, Plaintiff has no constitutionally protected right to file a grievance, and thus does not have a cognizable § 1983 claim. *See Shell v. Brzezniak*, 365 F.Supp.2d 362, 370 (W.D.N.Y.2005) ("[I]nmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does not give rise to a cognizable § 1983 claim") (citing *Cancel v. Goord*, No. 00 Civ.2042, 2001 WL 303713, *3 (S.D.N.Y. Mar. 29, 2001)); *Mastroianni v. Reilly*, 602 F.Supp.2d 425, 437 (E.D.N.Y.2009) ("[T]he grievance procedure or lack thereof cannot itself form the basis of a Section 1983 claim because there is no constitutional right to a grievance mechanism") (citing *Swift v. Tweddell*, 582 F.Supp.2d 437, 445–46 (W.D.N.Y.2008)). Notably, Defendants do not argue that Plaintiff has failed to exhaust her claim of retaliation because this grievance was not processed through the entire grievance system.

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Hare v. Hayden, Not Reported in F.Supp.2d (2011)

2011 WL 1453789

*Plaintiff's Claims of Verbal Abuse are Dismissed*

**\*7** Plaintiff accuses Lopez of approaching her on August 18, 2008 "in a menacing way, raising her hands toward plaintiff from behind in a motion as if to strangle plaintiff" (Pl. Opp. Aff. at 7) and asserts that Lopez "screamed" at her and called her a "liar" (Hare Dep. at 57) or otherwise spoke to her in an abusive manner. While Lopez denies Hare's allegations regarding her conduct, even when the evidence concerning them is viewed most favorably to Plaintiff, these allegations do not support an action pursuant to § 1983. The Eighth Amendment proscribes the " 'unnecessary and wanton infliction of pain' " on prisoners by prison officials. *Boddie*, 105 F.3d at 861 (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). Hare does not claim that any actual physical harm was caused to her by Lopez, and she acknowledged in her deposition testimony that, on the occasion when she alleges Lopez approached her in a physically threatening manner, "[m]y back was to her" (Hare Dep. at 61), and "I didn't see her...." (Hare Dep. at 58). According to Plaintiff, Officer Ruiz "stopped the whole incident" before any assault could take place. (Hare Dep. at 57).

It is undisputed that there was no actual assault, and Plaintiff's evidence, viewed most favorably to her, establishes nothing more than verbal abuse. As the Court held in *Aziz Zarif Shabazz v. Pico*, 994 F.Supp. 460, 474 (S.D.N.Y. 1998):

[V]erbal harassment or profanity alone, "unaccompanied by any injury, no matter how inappropriate, unprofessional, or reprehensible it might seem," does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983. *Del Carpio v. Walker*, No. 95 Civ. 1502(RSP) (GJD), 1997 WL 642543, at \* 6 (N.D.N.Y. Oct. 15, 1997) (citing *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir.1986) (per curiam); *Brown v. Croce*, 967 F.Supp. 101, 104 (S.D.N.Y.1997)); *see Ramirez v. Holmes*, 921 F.Supp. 204, 210 (S.D.N.Y.1996); *Almoit v. Cleary*, 913 F.Supp. 160, 165–66 (W.D.N.Y.1996); *Jermosen v. Coughlin*, 878 F.Supp. 444, 449 (N.D.N.Y.1995) ( "Although indefensible and unprofessional, verbal threats or abuse are not sufficient to state a constitutional violation cognizable under § 1983."); *Beal v. City of New York*, No. 92 Civ. 0718(KMW), 1994 WL 163954, at \*6 (S.D.N.Y. Apr. 22, 1994), *aff'd*,89 F.3d 826, 1995 WL 722263 (2d Cir.1995); *Hurdle v. Ackerhalt*, No. 92–CV–1673, 1993 WL 71370, at \*1–2 (N.D.N.Y. Mar. 8, 1993) (allegations of threats

and harassment do not rise to the level of a Constitutional violation).

Plaintiff's claim fails because she does not allege that she suffered any physical injury. *See Bouknight v. Shaw*, No. 08 Civ. 5187, 2009 WL 969932, at \*3 (S.D.N.Y. Apr. 6, 2009) ("Verbal harassment and name calling, absent physical injury, are not constitutional violations cognizable under § 1983.") (citing *Purcell*, 790 F.2d at 265).*See also Thompson v. Carter*, 284 F.3d 411, 418 (2d Cir.2002) ("We agree with the majority of our sister circuits that [42 U.S.C. § ] 1997e(e) applies to claims in which a plaintiff alleges constitutional violations so that the plaintiff cannot recover damages for mental or emotional injury for a constitutional violation in the absence of a showing of actual physical injury.") Rather, Plaintiff contends that she suffered only "mental anguish" as a consequence of the Defendants' actions.

**\*8** "Under certain circumstances, the intentional infliction of psychological pain may constitute an Eighth Amendment violation, so long as the pain is not *de minimus.'Shabazz*, 994 F.Supp. at 475. Plaintiff stated in her deposition that she was affected by Lopez's conduct particularly because she was a domestic violence victim and because Lopez came from a position of trust. (Hare Dep. at 139). However, Plaintiff admitted during her deposition that, notwithstanding the availability of mental health services, she never sought such services, but attained sufficient relief from her distress by speaking about it with a chaplain. (Hare Dep. at 139–40). Based on Plaintiff's allegations and record, Plaintiff's mental pain was *de minimus.* See *Shabazz*, 994 F.Supp. at 475 (mental anguish caused by repeated use of racial slurs was *de minimus* ); *Jermosen v. Coughlin*, No. 87 Civ. 6267, 1993 WL 267357, at \*6 (S.D.N.Y. July 9, 1993), *aff'd*,41 F.3d 1501 (2d Cir.1994) (*de minimus* psychological harm when correctional officers "approached plaintiff with their nightsticks raised in a threatening position" before conducting a strip frisk).

*Plaintiff's Claims for Infringement of Her Religious Rights are Dismissed*

**a. The Alleged Removal of Religious Objects from the Sacristy**

Hare's complaint discusses at length the alleged removal of religious articles from the Catholic sacristy at BHCF, but she has acknowledges that she did not observe anyone removing those articles, and that she has no personal knowledge regarding who is responsible for any such conduct. (Hare Dep. at 137; Pl. Opp. Aff. at 7). Lopez, for her part, denies any

Case 9:22-cv-00638-DNH-TWD   Document 58   Filed 02/28/25   Page 138 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)
2016 WL 1295137

Hare v. Hayden, Not Reported in F.Supp.2d (2011)

2011 WL 1453789

involvement in or knowledge of this occurrence. (Lopez Aff., ¶¶ 14–15). It appears that Plaintiff's only basis for claiming that Lopez had any involvement in the alleged removal of the articles in question is her assertion that she was told by Officer Magoo and through a grapevine of other inmates that Lopez had authorized other inmates to take this action. (Hare Dep. at 37; Pl. Opp. Aff. at 9). This hearsay claim is not corroborated by Officer Magoo; in fact, he has affirmed that he did not make such a statement to Hare. (Magoo Aff., ¶ 4). Likewise, Inmate Rose Ramsey, who allegedly told Lucy Tuttle, who allegedly told Plaintiff, about Lopez's role in the removal of articles for the Catholic service has not provided an affidavit corroborating Plaintiff's contention. Thus, Hare does not present admissible evidence to support her allegation that Lopez caused the removal of items from the Catholic sacristy. *See Finnegan v. Board of Educ. of Enlarged City School Dist. of Troy,* 30 F.3d 273, 274 (2d Cir.1994) (hearsay that would not be admissible at trial cannot be relied upon in opposition to a motion for summary judgment). Without establishing Lopez's involvement in the alleged removal of Catholic items, Plaintiff has not established a claim. As the Court of Appeals has recognized, "[b]ecause Section 1983 imposes liability only upon those who actually cause a deprivation of rights, 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Blyden v. Mancusi,* 186 F.3d 252, 264 (2d Cir.1999) (quoting *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994)).

*9 Even if Plaintiff had established that Lopez bears responsibility for the removal of those articles from the sacristy, the conduct she alleges would not establish any violation of Hare's personal rights. She does not claim that any of the articles in question belonged to her, and, in the absence of specific criteria that Hare does not allege here, a plaintiff does not have standing to assert the constitutional rights of others. *Camacho v. Brandon,* 317 F.3d 153, 159 (2d Cir.2003) ("A plaintiff may assert the constitutional claims of a third party if the plaintiff can demonstrate: (1) injury to the plaintiff, (2) a close relationship between the plaintiff and the third party that would cause plaintiff to be an effective advocate for the third party's rights, and (3) 'some hindrance to the third party's ability to protect his or her own interests.' ") (quoting *Campbell v. Louisiana,* 523 U.S. 392, 397 (1998)).*Cf. Hudson v. Palmer,* 468 U.S. 517, 547 n. 13 (1984) (Stevens J., conc. in part and diss. in part) ("A prisoner's possession of ... personal property relating to religious observance, such as a Bible or a crucifix, is surely protected by the Free Exercise Clause of the First

Amendment"). Thus, Hare's allegations regarding the alleged removal and desecration of objects from the Catholic sacristy does not give rise to any genuine dispute regarding facts that would be material to her § 1983 action against Lopez.

**b. The Alleged Denial of Plaintiff's Right to Practice Her Religion**

Plaintiff alleges that Lopez impermissibly infringed upon her right to practice religion. She does not allege any involvement in this deprivation by Hayden or Watson, so this claim is dismissed as to them.

In her complaint, Plaintiff asserts denial of "the right to practice Freedom of Religion," but she does not specify how this alleged violation of her civil rights occurred. In her affirmation opposing the summary judgment motions[4], Plaintiff contends that Lopez prevented Plaintiff from continuing her Catholic video group and curtailed "all Catholic programs, which precluded plaintiff from participating in them, as they no longer were running."Pl. Opp. Aff. at 8. Also, referring to Lopez's alleged verbal abuse of Plaintiff on August 8, 2011, Plaintiff claims that "Lopez's actions effectively precluded any operations of religious programs for Catholic inmates."Pl. Opp. Aff. at 6. These assertions are insufficient to place into issue facts that, if resolved in Plaintiff's favor, would entitle her to relief pursuant to Section § 1983.

To establish a free exercise claim under the First Amendment, a plaintiff must demonstrate that state action substantially burdened her observation of a "central religious belief" without a "compelling government interest" justifying the burden. *Skoros v. City of New York,* 437 F.3d 1, 39 (2d Cir.2006) (quoting *Jimmy Swaggart Ministries v. Bd. of Equalization,* 493 U.S. 378, 384–85 (1990)). An inmate's right to the free exercise of religion is "subject to limitations that arise both as a consequence of being incarcerated and from 'valid penological objectives.' " *Harris v. Lord,* 957 F.Supp. 471, 474 (S.D.N.Y.1997) (quoting *O'Lone v. Estate of Shobazz,* 482 U.S. 342 (1987)).

*10 With regard to the alleged curtailment of programs such as the "Praise Dance" or the video activities that she sought to organize, Plaintiff does not claim that these programs were "central or important" to the practice of her religion, an essential component of a claim that her religious beliefs were "substantially burdened." *Ford v. McGinness,* 352 F.3d 582, 593–94 (2d Cir.2003).

2016 WL 1295137

Hare v. Hayden, Not Reported in F.Supp.2d (2011)

2011 WL 1453789

Hare's claims regarding the "suspension" of Catholic programs appear to be linked with her role in leading such programs. Plaintiff's papers and testimony recognize, however, the Catholic Chaplain, Father O'Shea, retired in August of 2008. The subsequent temporary suspension of programs that he had supervised cannot be deemed an unreasonable infringement on Plaintiff's practice of her religion, but simply a consequence of the institution's temporary lack of a Catholic Chaplain. Plaintiff's claim appears to be premised on her assumption that, even in Father O'Shea's absence, she should have been permitted to continue running these programs. (*See* Hare Dep. at 105 ("Even if I was not a clerk, I should have been allowed to run the program")). However, as discussed above, inmates have no right to any particular position or assignment at a correctional institution. *See Gill*, 824 F.2d at 194.

Plaintiff's claim that Lopez prevented her from attending Catholic Mass and other religious programming, to the extent that she asserts it, is not supported by the record and does not survive summary judgment even when all reasonable inferences are made in her favor. At her deposition she testified as follows:

Q. In general, do you recall at any time when you were trying to go to Catholic mass where you were not allowed to go?

A. If [Lopez] knew I was in there, then I was harassed. If she told the officer this Sunday she found out, she would tell that officer. If that officer was there, then I would be harrassed.

Q. How were you harassed?

A. Because I was told to leave, I'm not allowed to be there.

Q. How many times, to the best of your recollection, were you told that you had to leave the Catholic mass?

A. I would say a couple of times. Like I said, I got tired of being harrassed, and I just stopped going.

...

Q. What about programming, were you allowed to go to Catholic programming?

A. No. Those were during the day. That's when she really got me. Then on Tuesday night she was there late. She was there until 8 o'clock at night. That was her late night. She

made sure that the officer knew I was not supposed to be there.

(Hare Dep. at 106–07).

Plaintiff does not identify the officers involved or specify the dates on which she was allegedly told to leave the chapel. Plaintiff also provides no basis for her claim that, when they allegedly told her to leave, the officers were acting at the direction of Lopez, and does not claim to have observed Lopez giving any officer such instructions. Officers Ruiz and Magoo, who were stationed outside the 112 Chapel during the period in question, have affirmed that they never received any such instruction from Lopez. Ruiz Aff. ¶ 3; Magoo Aff. ¶ 3. Thus, Plaintiff has not presented any admissible evidence that would support her claim that Lopez prevented her from attending Mass or other religious services, and the record suggests that she was not denied entry to Mass.

**\*11** Moreover, it is unclear whether being told to leave the chapel "a couple of times" (Hare Dep. at 107)—even when the evidence is viewed most favorably to Plaintiff— rises to the level of a "substantial burden" on Hare's religious freedom. It is undisputed that Hare's right to free exercise of religion includes the right to attend religious services. *O'Lone*, 482 U.S. 342, 348 (1987). However, that right is not unlimited or absolute, but is subject to limitations that arise both as a consequence of being incarcerated and from "valid penological objectives." *Id.* Because Plaintiff provides no particulars as to the dates and times when she was allegedly prevented from attending Mass, and does not identify the officers who allegedly prevented her from doing so, her claims are too vague to permit the Court to determine both that the alleged removal actually occurred and, if it did, whether it was justified by a compelling government interest. *See Skoros*, 437 F.3d at 39.

In view of all of these circumstances, the Court concludes that Hare's claim that her freedom of religion was infringed is not based on facts that would entitle her to relief pursuant to § 1983. *See Salahuddin v. Coughlin*, 781 F.2d 24, 29 (2d Cir.1986) (summary judgment stage is appropriate juncture for *pro se* plaintiffs to make clear the facts that they believe support their claims, and for a court to grant summary judgment where the underlying facts are insufficient).

**Plaintiff's Reference to Additional Witnesses Does Not Merit a Denial of Summary Judgment**

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 140 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Hare v. Hayden, Not Reported in F.Supp.2d (2011)

2011 WL 1453789

Plaintiff claims that Defendants' motions for summary judgment should be denied on the grounds that two witnesses have yet to file affidavits. Four months have passed since Defendants filed their motions for summary judgment, and Plaintiff has not attempted to submit these additional affidavits. Furthermore, Plaintiff's description of what their witnesses will say demonstrates that they would not rescue her claims.

Plaintiff contends that Inmate Lucy Tuttle observed Lopez verbally abuse and physically threaten her in the chapel on August 18, 2008 and in the subsequent meeting on that same day (to the extent that these are separate instances). As was discussed above, Lopez's alleged verbal abuse does not support a § 1983 claim for cruel and unusual punishment, as Plaintiff alleges.

Plaintiff also contends that Lieutenant Collins was Sergeant Collins at BHCF at the time Lopez prevented Plaintiff from entering her work assignment as Catholic Chaplain's Clerk, again without specifying when this occurred. Lopez's alleged refusal to allow Plaintiff to work as Catholic clerk

is insufficient to support § 1983 claim, as Lopez holds no right to her prison assignment. To the extent that Collins's affidavit would support Plaintiff's allegation that Lopez falsely reported her absent from work in retaliation for the Plaintiff's complaints, Plaintiff has not established that her complaints motivated the allegedly false reporting. Furthermore, Plaintiff cannot establish that the adverse action of her removal from her position as Catholic clerk was caused by the allegedly false reports, as Hayden cited other valid reasons for his decision to remove her.

#### Conclusion

**\*12** For the reasons stated above, Defendants' motions for summary judgment are granted.

It is so ordered.

#### All Citations

Not Reported in F.Supp.2d, 2011 WL 1453789

Footnotes

1    To the extent that Plaintiff's allegations of retaliation are not contained in her complaint, but come from her deposition testimony and other filings, they are dismissed on this independent ground. *Kearney v. County of Rockland,* 373 F.Supp.2d 434,440–41 (S.D.N.Y.2005) ("plaintiff must set forth facts that will allow each party to tailor its discovery to prepare an appropriate defense. Because a failure to assert a claim until the last minute will inevitably prejudice the defendant, courts in this District have consistently ruled that it is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment.")

2    Plaintiff contends that she did show up for work but was sent away by Lopez. This claim against Lopez is addressed, *infra* Hayden's reliance on Lopez's absence report was reasonable and was a legitimate basis for Hayden's decision to dismiss Plaintiff.

3    A plaintiff does have a claim "where the fabrication of evidence was motivated by a desire to retaliate for the inmate's exercise of his substantive constitutional rights."*Franco v. Kelly,* 854 F.2d 584, 588–89 (2d Cir.1988) However, as discussed above, Plaintiff, to the extent she makes such a claim, fails to establish that Lopez was motivated by Plaintiff's complaints when she filed the allegedly false report

4    As with her retaliation claims, to the extent that Plaintiff's allegations of infringement on her rights to practice her religions are not contained in her complaint, but come from her deposition testimony and other filings, they are dismissed on this independent ground. *Kearney,* 373 F.Supp.2d at 440–41.

End of Document

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 141 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Laporte v. Fisher, Not Reported in F.Supp.2d (2012)

2012 WL 5278543

2012 WL 5278543
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Hector LAPORTE, Plaintiff,
v.
Correction Sergeant FISHER and
Correction Officer Banks, Defendants.

No. 11 Civ. 9458(PKC)(HBP).
|
Oct. 24, 2012.

**MEMORANDUM AND ORDER**

P. KEVIN CASTEL, District Judge.

**\*1** Plaintiff Hector Laporte, proceeding *pro se*, brings this action pursuant to 18 U.S.C. § 1983 against Correction Sergeant Fisher and Correction Officer Banks in their individual and official capacities. Plaintiff asserts that defendants used excessive force against him in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. Defendants Fisher and Banks move to dismiss the claims against them to the extent they are sued in their official capacities, as these claims are barred by the Eleventh Amendment. Defendant Banks further moves to dismiss all claims against him on the grounds of failure to state a claim upon which relief can be granted, qualified immunity, and failure to comply with the administrative exhaustion requirements of the Prison Litigation Reform Act, 42 U.S.C. § 1997c (the "PLRA"). For the reasons stated below, defendants' motion to dismiss all claims against them in their official capacities on the grounds of Eleventh Amendment immunity is granted, Defendant Banks' motion to dismiss on the grounds of failure to state a claim and qualified immunity is denied, and his motion to dismiss for failure to exhaust is converted into a motion for summary judgment, and denied.

**BACKGROUND**

Plaintiff is an inmate at Sing Sing Correctional Facility ("Sing Sing"). (Compl.¶ 1–A.) Plaintiff alleges that while incarcerated at Sing Sing, he was assaulted on April 24, 2011

by defendant Banks, and on July 4, 2011 by defendant Fisher. (*Id.* ¶ II–D.)

According the Complaint, on April 24, 2011 plaintiff was attempting to go to the chapel when he was stopped by defendant Banks. (*Id.* ¶ II–D, Ex. B "Banks Grievance.") Defendant Banks allegedly accused plaintiff of "playing games with [defendant Banks] and the facility" by "using the chapel as a way just to come out of [plaintiff's] cell."(*Id.* Ex. B.) Defendant Banks then asked plaintiff for his identification card. Upon production of the identification card, plaintiff alleges that defendant Banks "became aggressive, and started pushing, shoving, and eventually punched [plaintiff] in the stomach."(*Id.*) The impact of the punch allegedly caused plaintiff to lose his breath. (*Id.*) Plaintiff asserts that defendant Banks continued to threaten and harass him for a period of time following this incident, such that plaintiff has been afraid to come out of his cell "for fear that CO. Banks will assault [plaintiff], set [plaintiff] up, or have [plaintiff] beaten by other officers."(*Id.*)

Plaintiff further alleges that he was assaulted by defendant Fisher on July 4, 2011. (*Id.* ¶ II–D, Ex. A "Fisher Grievance .") According to the Complaint, plaintiff approached defendant Fisher in his office regarding a problem with a disbursement form for plaintiff's legal mail. Upon bringing the problem to defendant Fisher's attention, plaintiff asserts that defendant Fisher became "very aggressive" and shouted expletives at plaintiff. (*Id.* Ex. A) As plaintiff attempted to leave defendant Fisher's office, Fisher allegedly pulled plaintiff back into the office and "repeatedly punched [plaintiff's] face until [plaintiff] was unconscious."(*Id.*) Plaintiff allegedly regained consciousness later in his cell "with swollen [sic] and bruised [sic] on [plaintiff's] face and body."(*Id.*) Plaintiff asserts that when he awoke, "Sergeant Fisher was shaking me awake and he spit on my face."(*Id.*) Defendant Fisher then allegedly handcuffed plaintiff and told plaintiff he was going to take him to the hospital. (*Id.*) Because plaintiff "couldn't barely walk at this point," plaintiff asserts that he "was literally dragged out the galley," "thrown down the stairs," then dragged "down 32 flights of stairs on [plaintiff's] back," at which point defendant Fisher took plaintiff to the hospital. (*Id.* ¶ II–D, Ex. A.) In addition to a swollen and bruised face, plaintiff claims he suffered "cervical and lumbar spinal injuries" and "was hospitalized for one month." (*Id.* ¶ III.)

**\*2** Plaintiff filed this Complaint on December 21, 2011, alleging that defendants' assaults violated the

Case 9:22-cv-00638-DNH-TWD   Document 58   Filed 02/28/25   Page 142 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Laporte v. Fisher, Not Reported in F.Supp.2d (2012)

2012 WL 5278543

Eighth Amendment prohibition against cruel and unusual punishment. (Docket # 1.) Plaintiff seeks $2 million in compensatory and punitive damages. (Compl.¶ V.)

### LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), Fed.R.Civ.P., "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). " 'Labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,' " rather, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly,* 550 U.S. at 555).

In considering a Rule 12(b)(6) motion to dismiss, all non-conclusory factual allegations are accepted as true, and all reasonable inferences are drawn in favor of the plaintiff. *See In re Elevator Antitrust Litig.,* 502 F.3d 47, 50 (2d Cir.2007) (per curiam). Moreover, plaintiff's pro se pleadings, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."*Boykin v. KeyCorp,* 521 F .3d 202, 214 (2d Cir.2008) (internal quotations omitted). The plaintiff's pleadings are thus given a liberal and generous construction and are read "to raise the strongest arguments that they suggest."*Triestman v. Fed.-Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir.2006) (internal citation omitted).

In assessing the complaint, a court may consider documents incorporated by reference or attached to the complaint as exhibits, documents the plaintiff knew of or possessed and relied upon in framing the complaint, and items of which judicial notice maybe taken. *Samuels v. Air Transp. Local 504,* 992 F.2d 12, 15 (2d Cir.1993). Here, plaintiff has attached relevant documents to the complaint, and these materials are properly considered on the motion.

### DISCUSSION

**I.** *Defendants' Motion to Dismiss All Claims Against Them in Their Official Capacities is Granted.*

Plaintiff sues the defendants in both their official and individual capacities. Absent a waiver or valid congressional override, the Eleventh Amendment has been construed to bar an action for damages by a private plaintiff against the state. *Seminole Tribe v. Florida,* 517 U.S. 44, 54 (1996). This immunity extends to state officials acting in their official capacity. *Kentucky v. Graham,* 473 U.S. 159, 169 (1985).Section 1983 does not abrogate Eleventh Amendment immunity. See *Edelman v. Jordan,* 415 U.S. 651, 675–77 (1974). Damages are thus not recoverable in a section 1983 action against state officials acting in their official capacities. *See, e.g., Davis v. New York,* 316 F.3d 93, 101–02 (2d Cir.2002).

**\*3** Since plaintiff exclusively seeks monetary damages, not prospective injunctive relief, see *Ex Parte Young,* 209 U.S. 123 (1908), defendants' motion to dismiss all claims against them in their official capacities is granted. Eleventh Amendment immunity has no bearing on claims asserted against defendants in their individual capacities.

**II.** *Defendant Banks' Motion to Dismiss For Failure to State a Claim is Denied.*

Defendant Banks asserts that plaintiff has failed to state a claim for relief. There is no dispute that Banks was acting under color of state law at all times alleged in the complaint. Nor is it contested that the right to be free from excessive force is protected under the Eighth Amendment. See *Graham v. Connor,* 490 U.S. 386, 395 n. 10 (1989) ("After conviction, the Eighth Amendment 'serves as the primary source of substantive protection ... in cases ... where the deliberate use of force is challenged as excessive and unjustified.'") (quoting *Whitley v. Albers,* 475 U.S. 312, 327 (1986)). Defendant Banks argues that plaintiff has failed to allege any injuries as a result of Banks' alleged conduct, and that plaintiff's allegations are thus insufficient to state an Eighth Amendment claim. Defendant Banks relies on *Johnson v. Glick* 481 F.2d 1028, 1033 (2d Cir.1973), for the proposition that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers ...," violates the Constitution, and *Wilkins v. Gaddy,* 130 S.Ct. 1175, 1178 (2010), for the proposition that "not every malevolent touch by a prison guard gives rise to a federal cause of action."

Defendant Banks' reliance on these cases is misplaced. Plaintiff does not assert that defendant Banks "pushed" or "shoved" him. Rather, plaintiff alleges that defendant Banks "punched [plaintiff] in the stomach," causing plaintiff to "los[e][his] breath." (Compl.¶ II–D, Ex. B.) More significantly, the Supreme Court was clear in *Wilkins* that in

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 143 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Laporte v. Fisher, Not Reported in F.Supp.2d (2012)

2012 WL 5278543

assessing an Eighth Amendment claim, the " 'core judicial inquiry' ... was not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.' " *Wilkins*, 130 S.Ct. at 1178 (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). As plaintiff alleges that the punch was not the result of "a good-faith effort to maintain or restore discipline," but rather a "willfully malicious" action, (Compl.¶ V), which resulted from defendant Banks "harrassing (sic)" him, (*Id.* ¶ II–D), the Court concludes that plaintiff has pled sufficient facts to state a claim of use of excessive force, for which Section 1983 provides a remedy. Defendant Banks' motion to dismiss on these grounds is therefore denied.

**III.** *Defendant Banks' Motion to Dismiss on the Ground of Qualified Immunity is Denied.*

Defendant Banks asserts that he is protected by qualified immunity against any Section 1983 claim, because the alleged punch did not violate any clearly established federal law. Defendant Banks does not cite any relevant Eighth Amendment case law in support of this argument. Rather, he merely states that the alleged punch "caused no injuries and [was] de minimus," and thus "did not violate any clearly established federal law."(Def.Mem.7.)

**\*4** "The right of an individual not to be subjected to excessive force has long been clearly established."*Calamia v. City of New York*, 879 F.2d 1025, 1036 (2d Cir.1989). As discussed in the preceding section, plaintiff does not allege de minimus use of force, and there is no indication from the pleadings that force was necessary to maintain or restore discipline. An objectively reasonable corrections officer would have understood that punching an inmate in the stomach, for no purpose other than to harass him, would constitute excessive force in violation of the Eighth Amendment. *See Wilkins*, 130 S.Ct. at 1178. Plaintiff has thus sufficiently pled a violation of a clearly established federal right, and defendant Banks is not entitled to qualified immunity.

**IV.** *Defendant Banks' Motion to Dismiss For Failure to Exhaust Under the PLRA is Converted to a Motion for Summary Judgment, and Denied.*

Defendant Banks asserts that plaintiff has failed to administratively exhaust his claim, as is required by the PLRA. Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title,

or any other Federal law, by a prisoner confined in any ... correctional facility until such administrative remedies as are available are exhausted."42 U.S.C. § 1997e(a)."[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."*Ibill v. Curcione*, 657 F.3d 116, 124 (2d Cir.2011) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002))."There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."*Jones v. Bock*, 549 U.S. 199, 211 (2007).

In order to properly exhaust administrative remedies under the PLRA, inmates must complete the administrative review process in accordance with the rules of the particular institution in which they are confined. *Jones*, 549 U.S. at 218. In New York state prisons, the Department of Corrections and Community Supervision ("DOCCS") has established a three-step inmate grievance procedure. This procedure is set forth in N.Y. Comp.Codes R. & Regs. tit. 7, § 701.5(2010).

First, an inmate must submit a grievance complaint to the clerk within twenty-one calendar days of an alleged occurrence. Id. at (a). The Inmate Grievance Resolution Committee ("IGRC") then has up to sixteen calendar days to resolve the issue informally. *Id.* at (b)(1). If there is no informal resolution, the IGRC shall conduct a hearing within sixteen calendar days of receipt of the grievance, and issue a written decision within two working days of the close of the hearing. *Id.* at (b)(2). Next, an inmate must appeal an adverse decision to the facility superintendent within seven calendar days after receipt of the IGRC's written decision. *Id.* at (c)(1). The superintendent then has twenty days to render a decision. *Id.* at (c)(3). Finally, the inmate must appeal to the Central Office Review Committee ("CORC") within seven calendar days after receipt of the superintendent's written response, *id.* at (d)(1), and the CORC must render its final decision on the grievance within thirty calendar days from the time the appeal was received, *id.* at (d)(2). Only after an inmate has exhausted all three steps of this grievance process may he commence suit in federal court. *See Porter*, 534 U.S. at 524.

*a.* *Defendant Banks' Motion to Dismiss on Rule 12(b)(1) Grounds is Denied.*

**\*5** Defendant Banks seeks dismissal pursuant to Rule 12(b)(1) and (6), but fails to specify the precise Rule 12(b) grounds under which he seeks dismissal for failure to exhaust. As the

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 144 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Laporte v. Fisher, Not Reported in F.Supp.2d (2012)

2012 WL 5278543

PLRA's exhaustion requirement is not jurisdictional in nature, *Richardson v. Goord*, 347 F.3d 431, 434 (2d Cir.2003), the Court cannot dismiss plaintiff's action for lack of subject matter jurisdiction. Thus, to the extent that the motion at bar is brought pursuant to Rule 12(b)(1), it is denied.

**b. Defendant Banks' Motion to Dismiss on Rule 12(b)(6) Grounds is Converted To a Motion for Summary Judgment.**

Defendant Banks also seeks dismissal for failure to exhaust pursuant to Rule 12(b)(6). Failure to exhaust is an affirmative defense under the PLRA and "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. Dismissal pursuant to Rule 12(b)(6) for failure to exhaust is thus appropriate only where nonexhaustion is apparent from the face of the complaint. *See McCoy v. Goord*, 255 F.Supp.2d 233, 251 (S.D.N.Y.2003) (Chin, J.).

Here, plaintiff states in the Complaint that he filed a grievance with Sing Sing's grievance office, and that his claims were denied. (Compl.¶ IV.) Plaintiff further states he

> appealed to the superintendent Philip
> D. Heath and [his] appeal was denied.
> [He] then appealed to Albany N.Y.
> CORC and received a letter from them
> dated November 2nd 2011 claiming
> they would look into the matter.
> However as of today [he] ha[sn't]
> heard back from CORC.

(Compl.¶ IV–E(3).) Nonexhaustion is thus not apparent from the face of the complaint, and dismissal pursuant to Rule 12(b)(6) is inappropriate.

However, as then-District Court Judge Chin has noted,

> If nonexhaustion is not clear from the
> face of the complaint, a defendant's
> motion to dismiss should be converted,
> pursuant to Rule 12(b) [now codified
> in relevant part as Rule 12(d) ], to
> one for summary judgment limited to
> the narrow issue of exhaustion and the
> relatively straightforward questions
> about the plaintiff's efforts to exhaust,
> whether remedies were available, or

whether exhaustion might be, in very limited circumstances, excused.

*McCoy*, 255 F.Supp.2d at 251. Under Rule 12(d), Fed.R.Civ.P., if "matters outside the pleadings are presented to and not excluded by the court" on a motion under Rule 12(b)(6), "the motion must be treated as one for summary judgment under Rule 56."Moreover, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."*Id.* Accordingly, "a district court acts properly in converting a motion for judgment on the pleadings into a motion for summary judgment when the motion presents matters outside the pleadings," so long as "the court give [s] 'sufficient notice to an opposing party and an opportunity for that party to respond.' " *Hernandez v. Coffey*, 582 F.3d 303, 307 (2d Cir.2009) (quoting *Groden v. Random House, Inc.*, 61 F.3d 1045, 1052 (2d Cir.1995)).

*6 In *Hernandez v. Coffey*, the Second Circuit expounded on the notice requirement with regards to *pro se* parties. *Hernandez*, 582 F.3d at 307–09. The court began by noting that formal notice is not ordinarily required "where a party 'should reasonably have recognized the possibility that the motion might be converted into one for summary judgment [and] was [neither] taken by surprise [nor] deprived of a reasonable opportunity to meet facts outside the pleadings.' " *Id.* at 307 (alteration in original) (quoting *Villante v. Dep't of Corrections of City of New York*, 786 F.2d 516, 521 (2d Cir.1986)). However, in the case of a pro se party, " '[n]otice is particularly important' because the *pro se* litigant 'may be unaware of the consequences of his failure to offer evidence bearing on triable issues.' " *Id.* (alteration in original) (quoting *Beacon Enters., Inc. v. Menzies*, 715 F.2d 757, 767 (2d Cir.1983)). Accordingly, the court ruled that "absent a clear indication that the *pro se* litigant understands the nature and consequences of Rule 56 ... he or she must be so informed by the movant in the notice of motion or, failing that, by the district court." Id at 308 (citing *McPherson v. Coombe*, 174 F.3d 276 (2d Cir.1999)).

Here, defendant Banks provided to plaintiff precisely the kind of notice required by *Hernandez.*In accordance with S.D.N.Y. Civil Rules 12.1 and 56.2, defendant Banks served plaintiff with notice that the motion to dismiss might be converted to a summary judgment motion, explaining to plaintiff what he had to do to oppose summary judgment. ("Notice to Pro Se Litigants Opposing Motion to Dismiss or Motion for Summary Judgment," dated March 26, 2012, Docket # 19.) *See Hernandez*, 582 F.3d at 309 n. 2 (in reversing the district court, noting that two cases relied

Case 9:22-cv-00638-DNH-TWD   Document 58   Filed 02/28/25   Page 145 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Laporte v. Fisher, Not Reported in F.Supp.2d (2012)

2012 WL 5278543

upon by the district court were "inapposite because the defendants in each case provided notice pursuant to S.D.N.Y. Civil Rule 12.1 explaining that their motions to dismiss might be converted into motions for summary judgment for purposes of determining exhaustion, and, further, explaining what the plaintiff had to do to oppose summary judgment"). Accordingly, the Court concludes that converting the motion to dismiss to a motion for summary judgment is appropriate.

**c. Defendant Banks' Motion for Summary Judgment is Denied.**

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."Fed.R.Civ.P. 56(a)."A fact is material if it might affect the outcome of the suit under the governing law, and an issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."*Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 558 (2d Cir.2012).

"[T]he burden is upon the moving party to demonstrate that no genuine issue respecting any material fact exists."*Gallo v. Prudential Residential Svcs., Ltd. Partnership*, 22 F.3d 1219, 1223 (2d. Cir.1994). In response, the nonmovant bears only a "limited burden of production," *Powell v Nat'l Bd. of Medical Examiners*, 364 F.3d 79, 84 (2d Cir.2004), and "all ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is sought,"*Gallo*, 22 F.3d at 1223. Moreover, the Second Circuit has "long recognized that summary judgment is a drastic device,"*Nationwide Life Ins. Co. v. Bankers Leasing Ass'n. Inc.*, 182 F.3d 157, 160 (2d Cir.1999), and "should not be granted when there are major factual contentions in dispute,"*National Life Ins. Co. v. Solomon*, 529 F.2d 59, 61 (2d Cir.1975)."This is particularly so when, as here, one party has yet to exercise its opportunities for pretrial discovery."*Id.*

*7 Nonetheless, the nonmovant "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotations omitted). If the evidence produced by the nonmovant "is merely colorable, or is not significantly probative, summary judgment may be granted."*Id.* at 249–50 (internal citations omitted).

Here, there is a disputed issue of material fact as to whether plaintiff administratively exhausted his remedies. Defendant Banks has submitted evidence concerning the CORC computer database, which allegedly "contains a great deal of historical data with respect to appeals to CORC."(Bellany Decl. ¶ 4, annexed to Harben Decl.) Defendant Banks submits that this database reveals that CORC never received any grievance appeals from plaintiff with respect to the incident at issue. However, plaintiff has declared under penalty of perjury: that he filed a grievance against defendant Banks, and that Sing Sing's Inmate Grievance Committee failed to respond; that he then appealed his grievance to the superintendant, and that the superintendant similarly failed to respond; and that he appealed to CORC, and was told that there was no record of his grievance. ("Opposition in Response to Defendants Motion to Dismiss" ¶ 1, Docket # 24; "Affidavit of Hector Laporte," Docket # 27.) This evidence, viewed in the light most favorable to the nonmoving party, raises a genuine dispute of material fact. Therefore, and particularly in light of the fact that plaintiff has "yet to exercise [his] opportunit[y] for pretrial discovery,"*Solomon*, 529 F.2d at 61, summary judgment is denied. Defendant Banks is free to renew his motion for summary judgment at the close of discovery. If after a full and fair opportunity to conduct discovery, all that plaintiff is able to present is a conclusory assertion, unsupported by documentary evidence (where one would expect documentary support to exist), the defense of lack of exhaustion may look quite different.

**CONCLUSION**

For the foregoing reasons and to the extent stated above, the defendants' motion to dismiss is GRANTED in part and DENIED in part. All claims against defendants Banks and Fisher in their official capacities are dismissed. All other claims, including all claims against the defendants in their individual capacities, remain pending.

The defendants shall provide to the plaintiff copies of all unreported cases cited herein. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Laporte v. Fisher, Not Reported in F.Supp.2d (2012)

2012 WL 5278543

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 5278543

---

End of Document

@ 2016 Thomson Reuters. No claim to original U.S. Government Works.

---

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 147 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Lewis v. Havernack, Not Reported in F.Supp.2d (2013)

2013 WL 1294606

2013 WL 1294606
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Marc LEWIS, Plaintiff,
v.
HAVERNACK, Sergeant, Mt. McGregor
Correctional Facility, et al., Defendants.

Civil Action No. 9:12–CV–0031 (GLS/DEP).
|
March 28, 2013.

**Attorneys and Law Firms**

Marc Lewis, Moravia, NY, pro se.

Hon. Eric T. Schneiderman, Office of the Attorney General,
State of New York, Department of Law, The Capitol, Gregory
J. Rodriguez, Esq., Assistant Attorney General, of Counsel,
Albany, NY, for Defendants.

*REPORT AND RECOMMENDATION*

DAVID E. PEEBLES, United States Magistrate Judge.

**\*1** *Pro se* plaintiff Marc Lewis, a New York State prison
inmate with considerable prior litigation experience, has
commenced this action against five corrections officers
employed at the prison facility in which he was confined at
the relevant times, pursuant to 42 U.S.C. § 1983, alleging
deprivation of his civil rights. [1] In his complaint, plaintiff
alleges that he was assaulted by one of the defendants and
denied medical attention for his injuries arising from the
alleged assault, and that the defendants later conspired to
conceal the alleged assault. As relief, plaintiff's complaint
seeks recovery of $3 million in damages.

Currently pending before the court is a motion brought by the
defendants seeking dismissal of plaintiff's complaint based on
his failure to exhaust administrative remedies, and for failure
to state a claim as it relates to all of plaintiff's causes of
action with the exception of his Eighth Amendment excessive
force claim. For the reasons set forth below, I recommend
that defendants' motion to dismiss for failure to exhaust be
denied as premature, without prejudice, but that their motion
otherwise be granted.

**I. BACKGROUND** [2]
Plaintiff is a New York State prison inmate currently being
held in the custody of the New York State Department
of Corrections and Community Supervision ("DOCCS").*See
generally* Complaint (Dkt. No. 1). While he is now
incarcerated elsewhere, at the times relevant to his claims
in this action, plaintiff was confined in the Mt. McGregor
Correctional Facility ("Mt.McGregor"), located in Wilton,
New York. *Id.*

During the week of February 19, 2009, plaintiff filed
a complaint with Mt. McGregor Superintendent William
T. Hagget, accusing corrections officers of stealing and
consuming state food products. Complaint (Dkt. No. 1)
at 6. Plaintiff was interviewed by a corrections lieutenant
on February 14, 2009, concerning the complaint, and was
advised that the matter would be addressed.*Id.*

On February 15, 2009, plaintiff was subjected to an
unauthorized search of his prison cell by several corrections
officers, all of whom threatened him. Complaint (Dkt.
No. 1) at 7. Plaintiff attributes the search and threats
to his complaint to Superintendent Hagget concerning the
conduct of corrections officers. *Id.* In the morning of
February 16, 2009, plaintiff mailed another written complaint
regarding corrections officers stealing and consuming state
food products to Mt. McGregor Superintendent Hagget and
DOCCS Commissioner Brian Fischer. *Id.* at 9.

On February 20, 2009, plaintiff was asked to voluntarily
meet with defendant Havernack, a corrections sergeant, to
discuss his complaints. Complaint (Dkt. No. 1) at 9. Believing
the meeting to be a "set up," plaintiff refused to attend and
retreated to his cell. *Id.* After returning to his cell, defendant
Havernack and two other unidentified officers arrived at
plaintiff's cell, placed him in handcuffs, and escorted him to
the basement of Mt. McGregor's administration building. *Id.*
at 10.Upon arriving, and while still in handcuffs, plaintiff was
placed in a chair in front of a desk, behind which defendant
Sheridan, a corrections lieutenant, was sitting. *Id.* At some
point during the meeting defendant Sheridan stood up, walked
behind plaintiff, and struck plaintiff on the right side of
the face with a closed fist, rendering Lewis unconscious
and knocking him out of his chair. *Id.* at 12.As a result of
the incident, Lewis experienced injuries to his right upper
facial cheek and lower eyelid, as well as his left upper facial

Case 9:22-cv-00638-DNH-TWD   Document 58   Filed 02/28/25   Page 148 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Lewis v. Havernack, Not Reported in F.Supp.2d (2013)

2013 WL 1294606

check. *Id.* Upon returning to consciousness, plaintiff's several requests for medical attention were denied. *Id.* at 13–14.

**\*2** Shortly following the incident, defendants Imfeld and Johnson, together with an unidentified corrections sergeant, escorted plaintiff to a waiting van, where he was transported out of Mt. McGregor. Complaint (Dkt. No. 1) at 15.As the van left the facility, plaintiff continued to complain of his injuries and request medical attention. *Id.* at ¶ 31.Those requests were denied.*Id.* Eventually, after plaintiff threatened to cause an accident if he was not provided medical attention, defendants Imfeld and Johnson returned the van to Mt. McGregor, where plaintiff was taken to the prison infirmary, and ultimately seen by medical personnel. *Id.* at 15–16.

**II. PROCEDURAL HISTORY**

Plaintiff's complaint in this action was filed on January 9, 2012. Complaint (Dkt. No. 1). That complaint names Corrections Sergeant Havernack, Corrections Lieutenant Sheridan, and Corrections Officers Chapman, Johnson and Imfeld, all of whom were stationed at Mt. McGregor at the relevant times, as defendants, and sets forth five causes of action, including excessive force and deliberate indifference claims under the Eighth Amendment, a claim for conspiracy to violate his Eighth Amendment rights, and claims that are based upon alleged threats by defendants and the issuance of a false misbehavior report. *Id.*

In answer to plaintiff's complaint, defendants moved for its dismissal on July 3, 2012, arguing that plaintiff's claims are precluded based upon his failure to exhaust available administrative remedies, and additionally that all of his claims, except the excessive force claim, fail to state a claim upon which relief may be granted. Dkt. No. 30.Plaintiff has since responded in opposition to defendants' dismissal motion. Dkt. No. 42.In addition, plaintiff seeks leave, by motion filed on September 21, 2012, to file an amended complaint in the action. Dkt. No. 46.Plaintiff's motion for leave to amend has been opposed by defendants on the basis of futility. Dkt. No. 47.

The parties' cross-motions, which are now fully briefed and ripe for determination, have been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).See Fed.R.Civ.P. 72(b).

**III. DISCUSSION**

**A. Dismissal Standard**

A motion to dismiss a complaint, brought pursuant to Rule 12(b) (6) of the Federal Rules of Civil Procedure calls upon a court to gauge the facial sufficiency of that pleading using a pleading standard which, though unexacting in its requirements, "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation" in order to withstand scrutiny. *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 554, 555 (2007)). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, "a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.' " *Iqbal,* 556 U.S. 677–78 (quoting Fed.R.Civ.P. 8(a)(2)). While modest in its requirements, that rule commands that a complaint contain more than mere legal conclusions. *See id .* at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

**\*3** In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true and draw all inferences in favor of the non-moving party. *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (citing *Twombly,* 550 U.S. at 555–56);*see also Cooper v. Pate,* 378 U.S. 546, 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964); *Miller v. Wolpoff & Abramson, L.L.P.,* 321 F.3d 292, 300 (2d Cir.2003); *Burke v. Gregory,* 356 F.Supp.2d 179, 182 (N.D.N.Y.2005) (Kahn, J.). However, the tenet that a court must accept as true all of the allegations contained in a complaint does not apply to legal conclusions. *Iqbal,* 556 U.S. at 678.

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570);*see also Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir.2008). As the Second Circuit has observed, "[w]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge plaintiffs' claims across the line from conceivable to plausible.' " *In re Elevator Antitrust Litig.,* 502 F.3d 47, 50 (2d Cir.2007) (quoting *Twombly,* 550 U.S. at 570) (alterations omitted).

When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant, whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action. *Erickson,* 551 U.S. at 94 (" '[A] *pro se*

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 149 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Lewis v. Havernack, Not Reported in F.Supp.2d (2013)

2013 WL 1294606

complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.' " (quoting *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)) (internal citation omitted)); *Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 191 (2d Cir.2008) ("[W]hen a plaintiff proceeds *pro se,* a court is obliged to construe his pleadings liberally." (internal quotation marks and alterations omitted)); *Kaminski v. Comm'r of Oneida Cnty. Dep't of Soc. Servs.,* 804 F.Supp.2d 100, 104 (N.D.N.Y.2011) (Hurd, J.) ("A pro se complaint must be read liberally.").

**B.** *Exhaustion of Remedies*
The Prison Litigation Reform Act of 1996 ("PLRA"), Pub.L. No. 104–134, 110 Stat. 1321 (1996), which imposes several restrictions on the ability of prisoners to maintain federal civil rights actions, expressly requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."42 U.S.C. § 1997e(a); *see also Woodford v. Ngo,* 548 U.S. 81, 84, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006) ( "Exhaustion is ... mandatory. Prisoners must now exhaust all 'available' remedies[.]"); *Hargrove v. Riley,* No. 04–CV–4587, 2007 WL 389003, at *5-6 (E.D.N.Y. Jan.31, 2007) ("The exhaustion requirement is a mandatory condition precedent to any suit challenging prison conditions, including suits brought under Section 1983.").[3] "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."*Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002).

*4 The failure of a prisoner to satisfy the PLRA's exhaustion requirement is an affirmative defense that must be raised by a defendant in response to an inmate suit. *Jones v. Block,* 549 U.S. 199, 212, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007). In the event the defendant establishes that the inmate plaintiff failed "to fully complete[ ] the administrative review process" prior to commencing the action, the plaintiff's complaint is subject to dismissal.*Pettus v. McCoy,* No. 04–CV–0471, 2006 WL 2639369, at *1 (N.D.N.Y. Sept. 13, 2006) (McAvoy, J.); *see also Woodford,* 548 U.S. at 93 ("[W]e are persuaded that the PLRA exhaustion requirement requires proper exhaustion."). "Proper exhaustion" requires a plaintiff to procedurally exhaust his claims by "compl[ying]

with the system's critical procedural rules."*Woodford,* 548 U.S. at 95;*see also Macias v. Zenk,* 495 F.3d 37, 43 (2d Cir.2007) (citing *Woodford* ).

Here, defendants argue that plaintiff's claims are barred based upon plaintiff's alleged failure to comply with the exhaustion requirement pursuant to the PLRA. Defs.'s Memo. of Law (Dkt. No. 30, Attach.1) at 5–7. In support, defendants have filed a declaration from Jeffrey Hale, the Assistant Director of the Inmate Grievance Program with DOCCS, who avers that, based on an examination of DOCCS's records, plaintiff "did not pursue a grievance appeal to CORC regarding an incident date of February 15, 2009[,] or February 20, 2009, including the issues presented in this action[.]" Hale Decl. (Dkt. No. 30, Attach.3) at * 4. In response, plaintiff concedes that he did not file a grievance with regard to the alleged assault on February 20, 2009, because he argued these issues, instead, "at his multiple hearing proccedings," including "Superintendent hearing proceedings"—which I have presumed to be a reference to a disciplinary hearing —and his administrative appeal to the Commissioner. Plf.'s Memo. of Law (Dkt. No. 42) at 9–10.

The exhaustion defense is one that is not particularly well-suited for resolution for a motion to dismiss, absent the clearest indication in a plaintiff's complaint that a failure to exhaust has occurred. *See, e.g., Laporte v. Fisher,* No. 11–CV–9458, 2012 WL 5278543, at *5 (S.D.N.Y. Oct.24, 2012) ("Dismissal pursuant to Rule 12(b)(6) for failure to exhaust is thus appropriate only where nonexhaustion is apparent from the face of the complaint."(citing *McCoy v. Goord,* 255 F.Supp.2d 233, 251, (S.D.N.Y.2003)). In this instance, plaintiff's complaint alleges that he filed more than one grievance related to the facts in his complaint, and that his grievance was denied. Complaint (Dkt. No. 1) at 4. Plaintiff's complaint also alleges that he filed complaints to the DOCCS Commissioner, as well as the Superintendent at Mt. McGregor. *Id.* Considering these allegations, which are contained in the four corners of plaintiff's complaint, I conclude that there is sufficient doubt as to whether plaintiff exhausted his administrative remedies to deny defendants' motion to dismiss on this ground. *See Laporte,* 2012 WL 5278543, at *5 (holding that, absent a clear indication from the face of the complaint that a plaintiff has failed to exhaust, dismissal pursuant to Rule 12(b) (6) is not appropriate).

*5 While defendants have submitted extrinsic evidence, including the Hale declaration, calling into question plaintiff's representation that exhaustion has been accomplished, such

WESTLAW © 2016 Thomson Reuters. No claim to original U.S. Government Works.    3

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Lewis v. Havernack, Not Reported in F.Supp.2d (2013)

2013 WL 1294606

extrinsic materials are not properly considered on a motion to dismiss. It is true that one potential course would be to convert the motion into one for summary judgment, pursuant to Rule 12(d), so that the extrinsic materials would then properly be considered. *See McCoy*, 255 F.Supp.2d at 251 ("If nonexhaustion is not clear from the face of the complaint, a defendant's motion to dismiss should be converted ... to one for summary judgment limited to the narrow issue of exhaustion and the relatively straightforward questions about the plaintiff's efforts to exhaust, whether remedies were available, or whether exhaustion might be, in very limited circumstances, excused."). I recommend against conversion, however, since the plaintiff has not been put on notice that such a conversion was a possibility, or of the possible consequences of such a conversion. *See Hernandez v. Coffey*, 582 F.3d 303, 308 (2d Cir.2009) ("[A]bsent a clear indication that the *pro se* litigant understands the nature and consequences of Rule 56 [governing motions for summary judgment] ... he or she must be so informed by the movant in the notice or, failing that, by the district court.").

Moreover, although plaintiff has apparently conceded that he did not "proper [ly] exhaust[ ]" his claims, *Woodford*, 548 U.S. at 95, relating to the February 20, 2009 incident, he argues that he satisfied his exhaustion obligation by making his arguments during "multiple hearing proceedings," including "Superintendent hearing proceedings" and on appeal after he was found guilty. Plf.'s Memo. of Law (Dkt. No. 42) at 9. I note that "under certain circumstances, an inmate may exhaust his administrative remedies by raising his claim during a related disciplinary proceeding." *Murray v. Palmer*, No. 03–CV–1010, 2010 WL 1235591, at *3 (Mar. 31, 2010) (Suddaby, J.) (emphasis omitted), *accord, Barksdale v. Fronya*, No. 10–CV–0831, 2012 WL 4107805, at *8 (N.D.N.Y. Sept. 19, 2012) (Peebles, M.J.), *adopted in its entirety by*2012 WL 4107801 (D'Agostino, J.); *but see LaBounty v. Johnson*, 253 F.Supp.2d 496, 501–02 (W.D.N.Y.2003) ("An appeal from a disciplinary hearing does not satisfy the grievance exhaustion requirement for a [constitutional] claim, even if the hearing is based on the same set of facts underlying the grievance."(citing *McNair v. Sgt. Jones*, No. 01–CV–3253, 2002 WL 31082948, at *7 (S.D.N.Y.Sept. 18, 2002)). Because the reasons for plaintiff's choice to pursue his complaints through a disciplinary proceeding are far from clear at this early stage of the action, I am unable to make a determination as to whether plaintiff may be excused from properly exhausting his administrative remedies.

For all of these reasons, I recommend that defendants' motion to dismiss on the basis of plaintiff's alleged failure to exhaust be denied, without prejudice to defendants' right to raise the defense at a point when it can be analyzed based upon a more fully developed record.

**C. *Eleventh Amendment***

**\*6** Plaintiff's complaint alleges that, at the relevant times, the named defendants were acting both in their individuals and official capacities in violating the plaintiff's constitutional rights. Complaint (Dkt. No. 1) at 1. In their motion to dismiss, defendants argue that, to the extent they are sued in their official capacities, plaintiff's claims are precluded under the Eleventh Amendment. Defs.' Memo. of Law (Dkt. No. 30) at 7–8.

The Eleventh Amendment protects a state against suits brought in federal court by citizens of that state, regardless of the nature of the relief sought. *Edelman v. Jordan*, 415 U.S. 651, 662–63, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Cory v. White*, 457 U.S. 85, 90–91, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982); *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir.1993). This absolute immunity, which states enjoy under the Eleventh Amendment, extends to both state agencies and state officials sued for damages in their official capacities when the essence of the plaintiff's claim seeks recovery from the state as the real party in interest.[4] *See, e.g., Daisernia v. State of New York*, 582 F.Supp. 792, 798–99 (N.D.N.Y.1984) (McCurn, J.) ("[A] suit which seeks a money judgment 'which must be paid from the state treasury is barred by the Eleventh Amendment,' even though it is nominally asserted against an individual official."(quoting *Edelman*, 415 U.S. at 663)); *see also Richards v. State of New York App. Div., Second Dep't*, 597 F.Supp. 689, 691 (E.D.N.Y.1984) (citing, *inter alia, Cory v. White*, 457 U.S. 85, 89–91, 102 S.Ct. 2325, 72 L.Ed.2d 694, (1982)) "To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."[5] *Ying Jing Gan*, 996 F.2d at 529;*see also Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) ("Suits against state officials in their official capacity therefore should be treated as suits against the State.").

Plaintiff's damage claims in this action against the named-defendants in their official capacities are, in reality, claims against the *State of New York*. *Daisernia*, 582 F.Supp. at

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.    98

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 151 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Lewis v. Havernack, Not Reported in F.Supp.2d (2013)

2013 WL 1294606

798–99. They are therefore subject to dismissal. Accordingly, I recommend that, to the extent that any of the claims asserted in plaintiff's complaint are asserted against any of the named-defendants in their official capacities, those claims be dismissed with prejudice.

**D. *Deliberate Medical Indifference***

Plaintiff's complaint alleges that he requested and was denied immediate medical treatment by various correctional officers, including defendants Imfeld and Johnson, after he was allegedly punched and rendered unconscious by defendant Sheridan on February 20, 2009. Complaint (Dkt. No. 1) at 13–14.Plaintiff's complaint also alleges that he was not provided medical assistance until, while being transferred out of Mt. McGregor and into another facility, he threatened to cause an accident on the highway if defendants Imfeld and Johnson did not return him to the Mt. McGregor infirmary. *Id.* at 15–16.Defendants argue that the nature of plaintiff's alleged injuries and the modest delay in providing plaintiff medical treatment do not give rise to a plausible claim for medical indifference. Defs.' Memo. of Law (Dkt. No. 30, Attach.1) at 8–10.

\*7 The Eighth Amendment prohibits punishment that is "incompatible with 'the evolving standards of decency that mark the progress of a maturing society [,]' or which 'involve the unnecessary and wanton infliction of pain [.]' " *Estelle v. Gamble,* 429 U.S. 97, 102–03, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (quoting *Trop v. Dulles,* 356 U.S. 86, 100–01, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958) and *Gregg v. Georgia,* 428 U.S. 153, 169–73, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) (internal citations omitted)). While the Eighth Amendment " 'does not mandate comfortable prisons,' neither does it permit inhumane ones." *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quoting *Rhodes v. Chapman,* 452 U.S. 337, 349, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)).

"These elementary principles establish the government's obligation to provide medical care for those whom it is punishing by incarceration." *Estelle,* 429 U.S. at 103. Failure to provide inmates with medical care, "[i]n the worst cases, ... may actually produce physical torture or lingering death, [and] ... [i]n less serious cases, ... may result in pain and suffering no one suggests would serve any penological purpose." *Id.*

A claim alleging that prison officials have violated an inmate's Eighth Amendment rights by inflicting cruel and unusual punishment must satisfy both objective and subjective requirements. *Wright v. Goord,* 554 F.3d 255, 268 (2d Cir.2009); *Price v. Reilly,* 697 F.Supp.2d 344, 356 (E.D.N.Y.2010). To satisfy the objective requirement, the Second Circuit has said that

> [d]etermining whether a deprivation is an objectively serious deprivation entails two inquiries. The first inquiry is whether the prisoner was actually deprived of adequate medical care. As the Supreme Court has noted, the prison official's duty is only to provide reasonable medical care .... Second, the objective test asks whether the inadequacy in medical care is sufficiently serious. This inquiry requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner.

*Salahuddin v. Goord,* 467 F.3d 263, 279–80 (2d Cir.2006) (internal citations omitted).

The second inquiry of the objective test requires a court to look at the seriousness of the inmate's medical condition if the plaintiff alleges a complete failure to provide treatment. *Smith v. Carpenter,* 316 F.3d 178, 185–86 (2d Cir.2003)."Factors relevant to the seriousness of a medical condition include whether 'a reasonable doctor or patient would find it important and worthy of comment, whether the condition significantly affects an individual's daily activities, and whether it causes chronic and substantial pain."*Salahuddin,* 467 F.3d at 280 (internal quotation marks and alterations omitted).

If, on the other hand, a plaintiff's complaint alleges that treatment was provided but was inadequate, the second inquiry of the objective test is narrowly confined to that specific alleged inadequacy, rather than focusing upon the seriousness of the prisoner's medical condition. *Salahuddin,* 467 F.3d at 280. "For example, if the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, [the focus of the] inquiry [is] on the challenged delay or interruption in treatment, rather than the prisoner's underlying medical condition alone."*Id.* (quoting *Smith,* 316 F.3d at 185) (internal quotations marks omitted).

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 152 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Lewis v. Havernack, Not Reported in F.Supp.2d (2013)

2013 WL 1294606

*8 To satisfy the subjective requirement, a plaintiff must demonstrate that the defendant had "the necessary level of culpability, shown by actions characterized by 'wantonness.' " *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir.1999). "In medical-treatment cases ..., the official's state of mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health." *Salahuddin*, 467 F.3d at 280. "Deliberate indifference," in a constitutional sense, "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." *Id.* (citing *Farmer*, 511 U.S. at 837);*see also Leach v. Dufrain*, 103 F.Supp.2d 542, 546 (N.D.N.Y.2000) (Kahn, J.) (citing *Farmer* ); *Waldo v. Goord*, No. 97–CV–1385, 1998 WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J. and Homer, M.J.) (same). "Deliberate indifference is a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin*, 467 F.3d at 280 (citing *Farmer*, 511 U.S. at 839–40).

Applying this legal framework to this action, I conclude that plaintiff's complaint fails to allege facts that plausibly satisfy either the objective or subjective requirements. First, although plaintiff's complaint alleges that defendants Imfeld and Johnson denied him medical care shortly after he regained consciousness, it does not provide a time frame indicating how long they denied plaintiff medical care. *See generally* Complaint (Dkt. No. 1) at 13–16.Plaintiff's complaint does show that, at some point after, and on the same day of, the alleged assault by defendant Sheridan, he was treated at the Mt. McGregor infirmary for his injuries. *Id.* at 16.Accordingly, I am unable to determine whether the facts alleged plausibly suggest that defendants Imfeld and Johnson acted unreasonably under the circumstances as it relates to how quickly they provided plaintiff with medical treatment. *See Salahuddin*, 467 F.3d at 279–80 ("Thus, prison officials who act reasonably in response to an inmate-health risk cannot be found liable under the Cruel and Unusual Punishment Clause[.]" (internal quotation marks and alterations omitted)); *see also Herbert v. NYC Dep't of Corrs.*, No. 10–CV–8799, 2012 WL 3834660, at *4 (S.D.N.Y. Aug.21, 2012) (finding that the plaintiff's complaint failed to state a claim for deliberate indifference where the plaintiff "conceded[d] ... that he ultimately did receive medical treatment on the same days that he alerted Captains Williams and Brown to his condition"); *Souls v. St. Barnabas Hosp. Corr. Health Svcs.*, 151 F.Supp.2d 303, 312 (S.D.N.Y. May 21, 2001) (finding that the plaintiff's complaint failed to state a claim for deliberate indifference where the plaintiff suffered an injury to his finger and waited for three and one-half hours for treatment).

*9 In addition, and more persuasively, plaintiff's complaint fails to allege facts plausibly suggesting that the alleged denial of medical care was "sufficiently serious." *See Salahuddin*, 467 F.3d at 280 (requiring, when conducting the objective test, to determine, at the second inquiry, whether "the inadequacy of medical care is sufficiently serious"). To make this determination when a plaintiff, as in this case, alleges a "failure to provide any treatment," the court "examine[s] whether the inmate's medical condition is sufficiently serious."*Id.* (citing *Smith*, 316 F.3d at 185–86). Plaintiff's complaint alleges only that he suffered injuries to his "upper facial cheek and lower eyelid, as well as [his] left upper cheek" after being punched just once. Complaint (Dkt. No. 1) at 12.These allegations regarding his injuries do not plausibly suggest that plaintiff's daily activities were "significantly affect[ed]," or that his condition "cause[d] chronic or substantial pain."*See Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir.1998) (listing that some of the factors relevant to determining the seriousness of a medical condition include "the presence of a medical condition that significantly affects an individual's activities[,] or the existence of a chronic and substantial pain"). In addition, these allegations suggest plaintiff suffered only minor injuries, which are not sufficiently serious to state a deliberate indifference claim under the Eighth Amendment. *See, e.g., Harris v. Morton*, No. 05–CV–1049, 2008 WL 596891, at *3, n. 2 (N.D.N.Y. Feb. 29, 2008) (Kahn, J. and Treece, M.J.) (noting that, although plaintiff stated he suffered from a "snapped" neck, he had not indicated that he suffered from anything other than a generic neck injury); *Bennett v. Hunter*, No. 02–CV–1365, 2006 WL 1174309, *3 (N.D.N.Y. May 1, 2006) (Scullin, S.J. and Lowe, M.J.) (finding that a pinched nerve in one's wrist is not a serious medical need); *Jones v. Furman*, No. 02–CV–939F, 2007 WL 894218, at *10 (W.D.N.Y. Mar.21, 2007) (finding that soreness, pain in, and a lump behind, his right ear, lump on the back of his head, small abrasions on his nose and knuckle, and bruising to his back, ribs, and legs, do not constitute the requisite serious medical need) (citing *Hemmings v. Gorczyk*, 134 F.3d 104, 109 (2d Cir.1998)); *Tapp v. Tougas*, No. 05–CV–0149, 2008 WL 4371766, at *9 (N.D.N.Y. Aug.11, 2008) (Peebles, M.J.), *Report and Recommendation Adopted in Part and Rejected in Part*,2008 WL 4371762 (N.D.N.Y. Sept.18, 2008) (Mordue, C.J.), (noting that a "dull pain" in plaintiff's back and kidney area and persistent rash on plaintiff's foot did not raise a

Case 9:22-cv-00638-DNH-TWD   Document 58   Filed 02/28/25   Page 153 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)
2016 WL 1295137

Lewis v. Havernack, Not Reported in F.Supp.2d (2013)

2013 WL 1294606

constitutional issue) (citing *Peterson v. Miller*, No. 04–CV–0797, 2007 WL 2071743, at \*7 (N.D.N.Y. July 13, 2007) (Hurd, J. and Peebles, M.J.); *Nolaam v. Adams*, No. 03–CV–0517, 2006 WL 2827687, \*10 (N.D.N.Y. Sept. 29, 2006) (Kahn, J. and Lowe, M.J.) (finding that plaintiff's injuries did not constitute a serious medical condition where plaintiff suffered from intermittent back pain requiring pain relievers and physical therapy, a gastrointestinal problem with stomach pains, and a psychological problem requiring Wellbutrin and/or Neurontin); *see also Ford v. Phillips*, No. 05–CV–6646, 2007 WL 946703, at \*12 & n. 70 (S.D.N.Y. Mar. 27, 2007) (finding that plaintiff's allegations of bruises, abrasions, slight bleeding, and scratches, did not constitute a sufficiently serious condition giving rise to a medical indifference claim); *Sonds*, 151 F.Supp.2d at 311 (holding that a cut finger, even where the skin had "ripped off" was insufficiently serious); *Bonner v. New York City Police Dep't*, No. 99–CV–3207, 2000 WL 1171150, at \*4 (S.D.N.Y. Aug. 17, 2000) (holding that the inability to "close" a finger due to swelling in one's hand is insufficiently serious to constitute Eighth Amendment violation); *Gomez v. Zwillinger*, 1998 U.S. Dist. LEXIS 17713, at \*16 (S.D.N.Y. November 6, 1998) (holding that back pain and discomfort were not sufficiently serious); *Jones v. New York City Health & Hosp. Corp.*, No. 84–CV–5372, 1984 WL 1280 at \*1 (S.D.N.Y. November 28, 1984) (dismissing claim for deliberate medical indifference where plaintiff challenged treatment for bruises on head and body). Even construing his complaint in the light most favorable to plaintiff, I am unable to conclude that the allegations meet the objective test for a deliberate indifference claim. [6]

\*10 Finally, even if I were to find that the allegations in plaintiff's complaint satisfy the objective test, they would not meet the subjective test. There are simply no allegations in plaintiff's complaint to plausibly suggest that, in denying plaintiff's requests for medical care, defendants Imfeld and Johnson acted with "deliberate indifference." *Salahuddin*, 467 F.3d at 280. The complaint, in contrast, alleges only that defendants Imfeld and Johnson denied plaintiff's request for medical care "after seeing [plaintiff's] injuries." Complaint (Dkt. No. 1) at 14.Bearing in mind that plaintiff's complaint provides little details as to the nature of his injuries, and only alleges that Lewis sustained an injury to his cheeks and an eyelid, I cannot conclude that, even assuming that defendants Imfeld and Johnson did deny plaintiff's medical care, that they were "actually aware of a substantial risk" to plaintiff's health in so doing. *See Salahuddin*, 467 F.3d at 280 (holding that deliberate indifference "requires that the charged official

act ... while actually aware of a substantial risk that serious inmate harm will result").

For all of these reasons, I recommend that defendants' motion to dismiss for failure to state a claim be granted as to plaintiff's deliberate indifference claim against defendants Imfeld and Johnson.

**E. Plaintiff's Claims of Threats and Harassment**

Plaintiff's complaint alleges that, on February 15, 2009, as a prelude to the assault by defendant Sheridan, he was threatened and harassed by corrections officers, including defendant Havernack. Complaint (Dkt. No. 1) at 7. In their motion, defendants also seek dismissal of any claims that may be asserted by those allegations. Defs.' Memo. of Law (Dkt. No. 30, Attach.1) at 10–11.

It is well recognized that "42 U.S.C. § 1983 is not designed to rectify harassment or verbal abuse."*Gill v. Hoadley*, 261 F.Supp.2d 113, 129 (N.D.N.Y.2003); *Aziz Zarif Shabazz v. Pico*, 994 F.Supp. 460, 474 (S.D.N.Y.1998). Thus, "[v]erbal harassment alone, unaccompanied by any injury, no matter how inappropriate, unprofessional, or reprehensible it might seem, does not rise to the level of an Eighth Amendment violation."*Carpio v. Walker*, No. 95–CV–1502, 1997 WL 642543, at \*6 (N.D.N.Y. Oct.15, 1997) (Pooler, J. and DiBianco, M.J.) (citing *Purcell*, 790 F.2d at 165 (holding that name-calling is insufficient to allege a constitutional violation)); *see also Moncrieffe v. Witbeck*, No. 97–CV–253, 2000 WL 949457, at \*3 (N.D.N.Y. June 29, 2000) (Mordue, J.) (finding allegations that the defendants laughed at the plaintiff while he showered did not give rise to liability under section 1983); *Abnut v. Cleary*, 913 F.Supp. 160, 165 (W.D.N.Y. Jan.8, 1996) ("It is well established that[ ] mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations.").

In this instance, because plaintiff's allegations of threats are insufficient to support a claim under section 1983, I recommend that defendants' motion to dismiss as it relates to plaintiff's claims of verbal threats against defendant Havernack be granted.

**F. Conspiracy**

\*11 Plaintiff's complaint alleges the existence of a conspiracy among the defendants and other prison officials to cover-up the events giving rise to this action and falsify official documents in order to suggest that plaintiff's

2016 WL 1295137

Lewis v. Havernack, Not Reported in F.Supp.2d (2013)

2013 WL 1294606

injuries were self-inflicted. Complaint (Dkt. No. 1) at 13, 16. Specifically, plaintiff alleges that defendants Chapman and Imfeld conspired to violate his constitutional rights when they allegedly drafted a false misbehavior report accusing Lewis of self-inflicting the injuries, which plaintiff alleges, resulted from defendant Sheridan's assault. *Id.* at 16. Plaintiff also alleges that defendant Sheridan and Havernack conspired to conceal defendant Sheridan's alleged assault on plaintiff by moving plaintiff into a different room after the alleged assault, and refusing to provide plaintiff with immediate medical care. *Id.* at 13. Defendants seek dismissal of these claims, arguing that plaintiff's complaint fails to allege facts plausibly suggesting a conspiracy, and, in any event, the claims are barred by the intra-agency conspiracy doctrine. Defs.' Memo. of Law (Dkt. No. 30, Attach.1) at 11–12.

"To prove a [section] 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson,* 200 F.3d 65, 72 (2d Cir.1999); *Malsh v. Austin,* 901 F.Supp. 757, 763 (S.D.N.Y.1995)." A complaint containing only conclusory, vague, or general allegations of a conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." *Sommer v. Dixon,* 709 F.2d 173, 175 (2d Cir.1983).

As it relates to plaintiff's claim of conspiracy against defendants Chapman and Imfeld, "a prison inmate has no general right to be free from being falsely accused in a misbehavior report." *Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir.1997); *see also Applewhite v. Sheahan,* No. 08–CV–6045, 2013 WL 144957, at *10 (W.D.N.Y. Jan.11, 2013) (dismissing the plaintiff's claim arising from allegations that the defendant filed a false misbehavior report against the plaintiff to disguise the fact that the defendant stole the plaintiff's legal books)."There must be more, such as retaliation against the prisoner for exercising a constitutional right."*Boddie,* 105 F.3d at 862. Where an alleged false misbehavior report is filed against a prisoner, his "due process rights are protected if he is granted a hearing on the charges and given an opportunity to rebut them[.]"*Jones v. Coughlin,* 45 F.3d 677, 679 (2d Cir.1995).

Here, the allegation that defendants Chapman and Imfeld conspired to file a false misbehavior report against plaintiff is not cognizable under section 1983 because plaintiff has no general constitutional right to be free from being falsely accused in a misbehavior report. *See Boddie,* 105 F.3d at 862 (dismissing the plaintiff's conspiracy claim arising from allegations that the defendants conspired to retaliate against him by filing a false misbehavior report). For this reason, I recommend defendants' motion to dismiss be granted as it relates to plaintiff's conspiracy claim asserted against defendants Chapman and Imfeld.

**\*12** As it relates to the conspiracy claim against defendants Sheridan and Havernack, I likewise find that plaintiff has failed to state a claim because there is no constitutional right to be free from the cover-up of a past constitutional violation. Generally, the case law that addresses allegations that a defendant conspired to conceal a violation of a plaintiff's constitutional rights assess whether the allegations are sufficient to state a claim of conspiracy for denying the plaintiff's constitutional right to access the courts. *See, e.g., McGarty v. Town of Carmel,* 997 F.Supp. 435, 437 (S.D.N.Y.1998) (finding that, "for purposes of a motion to amend, plaintiff has made an adequate showing of deprivation of access to courts, and plaintiff's assertions are sufficient to state a [section] 1983 conspiracy claim" where the pleadings alleged that the defendants conspired to conceal evidence that they used excessive force). Here, however, plaintiff has failed to allege any facts that plausibly suggest that his right to access the courts has been denied. Indeed, plaintiff's complaint fails to allege any facts that plausibly suggest that any of plaintiff's constitutional rights have been violated as a result of the alleged conspiracy between defendants Sheridan and Havernack to conceal defendant Sheridan's alleged assault. For this reason, I recommend that defendants' motion to dismiss plaintiff's conspiracy claim as against defendants Sheridan and Havernack be granted.

For the sake of completeness, I will also briefly address whether plaintiff's conspiracy claims are barred, as argued by defendants, by the intracorporate conspiracy doctrine. That doctrine provides that "there is no conspiracy if the conspiratorial conduct challenged is essentially a single act by a single corporation, acting exclusively through its own directors, officers, and employees, each acting within the scope of his employment."*See, e.g., Hermann v. Moore,* 576 F.2d 453, 459 (2d Cir.1978); *see also Hartline v. Gallo,* 546 F.3d 95, 99 n. 3 (2d Cir.2008). While the Second Circuit has applied this doctrine in the context of claims arising under 42 U.S.C. § 1985, *see, e.g., Hermann,* 576 F.2d at 459; *Girard v. 94th and Fifth Ave. Corp.,* 530 F.2d 66, 72 (2d Cir.1976), it has not considered the doctrine's applicability to conspiracy claims arising under section 1983. *See Alvarez v. City of New*

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 155 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Lewis v. Havernack, Not Reported in F.Supp.2d (2013)

2013 WL 1294606

York, No. 11–CV5464, 2012 WL 6212612, at *3 and n. 21 (S.D.N.Y. Dec. 12, 2012) (finding that the Second Circuit has "applied the intracorporate conspiracy doctrine to Section 1985 claims[, b]ut it has not considered its applicability to conspiracy claims brought under Section 1983"); *see also Appel v. Spiridon, No. 06–CV1177, 2011 WL 3651353, at *19 (D.Conn. Aug. 18, 2011)* (same). Because several district courts within this circuit have applied the doctrine to section 1983 claims,[7] and I have not found any controlling authority to the contrary, I find that the intracorporate conspiracy doctrine applies to the conspiracy claims against defendants Chapman and Imfeld arising under section 1983.

**\*13** As it relates to the conspiracy claims against defendants Sheridan and Havernack, however, I find that the "personal stake" exception to the intracorporate conspiracy doctrine precludes its applicability. Under this exception, the doctrine does not apply "to individuals within a single entity when they are pursuing personal interests wholly separate and apart from the entity."*Bond v. Bd. of Educ. of the City of New York*, No. 97–CV–1337, 1999 WL 151702, at *2 (E.D.N.Y. Mar.17, 1999). For the exception to apply, "[t]he plaintiff must ... allege that [the defendants] acted other than in the normal course of their corporate duties."*Girard, 530 F.2d at 72* (internal quotation marks omitted). Here, plaintiff's complaint clearly alleges that defendants Sheridan and Havernack allegedly moved plaintiff from the location where he was allegedly assaulted while he was still unconscious and refused him immediate medical care in an attempt to conceal defendant Sheridan's alleged assault on plaintiff. Complaint (Dkt. No. 1) at 13.These allegations plausibly suggest that defendants Sheridan and Havernack acted in their own personal interest, not in the interest of DOCCS, in covering up defendant Sheridan's alleged excessive force. *See Hill v. City of New York*, 2005 WL 3591719, at *6 (E.D.N.Y. Dec.30, 2005) (finding that the plaintiff's allegations that the defendants conspired to cover-up one of the defendant's alleged use of excessive force was sufficient to apply the "personal stake" exception to the intracorporate conspiracy doctrine); *Alvarez*, 2012 WL 6212612, at *3 (same). I therefore recommend a finding that the intracorporate conspiracy doctrine does not apply to plaintiff's conspiracy claims against defendants Sheridan and Havernack.

**G. Plaintiff's Motion for Leave to Amend**

In response to defendants' motion, plaintiff has requested leave to amend to his complaint. Dkt. No. 46.In his proposed amended complaint, plaintiff eliminates his claims of threats and conspiracy. *See generally*Dkt. No. 46, Attach. 2. However, the proposed amended complaint retains a medical indifference claim against defendants Sheridan, Chapman, Imfeld, and Johnson.*Id.* at 13.Defendants oppose plaintiff's motion for leave to amend, arguing that the claims set forth in his proposed amended complaint are futile in light of his failure to exhaust administrative remedies, and that the allegations set forth in that pleading do not cure the deficiencies as it relates to the medical indifference cause of action. Dkt. No. 47 at 4–11.

Motions for leave to amend are governed by Rule 15(a) of the Federal Rules of Civil Procedure which provides, in pertinent part, that unless amendment as a matter of right is permitted—circumstance that is not applicable here—a party may amend its pleading "only with the opposing party's written consent or the court's leave. Fed. Riv. Civ. P. 15(a)(2)."The court should freely give leave when justice so requires."*Id.* Under Rule 15(a), leave to amend ordinarily should be liberally granted absent undue delay, bad faith, dilatory tactics, undue prejudice in being served with the proposed pleading, or futility. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Elma RT v. Landesmann Int'l Mktg. Corp.*, No. 98–CV–3662, 2000 WL 297197, at *3 (S.D.N.Y. Mar.22, 2000) (citing *Foman* ).

**\*14** Notwithstanding the familiar and well accepted principle that leave to amend should be granted freely, if a claim contained in a proposed amended complaint would be vulnerable in the face of a Rule 12(b)(6) motion, then permitting amendment would be an act of futility that should not be sanctioned. *See, e.g., Saxholm AS v. Dynal, Inc.*, 938 F.Supp. 120, 124 (E.D.N.Y.1996); *In re Boesky Sec. Litig.*, 882 F.Supp. 1371, 1379 (S.D.N.Y.1995). If, on the other hand, a "proposed claim sets forth facts and circumstances which may entitle the plaintiff to relief, then futility is not a proper basis on which to deny amendment."*Saxholm*, 938 F.Supp. at 124 (citing *Allstate Ins. v. Administratia Asigurarilor De Stat*, 875 F.Supp. 1022, 1029 (S.D.N.Y.1995).

As is the case with respect to his original complaint, plaintiff's proposed amended complaint sets forth a plausible cause of action for the use of excessive force as against defendant Sheridan.[8] Dkt. No. 46, Attach. 2 at 6. Moreover, plaintiff's proposed amended complaint, like his original complaint, alleges that plaintiff fulfilled his obligation to exhaust administrative remedies before filing suit. Dkt. No. 46,

Case 9:22-cv-00638-DNH-TWD   Document 58   Filed 02/28/25   Page 156 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Lewis v. Havernack, Not Reported in F.Supp.2d (2013)

2013 WL 1294606

Attach. 2 at 3–4. The proposed amended complaint similarly asserts a medical indifference claim, as does its predecessor, but does not cure the deficiencies identified in this report and recommendation. For example, plaintiff's proposed amended complaint fails to allege facts plausibly suggesting that his injuries were "sufficiently serious." *See Solahuddin, 467 F.3d at 280* (finding that, to determine whether "the inadequacy of medical care is sufficiently serious" when a plaintiff alleges "failure to provide any treatment," the court "examine[s] whether the inmate's medical condition is sufficiently serious."). Instead, plaintiff's proposed amended complaint alleges only that his face "swelled up ... with his right eye shut closed" and that he experienced pain as a result of his injuries. Dkt. No. 46, Attach. 2 at 8. As a result, I find that it would be futile to permit plaintiff to file his proposed amended complaint, and therefore recommend that his motion for leave to amend be denied.

**H. Whether to Permit Further Amendment**

Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend *at least* once "when a liberal reading of the complaint gives any indication that a valid claim might be stated."*Branum v. Clark, 927 F.2d 698, 704–05 (2d Cir.1991); see also*Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires"); *see also Mathon v. Marine Midland Bank, N.A., 875 F.Supp. 986, 1003 (E.D.N.Y.1995)* (permitting leave to replead granted where court could "not determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy."). Given the procedural history of this action, I must next determine whether to recommend that plaintiff be afforded the benefit of this general rule.

**\*15** As plaintiff seemingly recognizes, and as is reflected in his proposed amended complaint, the claims arising from allegations of the issuance of false misbehavior reports, harassment, threatening conduct, and conspiracy are not plausibly stated, nor are they likely to be in any future amended complaint. *See generally*Dkt. No. 46, Attach. 2. In contrast, while I also have significant reservations as to plaintiff's ability to state facts demonstrating the existence of a cognizable medical indifference claim for the reasons set forth above, I nonetheless recommend that he be granted leave to amend in order to attempt to plead facts that would support such a claim.

In formulating a new, amended complaint, plaintiff is advised that the law in this circuit clearly provides that " 'complaints relying on the civil rights statutes are insufficient unless

they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.' " *Hunt v. Budd, 895 F.Supp. 35, 38 (N.D.N.Y.1995)* (McAvoy, J.) (quoting *Barr v. Abrams, 810 F.2d 358, 363 (2d Cir.1987)), Pourzandvakil v. Humphry, No. 94–CV–1594, 1995 WL 316935, at \*7 (N.D.N.Y. May 22, 1995)* (Pooler, J.). In his amended complaint, plaintiff therefore must clearly set forth the facts that give rise to the claim, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should specifically allege facts demonstrating the specific involvement of each of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *See Bass v. Jackson, 790 F.2d 260, 263 (2d Cir.1986)*

**IV. SUMMARY AND RECOMMENDATION**

Plaintiff's complaint in this action states a plausible claim for use of excessive force against defendant Sheridan. However, his complaint fails to state a cognizable claim for medical indifference, filing a false misbehavior report, threats and harassment, and conspiracy against any of defendants.[9] I therefore recommend dismissal of those claims, with leave to file a proposed amended complaint, in accordance with the local rules of practice for this court, with respect to the plaintiff's medical indifference claim only.

Turning to defendants' argument that plaintiff's complaint should be dismissed on the basis of plaintiff's alleged failure to exhaust his administrative remedies, I conclude that the issue cannot be determined at this early stage of the litigation. As a result, I recommend that this portion of defendants' motion be denied, without prejudice to renewal upon a more robust record, either on motion for summary judgment or at trial.

Based upon the foregoing it is therefore hereby respectfully

RECOMMENDED that defendants' motion to dismiss (Dkt. No. 30) be GRANTED, and that all of plaintiff's claims, except those based upon defendant Sheridan's alleged assault of plaintiff, asserted against defendants in their individual and official capacities be DISMISSED; and it is further

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 157 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)
2016 WL 1295137

Lewis v. Havernack, Not Reported in F.Supp.2d (2013)
2013 WL 1294606

**\*16** RECOMMENDED that plaintiff be given leave to replead only with respect to his deliberate medical indifference cause of action; and it is further

RECOMMENDED that plaintiff's motion for leave to amend (Dkt. No. 46) be DENIED, without prejudice to his right to submit an amended complaint to the court that cures the deficiencies identified in this report and recommendation.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within

FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; Roldan v. Racette, 984 F.2d 85 (2d Cir.1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 1294606

Footnotes

1    In his complaint Lewis acknowledges having brought several other actions in this court, as well as the Western and Southern districts. See Complaint (Dkt. No. 1) at 4–5.A search of the Public Access to Court Electronic Records reveals that plaintiff has filed seven other actions, with varying results, including (1) Lewis v. Martin et al., No. 1:94–CV6873–SHS (S.D.N.Y., filed Sept. 21, 1994) (settled); (2) Lewis v. DeShore et al., No. 1:94–CV7574–SHS (S.D.N.Y., filed Oct. 19, 1994) (settled); (3) Lewis v. Rodriguez, et al., No. 1:95–CV–3572–TPG (S.D.N.Y. filed May 18, 1995) (dismissed pursuant to 28 U.S.C. § 1915(d)); (4) Lewis v. Irvin, et al., No. 1:97–CV–0789–JTE (W.D.N.Y., filed Oct. 8 1997) (summary judgment granted to the defendants); (5) Lewis v. Johnson, et al., No. 9:08–CV–0482–ATB (N.D.N.Y. filed May 12, 2008) (partial verdict in favor of plaintiff after trial); (6) Lewis, et al. v. Patterson, et al., No. 1:08–CV–1130–LEK–DRH (N.D.N.Y. filed Oct. 20, 2008) (dismissed, and subsequent appeal dismissed); and (7) Lewis v. Murphy, et al., No. 9:12–CV–0268–NAM–CFH (N.D.N.Y., filed Feb. 12, 2012) (pending).

2    In light of the procedural posture of this case, the following recitation is drawn principally from plaintiff's complaint, the contents of which have been accepted as true for purposes of the pending motion. See Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint."(citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)); see also Cooper v. Pate, 378 U.S. 546, 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964).

3    Copies of all unreported decisions cited in this document have been appended for the convenience of the pro se plaintiff.

4    In a broader sense, this portion of defendants' motion implicates the sovereign immunity enjoyed by the State. As the Supreme Court has reaffirmed, the sovereign immunity enjoyed by the states is deeply rooted, having been recognized in this country even prior to ratification of the Constitution, and is neither dependent upon nor defined by the Eleventh Amendment. Northern Ins. Co. of New York v. Chatham Cnty., 547 U.S. 189, 193, 126 S.Ct. 1689, 164 L.Ed.2d 367 (2006).

5    By contrast, the Eleventh Amendment does not preclude lawsuits seeking to impose individual or personal liability on state officials under section 1983. Hafer v. Melo, 502 U.S. 21, 30–31, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991).

6    While not considered in making a recommendation concerning defendants' dismissal motion, the medical records submitted by plaintiff in opposition to the pending motion substantiate defendants' contention that, as a result of the alleged assault, Lewis did not suffer a "sufficiently serious" medical condition. See Plaintiff's Response (Dkt. No. 46) at 40–42; see also Donhauser v. Goord, 314 F.Supp.2d 119, 121 (N.D.N.Y.2004) (Hurd, J.) ("[I]n cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider matters outside of the complaint to the extent they 'are consistent with the allegations in the complaint.' "). Those records reveal that, as a result of defendant Sheridan's alleged actions, Lewis suffered from only moderate swelling to his cheek and eyelid, with no other evidence of injury or trauma. Plt.'s Response (Dkt. No. 46) at 41.They also note that, during the examination, plaintiff was argumentative and refused ice offered to address his swelling. Id. at 40.

7    See Anemone v. Metro. Transp. Auth., 419 F.Supp.2d 602, 603–04 (S.D.N.Y.2006) ("In the absence of controlling contrary authority, this court will continue to apply the intracorporate conspiracy doctrine to Section 1983 claims because the doctrine's logic is sound."); Jackson v. New York State, 381 F.Supp.2d 80, 90 (N.D.N.Y.2005) (Munson, J.); Kamara v. City of New York, No. 03–CV–0337, 2005 WL 3113423, at *7 (E.D.N.Y Nov. 21, 2005); Nat'l Congress for Puerto Rican Rights v. City of New York, 75 F.Supp.2d 154, 168–69 (S.D.N.Y.1999).

WESTLAW  © 2016 Thomson Reuters. No claim to original U.S. Government Works.    11

**Trapani v. Pullen, Not Reported in Fed. Supp. (2016)**

2016 WL 1295137

Lewis v. Havernack, Not Reported in F.Supp.2d (2013)

2013 WL 1296606

8    The amended complaint also alleges the failure on the part of other corrections officers to intervene and protect him from the assault. A corrections officer who did not participate in an assault upon an inmate, but was present while it occurred, may nonetheless bear responsibility for any resulting constitutional deprivation. *Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir.1994). A law enforcement official is under an affirmative duty to intervene on behalf of an individual whose constitutional rights are being violated in his presence by other officers. *See Curley v. Village of Suffern,* 268 F.3d 65, 72 (2d Cir.2001) ("Failure to intercede results in [section 1983] liability where an officer observes excessive force being used or has reason to know that it will be used."); *Anderson,* 17 F.3d at 557; *Mowry v. Noone,* No. 02–CV–6257, 2004 WL 2202645, at *4 (W.D.N.Y. Sept. 30, 2004). In order to establish liability on the part of a defendant under this theory, the plaintiff must adduce evidence establishing that (1) the officer had a realistic opportunity to intervene and prevent the harm, (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated, and (3) that officer does not take reasonable steps to intervene. *Henry v. Dinelle,* No. 9:10–CV–0456, 2011 WL 5975027, at *4 (N.D.N.Y. Nov.29, 2011) (Suddaby, J.) (citing *Jean–Laurent v. Wilkinson,* 540 F.Supp.2d 501, 512 (S.D.N.Y.2008). Mere inattention or inadvertence, it should be noted, does not rise to a level of deliberate indifference sufficient to support liability for failure to intervene. *Cf., Schultz v. Amick,* 955 F.Supp. 1087, 1096 (N.D.Iowa 1997) (finding that "liability in a [section] 1983 'excessive force' action cannot be founded on mere negligence") (citing, *inter alia, Daniels v. Williams,* 474 U.S. 327, 335–36, 106 S.Ct. 662, 667, 88 L.Ed.2d 662 (1986)).

9    In their motion, defendants also address a potential due process claim arising from plaintiff's allegation that he was issued a false misbehavior report by corrections officials during the relevant time. Defs.' Memo. of Law (Dkt. No. 30, Attach.1) at 12–13. As discussed above in connection with plaintiff's conspiracy claim against defendants Chapman and Imfeld, the mere allegation that a false misbehavior report has been filed against an inmate does not implicate constitutional conduct.*Boddie,* 105 F.3d at 862; *Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir.1986) "There must be more, such as retaliation against the prisoner for exercising a constitutional right."*Boddie,* 105 F.3d at 862,see also *Franco v. Kelly,* 854 F.2d 584, 589 (2d Cir.1988). In this instance, none of the allegations contained in plaintiff's complaint plausibly suggest that the alleged misbehavior report was issued to further a violation of plaintiff's constitutional rights. As a result, I recommend that this claim, to the extent it is asserted in plaintiff's complaint, be dismissed.

End of Document    © 2016 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 159 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

McCloud v. Tureglio, Not Reported in F.Supp.2d (2008)

2008 WL 1772305

2008 WL 1772305
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Christopher McCLOUD, Plaintiff,

v.

C. TUREGLIO, Correctional Officer,
Greene Correctional Facility, Defendant.

No. 9:07-CV-0650.
|
April 15, 2008.

**Attorneys and Law Firms**

Christopher McCloud, Wallkill, NY, Pro Se.

Hon. Andrew M. Cuomo, Attorney General for the State of
New York, Charles J. Quackenbush, Esq. Assistant Attorney
General, of Counsel, New York, NY, for Defendant.

*ORDER*

NORMAN A. MORDUE, Chief Judge.

**\*1** The above matter comes to me following a Report-
Recommendation by Magistrate Judge George H. Lowe, duly
filed on the 17th day of March 2008. Following ten days from
the service thereof, the Clerk has sent me the file, including
any and all objections filed by the parties herein.

After careful review of all of the papers herein, including
the Magistrate Judge's Report-Recommendation, and no
objections submitted thereto, it is

ORDERED, that:

1. The Report-Recommendation is hereby adopted in its
entirety.

2. The Defendant's motion to dismiss for failure to state a
claim (Dkt. No. 11) [1] is granted.

3. The Court certifies that any appeal of this order would not
be taken in good faith. See 28 U.S.C. § 1915(a)(3).

4. The Clerk of the Court shall serve a copy of this Order upon
all parties and the Magistrate Judge assigned to this case.

IT IS SO ORDERED.

*REPORT-RECOMMENDATION*

GEORGE H. LOWE, United States Magistrate Judge.

This *pro se* prisoner civil rights action, filed pursuant to
42 U.S.C. § 1983, has been referred to me for Report and
Recommendation by the Honorable Norman A. Mordue,
Chief United States District Judge, pursuant to 28 U.S.C.
§ 636(b) and Local Rule 72.3(c) of the Local Rules
of Practice for this Court. In his Complaint, Christopher
McCloud ("Plaintiff") alleges that, on May 31, 2007, at Green
Correctional Facility ("Green C.F."), Correctional Officer C.
Turriglio ("Defendant") physically assaulted and threatened
Plaintiff in violation of his constitutional rights. (Dkt. No. 1,
¶ 6 [Plf's Compl.].) Currently before the Court is Defendant's
motion to dismiss Plaintiff's Complaint for failure to state
a claim upon which relief might be granted, pursuant to
Fed.R.Civ.P. 12(b)(6). (Dkt. No. 11.) For the reasons set forth
below, I recommend that the Court grant Defendants' motion
to dismiss.

**I. BACKGROUND**

**A. Summary of Plaintiff's Complaint**
On June 20, 2007, Plaintiff filed his Complaint in this action.
(Dkt. No. 1 [Plf's Compl.].) The factual allegations giving
rise to Plaintiff's (unspecified) constitutional claim against
Defendant Turriglio are as follows:

> On May 31, [20]07 I came to my
> program late[.] [My program] ... is
> Mess [H]all [during the] P.M. and late
> eve[ning shift]. [F]or coming in late
> I was placed in the pot room[.] [M]y
> regular job title is 2 ser[v]er on the
> C-side line[.][W]hile I was in the pot
> room I was making noise and Officer
> Tureglio [sic] came into the pot room
> and started banging pots and curs[ ]ing
> at me [,] telling me to shut up[.] [A]fter
> that he told me to stop eye balling him
> or he'll pull my eyes from my skull[ ]
> [A]t 2:30 P.M. [it] is count time and

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 160 of 353

**Trapani v. Pullen, Not Reported in Fed. Supp. (2016)**

2016 WL 1295137

McCloud v. Tureglio, Not Reported in F.Supp.2d (2008)

2008 WL 1772305

all inmates must report to the din[ ]ing are[a] for count[.] [A]fter count he called me to his office and took me to the back of the Mess [H]all out of plain view and placed me o[n] the wall and started to slap me [o]n the back of the head[.] [A]fter his as[sa]ult he placed his pocket knife to his face and told me he'll cut hi[m]self and say I did it [in order to] let the other inmates know he's not play[ing around].

**\*2** (Dkt. No. 1, ¶ 6 [Pltf.'s Compl.].) As a result of this alleged misconduct, Plaintiff is requesting three forms of relief: (1) a court order "secur[ing] [Plaintiff's] safety and mak[ing] sure there will be [ ]no [ ] retaliation from coworkers or staff"; (2) a court order directing that a search be performed of Defendant's "file to see if [a]ny complaints or grievances [have] been filed against him in the past concerning brutality"; and (3) "$1,000,000 for mental anguish and distress."(*Id.* at ¶¶ 7, 9.)

It is important to note that, in his form Complaint, Plaintiff provided some information regarding his efforts to exhaust his available administrative remedies before filing this action. Specifically, in response to a question reading "Is there a prisoner grievance procedure at this facility?"Plaintiff checked the box reading "Yes." (*Id.* at ¶ 4[a].) In response to a question reading "If your answer to 4(a) is YES, did you present the facts relating to your complaint in this grievance program?"Plaintiff checked the box reading "No." (*Id.* at ¶ 4[b].) In response to a question reading "If your answer to 4(b) is NO: Why did you choose to not present the facts relating to your complaint in the prison's grievance program?"Plaintiff stated, "Because I fear retaliation from officers and the officer [I]'m fil[ ]ing against brng[s] about the grievance system not working and he claims his uncle is a superintendent." (*Id.*) Finally, in elaboration on this last assertion, Plaintiff stated later on in the Complaint that "[t]he officer [I]'m fil[ ]ing [this action] against[ ] uncle [sic] is a Superintendent here at Green Corr." (*Id.* at ¶ 4[c].)

**B. Plaintiff's Abandoned Efforts to File an Amended Complaint and a Supplemental Complaint**

On June 22, 2007, Plaintiff filed a letter to the Clerk of the Court. (Dkt. No. 6.) The stated purpose of the letter was to serve "as evidence in [Plaintiff's] case." (*Id.*) The letter requested that his Complaint be amended to reflect that the correct spelling of Defendant's name was "C. Turriglio," not

"Tureglio." (*Id.*) (The Court subsequently directed that the docket be so amended.) In addition, the letter requested that a claim be "add [ed] to [Plaintiff's] complaint...." (*Id.*)The factual allegation giving rise to this claim was as follows:

> On June 18, 2007 Officer Turriglio made intimidating comments [to] me [and] taunt[ed] me[,] saying ['][McCloud knows I doesn't [sic] play[.] Let them know [.'] [By 'them' he was] talking about new Mess [H]all workers. I assumed he was back from vacation time or answering a grievance because he [was] brng[a]in' about laying on the beach when some inmates here at the facility filed a grievance against him.

(*Id.*)

On July 5, 2007, I directed the Clerk to strike Plaintiff's submission from the docket for two reasons: (1) to the extent that Plaintiff was requesting court permission for leave to amend his Complaint, such permission was unnecessary under Fed.R.Civ.P. 15(a) since Defendant had not yet filed a responsive pleading; and (2) to the extent that Plaintiff was requesting that his (one-page, single-spaced) letter serve as his amended pleading, such an amendment was prohibited by Local Rule 7.1(a), which required that amended pleadings be complete pleadings that superseded the original pleadings in all respects. (Dkt. No. 7.)

**\*3** However, Plaintiff did not subsequently file an Amended Complaint. Rather, on August 8, 2007, Plaintiff filed another letter with the Court. (Dkt. No. 12.)The stated purpose of the letter was to again request "the court[']s permission to amend [Plaintiff's] complaint." (*Id.*) Although Plaintiff used the word "amend," it was clear that what he was intending was a "supplemental" complaint. *See* Fed.R.Civ.P. 15(d). This is because the factual allegations he asserted in the letter arose from incidents occurring *after* the filing of his Complaint on June 20, 2007. (Dkt. No. 12.)In pertinent part, Plaintiff alleged as follows:

> On July 14, [20]07 the very next day [after speaking to a prison psychologist and Iman about the anxiety I was suffering due to my experience with Officer Turriglio] I was approached by [O]fficer Turriglio once I arrived ... [at my] program Officer Turriglio told me [']I want to talk to you[.'] After program assi[ ]g[n]ments ... [were] completed

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 161 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

McCloud v. Tureglio, Not Reported in F.Supp.2d (2008)

2008 WL 1772305

[O]fficer Turriglio pulled me to the side away from other inmate[ ]mess hall workers on the B side in the din[ ]ing area; [O]fficer Turriglio['s] exact words ... [were] "I spok[e] to the Imam [about] what[']s going on[.] [Y]ou can talk to me man to man. I must admit I was nerv ous when [O]fficer Turriglio approached me. I started studdering [sic] when I spoke and made up a lie.... After that [O]fficer Turriglio walked away.

(*Id.* at 1.) In addition, Plaintiff attempted to assert a claim against various (unidentified) nonparties. In pertinent part, Plaintiff alleged as follows:

> On July 24, [20]07 I was called to the sergeant[']s office[ ] and forced to write a statement [about what had taken place between Plaintiff and Officer Turriglio] that is false.... When I arrived at the sergeant[']s office[,] three sergeants or lieutenants ... [were] there[.] [O]ne left and the other two stayed[.] [O]ne of them asked what happen[ed] between me and Turriglio. [The] [I]nspector [G]eneral's [O]ffice [had] informed them of what [had] happen[ed]. One of the sergeant[']s or lieutenants told me what to write. I tried to write what really took place between me and [O]fficer Turriglio. I was told ["]that [']s not good enough.['] I informed the sergeant or lieutenants that I[had] filed a federal complaint against [O]fficer Turriglio. I was still told what to write[.][W]hen I refused that[']s when threats ... [were] made and I was called a nigger. I was told [I"]m not leaving the sergeant[']s office intell [sic] I give them what th[e]y want [sic]... I repeat [that] my statement was false and forced and I took no oath[.] it was given out of fear for my safety.... I can [']t identify [the two sergeants or lieutenants] by name because th[e]y were not wearing badges or name tags.... I [would] like to add [as defendants in my action] Green Cor. Fac.[,] D.O.C. as a while[,] [and the] New Yo[r]k State employees here at Greene [Correctional Facility] ....

*4    (*Id.* at 2.)

On August 13, 2007, I directed the Clerk to strike Plaintiff's submission from the docket for two reasons: (1) to the extent that Plaintiff was requesting court permission for leave to supplement his Complaint, such permission was unnecessary under Fed.R.Civ.P. 15(a) since Defendant had not yet filed a responsive pleading; and (2) to the extent that Plaintiff was requesting that his (two-page, single-spaced) letter serve as his supplemental pleading, such a supplemental pleading was not in conformity with Fed.R.Civ.P. 10(b), Local Rule 10. 1, and Local Rule 7.1(a)(4) in that the document was not double spaced, the text was not broken down into paragraphs, and the paragraphs were not numbered consecutively to the paragraphs contained in the original pleading. (Dkt. No. 14.)

However, Plaintiff did not subsequently file a Supplemental Complaint. Rather, on August 29, 2007, Plaintiff filed another letter with the Court. (Dkt. No. 15.)In the letter, Plaintiff requested "the court[']s permission to make a formal complaint, 'not to amend my complaint ' " (*Id.* at 1.) The claim that Plaintiff wished to assert arose from events occurring on August 21, 2007, at Greene C.F., involving the delayed arrival of a piece of his legal mail.(*Id.* at 1-2.)More specifically, Plaintiff alleged that (1) at approximately 3:30 p.m. in Plaintiff's housing unit, Correctional Officer Forbes handed Plaintiff a piece of legal mail (a time-sensitive court order issued by the U.S. District Court for the Southern District of New York on May 31, 2007) unaccompanied by the addressed envelope in which it had arrived at the prison, and (2) that same day, while signing for legal mail (from the New York State Court of Claims) in front of Officer Turriglio at the law library, Plaintiff was led to "fear [that] Officer Turriglio has tampered with my mail ... [because he was] the officer who had access to all inmate[']s legal mail."(*Id.*) As a form of relief, Plaintiff requested that the Court "issue a[n] order to have the Defendant Officer Turriglio removed from the law library intell [sic] this matter is resolved."(*Id.* at 2.)

On September 6, 2007, I directed the Clerk to strike Plaintiff's submission from the docket for the exact two reasons given in my Order of August 13, 2007 (i.e., that Plaintiff need not request permission to file a Supplemental Complaint since he had the right to do so without permission under the circumstances, and that his two-page, single-spaced letter could not serve as his supplemental pleading since the document was not double spaced, the text was not broken down into paragraphs, and the paragraphs were not numbered consecutively to the paragraphs contained in the original

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 162 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

McCloud v. Tureglio, Not Reported in F.Supp.2d (2008)
2008 WL 1772305

pleading), as well as for the additional reason that Plaintiff had failed to indicate that he had served his submission on opposing counsel, as required by Local Rule 5.1(a). (Dkt. No. 16.)

However, again, Plaintiff did not subsequently file a Supplemental Complaint.

**C. Defendant's Motion to Dismiss and Plaintiff's Response**

*5 On August 2, 2007, Defendant filed a motion to dismiss Plaintiff's Complaint for failure to state a claim upon which relief might be granted, pursuant to Fed.R.Civ.P. 12(b)(6). (Dkt. No. 11.)Defendant's motion is premised on two independent grounds: (1) that Plaintiff's action is barred by the Prison Litigation Reform Act ("PLRA") due to his failure to exhaust his available administrative remedies before filing this action; and (2) that Plaintiff's action is barred by the PLRA since that statute requires that any inmate claiming damages related to mental and emotional distress, as is Plaintiff, must make a prior showing of physical injury, which Plaintiff has not made. (Dkt. No. 11, Part 2, at 4-6 [Def.'s Memo. of Law].)

In response to Defendant's first argument (i.e., regarding Plaintiff's failure to exhaust his available administrative remedies), Plaintiff argues that (1) Defendant's own actions inhibited Plaintiff's exhaustion of administrative remedies so as to estop Defendant from asserting Plaintiff's failure to exhaust as a defense, and/or (2) under the circumstances, special circumstances existed justifying his failure to exhaust his administrative remedies. (Dkt. No. 18, Plf.'s Memo. of Law, "Point I.") In response to Defendant's second argument (i.e., regarding Plaintiff's failure to make a prior showing of physical injury), Plaintiff essentially argues that the "continuous injuries" inflicted on Plaintiff by Defendant constitute the showing of physical injury required by the PLRA. (Dkt. No. 18, Plf.'s Memo. of Law, "Point II.")

**II. RECENTLY CLARIFIED LEGAL STANDARD FOR MOTIONS TO DISMISS**

Under Fed.R.Civ.P. 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."Fed.R.Civ.P. 12(b)(6). It has long been understood that a defendant may base such a motion on either or both of two grounds: (1) a challenge to the "sufficiency of

the pleading" under Rule 8(a)(2), [1] or (2) a challenge to the legal cognizability of the claim. [2]

Rule 8(a)(2) requires that a pleading include "a short and plain statement of the claim showing that the pleader is entitled to relief."Fed.R.Civ.P. 8(a)(2). Such a statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." [3] The purpose of this rule is to "facilitate a proper decision on the merits." [4] A complaint that fails to comply with this rule "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims." [5]

The Supreme Court has long characterized this pleading requirement under Rule 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement. [6] However, it is well established that even this liberal notice pleading standard "has its limits." [7] As a result, several Supreme Court and Second Circuit decisions exist, holding that a pleading has failed to meet this liberal notice pleading standard. [8]

*6 Most notably, in the recent decision of *Bell Atl. Corp. v. Twombly,* the Supreme Court, in reversing an appellate decision holding that a complaint had stated a claim upon which relief could be granted, "retire[d]" the famous statement by the Court in *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."127 S.Ct. 1955, 1968-69 (2007). [9] Rather than turning on the conceivability of an actionable claim, the Court clarified, the Rule 8 standard turns on the "plausibility" of an actionable claim. *Id.* at 1965-74.More specifically, the Court held that, for a plaintiff's complaint to state a claim, his "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]" assuming, of course, that all the allegations in the complaint are true. *Id.* at 1965 [citations omitted]. What this means, on a practical level, is that there must be "plausible grounds to infer [actionable conduct]," or, in other words, "enough fact to raise a reasonable expectation that discovery will reveal evidence of [actionable conduct]."*Id.*; *see also Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir.2007) ("[W]e believe the [Supreme] Court [in *Bell Atlantic Corp. v. Twombly* ] is ... requiring a flexible 'plausibility standard,'

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 163 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

McCloud v. Tureglio, Not Reported in F.Supp.2d (2008)

2008 WL 1772305

which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible.* ") [emphasis in original].

Having said that, it should be emphasized that, "[i]n reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." [10] Moreover, it should be noted that "[t]his standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se.*" [11] In other words, while all pleadings are to be construed liberally, *pro se* civil rights pleadings are generally to be construed with an *extra* degree of liberality. Indeed, generally "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest." [12] In addition, when addressing a *pro se* complaint, generally a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." [13]

However, when a plaintiff is proceeding *pro se*, "all normal rules of pleading are not absolutely suspended." [14] Moreover, an opportunity to amend should be denied where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it." [15]

*7 Finally, it should be remembered that Fed.R.Civ.P. 12(b)(6) motions to dismiss are limited to the facts alleged in the complaint and must be converted into a Fed.R.Civ.P. 56 motion for summary judgment if the court considers materials outside the pleadings. [16] However, of course, the court may, without converting the motion to dismiss into a motion for summary judgment, consider any documents provided by the plaintiff in opposition to defendants' motion to dismiss, *to the extent those documents are consistent with the allegations in the complaint.* [17]

**III. ANALYSIS**

As stated above in Part I.C. of this Report–Recommendation, Defendant's motion is premised on two independent grounds: (1) that Plaintiff's action is barred by the Prison Litigation Reform Act ("PLRA") due to his failure to exhaust his available administrative remedies before filing this action; and (2) that Plaintiff's action is barred by the PLRA since that statute requires that any inmate claiming damages related to mental and emotional distress, as is Plaintiff, must make

a prior showing of physical injury, which Plaintiff has not made. (Dkt. No. 11, Part 2, at 4-6 [Def.'s Memo. of Law].) Because I conclude that Defendant's lack-of-physical-injury argument for dismissal is somewhat stronger than is his failure-to-exhaust argument, I address the lack-of-physical-injury argument first.

**A. Requirement of Physical Injury**

The Prison Litigation Reform Act of 1995 ("PLRA") provides, in pertinent part, as follows: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C.1997e(e).

Here, Plaintiff alleges that, on May 31, 2007, Defendant (1) "bang[ed] pots" in the prison's "pot room," (2) "curs[ed]" at Plaintiff, (3) told Plaintiff "to shut up," (4) told Plaintiff to stop "eye balling him" or he would "pull [Plaintiff's] eyes from [his] skull, (5) "placed [Plaintiff] o[n] the wall and started to slap me [o]n the back of the head," and (6) "placed his pocket knife to his [own] face and told [Plaintiff] he'll cut hi[m]self and say I did it [in order to] let the other inmates know he's not play[ing] around]." (Dkt. No. 1, * 6 [Plt's Compl.].) As a result of this misconduct, Plaintiff alleges that he suffered "mental anguish and distress." (*Id.* at ¶¶ 7, 9.)

These factual allegations do not plausibly suggest that Plaintiff suffered any *physical injury* as a result of Defendant's alleged misconduct. Generally, some slaps on the back of the head do not constitute a cognizable *physical injury* under the PLRA. *See Jackson v. Johnson,* 04-CV-0110, 2005 U.S. Dist. LEXIS 21720, at *18-19, 32 (M.D. Ga. June 17, 2005) (no physical injury under PLRA occurred where corrections officer, *inter alia,*"slapp[ed] [prisoner] in the face immediately [after slouting derogatory remark to him]"). This is especially true where, as here, there is no allegation that the slaps resulted in any observable or diagnosable medical condition requiring treatment by a medical care professional. *See Jarrieti v. Wilson,* 162 Fed. App'x 394, 400-01 (6th Cir.2005) (mild swelling of left too with some pain but no need for medical treatment was not cognizable physical injury under PLRA); *Dixon v. Toole,* 225 Fed. App'x 797, 799 (11th Cir.2007) ("mere bruising from the application of restraints [resulting in welts]" was not cognizable physical injury under PLRA); *Siligar v. Hightower,* 112 F.3d 191, 193-94 (5th Cir.1997) (prisoner's "sore, bruised ear lasting for three days" was not cognizable physical injury under PLRA); *cf. Liner v. Goord,* 196 F.3d 132, 135 (2d Cir.1998) (citing

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 164 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

McCloud v. Tureglio, Not Reported in F.Supp.2d (2008)

2008 WL 1772305

*Silgar v. Hightower* for the point of law that the physical injury under the PLRA must be more than "de minimis"), *accord, Voorhees v. Goord,* 05-CV-1407, 2006 WL 1888638, at *10, n. 2 (S.D.N.Y. Feb. 24, 2006) (same), *Leon v. Johnson,* 96 F.Supp.2d 244, 248 (W.D.N.Y.2000) (same). [18]

**\*8**  I note that *repeated punches* by correctional officials (while, of course, deplorable if unprovoked) have been specifically held by district courts in this Circuit to not constitute *physical injury* under the PLRA, where they resulted in only superficial and temporary irritations or abrasions. *See Espinal v. Goord,* 00-CV-2242, 2001 WL 476070, at *3-4, 12-13 (S.D.N.Y. May 7, 2001) ("red face" suffered by inmate after correctional officer "struck [him] a couple times," "punch[ing][him] in the head and face," did not constitute physical injury cognizable under PLRA); *Warren v. Westchester County Jail,* 106 F.Supp.2d 559, 563, 569 (S.D.N.Y.2000) (minor scratches suffered by jail inmate as a result of two to three punches by guard, including two scratches to inmate's face, and very small cut inside mouth, did not constitute physical injury cognizable under PLRA); *cf. Abreu v. Nicholls,* 04-CV-7778, 2007 WL 2111086, at *5 (S.D.N.Y. July 24, 2007) [collecting cases in which minor blows to inmates' faces and heads were not actionable under the Eighth Amendment]. [19]

Furthermore, even if (out of special solicitude to Plaintiff) I were to consider the factual allegations contained in Plaintiff's three aborted efforts at filing an amended or supplemental pleading, and the factual allegations contained in Plaintiff's papers in opposition to Defendant's motion, I would reach the same conclusion. None of those documents assert any allegations plausibly suggesting that Plaintiff suffered any physical injury as a result of Defendant's alleged misconduct on May 31, 2007. (*See* Dkt. No. 6 [Plf.'s Letter filed 6/22/07]; Dkt. No. 12 [Plf.'s Letter filed 8/8/07]; Dkt. No. 15 [Plf.'s Letter filed 8/29/07]; Dkt. No. 18 [Plf.'s Opposition Papers].)

Plaintiff alleges, in his letter to the Court of June 22, 2007, that, on June 18, 2007, Officer Turriglio made "intimidating comments" to Plaintiff, and "taunt[ed]" him, by saying to other Mess Hall workers, "McCloud knows I doesn't [sic] play. "(Dkt. No. 6.) He alleges, in his letter to the Court of August 8, 2007, that, on July 14, 2007, during a conversation with Defendant, Plaintiff became "nervous" and "started studdering [sic] when [he] spoke" to Defendant. (Dkt. No. 12, at 1.) He alleges, in his letter to the Court of August 29, 2007, that, on August 21, 2007, he "fear[ed] [that] Officer Turriglio ha[d] tampered with [his] mail ... [because

Officer Turriglio was] the officer who had access to all inmate[']s legal mail." (Dkt. No. 15, at 1-2.)None of these three documents contains any allegation that Plaintiff suffered any physical injury at all. Furthermore, none of the three documents sufficiently connects any of the emotional distress described therein to the incident on May 31, 2007; rather, the documents all allege facts plausibly suggesting that the cause of the emotional distress described in the documents was contact between Plaintiff and Defendant occurring more than two weeks after May 31, 2007.

**\*9**  The closest Plaintiff comes to alleging facts plausibly suggesting that he suffered a "physical injury" as a result of the incident on May 31, 2007, is when he alleges, in his letter to the Court of August 8, 2007, that, on July 14, 2007, a prison psychologist diagnosed Plaintiff with "anxiety." (Dkt. No. 12, at 1.) However, this allegation of "anxiety" is insufficient for two reasons. First, Plaintiff does not allege that the diagnosis of "anxiety" on July 14, 2007, was caused by the incident on May 31, 2007-as opposed to being caused by the incident on June 18, 2007 (which is not at issue in this action), or some sort of pre-existing emotional disorder. Second, and much more importantly, numerous courts have held-correctly, I believe-that physical manifestations of emotional injuries (e.g., anxiety, depression, stress, nausea, hyperventilation, headaches, insomnia, dizziness, appetite loss, weight loss, etc.) are not "physical injuries" for purposes of the PLRA. [20] This is especially true where, as here, the plaintiff does not allege an extensive list of physical manifestations but only one, i.e., "anxiety."

Finally, for reasons similar to those articulated above, I find that the affidavit submitted by Plaintiff in opposition to Defendant's motion alleges no facts plausibly suggesting that he suffered a *physical injury* as a result of the incident on May 31, 2007 (or even any physical injury as a result of subsequent incidents). (Dkt. No. 18, Plf.'s Affid., ¶¶ 4, 5[A]-[H].)

For all of these reasons, I recommend that the Court dismiss Plaintiff's Complaint for failing to allege facts plausibly suggesting that he experienced any *physical injury* as a result of Defendant's alleged misconduct.

**B. Exhaustion of Available Administrative Remedies**
In addition, the PLRA requires, in pertinent part, that prisoners who bring suit in federal court must first exhaust their available administrative remedies: "No action shall be brought with respect to prison conditions under §

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

McCloud v. Tureglio, Not Reported in F.Supp.2d (2008)

2008 WL 1772305

1983... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." [21] "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." [22] The Department of Correctional Services ("DOCS") has available a well-established three-step inmate grievance program. [23]

Generally, the DOCS Inmate Grievance Program ("IGP") involves the following procedure. [24] First, an inmate must file a complaint with the facility's IGP clerk within fourteen (14) calendar days of the alleged occurrence. A representative of the facility's inmate grievance resolution committee ("IGRC") has seven working days from receipt of the grievance to informally resolve the issue. If there is no such informal resolution, then the full IGRC conducts a hearing within seven (7) working days of receipt of the grievance, and issues a written decision within two (2) working days of the conclusion of the hearing. Second, a grievant may appeal the IGRC decision to the facility's superintendent within four (4) working days of receipt of the IGRC's written decision. The superintendent is to issue a written decision within ten (10) working days of receipt of the grievant's appeal. Third, a grievant may appeal to the central office review committee ("CORC") within four (4) working days of receipt of the superintendent's written decision. CORC is to render a written decision within twenty (20) working days of receipt of the appeal.

*10 It is important to emphasize that any failure by the IGRC or the superintendent to adequately respond to a grievance or first-level appeal, respectively, can be appealed to the next level, including CORC, to complete the grievance process. [25] It is also important to emphasize that DOCS provides for an expedited procedure for the review of grievances alleging employee harassment. [26] While this procedure provides for review of the grievance directly by the facility superintendent, it still requires the filing of a grievance by the inmate. [27] Furthermore, the superintendent's decision must be appealed to CORC in order for the inmate to complete the grievance process. [28]

Generally, if a prisoner has failed to follow each of these steps prior to commencing litigation, he has failed to exhaust his administrative remedies. [29] However, the Second

Circuit has held that a three-part inquiry is appropriate where a defendant contends that a prisoner has failed to exhaust his available administrative remedies, as required by the PLRA. [30] First," the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner." [31] Second, if these remedies were available, "the court should ... inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it ... or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." [32] Third, if the remedies were available and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the Court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." [33]

Before I proceed to an analysis of the above-referenced three-part inquiry established by the Second Circuit, I should briefly discuss the appropriateness (or inappropriateness) of a failure-to-exhaust argument during a motion to dismiss for failure to state a claim upon which relief might be granted, pursuant to Fed.R.Civ.P. 12(b)(6).

For some years now, it has been the majority rule (followed by the Second Circuit) that a prisoner's fulfillment of his duty to exhaust his available administrative remedies under the Prison Litigation Reform Act ("PLRA") is not a fact that the prisoner had to plead in order to state a claim under 42 U.S.C. § 1983 but a fact that may be challenged by a defendant through an affirmative defense (such as on a motion for summary judgment pursuant to Fed.R.Civ.P. 56, or a motion to dismiss for lack of subject-matter jurisdiction pursuant to Fed.R.Civ.P. 12[b][1]) established by the PLRA. See, e.g., Jenkins v. Haubert, 179 F.3d 19, 28-29 (2d Cir.1999) ("Because, under the PLRA, a prisoner must exhaust administrative remedies before filing a § 1983 suit ..., a defendant in a prisoner § 1983 suit may also assert as an affirmative defense the plaintiff's failure to comply with the PLRA's requirements."), Snider v. Melindez, 199 F.3d 108, 114 (2d Cir.1999) ("A court may not dismiss for failure to exhaust administrative remedies unless the court determines that such remedies are available. Snider's answers [on a form complaint] cannot establish that.").

Case 9:22-cv-00638-DNH-TWD   Document 58   Filed 02/28/25   Page 166 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

McCloud v. Tureglio, Not Reported in F.Supp.2d (2008)

2008 WL 1772305

**\*11** Recently, the Supreme Court upheld this interpretation of the exhaustion requirement, prohibiting circuits (such as the Sixth, Tenth and Eleventh Circuits) from using exhaustion as a heightened pleading requirement in prisoner civil rights case. *See Jones v. Block,* 127 S.Ct. 910, 914-915, 918-923 (2007). A prisoner has no independent *duty* to plead facts plausibly suggesting that he exhausted his available administrative remedies, in order to state an actionable claim under 42 U.S.C. § 1983. *Block,* 127 S.Ct. at 919-21. "[T]his is not to say that failure to exhaust cannot be a basis for dismissal for failure to state a claim."*Id.* at 921.If a prisoner *chooses* to plead facts regarding exhaustion, and those facts plausibly suggest that he failed to exhaust his available administrative remedies, then his Complaint may be dismissed for failure to state a claim. *Id.* at 920-21.Simply stated, if a prisoner says nothing or little about exhaustion in his *pro se* civil rights complaint, he is likely protected from a Fed.R.Civ.P. 12(b)(6) motion to dismiss premised on failure to exhaust. However, if he says too much about exhaustion in that complaint so that his non-exhaustion is readily apparent, he may "plead himself out of court," as the saying goes. This is what has happened here, according to Defendants.

**1. Availability of Administrative Remedies**

With regard to the first inquiry (i.e., whether the administrative remedies not pursued by Plaintiff were in fact available to Plaintiff), I answer this question in the affirmative, based on even the most liberal of constructions of Plaintiff's Complaint. More specifically, I find that Plaintiff has not alleged any facts plausibly suggesting that administrative remedies were not available to prisoners at Greene C.F. during the time in question (i .e., between the occurrence of the event in question, on May 31, 2007, and the expiration of the deadline by which to file a grievance 14 days later, on or about June 14, 2007). Indeed, Plaintiff quite expressly alleges that there was a prisoner grievance procedure at Greene C.F. (Dkt. No. 1, ¶ 4[a] [Plf.'s Compl.].)

Furthermore, even if (out of special solicitude to Plaintiff) I were to consider the factual allegations contained in Plaintiff's three aborted efforts at filing an amended or supplemental pleading, and the factual allegations contained in Plaintiff's papers in opposition to Defendant's motion, I would reach the same conclusion. None of those documents assert any allegations plausibly suggesting that administrative remedies were not available to prisoners (and Plaintiff in particular) at Greene C.F. during the time in question. (*See*Dkt. No. 6 [Plf.'s Letter filed 6/22/07]; Dkt. No. 12 [Plf .'s Letter filed 8/8/07];

Dkt. No. 15 [Plf.'s Letter filed 8/29/07]; Dkt. No. 18 [Plf.'s Opposition Papers].)

**2. Estoppel**

With regard to the second inquiry (i.e., whether Defendant's own actions inhibited Plaintiff's exhaustion of remedies so as to estop Defendant from raising Plaintiff's failure to exhaust as a defence), I answer this question in the negative, based on even the most liberal of constructions of Plaintiff's Complaint. In his Complaint, Plaintiff alleges no facts plausibly suggesting that Defendant took any actions whatsoever that inhibited Plaintiff from exhausting his available administrative remedies at Greene C.F. during the time in question (i.e., between the occurrence of the event in question, on May 31, 2007, and the expiration of the deadline by which to file a grievance 14 days later, on or about June 14, 2007). Rather, Plaintiff alleges that he chose to not present the facts relating to his Complaint in the prison's grievance program "[b]ecause I fear retaliation from officers and the officer [I]'m fil [ ]ing against brag[s] about the grievance system not working and he claims his uncle is a superintendent [at Greene C.F.]." (*Id.*)Plaintiff's feeling of fear of "retaliation from [unidentified] officers" is completely unexplained and wholly conclusory. Furthermore, Defendant's action of "brag[ing] about the grievance system not working" and claiming that his uncle was a superintendent at Greene C.F. in no way constitutes an *action* by Defendant that inhibited Plaintiff from filing a grievance at Greene C.F. about the events giving rise to his claims in this action. At best, these statements by Defendant constituted an indication that Plaintiff might be *unsuccessful* in the grievance process before any appeal reached to the final level of review, by DOCS' Central Office Review Committee ("CORC"). Notifying an inmate of the *prospect* of *initial* failure (due to alleged antipathy for inmates or even sympathy for correctional officers, held by various *other* officials, participating in the grievance process) is hardly the sort of adverse *action* that is required to estop a correctional officer from asserting the legal defense of non-exhaustion.

**\*12** Nor do the other factual allegations of Plaintiff's Complaint plausibly suggest that Defendant took any actions that inhibited Plaintiff from exhausting his available administrative remedies at Greene C.F. so as to estop Defendant from raising Plaintiff's failure to exhaust as a defense. Plaintiff alleges, on May 31, 2007, Defendant (1) told Plaintiff to "stop eye balling him" or he would "pull [Plaintiff's] eyes from [his] skull," (2) "slap[ped] [Plaintiff] on the side of his head," and (3) placed a pocket knife to

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 167 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

McCloud v. Turaglio, Not Reported in F.Supp.2d (2008)

2008 WL 1772305

*his own face* and threatened to cut *his own face* and blame it on Plaintiff in order to let the other inmates know he was not "play[ing]" around. (Dkt. No. 1, ¶ 6 [Plf's Compl.].) The problem with these allegations (at least from Plaintiff's perspective) is that they have absolutely nothing to do with the filing of any grievance, or even the making of any verbal complaint, by Plaintiff. Simply stated, while the alleged conduct is (of course) deplorable, it did not (as alleged) have either the design or effect of preventing Plaintiff from exhausting his administrative remedies.

Moreover, even if (out of special solicitude to Plaintiff) I were to consider the factual allegations contained in Plaintiff's three aborted efforts at filing an amended or supplemental pleading, and the factual allegations contained in Plaintiff's papers in opposition to Defendant's motion, I would reach the same conclusion. None of those documents allege facts plausibly suggesting that Defendant's own actions inhibited Plaintiff's exhaustion of remedies during the time in question. (*See* Dkt. No. 6 [Plf's Letter filed 6/22/07]; Dkt. No. 12 [Plf's Letter filed 8/8/07]; Dkt. No. 15 [Plf's Letter filed 8/29/07]; Dkt. No. 18 [Plf's Opposition Papers].)

In particular, Plaintiff's letter to the Court of June 22, 2007, alleges that, on June 18, 2007, Defendant "intimidat[ed]" and "taunt[ed]" Plaintiff by saying to other inmates, "McCloud knows I [don't] play" around. (Dkt. No. 6.) This allegation fails for the same reason as the allegation about Defendant's earlier comments to Plaintiff fails: it had absolutely nothing to do with the filing of any grievance, or the making of any complaint, by Plaintiff. Moreover, Defendant's utterance of these words occurred on June 22, 2007, more than a *week* after Plaintiff had decided not to exhaust his available administrative remedies. (The deadline by which Plaintiff had to file a grievance regarding the incident on May 31, 2007, expired on or about June 14, 2007.)[34] Thus, it could not have possibly inhibited Plaintiff from exhausting his available administrative remedies.

Plaintiff's letter to the Court of August 8, 2007, alleges that, on July 14, 2007, Defendant said to Plaintiff, "I spok[e] to the Imam [about] what['s going on]. [ ][Y]ou can talk to me man to man." (Dkt. No. 12.) An attempt to informally resolve a dispute (which is encouraged in DOCS' grievance process) is not an act inhibiting an inmate from exhausting his available administrative remedies. Plaintiff's letter of August 8, 2007, further alleges that on July 24, 2007, persons *other than Defendant* coerced Plaintiff into making a false statement about what had taken place between Plaintiff and Defendant.

(*Id.*) Plaintiff alleges no action by *Defendant* on July 24, 2007. Nor does Plaintiff explain how the false statement on *July 14, 2007*-whatever that false statement may have been-in any way caused his decision by *June* 14, 2007, not to exhaust his available administrative remedies.

**\*13** Plaintiff's letter to the Court of August 29, 2007, alleges that Plaintiff obtained reason to "fear" that Defendant was responsible for the delayed arrival of a piece of his legal mail on August 21, 2007. (Dkt. No. 15.) However, the sole reason for this fear was the (alleged) fact that Defendant "had access to all inmate[']s legal mail." (Dkt. No. 15.) Moreover, this fear occurred on August 21, 2007, which was more than *two months* after Plaintiff had decided to not exhaust his available administrative remedies by June 14, 2007.

In an affidavit submitted in opposition to Defendant's motion, Plaintiff swears that, before the incident on May 31, 2007, a fellow inmate, Saheithe Pigford, filed both a federal court action and a grievance against Officer Turriglio and was "beaten on several occasions, threaten[ed] and had his personal area searched during late evening or at predawn hours." (Dkt. No. 18, Plf's Affid., ¶ 4.) Plaintiff also swears that, on May 31, 2007, "Plaintiff was aware of what had happened to ... [Inmate] Shakeith Pigford as a result of filing his grievance [against Officer Turriglio]" since the "Pigford ... incident[ ] occurred prior to that of the plaintiffs' [sic]." (*Id.* at ¶ 5[A].)

For the sake of argument, I will assume that Plaintiff is swearing that Mr. Pigford was beaten *by Officer Turriglio* (since actions *by third-persons* can hardly estop Officer Turriglio from asserting Plaintiff's failure to exhaust as a legal defense). The problem with Plaintiff's sworn assertion is that it is so patently false as to be implausible (if not sanctionable). I take judicial notice of the fact that Inmate Pigford did not file the action to which Plaintiff is referring (which is the only federal court action that has been filed by Shakeith Pigford, according to the Federal Judiciary's PACER service) until nearly *a month after* the incident giving rise to the current action, on May 31, 2007. *See Pigford v. Turriglio,* 07-CV-0687, Complaint (N.D.N.Y. filed June 29, 2007, and dated June 25, 2007). Furthermore, I take judicial notice of the fact that the event giving rise to Inmate Pigford's action against Officer Turriglio did not occur until *three days after* the event giving rise to the current action, on May 31, 2007. *See Pigford v. Turriglio,* 07-CV-0687, Complaint, ¶ 6 (N.D.N.Y.). No mention is made in Inmate Pigford's Complaint as to when he filed his grievance and was

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 168 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

McCloud v. Tureglio, Not Reported in F.Supp.2d (2008)

2008 WL 1772305

assaulted. *Id.* at ¶¶ 4(b), 6. However, given the clear factual inaccuracies of Plaintiff's other sworn statements regarding Inmate Pigford's experience, I find that Plaintiff's allegation that Inmate Pigford's experience dissuaded Plaintiff from filing a grievance in this action (from May 31, 2007, to June 14, 2007) to be wholly *implausible.*

Furthermore, because I find that the absence of this factual allegation (regarding Inmate Pigford's having been assaulted for filing a grievance against Officer Turriglio) from Plaintiff's Complaint (which is otherwise quite specific as to why Plaintiff "fear[ed] retaliation" if he filed a grievance) to be conspicuous, I find that this late-blossoming factual allegation to be *inconsistent* with the factual allegations of Plaintiff's Complaint. Therefore, I find that this portion of Plaintiff's Opposition Affidavit may not serve to effectively amend Plaintiff's Complaint. (*See, supra,* note 17 of this Report-Recommendation [citing cases].)

*14 In his affidavit, Plaintiff also swears that, before the incident on May 31, 2007, a fellow inmate, Mohammed Montalvo, filed a grievance against Officer Turriglio for "brandish[ing] a knife" and was "threaten[ed] thereafter with bodily harm until he agreed to sign-off [sic] on the grievance...." (Dkt. No. 18, Plf.'s Affid., ¶ 4.) For the sake of brevity, I will set aside the fact that Plaintiff does not assert precisely *when* Inmate Montalvo was so threatened. I will also set aside incredulity with which I view this late-blossoming, self-serving sworn statement, given Plaintiff's other misrepresentations to the Court-discussed above, and below. (*See, infra,* Part III.C. of this Report-Recommendation.) The more important fact is that Plaintiff does not allege that it was *Officer Turriglio* who threatened Inmate Montalvo with bodily harm. Again, actions *by third-persons* cannot estop Officer Turriglio from asserting Plaintiff's failure to exhaust as a legal defense. Moreover, because of the conspicuous absence of this factual allegation (regarding Inmate Montalvo's having been threatened for filing a grievance against Officer Turriglio) from Plaintiff's Complaint (which is otherwise quite specific as to why Plaintiff "fear[ed] retaliation" if he filed a grievance), I find that this factual allegation to be *inconsistent* with the factual allegations of Plaintiff's Complaint. Therefore, I find that this portion of Plaintiff's Opposition Affidavit may not serve to effectively amend Plaintiff's Complaint. (*See, supra,* note 17 of this Report-Recommendation [citing cases].)

Finally, in his affidavit, Plaintiff swears that he experienced several other adverse actions following the incident in

question on May 31, 2007. As an initial matter, the vast majority of this asserted misconduct was committed by correctional officers at Greene C.F. other than Defendant. More importantly, all of this misconduct occurred between July 24, 2007, and October 9, 2007-*well after* the expiration of the June 14, 2007, deadline by which he had to file a grievance regarding the incident giving rise to this action. (*See* Dkt. No. 18, Plf.'s Affid., ¶¶ 5[D]-[H].) Thus, it is impossible for this misconduct to have been the reason that Plaintiff chose not to file a grievance against Defendant between May 31, 2007, and June 14, 2007.

### 3. "Special Circumstances" Justifying Failure to Exhaust

With regard to the third inquiry (i.e., whether Plaintiff has plausibly alleged *special circumstances* justifying his failure to comply with the administrative procedural requirements), I answer this question in the negative, also based on even the most liberal of constructions of Plaintiff's Complaint. Plaintiff has not alleged that, during the time in question, he was laboring under any sort of physical infirmity, or reasonable misunderstanding of the law, which impeded his attempts to complain. Indeed, he has not even alleged, in his Complaint, that he *attempted* to complain, for example, by sending a letter of complaint directly to CORC, the DOCS' Commissioner, or a Deputy Commissioner (which prisoners occasionally do in analogous circumstances).

*15 Moreover, even if (out of special solicitude to Plaintiff) I were to consider the factual allegations contained in Plaintiff's three aborted efforts at filing an amended or supplemental pleading, and the factual allegations contained in Plaintiff's papers in opposition to Defendant's motion, I would reach the same conclusion. None of those documents allege facts plausibly suggesting the existence of any special circumstances justifying Plaintiff's failure to pursue (and exhaust) his administrative remedies during the time in question (i.e., between the occurrence of the event in question, on May 31, 2007, and the expiration of the deadline by which to file a grievance 14 days later, on or about June 14, 2007). (*See* Dkt. No. 6 [Plf.'s Letter filed 6/22/07]; Dkt. No. 12 [Plf.'s Letter filed 8/8/07]; Dkt. No. 15 [Plf.'s Letter filed 8/29/07]; Dkt. No. 18 [Plf.'s Opposition Papers].) I note that Plaintiff swears that, between June 3, 2007, and June 5, 2007, he wrote letters of complaint to both the New York State Inspector General's Office, and the Superintendent of Greene C.F., regarding the incident on May 31, 2007. (*See* Dkt. No. 18, Plf.'s Affid., ¶¶ 5[B]-[C].) However, Plaintiff does not explain why the "letter of complaint" that he sent to the

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 169 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

McCloud v. Tureglio, Not Reported in F.Supp.2d (2008)

2008 WL 1772305

superintendent was not in the form of a grievance filed with the Greene C.F. IGRC, as required by 7 N.Y.C.R.R. § 701.2. Nor does Plaintiff explain why he failed to write to CORC, following whatever action the superintendent did or did not take with respect to the "letter of complaint." Nor does Plaintiff allege that, during the time in question, he was laboring under any sort of physical infirmity, or reasonable misunderstanding of the law, which impeded his attempts to file a formal grievance with the Greene C.F. IGRC, or at least write a letter of complaint to CORC.

For all of these reasons, I recommend that, in the alternative, the Court dismiss Plaintiff's Complaint for alleging facts plausibly suggesting that he failed to exhaust his available administrative remedies following the incident on May 31, 2007.

**C. Second Alternative Ground for Dismissal: Misrepresentations to Court**

As stated above in this Report-Recommendation, Plaintiff has, in a sworn statement, falsely stated to the Court that, when the incident in question occurred on May 31, 2007, Plaintiff was aware that a fellow inmate (Shakeith Pigford) had been retaliated against for having filed a grievance against Officer Turriglio-a temporal impossibility since the event giving rise to Inmate Pigford's grievance had not even yet occurred as of May 31, 2007. (See, supra, Part III.B.2. of this Report-Recommendation.) This is not the only misrepresentation that Plaintiff has made to the Court.

As of the date he filed this action on June 16, 2007, Plaintiff had acquired two "strikes" for purposes of 28 U.S.C. § 1915's so-called "three strikes rule." See McCloud v. D.O. C., 06-CV-14278 (S.D.N.Y.) (prisoner civil rights case filed by an inmate bearing New York City Department of Correction Identification Number 141-06-05253, with a date of birth of 9/1/74; dismissed *sua sponte* for failure to state a claim pursuant to 28 U.S.C. § 1915 on 12/8/06); McCloud v. D.O.C., 06-CV-14279 (S.D.N.Y.) (prisoner civil rights case by an inmate bearing New York City Department of Correction Identification Number 141-06-05253, with a date of birth of 9/1/74; dismissed *sua sponte* for failure to state a claim pursuant to 28 U.S.C. § 1915 on 12/8/06).

*16 Plaintiff failed to disclose these two cases in Paragraph 5 of his sworn Complaint, where he checked the box labeled "Yes" next to the question "Have you ever filed any other lawsuits in any state or federal court relating to his imprisonment?" but then listed only one such lawsuit

(i.e., McCloud v. Buckholter, 07-CV-4576 [S.D.N.Y.] ) in response to the form complaint's directive: "If your answer to 5(a) is YES you must describe any and all lawsuits, currently pending or closed, in the space provided on the next page."(Dkt. No. 1, ¶ 5 [Plf.'s Compl.].)

While a plaintiff is under no duty to provide this information in order to state an actionable civil rights claim, here, Plaintiff *chose* to answer a question on a form complaint calling for such information, and *swore* to the truthfulness of his answer. There is simply no excuse for making such a sworn misrepresentation to the Court. District Judges from this Court have indicated a willingness to sanction *pro se* litigants for making such misrepresentations. See, e.g., Standley v. Dennison, 05-CV-1033, 2007 WL 2406009, at *13-14 (N.D.N.Y. Aug. 21, 2007) (Sharpe, J., adopting, on de novo review, Report-Recommendation by Lowe, M.J., premised on alternative ground that the plaintiff should be sanctioned for making a material misrepresentation to the Court in his complaint); Muniz v. Goord, 04-CV-0479, 2007 WL 2027912, at *6 & n. 32 (N.D.N.Y. July 11, 2007) (McAvoy, J., adopting, on plain-error review, Report-Recommendation by Lowe, M.J., premised on alternative ground that the plaintiff should be sanctioned for making a material misrepresentation to the Court in his complaint) [collecting cases]. I have considered less drastic sanctions and have found them to be inadequate to curb this particular intentional and egregious litigation abuse.

For these reasons, I recommend that, in the alternative, the Court dismiss Plaintiff's Complaint *sua sponte*, under Fed.R.Civ.P. 11, as a sanction for making multiple sworn misrepresentations to the Court.

**D. Third Alternative Ground for Dismissal: Unavailability of Relief Requested**

As stated above in Part I.A. of this Report-Recommendation, as a result of the misconduct alleged in this action, Plaintiff is requesting three forms of relief: (1) a court order "secur[ing] [Plaintiff's] safety and mak[ing] sure there will be [ ] no[ ] retaliation from coworkers or stuff"; (2) a court order directing that a search be performed of Defendant's "file to see if [a]ny complaints or grievances [have] been filed against him in the past concerning brutality"; and (3) "$1,000,000 for mental anguish and distress."(Dkt. No. 1, ¶¶ 7, 9 [Plf.'s Compl.].)

I find that the first two forms of relief are able to be, and should be, denied on the alternative ground that Plaintiff

Case 9:22-cv-00638-DNH-TWD   Document 58   Filed 02/28/25   Page 170 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

McCloud v. Tureglio, Not Reported in F.Supp.2d (2008)

2008 WL 1772305

has alleged no facts plausibly suggesting his entitlement to either form of relief. The first form of relief, which is essentially an injunction or temporary restraining order, must be supported by documents showing cause for the granting of the requested relief-which Plaintiff's Complaint does not do. *See* Fed.R.Civ.P. 65; N.D.N.Y. L.R. 65.1, 65.2, 7.1(f), 7.1(b)(2), 7.1(e). The second form of relief is merely a vehicle by which Plaintiff may embark on a fishing expedition to obtain facts that would enable him to assert an actionable legal claim against Defendant. Rule 8 of the Federal Rules of Civil Procedure-which requires that a plaintiff must assert enough facts in his complaint and thus be in possession of such basic facts *before* he files the complaint) to give a defendant *fair notice* of the claim against him-does not permit such a "bootstrap" pleading. [35] Nor does Plaintiff even provide cause in support of what is essentially a request for discovery.

*17 For these reasons, I recommend that, in the alternative, the Court dismiss Plaintiff's Complaint *sua sponte*, under 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b), [36] to the extent that the Complaint requests, as relief for the constitutional violation(s) alleged, (1) a court order "secur[ing] [Plaintiff's] safety and mak[ing] sure there will be [ ]no[ ] retaliation from coworkers or staff," and (2) a court order directing that a search be performed of Defendant's "file to see if [a]ny complaints or grievances [have] been filed against him in the past concerning brutality."(Dkt. No. 1, ¶¶ 7, 9 [Plf.'s Compl.].)

ACCORDINGLY, for the reasons stated above, it is

RECOMMENDED that Defendants' motion to dismiss for failure to state a claim (Dkt. No. 42) be *GRANTED*; and it is further

RECOMMENDED that, when dismissing Plaintiff's Complaint (Dkt. No. 1), the Court state that the dismissal constitutes a "strike" for purposes of 28 U.S.C. § 1915(g); and it is further

RECOMMENDED that the Court certify in writing, for purposes of 28 U.S.C. § 1915(a)(3), that any appeal taken from the Court's final judgment in this action would not be taken in good faith.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 [2d Cir.1989] ); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

All Citations

Not Reported in F.Supp.2d, 2008 WL 1772305

Footnotes

1    The Magistrate Judge's Report-Recommendation inadvertently refers to Defendant's motion to dismiss as Dkt. No. 42 on page 35. The correct Dkt. No. is 11 as referred to throughout the Report-Recommendation.

1    *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") [citations omitted]; *Princeton Indus., Inc. v. Rem*, 39 B.R. 140, 143 (Bankr.S.D.N.Y.1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y.1972) ("This motion under Fed.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.' ").

2    *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ( "These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest.... In addition, they state claims upon which relief could be granted under Title VII and the ADEA."). *Wynder v. McMahon*, 360 F.3d 73. 80 (2d Cir.2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas*, 308 F.3d 180, 187 (2d Cir.2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation ... fails as a matter of law.") [citation omitted]. *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir.2000) (distinguishing between a failure to meet Rule 12 [b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 379 F.Supp.2d 348, 370 (S.D.N.Y.2005) ("Although

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 171 of 353

**Trapani v. Pullen, Not Reported in Fed. Supp. (2016)**
2016 WL 1295137

McCloud v. Tureglio, Not Reported in F.Supp.2d (2008)
2008 WL 1772305

Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6) ].") [citation omitted]; *Util. Metal Research & Generac Power Sys.*, 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a] ); *accord, Straker v. Metro Trans. Auth.*, 331 F.Supp.2d 91, 101-02 (E.D.N.Y.2004); *Tangorre v. Mako's, Inc.*, 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b] [6] motion-one aimed at the sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of the claims).

3       *Dura Pharm., Inc. v. Broudo*, 125 S.Ct. 1627, 1634 (2005) (holding that the complaint failed to meet this test) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 [1957] ),*see also Swierkiewicz*, 534 U.S. at 512 (quoting *Conley*, 355 U.S. at 47); *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993) (quoting *Conley*, 355 U.S. at 47).

4       *See Swierkiewicz*, 534 U.S. at 514 (quoting *Conley*, 355 U.S. at 48).

5       *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y.1996) (McAvoy, J.), *aff'd*,113 F.3d 1229 (2d Cir.1997) (unpublished table opinion). Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history. *See, e.g., Photopaint Tech., LLC v. Smartlens Corp.*, 335 F.3d 152, 156 (2d Cir.2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.*, 104 F.3d 355 [2d Cir.1996] ).

6       *See, e.g., Swierkiewicz*, 534 U.S. at 513-514 (characterizing Fed.R.Civ.P. 8[a][2]'s pleading standard as "simplified").

7       *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed.2003).

8       *See, e.g., Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1964-74 (2007) (pleading did not meet Rule 8[a][2]'s liberal requirement), *accord, Dura Pharm.*, 125 S.Ct. at 1634-35, *Christopher v. Harbury*, 536 U.S. 403, 416-22 (2002), *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234-35 (2d Cir.2004), *Gmurzynska v. Hutton*, 355 F.3d 206, 208-09 (2d Cir.2004). Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz*. *See, e.g., Salvador v. Adirondack Park Agency of the State of N.Y.*, No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr. 26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a] [2] ). Although these decisions are not themselves precedential authority, seeRules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after *Swierkiewicz*, of certain cases from within the Second Circuit interpreting Rule 8(a)(2). See *Khan v. Ashcroft*, 352 F.3d 521, 525 (2d Cir.2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS*, 244 F.3d 81 [2d Cir.2001] after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr*, 533 U.S. 289 [2001] ).

9       The Court in *Twombly* further explained: "The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been adequately stated, it may be supported by showing any set of facts consistent with the allegations in the complaint....Conley, then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Twombly*, 127 S.Ct. at 1969.

10      *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.1994) (affirming grant of motion to dismiss) [citation omitted]; *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.1994).

11      *Hernandez*, 18 F.3d at 136 [citation omitted], *see also Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir.2003) [citations omitted]; *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d Cir.1999) [citation omitted].

12      *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir.2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) (internal quotation and citation omitted).

13      *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir.2000) (internal quotation and citation omitted); *see also*Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires").

14      *Stinson v. Sheriff's Dep't of Sullivan County*, 499 F.Supp. 259, 262 & n. 9 (S.D.N.Y.1980); *accord. Standley v. Dennison*, 05-CV-1033, 2007 WL 2406909, at *6, n. 27 (N.D.N.Y. Aug. 21, 2007) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Muniz*, 2007 WL 2027912, at *2 (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *DiProjetto v. Morris Protective Serv.*, 489 F.Supp.2d 305, 307 (W.D.N.Y.2007); *Cosby v. City of White Plains*, 04-CV-5829, 2007 WL 853203, at *3 (S.D.N.Y. Feb. 9, 2007); *Lopez v. Wright*, 05-CV-1568, 2007 WL 388919, at *3, n. 11 (N.D.N.Y. Jan. 31, 2007) (Mordue, C.J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord*, 04-CV-1433, 2007 WL 201109, at *5 (N.D.N.Y. Jan. 23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.*, 04-CV-1252, 2007 WL 119453, at *2, n. 13 (N.D.N.Y. Jan. 10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins*, 2007 WL 37404, at *4 (Kahn, J., adopting report-recommendation of Lowe, M.J.).

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 172 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

McCloud v. Tureglio, Not Reported in F.Supp.2d (2008)

2008 WL 1772305

15    Cuoco, 222 F.3d at 112 (finding that repleading would be futile) [citation omitted]; see also Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) [citation omitted]

16    See Fed.R.Civ.P. 12(b) ("if, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.")

17    "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss. However, the mandate to read the papers of pro se litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum." Gadson v. Goord, 96 Civ. 7544, 1997 WL 714878, *1, n. 2 (S.D.N.Y. Nov. 17, 1997) (citing, inter alia, Gil v. Mooney, 824 F.2d 192, 195 [2d Cir.1987] [considering plaintiff's response affidavit on motion to dismiss] ). Stated another way, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.' " Donhauser v. Goord, 314 F.Supp.2d 119, 212 (N.D.N.Y.2004) (considering factual allegations contained in plaintiff's opposition papers) (citations omitted), vacated in part on other grounds, 317 F.Supp.2d 160 (N.D.N.Y.2004).

18    See also Harris v. Garner, 190 F.3d 1279, 1287 (11th Cir.1999) (prisoner's claim that corrections officers forced him to "dry shave" during prison "shakedown," causing him to experience bleeding, irritation, and pain, alleged only de minimis injury and not the kind of physical injury cognizable under the PLRA) [citation omitted], opinion reinstated in part on rehearing, 216 F.3d 970 (11th Cir. 2000); Russell v. Johnson, 07-CV-0008, 2008 WL 480020, at *2 (M.D.Ga. Feb. 19, 2008) (detainee's claim that, during a traffic stop, his foot was caught in police officer's automotive transmission, which resulted only in pain, was not cognizable physical injury under PLRA).

19    See also Borroto v. McDonald, 04-CV-0165, 2006 WL 2789152, at *1 (N.D.Fla. Sept. 26, 2006) (prisoner's claim that he was "repeatedly punched" by correctional officers, alone, did not allege the kind of physical injury that is cognizable under PLRA); cf. Barker v. Lehrer, 02-CV-0085, 2004 WL 292142, at *4-5 (N.D.Tex. Jan. 30, 2004) (fact that prisoner was "hit ... with a closed fist on the left side of his forehead," resulting in "a lump on his forehead after the assault," did not constitute physical injury under PLRA).

20    See, e.g., Davis v. District of Columbia, 158 F.3d 1342, 1349 (D.C.Cir.1998) (weight loss, appetite loss, and insomnia caused by emotional distress not "physical injury" for purposes of PLRA); Cooksey v. Hennessey, 07-CV-3829, 2007 WL 2790365, at *1 (N.D.Cal. Sept. 20, 2007) ("Physical symptoms that are not sufficiently distinct from a plaintiff's allegations of emotional distress do not qualify as a prior showing of physical injury [for purposes of the PLRA].") [internal quotation marks]; Johnson v. Georgia, 06-CV-0049, 2007 WL 2684985, at *3 (M.D.Ga. Sept. 7, 2007) (stress and "a mental disorder" not "physical injury" for purposes of PLRA); Brown v. Porter, 01-CV-20957, 2006 WL 2092032, at *2 (N.D.Cal. July 26, 2006) (migraines, dry mouth, and loss of appetite caused by mental health problems not "physical injury" for purposes of PLRA); Watkins v. Trinity Serv. Group, Inc., 05-CV-1142, 2006 WL 3408176, at *4 (M.D.Fla. Nov. 27, 2007) (diarrhea, vomiting, cramps, nausea, and headaches from eating spoiled food on one day not "physical injury" for purposes of PLRA); Hill v. Williams, 03-CV-0192, 2005 WL 5993336, at *4 (N.D.Fla. Oct. 14, 2005) (thirty-minute episode of hyperventilation, accompanied by shortness of breath, swollen tongue, pounding heart, and headache, not "physical injury" for purposes of PLRA); Mitchel v. Newryder, 245 F.Supp.2d 200, 203, 205 (D.Me.2003) ("permanent traumatization" not "physical injury" for purposes of PLRA); Todd v. Graves, 217 F.Supp.2d 958, 960 (S.D.Iowa 2002) (stress, hypertension, insomnia, dizziness, and loss of appetite not "physical injury" for purposes of PLRA); Ashann-Ra v. Virginia, 112 F.Supp.2d 559, 566 (W.D.Va.2000) (psychosomatic conditions, including sexual dysfunction, caused by emotional distress not "physical injury" for purposes of PLRA); McGrath v. Johnson, 67 F.Supp.2d 499, 508 (E.D.Pa.1999) (inflamation of pre-existing skin condition caused by emotional trauma not "physical injury" for purposes of PLRA); Cain v. Virgina, 982 F.Supp. 1132, 1135 & n. 3 (E.D.Va.1997) (depression and painful headaches caused by emotional distress not "physical injury" for purposes of PLRA); Pinkston-Bey v. DeTella, 96-CV-4823, 1997 WL 158343, at *3 (N.D.Ill. March 31, 1997) (severe headaches caused by emotional distress not "physical injury" for purposes of PLRA).

21    42 U.S.C. § 1997e.

22    Porter v. Nussle, 534 U.S. 516, 532 (2002).

23    7 N.Y.C.R.R. § 701.7.

24    7 N.Y.C.R.R. § 701.7; see also White v. The State of New York, 00-CV-3434, 2002 U.S. Dist. LEXIS 18791, at *6 (S.D.N.Y. Oct. 3, 2002).

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 173 of 353

2016 WL 1295137

McCloud v. Tureglio, Not Reported in F.Supp.2d (2008)

2008 WL 1772305

25   7 N.Y.C.R.R. § 701.6(g) ("[M]atters not decided within the time limits may be appealed to the next step."); *Hemphill v. New York,* 198 F.Supp.2d 546, 549 (S.D.N.Y.2002), *vacated and remanded on other grounds,*380 F.3d 680 (2d Cir.2004); *see, e.g., Croswell v. McCoy,* 01-CV-0547, 2003 WL 962534, at *4 (N.D.N.Y. March 11, 2003) (Sharpe, M.J.) ("If a plaintiff receives no response to a grievance and then fails to appeal it to the next level, he has failed to exhaust his administrative remedies as required by the PLRA."); *Reyes v. Punzal,* 206 F.Supp.2d 431, 433 (W.D.N.Y.2002) ("Even assuming that plaintiff never received a response to his grievance, he had further administrative avenues of relief open to him."); Nimmons v. Silver, 03-CV-0671, Report-Recommendation, at 15-16 (N.D.N.Y. filed Aug. 29, 2006) (Lowe, M.J.) (recommending that the Court grant Defendants' motion for summary judgment, in part because plaintiff adduced no evidence that he appealed the lack of a timely decision by the facility's IGRC to the next level, namely to either the facility's superintendent or CORC), *adopted by* Decision and Order (N.D.N.Y. filed Oct. 17, 2006) (Hurd, J.).

26   7 N.Y.C.R.R. § 701.2.

27   *Id.*

28   *Id.*

29   *Rodriguez v. Hahn,* 209 F.Supp.2d 344, 347-48 (S.D.N.Y.2002); *Reyes v. Punzal,* 206 F.Supp.2d 431, 433 (W.D.N.Y.2002).

30   *See Hemphill v. State of New York,* 380 F.3d 680, 686, 691 (2d Cir.2004).

31   *Hemphill,* 380 F.3d at 686 (citation omitted).

32   *Id.* [citations omitted].

33   *Id.* [citations and internal quotations omitted].

34   As described above, an inmate must file a complaint with the facility's IGP clerk within 14 calendar days of the alleged occurrence.

35   *See Balliet v. Heydt,* 95-CV-5184, 1997 U.S. Dist. LEXIS 14913, at *3-9, 29 (E.D.Pa. Sept. 25, 1997) (referring to a similar attempt to state a claim-based on information generated in 1997, several years after the filing of the complaint in 1995-as a "means of circular pleading and bootstrapping"); *Hill v. Austin,* 89-CV-7790, 1997 U.S. Dist. LEXIS 11737, at *10 (N.D.Ill. Sept. 6, 1990) ("Hill cannot bootstrap his [untimely and therefore non-actionable] complaints dealing with the years 1976 through 1982 through his timely filing of the complaint on the 1985 involuntary detail."); *cf. City of New York v. Permanent Mission of India to the U.N.,* 446 F.3d 365, 377 (2d Cir.2006) (referring to an analogous attempt to state a claim as a "use [of] creative pleading to 'bootstrap' claims" that were otherwise unavailable to the plaintiff); *Scott v. Johnson,* 95-CV-0403, 1995 U.S. Dist. LEXIS 22445, at *6 (W.D Mich. July 28, 1995) ("A prison inmate cannot bootstrap his complaints with conclusory allegations of retaliation ...") [citation omitted]

36   *See*28 U.S.C. § 1915(e)(2)(B)(ii) ("[T]he court shall dismiss [a] case [brought by a prisoner proceeding *in forma pauperis*] at any time if the court determines that ... the action ... is frivolous or malicious[,] ... fails to state a claim on which relief may be granted [,] ... or ... seeks monetary relief against a defendant who is immune from such relief"); 28 U.S.C. § 1915A(b) ("On review, the court shall ... dismiss the [prisoner's] complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted....").

End of Document                                    © 2016 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:22-cv-00638-DNH-TWD   Document 58   Filed 02/28/25   Page 174 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Robles v. Bleau, Not Reported in F.Supp.2d (2008)

2008 WL 4693153

2008 WL 4693153
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Raymond ROBLES, Plaintiff,
v.
K. BLEAU, Correctional Officer, Riverview C.F.;
Peacock, Correctional Sergeant, Riverview C.F.;
R. Varkiar, Senior Counsel, Riverview C.F.; and
New York State Dep't of Corr. Servs., Defendants.

No. 9:07-CV-0464.
|
Oct. 22, 2008.

**Attorneys and Law Firms**

Raymond Robles, Cape Vincent, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General for the State of
New York, David L. Cochran, Esq., of Counsel, New York,
NY, for Defendants.

**DECISION & ORDER**

THOMAS J. McAVOY, Senior District Judge.

*1 This *pro se* civil rights action, brought pursuant
to 42 U.S.C. § 1983, was referred to the Hon. George
H. Lowe, United States Magistrate Judge, for a Report-
Recommendation pursuant to 28 U.S.C. § 636(b) and Local
Rule 72.3(c).

The Report-Recommendation dated September 12, 2008
recommended that Defendants motion to dismiss be
granted in part and denied in part. Specifically, Judge
Lowe recommended that Plaintiff's Fourteenth Amendment
procedural due process claim against Defendant Varkiar
regarding his disciplinary hearing be dismissed if, within
thirty (30) days from the filing of this Final Order, Plaintiff
does not file an Amended Complaint that successfully states a
Fourteenth Amendment procedural due process claim. It was
recommended that Plaintiff's remaining claims be dismissed
with prejudice.

Plaintiff filed objections to the Report-Recommendation,
essentially raising the same arguments presented to the
Magistrate Judge.

When objections to a magistrate judge's Report-
Recommendation are lodged, the Court makes a *"de novo*
determination of those portions of the report or specified
proposed findings or recommendations to which objection is
made."*See* 28 U.S.C. § 636(b)(1). After such a review, the
Court may "accept, reject, or modify, in whole or in part, the
findings or recommendations made by the magistrate judge.
The judge may also receive further evidence or recommit the
matter to the magistrate judge with instructions."*Id.*

Having reviewed the record *de novo* and having considered
the issues raised in the Plaintiff's objections, this Court
has determined to accept and adopt the recommendation of
Magistrate Judge Lowe for the reasons stated in the Report-
Recommendation.

It is therefore

**ORDERED** that Defendants motion to dismiss be
**GRANTED** in part and **DENIED** in part.

**IT IS SO ORDERED.**

*REPORT-RECOMMENDATION*

GEORGE H. LOWE, United States Magistrate Judge.

This *pro se* prisoner civil rights action, commenced pursuant
to 42 U.S.C. § 1983, has been referred to me by the Honorable
Thomas J. McAvoy, Senior United States District Judge, for
Report and Recommendation with regard to any dispositive
motions filed, pursuant to 28 U.S.C. § 636(b) and Local
Rule 72.3(c). Generally, in his Complaint, Raymond Robles
("Plaintiff") alleges that three employees of the New York
State Department of Correctional Services ("DOCS"), as
well as DOCS itself, violated his rights under the Eighth
and Fourteenth Amendments when they (1) required him to
submit to a random urinalysis test when they knew he was
taking a medication that would prevent him from providing a
urine sample, and (2) charged, convicted, and punished him
with eighty-seven days in a Special Housing Unit for refusing
to provide a urine sample. (*See generally* Dkt. No. 1 [Plf.'s
Compl.].) Currently pending before the Court is Defendants'
motion to dismiss for failure to state a claim pursuant to
Fed.R.Civ.P. 12(b)(6). (Dkt. No. 16.) For the reasons that

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 175 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Robles v. Bleau, Not Reported in F.Supp.2d (2008)

2008 WL 4693153

follow, I recommend that Defendants' motion be granted in part and denied in part.

**I. BACKGROUND**

**A. Summary of Plaintiff's Complaint**

**\*2** As Defendants correctly observe in their Memorandum of Law, Plaintiff's Complaint–which describes the events giving rise to his claims in two brief paragraphs without identifying any role played by Defendants in those events–is hardly a model of *fair notice* under Fed.R.Civ.P. 8(a)(2). (Dkt. No. 1, ¶¶ 6-7 [Plf.'s Compl.].) However, as explained below in Part II of this Report-Recommendation, the mandate to read the papers of *pro se* civil rights litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint. [1] Here, I find that the factual allegations contained in Plaintiff's Response Affidavit are consistent with the factual allegations of his Complaint. As a result, in construing Plaintiff's Complaint, I will consider his Response Affidavit as effectively amending the factual allegations of his Complaint. Thus construed, Plaintiff's Complaint alleges as follows:

1. On November 6, 2006, at about 7:28 a.m., Plaintiff was directed to report to the drug testing center at Riverview C.F.; [2]

2. Upon arriving at the drug testing center, Plaintiff was informed by Correctional Officer K. Bleau ("Defendant Bleau") that he had been randomly selected to submit to urinalysis drug testing; [3]

3. Defendant Bleau asked Plaintiff if he would provide a urine sample, and Plaintiff responded yes; [4]

4. Defendant Bleau then asked Plaintiff if he was taking any medications, and Plaintiff explained that (1) yes, he was taking Flomax and Omeprazole due to a prostate condition and a stomach problem, and (2) "d[ue] to the medication [s]" 7:10 a.m. that morning, he would need more water in order to urinate; [5]

5. As Plaintiff was explaining these facts to Defendant Bleau, Defendant Bleau became upset and walked away from Plaintiff; [6]

6. When he returned, Defendant Bleau then informed Plaintiff that, pursuant to DOCS Directive 4937, Plaintiff had three hours provide a urine sample or he would be considered to be refusing to provide the urine sample; [7]

7. Defendant Bleau then gave Plaintiff a cup of water at approximately 7:30 a.m., and a second cup of water at approximately 9:30 a.m., but did not give him a third cup of water at approximately 8:30 a.m., as required by Part D.4. of DOCS Directive 4937; [8]

8. At approximately 10:30 a.m., Plaintiff was still unable to provide a urine sample; [9]

9. At that time, Defendant Bleau notified Correctional Sergeant Peacock ("Defendant Peacock") that Plaintiff was refusing a direct order to provide a urine sample; [10]

10. When Plaintiff tried to explain to Defendant Peacock that his medical condition prevented him from providing the urine sample, Defendant Peacock responded, "Shut up and put [your] hands behind [your] back"; [11]

**\*3** 11. Both Defendants Bleau and Peacock failed to investigate or inquire as to why Plaintiff had been prescribed Flomax and Omeprazole, or what the potential side effects of those drugs were, although that information was readily obtainable from medical staff at Riverview C.F.; [12]

12. Instead, Defendants Bleau and/or Peacock escorted Plaintiff to the Riverview C.F. Special Housing Unit ("S.H.U."); [13]

13. On November 7, 2006, at about 8:55 a.m., while Plaintiff was in S.H.U., he was served with a copy of a misbehavior report authored by Defendant Bleau, charging him with (1) failing to comply with the urinalysis testing procedure, and (2) refusing a direct order to provide a urine sample; [14]

14. On November 10, 2006, Senior Correctional Counselor R. Varkiar conducted Plaintiff's disciplinary hearing on the misbehavior report; [15]

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 176 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Robles v. Bleau, Not Reported in F.Supp.2d (2008)

2008 WL 4693153

15. At the hearing, when Plaintiff entered a plea of "Not guilty, with an explanation," Defendant Varkiar gave Plaintiff "an opportunity to explain [him] self". [16]

16. Plaintiff explained that he had a medical condition that prevented him from providing a urine sample, that he had attempted to inform Defendant Bleau of this medical condition (but Defendant Bleau walked away from Plaintiff), and that he had attempted to inform Defendant Peacock of this medical condition (but Defendant Peacock told Plaintiff to "[s]hut up"); [17]

17. Defendant Varkiar then made a telephone call; when he was done with the call, he told Plaintiff that (1) he had called the medical unit at Riverview C.F. to ask whether or not the medication that Plaintiff was taking would prevent him from urinating, and (2) someone in the medical unit had responded that no, the medication should not prevent Plaintiff from urinating; [18]

18. Plaintiff then attempted to explain to Defendant Varkiar why he was taking one of the medications, specifically, to remedy a prostate problem that itself interfered with his ability to urinate; [19]

19. However, Defendant Varkiar failed to call back the person in the medical unit at Riverview C.F. and request that he or she again answer the question he had posed before, taking into account Plaintiff's prostate condition as shown by his medical records; [20]

20. As a result, Defendant Varkiar found Plaintiff guilty of both disciplinary charges, and sentenced him to ninety (90) days in S.H.U., with a corresponding loss of privileges; [21]

21. At the conclusion of the hearing, Plaintiff received a written copy of the hearing disposition, which stated that the evidence relied on included (1) the statements in the written misbehavior report of Defendant Varkiar, which Defendant Varkiar stated were credible, and (2) Plaintiff's own hearing testimony (which Defendant Varkiar stated was not credible); [22]

22. On November 27, 2006, Plaintiff appealed his conviction to DOCS Director of Special Housing, Donald Selsky, who reversed the conviction on January 19, 2007; [23] and

*4 23. On February 1, 2007, Plaintiff was finally released from S.H.U., after spending eighty-seven (87) days there. [24]

It should be noted that, in addition to asserting constitutional claims against Defendants Bleau, Peacock, and Varkiar in their individual or personal capacities, Plaintiff's Complaint asserts a constitutional claim also against DOCS itself. It should also be noted that, as relief for Defendants' actions, Plaintiff requests money damages but no injunctive relief. [25]

**B. Summary of Grounds in Support of Defendants' Motion**

Generally, Defendants' motion to dismiss for failure to state a claim is premised on two grounds: (1) Plaintiff's claim against DOCS is barred by the Eleventh Amendment; and (2) the allegations of Plaintiff's Complaint are too lacking in detail to give Defendants *fair notice* under Fed.R.Civ.P. 8(a)(2). (Dkt. No. 16, Part 2, at 2-5 [Defs.' Memo. of Law].)

**II. LEGAL STANDARD GOVERNING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM**

Under Fed.R.Civ.P. 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."Fed.R.Civ.P. 12(b)(6). It has long been understood that a defendant may base such a motion on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2); [26] or (2) a challenge to the legal cognizability of the claim. [27]

Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief."Fed.R.Civ.P. 8(a)(2) [emphasis added]. By requiring this "showing," Fed.R.Civ.P. 8(a)(2) requires that the pleading contain a short and plain statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." [28] The main purpose of this rule is to "facilitate a proper decision on the merits." [29] A complaint that fails to comply with this rule "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims." [30]

The Supreme Court has long characterized this pleading requirement under Fed.R.Civ.P. 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 177 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Robles v. Bleau, Not Reported in F.Supp.2d (2008)

2008 WL 4693153

requirement.[31] However, it is well established that even this liberal notice pleading standard "has its limits." [32] As a result, several Supreme Court decisions, and Second Circuit decisions, exist holding that a pleading has failed to meet this liberal notice pleading standard. [33]

Most notably, in the recent decision of *Bell Atlantic Corporation v. Twombly*, the Supreme Court, in reversing an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1, "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."550 U.S. 544, ---- - ----, 127 S.Ct. 1955, 1968-69, 167 L.Ed.2d 929 (2007). [34] Rather than turning on the *conceivability* of an actionable claim, the Court clarified, the Fed.R.Civ.P. 8 "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965-74.

*5 More specifically, the Court reasoned that, by requiring that a pleading "show[ ] that the pleader is entitled to relief,"Fed.R.Civ.P. 8(a)(2) requires that the pleading give the defendant "fair notice" of (1) the nature of the claim and (2) the "grounds" on which the claim rests. *Id.* at 1965, n. 3 [citation omitted]. While this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading contain at least "some factual allegation[s]." *Id.* [citations omitted]. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]" assuming, of course, that all the allegations in the complaint are true. *Id.* at 1965 [citations omitted]. What this means, on a practical level, is that there must be "plausible grounds to infer [actionable conduct]," or, in other words, "enough fact to raise a reasonable expectation that discovery will reveal evidence of [actionable conduct]."*Id.*

As have other Circuits, the Second Circuit has repeatedly recognized that the clarified plausibility standard that was articulated by the Supreme Court in *Twombly* governs *all* claims, not merely antitrust claims brought under 15 U.S.C. § 1 (as were the claims in *Twombly*). [35] The Second Circuit has also recognized that this *plausibility* standard governs claims brought even by *pro se* litigants (although the plausibility of those claims is to be assessed generously, in light of the special solicitude normally afforded *pro se* litigants). [36]

It should be emphasized that Fed.R.Civ.P. 8's plausibly standard, explained in *Twombly*, was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus*, in which the Court stated, "Specific facts are not necessary" to successfully state a claim under Fed.R.Civ.P. 8(a)(2).*Erickson v. Pardus*, 551 U.S. 89, ----, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) [citation omitted]. That statement was merely an abbreviation of the often-repeated point of law-first offered in *Conley* and repeated in *Twombly*-that a pleading need not "set out in detail the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly,* 127 S.Ct. 1965, n. 3 (citing *Conley v. Gibson,* 355 U.S. 41, 47 [1957] ). That statement in no way meant that all pleadings may achieve the requirement of giving a defendant "fair notice" of the nature of the nature of the claim and the "grounds" on which the claim rests without ever having to allege any facts whatsoever. [37] There must still be enough fact alleged to raise a right to relief above the speculative level to a plausible level, so that the defendant may know what the claims are and the grounds on which they rest (in order to shape a defense).

Having said all of that, it should also be emphasized that, "[i]n reviewing a complaint for dismissal under Fed.R.Civ.P. 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." [38] This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se.*" [39] In other words, as stated above, while all pleadings are to be construed liberally under Fed.R.Civ.P. 8(e),*pro se* civil rights pleadings are to be construed with an *extra* degree of liberality [40]

*6 For example, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint. [41] Moreover, "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest." [42] Furthermore, when addressing a *pro se* complaint, generally a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." [43] Of course, an opportunity to amend is not required where "the problem

Case 9:22-cv-00638-DNH-TWD   Document 58   Filed 02/28/25   Page 178 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Robles v. Bleau, Not Reported in F.Supp.2d (2008)

2008 WL 4693153

with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it." [44] In addition, granting a *pro se* plaintiff an opportunity to amend is not required where the plaintiff has already been given a chance to amend his pleading. [45]

However, while this special leniency may somewhat loosen the procedural rules governing the form of pleadings (as the Second Circuit very recently observed), [46] it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed.R.Civ.P. 8, 10 and 12. [47] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.R.Civ.P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow. [48] Stated more plainly, when a plaintiff is proceeding *pro se*, "all normal rules of pleading are not absolutely suspended." [49]

**III. ANALYSIS**

**A. Whether Plaintiff's Claim Against DOCS is Barred by the Eleventh Amendment**

For the reasons offered by Defendants in their Memorandum of Law, I agree with them that Plaintiff's constitutional claims against Defendant DOCS are barred by the Eleventh Amendment to the United States Constitution. (Dkt. No. 16, Part 2, at 2-3 [Defs.' Mem. of Law].) In the interest of brevity, I will not repeat the well-established points of law that they correctly cite in support of their argument. Instead, I will only add three points that Defendants do *not* make in their succinct argument: (1) where it has been successfully demonstrated that a defendant is entitled to sovereign immunity under the Eleventh Amendment, the federal court lacks subject matter jurisdiction over the case (or claim), and "the case [or claim] *must* be stricken from the docket"; [50] (2) Plaintiff's civil rights claims against Defendant DOCS (an entity) are barred also by the express language of 42 U.S.C. § 1983, which confers liability upon only any *"person* who ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws ... " [51]; and (3) because the defect with this claim is substantive rather than merely formal, better pleading will not cure it, and thus it should be dismissed with prejudice. [52]

*7   For all of these reasons, I recommend that the Court dismiss with prejudice Plaintiff's claims against Defendant DOCS.

It should be noted that, in addition to barring Plaintiff's constitutional claims against Defendant DOCS, the Eleventh Amendment would also bar any claim by Plaintiff against Defendants Bleau, Peacock and Varkiar in their official capacities. [53] However, because I do not even liberally construe Plaintiff's Complaint (and Response Affidavit) as asserting such claims, no need exists to recommend the dismissal of those claims. (*See generally* Dkt. No 1, 17.)

**B. Whether the Allegations of Plaintiff's Complaint Are Too Lacking in Detail to Give Defendants *Fair* Notice under Fed.R.Civ.P. 8(a)(2)**

For the reasons offered by Defendants in their Memorandum of Law, I agree with them that Plaintiff's Complaint–when considered alone–is too lacking in detail to give Defendants the fair notice that is required under Fed.R.Civ.P. 8(a) (2). (Dkt. No. 16, Part 2, at 3-5 [Defs.' Mem. of Law].) However, as explained above in Part II of this Report-Recommendation, the mandate to read the papers of *pro se* civil rights litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint. [54] Here, when construing Plaintiff's Complaint together with his Response Affidavit, I find that Plaintiff's allegations *are* detailed enough to give Defendants the fair notice that is required under Fed.R.Civ.P. 8(a)(2). *See, supra,* Part I.A. of this Report-Recommendation.

However, this does not end the Court's analysis of Plaintiff's Complaint because, even where a defendant has not advanced a certain argument on a motion to dismiss in a *pro se* prisoner civil rights case, a district court may (and, indeed, has a duty to) *sua sponte* address whether the pleading in such a case has successfully stated a claim upon which relief may be granted. [55] Here, Plaintiff's Complaint is plagued by several defects (some substantive and some formal) [56] that simply cannot be overlooked.

**C. Whether Plaintiff Has Stated an Actionable Claim Against Defendants Bleau, Peacock and Varkiar Arising Out of Plaintiff's Being Required to Provide a Urine**

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 179 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Robles v. Bleau, Not Reported in F.Supp.2d (2008)
2008 WL 4693153

**Sample Given Their Knowledge of His Medications and/ or Medical Condition**

Among Plaintiff's claims is a claim that "[i]t is neither lawful nor [ ] reasonable to expect an Inmate to perform a bodily function on command when you know or should know that his medical condition and prescribed treatment plan indicate that when he urinates[,] and when he [can] not[,] can be beyond his control."(Dkt. No. 17, at 5 [Pl['s Response Affid.].) I liberally construe this claim as one of harassment or perhaps inadequate-prison-conditions under the Eighth Amendment. (To the extent that this allegation is also used to support a procedural due process claim under the Fourteenth Amendment, I address that claim below in Parts III.D. and III.E. of this Report-Recommendation.)

**\*8** The problem with Plaintiff's Eighth Amendment claim is that the rather detailed facts alleged by him in support of that claim do not suggest in any way that any of the three individual Defendants were acting with the sort of mental state that is required for them to incur liability under the Eighth Amendment, namely, *deliberate indifference*. Deliberate indifference is a state of mind akin to *criminal recklessness*, which involves *knowing* of and disregarding an excessive risk to inmate health or safety.[57] Here, Plaintiff himself alleges that the three individual Defendants did not in fact *understand* that he could not urinate due to his prostate condition. Indeed, as he was trying to explain his medical condition to Defendants, (1) Defendant Bleau became angry and "walked away" from Plaintiff, (2) Defendant Peacock told Plaintiff to "[s]hut up," and (3) Defendant Varkiar failed to call back the person in the medical unit of Riverview C.F. and ask him or her to report (to Varkiar) the impact of Plaintiff's prostate condition on his ability to urinate. *See, supra,* Part I.A. of this Report-Recommendation.[58]

At its heart, Plaintiff's Eighth Amendment claim alleges that the three individual Defendants *should have known* that he could not urinate during the time in question due to his enlarged prostate, but that they did not know that fact because they *failed to investigate* the nature and effects of his prostate condition. In other words, his Eighth Amendment claim is one of *negligence*. Such a claim is simply not actionable under the Eighth Amendment (or any constitutional provision). As is often observed, "[D]eliberate indifference describes a state of mind more blameworthy than negligence."[59] Finally, because the defect with this detailed claim is substantive

rather than merely formal, I find that better pleading will not cure it.[60]

For all of these reasons, I recommend that the Court dismiss with prejudice Plaintiff's Eighth Amendment claim.

**D. Whether Plaintiff Has Stated an Actionable Claim Against Defendants Bleau and Peacock Arising Out of His Receipt of an Erroneous or False Misbehavior Report**

It is well established that "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report."*Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir.1997) (citing *Freeman v. Rideout,* 808 F.2d 949, 951 [2d Cir.1986] ).[61] Rather, the only way that false accusations contained in a misbehavior report can rise to the level of a constitutional violation is when there is "more, such as retaliation against the prisoner for exercising a constitutional right."*Boddie,* 105 F.3d at 862;*accord, Murray v. Pataki,* 03-CV-1263, 2007 U.S. Dist. LEXIS 26959, at \*26, 2007 WL 965345 (N.D.N.Y. March 5, 2007) (Treece, M.J.) [citations omitted].

Here, Plaintiff alleges no actionable conduct regarding his being issued the misbehavior report in question, such as retaliation against him for exercising a constitutional right. *See, supra,* Part I.A. of this Report-Recommendation. Moreover, because the defect with this detailed claim is substantive rather than merely formal, I find that better pleading will not cure it.[62]

**\*9** For these reasons, I recommend that the Court dismiss with prejudice Plaintiff's Fourteenth Amendment false-misbehavior-report claim.

**E. Whether Plaintiff Has Stated an Actionable Claim Against Defendant Varkiar Arising Out of Plaintiff's Erroneous or Unjustified Disciplinary Conviction**

"[Courts] examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State ...; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient .... " *Kentucky Dept. of Corr. v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989). With regard to the first question, in 1995, the Supreme Court held in *Sandin v. Connor* that liberty interests protected by the Fourteenth

Case 9:22-cv-00638-DNH-TWD   Document 58   Filed 02/28/25   Page 180 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Robles v. Bleau, Not Reported in F.Supp.2d (2008)
2008 WL 4693153

Amendment's Due Process Clause will not arise from the use of mandatory language of a particular state law or regulation, but "will generally be limited to freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 483–484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

Here, Plaintiff alleges that the disciplinary hearing conducted by Defendant Varkiar resulted in a sentence of eighty-seven (87) days in the Riverview C.F. S.H.U. with a corresponding loss of privileges. *See, supra,* Part I.A. of this Report-Recommendation. Numerous district courts in this Circuit have issued well-reasoned decisions finding no atypical and significant hardship experienced by inmates who served sentences in S.H.U. of far more than the eighty-seven (87) days alleged here-even where the conditions of confinement in the S.H.U. were, to varying degrees, more restrictive than those in the prison's general population.[63] As a result, I find that Plaintiff has not alleged facts plausibly suggesting that he possessed, during the disciplinary hearing, a liberty interest that was protected by the Fourteenth Amendment.

However, such a finding leads only to a recommendation that this claim be dismissed *without* prejudice. This is because it is conceivable to me that Plaintiff's Complaint and Response Affidavit-which are silent with regard to the conditions of confinement he experienced in the Riverview C.F. S.H.U.- may be amended so as to allege facts plausibly suggesting that those conditions were so restrictive as to impose on Plaintiff *an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life* (thus conferring on him a protected liberty interest under the Fourteenth Amendment).

I should also point out that, even assuming (for the sake of argument) that Plaintiff possessed a protected liberty interest with regard to his disciplinary hearing, I find that he has alleged facts plausibly suggesting that he was, in fact, given all the process that he was due under the circumstances. Specifically, Plaintiff alleges that he was given the following: (1) timely notice of the misbehavior report; (2) an "opportunity to explain [himself]" at his disciplinary hearing; (3) a written disciplinary hearing disposition; (4) a disciplinary hearing disposition that was based on at least some evidence (e.g., his own hearing testimony, which Defendant Varkiar found to be not credible); and (5) an opportunity to appeal the disciplinary hearing disposition (which he did so successfully). *See, supra,* Part I.A. of this Report-Recommendation.

**\*10** Of course, the defect that Plaintiff alleges occurred at his disciplinary hearing was Defendant Varkiar's failure to use the telephone to call back the person in the medical unit at Riverview C.F. and request that he or she again answer the question of whether Plaintiff was physically unable to urinate, taking into account his prostate condition as shown by his medical records. *Id.* Generally, it is not the duty of an impartial hearing officer to conduct an investigation of the merit of the disciplinary charges against an inmate; rather, the duty of a hearing officer is merely to review the evidence presented to him at the disciplinary hearing, and in *certain circumstances* identify defense witnesses for the inmate.[64] Here, I find that Plaintiff has alleged no circumstances conferring on Defendant Varkiar a duty to call back the medical unit at Riverview C.F. For example, I find that Plaintiff's Complaint and Response Affidavit are devoid of any allegation that, at his disciplinary hearing, he requested and was denied an adjournment of the hearing so that, with the help of a legal assistant, he could obtain his medical records and call as a witness a member of the medical unit, in order that he himself could introduce testimony that his prostate condition prevented him from urinating during the time in question. *See, supra,* Part I.A. of this Report-Recommendation. However, again, such a finding leads only to a recommendation that this claim be dismissed *without* prejudice, because it is conceivable to me that Plaintiff's Complaint and Response Affidavit may be amended to allege facts plausibly suggesting that, at his disciplinary hearing, he made, and was denied, such a request.

For these reasons, I recommend that the Court dismiss Plaintiff's Fourteenth Amendment procedural due process claim regarding his disciplinary hearing if, within thirty (30) days from the date of the Court's final Order on this Report-Recommendation, Plaintiff does not file an Amended Complaint that successfully states a Fourteenth Amendment procedural due process claim regarding his disciplinary hearing.

Finally, two points bear mentioning. First, to the extent that Plaintiff is attempting to allege that his procedural due process rights were violated at his disciplinary hearing also because Defendant Bleau violated Part D.4. of DOCS Directive 4937 by giving Plaintiff only two cups of water during the three-hour period in question, that allegation is not actionable under the circumstances. Section 1983 provides, in pertinent part, "Every person who ... subjects, or causes to be subjected, any citizen of the United States or other person within the

Case 9:22-cv-00638-DNH-TWD   Document 58   Filed 02/28/25   Page 181 of 353

**Trapani v. Pullen, Not Reported in Fed. Supp. (2016)**

2016 WL 1295137

Robles v. Bleau, Not Reported in F.Supp.2d (2008)

2008 WL 4693153

jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by *the Constitution and laws,* shall be liable to the party injured ...." 42 U.S.C. § 1983 [emphasis added]. The term "the Constitution and laws" refers to the United States Constitution and *federal* laws. [65] A violation of a state law or regulation, *in and of itself,* does not give rise to liability under 42 U.S.C. § 1983. [66] Furthermore, the violation of a DOCS Directive, alone, is not even a violation of New York State law or regulation; [67] this is because a DOCS Directive is "merely a system the [DOCS] Commissioner has established to assist him in exercising his discretion," which he retains, despite any violation of that Directive. [68]

\*11  Second, in making the above recommendation (that Plaintiff be required to file an Amended Complaint that successfully states a Fourteenth Amendment procedural due process claim regarding his disciplinary hearing, upon penalty of dismissal), I am in no way "issuing specific instructions [to Plaintiff] mandating the content and format of the putative amended complaint"-instructions that the Second Circuit recently found erroneous in the case of *Sealed Plaintiff v. Sealed Defendant # 1,* No. 06-1590, 2008 WL 3294864, at \*6 (2d Cir. Aug.12, 2008). Rather, I am merely reporting my finding that Plaintiff's current Fourteenth Amendment procedural due process claim regarding his disciplinary hearing fails to state a claim upon which relief might be granted, as pleaded.

**ACCORDINGLY,** it is

**RECOMMENDED** that Defendants' motion to dismiss for failure to state a claim (Dkt. No. 16) be *GRANTED* **in part** and *DENIED* **in part** in the following respects:

(1) Plaintiff's Fourteenth Amendment procedural due process claim against Defendant Varkiar regarding his disciplinary

hearing be *DISMISSED* if, within thirty (30) days from the date of the Court's final Order on this Report-Recommendation, Plaintiff does not file an Amended Complaint that successfully states a Fourteenth Amendment procedural due process claim regarding his disciplinary hearing; and

(2) The other claims asserted in Plaintiff's Complaint (as effectively amended by his Response Affidavit) be *DISMISSED* **with prejudice,** and without condition.

**ANY OBJECTIONS** to this Report-Recommendation **must be filed with the Clerk of this Court within TEN (10) WORKING DAYS, PLUS THREE (3) CALENDAR DAYS from the date of this Report-Recommendation (unless the third calendar day is a legal holiday, in which case add a fourth calendar day).**See 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); N.D.N.Y. L.R. 72.1(c); Fed.R.Civ.P. 6(a) (2), (d).

**BE ADVISED that the District Court, on** *de novo* **review, will ordinarily refuse to consider arguments, case law and/ or evidentiary material that could have been, but was not, presented to the Magistrate Judge in the first instance.** [69]

**BE ALSO ADVISED that the failure to file timely objections to this Report-Recommendation will PRECLUDE LATER APPELLATE REVIEW of any Order of judgment that will be entered.**Roldan v. Racette, 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of H.H.S.,* 892 F.2d 15 [2d Cir.1989] ).

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 4693153

Footnotes

30    *Gonzales v. Wing,* 167 F.R.D. 352, 355 (N.D.N.Y.1996) (McAvoy, J.), aff'd 113 F.3d 1229 (2d Cir.1997) (unpublished table opinion), *accord, Hudson v. Artuz,* 95-CV-4768, 1998 WL 832708, at \*2 (S.D.N.Y. Nov 30, 1998), *Flores v. Bessereau,* 98-CV-0293, 1998 WL 315087, at \*1 (N.D.N.Y. June 8, 1998) (Pooler, J.) Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history. *See, e.g., Photopoint Technol., LLC v. Smartlens Corp.,* 335 F.3d 152, 156 (2d Cir.2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.,* 104 F.3d 355 [2d Cir.1996] ).

1    *See, infra,* note 41 of this Report-Recommendation (citing cases).

2    (Dkt. No. 17, at 4 [Plf.'s Response Affid.].)

3    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 4 [Plf.'s Response Affid.].)

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 182 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Robles v. Bleau, Not Reported in F.Supp.2d (2008)

2008 WL 4693153

4    (Dkt. No. 17, at 4 [Plf.'s Response Affid.]; Dkt. No. 17, at 8 [Ex. 1 to Plf.'s Response Affid., attaching completed form entitled, 'Request for Urinalysis Test'].)

5    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 4 [Plf.'s Response Affid.]; Dkt. No. 17, at 8 [Ex. 1 to Plf.'s Response Affid., attaching completed form entitled, "Request for Urinalysis Test"]; Dkt. No. 17, at 14 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006].)

6    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 14 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006].)

7    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 4 [Plf.'s Response Affid.]; Dkt. No. 17, at 10 [Ex. 3 to Plf.'s Response Affid ., attaching page from DOCS Directive 4937].)

8    (Dkt. No. 17, ¶ 7 [Plf.'s Compl.]; Dkt. No. 17, at 4, 5 [Plf.'s Response Affid.]; Dkt. No. 17, at 10 [Ex. 3 to Plf.'s Response Affid., attaching page from DOCS Directive 4937].)

9    (Dkt. No. 17, ¶¶ 6-7 [Plf.'s Compl.]; Dkt. No. 17, at 4 [Plf .'s Response Affid.]; Dkt. No. 17, at 11 [Ex. 4 to Plf.'s Response Affid., attaching Inmate Misbehavior Report].)

10   (Dkt. No. 17, at 11 [Ex. 4 to Plf.'s Response Affid., attaching Inmate Misbehavior Report].)

11   (Dkt. No. 17, at 5 [Plf.'s Response Affid.].)

12   (Dkt. No. 1, ¶ 7 [Plf.'s Compl.]; Dkt. No. 17, at 4, 5 [Plf.'s Response Affid.]; Dkt. No. 17, at 9 [Ex. 2 to Plf.'s Response Affid., attaching page of his Ambulatory Health Record].)

13   (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 5 [Plf.'s Response Affid.].)

14   (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 11 [Ex. 4 to Plf.'s Response Affid., attaching Inmate Misbehavior Report].)

15   (Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition].)

16   (Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition].)

17   (Id.)

18   (Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition]; Dkt. No. 17, at 15 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006].)

19   (Dkt. No. 17, at 2-3 [Plf.'s Response Affid.]; Dkt. No. 17, at 14-15 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006]; Dkt. No. 17, at 17 [Ex. 6 to Plf.'s Response Affid., attaching page of information about Flomax].)

20   (Dkt. No. 1, ¶ 7 [Plf.'s Compl.]; Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 17 [Ex. 6 to Plf.'s Response Affid ., attaching page of information about Flomax].)

21   (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition].)

22   (Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition]; Dkt. No. 17, at 3 [Plf.'s Response Affid.].)

23   (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 3-4 [Plf.'s Response Affid.]; Dkt. No. 17, at 15 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006]; Dkt. No. 17, at 16 [Ex. 8 to Plf.'s Response Affid., attaching Donald Selsky's Review of Superintendent's Hearing, issued on January 19, 2007].)

24   (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 2 [Plf.'s Response Affid.].)

25   (Dkt. No. 1, ¶ 6 [Plf.'s Compl.].)

26   *See* 5C *Wright & Miller, Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") [citations omitted]; *Princeton Indus., Inc. v. Rem,* 39 B.R. 140, 143 (Bankr.S.D.N.Y.1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello,* 55 F.R.D. 72, 74 (S.D.N.Y.1972) ("This motion under Fed.R.Civ P. 12(b)(6)] tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.' ").

27   *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest ... In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon,* 360 F.3d 73, 80 (2d Cir.2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6),

Case 9:22-cv-00638-DNH-TWD   Document 58   Filed 02/28/25   Page 183 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Robles v. Bleau, Not Reported in F.Supp.2d (2008)
2008 WL 4693153

that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas*, 308 F.3d 180, 187 (2d Cir.2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation ... fails as a matter of law.") [citation omitted]; *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir.2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 379 F.Supp.2d 348, 370 (S.D.N.Y.2005) ( "Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6) ].") [citation omitted]; *Util. Metal Research & Generac Power Sys.*, 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5, 2004 WL 2613993 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a] ); accord, *Straker v. Metro Trans. Auth.*,331 F.Supp.2d 91, 101-102 (E.D.N.Y.2004); *Tangorre v. Mako's, Inc.*, 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7, 2002 WL 313156 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b] [6] motion-one aimed at the sufficiency of the pleadings under Rule 8 [a], and the other aimed at the legal sufficiency of the claims).

28      *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 125 S.Ct. 1627, 1634, 161 L.Ed.2d 577 (2005) (holding that the complaint failed to meet this test) [citation omitted; emphasis added]; *see also Swierkiewicz*, 534 U .S. at 512 [citation omitted]. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) [citation omitted].

29      *Swierkiewicz*, 534 U.S. at 514 (quoting *Conley*, 355 U.S. at 48) *see also Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir.1995) ("Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.") [citation omitted]; *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir.1988) ("[T]he principle function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.") [citations omitted].

31      See, e.g., *Swierkiewicz*, 534 U.S. at 513-514 (noting that "Rule 8(a)[2]'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake.").

32      2 Moore's Federal Practice § 12.34[1][b] at 12-61 (3d ed.2003).

33      See, e.g., *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, ---- - ----, 127 S.Ct. 1955, 1964-1974, 167 L.Ed.2d 929 (2007) (pleading did not meet Rule 8[a][2]'s liberal requirement), *accord, Dura Pharmaceuticals*, 125 S.Ct. at 1634-1635, *Christopher v. Harbury*, 536 U.S. 403, 416-422, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002), *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234-235 (2d Cir.2004), *Gmurzynska v. Hutton*, 355 F.3d 206, 208-209 (2d Cir.2004). Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz*. See, e.g., *Salvador v. Adirondack Park Agency of the State of N.Y.*, No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr.26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a][2] ). Although these decisions are not themselves precedential authority, *see* Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after *Swierkiewicz*, of certain cases from within the Second Circuit interpreting Rule 8(a)(2).*See Khan v. Ashcroft*, 352 F.3d 521, 525 (2d Cir.2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS*, 244 F.3d 81 [2d Cir.2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr*, 533 U.S. 289 [2001] ).

34      The Court in *Twombly* further explained: "The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been adequately stated, it may be supported by showing any set of facts consistent with the allegations in the complaint....*Conley*, then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival."*Twombly*, 127 S.Ct. at 1969.

35      See, e.g., *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir.2008) (in civil rights action, stating that "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim up relief that is plausible on its face ' ") [citation omitted]; *Goldstein v. Pataki*, 07-CV-2537, 2008 U.S.App. LEXIS 2241, at *14, 2008 WL 269100 (2d Cir. Feb. 1, 2008) (in civil rights action, stating that " *Twombly* requires ... that the complaint's '[f]actual allegations be enough to raise a right to relief above the speculative level ...' ") [internal citation omitted]; *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98, n. 2 (2d Cir.2007) ("We have declined to read Twombly's flexible 'plausibility standard' as relating only to antitrust cases.") [citation omitted]; *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir.2007) (in prisoner civil rights action, stating, "[W]e believe the [Supreme] Court [in *Bell Atlantic Corp. v. Twombly* ] is ... requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*.") [emphasis in original].

Case 9:22-cv-00638-DNH-TWD   Document 58   Filed 02/28/25   Page 184 of 353

**Trapani v. Pullen, Not Reported in Fed. Supp. (2016)**

2016 WL 1295137

Robles v. Bleau, Not Reported in F.Supp.2d (2008)

2008 WL 4693153

36    See, e.g., *Jacobs v. Mostow*, 281 F. App'x 85, 87 (2d Cir. March 27, 2008) (in pro se action, stating, "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim up relief that is plausible on its face.'") [citation omitted] (summary order, cited in accordance with Local Rule 32.1[c][1] ); *Boykin v. KeyCorp.*, 521 F.3d 202, 215-16 (2d Cir.2008) (finding that borrower's *pro se* complaint sufficiently presented a "*plausible* claim of disparate treatment," under Fair Housing Act, to give lenders fair notice of her discrimination claim based on lenders' denial of home equity loan application) [emphasis added].

37    For example, in *Erickson*, a district court had dismissed a *pro se* prisoner's civil rights complaint because, although the complaint was otherwise factually specific as to how the prisoner's hepatis C medication had been wrongfully terminated by prison officials for a period of approximately 18 months, the complaint (according to the district court) failed to allege facts plausibly suggesting that the termination caused the prisoner "substantial harm." 127 S.Ct. at 2199. The Supreme Court vacated and remanded the case because (1) under Fed.R.Civ.P. 8 and *Twombly*, all that is required is a "a short and plain statement of the claim" sufficient to "give the defendant fair notice" of the claim and "the grounds upon which it rests," and (2) the plaintiff had alleged that the termination of his hepatitis C medication for 18 months was "endangering [his] life" and that he was "still in need of treatment for [the] disease."*Id.* at 2200.While *Erickson* does not elaborate much further on its rationale, a careful reading of the decision (and the dissent by Justice Thomas) reveals a point that is perhaps so obvious that it did not need mentioning in the short decision: a claim of deliberate indifference to a serious medical need under the Eighth Amendment involves two elements, i.e., the existence of a sufficiently serious medical need possessed by the plaintiff, and the existence of a deliberately indifferent mental state possessed by prison officials with regard to that sufficiently serious medical need. The *Erickson* decision had to do with only the first element, not the second element. *Id.* at 2199-2200.In particular, the decision was merely recognizing that an allegation by a plaintiff that, during the relevant time period, he suffered from hepatis C is, in and of itself, a factual allegation plausibly suggesting that he possessed a sufficiently serious medical need; the plaintiff need not *also* allege that he suffered an independent and "substantial injury" as a result of the termination of his hepatis C medication. *Id.* This point of law is hardly a novel one. For example, numerous decisions, from district courts within the Second Circuit alone, have found that suffering from hepatis C constitutes having a serious medical need for purposes of the Eighth Amendment. *See, e.g., Rose v. Alvees*, 01-CV-0648, 2004 WL 2026481, at *6 (W.D.N.Y. Sept.9, 2004); *Verley v. Goord*, 02-CV-1182, 2004 WL 526740, at *10 n. 11 (S.D.N.Y. Jan.23, 2004); *Johnson v. Wright*, 234 F.Supp.2d 352, 360 (S.D.N.Y.2002); *McKenna v. Wright*, 01-CV-6571, 2002 WL 338375, at *6 (S.D.N.Y. March 4, 2002); *Carbonell v. Goord*, 99-CV-3208, 2000 WL 760751, at *9 (S.D.N.Y. June 13, 2000).

38    *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.1994) (affirming grant of motion to dismiss) [citation omitted]; *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.1994).

39    *Hernandez*, 18 F.3d at 136 [citation omitted]; *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir.2003) [citations omitted]; *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d Cir.1999) [citation omitted].

40    *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) ("[A] *pro se* complaint ... must be held to less stringent standards than formal pleadings drafted by lawyers ....") [internal quotation marks and citation omitted]; *McEachin v. McGinnis*, 357 F.3d 197, 200 (2d Cir. 2004) ("[W]hen the plaintiff proceeds pro se, ... a court is obliged to construe his pleadings liberally, particularly when they allege civil rights violations.") [citation omitted].

41    "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss. However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum."*Gadson v. Goord*, 96-CV-7544, 1997 WL 714878, at *1, n. 2 (S.D.N.Y. Nov.17, 1997) (citing, *inter alia*, *Gil v. Mooney*, 824 F.2d 192, 195 [2d Cir.1987] [considering plaintiff's response affidavit on motion to dismiss] ). Stated another way, "in cases where a *pro se* plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.' " *Donhauser v. Goord*, 314 F.Supp.2d 119, 212 (N.D.N.Y.2004) (considering factual allegations contained in plaintiff's opposition papers) [citations omitted]. *vacated in part on other grounds*,317 F.Supp.2d 160 (N.D.N.Y.2004). This authority is premised, not only on case law, but on Rule 15 of the Federal Rules of Civil Procedure, which permits a plaintiff, as a matter of right, to amend his complaint once at any time before the service of a responsive pleading-which a motion to dismiss is not. *See Washington v. James*, 782 F.2d 1134, 1138-39 (2d Cir.1986) (considering subsequent affidavit as amending *pro se* complaint, on motion to dismiss) [citations omitted]

42    *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir.2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) [internal quotation and citation omitted].

43    *Cuoco v. Montsugu*, 222 F.3d 99, 112 (2d Cir.2000) [internal quotation and citation omitted]; see also Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires").

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 185 of 353

Robles v. Bleau, Not Reported in F.Supp.2d (2008)

2008 WL 4693153

44    *Cuoco*, 222 F.3d at 112 (finding that repleading would be futile) [citation omitted]; *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) [citation omitted]

45    *Muniz v. Goord*, 04-CV-0479, 2007 WL 2027912, at *2, n. 14 (N.D.Y.Y. July 11, 2007) (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord*, 04-CV-1433, 2007 WL 201109, at *5, n. 34 (N.D.N.Y. Jan.23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.*, 04-CV-1262, 2007 WL. 119453, at *2, n. 13 (N.D.N.Y. Jan.10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins v. Fed. Bur. of Prisons*, 05-CV-0904, 2007 WL 37404, at *4, n. 30 (N.D.N.Y. Jan.4, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Goros v. Cent. Office Review Comm.*, 03-CV-0407, 2006 WL 2794415, at *5, n. 18 (N.D.N.Y. Sept., 26, 2006) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Williams v. Weaver*, 03-CV-0912, 2006 WL 2799417, at *4, n. 16 (N.D.N.Y. Sept. 26, 2006) (Kahn, J., adopting report-recommendation of Lowe, M.J.)

46    *See Sealed Plaintiff v. Sealed Defendant # 1*, No. 06-1590, 2008 WL 3294864, at *5 (2d Cir. Aug.12, 2008) ("[The obligation to construe the pleadings of *pro se* litigants liberally] entails, at the very least, a permissive application of the rules governing the form of pleadings.") [internal quotation marks and citation omitted]; *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir.1983) ("[R]easonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training ... should not be impaired by harsh application of technical rules.") [citation omitted]

47    *See Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir.1972) (extra liberal pleading standard set forth in *Haines v. Kerner*, 404 U.S. 519 [1972], did not save *pro se* complaint from dismissal for failing to comply with Fed.R.Civ.P. 8] ); *accord*, *Shoemaker v. State of Cal.*, 101 F.3d 108 (2d Cir.1996) (citing *Prezzi v. Schelter*, 469 F.2d 691) [unpublished disposition cited only to acknowledge the continued precedential effect of *Prezzi v. Schelter*, 469 F.2d 691, within the Second Circuit]; *accord*, *Praseuth v. Werbe*, 99 F.3d 402 (2d Cir.1995).

48    *See McNeil v. U.S.*, 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed ... we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Faretta v. California*, 422 U.S. 806, 834, n. 46, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) ("The right of self-representation is not a license ... not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir.2006) (pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir.1983) (pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *cf. Phillips v. Girdich*, 408 F.3d 124, 128, 130 (2d Cir.2005) (acknowledging that *pro se* plaintiff's complaint could be dismissed for failing to comply with Rules 8 and 10 if his mistakes either "undermine the purpose of notice pleading [ ]or prejudice the adverse party").

49    *Stinson v. Sheriff's Dep't of Sullivan Cty.*, 499 F.Supp. 259, 262 & n. 9 (S.D.N.Y.1980), *accord*, *Standley v. Dennison*, 05-CV-1033, 2007 WL 2406099, at *6, n. 27 (N.D.N.Y. Aug.21, 2007) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Muniz v. Goord*, 04-CV-0479, 2007 WL 2027912, at *2 (N.D.Y.Y. July 11, 2007) (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *DiProjetto v. Morris Protective Serv.*, 489 F.Supp.2d 305, 307 (W.D.N.Y.2007); *Cosby v. City of White Plains*, 04-CV-5829, 2007 WL 853203, at *3 (S.D.N.Y. Feb.9, 2007); *Lopez v. Wright*, 05-CV-1568, 2007 WL 388919, at *3, n. 11 (N.D.N.Y. Jan.31, 2007) (Mordue, C.J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord*, 04-CV-1433, 2007 WL 201109, at *5 (N.D.N.Y. Jan.23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.*, 04-CV-1262, 2007 WL 119453, at *2, n. 13 (N.D.N.Y. Jan.10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins v. Fed. Bur. of Prisons*, 05-CV-0904, 2007 WL 37404, at *4 (N.D.N.Y. Jan.4, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.).

50    *McGinty v. State of New York*, 251 F.3d 84, 100 (2d Cir.2001) [citation omitted]; *see alsoFed.R.Civ.P.* 12(h)(3).

51    42 U.S.C. § 1983 [emphasis added].

52    *See, supra*, note 44 of this Report-Recommendation.

53    *See Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir.1993) ("The immunity to which a state's official may be entitled in a § 1983 action depends initially on the capacity in which he is sued. To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."); *Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir.1993) ( "[I]t is clear that the Eleventh Amendment does not permit suit [under Section 1983] for money damages against state officials in their official capacities."); *Farid v. Smith*, 850 F.2d 917, 921 (2d Cir.1988) ("The eleventh amendment bars recovery against an employee who is sued in his official capacity, but does not protect him from personal liability if he

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

Case 9:22-cv-00638-DNH-TWD   Document 58   Filed 02/28/25   Page 186 of 353

2016 WL 1295137

Robles v. Bleau, Not Reported in F.Supp.2d (2008)
2008 WL 4693153

is sued in his 'individual' or 'personal' capacity."); *see also Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) ("Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office ... As such, it is no different from a suit against the State itself.... We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); *Kentucky v. Graham*, 473 U.S. 159, 165-66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity."); *see also Holloway v. Selsky*, 05-CV-0501, 2007 WL 433375, at *4 (N.D.N.Y. Feb.6, 2007) (Sharpe, J.) (citing cases).

54   *See, infra,* note 41 of this Report-Recommendation (citing cases).

55   The authority to conduct this *sua sponte* analysis is derived from two sources: (1) 28 U.S.C. § 1915(e)(2)(B)(ii), which provides that "the court shall dismiss [a] case [brought by a prisoner proceeding *in forma pauperis* ] at any time if the court determines that ... the action ... is frivolous or malicious[,] ... fails to state a claim on which relief may be granted[,] ... or ... seeks monetary relief against a defendant who is immune from such relief"; and (2) 28 U.S.C. § 1915A(b), which provides that, "[o]n review, the court shall ... dismiss the [prisoner's] complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted ... "

56   As explained above in Part II of this Report-Recommendation, a dismissal for failure to state a claim may be based not only on a successful challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2), but also on a successful challenge to the legal cognizability of the claims asserted in the pleading. See, supra, notes 26 and 27 of this Report-Recommendation.

57   *Farmer v. Brennan*, 511 U.S. 825, 827, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) ("[S]ubjective recklessness as used in the criminal law is a familiar and workable standard that is consistent with the Cruel and Unusual Punishments Clause as interpreted in our cases, and we adopt it as the test for 'deliberate indifference' under the Eighth Amendment."); *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir.1998) ("The required state of mind [for a deliberate indifference claim under the Eighth Amendment], equivalent to criminal recklessness, is that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and he must also draw the inference.") [internal quotation marks and citations omitted]; *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir.1996) ("The subjective element requires a state of mind that is the equivalent of criminal recklessness ...") [citation omitted]; *accord, Kowlt v. Greene*, 06-CV-0478, 2007 WL 2846905, at *17, n. 98 (N.D.N.Y. Sept.26, 2007) (Kahn, J.), *Richards v. Goord*, 04-CV-1433, 2007 WL 201109, at *15, n. 124 (N.D.N.Y. Jan.23, 2007) (Kahn, J.), *Salaam v. Adams*, 03-CV-0517, 2006 WL 2827687, at *10, n. 59 (N.D.N.Y. Sept.29, 2006) (Kahn, J.).

58   In addition, it is worth noting that Plaintiff's explanation to Defendant Bleau consisted of a statement that Plaintiff could not urinate because of his prostate *medication*, not because of his prostate *condition. See, supra,* Part I.A. of this Report-Recommendation. As a result, Defendant Bleau would not have become aware of the reason for Plaintiff's inability to urinate (which Plaintiff now alleges was his prostate *condition*, not his prostate *medication* ), even if Defendant Bleau had remained in Plaintiff's presence and listened to his explanation.

59   *Farmer v. Brennan*, 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) ("[D]eliberate indifference [for purposes of an Eighth Amendment claim] describes a state of mind more blameworthy than negligence."); *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Murphy v. Grabo*, 94-CV-1684, 1998 WL 166840, at *4 (N.D.N.Y. Apr.9, 1998) (Pooler, J .) ("Deliberate indifference, whether evidenced by [prison] medical staff or by [prison] officials who allegedly disregard the instructions of [prison] medical staff, requires more than negligence.... Disagreement with prescribed treatment does not rise to the level of a constitutional claim.... Additionally, negligence by physicians, even amounting to malpractice, does not become a constitutional violation merely because the plaintiff is an inmate.... Thus, claims of malpractice or disagreement with treatment are not actionable under section 1983.") [citations omitted].").

60   See, supra, note 44 of this Report-Recommendation.

61   *Accord, Lugo v. Van Orden*, 07-CV-0879, 2008 U.S. Dist. LEXIS 56707, at *7, 2008 WL 2884925 (N.D.N.Y. July 23, 2008) (McAvoy, J.); *Darvie v. Countryman*, 08-CV-0715, 2008 U.S. Dist. LEXIS 60931, 2008 WL 3286250 (N.D.N.Y. Aug. 7, 2008) (Sharpe, J.) *adopting* 2008 U.S. Dist. LEXIS 52797, at *18, n. 5, 2008 WL 2725071 (N.D.N.Y. July 10, 2008) (Lowe, M.J.); *Anderson v. Banks*, 06-CV-0625, 2008 U.S. Dist. LEXIS 60896, at *16-17, 2008 WL 3285917 (N.D.N.Y. May 19,

WESTLAW   © 2016 Thomson Reuters. No claim to original U.S. Government Works.   13

Case 9:22-cv-00638-DNH-TWD   Document 58   Filed 02/28/25   Page 187 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Robles v. Bleau, Not Reported in F.Supp.2d (2008)

2008 WL 4693153

2008) (Homer, M.J.), *adopted by* 2008 U.S. Dist. LEXIS 60932, 2008 WL 3285917 (N.D.N.Y. Aug. 6, 2008) (Sharpe, J.); *Stewartson v. Almstead*, 04-CV-1097, 2008 U.S. Dist. LEXIS 22178, at *7, 2008 WL 783367 (N.D.N.Y. March 20, 2008) (McAvoy, J.); *McEachin v. Goord*, 06-CV-1192, 2008 U.S. Dist. LEXIS 27479, at *12, 2008 WL 1788440 (N.D.N.Y. Feb. 8, 2008) (Treece, M.J.), *adopted by* 2008 U.S. Dist. 31879, 2008 WL 1788440 (N.D.N.Y. Apr. 17, 2008) (Hurd, J.); *Murray v. Pataki*, 03-CV-1263, 2007 U.S. Dist. LEXIS 26959, at *27, 2007 WL 965346 (N.D.N.Y. March 5, 2007) (Treece, M.J.), *adopted by* 2007 U.S. Dist. LEXIS 23065, 2007 WL 956941 (N.D.N.Y. March 29, 2007) (Kahn, J.); *Madera v. Goord*, 103 F.Supp.2d 536, 542 (N.D.N.Y.2000) (Kahn, J., adopting Report-Recommendation by Di Bianco, M.J.).

62    *See, supra,* note 44 of this Report-Recommendation.

63    *See, e.g., Spence v. Senkowski,* 91-CV-0955, 1998 WL 214719, at *3 (N.D.N.Y. Apr.17, 1998) (McCurn, J.) (180 days that plaintiff spent in S.H.U., where he was subjected to numerous conditions of confinement that were more restrictive than those in general population, did not constitute atypical and significant hardship in relation to ordinary incidents of prison life); accord, *Husbands v. McClellan,* 990 F.Supp. 214, 217-19 (W.D.N.Y.1998) (180 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Warren v. Irvin,* 985 F.Supp. 350, 353-56 (W.D.N.Y.1997) (161 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Ruiz v. Selsky,* 95-CV-2003, 1997 WL 137448, at *4-6 (S.D.N.Y.1997) (192 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Horne v. Coughlin,* 949 F.Supp. 112, 116-17 (N.D.N.Y.1996) (Smith, M.J.) (180 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Nogueras v. Coughlin,* 94-CV-4094, 1996 WL 487951, at *4-5 (S.D.N.Y. Aug.27, 1996) (210 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Carter v. Carriero,* 905 F.Supp. 99, 103-04 (W.D.N.Y.1995) (270 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population).

64    *Jackson v. Onondaga County,* 05-CV-1393, 2008 U.S. Dist. LEXIS 64930, at *40 & n. 46, 549 F. Supp. 2d 204 (N.D.N.Y. Jan. 8, 2008) (Lowe, M.J.) [citations omitted], *adopted on de novo review by* 05-CV-1393, 2008 U.S. Dist. LEXIS 22175, 2008 WL 782655 (N.D.N.Y. March 20, 2008) (McAvoy, J.); *see also Martin v. Mitchell,* 92-CV-0716, 1995 U.S. Dist. LEXIS 19008, at *10-12, 1995 WL 760851 (N.D.N.Y. Nov. 24, 1995) (McAvoy, C.J.) (rejecting plaintiff's assertion that prison disciplinary hearing officer "had a duty to investigate the identity of [a correction officer identified by the plaintiff merely as] 'Budd' and call him to testify"); *Hampton v. McGinnis,* 89-CV-6344, 1992 U.S. Dist. LEXIS 15696, at *6, 1992 WL 309553 (S.D.N.Y. Oct. 15, 1992) ("[I]t was not [the disciplinary hearing officer's] duty to investigate [the prisoner's assault] claim, and plaintiff was not precluded from offering his own evidence on that subject."); cf. *Kingsley v. Bureau of Prisons,* 937 F.2d 26, 31 (2d Cir.1991) (under circumstances, a hearing officer did have a duty to identify the name of the plaintiff's desired witness because [1] the plaintiff had an "especially compelling" need for the witness, [2] the witness's identity was "readily available" to the hearing officer, [3] the plaintiff had arrived at the prison only five days earlier, [4] fulfilling the request would not have delayed the imposition of "swift discipline," and [5] "no other institutional objective was implicated").

65    *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) ("The terms of § 1983 make plain two elements that are necessary for recovery. First, the plaintiff must prove that the defendant has deprived him of a right secured by the 'Constitution and laws' of the *United States.*") (emphasis added); *Patterson v. Coughlin,* 761 F.2d 886, 890 (2d Cir.1985) ("Recovery under 42 U.S.C. § 1983... is premised upon a showing, first, that the defendant has denied the plaintiff a constitutional or *federal* statutory right ...") (citation omitted; emphasis added); *Fluent v. Salamanca Indian Lease Auth.,* 847 F.Supp. 1046, 1056 (W.D.N.Y.1994) ("The initial inquiry in a § 1983 action is whether the Plaintiff has been deprived of a right 'secured by the Constitution and *laws'of the United States.*") (emphasis added)

66    *See Doe v. Conn. Dept. of Child & Youth Servs.,* 911 F.2d 868, 869 (2d Cir.1990) ("[A] violation of state law neither gives [plaintiff] a § 1983 claim nor deprives defendants of the defense of qualified immunity to a proper § 1983 claim."); *Patterson,* 761 F.2d at 891 ("[A] state employee's failure to conform to state law does not in itself violate the *Constitution* and is not alone actionable under § 1983...") (citation omitted); *Murray v. Michael,* 03-CV-1434, 2005 WL 2204985, at *10 (N.D.N.Y. Sept.7, 2005) (DiBianco, M.J.) ("[A]ny violations of state regulations governing the procedures for disciplinary hearings ... do not rise to the level of constitutional violations.") (citation omitted); *Rivera v. Wohlrab,* 232 F.Supp.2d 117, 123 (S.D.N.Y.2002) ("[V]iolations of state law procedural requirements do not alone constitute a deprivation of due process since '[federal constitutional standards rather than state law define the requirements of procedural due process.'") (citing *Russell v. Coughlin,* 910 F.2d 75, 78 n. 1 [2d Cir.1990] ).

67    *See Rivera v. Wohlrab,* 232 F.Supp.2d 117, 123 (S.D.N.Y.2002) (citation omitted); *Lopez v. Reynolds,* 998 F.Supp. 252, 259 (W.D.N.Y.1997).

68    *See Farinaro v. Coughlin,* 642 F.Supp. 276, 280 (S.D.N.Y.1986).

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Robles v. Bleau, Not Reported in F.Supp.2d (2008)

2008 WL 4693153

69    See, e.g., *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir.1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters*, 894 F.2d 36, 40 n. 3 (2d Cir.1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *Alexander v. Evans*, 88-CV-5309, 1993 WL 427409, at * 18 n. 8 (S.D.N.Y. Sept.30, 1993) (declining to consider affidavit of expert witness that was not before magistrate) [citation omitted]; *see also Murr v. U.S.*, 200 F.3d 895, 902, n. 1 (6th Cir.2000) ("Petitioner's failure to raise this claim before the magistrate constitutes waiver."); *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir.1996) ("Issues raised for the first time in objections to the magistrate judge's recommendations are deemed waived.") [citations omitted]; *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir.1994) ("By waiting until after the magistrate judge had issued its findings and recommendations [to raise its procedural default argument] ... Respondent has waived procedural default ... objection [ ].") [citations omitted]; *Greenhow v. Sec'y of Health & Human Servs.*, 863 F.2d 633, 638-39 (9th Cir.1988) ("[A]llowing parties to litigate fully their case before the magistrate and, if unsuccessful, to change their strategy and present a different theory to the district court would frustrate the purpose of the Magistrates Act."), *overruled on other grounds by U.S. v. Hardesty*, 977 F.2d 1347 (9th Cir.1992); *Patterson-Leitch Co. Inc. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir.1988) ("[A]n unsuccessful party is not entitled as of right to de novo review by the judge of an argument never seasonably raised before the magistrate.") [citation omitted]

End of Document    © 2016 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 1295137

Roland v. Wenz, Not Reported in F.Supp.2d (2010)
2010 WL 2834828

2010 WL 2834828
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Thomas M. ROLAND, III, Plaintiff,

v.

Frank WENZ, T.A., [1] Defendant.

Civil Action No. 9:10–CV–0089 (GLS/DEP).

|

May 24, 2010.

**Attorneys and Law Firms**

Thomas M. Roland, III, Alden, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General of the State
of New York, Roger W. Kinsey, Esq., Assistant Attorney
General, of Counsel, Albany, NY, for Defendant.

*REPORT AND RECOMMENDATION*

DAVID E. PEEBLES, United States Magistrate Judge.

*1 Plaintiff Thomas M. Roland, III, a New York State prison
inmate who is proceeding *pro se* and *in forma pauperis*, has
commenced this action pursuant to 42 U.S.C. § 1983 claiming
deprivation of his civil rights. In his complaint, plaintiff
maintains that during the period of his confinement he was
assaulted by the defendant and forced to submit to a drug
injection after informing medical personnel at the facility of
his desire to ingest the medication being administered orally,
claiming both a denial of due process as guaranteed by the
Fourteenth Amendment and exposure to cruel and unusual
punishment prohibited under the Eighth Amendment. As
relief, plaintiff's complaint seeks compensatory and punitive
damages.

In response to plaintiff's complaint the defendant has
moved for its dismissal, alleging that plaintiff's claims are
procedurally barred by virtue of his failure to exhaust
available administrative remedies before commencing
suit. [2] Defendant's motion is premised principally upon
information set forth in plaintiff's complaint, in which Roland
states that no internal grievance procedure exists at the facility
where he was housed at the relevant times and that he
therefore did not pursue a grievance with regard to the matters

set forth in his complaint, and invites the court to find, based
upon a decision in a prior action issued in a distinctly different
procedural setting, that a grievance procedure does in fact
exist at the facility.

In opposition to defendant's motion, plaintiff has submitted
additional materials in which he now claims that he did file
a grievance complaining of the conduct forming the basis
for his claims in this action. In light of plaintiff's additional
submission and my reluctance to recommend dismissal of
plaintiff's complaint on the scant and equivocal record now
before the court, and particularly given the complexity of the
exhaustion analysis in light of controlling authority in this
circuit, I am recommending that defendant's motion be denied
without prejudice.

**I. *BACKGROUND* [3]**

Plaintiff is a prison inmate entrusted to the care and custody
of the New York State Department of Correctional Services
("DOCS").*See generally* Complaint (Dkt. No. 1). While
plaintiff is currently designated to the Wende Correctional
Facility, located in Alden, New York, it appears that at the
times relevant to his claims, though still serving a prison
sentence, he was a patient at the Central New York Psychiatric
Center ("CNYPC" or "Center"), a facility operated by
the New York Office of Mental Health and located in
Marcy, New York. *Id.*; *see Decker v. Hogan*, No. 9:09–CV–
0239, 2009 WL 3165830, at *1 (N.D.N.Y. Sept.28, 2009)
(McAvoy, S.J.). [4]

On January 1, 2010, while confined at the Center, plaintiff
became involved in an altercation with another patient.
Complaint (Dkt. No. 1) § 6. Following the incident plaintiff
was placed in a room and asked by defendant Wenz whether
he preferred to take a psychotropic drug, which was going to
be administered, orally or by injection. *Id.* After informing
Wenz that he desired to take the medication orally, he was
assaulted by the defendant in the presence of other workers at
the facility, suffering injuries to his back, face, head, and right
shoulder. *Id.* During the course of the incident the plaintiff
was forcibly injected with the prescribed medication. *Id.*

**II. *PROCEDURAL HISTORY***

*2 Plaintiff commenced this action on January 26, 2010.
Dkt. No. 1. In his complaint, which names only Frank Wenz
as a defendant, plaintiff asserts two causes of action, one
alleging deprivation of due process as guaranteed under

WESTLAW © 2016 Thomson Reuters. No claim to original U.S. Government Works.

1

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 190 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Roland v. Wenz, Not Reported in F.Supp.2d (2010)

2010 WL 2834828

the Fourteenth Amendment based upon the forced injection of medicine over his objection, and the second asserting a claim of cruel and unusual punishment in violation of the Eighth Amendment stemming from defendant's alleged assault. *Id* ., § 7. As relief, plaintiff's complaint seeks recovery of compensatory damages of $100,000, and an additional award of punitive damages in a like sum. *Id.*

On March 25, 2010, defendant responded to plaintiff's complaint by moving for its dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. No. 13.In his motion, defendant asserts that plaintiff's claims in the action are barred by virtue of his failure to exhaust available administrative remedies at the CNYPC before commencing suit. *Id.* Plaintiff has since responded to defendant's motion through submission of an affirmation and attached exhibit.[5] Dkt. No. 17.

Defendant's motion, which is now fully briefed and ripe for determination,[6] has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).*See also*Fed.R.Civ.P. 72(b).

**III. DISCUSSION**

**A. Dismissal Motion Standard**

A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading, utilizing as a backdrop a pleading standard which, though unexacting in its requirements, "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation" in order to withstand scrutiny.*Ashcroft v. Iqbal,* 556 U.S. 662, ——, 129 S.Ct. 1937, 1949, 1731 L.Ed.2d 868 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929, ——, (2007)).Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."Fed.R.Civ.P. 8(a)(2).*Id.* While modest in its requirement, that rule commands that a complaint contain more than mere legal conclusions; "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."*Ashcroft,* 129 S.Ct. at 1950.

To withstand a motion to dismiss, a complaint must plead sufficient facts which, when accepted as true, state a claim which is plausible on its face.*Ruotolo v. City of New York,*

514 F.3d 184, 188 (2d Cir.2008) (citing *Twombly,* 550 U.S. at 570, 127 S.Ct. at 1974). As the Second Circuit has observed, "[w]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.,* 502 F.3d 47, 50 (2d Cir.2007) (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. at 1974).

*3 In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true and draw all inferences in favor of the non-moving party. *Cooper v. Pate,* 378 U.S. 546, 546, 84 S.Ct. 1723, 1734 (1964); *Miller v. Wolpoff & Abramson, LLP,* 321 F.3d 292, 300 (2d Cir.2003), *cert. denied,*540 U.S. 823, 124 S.Ct. 153, 157 L.Ed.2d 44 (2003); *Burke v. Gregory,* 356 F.Supp.2d 179, 182 (N.D.N.Y.2005) (Kahn, J.). The burden undertaken by a party requesting dismissal of a complaint under Rule 12(b)(6) is substantial; the question presented by such a motion is not whether the plaintiff is likely ultimately to prevail, " 'but whether the claimant is entitled to offer evidence to support the claims.' " *Log On America, Inc. v. Promethean Asset Mgmt. L.L.C.,* 223 F.Supp.2d 435, 441 (S.D.N.Y.2001) (quoting *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir.1995)) (citations and quotations omitted).

**B. Exhaustion of Remedies**

The Prison Litigation Reform Act of 1996 ("PLRA"), Pub.L. No. 104–134, 110 Stat. 1321 (1996), which imposes several restrictions on the ability of prisoners to maintain federal civil rights actions, expressly requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."42 U.S.C. § 1997e(a); *see Woodford v. Ngo,* 548 U.S. 81, 84, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006); *Hargrove v. Riley,* No. CV–04–4587, 2007 WL 389003, at *5–6 (E.D.N.Y. Jan.31, 2007)."[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."*Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 992, 152 L.Ed.2d 12 (2002) (citation omitted). Plaintiff's claims, which include denial of due process and excessive use of force, both qualify under the PLRA as the type of claims requiring exhaustion as a prerequisite to asserting them in the context of a federal civil rights action.[7] *Porter,* 534 U.S. at 532, 122 S.Ct. at 992;

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 191 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Roland v. Wenz, Not Reported in F.Supp.2d (2010)
2010 WL 2834828

*Davis v. Barrett*, 576 F.3d 129, 132 (2d Cir.2009) (quoting *Porter*, 534 U.S. at 532, 122 S.Ct. at 992).

In his motion, defendant points out that plaintiff's complaint asserts there is no grievance procedure at the Center and that he therefore did not pursue a grievance with regard to the claims now raised. Complaint (Dkt. No. 1) § 4. At this stage in the proceedings these are allegations that the court is ordinarily bound to accept as true. *Miller*, 321 F.3d at 300. Citing a recent decision from this district, defendant nonetheless asserts that the court should take judicial notice of the existence of a grievance procedure at the CNYPC and, based upon plaintiff's concession that he did not file a grievance in accordance with that procedure, should grant the desired dismissal. [8]

*4 Failure to exhaust is an affirmative defense which may or may not be asserted by a defendant. *Petty v. Goord*, No. 00 CIV 803, 2007 WL 724648, *4 (S.D.N.Y. Mar.5, 2007) (citing *Giano v. Goord*, 380 F.3d 670, 675 (2d Cir.2004)) (other citations omitted). Accordingly, a prisoner is not obligated to plead facts plausibly suggesting that he exhausted his available administrative remedies to state a claim, *Wheeler v. Pataki*, 2009 WL 674152, at *10 (N.D.N.Y. Mar.11, 2009) (McAvoy, S.J. & Lowe, M.J.) (citations omitted). An inmate may, however, gratuitously address exhaustion in a complaint in a such a way as to destine his or her claims to certain dismissal; "[i]f a prisoner chooses to plead facts regarding exhaustion, and those facts plausibly suggest that he failed to exhaust available administrative remedies, then his complaint may be dismissed for failure to state a claim."*Id.*

Significantly, even if plaintiff failed to exhaust available administrative remedies before commencing suit, that failure might be excusable. In this circuit, district courts must engage in a three-part test to determine whether an inmate's failure to exhaust should be excused. *See Johnson v. Testimaud*, 380 F.3d 691 (2d Cir.2004); *Hemphill v. State of New York*, 380 F.3d 680 (2d Cir.2004); *Giano*, 380 F.3d 680; *Abney v. McGinnis*, 380 F.3d 663 (2d Cir.2004); *see also Macias v. Zenk*, 495 F.3d 37 (2007). [9] Obviously at this formative stage in the proceedings, plaintiff has not been afforded an opportunity to offer evidence which could potentially support one or more of the recognized exceptions. This circumstance counsels against dismissal of plaintiff's complaint under Rule 12(b)(6).

It should be noted, moreover, that plaintiff commenced this action utilizing a form civil rights complaint. In response to questions regarding whether there is a *prison* grievance procedure at the facility and whether he presented facts relating to the complaint to the grievance program, plaintiff checked "no". *See* Complaint (Dkt. No. 1). Plaintiff similarly responded "no" to the question, "did you complain to *prison* authorities about the facts alleged in your complaint?"(Emphasis added). In opposition to defendant's motion to dismiss, however, plaintiff submitted a document labeled "objections", which although not sworn is construed by the court as an affirmation, stating that both he and Prisoner Legal Services, on his behalf, wrote letters complaining of the incident to Dr. Donald Sawyer, who never responded. Dkt. No. 17 at p. 2 (unnumbered). Plaintiff also attaches what appears to be one page of a copy of an undated letter addressed to Donald Sawyer, Ph. D. notifying him of the assault. *Id.* at p. 4 (unnumbered).

While at first blush plaintiff's recent submission in opposition to defendant's motion to dismiss may seem to contradict the statements made in his complaint, viewing these allegations in a light most favorable to him, it is possible that plaintiff understood the questions in the complaint to be directed solely to a prison facility, as opposed to the CNYPC. Put another way, plaintiff may have thought that the questions applied to the prison facility in which he was housed when he filed the complaint and not the CNYPC.

*5 Where a court is considering a motion to dismiss the claims of a *pro se* litigant, it is bound to construe the pleadings liberally, particularly when the plaintiff asserts a civil rights complaint. *Rodney v. Goord*, No. 00 Civ. 3724, 2003 WL 21108353, at * (S.D.N.Y. May 15, 2003) (citing *Weinstein v. Albright*, 261 F.3d 127, 132 (2d Cir.2001)) (reading a supplemental affidavit that apparently contradicted the allegations in his complaint regarding exhaustion to "raise the strongest argument that they suggest; as befits a motion to dismiss opposed by a *pro se* plaintiff."). Notwithstanding the apparent inconsistency between the statements made in plaintiff's complaint and those in his recent submission, liberally construing these documents and affording plaintiff the benefit of every favorable inference, I conclude that plaintiff's claim that he exhausted administrative remedies should be fully probed before his complaint can be dismissed. *See Gayle v. Benware*, No. 08 Civ. 8017, 2009 WL 2223910, at * 5–6 (S.D.N.Y. Jul.27, 2009) (denying motion to dismiss based upon exhaustion where plaintiff conceded in his complaint that he had not filed a grievance but in response

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 192 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

Roland v. Wenz, Not Reported in F.Supp.2d (2010)

2010 WL 2834828

to defendant's motion alleged for the first time that he had attempted to file a grievance, but staff prevented him from doing so).

## IV. SUMMARY AND CONCLUSION

Defendant's motion, when considered solely in the context of plaintiff's complaint and accepting as true each of the allegations contained within it, would likely be subject to denial since plaintiff has asserted that there is no grievance procedure in place at the CNYPC and as a result he did not file and pursue a grievance regarding the matters giving rise to his complaint. Defendant, however, has asked the court to rely upon an earlier judicial decision and find the existence of a grievance procedure at the Center. Plaintiff, for his part, has submitted materials in response to defendant's motion which suggest that a grievance may in fact have been lodged.

In light of these equivocal circumstances and the available grounds which plaintiff could potentially assert for excusing a failure to exhaust, in my view the court is not well-positioned at this juncture to conclude that a failure to exhaust defense under the PLRA is "readily apparent" or "unambiguously established in the record" sufficiently to grant defendant's motion. *Torrence v. Pesanti*, 239 F.Supp.2d 230, 231–32 (D.Conn.2003). Instead, I find that the more prudent course of action would be to permit the issue to be fully explored through discovery and allow the defendant, if deemed appropriate, to raise the issue of exhaustion by way

of a motion for summary judgment, when it can be addressed upon a more robust and fully developed record.[10]

Accordingly, it is hereby respectfully

RECOMMENDED that defendant's motion to dismiss plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Dkt. No. 13) be DENIED, without prejudice.

*6  NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir.1993).

It is hereby ORDERED that the clerk is respectfully requested to modify the official court records in this case to reflect the correct spelling of the defendant's name as Frank Wenz; and it is further

ORDERED THAT the clerk is also serve a copy of the Report and Recommendation upon the parties in accordance with this court's local rules.

## All Citations

Not Reported in F.Supp.2d, 2010 WL 2834828

---

Footnotes

1    In plaintiff's complaint the defendant is identified as "Frank Wench". Defendant's moving papers, however, reflect that the correct spelling of the defendant's last name is "Wenz". The clerk will therefore respectfully be requested to adjust the official court records in this case to reflect the correct spelling of the defendant's name.

2    In his motion defendant also asserts that to the extent the plaintiff may be suing him for damages in his official capacity, such claims are subject to dismissal. Plaintiff's complaint, though perhaps modestly ambiguous in this regard, does not appear to suggest his intention to name Wenz as a defendant in his official capacity. Any such claim, of course, would be precluded under the Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. 159, 166–67, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985); see also *Daisernia v. State of New York*, 582 F.Supp. 792, 798–99 (N.D.N.Y.1984) (McCurn, J.).

3    In light of the present procedural posture of this case, the following recitation is drawn principally from plaintiff's complaint, the contents of which have been accepted as true for purposes of the pending motion. See *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007)); see also *Cooper v. Pate*, 378 U.S. 546, 546, 84 S.Ct. 1733, 1734, 12 L.Ed.2d 1030 (1964).

4    Copies of all unreported decisions cited in this document have been appended for the convenience of the pro se plaintiff. [Editor's Note: Attachments of Westlaw case copies deleted for online display.]

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 193 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)
2016 WL 1295127

Roland v. Wenz, Not Reported in F.Supp.2d (2010)
2010 WL 2834828

5    In his opposition papers plaintiff has requested that the court order the production of documents, photographs, and information regarding the incident which forms the basis for his complaint. Dkt. No. 17.Because issue has not yet been joined, nor has the court issued its standard Rule 16 order in the action, that request is premature.

6    Despite having been afforded the opportunity to submit reply papers, defendant has not done so, and the deadline for filing a reply has now passed.

7    Although the plaintiff was, at all relevant times, an inmate in the primary care and custody of the DOCS, the conduct giving rise to his claims occurred at the CNYPC, a facility operated by the OMH. Based upon that circumstance, plaintiff could potentially argue that his claims are not subject to the PLRA because they do not involve "prison life". While the court's research has not identified a case in this circuit squarely addressing the issue, it appears that even though confined to CNYPC at the time in question, plaintiff would still qualify as a prisoner subject to the requirements of the PLRA. *See, e.g.,* *Page v. Torrey,* 201 F.3d 1136, 1140 (9th Cir.2000) ("[W]e hold that only individuals who, at the time they seek to file their civil actions, are detained as a result of being accused of, convicted of, or sentenced for criminal offense are 'prisoners' within the definition of 42 U.S.C. § 1997e...."); *Kalinowski v. Bond,* 358 F.3d 978 (7th Cir.) ("As used in this section, the term 'prisoner' means any person incarcerated or detained at any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, [or] probation ....") (quoting 28 U.S.C. § 1915(h)), *cert. denied* 542 U.S. 907, 124 S.Ct. 2843, 159 L.Ed.2d 273 (2004).

8    Judicial documents and official court records associated with those proceedings, as publically available documents, are properly considered by the court and entitled to judicial notice in connection with this lawsuit. *SeeFederal Rules of Evidence* 201 and 1005; see also, *Wilson v. Limited Brands, Inc.,* 08 CV 3431, 2009 WL 1069165 at *1 n. 1 (S.D.N.Y. April 17, 2009). Defendant is not requesting that the court take judicial notice of any publicly filed document, but instead urges the court to take judicial notice of facts established in *Brown v. Hogan,* No. 9:07–CV–842, 2009 WL 3756595, at *4 (N.D.N.Y. Nov.6, 2009) (Hurd, D.J. & DiBianco, M.J.) ("[P]laintiff is factually incorrect in his claim that CNYPC does not have a policy in place to address institutional complaints."). Under the circumstances of this case, however, even if it were appropriate to take judicial notice of the fact that CNYPC had a complaint procedure in place at the time of the incident in question, and I am not convinced that it is, as will be seen that fact is no longer pivotal to this motion.

9    Under the prescribed protocol, a court must first determine whether administrative remedies were available to the plaintiff at the relevant times. *Macias,* 495 F.3d at 41; *Hemphill,* 380 F.3d at 686. If such a remedy existed and was available, the court must next examine whether the defendants have forfeited the affirmative defense of non-exhaustion by failing to properly raise or preserve it or whether, through their own actions preventing the exhaustion of plaintiff's remedies, they should be estopped from asserting failure to exhaust as a defense.*Macias,* 495 F.3d at 41; *Hemphill,* 380 F.3d at 686. In the event the proffered defense survives these first two levels of scrutiny, the court lastly must examine whether special circumstances nonetheless exist and 'have been plausibly alleged' to justify the plaintiff's failure to comply with the applicable administrative procedural requirements. *Macias,* 495 F.3d at 41; *Hemphill,* 380 F.3d at 686.

10   In papers received by the court plaintiff has intimated a desire to add additional defendants in the case, including Dr. Donald Sawyer, the Executive Director at the Center. Such applications are governed by Rules 15(a) and 21 of the Federal Rules of Civil Procedure. Since more than twenty-one days have elapsed since the filing of defendant's Rule 12(b) motion, and the joinder of parties is sought, plaintiff will be required to seek and obtain court leave in order to join additional parties. Plaintiff is advised that when any such application is made, he must include a proposed amended complaint which is fully integrated—that is, which names all of the defendants being sued and contains all of the claims which he intends to pursue, and is intended to supersede and take the place of the original complaint. See N.D.N.Y.L.R. 7.1(a)(4). In the event such a motion is granted the clerk will be directed to issue supplemental summonses for the new parties, and the matter can then be forwarded to the United States Marshal for service upon the newly-added defendants.

End of Document                                    © 2016 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:22-cv-00638-DNH-TWD   Document 58   Filed 02/28/25   Page 194 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)
2016 WL 1295137

White v. Fischer, Not Reported in F.Supp.2d (2010)
2010 WL 624081

2010 WL 624081
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Jason R. WHITE, Plaintiff,
v.
Brian FISCHER, Commissioner, Dept.
of Correctional Services; Theresa A.
Knapp–David, Director, Classification and
Movement; and R. Woods, Superintendent,
Upstate Correctional Facility, Defendants.

No. 9:09–CV–240.
|
Feb. 18, 2010.

**Attorneys and Law Firms**

Jason R. White, Elmira, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General of the State of New York, Brian J. O'Donnell, Esq., Asst. Attorney General, of Counsel, Albany, NY, for Defendants.

*DECISION and ORDER*

DAVID N. HURD, District Judge.

*1 Plaintiff, Jason R. White, commenced this civil rights action in February 2009, pursuant to 42 U.S.C. § 1983. By Report-Recommendation dated January 25, 2009, the Honorable David E. Peebles, United States Magistrate Judge, recommended that defendant's motion to dismiss (Dkt. No. 10) be granted, and that plaintiff's complaint in this action be dismissed without leave to replead. No objections to the Report–Recommendation have been filed.

Based upon a careful review of the entire file and the recommendations of Magistrate Judge Peebles, the Report–Recommendation is accepted and adopted in all respects. *See* 28 U.S.C. 636(b)(1).

Accordingly, it is

ORDERED that

1. Defendant's motion to dismiss (Dkt. No. 10) is GRANTED;

2. Plaintiff's complaint in this action is DISMISSED without leave to replead; and

3. The Clerk is directed to file judgment accordingly and close the file.

IT IS SO ORDERED.

JASON R. WHITE,

Plaintiff,

-v.-

BRIAN FISCHER, THERESA A. KNAPP–DAVID, and R. WOODS,

Defendants.

*REPORT AND RECOMMENDATION*

DAVID E. PEEBLES, United States Magistrate Judge.

Plaintiff Jason R. White, a New York State prison inmate who is proceeding *pro se* and *in forma pauperis*, has commenced this action pursuant to 42 U.S.C. § 1983, alleging deprivation of his civil rights. In his complaint, plaintiff asserts that his transfer into special housing unit ("SHU") disciplinary confinement at the Upstate Correctional Facility, to serve what was originally intended to be a three-month disciplinary sentence of less restrictive keeplock confinement imposed while at another facility, represented a deprivation of a liberty interest without the requisite procedural due process. As relief for the violation, plaintiff's complaint seeks an award of compensatory damages in the amount of $25,000.

In response to plaintiff's complaint, defendants have moved seeking its dismissal for failure to state a cause of action upon which relief may be granted. In their motion, defendants argue that plaintiff's allegations do not demonstrate the existence of a meritorious due process claim since, at best, it implicates a failure of prison officials to comply with governing regulations regarding transfers into an SHU unit, a matter not of constitutional concern, noting further that plaintiff has no constitutional right to be designated to a particular correctional facility or to a desired security classification. Defendants also seek dismissal of plaintiff's claims against them based upon lack of personal involvement,

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 195 of 353

2016 WL 1295137

White v. Fischer, Not Reported in F.Supp.2d (2010)

2010 WL 624081

and additionally assert their entitlement to qualified immunity from suit as a basis for their dismissal motion.

For the reasons set forth below, I find that White's complaint fails to set forth a plausible due process violation and that defendant Fischer is also entitled to dismissal of the claims against him based upon the lack of allegations showing of his personal involvement in the conduct allegedly giving rise to plaintiff's claims. I further recommend a finding that, even if plaintiff were able to plead a cognizable due process cause of action, defendants Knapp–David and Woods nonetheless should be granted qualified immunity from suit in this instance.

**I. BACKGROUND** [1]

*2 Plaintiff is a prison inmate entrusted to the care and custody of the New York State Department of Correctional Services ("DOCS").See generally Complaint (Dkt. No. 1). At the times relevant to his claims plaintiff was designated first to the Auburn Correctional Facility ("Auburn"), located in Auburn, New York, and later to the Upstate Correctional Facility ("Upstate"), located in Malone, New York. Id., § 6.

On March 28, 2007, while confined at Auburn, plaintiff was found guilty following a Tier I II disciplinary hearing of engaging in violent conduct and refusing a direct order, in violation of disciplinary rules 104.11 and 106.10, respectively. [2] See Plaintiff's Memorandum (Dkt. No. 1–1) Exh. A. [3] As a result of that determination plaintiff was sentenced to serve three months of keeplock confinement, with a corresponding loss of package, commissary, and telephone privileges. See id.

On April 11, 2007, while serving his keeplock sentence at Auburn, White was processed out of that facility and, following completion of an inter-prison transfer process which included a stop at another facility, was transferred into Upstate on or about April 13, 2007. Complaint (Dkt. No. 1) § 6. At Upstate, plaintiff was assigned to a two-person cell in the facility's SHU to serve the balance of his disciplinary confinement sentence. [4] Id.

On April 23, 2007 plaintiff filed a grievance with prison authorities, arguing that his transfer into the SHU at Upstate was not authorized by DOCS directives. Complaint (Dkt. No. 1) § 6 at p. 4B; Plaintiff's Memorandum (Dkt. No. 1–1) Exh. C. The grievance was denied by the facility's Inmate Grievance Review Committee ("IGRC"). Complaint (Dkt.

No. 1) § 6 at p. 4B; Plaintiff's Memorandum (Dkt. No. 1–1) Exh. D. Plaintiff appealed the denial to defendant Woods, the Superintendent at Upstate, who upheld the IGRC's unfavorable determination by decision dated May 15, 2007. Complaint (Dkt. No. 1) § 6 at p. 4B.Plaintiff's Memorandum (Dkt. No. 1–1) Exh. D. Plaintiff's further appeal of the matter to the DOCS Central Office Review Committee ("CORC") was likewise unsuccessful. Id. Exh. E.

Also on April 23, 2007, plaintiff sent a letter to the DOCS Commissioner Brian Fischer, complaining of the SHU designation. Plaintiff's Memorandum (Dkt. No. 1–1) Exh. F. That letter was referred by Commissioner Fischer to defendant Theresa A. Knapp–David, the DOCS Director of Classification and Movement. Complaint (Dkt. No. 1) § 6 at pp. 4B–4C.In response, defendant Knapp–David wrote to the plaintiff on May 7, 2007, advising that his SHU assignment was in accordance with established DOCS procedures. Plaintiff's Memorandum (at Dkt. No. 1.1) Exh. G.

**II. PROCEDURAL HISTORY**

Plaintiff commenced this action on February 27, 2009, and was thereafter granted leave to proceed in forma pauperis.Dkt. Nos. 1, 4. Named as defendants in plaintiff's complaint are Commissioner Fischer; Director Knapp–David; and Upstate Superintendent R. Woods. Complaint (Dkt. No. 1) § 3. Plaintiff's complaint asserts a single cause of action for deprivation of procedural due process. Id., § 7.

*3 Following service, in lieu of answering plaintiff's complaint, defendants filed a motion to dismiss asserting a variety of grounds for the relief sought. Dkt. No. 10.In their motion defendants argue, inter alia, that plaintiff's complaint 1) does not implicate a cognizable due process violation, 2) plaintiff's complaint fails to establish their personal involvement in the deprivation alleged; and 3) in any event they are entitled to qualified immunity. [5] Plaintiff has since responded in opposition to defendants' motion, Dkt. No. 13, which is now fully briefed and ripe for determination, and has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).See alsoFed.R.Civ.P. 72(b).

**III. DISCUSSION**

**A. Dismissal Motion Standard**

Case 9:22-cv-00638-DNH-TWD   Document 58   Filed 02/28/25   Page 196 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

White v. Fischer, Not Reported in F.Supp.2d (2010)

2010 WL 624081

A motion to dismiss a complaint, brought pursuant to Rule 12(b) (6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading, utilizing as a backdrop a pleading standard which, though unexacting in its requirements, "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation" in order to withstand scrutiny. *Ashcroft v. Iqbal,* ––– U.S. ––––, ––––, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 555, 127 S.Ct. 1955, (2007)).Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."Fed.R.Civ.P. 8(a)(2).*Id.* While modest in its requirement, that rule commands that a complaint contain more than mere legal conclusions; "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations".*Ashcroft,* ––– U.S. ––––, 129 S.Ct. at 1950.

To withstand a motion to dismiss, a complaint must plead sufficient facts which, when accepted as true, state a claim which is plausible on its face.*Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir.2008) (citing *Twombly,* 550 U.S. at 570, 127 S.Ct. at 1974). As the Second Circuit has observed, "[w]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [plaintiff's] claims across the line from conceivable to plausible.' " *In re Elevator Antitrust Litig.,* 502 F.3d 47, 50 (2d Cir.2007) (quoting *Twombly,* 550 U.S. at 570 127 S.Ct. at 1974). When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action. *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 2200 (2007) (" '[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers' ") (quoting *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292 (1976) (internal quotations omitted)).

**B. Procedural Due Process**

\*4 In their motion, defendants assert that because plaintiff's due process claim rests on alleged violations of DOCS regulations, his complaint in fact fails to assert a cognizable due process claim.

To successfully state a claim under 42 U.S.C. § 1983 for the denial of procedural due process arising out of a disciplinary hearing, a plaintiff must show that he or she 1) possessed an actual liberty interest, and 2) was deprived of that interest without being afforded sufficient procedural safeguards. *See Tellier v. Fields,* 260 F.3d 69, 79–80 (2d Cir.2000) (citations omitted); *Hynes,* 143 F.3d at 658; *Bedoya v. Coughlin,* 91 F.3d 349, 351–52 (2d Cir.1996). Inmates' liberty interests may arise out of the Due Process Clause of the Fourteenth Amendment, or state statute or regulation. *Arce v. Walker,* 139 F.3d 329, 333 (2d Cir.1998) (citing *Kentucky Dep't of Corr. v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 1908 (1989)).

Recognizing that lawful imprisonment necessarily restricts the rights and privileges of inmates, the Supreme Court has narrowly circumscribed the scope of liberty interests arising out of the Due Process Clause to protect only the most basic liberty interests of prisoners. *Hewitt v. Helms,* 459 U.S. 460, 467, 103 S.Ct. 864, 869 (1983). Accordingly, the Due Process Clause does not guard against every change in the conditions of confinement having a substantial adverse impact on inmates, but only those conditions or restraints that "exceed[ ] the sentence in ... an unexpected manner".*Arce,* 139 F.3d at 333 (quoting *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 2300 (1995)).

In this instance plaintiff does not claim that he was denied procedural due process in connection with the disciplinary hearing that led to the imposition of a three-month period of keeplock confinement as a sanction. Instead, he argues that his due process rights were abridged after the sanction was imposed when, in violation of DOCS Directive No. 4933,[6] he was transferred from keeplock confinement at Auburn to an SHU cell at Upstate, and as a result required to endure a more restrictive confinement. Unfortunately for plaintiff, neither the Due Process Clause nor state statute or regulation give rise to a liberty interest in these circumstances.

Preliminarily, it is well recognized that an inmate has no constitutional right to be incarcerated at a particular correctional facility, "and transfers among facilities do not need to be proceeded by any particular due process procedure."*Holloway v. Goord,* No. 9:03–CV01524, 2007 WL 2789499, at \* 5 (N.D.N.Y. Sept. 24, 2007) (Kahn, J. and Treece, J.)[7] (citing *Wilkinson v. Austin,* 545 U.S. 209, 221–22 (2005)) (other citation omitted); *see also, Johnson v. Rowley,* 569 F.3d 40, 43 (2d Cir.2009) (per curiam); *Davis v. Kelly,* 160 F.3d 917, 920 (2d Cir.1998). As a result, the constitution did not present any impediment to plaintiff's transfer to Upstate.

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 197 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

White v. Fischer, Not Reported in F.Supp.2d (2010)
2010 WL 624081

*5 Additionally, it is equally well established, as defendants now argue, that state regulations, including DOCS Directives, do not ordinarily confer constitutional rights sufficient to give rise to a due process claim. *Snider v. Dylag,* 188 F.3d 51, 53 (2d Cir.1999) (citing *Dwares v. City of New York,* 985 F.2d 94, 98 (2d Cir.1993)); *Cusamano v. Sobek,* 604 F.Supp.2d 416, 482 (N.D.N.Y.2009). A state can, however, by statute or regulation confer a liberty interest which cannot be abridged without due process. *Black v. Lansberg, No. 9:06–CV–1243, 2009 WL 3181111, at *3 (Sept. 29, 2009) (Suddaby, J., adopting Report and Recommendation of Lowe, M.J.). Nonetheless, contrary to plaintiff's contention, DOCS Directive No. 4933 does not give rise to a cognizable liberty interest.

It should be noted that on at least four separate occasions, addressing the same issues raised by the plaintiff in this case, this court has held that an inmate's transfer from keeplock to SHU after being sentenced to serve time in keeplock does not implicate a cognizable liberty interest. *McEachin v. Goord,* No. 9:06–CV–1192, 2008 WL 1788440 (N.D.N.Y. Apr. 17, 2008) (Hurd, J. and Treece, M.J.) (dismissing complaint alleging that plaintiff was unlawfully transferred from keeplock to SHU while serving disciplinary sentence); *Halloway,* 2007 WL 2789499 (granting summary judgment dismissing claim that plaintiff should have received hearing before transfer to Upstate after sentenced to keeplock at Elmira Correctional Facility); *Carlisle v. Goord,* No. 9:03–CV–296, 2007 WL 2769566, at *2 n. 1 (N.D.N.Y. Sept. 21, 2007) (Scullin, S.J., adopting Report and Recommendation of Lowe, M.J.) (granting summary judgment finding that "an inmate has no liberty interest in not having his sentence of keeplock confinement at one prison converted to a sentence of SHU confinement at another facility without receiving a hearing regarding the conversion."); and, *Chavis v. Kienert,* 9:03–CV–0039, 2005 WL 2452150, at *9–10 (N.D.N.Y. Sept. 30, 2005) (Scullin, C.J.) (finding that transfer from keeplock at Coxsackie Correctional Facility to SHU at Upstate did not implicate a liberty interest) *See also, Holmes v. Grant,* No. 03–Civ. 3426, 2006 WL 851753, at *18–19 (S.D.N.Y. mar. 31, 2006 (dismissing claim plaintiff's claim that disciplinary sentence was improperly converted from keeplock sentence to SHU). These decisions are premised upon the court's conclusion that a transfer from keeplock in one facility to SHU in another does not implicate a constitutionally protected liberty interest and that "New York has not created, by regulation or statute, any liberty interest in remaining in one particular prison[.]" noting that "the DOCS ... possesses sole discretion to determine 'where

a [state] inmate will be housed.' " *Halloway,* 2007 WL 2789499, at *5 (quoting *Grullon v. Reid,* No. 97 CIV. 7616, 1999 WL 436457, at *10 (S.D.N.Y. Jun. 24, 1999)) (other citations omitted). These cases are indistinguishable from the case presently before the court.

*6 Moreover, contrary to the interpretation offered by the plaintiff, the court has read section 301.6 of DOCS Directive No. 4933 as "explicitly permit[ing] keeplock sentences to be served in SHU and subject to the same restrictions and amenities ...." *McEachin,* 2008 WL 1788440, at *4.see also, *Halloway,* 2007 WL 278499, at * 5 ("[N]ot only do New York State Regulations permit keeplock sentences to be served in SHU, but further contemplate that assignments to SHU will be subject to the same ... limitations.") and *Holmes,* 2006 WL 851753, at * 19 ("Section 301.6... relat[es] to keeplock admissions and authorizes placement of inmates in SHU 'at a medium or minimum security correctional facility or Upstate Correctional Facility... for confinement pursuant to disposition of a disciplinary (Tier II) or superintendent's (Tier II hearing.' ") (emphasis in original).

In view of the foregoing, it is clear that plaintiff's transfer from Auburn, where he was keeplocked, to SHU confinement at Upstate does not implicate a liberty interest arising out of either Due Process Clause, or state statute or regulation. According to plaintiff's complaint, he was sentenced to keeplock after a Tier III disciplinary hearing; he does not allege that he was denied due process in connection with that hearing. The Tier II I hearing that he was provided was all that was required by the constitution before he was sentenced to disciplinary confinement, *Holmes,* 2006 WL 851753, at *19. Plaintiff was entitled to no further procedure at the time of transfer to Upstate, and therefore cannot show that he was deprived of a protected liberty interest without due process of law.[8] *Id.* Accordingly, I recommend that plaintiff's complaint be dismissed for failure to state a cause of action.

**C. Personal Involvement**

In their motion, defendants also challenge the sufficiency of plaintiff's allegations regarding their personal involvement in the constitutional deprivations alleged. Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under section 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991) and *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,*434 U.S. 1087, 98 S.Ct. 1282

Case 9:22-cv-00638-DNH-TWD   Document 58   Filed 02/28/25   Page 198 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

White v. Fischer, Not Reported in F.Supp.2d (2010)

2010 WL 624081

(1978)). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant. *See Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986).

Two of the three defendants, Brian Fischer and Robert Woods, appear to be named as defendants in their supervisory capacities, based solely upon their positions as the DOCS Commissioner and the Superintendent at Upstate, respectively. As supervisors, neither of those individuals can be liable for damages under section 1983 solely by virtue of their respective positions as supervisor; there is no *respondeat superior* liability under section 1983.*Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003); *Wright,* 21 F.3d at 501. Vague and conclusory allegations that a supervisor has failed to train or properly monitor the actions of subordinate employees will not suffice to establish the requisite personal involvement and support a finding of liability. *Pettus v. Morgenthau,* 554 F.3d 293, 300 (2d Cir.2009) ("To the extent that [a] complaint attempts to assert a failure-to-supervise claim ... [that claim is insufficient where] it lacks any hint that [the supervisor] acted with deliberate indifference to the possibility that his subordinates would violate [plaintiff's] constitutional rights."). Culpability on the part of a supervisory official for a civil rights violation can, however, be established in one of several ways, including when that individual 1) has directly participated in the challenged conduct; 2) after learning of the violation through a report or appeal, has failed to remedy the wrong; 3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; 4) was grossly negligent in managing the subordinates who caused the unlawful event; or 5) failed to act on information indicating that unconstitutional acts were occurring. *Iqbal v. Hasty,* 490 F.3d 143, 152–53 (2d Cir.2007), *rev'd on other grounds, sub nom., Ashcroft v. Iqbal,* —U.S. —, 129 S.Ct. 1937.; *see also Richardson,* 347 F.3d at 435; *Wright,* 21 F.3d at 501; *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986).

**1. Commissioner Fischer**

*7 Aside from allegations centering upon his role as the DOCS Commissioner, which are clearly insufficient in and of themselves to establish his liability, plaintiff's claims against defendant Fischer appear to revolve around the letter written by him to the Commissioner on or about April 23, 2007, complaining of his SHU confinement at Upstate. That letter, it appears from the limited materials now before the court, was referred to defendant Knapp-David for

response. It is well established that when the Commissioner receives a letter and forwards it on to another individual for investigation and a response, his or her involvement in the constitutional violation cannot be predicated solely upon those circumstances. *Sealey v. Giltner,* 116 F.3d 47, 51 (2d Cir.1997); *Rivera v. Fischer,* No. 08–CV–6505L, 2009 WL 2981876, at *2 (W.D.N.Y. Sept. 18, 2009). I therefore recommend dismissal of plaintiff's claims against Commissioner Fischer on the basis of lack of his personal involvement.

**2. Superintendent Woods**

Plaintiff's claims against Superintendent Woods stand on slightly different footing. It is alleged that Superintendent Woods processed and affirmed the determination of the Upstate IGRC denying plaintiff's grievance regarding the relevant occurrences. His review of plaintiff's grievance arguably placed Superintendent Woods on notice of a constitutional violation, which was ongoing, at a time when he was potentially positioned to end the violation. On that basis I conclude that plaintiff has sufficiently alleged Superintendent Woods' personal involvement in the violation alleged to withstand defendants' dismissal motion. *See Charles v. New York State Dept. of Corr. Services,* No. 9:07–CV–1274, 2009 WL 890548, at *5–9 (N.D.N.Y. Mar. 21, 2009) (Hurd, J. and DiBianco, M.J .).

**3. Director Knapp-David**

Plaintiff's complaint alleges that in her position as the DOCS Director of Classification and Movement, defendant Knapp-David would have reviewed and approved his transfer from Auburn into Upstate. That allegation is buttressed by both her position with the DOCS and the fact that plaintiff's letter regarding the matter was referred to defendant Knapp–David for response explaining why the transfer was proper under DOCS regulations. On this basis, I conclude that plaintiff has stated a plausible claim against defendant Knapp–David and her personal involvement in the constitutional deprivations alleged.

**D. *Qualified Immunity***

In their motion, defendants also assert entitlement to qualified immunity from suit. Qualified immunity shields government officials performing discretionary functions from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."*Harlow v. Fitzgerald,*

2016 WL 1295137

White v. Fischer, Not Reported in F.Supp.2d (2010)

2010 WL 624081

457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982) (citations omitted)."In assessing an officer's eligibility for the shield, 'the appropriate question is the objective inquiry whether a reasonable officer could have believed that [his actions were] lawful, in light of clearly established law and the information the officer[ ] possessed."*Kelsey v. County of Schoharie,* 567 F.3d 54, 61 (2d Cir.2009) (quoting *Wilson v. Layne,* 526 U.S. 603, 615, 119 S.Ct. 1692 (1999)). The law of qualified immunity seeks to strike a balance between the need to hold government officials accountable for irresponsible conduct and the need to protect them from "harassment, distraction, and liability when they perform their duties reasonably."*Pearson v. Callahan,* 555 U.S. ——, 129 S.Ct. 808, 815 (2009).

*\*8* In *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151 (2001), the Supreme Court "mandated a two-step sequence for resolving government official's qualified immunity claims."*Pearson,* 555 U.S. ——, 129 S.Ct. at 816. The first step required the court to consider whether, taken in the light most favorable to the party asserting immunity, the facts alleged show that the conduct at issue violated a constitutional right.[9]*Kelsey,* 567 F.3d at 61,"the second step being whether the right is clearly established", *Okin v. Village of Cornwall-On Hudson Police Dept.,* 577 F.3d 415, 430 n. 9 (citing *Saucier* ).[10] Expressly recognizing that the purpose of the qualified immunity doctrine is to ensure that [insubstantial claims are resolved prior to discovery, the Supreme Court recently concluded in *Pearson* that because "[t]he judges of the district courts and courts of appeals are in the best position to determine the order of decisionmaking [that] will best facilitate the fair and efficient disposition of each case", those decision makers "should be permitted to exercise their sound discretion in deciding which of the ... prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand."[11]*Pearson,* 555 U.S. ——, 129 S.Ct. at 818, 821. In other words, as recently emphasized by the Second Circuit, the courts "are no longer *required* to make a 'threshold inquiry' as to the violation of a constitutional right in a qualified immunity context, but we are free to do so."*Kelsey,* 567 F.3d at 61 (citing *Pearson,* 129 S.Ct. at 821) (emphasis in original).

For courts engaging in a qualified immunity analysis, "the question after *Pearson* is 'which of the two prongs ... should be addressed in light of the circumstances in the particular case at hand.' " *Okin,* 577 F.3d 430 n. 9 (citing *Pearson* ). "The [*Saucier* two-step] inquiry is said to be appropriate in those cases where 'discussion of why the relevant facts

do not violate clearly established law may make it apparent that in fact the relevant facts do not make out a constitutional violation at all . " " *Kelsey,* 567 F.3d at 61 (quoting *Pearson,* 129 S.Ct. at 818).

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."*Saucier,* 533 U.S. at 202, 121 S.Ct. at 2156 (citation omitted). When deciding whether a right was clearly established at the relevant time, a court should consider

> (1) whether the right in question was
> defined with 'reasonable specificity";
> (2) whether the decisional law of
> the Supreme Court and the [Second
> Circuit] support the existence of
> the right in question; and (3)
> whether under preexisting law a
> reasonable defendant official would
> have understood that his or her acts
> were unlawful.

*\*9* *Wright v. Smith,* 21 F.3d 496, 500 (2d Cir.1994) (quoting *Benitez v. Wolff,* 985 F.2d 662, 666 (2d Cir.1993)). The objective reasonableness test will be met, and qualified immunity enjoyed, where government officers of reasonable competence could disagree as to whether by his or her alleged conduct the defendant would be violating the plaintiff's rights. *Okin,* 577 F.3d at 433 (quoting *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092 (1986))."If, on the other hand, no officer of reasonable competence would conclude that the conduct in question is lawful, there is no immunity."*Okin,* 577 F.3d at 433 (citing *Lennon v. Miller,* 66 F.3d 416, 420–21 (2d Cir.1995)).

Applying the *Saucier* two-step inquiry here, I have already determined that plaintiff has failed to state a plausible constitutional violation. Moreover, even if plaintiff were able to distinguish the existing precedent in this district and allege a protected liberty interest that required that plaintiff be provided with additional due process before his transfer to Upstate, I conclude that any such right was far from a clearly established and that a reasonable person in the circumstances of defendant Woods and defendant Knapp-David would not have appreciated that the transfer of plaintiff into SHU confinement at Upstate represented a potential deprivation of plaintiff's procedural due process rights beyond those addressed by the hearing officer. Accordingly, as

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 200 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

White v. Fischer, Not Reported in F.Supp.2d (2010)

2010 WL 624081

an additional basis for dismissal, I recommend that both defendants Woods and Knapp-David be granted qualified immunity from suit.

## IV. SUMMARY AND RECOMMENDATION

At the heart of plaintiff's complaint in this action is his contention that his due process rights and DOCS regulations were violated when he was transferred from keeplock confinement at Auburn into an SHU cell at Upstate. Since such a claim, as it is well established in this district, is not constitutionally cognizable, White has therefore failed to state a claim upon which relief may be granted. While plaintiff has failed to establish personal involvement on the part of Commissioner Fischer in an alleged deprivation and the claims against him should be dismissed on this additional basis, plaintiff has sufficiently alleged personal involvement on the part of defendant Knapp-David and R. Woods. Nonetheless, I find that those two defendants are entitled to qualified immunity from suit, providing an additional basis for dismissal of plaintiff's claims against them. Accordingly, it is hereby respectfully

RECOMMENDED that defendants' motion to dismiss (Dkt. No. 10) be GRANTED, and that plaintiff's complaint in this action be DISMISSED, without leave to replead; and it is further

ORDERED that pending a final determination on defendants' dismissal motion, discovery in this action be and hereby is STAYED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; Roldan v. Racette, 984 F.2d 85 (2d Cir.1993).

*10 It is hereby ORDERED that the clerk of the court serve a copy of this Report and Recommendation upon the parties in accordance with this court's local rules.

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 624081

Footnotes

1   In light of the procedural posture of this case, the following recitation is drawn principally from plaintiff's complaint, the contents of which have been accepted as true for purposes of the pending motion. See Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 2200 (2007) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007)); see also Cooper v. Pate, 378 U.S. 546, 546, 84 S.Ct. 1733, 1734 (1964). I have also considered the exhibits attached to plaintiff's memorandum, which accompanied his complaint, to the extent that they are consistent with the allegations of his complaint. See Donhauser v. Goord, 314 F.Supp.2d 119, 121 (N.D.N.Y.2004) (Hurd, J.).

2   The DOCS conducts three types of inmate disciplinary hearings. Tier I hearings address the least serious infractions, and can result in minor punishments such as the loss of recreation privileges. Tier II hearings involve more serious infractions, and can result in punishments which include confinement for a period of time in the SHU. Tier III hearings concern the most serious violations, and could result in unlimited SHU confinement and the loss of 'good time' credits. See Hynes v. Squillace, 143 F.3d 653, 655 (2d Cir.), cert. denied, 525 U.S. 907, 119 S.Ct. 246 (1998).

3   Plaintiff filed what he labeled as a "memorandum of law", with exhibits attached, in conjunction with his complaint. 'Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss. However, the mandate to read the papers of pro se litigants generously makes it appropriate to consider plaintiff's additional materials, such as his ... memorandum.' Rivera v. Selsky, No. 9:05–CV–0987, 2007 WL 956998, at *1 n. 2 (N.D.N.Y. Jan. 5, 2007) (quoting Gadson v. Goord, 96 Civ. 7544, 1997 WL 714678, at *1 n. 2 (S.D.N.Y. Nov. 17, 1997)).

4   Upstate is a maximum security prison comprised exclusively of SHU cells in which inmates are confined, generally though not always for disciplinary reasons, for twenty-three hours each day. See Samuels v. Selsky, No. 01 CIV. 8235, 2002 WL 31040370, at *4 n. 11 (S.D.N.Y. Sept. 12, 2002).

5   Defendant's also seek a protective order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure staying discovery in this matter pending final determination of their dismissal motion. Discerning no basis to conclude that plaintiff would be unduly prejudiced by such a stay, that application will be granted.

6   Section 301.6(a) of DOCS Directive No. 4933 permits an inmate confined in a medium or minimum security facility, or at Upstate, to be admitted into an SHU for various reasons, which can include confinement pursuant to a Tier II or III hearing

Case 9:22-cv-00638-DNH-TWD   Document 58   Filed 02/28/25   Page 201 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1295137

White v. Fischer, Not Reported in F.Supp.2d (2010)
2010 WL 624081

disposition. Plaintiff asserts that because he was transferred from Auburn, a maximum security facility, into an SHU unit, that section does not apply. Interestingly, a prior version of DOCS Directive No. 4933 provided, in relevant part, that

[a]n inmate who is assigned to keeplock status and who is transferred to a maximum security facility shall not be assigned to the special housing unit at the receiving facility. Such inmate shall be assigned to keeplock within general population and shall have the same rights and responsibilities as other keeplock inmate in that facility.

*Lee v. Coughlin,* 26 F.Supp.2d 615, 628 (S.D.N.Y.1998) (quoting prior version of 7 NYCRR § 301.6(h)).

7    Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff. [Editor's Note: Appended decisions deleted for Westlaw purposes.]

8    Plaintiff alleges a litany of differences between the conditions experienced while in keeplock at Auburn and those in SHU at Upstate asserting, for example, that with regard to visits, he was required to travel to and from them in handcuffs, had to remain in handcuffs if he needed to use the restroom, and was not permitted to take photographs, and also that he did not have the same opportunities for social interaction with other prisoners and had to sleep with a light on. Plaintiff's Memorandum (Dkt.1–1) at pp. 11–12.As a matter of law, these alleged conditions can hardly be characterized as "exceed[ing] his sentence in an unexpected manner" or as imposing an "atypical and substantial hardship upon the [plaintiff] in relation to the ordinary incidents of prison life".*Sandin,* 515 U.S. at 484, 115 S.Ct. at 2300. "[T] fact that 'life in one prison is much more disagreeable than another does not itself signify that a Fourteenth Amendment liberty interest is implicated....'.*Holloway,* 2007 WL 2789499, at * 7 (quoting *Meachum v. Fano,* 427 U.S. 215, 225 (1976). Moreover, even if a liberty interest were alleged, plaintiff was afforded all the process he was due, by way of a disciplinary proceeding, before the alleged deprivation. *Carlisle,* 2007 WL 2789566, at * 3.

9    If no constitutional right would have been violated were the allegations established, no further inquiry regarding qualified immunity is necessary. *Kelsey,* 567 F.3d at 61 (quoting *Saucier* ).

10   In *Okin,* the Second Circuit clarified that the ' 'objectively reasonable' inquiry is part of the 'clearly established' inquiry", also noting that "once a court has found that the law was clearly established at the time of the challenged conduct and for the particular context in which it occurred, it is no defense for the [government] officer who violated the clearly established law to respond that he held an objectively reasonable belief that his conduct was lawful."*Okin,* 577 F.3d at 433 n. 11 (citation omitted).

11   Indeed, because qualified immunity is "an immunity from suit rather than a mere defense to liability ...", *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806 (1985), the Court has "repeatedly ... stressed the importance of resolving immunity questions at the earliest possible stage in the litigation."*Pearson,* —— U.S. ——, 129 S.Ct. at 815 (quoting *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 524 (1991) (per curiam)).

End of Document                                      © 2016 Thomson Reuters. No claim to original U.S. Government Works.

## All Citations

Not Reported in Fed. Supp., 2016 WL 1295137

---

**End of Document**                          © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:22-cv-00638-DNH-TWD   Document 58   Filed 02/28/25   Page 202 of 353

Trapani v. Pullen, Not Reported in Fed. Supp. (2016)

2016 WL 1060307

2016 WL 1060307
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Damian TRAPANI, Plaintiff,

v.

Brian PULLEN, et al., Defendants.

9:14-CV-556
|
Signed March 14, 2016
|
Filed 03/15/2016

**Attorneys and Law Firms**

Damian Trapani, Schenectady, NY, pro se.

Helena Lynch, Mark G. Mitchell, New York State Attorney General, Albany, NY, for Defendants.

**DECISION and ORDER**

Thomas J. McAvoy, United States District Judge

**\*1** This matter was referred to the Hon. Thérèse Wiley Dancks, United States Magistrate Judge, for a Report and Recommendation pursuant to 28 U.S.C. § 636(b) and Rule 72.3(d) of the Local Rules of the Northern District of New York. No objections to the February 13, 2016 Report-Recommendation have been raised. After examining the record, this Court has determined that the Report-Recommendation is not subject to attack for plain error or manifest injustice. Accordingly, this Court adopts the Report-Recommendation and Order for the reasons stated therein.

Accordingly, the Report and Recommendation of Magistrate Judge Wiley Dancks is hereby **ADOPTED**, and:

1. Defendants' Rule 41(b) motion to dismiss, dkt. # 23, is hereby **DENIED** as moot;

2. Defendants' 12(b)(6) motion to dismiss is hereby **GRANTED** in part and **DENIED** in part, as follows:

a. The motion is **GRANTED** without prejudice as to Plaintiff's claims for: (1) excessive force in violation of the Eighth Amended against Defendant Martuscello; and (2) retaliation in violation of the First Amendment against Defendants Pullen and McGlynn;

b. The motion is **GRANTED** with prejudice as to Plaintiff's: (1) RLUIPA claim against Defendants King, Syed, and Jane Doe #5; and (2) all claims seeking declaratory and injunctive relief; and

c. Denied in all other respects;

3. The Complaint is hereby **DISMISSED** against Defendants Martuscello, Pullen and McGylnn; and

4. Plaintiff may file an Amended Complaint that complies with the terms of Magistrate Judge Wiley Dancks Report-Recommendation within twenty-one (21) days of the date of this order. Failure to file an Amended Complaint will cause the Court to consider abandoned the claim s for which Plaintiff was given leave to re-plead.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2016 WL 1060307

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

🚩 KeyCite Yellow Flag - Negative Treatment

Distinguished by   Sanchez v. Graham,   N.D.N.Y.,   September 12, 2016

2015 WL 5750136
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Michael JONES, Plaintiff,
v.
Joseph SMITH et al., Defendants.

No. 9:09–cv–1058 (GLS/ATB).
|
Signed Sept. 30, 2015.

**Attorneys and Law Firms**

Michael Jones, Ossining, NY, pro se.

Hon. Eric T. Schneiderman, New York State Attorney General, Cathy Y. Sheehan, Assistant Attorney General, of Counsel, Albany, NY, for the Defendants.

### *MEMORANDUM–DECISION AND ORDER*

GARY L. SHARPE, District Judge.

### I. *Introduction*

**\*1**  Plaintiff *pro se* Michael Jones alleges violations of the First, Eighth, and Fourteenth Amendments of the United States Constitution pursuant to 42 U.S.C. § 1983 against numerous employees of New York State Department of Corrections and Community Supervision (DOCCS) at Shawangunk Correctional Facility and Eastern Correctional Facility in their official and individual capacities. (Compl., Dkt. No. 1.) Jones also alleges a violation of the Religious Land Use and Institutionalized Persons Act (RLUIPA). [1] (*Id.* at 5.) Pending before the court are Jones' objections to the R & R and an appeal from the denial of his motion to amend. [2] (Dkt. No. 135.) For the reasons that follow, the R & R is adopted in its entirety and the denial of Jones' motion to amend his complaint is affirmed.

[1]   *See* 42 U.S.C. §§ 2000cc–2000cc–5.

[2]   Although Jones does not identify his arguments directed to the denial of his motion as an appeal of a non-dispositive order, (Dkt. No. 134 at 2–3), or fully comply with the Local Rules, *see* N.D.N .Y. L.R. 72.1(b), because Jones proceeds *pro se* the court liberally construes these arguments as an appeal subject to review under Rule 72(a) of the Federal Rules of Civil Procedure.

### II. *Background*

2015 WL 5750136

While incarcerated at Schawagunk, Jones converted to Judaism. (Dkt. No. 131, Attach. 3 at 87.) Since Jones' conversion, he allegedly received cold kosher meals three times per day, seven days per week. (*Id.*, Attach. 2 at 29; Compl. ¶ 7–m.) Jones alleged he had high blood pressure, (Compl.¶ 7–e), and, in 2009, requested low sodium kosher meals, (Dkt. No. 131, Attach. 2 at 28.). Jones also requested two hot meals per day. (*Id.*) Jones' requests were denied. (*Id.* at 29–30.) As a result, Jones allegedly changed his diet to non-kosher, low sodium meals. (Compl.¶ 7–l.)

On May 13, 2009, Jones was transferred to Eastern and escorted into his assigned double cell. (Defs.' Statement of Material Facts (SMF) ¶ 3, Dkt. No. 124, Attach. 2.) Jones allegedly informed the escorting officer that his assignment to a double cell and top bunk would exacerbate injury to his back and knees. (Compl.¶ 8–j.) In response, escorting officers allegedly issued a disciplinary ticket and escorted Jones to the special housing unit (SHU). (*Id.* ¶ 8–k.)

Jones' allegations arise from conduct during his incarceration at Shawangunk and Eastern between 2006 and 2009. (Compl. at 6–22.) After the close of discovery, defendants moved for partial summary judgment. (Dkt.Nos.124, 125.) Jones opposed and cross-moved to amend his complaint to join three parties. (Dkt. No. 131.)

In an Order and Report–Recommendation (R & R) filed May 20, 2015, Magistrate Judge Andrew T. Baxter recommended to grant defendants' partial motion for summary judgment and to dismiss Jones' First Amendment and RLUIPA causes of action *sua sponte.* (Dkt. No. 134 at 2.) Judge Baxter also denied Jones' motion to amend his complaint. (*Id.* at 49–50.)

### III. *Standard of Review*

#### A. *Objections to the R & R*

Before entering final judgment, this court routinely reviews all report and recommendation orders in cases it has referred to a magistrate judge. If a party has objected to specific elements of the magistrate judge's findings and recommendations, this court reviews those findings and recommendations *de novo. See Almonte v. N.Y. State Div. of Parole,* No. Civ. 904 CV 484, 2006 WL 149049, at \*3, \*5 (N.D.N.Y. Jan. 18, 2006). In those cases where no party has filed an objection, or only a vague or general objection has been filed, this court reviews the findings and recommendations of the magistrate judge for clear error. *See id.*

#### B. *Appeal of a Magistrate Order*

 **\*2** When reviewing an appeal from a pretrial non-dispositive motion decided by a magistrate judge, the court will affirm the order unless it is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 72(a). Courts have generally held that motions to amend a complaint are non-dispositive. *See Rubin v. Valicenti Advisory Servs., Inc.,* 471 F.Supp.2d 329, 333 (W.D.N.Y.2007). Under a clearly erroneous standard, a district court can reverse a magistrate judge's order only if the court " 'is left with the definite and firm conviction that a mistake has been committed.' " *Gualandi v. Adams,* 385 F.3d 236, 240 (2d Cir.2004) (quoting *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395 (1948)). Under a contrary to law standard, a district court can reverse a magistrate judge's order only if the order fails to apply the relevant law. *See Olais–Castro v. United States,* 416 F.2d 1155, 1158 n. 8 (9th Cir.1969) ("The term 'contrary to law' means contrary to any existing law." (citing *Callahan v. United States,* 285 U.S. 515, 517 (1932)). "[M]agistrate judges are afforded broad discretion in resolving non-dispositive disputes and reversal is appropriate only if their discretion is abused." *Am. Stock Exch., LLC v. Mopex, Inc.,* 215 F.R.D. 87, 90 (S.D.N.Y.2002).

### IV. *Discussion*

#### A. *Objections to the R & R*

Jones objects to Judge Baxter's failure to address his claim that the denial of his request for hot, low sodium kosher meals violates the Eighth Amendment. (Dkt. No. 135 at 3.) Judge Baxter generically addressed Jones' claim in a footnote and concluded that

2015 WL 5750136

Jones did not allege any of the necessary elements to state a violation of the Eighth Amendment. (Dkt. No. 134 at 39 n. 15.) Construing Jones' argument liberally, the court treats his objection as invoking *de novo* review. Ultimately, while the court recognizes that the procedural posture is summary judgment, it agrees with Judge Baxter that the complaint is devoid of factual allegations to support an Eighth Amendment violation.

To establish an Eighth Amendment claim involving prison conditions, a plaintiff must demonstrate that: (1) the alleged deprivation is sufficiently serious and (2) prison officials acted with deliberate indifference to the inmate's health and safety. *See Farmer v. Brennan,* 511 U.S. 825, 834 (1994). The Eighth Amendment requires prisons to provide "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it," and "under certain circumstances a substantial deprivation of food may well be recognized as being of constitutional dimension." *Robles v. Coughlin,* 725 F.2d 12, 15 (2d Cir.1983) (internal quotation marks and citations omitted). Here, however, Jones fails to sufficiently allege he was deprived of any meals or that his food was contaminated. *See Curtis v. Fischer,* No. 9:12–CV–1140, 2014 WL 5769410, at *7 (N.D.N.Y. Aug. 11, 2014) (prisoner failed to state a claim under the Eighth Amendment when denied kosher low sodium, high fiber diet but offered a non-kosher medically prescribed alternative), *report and recommendation rejected on other grounds* 2014 WL 5769656 (N.D.N.Y. Nov. 5, 2014); *Phelan v. Hersh,* No. 9:10– CV–0011, 2011 WL 6031940, at *12 (N.D.N.Y. Sept. 13, 2011) ("There is no constitutional right to have a hot meal every day, but only that inmates be provided nutritionally adequate food prepared under safe conditions." (citation omitted)), *report and recommendation adopted,* 2011 WL 6031071 (N.D.N.Y. Dec. 5, 2011); *cf. Robles,* 725 F.2d at 16 (holding that inmates' allegations that corrections officers contaminated inmate meals with glass, human waste, and rocks were sufficient to state an Eighth Amendment claim). Accordingly, the court agrees with Judge Baxter that Jones' claim must fail.

 **\*3** Jones' remaining objections are general, triggering clear error review. Upon reviewing the R & R for clear error and finding none, the court adopts it in its entirety.

### B. *Appeal*

As noted above, the court construes Jones' arguments directed to the denial of his motion to amend his complaint as an appeal of a non-dispositive order. *See* Fed.R.Civ.P. 72(a). Jones contends that he should be permitted to amend his complaint to add additional parties because defendants: (1) did not contest that a proposed party violated his constitutional rights and (2) did not oppose joinder. (Dkt. No. 135 at 3.) Jones proposed to join Robert Schattinger and Elizabeth Culkin, who allegedly created DOCCS' dietary menu, and "Sgt. Todd" to replace defendant "Jane Doe," who allegedly ordered Jones to SHU in May 2009 and took his knee braces. (Dkt. No. 131, Attach. 1 at 16–17.)

Judge Baxter held the proposed amendment would be futile because it would not survive summary judgment. (Dkt. No. 134 at 49.) Judge Baxter reasoned that Jones did not allege the personal involvement of Schattinger and Culkin and, assuming personal involvement, Jones' First Amendment claim against them arising from the denial of hot, low sodium kosher meals would fail. (*Id.*) Additionally, Judge Baxter held that the addition of Sgt. Todd would be futile because Jones had no cognizable Eighth Amendment claim against him. (*Id.*)

Because a scheduling order had been entered, the standard to evaluate leave to amend the pleadings is Rule 16(b) of the Federal Rules of Civil Procedure rather than Rule 15(a). *Grochowski v. Phoenix Constr.,* 318 F.3d 80, 86 (2d Cir.2003) ("Where a scheduling order has been entered, the lenient standard under Rule 15(a), which provides leave to amend shall be freely given, must be balanced against the requirement under Rule 16(b) that the Court's scheduling order shall not be modified except upon a showing of good cause.") (internal quotation marks and citations omitted)); *see also Parker v. Columbia Pictures Indus.,* 204 F.3d 326, 339–40 (2d Cir.2000). Rule 16(b)(4) of the Federal Rules of Civil Procedure provides that a scheduling order "may be modified only for good cause and with the judge's consent." Fed R. Civ P. 16(b)(4). "To satisfy the good cause standard the party must show that, despite its having exercised diligence, the applicable deadline could not have been reasonably met." *Enzymotec Ltd. v. NBTY, Inc.,* 754 F.Supp.2d 527, 536 (E.D.N.Y.2010) (internal quotation marks and citations omitted).

Jones v. Smith, Not Reported in F.Supp.3d (2015)

2015 WL 5750136

Here, Jones fails to demonstrate good cause. He did not seek leave to amend his complaint until his opposition to defendants' summary judgment motion, (Dkt. No. 131, Attach. 1 at 16–17), long after the deadline to file dispositive motions, (Dkt. No. 121).[3] Jones never sought permission to extend the time to amend his pleadings. Although Jones learned of Sgt. Todd's identity during discovery, (Dkt. No. 131, Attach. 3 at 15), he failed to seek leave to amend at that point. With respect to the other proposed parties, Jones fails to demonstrate that he diligently identified them. Although Judge Baxter should have employed the Rule 16 standard, this error is harmless because the court would have denied leave to amend under either Rule 16 or Rule 15. *See Bailey v. Christian Broad. Network,* 483 F. App'x 808, 810 (4th Cir.2012) (holding that the magistrate's legal error was harmless because the proper standard would have rendered the same result). Accordingly, the denial of Jones' motion to amend his complaint is affirmed.

[3]    The scheduling order did not have a deadline to amend the pleadings but it was necessarily before the deadline to file dispositive motions. (Dkt. No. 39, 121).

### V. *Conclusion*

**\*4  WHEREFORE,** for the foregoing reasons, it is hereby

**ORDERED** that Magistrate Judge Andrew T. Baxter's May 20, 2015 Order and Report–Recommendation (Dkt. No. 134) is **ADOPTED** in its entirety; and it is further

**ORDERED** that defendants' motion for partial summary judgment (Dkt. No. 124.) is **GRANTED** on the grounds raised therein and Jones' following claims are dismissed:

1. All claims for injunctive relief dismissed as moot;

2. All claims against defendants in their official capacities dismissed with prejudice;

3. All claims against defendant Fischer dismissed due to lack of personal involvement;

4. Eighth Amendment claims against defendants Smith, Griffin, Khramova, Schoonmaker, Gusman, and Brown;

5. Retaliation claim against defendant Maly, but only to the extent that it was predicated on an allegation of verbal harassment, dismissed with prejudice;

6. Due process and right to privacy claims against defendant Pingotti; and it is further

**ORDERED** that all RLUIPA and First Amendment Religion claims against defendants Rapp and Horowitz are **DISMISSED** *sua sponte,* with prejudice; and it is further

**ORDERED** that Judge Baxter's denial of Jones' motion to amend is **AFFIRMED.**

**IT IS SO ORDERED.**

### ORDER and REPORT–RECOMMENDATION

ANDREW T. BAXTER, United States Magistrate Judge.

2015 WL 5750136

Presently before the court is the defendants' motion for partial summary judgment pursuant to Fed.R.Civ.P. 56. (Dkt. No. 124, 125). This matter was referred for Report and Recommendation on October 16, 2014 by Chief U.S. District Judge Gary L. Sharpe, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y (L.R.) 72.3(c).

In his civil rights complaint, plaintiff alleged that defendants violated his rights to proper medical care, religious freedom, equal protection, due process, privacy, and his right to be free from cruel and unusual punishment. (Dkt. No. 1). The allegations stem from his imprisonment, by the New York State Department of Corrections and Community Supervision ("DOCCS"), at the Shawangunk Correctional Facility ("Shawangunk") and the Eastern Correctional Facility ("Eastern"). Plaintiff is still incarcerated, but is no longer in the custody of DOCCS. [1]

[1]    Plaintiff notified the court, by letter dated August 8, 2014 (Dkt. No. 122), that he now is confined at the George Motchan Detention Center, a facility of the New York City Department of Corrections. *See* http:/ /www.nyc.gov/html/doc/html/ about/locate-facilities.shtml

Following the completion of discovery, defendants filed a partial motion for summary judgment on October 15, 2014 (Dkt.Nos.124, 125). Plaintiff has opposed the motion for summary judgment; he has also moved to amend his complaint to add three additional parties. (Dkt. No. 131). Defendants did not reply in further support of their motion or respond to the motion to amend.

For the reasons set forth below, this court recommends that defendants' motion for partial summary judgment be granted on the grounds raised therein, and also recommends that the District Court dismiss plaintiff's First Amendment/RLUIPA cause of action *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2)(B). Furthermore, this court denies plaintiff's motion to amend his complaint by adding additional parties.

 **\*5**  Since the present motion only sought summary judgment in regards to certain causes of action and certain defendants, this court's recommendation does not resolve all issues in this litigation. Specifically, the following claims survive, solely against defendants in their individual capacities: claims for monetary damages against Dr. Maryann Genovese, Catherine Wells, and Pedro Diaz for medical indifference; a claim against Dr. Genovese for invasion of privacy in plaintiff's First Cause of Action; and claims against Earnell Boddison, Joseph Smith, John Maly, Lt. Gardner, Lt. Palen, Sgt. Kimbler, and C.O. Brooks for alleged retaliation for prior grievances in plaintiff's Third Cause of Action.

## BACKGROUND

### I. Facts and Procedural History

### A. Factual Overview [2]

[2]    Given the breadth of the claims and the number of defendants, the court will detail the relevant facts of each claim below, as necessary to address defendants' motion for summary judgment.

Plaintiff alleges a number of constitutional violations which occurred while he was an inmate at Shawangunk and Eastern, including: deliberate medical indifference, stemming from an alleged failure to accommodate plaintiff's back pain following surgery; retaliatory treatment, including transfer from Shawangunk to Eastern, in response to plaintiff's history of litigation and grievances at Shawangunk and other DOCCS facilities; and cruel and unusual punishment arising from the nighttime illumination of plaintiff's cell while confined to the Eastern Special Housing Unit ("SHU"). (Compl.¶ 6–b). Plaintiff also makes due process claims concerning a disciplinary hearing at Eastern, and a religious liberty claim arising from the limited Kosher menu available at both facilities. *Id.*

In addition to the defendants directly involved in the incidents alleged in the complaint, plaintiff also makes a broad claim against Brian Fischer, the DOCCS Commissioner during the relevant time period.[3] Plaintiff alleges that defendant Fischer failed to adequately train and establish appropriate policies for the DOCCS employees under his supervision. (Compl.¶ 10–c).

3      Defendant Fischer is no longer the Commissioner of DOCCS. The current Acting Commissioner of DOCCS is Anthony J. Annucci. http://www.doccs.ny.gov/

All defendants were sued in their individual and official capacities. (Compl.¶ 10–b). In addition to monetary damages on each claim, plaintiff also seeks the following injunctive relief: provision of a low sodium Kosher menu; delivery of two hot Kosher meals per day; provision of a special mattress and a chair in his cell to relieve plaintiff's back pain; return of knee braces confiscated while he was in SHU; and exclusion from any future housing in double-bunk cells to accommodate his back problems. (Compl.¶ 13).

### B. Procedural History

The original complaint in this action was filed on September 16, 2009. On May 16, 2011, defendants, who are all officials or employees of DOCCS, filed a motion to dismiss plaintiff's civil rights action based upon their allegation that plaintiff had "three strikes" pursuant to 28 U.S.C. § 1915(g), and therefore, should not be entitled to proceed *in forma pauperis.* (Dkt. No. 75). Plaintiff responded (Dkt. No. 78) and defendants filed a reply. (Dkt. No. 79). On December 6, 2011, this court recommended that defendants' motion to dismiss be granted, unless a filing fee was paid by plaintiff. (Dkt. No. 83). This recommendation was adopted by the District Court on January 23, 2012. (Dkt. No. 85). On January 25, 2012, plaintiff appealed to the United States Court of Appeals for the Second Circuit (Dkt. No. 86), which reversed the decision of the District Court on July 12, 2013. (Dkt.90).

 *6  Now, upon completion of discovery, all defendants move for summary judgment regarding plaintiff's claims for monetary relief against the defendants in their "official capacities," and against all injunctive relief, due to plaintiff's subsequent transfer to a different prison. Certain defendants also move for summary judgment as to all or some of the claims against them in their individual capacities.

### C. Deficiencies in Plaintiff's Opposition Papers

As required under L.R. 7.1, defendants have filed a Statement of Material Facts. (Dkt. No. 124.) Although plaintiff has responded to the Statement of Material Facts filed by Defendants (Dkt. No. 131), he has failed to do so in the manner required under L.R. 7.1(a)(3). Under this rule, the opposing party's response to the movant's statement of material facts "shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises." Although plaintiff has admitted or denied many of the defendants' assertions and has submitted two volumes of exhibits in support of his response, his Response to the Statement of Material Facts is inconsistent with L.R. 7.1.

Where, as in this case, a party has failed to respond to the movant's statement of material facts in the manner required under L.R. 7.1(a)(3), the local rule provides that facts in the movant's statement will be accepted as true (1) to the extent they are supported by evidence in the record, and (2) the nonmovant, if proceeding pro se, has been specifically advised of the possible consequences of failing to respond to the motion. *See Champion v. Artuz,* 76 F.3d 483, 486 (2d Cir.1996). However, the Second Circuit, acknowledging a court's broad discretion to determine whether to overlook a failure to comply with local rules, has held that "while a court is not required to consider what the parties fail to point out in their [local rule statements of material facts], it may in its discretion opt to conduct an assiduous review of the entire record even where one of the parties has failed to file such a statement." *Holtz v. Rockefeller & Co., Inc.,* 258 F.3d 62, 73 (2d Cir.2001) (citation and internal quotation marks omitted). In deference to plaintiff's pro se status and his attempt, albeit inadequate, to respond to defendants' statement of material facts, the court has opted to review the entire summary judgment record.

*DISCUSSION*

## I. Summary Judgment–Applicable Law

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Salahuddin v. Goord,* 467 F.3d 263, 272–73 (2d Cir.2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1224 (2d Cir.1994).

**\*7** The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord,* 467 F.3d at 273. In that context, the non-moving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc .,* 369 U.S. 654, 655 (1962); *Salahuddin v. Goord,* 467 F.3d at 272.

"[I]n a pro se case, the court must view the submissions by a more lenient standard than that accorded to "formal pleadings drafted by lawyers." *Govan v. Campbell,* 289 F.Supp.2d 289, 295 (N.D.N.Y.2007) (citing, *inter alia, Burgos v. Hopkins,* 14 F .3d 787, 790 (2d Cir.1994) (a court is to read a pro se party's "supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest")). "However, a pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin,* 902 F.Supp. 424, 429 (S.D.N.Y.1995) (citing *Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1991)).

## II. Mootness/Injunctive Relief

### A. Legal Standards

A case is moot, and the court has no jurisdiction when the "parties lack a legally cognizable interest in the outcome." *Powell v. McCormack,* 395 U.S. 486, 496 (1969). Federal courts are without power to decide questions that cannot affect the rights of the parties in the case before the court. *See Swaby v. Ashcroft,* 357 F.3d 156, 159–160 (2d Cir.2004) (petitioner's injury must be traceable to respondent and likely to be redressed by a favorable judicial decision). The plaintiff must have a "personal stake" in the litigation. *Fox v. Board of Trustees of the State University of New York,* 42 F.3d 135, 140 (2d Cir.1994).

The Second Circuit has held that an inmate's request for prospective injunctive relief against correctional staff or conditions of confinement at a particular correctional institution becomes moot when the inmate is discharged or transferred to a different correctional institution. *See, e.g., Day v. Chaplin,* 354 F. App'x 472, 473 (2d Cir.2009) (citing *Mawhinney v. Henderson,* 542 F.2d 1, 2 (2d Cir.1976)); *Prins v. Coughlin,* 76 F.3d 504, 506 (2d Cir.1996) (citations omitted). There is an exception to the mootness doctrine for challenged actions that are "capable of repetition, yet evading review." *See Murphy v. Hunt,* 455 U.S. 478, 482 (1982). This exception will be applied—provided the action is not a class-action lawsuit-if "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [i]s a reasonable expectation that the same complaining party would be subjected to the same action again." *Id.* (quoting *Weinstein v. Bradford,* 423 U.S. 147, 149 (1975)); *Muhammad v. City of New York Dep't of Corr.,* 126 F.3d 119, 123 (2d Cir.1997). Transfer of an inmate does not moot monetary damage claims. *See Young v. Coughlin,* 866 F.2d 567, 568 n. 1 (2d Cir.1989).

### B. Analysis–All Defendants

**\*8**  Plaintiff was transferred from Eastern to Clinton Correctional Facility ("Clinton") on or about July 2009[4] . (Dkt. No. 131, Pl.'s Resp. to Def.'s Stmt. of Mat. Fact at 17, ¶ 70). In this proceeding, commenced September 11, 2009, plaintiff seeks injunctive relief consisting of the following: (1) a low sodium Kosher diet; (2) two hot Kosher meals per day; (3) a special mattress to relieve his back pain; (4) a chair for his cell; (5) knee braces; (6) and (7) exclusion from double bunk cells. (Compl.¶ 13).

[4]      Plaintiff has been transferred at least once more, and is currently housed in Sing Sing Correctional Facility. (Dkt. No. 124–5, Sheehan Aff. Ex. A).

Plaintiff does not allege that any of the alleged violations continued after he was transferred, and states that some of the disputes have been resolved. For example, plaintiff challenges the confiscation of his knee braces while in the Eastern SHU, and notes that he was allowed to wear knee braces after being transferred to the Clinton SHU. (Pl.'s Resp. to Def.'s Stmt. of Mat. Fact at 17, ¶ 70). None of the other claims rise to the level of "disputes which are capable of repetition and evading review," particularly now that plaintiff is no longer in DOCCS custody.[5]   Therefore, the court will recommend granting summary judgment on all plaintiff's claims for injunctive relief.

[5]      Plaintiff's religious freedom claims are those with the greatest potential for repetition, but plaintiff does not assert that the alleged violations are ongoing. Moreover, for the reasons discussed below plaintiff has failed to state a claim for which relief can be granted on either First Amendment or RLUIPA grounds.

### III. Eleventh Amendment–Official Capacity Monetary Damage Claims

#### A. Legal Standards

The state itself cannot be sued under section 1983. *Komlosi v. New York State OMRDD,* 64 F.3d 810, 815 (2d Cir.1995) (citing *Will v. Michigan Department of Police,* 491 U.S. 58, 71 (1989)). This is true whether the court is considering Eleventh Amendment immunity or a statutory interpretation of section 1983. *Id.* at 815 n. 3. An action against state officers in their official capacities is tantamount to an action against the state. *Yorktown Medical Laboratory, Inc. v. Perales,* 948 F.2d 84, 87 & n. 1 (2d Cir.1991) (citations omitted).

#### B. Analysis–All Defendants

Plaintiff states that he is suing defendants in their individual and official capacities. (Compl.¶ 10–b). In this motion, defendants correctly argue that to the extent that plaintiff is attempting to sue them for damages in their official capacities or to the extent that his complaint can be interpreted as raising such official capacity claims, he is barred by the Eleventh Amendment from doing so. (Dkt. No. 124–8, Def.'s Mem. of Law at 14–15). Accordingly, this court recommends that defendants' motion for summary judgment be granted insofar as all monetary claims raised by plaintiff against the defendants in their official capacity be dismissed with prejudice. Monetary claims against defendants in their individual capacities will survive, to the extent that summary judgment or dismissal is not recommended on other grounds.

### IV. Personal Involvement/Respondeat Superior

#### A. Legal Standards

Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and *respondeat superior* is an inappropriate theory of liability for any constitutional claim. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994); *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003). "The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference

to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (citing, *inter alia, Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986)). [6]

[6]    Many courts in this Circuit have discussed whether all of the personal involvement factors, set forth in *Colon,* are still viable after *Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009). *See, e.g., Conklin v. County of Suffolk,* 859 F.Supp.2d 415, 439 (E.D.N.Y.2012) (discussing cases). However, the court in *Conklin* ultimately determined that it was unclear whether *Colon* had been overruled or limited, and continued to apply the factors outlined in *Colon. Id.* In making this determination, the court in *Conklin* stated that "it remains the case that 'there is no controversy that allegations that do not satisfy any of the *Colon* prongs are insufficient to state a claim against a defendant-supervisor.' " *Id.* (quoting *Aguilar v. Immigration Customs Enforcement Div. of the U.S. Dep't of Homeland Sec.,* 811 F.Supp.2d 803, 815 (S.D.N.Y.2011)). *See* also *Young v. Choinski,* 15 F.Supp.3d 172, No. 3:10–CV–606, 2014 WL 962237, at *10–12 (D.Conn. Mar. 13, 2014) ("Although *Iqbal* does arguably cast doubt on the viability of certain categories of supervisory liability, where the Second Circuit has not revisited the criteria for supervisory liability, this Court will continue to recognize and apply the *Colon* factors.").

### B. Analysis–Fischer

**\*9**  Plaintiff alleges that defendant Fischer failed to adequately train DOCCS staff and establish policies that would prevent the constitutional violations alleged in the complaint. Defendants argue that plaintiff has failed to allege sufficient personal involvement of defendant Fischer. Defendant Fischer was the Commissioner of DOCCS at the time that the complaint was filed. Defendant Fischer delegated the day-to-day operations of the various correctional facilities to his staff. (Dkt. No. 124–6, Sheehan Aff., Ex. B, Fischer's Resp. to Inter.). Fischer's office was in Albany, not in any of the individual DOCCS facilities. (*Id.*) Fischer has denied any knowledge related to any of plaintiff's claims. (*Id.*). Without more, plaintiff has failed to establish that defendant Fischer was even aware of any of plaintiff's concerns or any lapses in policy. Plaintiff's conclusory allegations are not adequate to establish Fischer's personal involvement. Accordingly, the court recommends that summary judgment be granted to defendant Fischer as to all causes of action.

### V. Eighth Amendment Claims

#### A. Legal Standards

The Eighth Amendment protects prisoners from "cruel and unusual punishment" in the form of "unnecessary and wanton infliction of pain" at the hands of prison officials. *Wilson v. Seiter,* 501 U.S. 294, 297 (1991); *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). The constitutional prohibition against cruel and unusual punishment includes the right to be free from conditions of confinement that impose an excessive risk to an inmate's health or safety. *Farmer v. Brennan,* 511 U.S. 825, 837 (1994); *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994). To establish an Eighth Amendment claim based on unsafe or medically inappropriate living conditions, a plaintiff must establish that (1) he was incarcerated under conditions which posed a substantial risk of serious harm, and (2) prison officials acted with deliberate indifference to his health or safety. *See Farmer,* 511 U.S. at 834.

"The deliberate indifference standard embodies both an objective and a subjective prong." *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994). Under the objective standard, a plaintiff must allege a deprivation "sufficiently serious" to constitute a constitutional violation. *Hathaway,* 37 F.3d at 66 (quoting *Wilson v. Seiter,* 501 U.S. at 298). "Because society does not expect or intend prison conditions to be comfortable, only extreme deprivations are sufficient to sustain a 'conditions-of-confinement' claim." *Blyden v. Mancusi,* 186 F.3d 252, 263 (2d Cir.1999) (citing *Hudson v. McMillan,* 503 U.S. 1, 9 (1992) (only those deprivations denying "the minimal civilized measures of life's necessities" are sufficiently serious to form the basis of an Eighth Amendment violation) (internal quotations and citations omitted).

The subjective element of the Eighth Amendment analysis focuses on whether the defendant official acted with "a sufficiently culpable state of mind." *Salahuddin v. Goord,* 467 F.3d 263, 280 (2d Cir.2006) (citing *Wilson v. Seiter,* 501 U.S. at 300). "Deliberate indifference" requires more than negligence, but less than conduct undertaken for the very purpose of causing harm.

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.    9

*Farmer,* 511 U.S. at 835. In order for a prison official to act with deliberate indifference, he must know of and disregard an excessive risk to an inmate's health or safety. *Hathaway,* 37 F.3d at 66. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Id.*

**\*10** In regards to prison medical care, a plaintiff's disagreement with prescribed treatment does not rise to the level of a constitutional claim. *Sonds v. St. Barnabas Hosp. Correctional Health Services,* 151 F.Supp.2d 303, 311 (S.D.N.Y.2001). Prison officials have broad discretion in determining the nature and character of medical treatment afforded to inmates. *Id.* (citations omitted). An inmate does not have the right to treatment of his choice. *Dean v. Coughlin,* 804 F.2d 207, 215 (2d Cir.1986). The fact that plaintiff might have preferred an alternative treatment or believes that he did not get the medical attention he desired does not rise to the level of a constitutional violation. *Id.*

It is well established that disagreements over medications, diagnostic techniques, forms of treatment, the need for specialists, and the timing of their intervention implicate medical judgments and not the Eighth Amendment. *Sonds,* 151 F.Supp.2d at 312 (citing *Estelle,* 429 U.S. at 107). Even if those medical judgments amount to negligence or malpractice, malpractice does not become a constitutional violation simply because the plaintiff is an inmate. *Id. See also Daniels v. Williams,* 474 U.S. 327, 332 (1986) (negligence not actionable under Section 1983). Thus, any claims of malpractice, or disagreement with treatment are not actionable under Section 1983.

### B. Deliberate Medical Indifference

#### 1. Shawangunk

##### a. Relevant Facts

Plaintiff claims that upon his return to Shawangunk after back surgery, Dr. Maryann Genovese, M.D. confiscated a special back brace provided by plaintiff's back surgeon and denied plaintiff's requests for its return. (Compl.¶ 6–e). Plaintiff also requested that if defendant Genovese could not provide his back brace, that she prescribe a chair for his cell and/or a special mattress with greater back support than the standard prison issue mattress. (Compl.¶¶ 6–f, 6–h). Genovese denied all these requests, and plaintiff's grievances were unsuccessful. (Compl.¶¶ 6t–6y). In connection with this dispute with Dr. Genovese, plaintiff claims to have spoken with Shawangunk Superintendent Joseph Smith, requesting the return of his back brace, and/or the addition of a special mattress or a chair to his cell. (Compl.¶ 6–j). According to plaintiff, Smith stated that the issue "should be addressed with the medical department." (*Id.*). Smith also allegedly stated that "he had nothing to do with the medical department and a special mattress, chair and back brace was not a security issue" but that "he would look into the problem." (*Id.*). In plaintiff's response to the Statement of Material Facts, he also notes that Smith denied his grievance at Shawangunk requesting the special mattress, although this allegation does not appear in his complaint. (Dkt. No 131, Pl.'s Resp. to Def.'s Stmt. of Mat. Fact p. 8, ¶ 19; Dkt. No. 131–3, Pl.'s Ex. O).

Plaintiff claims that his back pain became so extreme that he could not get a full night's sleep, and woke up with stiffness and numbness. (Compl.¶ 6–q). On August 21, 2007, plaintiff filed a grievance requesting that he be provided with a special mattress and chair for his cell. (Dkt. No. 131, Pl.'s Exhibit O). The grievance was denied, and plaintiff exhausted his administrative remedies. Plaintiff filed this complaint, claiming that the actions of Genovese and Smith constituted deliberate medical indifference and cruel and unusual punishment under the Eighth Amendment. Plaintiff also named Catherine Wells, a Shawangunk administrative nurse and Pedro Diaz, a Regional Health Service Administrator based in Albany, New York, as defendants for their involvement during the administrative grievance process. (Dkt. No. 131, Pl.'s Ex. O and R).

##### b. Analysis–Defendant Smith

**\*11** Only defendant Smith moves for summary judgment as to the medical indifference claim arising from the refusal to allow plaintiff a back brace, special mattress, or chair while in Shawangunk. Defendant Smith alleges that he was informed of plaintiff's back problems, but deferred to the medical department. (Def.'s Mem. of Law at 10). Beyond mere speculation,

plaintiff does not allege that defendant Smith had any authority to override the medical determinations of Dr. Genovese. *See Cuoco v. Moritsugu,* 222 F.3d 99, 111 (2d Cir.2000) (the failure of non-doctors at a prison to intercede in the medical treatment of an inmate is not unreasonable, because they lack the authority to intervene in medical decisions). Moreover, Smith's alleged statement that he would "look into it" is not by itself, a demonstration of personal involvement. *See Garrido v. Coughlin,* 716 F.Supp. 98, 100 (S.D .N.Y.1989); *Parks v. Smith,* No. 08–CV–586, 2011 WL 4055415, at \*14 (N.D.N.Y. Mar. 29, 2011) (Rep't–Rec.), *adopted,* 2011 WL 4055414 (N.D.N.Y. Sept. 12, 2011). The fact that Smith issued an unfavorable grievance report on this claim, which plaintiff raised for the first time in opposition to this motion, does not change the outcome. Smith's denial of plaintiff's grievance expressly relied on the medical determination of Dr. Genovese and does not give rise to a constitutional claim. (Dkt. No. 131–3, Pl's Ex. O). *See Brock v. Wright,* 315 F.3d 158, 164 (2d Cir.2003) (prison superintendent with no medical training who deferred completely to a prison doctor in ruling on a grievance regarding medical care, while perhaps negligent, was not "deliberately indifferent"). Therefore, the court recommends that defendant Smith's motion for summary judgment on the medical indifference claim in plaintiff's First Cause of Action be granted.

### 2. Eastern

#### a. Relevant Facts

On May 13, 2009, plaintiff was transferred to Eastern. (Compl.¶ 8–j). Defendant Steven Schoonmaker, a Correctional Officer, escorted plaintiff along with several other prisoners to their respective cells. (*Id.*). When Schoonmaker directed plaintiff to the top bunk of a double-bunk cell, plaintiff told him that "he could not be placed in a double-bunk cell, especially on the top bunk because of his back injury and bad knees." (*Id.*). Defendant Schoonmaker repeated the order to go into the assigned cell, and plaintiff "stated that he would not go into the double-bunk cell because of his back injuries and bad knees, and to do so would put his health in jeopardy." (Compl.¶ 8–k), Plaintiff was ticketed for misbehavior and escorted to SHU. (*Id.*).

Plaintiff alleges that the order to enter the double-bunk cell, and the assignment to a top bunk, constituted cruel and unusual punishment. (Compl.¶ 8–k). Plaintiff also alleges that the assignment was precipitated by the deliberate medical indifference of Defendants Thomas Griffin and Olga Khramova of Shawangunk, who completed the screening forms allowing plaintiff to be placed into a double-bunk cell. (Compl.¶ 8–I). Plaintiff contends that this contradicted a 2001 Shawangunk medical evaluation form which indicated that plaintiff's medical history required assignment to a bottom bunk bed. (Compl. ¶ 9–e; Dkt. No. 131–3, Pl.'s Ex. D).

 **\*12** On June 2, 2009, plaintiff went to his scheduled medical appointment with defendant Dr. Mikhail Gusman, where plaintiff requested a medical permit to exempt him from placement in a double-bunk cell. (Compl.¶ 9–j). After a physical examination, defendant Gusman would only issue a permit to limit plaintiff to a bottom bunk. (Compl.¶ 9–I). Plaintiff also requested a special mattress to accommodate his back pain, and the return of his knee braces, which had been confiscated during his placement in SHU. (Compl.¶ 9–m). Defendant Gusman refused both requests, but advised that plaintiff's knee braces would be returned once he was released from SHU. (*Id.*).

Plaintiff alleges that defendant Gusman's actions constitute deliberate medical indifference, in violation of the Eighth Amendment. Defendant Gusman has moved for summary judgment, arguing that plaintiff's request to be exempted from a double cell is unconnected to his back problems, that plaintiff's knee braces were confiscated for security reasons while plaintiff was in SHU, and that plaintiff's allegations amount to non-actionable disagreements about medical care. (Def.'s Mem. of Law at 10–11).

#### b. Analysis–Griffin, Khramova, and Schoonmaker

Plaintiff alleges that defendants Griffin and Khramova completed screening sheets which allowed plaintiff to be assigned to a top bunk, despite the attendant difficulties associated with his back problem. (Compl.¶ 8–I). At times, plaintiff's complaint also alleges that the mere assignment to a double bunk cell violated his constitutional rights. (Dkt. No 131, Pl.'s Resp. to Def.'s Stmt. of Mat. Fact p. 16, ¶ 62). Based on the evidence before the court, it appears that plaintiff's condition was sufficiently serious to

2015 WL 5750136

warrant assignment to a bottom bunk in 2001 (prior to back surgery) at Shawangunk and after his July 2009 medical evaluation at Eastern. (Dkt. No. 131–2, Pl.'s Ex. 1–X; Dkt. No. 131–3, Pl.'s Ex. D). Thus, reading the facts presented by the plaintiff in the most favorable light, the court will assume for purposes of this motion that the potential aggravation of plaintiff's back problems constituted a "sufficiently serious" medical impairment.

However, the Court finds no record evidence from which a rational trier of fact could conclude that defendants Griffin, Khramova, and Schoonmaker's failure to assign plaintiff a bottom bunk was, at worst, anything more than carelessness or negligence. *See Felix Torres v. Graham,* 687 F.Supp.2d 38, 53 (N.D.N.Y.2009). Negligently failing to assign an inmate to a lower bunk does not satisfy the subjective element of the legal standard governing claims of deliberate indifference to a serious medical need under the Eighth Amendment. *See Goodson v. Willard Drug Treatment Campus,* 615 F.Supp.2d 100, 102 (W.D.N.Y.2009) ("[E]ven if there were sufficient evidence upon which a factfinder could reasonably conclude that defendants were negligent in assigning plaintiff to a top bunk (and I do not believe that there is), that too would be insufficient."); *Faison v. Janicki,* No. 03–CV–647, 2007 WL 529310, at *2–3 (W.D.N.Y. Feb. 14, 2007) ("[E]ven assuming that Dr. Barranos's rescission of plaintiff's bottom-bunk permit amounted to a serious deprivation of his constitutional rights-which is doubtful-there is no evidence that Dr. Barranos acted with a culpable state of mind [where the plaintiff admitted in his deposition that the basis of his claim against Dr. Barranos was 'medical negligence'].")*; Connors v. Heywright,* No. 02–CV–9988, 2003 WL 21087886, at *3 (S.D.N.Y. May 12, 2003) (dismissing prisoner's claim that defendants were "negligent to [his] medical needs" in that they, inter alia, placed him in a top bunk despite the fact that he had a "mandatory lower bunk slip").

**\*13** Plaintiff points to the inconsistency between the 2001 Shawangunk screening sheet, which limited plaintiff to a bottom bunk, and the 2009 screening sheet, which did not, as proof that Griffin ignored or failed to review plaintiff's medical history when completing the form. (Compl.¶ 8–I). However, plaintiff makes no showing that Griffin knew and disregarded an excessive risk to plaintiff's safety. As to Khramova, plaintiff likewise concludes, without proof, that she must have ignored his medical history before completing her form. (*Id.*). Plaintiff offers nothing to support this notion, and mere speculation is insufficient to overcome a summary judgment motion. *Bennett v. Goord,* No. 06–3818–pr, 2008 WL 5083122, at *2 (2d Cir. Dec. 2, 2008) (citing *inter alia McPherson v. N.Y. City Dep't of Educ.,* 457 F.3d 211, 215 (2d Cir.2006) (speculation alone is insufficient to defeat a motion for summary judgment)). As to Schoonmaker, plaintiff offers no proof that Schoonmaker had any indication of plaintiff's medical history or did anything more than escort plaintiff to his assigned cell.

Even taking the facts in the light most favorable to the plaintiff, the actions of the moving defendants do not support a constitutional claim. Accordingly, the court recommends that defendants Griffin, Khramova, and Schoonmaker's motion for summary judgment on plaintiff's Third Cause of Action be granted.

### c. Analysis–Defendant Gusman

Defendant Gusman evaluated plaintiff after his transfer to Eastern, and considered plaintiff's requests to be excluded from double bunk cells, to be issued a special mattress due to his back pain, and to be allowed to wear knee braces while being held in SHU. (Compl.¶ 9–k–9–m). Defendant Gusman denied each of these requests, but did restrict plaintiff to a bottom bunk, consistent with his previous celling situation at Eastern. (Compl.¶ 9–i). The exhibits show that Dr. Gusman provided significant medical treatment while plaintiff was in SHU, including knee x-rays. (Dkt. No. 131–3, Pl.'s Ex. B). Plaintiff's allegations against Gusman amount to nothing more than a dispute over what further medical treatment was appropriate. The fact that plaintiff was ultimately allowed to wear his knee braces after being transferred to a different facility has no bearing on the legitimacy of Gusman's treatment. *Gillespie v. New York State Dept. of Correctional Services,* No. 9:08–CV–1339 (TJM/ATB), 2010 WL 1006634, at *6, (N.D .N.Y. Feb. 22, 2010) (citing cases) (Rep't–Rec.), *adopted,* 2010 WL 1006643 (N.D.N.Y. Mar 19, 2010) ("The mere fact that [DOCCS] physicians in other facilities may have previously provided plaintiff with some of the treatments and accommodations he demanded at [Clinton] does not render the medical decisions of [N.P. Lashway] 'deliberate indifference.'"). Even if those medical judgments rose to negligence or malpractice, malpractice does not become a constitutional violation simply because the plaintiff is an inmate. *Sonds,* 151 F.Supp.2d at 312. Moreover, plaintiff's own exhibits do not

show an existing permit for knee braces for the May to June 2009 time period at issue [7]. Therefore, the court recommends that defendant Gusman be granted summary judgment as to plaintiff's Fourth Cause of Action.

[7]    Plaintiff has included with his response to this summary judgment motion "medical equipment passes" for "neoprene knee sleeves" for the periods July 23, 2003 to July 23, 2004; December 21, 2004 to March 21, 2005; June 3, 2006 to January 3, 2007; January 29, 2007 to July 29, 2007; August 29, 2007 to March 1, 2008; February 29, 2008 to August 29, 2008; and August 21, 2008 to February 21, 2009. (Dkt. No. 131–2, Pl.'s Ex. 1V through 1Y.

### C. Conditions of Confinement (Eastern)—SHU Lighting

#### 1. Relevant Facts

**\*14** While in SHU, plaintiff alleges that his cell had a night light which "was directly overhead and was so bright that it was impossible to sleep the entire time he was in Eastern SHU." (Compl.¶ 9–a). During his confinement in SHU, plaintiff spoke with defendants William Brown and Thomas Griffin, who were making rounds, and complained "that the night light was to [sic] bright and that he could not sleep ..." and that "the light was so bright that he could read a book, and he had not had a full night's sleep since he [had] been [in] SHU." (Compl.¶ 9–f). In response to Brown's suggestion that plaintiff should put something over his eyes, plaintiff said that "he had tried that but every time he turn[ed] over it would come off and he would wake up." (*Id.*).

Plaintiff's June 5, 2009 grievance, in which he requested that the night light be turned off at night so that he could sleep, was denied, and his appeal was unsuccessful. (Dkt. No. 131–2, Pl.'s Ex. 1U). In this action, Plaintiff alleged that the sleep deprivation caused by the night light in the Eastern SHU constituted cruel and unusual punishment, and named Brown and Griffin as defendants.

#### 2. Analysis—Brown and Griffin

"[S]leep is critical to human existence, and conditions that prevent sleep have been held to violate the Eighth Amendment." *Walker v. Schult,* 717 F.3d 119, 126 (2d Cir.2013) (citing, *inter alia, Tafari v. McCarthy,* 714 F.Supp.2d 317, 367 (N.D.N.Y.2010)) ("Courts have previously recognized that sleep constitutes a basic human need and conditions that prevent sleep violate an inmate's constitutional rights."). "Requiring inmates to live in constant illumination can ..., under certain circumstances, rise to the level of an Eighth Amendment violation." *Jones v. Rock,* No. 9:12–CV–447 (NAM/TWD), 2013 WL 4804500, \*10 (N.D.N.Y. Sept. 6, 2013) (citing, *inter alia, Keenan v. Hall,* 83 F.3d 1083, 1090–91 (9th Cir.1996) (an allegation that large fluorescent lights directly in front of and behind an inmate's cell that shown into his cell twenty-four hours a day, causing him grave sleeping problems and other mental and psychological problems stated a claim of cruel and unusual punishment that could withstand a motion for summary judgment). *See also Holmes v. Grant,* No. 03–CV–3426, 2006 WL 851753, at \*3, 11–12 (S.D.N.Y. Mar. 31, 2006) (denying motion to dismiss plaintiff's claim that 24–hour illumination of the SHU during his 35 days of confinement caused fatigue, loss of appetite, migraine headaches, and other physical and mental problems because, as alleged, it would sustain both the objective and the subjective prongs of an Eighth Amendment analysis) (collecting cases).

The decisions evaluating Eighth Amendment claims based on continuous lighting in the prison setting are very "fact-driven," turning on the degree of illumination, the duration of the inmate's exposure, the extent of harm it causes, and the penological justification for the lighting. [8]  *Booker v. Maly,* No. 9:12–CV–246 (NAM/ATB), 2014 WL 1289579, at \*18 (N.D.N.Y. Mar. 31, 2014) (citing, *inter alia, McGee v. Gold,* No. 1:04–CV–335, 2010 WL 5300805, at \*5 (D.Vt. Aug. 3, 2010) (Rep't–Rec.), *adopted, sub nom. McGee v. Pallito,* 2010 WL 5389996 (D.Vt. Dec. 20, 2010), *vacated and remanded on other grounds sub nom. Kimber v. Tallon,* 556 F. App'x 27 (2d Cir.2014); *Chappell v. Mandeville,* 706 F.3d 1052, 1058–59 (9th Cir.2013) (comparing cases). Taking these factors into consideration, and resolving all ambiguities and drawing all reasonable inferences in favor of the plaintiff, the court recommends granting defendant's motion for summary judgment on plaintiff's cause of action for cruel and unusual punishment related to the illumination of the SHU.

8       The Ninth Circuit has noted:

> The precise role of legitimate penological interests is not entirely clear in the context of an Eighth Amendment challenge to conditions of confinement. The Supreme Court has written that the test of *Turner v. Safley,* 482 U.S. 78 ... (1987), which requires only a reasonable relationship to a legitimate penological interest to justify prison regulations, does not apply to Eighth Amendment claims. *Johnson v. California,* 543 U.S. 499, 511 ... (2005) (")[W]e have not used *Turner* to evaluate Eighth Amendment claims of cruel and unusual punishment in prison....) ... The existence of a legitimate penological justification has, however, been used in considering whether adverse treatment is sufficiently gratuitous to constitute punishment for Eighth Amendment purposes. *See Rhodes v. Chapman,* 452 U.S. 337, 346 ... (1981) ("Among 'unnecessary and wanton' inflictions of pain are those that are 'totally without penological justification.' ")

*Grenning v. Miller–Stout,* 739 F.3d 1235, 1240 (9th Cir.2014) (some citations omitted). Other courts which have considered penological justification in the context of claims involving continuous prison lighting have related it to the subjective prong of the Eighth Amendment analysis. *See, e.g., Chavarria v. Stacks,* 102 F. App'x 433, 436 (5th Cir.2004) (plaintiff cannot establish the subjective element of an Eighth Amendment violation because he cannot show that his deprivation is unnecessary and wanton, given the security-related justification for the lighting policy in the administrative segregation area).

**\*15** Defendant has offered evidence that the night light currently used in the Eastern SHU is 13 watts, but the declarant, the current Deputy Superintendent for Security at Eastern; did not offer any objective evidence that the light in plaintiff's cell in 2009 was actually 13 watts. (Dkt. No. 124–3, Wilkins Decl. ¶ 6). However, even if brighter than 13 watts, constant illumination of the SHU cell does not necessarily violate the Eighth Amendment. *See Vasquez v. Frank,* 290 F. App'x 927, 929 (7th Cir.2008) (24–hour lighting involving a single, 9–watt fluorescent bulb does not objectively constitute an "extreme deprivation."); *McBride v. Frank,* No. 05C1058, 2009 WL 2591618, at \*5 (E.D.Wis.Aug.21, 2009) (constant illumination from a 9–watt fluorescent bulb does not objectively deny "the minimal civilized measure of life's necessities."); *Wills v. Terhune,* 404 F.Supp.2d 1226, 1230–31 (E.D.Cal.2005) (holding that 24–hour illumination by 13–watt bulb was not objectively unconstitutional); *Pawelski v. Cooke,* No. 90–C–949–C, 1991 WL 403181, at \*4 (W.D.Wis. July 18, 1991) ("Having a single 40 watt light bulb on 24 hours a day for security purposes amounts to no more than an inconvenience to the segregation inmates."), *aff'd,* 972 F.2d 352 (7th Cir.1992) (table). Plaintiff disputes defendants' description of the night light but states only that it was bright enough to "read a book." (Complaint 9–f). Plaintiff also admits that he could cover his eyes and fall asleep, but would wake up when he would turn over and the cover would come off. (*Id.*). *Cf. Quick v. Graham,* No. 9:12–CV–1717, 2014 WL 4627108 (N.D.N.Y.2014) (denying summary judgment motion where plaintiff claimed that cell lights were never dimmed at night); *Keenan,* 83 F.3d 1083, 1090–91 (lighting from "large fluorescent lights" was unconstitutional where plaintiff alleged that he "had no way of telling night or day").

Plaintiff was in the Eastern SHU for 48 days. (Wilkins Decl. ¶ 2). The relatively short duration that plaintiff was exposed to the uncomfortable illumination does not, on its face, compel summary judgment in favor of defendants. *See Holmes v. Grant,* No. 03–CV–3426, 2006 WL851753 (S.D.N.Y.2006) (where plaintiff alleged specific health problems resulting from twenty-four hour lighting during 35 day stay in SHU, he had adequately stated a constitutional claim). However,"[i]n order to succeed on a claim of illegal illumination, plaintiff must produce evidence that the constant illumination had harmful effects on his health beyond mere discomfort." *Vasquez v. Frank,* No. 05–C–528–C, 2007 WL 3254702, at \*5 (W.D.Wis. Nov. 2, 2007); *see also Quick,* 2014 WL 4627108 at \*8 (denying defendants' motion for summary judgment where plaintiff alleged that he suffered migraine headaches and delusions as a result of sleep deprivation); *Holmes,* 2006 WL851753 at \*11 (denying motion to dismiss where plaintiff alleged that sleep deprivation caused fatigue, loss of appetite, migraine headaches, and other physical and mental problems). Plaintiff does not allege any health problems resulting from the alleged sleep deprivation that would rise to the severity necessary to trigger Eighth Amendment concerns. Instead, plaintiff only claims that he was unable to get a full night's sleep. (Compl. ¶ 9–f; Dkt. No. 131–2, Pl.'s Ex. 1U).

**\*16** Finally, defendants argue that the night lights serve a legitimate penological function. Both plaintiff and defendant agree that the SHU cell doors are solid doors with a small window measuring approximately either 8 inches by 10 inches, or 8 inches by 16 inches, and a "feed-up hatch" that is closed unless a meal is being served. (Wilkins Decl. ¶ 21; Pl.'s Resp. to Def.'s Stmt. of

Mat. Fact at 3, ¶ 6). Given the limited visibility, defendants argue that the night lights provide the necessary illumination to allow security staff to see into the cell in order to protect both correctional facility staff and inmates from physical harm. (Wilkins Decl. ¶ 8). It is well-recognized that the ability to maintain the safety of inmates and the officers is a legitimate penological interest. *Booker v. Maly,* 2014 WL 1289579 at *19. Indeed, plaintiff does not challenge the security purpose of the light in his pleadings. [9]

[9]   In plaintiff's grievance, plaintiff argued that the security goals could be adequately met by equipping security guards with flashlights, but did not press that claim in this proceeding.

After consideration of the intensity of the nighttime lighting, the limited exposure of plaintiff during his stay in SHU, the lack of any identifiable health or other deleterious impacts from the illumination, and the legitimate penological interest in being able to monitor SHU inmates 24 hours a day, the court recommends granting defendants' motion for summary judgment as to the Eighth Amendment claim in the Fourth Cause of Action related to the SHU night light.

## V. Due Process/Right to Privacy (Eastern)

### A. Procedural Due Process

**1. Relevant Facts**

Plaintiff was ticketed for three violations arising from the refusal to enter the assigned cell: refusal to obey a direct order; interference with an employee; and failure to follow facility regulations and staff directions. (Dkt. No. 124–7, Sheehan Aff., Ex. C, Disciplinary Hearing Certified Transcript at 4–5). Plaintiff's disciplinary hearing before defendant Captain Louis Pingotti of Eastern was held on May 16, 2009, May 19, 2009, and May 29, 2009. (Compl.¶¶ 9–b, 9–d, 9–g). The hearing was adjourned several times to allow for obtaining evidence and identifying potential witnesses. (Dkt. No. 124–7, Sheehan Aff., Ex. C, Disciplinary Hearing Certified Transcript). Plaintiff pled not guilty to the three charges. (*Id.* at 5). On the first day of the hearing, May 16, plaintiff raised an issue regarding the availability of his medical records, and the hearing was adjourned. (*Id.* at 9).

On May 19, 2009, the hearing re-opened and defendant Pingotti provided plaintiff with three documents related to his back condition. (*Id.* at 11–14). Each document was read into the record: a May 11, 2009 double cell information sheet completed by defendant Thomas Griffin; a May 13, 2009 screening of physical assessment form for placement in a double cell completed by defendant Olga Khramova; and a December 6, 2001 screening physical assessment and placement for a double cell form from Shawangunk. (*Id.*). Plaintiff had requested the first two documents. Pingotti requested the third document on his own, noting that he "wanted to make sure what your last facility said in case there was a contradiction." (*Id.* at 11). During the course of the hearing, plaintiff testified regarding his 2006 back surgery, 2008 physical therapy, and his physical therapist's exercise recommendations. (Dkt. No. 124–7, Sheehan Aff., Ex. C, Disciplinary Hearing Certified Transcript at 5, 14–22, 24–7).

 **\*17**  Following another adjournment, on May 29, 2009, plaintiff was allowed to call the doctor then on duty at Eastern, Dr. Bhavsar, as a witness. (*Id.* at 27–31). Dr. Bhavsar reviewed the various screening sheets and concluded that plaintiff should be assigned to a bottom bunk, but that double-bunking was appropriate. (*Id.* at 30). Dr. Bhavsar also stated that the screening sheets available upon plaintiff's transfer to Eastern did not indicate that a bottom bunk was required. (*Id.*). Dr. Bhavsar also scheduled plaintiff for a medical review. (*Id.* at 29).

Defendant Pingotti denied plaintiff's request to call his physical therapist as a witness. Pingotti explained the rationale for his decision-that the physical therapist had no direct knowledge of the incident that led to the disciplinary hearing, and there was no dispute that the inmate had been given a list of exercises. (*Id.* at 23). Plaintiff also did not know the physical therapist's name. (*Id.* at 26).

Defendant Pingotti denied plaintiff's request that the disciplinary hearing be adjourned until plaintiff had received a medical checkup, and issued his decision on May 29, 2009. (Dkt. No. 124–7, Sheehan Aff., Ex. C, Disciplinary Hearing Certified Transcript at 35). Plaintiff was found guilty on all three charges, based upon defendant Schoonmaker's report and the evidence

presented at the hearing. (*Id.*). The disposition of the hearing was confinement in SHU, loss of commissary, packages and phones for a period of three months, with a start date of March 13, 2009 [10] . (*Id.*).

[10]    Plaintiff stayed in the Eastern SHU until June 29, 2009, when he was transferred to Clinton. (Wilkins Decl. ¶ 2, Plaintiff's Ex. 1Y).

Plaintiff contends that defendant's Pingotti's handling of the disciplinary hearing, including his refusal to call all the requested witnesses, indicated bias and violated his right to due process. (Compl.¶ 9–i). Plaintiff also argues that defendant Pingotti's request for plaintiff's double cell information sheet from Shawangunk violated his right to privacy in his medical records. (Compl.¶ 9–d). In the present motion for summary judgment, defendant Pingotti argues that plaintiff received due process, and that the weight of the evidence supports his conclusion. (Def.'s Mem. of Law at 4–7). Defendant Pingotti also argues that plaintiff did not raise any objection to the retrieval of plaintiff's Double Cell Information Sheet from Shawangunk, and that the document was obtained solely to investigate plaintiff's claim that he could not be double-bunked because of his back problems. (*Id.* at 6).

### 2. Procedural Due Process–Legal Standards

In order to begin a due process analysis, the court first determines whether plaintiff had a protected liberty interest in remaining free from the confinement that he challenges and then determines whether the defendants deprived plaintiff of that liberty interest without due process. *Giano v. Selsky,* 238 F.3d 223, 225 (2d Cir.2001); *Bedoya v. Coughlin,* 91 F.3d 349, 351 (2d Cir.1996). In *Sandin v. Conner,* the Supreme Court held that although states may still create liberty interests protected by due process, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force ..., nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 483–84 (1995).

**\*18**  The Second Circuit has explicitly avoided a bright line rule that a certain period of confinement in a segregated housing unit automatically gives rise to due process protection. *See Sims v. Artuz,* 230 F.3d 14, 23 (2d Cir.2000); *Colon v. Howard,* 215 F.3d 227, 234 (2d Cir.2000). Instead, cases in this circuit have created guidelines for use by district courts in determining whether a prisoner's liberty interest was infringed. *Palmer v. Richards,* 364 F.3d 60, 64–66 (2d Cir.2004). A confinement longer than an intermediate one, and under "normal SHU conditions" is "a sufficient departure from the ordinary incidents of prison life to require procedural due process protections under *Sandin.*" *Colon v. Howard,* 215 F.3d at 231 (finding that a prisoner's liberty interest was infringed by 305–day confinement). Shorter confinements under normal SHU conditions may not implicate a prisoner's liberty interest.

"SHU confinements of fewer than 101 days could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions ... or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical." *Palmer v. Richards,* 364 F.3d at 65 (citations omitted). In the absence of a detailed factual record, cases in this Circuit typically affirm dismissal of due process claims where the period of time spent in SHU was short-*e.g.,* 30 days-and there was no indication that the plaintiff endured unusual SHU conditions. *Id.* at 65–66 (collecting cases).

The due process protections afforded inmates facing disciplinary hearings that affect a liberty interest include advance written notice of the charges, a fair and impartial hearing officer, a hearing that affords the inmate the opportunity to call witnesses and present documentary evidence, and a written statement of the evidence upon which the hearing officer relied in making his determination. *Sira v. Morton,* 380 F.3d 57, 69 (2d Cir.2004) (citing, *inter alia, Wolff v. McDonnell,* 418 U.S. 539, 563–67 (1974)). The hearing officer's findings must be supported by "some reliable evidence." *Id.* (*citing, inter alia, Superintendent v. Hill,* 472 U.S. 445, 455 (1985)).

### 3. Procedural Due Process–Analysis

2015 WL 5750136

Plaintiff was found guilty of three misbehavior charges in this case, and the penalty was three months in SHU, with loss of commissary, package and phone privileges. (Complaint ¶ 9–I). Plaintiff only served 48 days in the Eastern SHU before being transferred to Clinton. (Wilkins Decl. ¶ 2). At Eastern, plaintiff's only concerns about the condition of his confinement were the night light that kept him from getting a full night's sleep, and a restriction on wearing his knee braces due to security concerns. (Compl. ¶¶ 9–f, 9–m; Pl.'s Resp. to Def.'s Stmt. of Mat. Fact at 3, ¶ 6). The remainder of the penalty was served in Clinton SHU, and plaintiff has raised no concerns about conditions there. In fact, plaintiff has compared it favorably to Eastern SHU, noting that he was allowed to wear his knee braces in Clinton's SHU. (Pl.'s Resp. to Def.'s Stmt. of Mat. Fact at 17, ¶ 70).

**\*19** The ninety day period in SHU, and the 48 days spent under the disfavored conditions at Eastern, fall within the "short range" of disciplinary confinement. *See Tafari v. McCarthy,* 714 F.Supp.2d 317, 375 (N.D.N.Y.2010) (finding 30, 60, and 90 day SHU sentences within the short range of disciplinary sentences). Therefore, plaintiff's confinement in SHU implicates a liberty interest only if "the conditions were more severe than the normal SHU conditions." [11] *Palmer,* 364 F.3d at 64. "Factors relevant to determining whether the plaintiff endured an 'atypical and significant hardship' include 'the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions' and 'the duration of the disciplinary segregation imposed compared to discretionary confinement.' " *Id.* (quoting *Wright v. Coughlin,* 132 F.3d 133, 136 (2d Cir.1998)). Plaintiff alleges that the SHU night light kept him from getting a full night's sleep, and that he was denied use of knee braces while in SHU. The court doubts that the constant illumination and the confiscation of knee braces, which applied to all inmates in the Eastern SHU, would qualify as "atypical and significant hardships" that, over a period of relatively limited confinement, would implicate a liberty interest. (*See* Wilkins Decl. Ex. A and B (policy documents noting that inmate property may be confiscated upon entry to SHU)). But even assuming that plaintiff's confinement in the Eastern SHU implicated a liberty interest, he received adequate due process in connection with the disciplinary hearing.

[11]    "Normal" SHU conditions include being kept in solitary confinement for 23 hours per day, provided one hour of exercise in the prison yard per day, and permitted two showers per week. *Ortiz v. McBride,* 380 F.3d 649, 655 (2d Cir.2004).

A review of the record shows that plaintiff was afforded notice of the charges, a hearing, and the opportunity to present witnesses. Plaintiff also received a written reason for the disposition at the close of the hearing. (Dkt. No. 124–7, Sheehan Aff., Ex. C, Disciplinary Hearing Certified Transcript).

An inmate is entitled to a decision-maker who does not "prejudge the evidence and who cannot say ... how he would assess evidence he has not seen yet." *Allen v. Cuomo,* 100 F.3d 253, 259 (2d Cir.1996) (citing *inter alia Patterson v. Coughlin,* 905 F.2d 564, 570 (2d Cir.1990)); *Tellier v. Scott,* 94 Civ. 3459, 2004 WL 224499, at \*8 (S.D.N.Y. Feb. 5, 2004) (citations omitted). However, prison hearing officers 'are not held to the same standard of neutrality as adjudicators in other contexts." *Id.* (citing *inter alia Russell v. Selsky,* 35 F.3d 55, 60 (2d Cir.1994)).

The evidence presented demonstrates that the hearing officer was not biased and that plaintiff otherwise received adequate process. During the course of the hearing, defendant Pingotti adjourned the proceeding several times to allow plaintiff an opportunity to review documents or identify witnesses. (Dkt. No. 124–7, Sheehan Aff., Ex. C, Disciplinary Hearing Certified Transcript). A medical doctor was allowed to testify as to defendant's back condition, even after plaintiff had admitted to refusing to enter the assigned cell. (*Id.* at 27–31). The hearing office excluded one witness-an unidentified physical therapist who could allegedly testify as to the potential difficulty for plaintiff to perform back exercises in a double bunk cell-but defendant Pingotti did consider a chart depicting those exercises, and plaintiff's related testimony. (*Id .* at 14–18).

**\*20** Although due process includes a right to call witnesses, this right is not unfettered. *Alicea v. Howell,* 387 F.Supp.2d 227, 234 (W.D.N.Y.2005) (citing *Ponte v. Real,* 471 U.S. 491, 495 (1985)). A hearing officer does not violate due process by excluding irrelevant or unnecessary evidence or testimony. *Kawalinski v. Morse,* 201 F.3d 103, 109 (2d Cir.1999) (citing *Kingsley v. Bureau of Prisons,* 937 F.2d 26, 30 (2d Cir.1991)); *Chavis v. vonHagn,* No. 02–CV–119, 2009 WL 236060, at \*62 (W.D.N.Y. Jan. 30, 2009) (citing *Kawalinski, supra* ). For constitutional due process purposes (assuming that a liberty interest existed), all that is required is "some" or "a modicum" of evidence supporting the disciplinary determination. *Superintendent*

*v. Hill,* 472 U.S. 445, 455 (1985) (some evidence standard). Plaintiff in this case simply disagrees with defendant Pingotti's findings, which are supported by the evidence. Therefore, defendant Pingotti's motion for summary judgment as to plaintiff's allegations of a deprivation of due process in his Fourth Cause of Action should be granted, even assuming that plaintiff had demonstrated a liberty interest.

### B. Right to Privacy

#### 1. Legal Standards

In the United States Constitution, there exists a right to privacy, protecting an individual's interest in avoiding the disclosure of personal matters. *Doe v. City of New York,* 15 F.3d 264, 267 (2d Cir.1994) (citing *Whalen v. Roe,* 429 U.S. 589, 599 (1977)). This right is protected by the Due Process Clause. *O'Connor v. Pierson,* 426 F.3d 187, 201 (2d Cir.2005) (citing *Whalen,* 429 U.S. at 598–600). The right to privacy has also been "characterized as a right to 'confidentiality,' which 'includes the right to protection regarding information about the state of one's health.' " *Matson v. Bd. of Ed. of City School Dist. of New York,* 631 F.3d 57, 64 (2d Cir.2011) (quoting inter alia *Doe,* 15 F.3d at 267).

With respect to the "disclosure" of medical information, an inmate's privacy right varies with the inmate's condition, with a greater interest in preventing the disclosure of highly sensitive conditions. *Id.* (citations omitted). Prison officials may impinge upon the inmate's privacy right only to the extent that their actions are not "reasonably related to legitimate penological interests." *Powell v. Schriver,* 175 F.3d 107, 112 (2d Cir.1999). Where the sensitive information is spread gratuitously through "humor or gossip," it is more likely that the inmate's right to privacy will have been violated. *Rodriguez v. Ames,* 287 F.Supp.2d 213, 220 (citing *Powell,* 175 F.3d at 112).

#### 2. Right to Privacy–Analysis [12]

[12]    In his First Cause of Action, plaintiff alleges that, while at Shawangunk, defendant Genovese unlawfully released plaintiff's medical records in violation of New York State regulations. Plaintiff does not identify the nature of the records allegedly released, and defendants do not address the issue in the present motion for summary judgment. Therefore, the court will not address this issue in this motion.

Defendant Pingotti has moved for summary judgment on the alleged breach of privacy during the disciplinary hearing. (Dkt. No. 124–8, Def.'s Mem. of Law at 5). Even reading the complaint in the light most favorable to the plaintiff, there was a legitimate penological purpose for obtaining the screening sheet, as plaintiff's primary argument during the disciplinary hearing was that his medical condition prohibited assignment to a double-bunk cell. In fulfilling his duties, defendant Pingotti sought the best available source of the information. Moreover, plaintiff's back and knee problems, to the extent that they were "disclosed" during the hearing, are not the sort of impairment which "carr[ies] with it the sort of opprobrium that confers upon those who suffer from it a constitutional right of privacy as to that medical condition." *See Matson v. Bd. of Education of the City School Dist. of New York,* 631 F.3d 57, 61 (2d Cir.2010) (finding that disclosure of fibromyalgia would not expose a person to discrimination or intolerance). Accordingly, the court recommends that defendant Pingotti's motion for summary judgment be granted as to the Fourth Cause of Action.

## VI. Retaliation/Verbal Harassment (Shawangunk)

### A. Relevant Facts

**\*21**  Plaintiff alleges that numerous personnel at Shawangunk retaliated against him for filing various grievances at the facility, as well as for receiving a settlement payment in connection with prior litigation against officials at Attica Correctional Facility. (Compl.¶ 8–a). Plaintiff claims that each time that he filed a grievance, his cell was searched immediately afterwards [13] . (Dkt. No 131, Pl.'s Resp. to Def.'s Stmt. of Mat. Fact p. 13, ¶¶ 46, 48). Plaintiff also claims that his wife was denied entrance to Shawangunk on a visiting day, and that he was transferred to another facility as retaliation for his past grievances and receipt

2015 WL 5750136

of the settlement payment. (Compl.¶ 8–b). Plaintiff alleges that Correctional Councilor Earl Boddison, Superintendent Joseph Smith, Superintendent John Maly, Lt. Gardner, Lt. Palen, Sgt. Kimbler and C.O. Brooks participated in these retaliatory actions. (Compl. ¶ 8–e,8–f,8–h). The only alleged retaliation addressed in this summary judgment motion is defendant Maly's response to plaintiff's question regarding the transfer. Maly allegedly "smiled and said, 'have a nice day Mr. Jones." (Compl. ¶ 8–h). Defendant John Maly has moved for summary judgment solely in regards to this exchange. ((Dkt. No. 124–8, Def.'s Mem. of Law at 12–13).

13    Plaintiff states that his "cell was destroyed" in a cell search on or about April 16, 2009, but does not identify any personal property that was removed or destroyed. (Compl.¶ 8–e).

### B. Legal Standards

It is well established in the Second Circuit that verbal abuse, whether threatening, vulgar, or racial in nature, does not, by itself, rise to the level of a constitutional violation. *See, e.g ., Purcell v. Coughlin* 790 F.2d 263, 265 (2d Cir.1986); *Webster v. Holmes,* 694 F.Supp.2d 163, (N.D.N.Y.2010) (collecting cases); *Ramirez v. Holmes,* 921 F.Supp. 204, 210 (S.D.N.Y.1996).

### C. Analysis

Plaintiff has interpreted Maly's response "have a nice day Mr. Jones," as proof of a retaliatory motive for his transfer. In this motion, defendant Maly ignores the other allegations of retaliation in the complaint and narrowly argues that his response to plaintiff is not actionable in a federal civil rights action. To the extent that plaintiff is suing over the comment alone, the court agrees that even if the remark could be interpreted as harassment, it does not give rise to a constitutional claim. Therefore, defendant Maly should be granted summary judgment solely as it relates to any allegation of verbal harassment.

Defendant Maly must still remain part of this litigation, as plaintiff's Third Cause of Action alleges that Maly was personally involved in other retaliatory conduct, including the denial of plaintiff's visitation privileges. (Compl.¶ 8–e). Because defendant Maly did not address these allegations in his motion for summary judgment, [14] he is not entitled to summary judgment with respect to plaintiff's further claims of retaliation. *See Salahuddin,* 467 F.3d at 278.

14    As noted above, none of the defendants identified in the retaliation claim (Earnel Boddison, Joseph Smith, Lt. Palen, Sgt. Kimbler, C.O. Brooks, Lt. Gardner, and John Maly) moved for summary judgment, except for the Maly verbal harassment issue addressed herein.

## VI. Religious Liberty (Shawangunk and Eastern) [15]

15    Although the heading for plaintiff's second Cause of Action also references cruel and unusual punishment, and the equal protection clause, his pleadings with regard to the Kosher menu do not allege any of the elements necessary for an Eighth Amendment or Fourteenth Amendment claim.

### A. Relevant Facts

Plaintiff converted to Judaism on or about January 2004, while in prison. (Dkt. 131–1, Pl.'s Ex. T). Plaintiff alleges that since his conversion, he "received a high sodium cold Kosher Diet three times a day, seven days a week for the past five years." (Compl.¶ 7–m). Plaintiff also alleges that he has a history of high blood pressure, and so he sought a low-sodium Kosher alternative diet. (Compl.¶¶ 7–e, 7–f).

**\*22**  Plaintiff alleges that he asked Rabbi Horowitz, a Shawangunk prison chaplain, for assistance in receiving "at least two hot meals per day and to change the Kosher Menu ..." (Compl.¶ 7–c). Plaintiff claims that Rabbi Horowitz refused to assist him. (Compl.¶ 7–i). [16]

16    Plaintiff also alleges that Rabbi Horowitz was skeptical of his conversion and refused to provide him with information concerning the Jewish religion. However, the record demonstrates that Rabbi Horowitz signed plaintiff's change of religious designation form and plaintiff's form accepting the Kosher diet requirements. (Dkt. 131–3, Pl.'s Ex. T).

Plaintiff submitted a request to John Rapp, Shawangunk Food Administrator, seeking a low sodium Kosher diet which included at least two hot meals per day. (Compl.7–i) This request was denied. (Dkt. No. 131–2, Pl.'s Ex. 1–I). During the grievance process, Rapp advised that the Kosher menu is established by DOCCS Central Food Service, and that hot meals were only provided on Jewish holidays, with the exception of the Green Haven Correctional Facility. (*Id.*). Plaintiff exhausted his administrative appeals, which were unsuccessful.

### B. Legal Standards

#### 1. Religious Land Use and Institutionalized Persons Act ("RLUIPA")

RLUIPA provides that:

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—

(A) is in furtherance of a compelling governmental interest; and

(B) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc–1(a). Under RLUIPA, the plaintiff bears the burden of showing that his religious exercise has been burdened and that the burden is substantial. [17] *Marria v. Broaddus,* 200 F.Supp.2d 280, 297 (S.D.N.Y.2002) (citing 42 U.S.C. § 2000cc–2(b)). The burden then shifts to the government to show that the burden furthers a compelling governmental interest ***and*** that it is the ***least restrictive*** means of achieving that interest. *Id.* The act defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc–5(7)(A).

17    RLUIPA uses the term "substantial burden" in the language of the statute, removing any ambiguity with respect to the extent of the burden required to establish a statutory claim.

A "substantial burden" is one that places "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Singh v. Goord,* 520 F.Supp.2d 487, 498 (S.D.N.Y.2007) (citing, *inter alia, Jolly v. Coughlin,* 76 F.3d 468, 477 (2d Cir.1996)). Inconvenience alone is insufficient to establish a substantial burden. *Id.* (citing *Westchester Day School v. Village of Mamaroneck,* 379 F.Supp2d 550, 557 (S.D.N.Y.2005)). Furthermore, the substantial burden test presupposes that some inconveniences may be so minor that they do not amount to a violation. *See McEachin v. McGuinnis,* 357 F.3d 197, 203 n. 6 (2d Cir.2004) (discussing in a footnote the applicability of the "time-honored maxim *'de minimis non curat lex' '* "). However, the court should not attempt to engage in resolving disputes as to whether a particular practice is "central" or "mandatory" to a particular religion in determining whether a burden was substantial. *See Ford v. McGinnis,* 352 F.3d 582, 593–94 (2d Cir.2003) (discussing First Amendment protections).

#### 2. First Amendment

**\*23** Inmates have the right under the First and Fourteenth Amendments to freely exercise a chosen religion. *Ford v. McGinnis,* 352 F.3d 582, 588 (2d Cir.2003) (citing *Pell v. Procunier,* 417 U.S. 817, 822 (1974)). However this right is not limitless, and may be subject to restrictions relating to legitimate penological concerns. *Benjamin v. Coughlin,* 905 F.2d 571, 574 (2d Cir.1990). The analysis of a free exercise claim is governed by the framework set forth in *O'Lone v. Estate of Shabazz,* 482 U.S. 342 (1987) and *Turner v. Safely,* 482 U.S. 78, 84 (1987). This framework is one of reasonableness and is less restrictive than the standard ordinarily applied to the alleged infringements of fundamental constitutional rights. *Ford,* 352 F.3d at 588.

In *O'Lone,* the Supreme Court held that a regulation that burdens a protected right withstands a constitutional challenge if that regulation is reasonably related to legitimate penological interests. 482 U.S. at 349 (quoting *Turner,* 482 U.S. at 89). An individualized decision to deny an inmate the ability to engage in a religious exercise is analyzed under the same standard. *Salahuddin v. Goord,* 467 F.3d 263, 274 n. 4 (2d Cir.2006) (citations omitted). In *Farid v. Smith,* 850 F.2d 917, 926 (2d Cir.1988), the Second Circuit held that to assess a free exercise claim, the court must determine "(1) whether the practice asserted is religious in the person's scheme of beliefs and whether the belief is sincerely held; (2) whether the challenged practice of prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials furthers some legitimate penological interest."

The Second Circuit has recently examined the standard for analyzing a First Amendment religion claim. *Holland v. Goord,* No. 13–2694, 2014 WL 3360615, at *47 (2d Cir. July 10, 2014). In *Holland,* the court discussed the degree of burden required for a First Amendment claim. *Id.* The court noted that it has not been decided in this Circuit whether, to state a claim under the First Amendment, the inmate must show at the onset that the disputed conduct "substantially burdens his sincerely held religious beliefs ." *Id.* (citing *Salahuddin, supra* at 274–75; *Ford, supra* at 592 (where the court assumed without deciding that the substantial burden test applies)). The court in *Holland* did not decide the issue, rather the court assumed the continued validity of the substantial burden test and analyzed the case accordingly. [18] *Id.* This court will follow the analysis in *Holland* and proceed to consider the First Amendment analysis, assuming that the substantial burden test is still valid. [19]

[18]    This finding was supported by the fact that the court's "precedent squarely dictat[ed] that Holland's religious exercise was unconstitutionally burdened," a point that the defendants in that case did not challenge on appeal. *Holland,* 2014 WL 3360615 at *4.

[19]    The definition of "substantial burden" is discussed above.

Once a substantial burden is found, the court must examine whether the challenged action has a legitimate, rational connection to the governmental objective; whether prisoners have alternative means of exercising the burdened right; the impact on guards, inmates, and prison resources of accommodating that right; and the existence of alternative means of facilitating the exercise of that right that have only a *de minimis* adverse effect on the valid penological interests. *See King v. Bennett,* No. 02–CV–349, 2007 WL 1017102, at *4 (W.D.N.Y. March 30, 2007) (citing *Salahuddin,* 467 F.3d at 274). Finally, once prison officials state a legitimate penological interest to justify their actions, the burden shifts to plaintiffs to show that the defendants' concerns are "irrational." *Ford,* 352 F.3d at 595.

### C. Analysis

**\*24**  Defendants did not move for summary judgment as to plaintiff's First Amendment or RLUIPA claims. However, the court recommends dismissing plaintiff's religious liberty causes of action for failure to state a claim pursuant to 28 U.S.C. § 1915(e) (2)(B) (ii). This section provides that the court may dismiss an *in forma pauperis* action *sua sponte* at any time if the court determines that, *inter alia,* the action fails to state a claim on which relief can be granted.

### 1. RLUIPA

As noted above, plaintiff was transferred from both Shawangunk and Eastern and has not been in DOCCS custody since August 2014. Hence, injunctive relief against DOCCS is no longer possible and any claim for injunctive relief should be dismissed as moot. [20]  In addition, since only injunctive relief is available under RLUIPA, money damages are not available against the defendants, either in their individual or official capacities. *Loccenitt v. City of New York,* No. 12 Civ. 948, 2013 WL 1091313, at *6 (S.D.N.Y. March 15, 2013) (citing *Pugh v. Goord,* 571 F.Supp.2d 477, 506–507 (S.D.N.Y.2008) (citing cases)). Thus, the court recommends *sua sponte* dismissal of plaintiff's RLUIPA claim. [21]

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 225 of 353
Jones v. Smith, Not Reported in F.Supp.3d (2015)
2015 WL 5750136

20    In *Blalock v. Jacobsen,* No. 13–CV–8332, 2014 WL 5324326, at *3 & n. 2 (S.D.N.Y. Oct. 20, 2014), the court discussed the possibility that RLUIPA claims for injunctive relief might not be moot upon an inmate's transfer if the "Commissioner's" policy continued to burden and adversely affect the plaintiff's rights, under the theory that the violation is capable of repetition, yet evades review. *Id.* (citing *Pugh v. Goord,* 571 F.Supp.2d 477, 507 (S.D.N.Y.2008)). Here, plaintiff does not allege that the RLUIPA violations are ongoing since his transfer.

21    Even if injunctive relief were still available on the RLUIPA claim, dismissal would still be warranted as plaintiff fails to state a claim on which relief may be granted. Recent decisions in this district, discussed *infra,* rejected RLUIPA claims identical to plaintiff's, where otherwise valid religious menus do not meet a prisoner's dietary wants or medical needs. *See Williams v. Fisher,* No. 9:11–CV–379 (NAM/TWD), 2015 WL 1137644 (N.D.N.Y. Mar. 10, 2015) (finding compelling state interest in limiting menu options and not providing vegetarian Kosher meals); *Hamilton v. Smith,* No. 9:06–CV–805 (GTS/DRH), 2009 WL 3199520 (N.D.N.Y. Sept. 30, 2009) (finding that financial burden of creating low sodium Kosher menu was a compelling state interest warranting summary judgment in favor of DOCCs on RLUIPA claim); *Smith v. Perlman,* No. 09:11 CV–20 (MAD/CFH), 2014 WL 7333229 (N.D.N.Y. Dec. 18, 2014) (granting DOCCS summary judgment on Muslim inmate's RLUIPA claim seeking therapeutic diet which included halal meat); *see also Prins v. Coughlin,* 76 F.3d 504, 507 (2d Cir.1996) (finding that inmate had no claim under the Religious Freedom Restoration Act arising from inability to obtain hot Kosher meals after prison transfer).

## 2. First Amendment

While plaintiff may no longer obtain injunctive relief (either under RLUIPA or the First Amendment), based upon his transfers from Shawangunk and Eastern, further analysis is required with respect to a First Amendment claim for monetary damages against defendants in their individual capacities.

The necessary analysis for this case is identical to that performed in *Williams v. Fisher,* 2015 WL 1137644 and *Hamilton v. Smith,* 2009 WL 3199520. First, the record evidence establishes that named defendants Rapp and Rabbi Horowitz do not have any personal involvement in creating or altering the Kosher menu served at DOCCS facilities. (Pl.'s Resp. to Def.'s Stmt. of Mat. Fact p. 10, ¶¶ 31, 33; Dkt. No. 131–3, Pl.'s Ex. V, W, X, and Z). The action against Rapp and Horowitz could be dismissed on this basis alone. *Williams,* 2015 WL 1137644, at *22–3.

However, even assuming that any defendant had personal involvement, plaintiff's First Amendment claim is futile, given the clear nexus between limiting the variety of menus and the economic and efficiency concerns of the state-wide prison system. *Williams,* 2015 WL 1137644, at *28–9; *Hamilton,* 2015 WL 3199520, at *56. Plaintiff does not allege that he cannot receive a Kosher meal, only that he cannot receive a Kosher meal that meets his preferences. Even if the plaintiff were given every benefit of the doubt by the court in considering the *Turner* and *O'Lone* factors, the legitimate penological concerns of maintaining order and meeting budgetary demands justifies the burden, if any, imposed on plaintiff's First Amendment rights. *Williams,* 2015 WL 1137644, at *24–29; *Hamilton,* 2015 WL 3199520, at *6. To hold otherwise, and allow plaintiff an individualized meal option outside the established DOCCS-wide menus could have a "significant ripple effect" on fellow inmates, and "open the door to the creation of various specialized menus for other inmates with different therapeutic and religious needs." *Hamilton,* 2015 WL 3199520, at *6. Therefore, the court recommends *sua sponte* dismissal of plaintiff's Second Cause of Action.

## VII. Motion to Amend

### A. Applicable Law

**\*25** Pursuant to Fed.R.Civ.P. 15(a), a court should grant leave to amend a pleading "freely ... when justice so requires." Fed.R.Civ.P. 15(a)(2); *Foman v. Davis,* 371 U.S. 178, 182 (1962). The Second Circuit has stated that, "[a] *pro se* plaintiff who brings a civil rights action should be 'fairly freely' afforded an opportunity to amend his complaint, even if he makes the request after the court has entered judgment dismissing his original complaint." *Satchell v. Dilworth,* 745 F.2d 781, 785 (2d Cir.1984) (citing *Bradley v. Coughlin,* 671 F.2d 686, 690 (2d Cir.1982)). The Second Circuit has articulated the similarly liberal standards

2015 WL 5750136

by which a court may allow a party to supplement a pleading with allegations regarding transactions, occurrences, or events that have transpired since the date of the original pleading:

> Fed.R.Civ.P. 15(d) permits a party to move to serve a supplemental pleading and the district court may grant such a motion, in the exercise of its discretion, upon reasonable notice and upon such terms as may be just.... [L]eave to file a supplemental pleading should be freely permitted when the supplemental facts connect it to the original pleading.

*Quaratino v. Tiffany & Co.,* 71 F.3d 58, 66 (2d Cir.1995) (citations omitted).

Although Rule 15 generally governs the amendment or supplementation of complaints, where the proposed amendment seeks to add new parties, Fed.R.Civ.P. 21 governs. *Rush v. Artuz,* No. 00 Civ. 3436, 2001 WL 1313465, at *5 (S.D.N.Y. Oct. 26, 2001). Rule 21 states that "the court may at any time, on just terms, add or drop a party." Fed.R.Civ.P. 21. "In deciding whether to allow joinder, the Court is guided by 'the same standard of liberality afforded to motions to amend pleadings under Rule 15.' " *Rush v. Artuz,* 2001 WL 1313465, at *5 (citations omitted). *Accord, Javier H. v. Garcia Botello,* 239 F.R.D. 342, 346 (W.D.N.Y.2006).

A motion to amend, supplement, or join parties should not be denied unless there has been undue delay, bad faith, undue prejudice to the opposing party, or the amendment is futile. *Milanese v. Rust Oleum Corp.,* 244 F.3d 104, 110 (2d Cir.2001). A motion to amend may also be denied when the movant knew or should have known of the facts upon which the amendment is based when the original pleading was filed. *Berman v. Parco,* 986 F.Supp. 195, 217 (S.D.N.Y.1997). This is particularly true when the movant offers no excuse for the delay.

Generally, an amendment is futile if the pleading fails to state a claim or would otherwise be subject to dismissal. *U.M.G. Recordings, Inc. v. Lindor,* No. CV–05–1095, 2006 WL 3335048, at*2 (E.D.N.Y. Nov. 9, 2006) (citing *S.S. Silberblatt, Inc. v. East Harlem Pilot Block,* 608 F.2d 28, 42 (2d Cir.1979)). "In addressing the proposed futility of an amendment, the proper inquiry is comparable to that required upon a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6)." *Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc.,* 404 F.3d 566, 604 (2d Cir.2005) (citation omitted). The court must accept the asserted facts as true and construe them in the light most favorable to the amending party. *Stetz v. Reeher Enterprises, Inc.,* 70 F.Supp.2d 119, 121 (N.D.N.Y.1999). When proposed amendments raise colorable claims, especially where they are based upon disputed facts, they should be allowed, and a comprehensive legal analysis deferred to subsequent motions to dismiss or for summary judgment. *See, e.g., Alexander Interactive, Inc. v. Adorama, Inc.,* No. 12 Civ. 6608, 2014 WL 113728, at *4 (S.D.N.Y. Jan. 13, 2014); *Gallagher v. Town of Fairfield,* 3:10CV1270, 2012 WL 370070, at *3 (D.Conn. Feb. 2, 2012); *S.S. Silberblatt,* 608 F.2d at 42–43; *WIXT Television, Inc. v. Meredith Corp.,* 506 F.Supp. 1003, 1010 (N.D.N.Y.1980). In the limited circumstances when a summary judgment motion is opposed with a cross-motion to amend a pleading, the futility of the proposed amendment is judged by whether it would survive a motion for summary judgment. *Milanese v. Rust Oleum Corp.,* 244 F.3d at 110.

### B. Analysis

**\*26** In his opposition to the motion for summary judgment, plaintiff requests that, if defendants' motion is not denied in its entirety, that he be allowed to amend his complaint to identify "Sgt. Todd" as the "Jane Doe" who ordered plaintiff to SHU and confiscated his knee braces. Plaintiff also seeks to add Robert Schattinger and Elizabeth Culkin, alleging that these individuals "are in charge of establishing the dietary menu" for DOCCS. (Pl.'s Mem. of Law at 16–7; Pl.'s Resp. to Def.'s Stmt. of Mat. Fact at 14, ¶ 54). Defense counsel did not file any response to plaintiff to address the motion to amend or offer any declarations from the new prospective defendants. Hence, the court must rely primarily on plaintiff's allegations in addressing whether his amended claims are futile, based on the standards of Fed.R.Civ.P. 12(b)(6).

Plaintiff fails to elaborate how Mr. Schattinger or Ms. Culkin are personally involved in this matter, beyond the bare allegation that these individuals establish the DOCCS menu. However, even assuming such personal involvement, the court concludes that plaintiff's claims against Mr. Schattinger and Ms. Culkin would be futile, for the reasons set forth in the *Williams* and *Hamilton* analysis in Section VI(C) of this report and recommendation. Similarly, the proposed claims against "Sgt. Todd[22]" would be futile for the same reasons set forth in Section V(A)(4) of this report and recommendation regarding defendants Schoonmaker and Gusman. Applying the summary judgment standard as required, the court thus orders that plaintiff's motion to amend be denied.

[22]    Plaintiff offers no facts in support of his conclusion that Sgt. Todd confiscated plaintiff's knee braces and ordered him to SHU. In their motion papers, defendants identify "Lt. Mark" as the individual who ordered plaintiff to SHU. Both Sgt. Todd and Lt. Mark are listed in the Eastern SHU log book, submitted as plaintiff's Exhibit C.

**WHEREFORE,** based on the findings above, it is

**RECOMMENDED,** that defendants' motion for partial summary judgment (Dkt. No. 124, 125) be **GRANTED** on the grounds raised therein, and the following of plaintiff's claims dismissed:

   1. All claims for injunctive relief, to be dismissed as moot;

   2. All claims against defendants in their official capacities, to be dismissed with prejudice;

   3. All claims against defendant Fischer to be dismissed, due to lack of evidence of any personal involvement;

   4. Eighth Amendment claims, against defendants Smith, Griffin, Khramova, Schoonmaker, Gusman, and Brown only;

   5. Retaliation claim against defendant Maly, but only to the extent that it was predicated on an allegation of verbal harassment, to be dismissed with prejudice;

   6. Due process and right to privacy claims against defendant Pingotti;[23] and it is further

[23]    As noted above (at p. 2 and notes 12 and 14), the defendants' summary judgment motion did not address the following individual capacity claims for monetary damages, which survive: (1) claims against Dr. Maryann Genovese, Catherine Wells, and Pedro Diaz for medical indifference; (2) a claim against Dr. Genovese in her individual capacity for invasion of privacy; and (3) retaliation claims against Earnell Boddison, Joseph Smith, John Maly (involving conduct other than verbal harassment), Lt. Gardner, Lt. Palen, Sgt. Kimbler, and C.O. Brooks.

**RECOMMENDED** that all RLUIPA and First Amendment Religion claims (against defendants John Rapp and Rabbi A. Horowitz), be **DISMISSED** *sua sponte,* and with prejudice;[24] and it is further

[24]    If this court's recommendations are approved, defendants Fischer, Smith, Griffin, Khramova, Schoonmaker, Gusman, Brown, Pingotti, Rapp, and Horowitz may be terminated from this action, based on the dismissal of all claims against them.

**ORDERED,** that plaintiff's motion to amend (Dkt. No. 131) is **DENIED.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec. of Health & Human Servs.,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72.

2015 WL 5750136

**\*27**  Filed May 20, 2015.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 5750136

---

End of Document                                  © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2008 WL 857528

Only the Westlaw citation is currently available.

United States District Court,

S.D. New York.

Richard AUSTIN, Plaintiff,

v.

Brian PAPPAS, John Does, Yonkers Police Commissioner Charles C. Coles, Westchester County, Defendants.

No. 04-CV-7263 (KMK)(LMS).

|

March 31, 2008.

**Attorneys and Law Firms**

Mr. Richard Austin, Stormville, NY, pro se.

Rory Carleton McCormick, Esq., Corporation Counsel, City of Yonkers, Yonkers, NY, for Defendants.

*ORDER ADOPTING REPORT & RECOMMENDATION*

KENNETH M. KARAS, District Judge.

**\*1** Richard Austin ("Plaintiff") filed this suit pursuant to 42 U.S .C. § 1983 ("Section 1983") against Yonkers Police Officer Brian Pappas ("Defendant Pappas"), several John Doe Yonkers Police Officers ("John Doe Defendants"), former Yonkers Police Commissioner Charles C. Cola ("Defendant Cola") (whose name is misspelled in Plaintiff's Complaint as Charles C. Coles), and Westchester County (collectively, "Defendants"), alleging violations of Plaintiff's civil rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution, along with various supplemental state law claims. [1] (Compl.¶¶ 17, 19.) Plaintiff alleged that these violations occurred when Defendants failed to protect Plaintiff from Franklyn Kelley, a private individual who physically attacked Plaintiff during the course of Plaintiff's May 16, 2003 arrest. (*Id.* ¶ 10.) Plaintiff alleged that Defendant Pappas and the John Doe Defendants handcuffed him and pinned him to the ground while Franklyn Kelley repeatedly kicked and punched Plaintiff in the face. (*Id.* ("The officers did nothing to protect the plaintiff from this vicious assault, even though plaintiff was helpless and in their custody [.]").) Defendants moved for summary judgment, and this Motion was referred by Judge McMahon to Chief Magistrate Judge Lisa M. Smith for review pursuant to 28 U.S.C. § 636(b)(1). On August 2, 2007, Magistrate Judge Smith issued a thorough Report and Recommendation ("R & R"), concluding that this Court should grant Defendants' Motion for Summary Judgment on the ground that Plaintiff has failed to demonstrate that there exists a genuine issue of material fact as to whether his constitutional rights were violated. Plaintiff was advised of his right to file objections to the R & R, but he did not do so.

[1]   On August 8, 2005, Plaintiff's claim against Westchester County was dismissed by the Honorable Gerald E. Lynch, to whom this case was initially assigned. On February 28, 2006, the case was transferred to White Plains and reassigned to Judge Colleen McMahon. The case was reassigned to the undersigned on August 6, 2007.

A district court reviewing a report and recommendation " 'may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.' " *Donahue v. Global Home Loans & Fin., Inc.,* No. 05-CV-8362, 2007 WL 831816, at \*1 (S.D.N.Y. Mar. 15, 2007) (quoting 28 U.S.C. § 636(b)(1)(C)). Under 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, parties may submit objections to a magistrate judge's report and recommendation.

2008 WL 857528

The objections must be "specific" and "written," and must be made "within 10 days after being served with a copy of the recommended disposition." Fed.R.Civ.P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1).

Where a party does not submit an objection, " 'a district court need only satisfy itself that there is no clear error on the face of the record.' " *Donahue,* 2007 WL 831816, at *1 (quoting *Nelson v. Smith,* 618 F.Supp. 1186, 1189 (S.D.N.Y.1985)). In addition, a party's failure to object waives that party's right to challenge the report and recommendation on appeal. *See Fed. Deposit Ins. Corp. v. Hillcrest Assocs.,* 66 F.3d 566, 569 (2d Cir.1995) ("Our rule is that 'failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision.' " (quoting *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989))).

**\*2** Here, Plaintiff has not filed objections to the R & R. Accordingly, the Court has reviewed the R & R for clear error only. In so doing, the Court adopts the conclusion reached in the R & R that Defendants' Motion for Summary Judgment should be granted, but the Court does so in part on different grounds than those relied on in the R & R.

First, the Court agrees with Magistrate Judge Smith that Defendants' noncompliance with Local Civil Rule 56.2 should be overlooked because any prejudice resulting from noncompliance was cured by the following: (i) Magistrate Judge Smith advised Plaintiff of the nature of summary judgment during a March 23, 2007 conference; and (ii) Magistrate Judge Smith annexed a Rule 56.2 notice to the R & R, a document to which Plaintiff was free to file objections. *See Narumanchi v. Foster,* No. 02-CV-6553, 2006 WL 2844184, at *2 (E.D.N.Y. Sept. 29, 2006) (refusing to deny defendant's motion for summary judgment based on failure of defendant to comply with Local Civil Rule 56.2 because "[a]ny prejudice to *pro se* plaintiffs [was] cured" by court's actions).

As expressed in the R & R, though Plaintiff did not file any opposition to Defendants' Motion for Summary Judgment, Defendants were still required to meet their burden of demonstrating to the Court that "no material issue of fact remains for trial." *See Amaker v. Foley,* 274 F.3d 677, 681 (2d Cir.2001). The Court finds no clear error in Magistrate Judge Smith's determination that Defendants satisfied this burden.

With respect to Defendants Pappas and Cola, the Court finds that Plaintiff has failed to offer any evidence demonstrating that they were personally involved in the alleged violation of Plaintiff's constitutional rights. The " 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Back v. Hastings on Hudson Union Free Sch. Dist.,* 365 F.3d 107, 122 (2d Cir.2004) (quoting *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977)). For purposes of Section 1983 liability, personal involvement can be established by evidence that:

> '(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference ... by failing to act on information indicating that unconstitutional acts were occurring.'

*Id.* at 127 (quoting *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995)); *accord Hayut v. State Univ. of N.Y.,* 352 F.3d 733, 753 (2d Cir.2003); *Schiller v. City of New York,* No. 04-CV-7922, 2008 WL 200021, at *4 (S.D.N.Y. Jan. 23, 2008); *Fair v.. Weiburg,* No. 02-CV-9218, 2006 WL 2801999, at *4 (S.D.N.Y. Sept. 28, 2006). Further, a Section 1983 plaintiff must "allege a tangible connection between the acts of the defendant and the injuries suffered." *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986); *see also Fair,* 2006 WL 2801999, at *4 (citing *Bass* ).

2008 WL 857528

**\*3**  In support of their Motion for Summary Judgment, Defendants submitted evidence that Defendant Pappas did not directly participate in the arrest of Plaintiff, but he instead arrested Plaintiff's accomplice. For example, on April 8, 2004, at a hearing before the Honorable Richard A. Molea of the Westchester County Court, Defendant Pappas testified that he remained with Plaintiff's accomplice while other officers arrested Plaintiff. (Defs.' Affirmation in Supp., Ex. J, 50-51.) Further, in response to interrogatories served on him by Plaintiff, Defendant Pappas stated that he "did not observe what transpired during the course of plaintiff's arrest." (*Id.,* Ex. L.) Finally, Defendants offer a police report indicating that "Pappas was detaining [Plaintiff's accomplice] in the garage area, as additional units arrived and placed [Plaintiff] into custody." (*Id.,* Ex. C.)

Plaintiff has failed to offer any evidence refuting Defendant Pappas' version of events. In other words, Plaintiff has offered no evidence demonstrating that Defendant Pappas was actually one of the officers who arrested him and allegedly pinned him to the ground while Kelley assaulted him. In fact, during his deposition testimony, Plaintiff admitted that he was not sure whether Defendant Pappas was one of the police officers who arrested him, and that the reason Defendant Pappas was named as a defendant in the present suit was because Plaintiff had seen his name on Plaintiff's felony complaint. (*Id.,* Ex. G, 32-35.) As such, the unrefuted evidence before the Court demonstrates that Defendant Pappas was not one of the officers directly involved in Plaintiff's arrest. Plaintiff therefore has failed to satisfy a prerequisite to liability under Section 1983-namely that Defendant Pappas had personal involvement in the alleged violation of Plaintiff's constitutional rights. *See Back,* 365 F.3d at 122. Thus, Plaintiff's claim against Defendant Pappas must be dismissed.

Plaintiff alleged that Defendant Cola, Yonkers Police Commissioner at the time of Plaintiff's 2003 arrest, violated Plaintiff's constitutional rights by "authoriz[ing], tolerat[ing], as institutionalized practices, and ratif[ying] the misconduct [of Defendant Pappas and John Doe Defendants]." (Compl.¶ 14.) More specifically, Plaintiff charges Defendant Cola with failure to properly: (1) discipline subordinate officers; (2) take adequate precautions in hiring subordinate officers; (3) report criminal acts by police personnel to the Westchester County District Attorney; and (4) establish a system for dealing with complaints about police misconduct. (*Id.*) Plaintiff does not assert that Defendant Cola directly participated in the violation of his constitutional rights; instead, Plaintiff urges the Court to find Defendant Cola liable under Section 1983 based on his role as supervisor of Defendant Pappas and the John Doe Defendants.

"It is well settled, however, that the doctrine of respondeat superior standing alone does not suffice to impose liability for damages under section 1983 on a defendant acting in a supervisory capacity." *See Hayut,* 352 F.3d at 753 (citing *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691 (1978)). Instead, it is necessary to establish a supervisory official's personal involvement in the alleged constitutional violation. *See id.; Fair,* 2006 WL 2801999, at \*4.

**\*4**  Plaintiff has failed to provide the Court with any evidence from which a reasonable jury could conclude that Defendant Cola was personally involved in the alleged violation of Plaintiff's constitutional rights. Plaintiff has offered no evidence demonstrating that Defendant Cola was aware of and failed to remedy constitutional violations by subordinate officers, or that he acted in a grossly negligent or deliberately indifferent manner in supervising or training subordinate officers. There is also no evidence in the record to support a theory that Defendant Cola created a policy or custom that fostered and led to the alleged violation of Plaintiff's rights. *See Hayut,* 352 F.3d at 754 (finding as fatal to plaintiff's Section 1983 claim the fact that there existed "no evidence that, after becoming aware of the alleged harassment, any of the [supervisory officials] failed to respond or remedy the situation, that any of these [supervisory officials] created or allowed a policy to continue under which alleged harassment could occur, or that they were grossly negligent in monitoring [the alleged harasser's] conduct"); *Harris v. City of New York,* No. 01-CV-6927, 2003 WL 554745, at \*6 (S.D.N.Y. Feb. 26, 2003) ("[P]laintiff has put forth no evidence pointing to defendant ['s] personal involvement in plaintiff's alleged deprivation of rights .... Plaintiff's conclusory allegations regarding defendant['s] alleged supervisory role, without more, cannot withstand summary judgment."). Further, nothing in the record, even drawing all inferences in Plaintiff's favor, suggests any tangible connection between Defendant Cola's training or supervision of subordinate officers and the alleged violation of Plaintiff's rights. In fact, the record contains no evidence with regard to Defendant Cola whatsoever. Without such evidence, no reasonable jury could conclude that Defendant Cola had personal involvement in the alleged violation of Plaintiff's constitutional rights, which means that Plaintiff has failed to satisfy a prerequisite to Section 1983 liability, and therefore that Defendant Cola is entitled to summary judgment in his favor. *See Davis*

2008 WL 857528

*v. Kelly,* 160 F.3d 917, 921 (2d Cir.1998) ("After an opportunity for discovery, undisputed allegations that [a] supervisor lacked personal involvement will ultimately suffice to dismiss that official from the case.").

In sum, the Court finds that Plaintiff has failed to establish the personal involvement of Defendants Pappas and Cola in the alleged violation of his rights. For reasons set forth more fully in the R & R, the Court also dismisses the Complaint as to the John Doe Defendants because Plaintiff's time limit to amend the Complaint in order to substitute in named defendants has lapsed. Therefore, the Court finds it unnecessary to reach the question of whether Plaintiff has adequately established an underlying violation of his constitutional rights. Finally, having determined that no cognizable federal claims exist, the Court will follow Magistrate Judge Smith's recommendation in declining to exercise jurisdiction over the state law claims.

**\*5** Accordingly, it is hereby:

ORDERED that the Report and Recommendation dated August 2, 2007, is ADOPTED on the grounds set forth in this Order; and it is further

ORDERED that Defendants' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 is GRANTED.

The Clerk of Court is respectfully directed to enter judgment in favor of Defendants, to terminate Defendant's Motion (Dkt. No. 28), and to close this case.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 857528

---

**End of Document**                                     © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 233 of 353

Bradshaw v. Annucci, Not Reported in Fed. Supp. (2023)

2023 WL 4744735

2023 WL 4744735
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Jay BRADSHAW, Plaintiff,

v.

Anthony ANNUCCI, et al., Defendants.

9:23-CV-0602 (MAD/ML)
|
Signed July 24, 2023

**Attorneys and Law Firms**

JAY BRADSHAW, 08-A-3654, Plaintiff, pro se, Great Meadow Correctional Facility, Box 51, Comstock, NY 12821.

**DECISION and ORDER**

MAE A. D'AGOSTINO, United States District Judge

## I. INTRODUCTION

 **\*1**  Pro se plaintiff Jay Bradshaw commenced this action by filing a complaint asserting claims pursuant to 42 U.S.C. § 1983 ("Section 1983"), together with an application to proceed in forma pauperis ("IFP"), and a request for preliminary injunctive relief. Dkt. No. 1 ("Compl."); Dkt. No. 2 ("IFP Application"); Dkt. No. 4 ("Preliminary Injunction Motion"). [1] Plaintiff, who is incarcerated at Great Meadow Correctional Facility, has not paid the filing fee for this action.

[1]    The complaint was also accompanied by an application seeking leave to commence a new civil action in this District as required by the Pre-Filing Order entered by the Honorable Glenn T. Suddaby on March 3, 2022. *See In re: Bradshaw*, No. 9:21-PF-0002 (GTS), Dkt. No. 4. By Decision and Order entered on May 18, 2023, the Honorable Brenda K. Sannes granted plaintiff's application to commence this action. *Id.*, Dkt. No. 10.

## II. IFP STATUS

Where a plaintiff seeks leave to proceed IFP, the Court must determine whether the plaintiff has demonstrated sufficient economic need to proceed without prepaying, in full, the Court's filing fee of four hundred and two dollars ($402.00). [2] The Court must also determine whether the "three strikes" provision of 28 U.S.C. § 1915(g) ("Section 1915(g)") bars the plaintiff from proceeding IFP and without prepayment of the filing fee. [3] More specifically, Section 1915(g) provides as follows:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). If the plaintiff is indigent and not barred by Section 1915(g), the Court must consider the sufficiency of the claims stated in the complaint in accordance with 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A.

Case 9:22-cv-00638-DNH-TWD   Document 58   Filed 02/28/25   Page 234 of 353

**Bradshaw v. Annucci, Not Reported in Fed. Supp. (2023)**

2023 WL 4744735

2   "28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010). "Although an indigent, incarcerated individual need not prepay the filing fee ... at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id.* (citing 28 U.S.C. § 1915(b); *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

3   The manifest intent of Congress in enacting Section 1915(g) was to curb prison inmate abuses and to deter the filing of multiple, frivolous civil rights suits by prison inmates. *Tafari v. Hues*, 473 F.3d 440, 443-44 (2d Cir. 2007). The question of whether a prior dismissal is a "strike" is a matter of statutory interpretation and, as such, is a question for the court to determine as a matter of law. *Tafari*, 473 F.3d at 442-43.

**\*2**   In this case, plaintiff has demonstrated economic need through his IFP Application, and has filed the inmate authorization form required in the Northern District of New York. *See* Dkt. Nos. 2, 3. Thus, the Court must determine whether the "three strikes" rule of Section 1915(g) bars plaintiff from proceeding with this action IFP.

### A. Determination of "Strikes"

Plaintiff is a frequent litigator, having commenced, in addition to this action, at least twenty-five previously filed civil actions in the district courts in the Second Circuit since 2008. *See* PACER Case Locator <https://pcl.uscourts.gov/pcl/pages/search/findParty.jsf> (last visited July 18, 2023). The following is a list of those actions: (1) *Bradshaw v. McQueen*, No. 08-CV-5518 (S.D.N.Y. filed June 18, 2008); (2) *Bradshaw v. Officer Banks*, No. 09-CV-0966 (S.D.N.Y. filed Feb. 4, 2009); (3) *Bradshaw v. Brown*, No. 13-CV-4308 (E.D.N.Y. filed July 31, 2013); (4) *Bradshaw v. The City of New York*, No. 15-CV-2166 (E.D.N.Y. filed Apr. 13, 2015); (5) *Bradshaw v. The City of New York*, No. 15-CV-4638 (S.D.N.Y. filed June 10, 2015); (6) *Bradshaw v. The City of New York*, No. 15-CV-5481 (S.D.N.Y. filed July 10, 2015); (7) *Bradshaw v. The City of New York*, No. 15-CV-7074 (S.D.N.Y. filed Sept. 8, 2015); (8) *Bradshaw v. The City of New York*, No. 15-CV-8252 (S.D.N.Y. filed Oct. 20, 2015); (9) *Bradshaw v. The City of New York*, No. 15-CV-9031 (S.D.N.Y. Nov. 17, 2015); (10) *Bradshaw v. The City of New York*, No. 17-CV-1199 (S.D.N.Y. filed Feb. 16, 2017); (11) *Bradshaw v. The City of New York*, No. 17-CV-1168 (E.D.N.Y. filed Feb. 27, 2017); (12) *Bradshaw v. The City of New York*, No. 18-CV-8215 (S.D.N.Y. filed Sept. 7, 2018) ("*Bradshaw v. The City of New York IX*"); (13) *Bradshaw v. Locke*, No. 19-CV-428 (N.D.N.Y. filed April 10, 2019) ("*Bradshaw v. Locke*"); (14) *Bradshaw v. Burns*, No. 19-CV-931 (N.D.N.Y. filed July 31, 2019) ("*Bradshaw v. Burns*"); (15) *Bradshaw v. Annucci*, No. 20-CV-6083 (W.D.N.Y. filed Feb. 6, 2020); (16) *Bradshaw v. Piccolo*, No. 20-CV-6106 (W.D.N.Y. filed Feb. 18, 2020); (17) *Bradshaw v. Piccolo*, No. 20-CV-6368 (W.D.N.Y. filed June 4, 2020); (18) *Bradshaw v. Annucci*, No. 20-CV-6548 (W.D.N.Y. Sept. 29, 2020); (19) *Bradshaw v. Piccolo*, No. 21-CV-6050 (W.D.N.Y. filed Jan. 19, 2021); (20) *Bradshaw v. Gordon*, No. 21-CV-0645 (N.D.N.Y. filed June 3, 2021) ("*Bradshaw v. Gordon*"); (21) *Bradshaw v. Uhler*, No. 21-CV-0776 (N.D.N.Y. filed July 8, 2021) ("*Bradshaw v. Uhler*"); and (22) *Bradshaw v. Marshal*, No. 21-CV-0826 (N.D.N.Y. filed July 21, 2021) ("*Bradshaw v. Marshal*"); (23) *Bradshaw v. Annucci*, No. 21-CV-0901 (N.D.N.Y. filed Aug. 11, 2021) ("*Bradshaw v. Annucci*"); (24) *Bradshaw v. Brand*, No. 21-CV-0942 (N.D.N.Y. filed Aug. 20, 2021) ("*Bradshaw v. Brand*"); and (25) *Bradshaw v. Bishop*, No. 22-CV-0094 (GTS/ML) (N.D.N.Y. filed Feb. 2, 2022) ("*Bradshaw v. Bishop*").[4]

4   *Bradshaw v. Locke, Bradshaw v. Marshall,* and *Bradshaw v. Annucci* are all currently pending in this District. On December 3, 2021, judgment was entered in *Bradshaw v. Brand* dismissing the action without prejudice based on plaintiff's failure to comply with the filing fee requirement. *Id.*, Dkt. No. 6. On February 18, 2022, plaintiff's IFP status was revoked in *Bradshaw v. Gordon* and *Bradshaw v. Uhler*, and those actions were later dismissed without prejudice based on plaintiff's failure to comply with the filing fee requirement. *See Bradshaw v. Gordon*, Dkt. Nos. 67, 75; *Bradshaw v. Uhler*, Dkt. Nos. 72, 81. On April 28, 2023, judgment was entered in *Bradshaw v. Bishop* dismissing the action without prejudice based on plaintiff's failure to comply with the filing fee requirement. *Id.*, Dkt. No. 27.

**\*3**   Upon review of these actions, and consistent with the determinations reached by the Honorable Brenda K. Sannes in *Bradshaw v. Locke* and *Bradshaw v. Burns*, by the Honorable Glenn T. Suddaby in *Bradshaw v. Gordon* and *Bradshaw v. Uhler*,

Bradshaw v. Annucci, Not Reported in Fed. Supp. (2023)

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 235 of 353

2023 WL 4744735

and by this Court in *Bradshaw v. Marshal*, this Court once again finds that, as of the date that plaintiff commenced this action, he had acquired at least four "strikes." [5]  As a result, plaintiff's IFP Application must be denied unless it appears that the "imminent danger" exception to the "three strikes" rule set forth in Section 1915(g) is applicable to this action.

5     The actions in which plaintiff acquired strikes are as follows: (1) *Bradshaw v. McQueen*, No. 08-CV-5518, Dkt. No. 32 (S.D.N.Y. Feb. 11, 2010) (dismissing complaint for failure to state a claim upon which relief may be granted); (2) *Bradshaw v. Brown*, No. 13-CV-4308, Dkt. No. 52 (E.D.N.Y. May 18, 2017) (Mandate dismissing appeal of dismissal order on grounds that it lacked "an arguable basis either in law or in fact"); (3) *Bradshaw v. The City of New York*, No. 15-CV-2166, Dkt. No. 58 (E.D.N.Y. Aug. 22, 2017) (dismissing complaint for failure to state a claim upon which relief may be granted); (4) *Bradshaw v. The City of New York*, No. 15-CV-2166, Dkt. No. 62 (E.D.N.Y. Nov. 16, 2018) (Mandate dismissing appeal on grounds that it lacked "an arguable basis either in law or in fact"). In *Bradshaw v. Locke*, Judge Sannes specifically discussed each of these four "strikes" in her initial Decision and Order entered on May 9, 2019. *See id.*, Dkt. No. 8.

### B. Applicability of the "Imminent Danger" Exception

The "imminent danger" exception protects a prison inmate exposed to potential serious physical injury from the consequences of his earlier mistakes in filing frivolous litigation. Generally speaking, the allegations relevant to this inquiry "are those in which [plaintiff] describes physical injury, threats of violence, and deprivation of medical treatment." *Chavis v. Chappius*, 618 F.3d 162, 165 (2d Cir. 2010). The Second Circuit has described the nature of the Court's inquiry regarding imminent danger as follows: "although the feared physical injury must be serious, we should not make an overly detailed inquiry into whether the allegations qualify for the exception, because § 1915(g) concerns only a threshold procedural question, while [s]eparate PLRA provisions are directed at screening out meritless suits early on." *Id.* at 169-70 (*quoting Andrews v. Cervantes*, 493 F.3d 1047, 1055 (9th Cir. 2007)) (internal quotation marks omitted).

"[F]or a prisoner to qualify for the imminent danger exception, the danger must be present when he files his complaint – in other words, a three-strikes litigant is not excepted from the filing fee if he alleges a danger that has dissipated by the time a complaint is filed." *Pettus v. Morgenthau*, 554 F.3d 293, 296 (2d Cir. 2009); *see also Polanco v. Hopkins*, 510 F.3d 152 (2d Cir. 2007); *Akassy v. Hardy*, 887 F.3d 91, 96 (2d Cir. 2018). However, "allegations of past violence can satisfy the imminent danger exception when, for example, the past harms are part of an ongoing pattern of acts." *Carter v. New York State*, No. 20-CV-5955, 2020 WL 4700902, at *1 (S.D.N.Y. Aug. 12, 2020) (citing *Chavis*, 618 F.3d at 170 (holding that "[a]n allegation of a recent brutal beating, combined with three separate threatening incidents, some of which involved officers who purportedly participated in that beating, is clearly the sort of ongoing pattern of acts that satisfies the imminent danger exception.")).

**\*4**  In addition, "§ 1915(g) allows a three-strikes litigant to proceed [IFP] only when there exists an adequate nexus between the claims he seeks to pursue and the imminent danger he alleges." *Pettus*, 554 F.3d at 296. In deciding whether such a nexus exists, the Second Circuit has instructed the courts to consider "(1) whether the imminent danger of serious physical injury that a three-strikes litigant alleges is fairly traceable to unlawful conduct asserted in the complaint, and (2) whether a favorable judicial outcome would redress that injury." *Id.* at 298-99.

In this case, the complaint alleges that at the time of filing, plaintiff had been continuously confined in the Residential Rehabilitation Unit ("RRU") for one year, where he was scheduled to remain housed for at least an additional year. Compl., ¶¶ 221, 233, 248, 259-260, 303. The complaint further alleges that plaintiff is confined in his cell for all but two hours each day, and had not received, throughout the year that he was confined in the RRU, an individual rehabilitation plan or private mental health therapy, despite a history of self-harm and ongoing anxiety and depression associated with his confinement status. *Id.*, ¶¶ 307-313, 332-340. The complaint also identifies several incidents of plaintiff being assaulted by other inmates, alleges that he is likely to be harmed in the future if he continues to be placed in a double-bunk cell, and further alleges that he was informed three days before the complaint was filed that he would be placed in a double-bunk cell "as soon as possible." *Id.*, ¶¶ 96-179.

2023 WL 4744735

At this stage of the proceeding, the Court finds that the allegations in the complaint plausibly suggest that plaintiff was "under imminent danger of serious physical injury" when he signed his complaint on April 17, 2023. *See, e.g., Lindsey v. Hoem*, 799 Fed. App'x 410, 412 (7th Cir. 2020) ("Lindsey's first complaint alleges that prison staff have placed Lindsey in danger of imminent physical harm by failing to treat his PTSD. Suicidal ideation and a risk of self-harm, particularly for a mentally ill prisoner like Lindsey in prolonged segregation, satisfy the statutory imminent-danger exception that the court adopted in its sanction order.") (citing, *inter alia, Sanders v. Melvin*, 873 F.3d 957, 960 (7th Cir. 2017)); *Abreu v. Lira*, No. 12-CV-1385 (NAM/DEP), Dkt. No. 5 (N.D.N.Y. Feb. 28, 2013) (granting "three strikes" plaintiff leave to proceed in forma pauperis, finding that plaintiff's allegations that he was "denied adequate medical care for his serious medical and mental health needs at Upstate Correctional Facility" were sufficient to plausibly suggest that he was "under imminent danger of serious physical injury" when the action was filed). Thus, plaintiff is granted leave to proceed IFP in this action.

The Court notes that this is a preliminary finding which defendants are entitled to challenge or refute in future filings. Thus, plaintiff's IFP status will be revoked if, as the case progresses, it is determined that he did not face "imminent danger" when he commenced this action or is otherwise not entitled to proceed IFP.

## III. INITIAL REVIEW OF THE COMPLAINT

### A. Governing Legal Standard

Having found that plaintiff meets the financial criteria for commencing this action IFP, and because he seeks relief from officers and employees of governmental entities, the Court must now consider the sufficiency of the allegations set forth in his complaint in light of 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A.

Section 1915(e) directs that, when a plaintiff seeks to proceed IFP, "(2) ... the court shall dismiss the case at any time if the court determines that – ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e). Similarly, Section 1915A directs that a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; *see also Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (stating that Sections 1915(e) and 1915A are available to evaluate prisoner pro se complaints).

**\*5** Additionally, when reviewing a complaint, a court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") provides that a pleading which sets forth a claim for relief shall contain, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Hudson v. Artuz*, No. 95-CV-4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, No. 95-CV-0063 (TJM), 162 F.R.D. 15, 16 (N.D.N.Y. June 23, 1995) (other citations omitted)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Bradshaw v. Annucci, Not Reported in Fed. Supp. (2023)

2023 WL 4744735

Thus, although the court has the duty to show liberality toward pro se litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and should exercise "extreme caution ... in ordering *sua sponte* dismissal of a *pro se* complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond," *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted), the court also has a responsibility to determine whether plaintiff may properly proceed with this action.

## B. Summary of the Complaint

Plaintiff asserts allegations of wrongdoing that occurred while he was incarcerated at Upstate Correctional Facility ("Upstate C.F."), in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS").

The forty-five (45) page handwritten complaint, which is generally organized by claim, alleges that on multiple occasions between June, 2021 and April, 2023, corrections officials subjected plaintiff to unnecessary force, failed to protect him from assaults by other inmates, issued him false misbehavior reports that resulted in excessive restrictive confinement, deprived him of constitutionally adequate conditions-of-confinement, denied him access to mental health treatment, interfered with his mail, subjected him to retaliatory cell searches, and deprived him of personal property. *See generally*, Compl. The following facts are set forth as alleged by plaintiff in his complaint.

### 1. Use-of-Force Incidents Involving Corrections Officials

The complaint identifies the following use-of-force incidents involving corrections officials: (1) defendant Corrections Officer Osborn "maliciously slamm[ing] plaintiff's hand in the cell hatch on June 18, 2021[,]" Compl., ¶ 16 (hereinafter, "the First Assault"); (2) defendant Corrections Sergeant John Doe #1 forcibly pressing plaintiff into a wall while handcuffed, despite plaintiff's complaints of pain, on June 24, 2021, Compl., ¶ 17 (hereinafter, "the Second Assault"); (3) defendant Corrections Officer Phillips "slamm[ing]" plaintiff to the floor of his cell and placing him in a "choke hold" while defendant Corrections Officer Tyler "searched plaintiff's anal cavity for contraband" on July 1, 2021, Compl., ¶¶ 19-22 (hereinafter, "the Third Assault"); (4) defendant Osborn "intentionally and maliciously slamm[ing] plaintiff's hand with the cell door hatch" on September 27, 2021, Compl., ¶ 31 (hereinafter, "the Fourth Assault"); (5) defendant Corrections Officer Menard "intentionally and maliciously slamm[ing] plaintiff's hand with the cell door hatch" on December 5, 2021, Compl., ¶ 37 (hereinafter, "the Fifth Assault"); (6) defendant Corrections Officer Bailey "grab[bing]" plaintiff by the back of his coat and twisting his waist shackles while exiting a bus on December 20, 2021, and Bailey and defendant Corrections Officer Trombley thereafter pushing plaintiff and squeezing his handcuffs during the escort back to his cell, in the presence of defendant Corrections Sergeant Cymbrak, Compl., ¶¶ 40-42 (hereinafter, "the Sixth Assault"); (7) defendant Corrections Officers Mitchell and Chase punching plaintiff in his cell and defendant Corrections Sergeant Marshall spraying plaintiff in the eyes with a foreign substance on January 30, 2022, while defendant Corrections Lieutenant Gettman, Corrections Officer Morrison, and Corrections Sergeant John Doe #2 stood by, Compl., ¶¶ 56-60 (hereinafter, "the Seventh Assault"); (8) defendant Corrections Officer John Doe #3 tightening plaintiff's handcuffs and slamming him into a wall, and defendant Osborn pushing plaintiff into a wall during an escort on April 30, 2022, Compl., ¶¶ 71-73 (hereinafter, "the Eighth Assault"); (9) defendant Osborn threatening plaintiff with harm, defendants Gettman, Corrections Sergeant Plonka, and Corrections Captain Gravlin disregarding the reported threat, defendants Osborn and Corrections Officer Robare thereafter macing and restraining plaintiff in his cell, and defendants Osborn and Corrections Officer Carter assaulting plaintiff in a different cell, in the presence of defendants Plonka and Corrections Officer John Doe #4, on December 12, 2022, Compl., ¶¶ 76-84 (hereinafter, "the Ninth Assault").

**\*6** The complaint also alleges that (1) defendant Osborn initiated the First Assault in retaliation for plaintiff filing a grievance, Compl., ¶ 16, (2) defendant Corrections Officer Hooper, defendant Corrections Sergeant McGee, and defendant Phillips each authored false reports regarding the Third Assault in an effort to "conceal" the wrongdoing, Compl., ¶¶ 23, (3) defendant Menard initiated the Fifth Assault in retaliation for plaintiff filing a grievance, Compl., ¶ 37, (4) defendant Trombley participated in the Sixth Assault in retaliation for plaintiff filing a lawsuit against him, Compl., ¶ 43, (5) defendants Bailey and Trombley

2023 WL 4744735

engaged in retaliatory acts of intimidation against plaintiff following the Sixth Assault, Compl., ¶¶ 46-50, (6) defendant Marshall directed "retaliatory search[es]" of plaintiff's cell on January 6 and January 30, 2022, prior to the Seventh Assault, Compl., ¶¶ 53, 56, (7) defendant Chase engaged in acts of intimidation against plaintiff following the Seventh Assault, Compl., ¶¶ 62-69, (8) defendants Robare, Osborn, Plonka, Gravlin, and Gettman "conspired to conceal" the Ninth Assault "by falsely reporting the incident[,]" Compl., ¶ 81, and (9) defendants Upstate Correctional Facility Superintendent Uhler, Deputy Superintendent of Security Bishop, DOCCS Special Investigators Nichols and Holmes, and DOCCS Commissioner Annucci failed to protect plaintiff from assaults that occurred after July 1, 2021, by denying his grievances and failing to take "remedial action" against the involved officials. Compl., ¶¶ 23-26, 34-35, 38-39, 44-46, 51-52, 70-71, 74-75.

### 2. Assaults By Other Inmates

#### a. First Inmate Assault

On April 22, 2022, plaintiff returned to his cell from a program to find "several officers standing outside" and "Inmate J ... locked in the recreation cell." Compl., ¶ 96. "Inmate J immediately told plaintiff to tell the officers that plaintiff cannot stay in the cell, and threatened to beat-up plaintiff while calling [him] a 'rapo.' " *Id.*, ¶ 97. Defendant Corrections Sergeant McQuinn and defendant Corrections Officer Waite "disregarded Inmate J's repeated threats against plaintiff[,]" with McQuinn stating that "Bishop approved the double-bunk." *Id.*, ¶ 98. Defendants McQuinn and Waite then "exited the gallery before directing the recreation cell door to be open[ed] to allow Inmate J to enter the cell[.]" *Id.*, ¶ 99.

Upon entering the cell, Inmate J "immediately attacked plaintiff" and did so for a second time "when the officer arrived to serve lunch." Compl., ¶ 99. Plaintiff submitted a grievance regarding the incident, which was "forwarded" to defendants Uhler and Bishop for resolution. *Id.*, ¶ 100. The grievance was denied and plaintiff was thereafter placed in another double-bunk cell and "assaulted by other prisoners." *Id.*

#### b. Second Inmate Assault

On April 25, 2022, defendants Bishop and Corrections Sergeant Fletcher "recommended and directed" corrections officers to remove plaintiff from his cell "under the guise of a cell search" and place him in a cell with Inmate Tullis, "a known ... gang member and undercover homosexual" with "a history of violence against other prisoners in double-bunk cells." Compl., ¶ 102. Each day between April 26 and April 29, 2022, Inmate Tullis threatened to assault plaintiff and forced him to engage in sexual activity. *Id.*, ¶¶ 103-106. On April 29, 2022, defendants Osborn and Corrections Lieutenant Rowe "stood before the door" while plaintiff was sexually assaulted, and thereafter, defendant Osborn told plaintiff that the behavior did not "look good." *Id.*, ¶ 106.

On April 30 and May 1, 2022, Inmate Tullis again forced plaintiff to engage in sexual activity. Compl., ¶¶ 107-108. On May 2, 2022, plaintiff's grievance regarding the sexual assaults was "received by the Grievance Supervisors[,] who notified defendant [Corrections Captain] Veneske." Compl., ¶ 108. In response, defendant Veneske "directed" defendant Chase and Corrections Officer Welch (not a party) "to attack plaintiff at about 10:15 a.m." *Id.*

At 5:00 p.m., Inmate Tullis again forced plaintiff to engage in sexual activity. Compl., ¶ 109. One hour later, plaintiff "called a Prison Rape Crisis Hotline and reported the sexual assault," and defendant Veneske thereafter removed plaintiff from the cell. *Id.*, ¶¶ 110-111. Although plaintiff submitted grievances regarding the sexual assaults, which were reviewed by defendants Bishop and Veneske and "forwarded to" defendants Nichols and Holmes for investigation, he "continued to be placed in a double-bunk cell and assaulted by other prisoners." *Id.*, ¶¶ 111-112.

Bradshaw v. Annucci, Not Reported in Fed. Supp. (2023)

2023 WL 4744735

### c. Third Inmate Assault

**\*7** On May 2, 2022, plaintiff filed a grievance regarding a "retaliatory search" carried out by defendant Corrections Sergeant Keleher on May 1, 2023. Compl., ¶ 113. On May 5, 2022, defendant Keleher directed two searches of plaintiff's cell and then recommended, and received approval from defendants Bishop and Corrections Lieutenant Debyah, for Inmate Samuel to be double-bunked with plaintiff. *Id.*, ¶ 114. Defendants Keleher, Debyah, Gravlin, and Bishop "denied plaintiff's request for protective custody." *Id.*, ¶ 115. Yet these officials "were aware that Inmate Samuel had a history of violence against other prisoners [and] was a Blood gang member," and plaintiff "has a history of being victimized by Bloods and labeled a snitch." *Id.*, ¶ 121.

Inmate Samuel was "forced by defendant Keleher into the cell and assaulted while handcuffed by defendant Osborn." Compl., ¶ 117. Inmate Samuel stated to these officials that he would not stay in the cell overnight and "immediately threatened to fight plaintiff[.]" *Id.* Shortly thereafter, Inmate Samuel "choked plaintiff from behind while sitting at the desk," causing plaintiff to "pass[ ] out[.]" *Id.*, ¶ 118. Inmate Samuel then "hog-tied plaintiff's hands behind his back and his legs, and dragged plaintiff to the recreation cell." *Id.*

Defendants Keleher and Corrections Officer Harmer subsequently entered the cell and "maliciously" stepped on plaintiff's legs and feet while he was handcuffed, in order to untie him. Compl., ¶ 119 (the "Tenth Assault"). Thereafter, defendants Keleher, Harmer, Osborn, and Gravlin "conspired to cover up the incident" by "falsely report[ing]" that "a cell fight" occurred, and omitting from the report any reference to defendants Keleher and Harmer entering the cell to untie plaintiff and stepping on him. *Id.*, ¶ 120. Plaintiff submitted a grievance regarding this incident, which was "forwarded to defendant Uhler for resolution." *Id.*, ¶ 122. Plaintiff also submitted a "complaint" to the Inspector General's Office detailing the incident, which was forwarded to defendants Nichols and Holmes "for investigation and remedial action." *Id.*, ¶ 123. Plaintiff's grievance was denied, and his complaint was dismissed, and he continued to be placed in a double-bunk cell where he was assaulted by other prisoners. *Id.*, ¶¶ 122-123.

On May 13, 2022, "[a]s a means of retaliation for reporting sexual and physical assaults by other prisoners," defendant North "amended the Directive for double-cell housing assignments regarding victim prone inmates" to "permit inmates with a pattern of being victimized by other inmates to be double-bunk[ed] at the Deputy of Security's discretion." *Id.*, ¶ 124.

### d. Fourth Inmate Assault

On June 8, 2022, defendants Gravlin and Rowe recommended plaintiff to be double-bunked with Inmate Johnson, which defendant Bishop approved. Compl., ¶ 125. Once they were in a cell together, Inmate Johnson threatened to attack plaintiff and harassed him about his criminal case and altercation with Inmate Samuel. *Id.*, ¶ 126. On July 17, 2022, Inmate Johnson was transferred out of Upstate Correctional Facility. *Id.*, ¶ 127. Apparently around this time, plaintiff filed a grievance requesting that he not be double-bunked, wherein he referenced the physical and sexual assaults he had experienced. *Id.*

Thereafter, defendant Osborn and Rowe recommended that plaintiff be placed in a double-bunk cell with Inmate X, which defendant Bishop approved, even though Inmate X "appeared to need emergency mental health care and had a history of violence[.]" Compl., ¶ 128. The same day that Inmate X was placed in a cell with plaintiff, he was removed. *Id.*

On August 1, 2022, plaintiff filed a grievance regarding officials placing rival gang members in double-bunk cells together, which "increases the violence among prisoners" at the facility. Compl., ¶ 129. On August 5, 2022, defendants Fletcher, Gravlin, and Bishop assigned plaintiff to be celled with Inmate Y, who "immediately" attacked plaintiff in the cell and was removed. *Id.*, ¶¶ 130-131. Defendants Fletcher, Gravlin, and Bishop "were aware that Inmate Y had a history of violence against prisoners,

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 240 of 353

**Bradshaw v. Annucci, Not Reported in Fed. Supp. (2023)**
2023 WL 4744735

was a Blood who could not remain in a double cell with plaintiff because he has a sex offense, and plaintiff has a history of being victimized by Bloods whom [sic] labeled him a snitch." *Id.*, ¶ 132.

**\*8** Plaintiff submitted a grievance regarding this incident, which was "forwarded to defendant Uhler for resolution." *Id.*, ¶ 133. Plaintiff also submitted a "complaint" to the Inspector General's Office detailing the incident, which was forwarded to defendants Nichols and Holmes "for investigation and remedial action." *Id.*, ¶ 134. Plaintiff's grievance was denied, and his complaint was dismissed, and he continued to be placed in a double bunk cell where he was assaulted by other prisoners. *Id.*, ¶¶ 133-134.

### e. Fifth Inmate Assault

On August 11, 2022, defendant Gravlin recommended that Inmate Jones be placed in a cell with plaintiff, which defendant Bishop approved even though Inmate Jones was a "known Blood" with a "history of violence against prisoners, and [weighed] about 220 pounds[.]" Compl., ¶ 133. Inmate Jones did not assault plaintiff, and was removed from the cell due to a pre-existing injury. *Id.*, ¶ 134. Defendants Gravlin and Bishop denied plaintiff's request for protective custody. *Id.*, ¶ 135.

On August 15, 2022, defendants Fletcher and Gravlin recommended that Inmate Burrell be placed in a cell with plaintiff, which defendant Bishop approved even though Inmate Burrell was a "known Blood" and was "involved in a cell fight immediately before being placed in the cell with plaintiff." Compl., ¶ 136. Inmate Burrell informed plaintiff that Fletcher and Gravlin wanted plaintiff out of the cell, and thereafter "attacked" him twice, including once in the presence of defendant Harrigan. *Id.*, ¶¶ 136-37.

Plaintiff submitted a grievance regarding this incident (and others), which was "forwarded to defendant Uhler for resolution." *Id.*, ¶ 141. Plaintiff also submitted a "complaint" to the Inspector General's Office detailing the incident, which was forwarded to defendants Nichols and Holmes "for investigation and remedial action." *Id.*, ¶ 142. Plaintiff's grievance was denied, and his complaint was dismissed, and he continued to be placed in a double bunk cell where he was assaulted by other prisoners. *Id.*, ¶¶ 141-142.

### f. Sixth Inmate Assault

In November, 2022, defendants Uhler, Bishop, and "Classification and Movement" Officers John Doe #1 and John Doe #2 "conspired to transfer plaintiff back to Upstate [Correctional Facility] and ... confine [him] in [a] double-cell[.]" Compl., ¶ 145. On December 9, 2022, plaintiff was placed in a cell with Inmate Jones, who "punch[ed] plaintiff several times and choke[d] [him]." *Id.*, ¶ 146. Defendant Corrections Officer Orbegozo and defendant Corrections Sergeant John Doe #1 arrived at the scene "while plaintiff was being attacked[,]" but elected to leave plaintiff in the cell. *Id.*, ¶ 147.

On the morning of December 10, 2022, Inmate Jones attacked plaintiff again. Compl., ¶ 148. Plaintiff was thereafter removed from the cell, having suffered injuries to his lower back and spine. *Id.*, ¶¶ 148-149.

### g. Seventh Inmate Assault

On December 12, 2022, defendants Osborn, Plonka, Gettman, and Gravlin "directed plaintiff to exit his cell for a search" and then "moved [him] to a double cell as a means of retaliation and with the approval of defendant Bishop." Compl., ¶ 150. Plaintiff was placed in a cell with Inmate Flenders, "who had a history of violence against other prisoners." *Id.*, ¶ 151.

Inmate Flenders "threatened to attack plaintiff[,]" which was reported to defendants Osborn and Plonka, who ignored the information. Compl., ¶ 152. Thereafter, Inmate Flenders "punched plaintiff several times," which was again reported to

Bradshaw v. Annucci, Not Reported in Fed. Supp. (2023)

2023 WL 4744735

defendants Osborn and Plonka. *Id.*, ¶ 153. After a second assault on plaintiff by this inmate, defendant Osborn arrived at the cell and "repeatedly" sprayed plaintiff with mace. *Id.*, ¶ 154. Defendants Gravlin, Osborn, Carter, and Plonka then removed plaintiff from the cell and relocated him to a double-bunk cell with Inmate Williams, with the approval of defendant Bishop, even though this inmate also "had a history of violence against prisoners" and was "a known Blood gang member[.]" *Id.*, ¶ 155. Inmate Williams "attacked plaintiff" three times, causing him "serious injuries[.]" *Id.*, ¶ 156.

**\*9** Plaintiff submitted a grievance regarding this incident and the Sixth Inmate Assault, which was "forwarded to defendant Uhler for resolution." *Id.*, ¶ 158. Plaintiff also submitted a "complaint" to the Inspector General's Office detailing the incident, which was forwarded to defendants Nichols and Holmes "for investigation and remedial action." *Id.*, ¶ 159. Plaintiff's grievance was denied, and his complaint was dismissed, and he continued to be placed in a double bunk cell where he was assaulted by other prisoners. *Id.*, ¶¶ 158-159.

Defendants Nurse Sturgen and Nurse Lewis also "disregarded plaintiff's medical conditions" and failed to exempt him from further placement in a double-bunk cell. Compl., ¶ 160.

### h. Eighth Inmate Assault

On January 23, 2023, plaintiff was housed in a cell with Inmate Z, who informed the gallery officer (not a party) that he did not want to remain in the cell with plaintiff and intended to "fight" him. Compl., ¶ 162. The officer advised plaintiff that defendant Corrections Sergeant Sharpe would address the situation in the morning and had him remain in the cell. *Id.* At some point, plaintiff submitted letters to defendant Dumas, which indicated that he had been assaulted with a "makeshift weapon" by Inmate Z, who threatened to attack plaintiff again. *Id.*, ¶ 163. Defendant Dumas "disregarded the letters" and "continued [to] pass plaintiff" at his cell. *Id.* Plaintiff also informed defendant Sturgen about the threat during a cell visit, and this official stated that he did not stop by for that issue, and walked away. *Id.*

Plaintiff submitted a grievance regarding this incident, which was "forwarded to defendant Uhler for resolution." *Id.*, ¶ 167. Plaintiff also submitted a "complaint" to the Inspector General's Office detailing the incident, which was forwarded to defendants Nichols and Holmes "for investigation and remedial action." *Id.*, ¶ 168. Plaintiff's grievance was denied, and his complaint was dismissed, and he continued to be placed in a double bunk cell where he was assaulted by other prisoners. *Id.*, ¶¶ 167-168.

Defendant Lewis also "disregarded plaintiff's medical condition[,] which should have precluded [him] from double-bunking[.]" Compl., ¶ 169.

### i. Ninth Inmate Assault

On March 6, 2023, defendants Gravlin, Corrections Officer Hollenbeck, and Corrections Sergeant DeCosse recommended plaintiff's placement in a double-bunk cell with Inmate Davis, which defendant Bishop approved even though Inmate Davis was "over 300 pound[s]" and "a known Blood with a[n] extensive history of violence against other prisoners[.]" Compl., ¶ 171. The next day, plaintiff informed a counselor about his cell placement and fear for his safety. *Id.*, ¶ 172. Five days later, Inmate Davis reached an agreement with defendant Hollenbeck to move him to a larger cell. *Id.*, ¶ 173. Roughly one hour after this agreement was reached, Inmate Davis "angerly [sic] asked [defendant Corrections] Officer Connor Gordon where is Hollenbeck and preceded [sic] to attack plaintiff by grabbing [him] by the sweater and swing[ing] and slamming [him] [in]to the door and ground[,] then cutting [him] twice on the left side of his face." *Id.*, ¶ 174. As a result of defendant Bishop's failure to "do a reassessment" following this incident, plaintiff was relocated to a cell with another gang member who was involved in a cell fight minutes before plaintiff arrived. *Id.*, ¶ 175.

Case 9:22-cv-00638-DNH-TWD   Document 58   Filed 02/28/25   Page 242 of 353

Bradshaw v. Annucci, Not Reported in Fed. Supp. (2023)

2023 WL 4744735

Plaintiff submitted a grievance regarding this incident, which was "forwarded to defendant Uhler for resolution." *Id.*, ¶ 178. Plaintiff also submitted a "complaint" to the Inspector General's Office detailing the incident, which was forwarded to defendants Nichols and Holmes "for investigation and remedial action." *Id.*, ¶ 180. Plaintiff's grievance was denied, and his complaint was dismissed, and he continues to be at risk of placement in a double bunk cell where he was assaulted by other prisoners. *Id.*, ¶¶ 178, 180.

**\*10** Following this incident, defendants DeCosse and Bishop denied plaintiff's request for protective custody. Compl., ¶ 179.

Defendant Lewis also "disregarded plaintiff's medical condition[,] which should have precluded [him] from double-bunking[.]" Compl., ¶ 182.

On April 14, 2023, defendants Gravlin, Bishop, and Corrections Sergeant Jubert "had plaintiff assigned to a cell with [a] prisoner [that] medical did not clear for 'TB' test[,]" and defendant Jubert informed plaintiff that he would be placed in a double-bunk cell "as soon as possible." Compl., ¶ 179.

Defendant DOCCS Commissioner Annucci "enacted or approved the double-celling policy that plaintiff has been subjected to" during his incarceration. Compl., ¶ 185.

### 3. Discipline

The complaint identifies the following incidents where plaintiff was issued a misbehavior report that was allegedly based on false charges and/or resulted in a disciplinary sanction of restrictive confinement.

#### a. First Disciplinary Sentence

On or about November 1, 2021, plaintiff was issued two misbehavior reports charging him with, among other things, two sex offenses based on allegations that he made sexually charged statements to two corrections officials in response to their orders. Compl., ¶¶ 187-189. On November 9, 2021, defendant Commissioner Hearing Officer S. Martin presided over plaintiff's combined disciplinary hearing ("the First Disciplinary Hearing") and found him guilty of all charges except interference in the first report and violent conduct in the second report. *Id.*, ¶ 190. As a result of improperly finding plaintiff guilty of two sex offenses even though plaintiff's conduct did not constitute a sex offense, defendant Martin sentenced plaintiff to 90 days confinement in the special housing unit ("SHU"). *Id.* Plaintiff appealed defendant Martin's disciplinary determination, which was affirmed by defendants Uhler and DOCCS Director of Special Housing Unit Rodriguez. *Id.*, ¶¶ 191-193. At the time the sanction was imposed, plaintiff was already serving a 360-day SHU sanction. *Id.*, ¶ 195. Plaintiff served the 90-day SHU sanction between December 3, 2022 and March 3, 2023. *Id.*, ¶ 198.

#### b. Second Disciplinary Sentence

On November 16, 2021, plaintiff "reported to medical staff and [a] sergeant that defendant Menard slammed his hand and kept it wedged in the hatch on the cell door." Compl., ¶ 199. Two days later, plaintiff was issued a misbehavior report that charged him with various rules violations based on his alleged refusal of a direct order to return a tray to defendant Menard on November 16, 2021. *Id.*, ¶ 200.

On December 1, 2021, defendant Institutional Steward Terriah presided over plaintiff's disciplinary hearing ("the Second Disciplinary Hearing"), found plaintiff guilty of all charges in the misbehavior report, and imposed a penalty of 15 days of SHU confinement. Compl., ¶ 202. Plaintiff appealed the disciplinary determination on the grounds that "SHU could not be

2023 WL 4744735

imposed for the allege[d] offenses" in the misbehavior report. *Id.*, ¶ 203. Defendant Rodriguez failed to decide plaintiff's appeal within the 60-day deadline, which is "considered a constructive denial." *Id.*, ¶ 204. Plaintiff served the 15-day SHU sanction between March 3 and March 18, 2023. *Id.*, ¶ 209. Defendant Rodriguez then "extended" plaintiff's SHU sanction by another 30 days to April 12, 2023. *Id.*

### c. Third Disciplinary Sentence

**\*11**  On November 21, 2021, plaintiff submitted a grievance regarding defendant Menard issuing him a false misbehavior report on November 18, 2021. Compl., ¶ 211. On December 5, 2021, defendant Menard issued plaintiff a false misbehavior report charging him with various rules violations related to refusing direct orders and creating a disturbance in his cell. *Id.*, ¶¶ 212-213.

On December 23, 2022, defendant Terriah presided over plaintiff's disciplinary hearing ("the Third Disciplinary Hearing"), found plaintiff guilty of all charges in the misbehavior report, and imposed a penalty of 30 days of SHU confinement. Compl., ¶ 214. Plaintiff appealed the disciplinary determination on the grounds that the misbehavior report was "false and retaliatory" and "SHU confinement could not be imposed for the alleged offenses" in the misbehavior report. *Id.*, ¶ 215. On February 8, 2022, defendant Rodriguez modified the hearing decision by dismissing the interference charge, but failed to dismiss the improper SHU sanction. *Id.*, ¶ 216. Plaintiff is "expected to serve the 30 day SHU sanction from March 18, 2023 to April 17, 2023." *Id.*, ¶ 221.

### d. Fourth Disciplinary Sentence

On January 13, 2022, plaintiff filed a grievance regarding a "retaliatory cell search" and threat made to him by defendant Marshall in the presence of defendant Gettman. Compl., ¶ 223. On January 30, 2022, defendant Marshall issued plaintiff a misbehavior report, which charged him with assault on staff and other rules violations in connection with a use-of-force incident. *Id.*, ¶ 224.

At the conclusion of plaintiff's disciplinary hearing on February 17, 2022 ("the Fourth Disciplinary Hearing"), defendant Bishop found plaintiff guilty of the charges in the misbehavior report and imposed a penalty of 240 days of SHU confinement, and loss of package and commissary privileges. Compl., ¶ 226. On February 24, 2022, defendant Uhler reviewed and affirmed the disciplinary determination. *Id.*, ¶ 278. On April 21, 2022, defendant Rodriguez modified the SHU sanction to 180 days and otherwise affirmed the hearing decision. *Id.*, ¶ 229. Plaintiff is expected to either start or finish serving the 180-day SHU sanction on October 14, 2023. *Id.*, ¶ 233.

### e. Fifth Disciplinary Sentence

In "early April 2022," plaintiff filed a grievance and motion for injunctive relief in an ongoing federal lawsuit about his placement in a double-bunk cell. Compl., ¶ 235. On April 22, 2022, plaintiff was issued two misbehavior reports in connection with his altercation with Inmate J. *Id.*, ¶¶ 236-238.

At the conclusion of plaintiff's disciplinary hearing on April 26, 2022 ("the Fifth Disciplinary Hearing"), defendant Bishop found plaintiff guilty of the charges in the two misbehavior reports and imposed a penalty of 90 days of SHU confinement and loss of package and commissary privileges. Compl., ¶ 240. On April 29, 2022, defendant Uhler reviewed and affirmed the disciplinary determination even though SHU could not be imposed for the charged offenses pursuant to New York Correction Law § 137. *Id.*, ¶¶ 241-242. On July 12, 2022, defendant Rodriguez reviewed and affirmed the disciplinary determination. *Id.*, ¶ 243. Plaintiff is expected to serve the disciplinary sentence sometime between October, 2023 and January, 2024. *Id.*, ¶ 248.

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 244 of 353

Bradshaw v. Annucci, Not Reported in Fed. Supp. (2023)

2023 WL 4744735

### f. Sixth Disciplinary Sentence

On December 10, 2022, plaintiff was issued a misbehavior report for fighting with his cellmate. Compl., ¶ 249. At the conclusion of plaintiff's disciplinary hearing on December 23, 2022 ("the Sixth Disciplinary Hearing"), defendant Commissioner Hearing Officer LaPlant found plaintiff guilty of the charges in the misbehavior report and imposed a penalty of 30 days of SHU confinement and one month loss of good time credits. *Id.*, ¶ 251. On January 9, 2023, plaintiff appealed the disciplinary determination on the grounds that SHU could not be imposed for the charged violations, and the imposed penalties were retaliatory. *Id.*, ¶ 252. Defendant Rodriguez failed to decide plaintiff's appeal within 60 days in accordance with DOCCS' regulations "as a means to keep plaintiff confined in segregation." *Id.*, ¶ 253. Plaintiff is expected to serve this SHU sanction sometime between February and June, 2024. *Id.*, ¶¶ 259-260.

**\*12** Each of the imposed SHU sanctions were authorized and/or ignored by defendant Annucci. Compl., ¶ 260.

### 4. Confinement Conditions

In addition to the assaults discussed above, the complaint identifies the following "atypical" conditions of confinement experienced by plaintiff between May, 2021 and April 11, 2022: (1) a deprivation of nine out of twelve meals between May 28 and May 31, 2021, Compl., ¶ 262; (2) a deprivation of ten out of twelve meals between July 1 and July 4, 2021, and numerous additional meal deprivations between July 6, 2021 and April, 2022, Compl., ¶ 264; (3) inadequate heating due to the heat vent being turned off and cold air being blown in to plaintiff's housing unit, at the direction of defendant Gravlin, between September 25 and October 2, 2021, Compl., ¶ 267; (4) defendant Corrections Officer Austin Martin removing plaintiff's mattress from his cell, with approval from defendant Marshall, from December 6 to December 11, 2021, Compl., ¶ 269; (5) defendant Corrections Sergeant Jane Doe "compell[ing] plaintiff to remain outside to stand in the freezing cold weather for about five or six hours while the officers and defendant Jane Doe remained inside the facility or on the bus with other prisoners[,]" Compl., ¶ 268; (6) the deprivation of a change of underwear and clothing between December 20, 2021 and January 23, 2022, Compl., ¶ 270; (7) defendant Sturgen forcing plaintiff to quarantine in his cell for fourteen days in July, 2021 and October, 2021 based on his refusal to "take a COVID-19 test[,]" Compl., ¶ 271; (8) searching plaintiff's cell and at times placing him in unclean cells without cleaning supplies at various points between May 25, 2021 and April 11, 2022, in response to him filing grievances, Compl., ¶¶ 272-290; (9) defendants Corrections Officers John Doe #5, Lamica, Locke, Keating, John Doe #6, and Ayer denying plaintiff access to legal mail on multiple dates between August and December, 2021, Compl., ¶¶ 291-295; (10) defendants Veneske and Gravlin denying plaintiff weekly phone calls on four separate occasions between July and December, 2021, Compl., ¶ 297; and (11) plaintiff's continuous confinement in the SHU between January 10, 2018 and April 12, 2022, Compl., ¶ 298.

Between April 12, 2022 and April 12, 2023, plaintiff was continuously confined in the RRU, where his confinement conditions were "identical to his confinement in the SHU, with the exception of approximately two hours of programming." Compl., ¶ 303. In addition to the assaults discussed above, the complaint identifies the following "atypical" conditions of confinement experienced by plaintiff during this time: (1) denial of "congregate religious services [and] recreation[,]" Compl., ¶ 303; (2) defendants Dumas, Gravell, and Mental Health Professionals Jane Doe #1 and Jane Doe #2 refusing to speak with plaintiff during rounds or place his name on callouts for private interviews between October 1, 2022 and April 12, 2023, Compl., ¶ 308; (3) defendant Jane Doe #2 disregarding plaintiff's request for an intake interview and stated concerns regarding depression and anxiety on April 3, 2023, Compl., ¶ 310; (4) defendant Jane Doe #1 failing to schedule plaintiff for a private mental health interview and, along with defendant Dumas, ignoring plaintiff's complaints regarding a lack of mental health care on April 12, 2023, Compl., ¶ 312; (5) defendants Gravlin, Veneske, Uhler, and Bishop denying plaintiff in-cell cleaning supplies between April and September, 2022, and December, 2022 and January, 2023, Compl., ¶¶ 315-318; (6) defendants Fletcher and Keleher directing retaliatory searches of plaintiff's cell between April 25 and May 5, 2022, which defendants Uhler and Bishop failed to remedy, Compl., ¶¶ 319-326; (7) defendant Deputy Superintendent of Programs Stickney depriving plaintiff of a personalized rehabilitation plan and limiting his out-of-cell programming to two hours per day, Compl., ¶¶ 332-340; (8) defendants Stickney

**Bradshaw v. Annucci, Not Reported in Fed. Supp. (2023)**

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 245 of 353

2023 WL 4744735

and Bishop denying plaintiff weekly congregate services each week between April 12, 2022 and April 12, 2023, Compl., ¶¶ 341-342; (9) defendant Annucci denying plaintiff a nutritionally adequate diet "as a cost saving measure" since 2019, Compl., ¶¶ 343-347; (10) denial of tablet services, packages, congregate recreation, access to the law library, daily showers, full access to commissary services, and the opportunity to appear at grievance hearings throughout plaintiff's placement in the RRU, Compl., ¶¶ 348-356; (11) defendant Bishop forcing plaintiff to share a cell with another inmate in excess of sixty days, Compl., ¶¶ 357-359; (12) defendants Uhler and Bishop requiring plaintiff to wear handcuffs and shackles for all out-of-cell movement, and to remain shackled during programs, Compl., ¶¶ 361-367; and (13) defendants Uhler and Bishop denying plaintiff access to certain personal property throughout his placement in the RRU, Compl., ¶¶ 371-372.

### 5. Plaintiff's Claims

**\*13**  Liberally construed, the complaint asserts the following claims for relief against the named defendants in their individual capacities: (1) First Amendment retaliation claims against defendants Osborn, Bailey, Menard, Trombley, Marshall, Keleher, North, Plonka, Gettman, Gravlin, Bishop, Mitchell, Fletcher, Veneske, Uhler, Rowe, Classification and Movement Corrections Officers John Doe #1 and John Doe #2, Sturgen, Austin Martin, Lamica, Locke, and Keating; (2) First Amendment mail tampering claims against defendants Corrections Officer John Doe #5, Lamica, Locke, Keating, Lord, John Doe #6, and Ayer; (3) First Amendment free exercise claims against defendants Bishop, Stickney, Uhler, and Annucci; (4) Eighth Amendment excessive force and failure-to-intervene claims against defendants Osborn, Corrections Sergeant John Doe #1, Phillips, Tyler, Menard, Bailey, Trombley, Cymbrak, Mitchell, Chase, Marshall, Gettman, Morrison, Corrections Sergeant John Doe #2, Corrections Officer John Doe #3, Gravlin, Robare, Carter, Corrections Officer John Doe #4, Plonka, Keleher, and Harmer; (5) Eighth Amendment failure-to-protect claims against defendants McQuinn, Waite, Bishop, Uhler, Fletcher, Osborn, Rowe, Veneske, Nichols, Holmes, Annucci, Keleher, Debyah, Gravlin, North, Harrigan, Classification and Movement Corrections Officers John Doe #1 and John Doe #2, Orbegozo, Corrections Sergeant John Doe #1, Plonka, Gettman, Carter, Sturgen, Lewis, Sharpe, Dumas, Hollenbeck, DeCosse, Gordon, and Jubert; (6) Eighth Amendment conditions-of-confinement claims against defendants Gravlin, Uhler, Bishop, Sergeant Jane Doe, Austin Martin, Marshall, Sturgen, and Veneske based on COVID-19 quarantine requirements, unhygienic conditions, inadequate heating and clothing, and inadequate sleeping accommodations; (7) an Eighth Amendment conditions-of-confinement claim against defendant Annucci based on plaintiff's receipt of an inadequate diet; (8) Eighth Amendment conditions-of-confinement claims against defendants Uhler, Bishop, and Annucci based on excessive restrictive confinement in the SHU from August 1, 2021 to April 12, 2022; (9) Eighth Amendment conditions-of-confinement claims against defendants S. Martin, Uhler, Rodriguez, Terriah, Bishop, LaPlant, Stickney, and Annucci based on excessive restrictive confinement in the RRU; (10) Eighth Amendment medical indifference claims against defendants Dumas, Gravell, Jane Doe #1 and Jane Doe #2 based on denying plaintiff access to adequate medical and mental health treatment; (11) Fourteenth Amendment disciplinary due process claims against defendants S. Martin, Uhler, Rodriguez, Terriah, Bishop, and LaPlant; (12) Fourteenth Amendment due process claims against defendants Gravlin and Veneske based on denying plaintiff access to phone calls; (13) Fourteenth Amendment due process claims against defendants Stickney, Bishop, Uhler, Gravlin, Veneske, and Annucci based on the nature of plaintiff's confinement in the RRU; and (14) conspiracy claims against defendants Tyler, Phillips, Hooper, McGee, Robare, Gravlin, Keleher, Harmer, and Osborn.

Plaintiff seeks an award of money damages and injunctive relief. Compl. at 45. For a complete statement of plaintiff's claims and the facts he relies on in support of those claims, reference is made to the complaint.

### C. Analysis

Plaintiff seeks relief pursuant to Section 1983, which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990); *see also Myers v. Wollowitz*, No. 95-CV-0272, 1995 WL 236245, at \*2 (N.D.N.Y. Apr. 10, 1995) (McAvoy, C.J.) (finding that "[Section] 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights").

"Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted).

### 1. Hastings, Peterson, and Spinner

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, inter alia, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). Thus, "a Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.' " *Austin v. Pappas*, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted).

The Second Circuit recently clarified that "there is no special rule for supervisory liability." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). Instead, " 'a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.' " *Id.* (quoting *Iqbal*, 556 U.S. at 676).

"Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff." *Cipriani v. Buffardi*, No. 9:06-CV-889 (GTS/DRH), 2007 WL 607341, at *1 (N.D.N.Y. Feb. 20, 2007) (citing *Gonzalez v. City of New York*, No. 97-CV-2246, 1998 WL 382055, at *2 (S.D.N.Y. July 9, 1998)).

Here, plaintiff names Corrections Officers Hastings and Peterson and Steward Spinner as defendants without any allegations of wrongdoing by these individuals in the body of the complaint. Indeed, it is entirely unclear how and when, if at all, these officials may have violated plaintiff's federal rights. *See generally*, Compl.

Accordingly, plaintiff's Section 1983 claims against defendants Hastings, Peterson, and Spinner are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 2. Retaliation Claims

Courts must approach claims of retaliation " 'with skepticism and particular care' because 'virtually any adverse action taken against a prisoner by a prison official–even those otherwise not rising to the level of a constitutional violation–can be characterized as a constitutionally proscribed retaliatory act.' " *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (*quoting Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)). To state a plausible claim, a plaintiff asserting a First Amendment retaliation claim must advance "non-conclusory" allegations establishing "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action." *Davis*, 320 F.3d at 352 (*quoting Dawes*, 239 F.3d at 492). "[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).

**\*14** Here, the Court liberally construes the complaint to assert retaliation claims against the following officials: (1) defendant Osborn based on this official initiating or participating in the First Assault, Fourth Assault, Eighth Assault, and Ninth Assault, and failing to protect plaintiff with respect to the second inmate assault, third inmate assault and seventh inmate assault, in response to plaintiff filing grievances against him, Compl., ¶¶ 16, 31, 71-73, 76-84, 101-106, 120, 150-155 ("First Retaliation Claim"); (2) defendants Lamica, Locke, and Keating denying plaintiff access to legal mail between August ad October, 2021, in response to plaintiff filing grievances against them, Compl., ¶¶ 292-294 ("Second Retaliation Claim"); (3) defendant Sturgen forcing plaintiff to quarantine in his cell for fourteen days in July, 2021 and October, 2021 based on his refusal to "take a COVID-19 test[,]" Compl., ¶ 271 ("Third Retaliation Claim"); (4) defendant Menard initiating the Fifth Assault in response to plaintiff filing a grievance against him, Compl., ¶ 37 ("Fourth Retaliation Claim"); (5) defendant Trombley participating in

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 247 of 353

Bradshaw v. Annucci, Not Reported in Fed. Supp. (2023)
2023 WL 4744735

the Sixth Assault in response to plaintiff filing a lawsuit against him, Compl., ¶ 43 ("Fifth Retaliation Claim"); (6) defendants Bailey and Trombley engaging in retaliatory acts of intimidation against plaintiff following the Sixth Assault in response to plaintiff filing grievances against them, Compl., ¶¶ 40-52 ("Sixth Retaliation Claim"); (7) defendant Austin Martin removing plaintiff's mattress from his cell, with approval from defendant Marshall, from December 6 to December 11, 2021, in response to plaintiff filing a grievance against him, Compl., ¶¶ 190-193, 269 ("Seventh Retaliation Claim"); (8) defendant Marshall directing "retaliatory search[es]" of plaintiff's cell on January 6 and January 30, 2022, prior to the Seventh Assault, and participating in the Seventh Assault, in response to plaintiff filing grievances and a lawsuit against him, Compl., ¶¶ 27-29, 53-60, 222-224 ("Eighth Retaliation Claim"); (9) defendant Mitchell participating in the Seventh Assault in response to plaintiff filing a grievance against him for his role in a use-of-force incident on July 12, 2021, and/or for filing a grievance against him shortly before the Seventh Assault, Compl., ¶¶ 27-29, 222 ("Ninth Retaliation Claim"); (10) defendant Veneske directing defendants Welch and Chase to attack plaintiff on May 2, 2022, in response to plaintiff filing a grievance regarding sexual assaults committed against him earlier that day, Compl., ¶ 108 ("Tenth Retaliation Claim"); (11) defendant Keleher directing two searches of plaintiff's cell and recommending him for placement in a cell with Inmate Samuel on May 5, 2022, in response to plaintiff filing a grievance against this official days earlier, Compl., ¶¶ 113-114 ("Eleventh Retaliation Claim"); (12) defendant North "amend[ing] the Directive for double-cell housing assignments regarding victim prone inmates" on May 13, 2022, to "permit inmates with a pattern of being victimized by other inmates to be double-bunk[ed] at the Deputy of Security's discretion[,]" in response to plaintiff "reporting sexual and physical assaults by other prisoners," Compl., ¶ 124 ("Twelfth Retaliation Claim"); (13) defendants Rowe and Osborn recommending, and defendant Bishop approving, plaintiff to be celled with Inmate X, in response to plaintiff filing a grievance regarding "double-bunking[,]" Compl., ¶¶ 128 ("Thirteenth Retaliation Claim"); (14) defendants Fletcher, Gravlin, and Bishop assigning plaintiff to be celled with Inmate Y on August 5, 2022, in response to plaintiff filing a grievance a few days earlier regarding officials placing rival gang members in double-bunk cells together, Compl., ¶¶ 129-131 ("Fourteenth Retaliation Claim"); (15) defendants Uhler, Bishop, and Classification and Movement Officials John Doe #1 and John Doe #2 "conspir[ing] to transfer plaintiff back to Upstate [Correctional Facility] and ... confine [him] in [a] double-cell" in late 2022, in response to grievances and lawsuits filed regarding his placement in a double-bunk cell, Compl., ¶¶ 145-184 ("Fifteenth Retaliation Claim"); (16) defendants Osborn, Plonka, Gettman, and Gravlin "mov[ing] plaintiff to a double cell" with Inmate Flenders on December 12, 2022, and then relocating him to a cell with Inmate Williams based on his complaints about being housed with Inmate Flenders and earlier grievances that he filed, Compl., ¶¶ 150-156 ("Sixteenth Retaliation Claim"); and (17) defendants Fletcher and Keleher directing searches of plaintiff's cell between April 25 and May 5, 2022, which defendants Uhler and Bishop failed to remedy, in response to earlier grievances and/or lawsuits that plaintiff filed against these officials, Compl., ¶¶ 319-326 ("Seventeenth Retaliation Claim").

With respect to the Second Retaliation Claim against defendant Locke, the complaint lacks allegations which plausibly suggest that the single alleged incident of mail tampering resulted in any sort of material injury to plaintiff, or otherwise deterred him from pursuing his legal action. Thus, plaintiff has failed to adequately allege that defendant Locke's conduct rises to the level of adverse action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights. *Rasheen v. Adner*, 356 F. Supp. 3d 222, 243-44 (N.D.N.Y. 2019) (finding an isolated incident of mail tampering did not constitute an adverse action because plaintiff failed to allege facts plausibly suggesting that he suffered any injury as a result); *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 347 (N.D.N.Y. 2010) (collecting cases in which claims of mail tampering did not constitute an adverse action, noting in particular that the plaintiff had alleged only a single instance of mail interference); *Islam v. Goord*, No. 05-CV-7502, 2006 WL 2819651, at *7 (S.D.N.Y. Sept. 29, 2006) (finding that isolated incidents of tampering with plaintiff's family and legal mail was not an adverse action because it would not deter an ordinary individual from exercising his constitutional rights and plaintiff failed to allege he suffered any injury as a result of the tampering). Accordingly, plaintiff's Second Retaliation Claim against defendant Locke is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

With respect to the Third Retaliation Claim against defendant Sturgen, even assuming that plaintiff's election not to "take a COVID-19 test" satisfies the protected activity requirement, the complaint lacks allegations which plausibly suggest that placing plaintiff on quarantine status constitutes adverse action that was substantially motivated by a desire to punish plaintiff for engaging in protected activity, as opposed to a desire to impose facility-wide health precautions. Accordingly, plaintiff's Third

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 248 of 353
**Bradshaw v. Annucci, Not Reported in Fed. Supp. (2023)**
2023 WL 4744735

Retaliation Claim against defendant Sturgen is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

With respect to the Seventh Retaliation Claim against defendant Austin Martin, although the complaint conclusorily alleges that this official removed plaintiff's mattress from his cell on December 6, 2021, "as a means of retaliation for filing a grievance against him[,]" the complaint does not identify any wrongdoing by this official prior to December 6, 2021, let alone indicate when plaintiff filed a grievance against this official. Thus, the Court has no basis to plausibly infer that the alleged wrongdoing on December 6, 2021, was substantially motivated by plaintiff's engagement in protected activity. Accordingly, plaintiff's Seventh Retaliation Claim against defendant Martin is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

 **\*15**  With respect to the Twelfth Retaliation Claim against defendant North, the complaint lacks allegations which plausibly suggest that (1) defendant North was employed at Upstate C.F.; or (2) the alleged Directive amendment impacted only inmates at this facility. In addition, the Court has no basis to plausibly infer from the allegations in the complaint that defendant North was aware of plaintiff's engagement in protected activity before allegedly amending the Directive regarding double-celling. Thus, the complaint fails to adequately allege that defendant North's conduct was substantially motivated by plaintiff's engagement in protected activity. *See, e.g.*, *Hayes v. Dahkle*, No. 9:16-CV-1368 (TJM/CFH), 2017 WL 384066, at \*7 (N.D.N.Y. Jan. 27, 2017) (dismissing retaliation claim against corrections officer where plaintiff failed to allege that corrections officer was aware of the protected activity that gave rise to the claim); *Burroughs v. Petrone*, 138 F. Supp. 3d 182, 208 (N.D.N.Y. 2015) (same); *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 368 (N.D.N.Y. 2010) ("Plaintiff has failed to demonstrate a causal connection between his conduct and the adverse action of leaving the lights on in the SHU twenty-four hours a day since this policy applied to all inmates in the SHU, not just Plaintiff .... Therefore, Plaintiff cannot sustain a claim a retaliation since the adverse action was not directed at him, but rather the entire SHU population."). Accordingly, plaintiff's Twelfth Retaliation Claim is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

With respect to the Fifteenth Retaliation Claim against defendants Uhler, Bishop, and Classification and Movement Officials John Doe #1 and John Doe #2 based on these officials allegedly "conspir[ing] to transfer plaintiff back to Upstate [Correctional Facility] and ... confine [him] in [a] double-cell" in late 2022, in response to grievances and lawsuits filed by plaintiff regarding his placement in a double-bunk cell, the complaint is devoid of allegations explaining how defendants John Doe #1 and John Doe #2 – both of whom are allegedly employed at the DOCCS Central Office in Albany, New York – may have known about lawsuits or grievances plaintiff filed related to double-celling. Furthermore, the complaint does not include any allegations explaining the basis for plaintiff's knowledge that these officials "conspired" with defendants Uhler and Bishop to return plaintiff back to Upstate C.F. Indeed, beyond plaintiff's speculation, the Court has no basis to plausibly infer that, but for plaintiff filing grievances and commencing litigation regarding double-celling, he would not have been transferred back to Upstate C.F. in or around November, 2022. Accordingly, plaintiff's Fifteenth Retaliation Claim is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

With respect to the remaining retaliation claims identified above, the Court finds that the complaint alleges enough to warrant a response. Accordingly, and mindful of the Second Circuit's directive that a pro se plaintiff's pleadings must be liberally construed, *see Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court finds that all retaliation claims other than the Second Retaliation Claim against defendant Locke, the Third Retaliation Claim, the Seventh Retaliation claim, the Twelfth Retaliation Claim, and the Fifteenth Retaliation Claim survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### 3. Mail Tampering Claims

"[A] prisoner's right to the free flow of incoming and outgoing mail is protected by the First Amendment." *Davis*, 320 F.3d at 351. A prisoner's mail may only be restricted to further " 'one or more of the substantial governmental interests of security,

2023 WL 4744735

order, and rehabilitation ... [and] must be no greater than is necessary or essential to the protection of the particular governmental interest involved.' " *Id.* (quoting *Washington v. James*, 782 F.2d 1134, 1139 (2d Cir. 1986)). "The First Amendment protects prisoners' access to mail directly, unlike the right of access to courts, which protects prisoners' access to mail only derivatively and with respect to given claims." *Bellezza v. Holland*, No. 09-CV-8434, 2011 WL 2848141, at *6 (S.D.N.Y. July 12, 2011) (dismissing access-to-the-courts claim for failure to allege injury, but holding that plaintiff adequately alleged a violation of his right to send and receive mail). "It is thus not necessary to allege actual injury when asserting a violation of one's right to the free flow of mail." *Antrobus v. City of New York*, No. 11-CV-2524, 2014 WL 1285648, at *4 (S.D.N.Y. Mar. 27, 2014) (citations omitted).

 **\*16** As courts have attempted to balance the competing interests implicated when facilities place restrictions on prison mail, the courts have "consistently afforded greater protection to legal mail than to non-legal mail[.]" *Davis*, 320 F.3d at 351. "While a prisoner has a right to be present when his legal mail is opened, ... an isolated incident of mail tampering is usually insufficient to establish a constitutional violation." *Davis*, 320 F.3d at 351 (citations omitted). However, in *Washington v. James*, the Second Circuit found that "as few as two incidents of mail tampering could constitute an actionable violation (1) if the incidents suggested an ongoing practice of censorship unjustified by a substantial government interest, or (2) if the tampering unjustifiably chilled the prisoner's right of access to the courts or impaired the legal representation received." *Davis*, 320 F.3d at 351 (citing *Washington*, 782 F.2d at 1139); *see also Turner v. Safley*, 482 U.S. 78, 84-91 (1987) (prison regulations impinging constitutional rights must be "reasonably related to legitimate penological interests").

In this case, the complaint alleges that plaintiff was denied access to legal mail on the following dates by the following officials: (1) on August 6, 2021, by defendant John Doe #5; (2) on September 15, 16, 17 and October 6, 7, 8, 9, 15, 16, 17, 18, and 19, 2021, by defendant Lamica; (3) on September 22, 2021, by defendant Lord; (4) on October 7, 2021, by defendant Locke; (5) on October 8, 2021, by defendant John Doe #6; (6) on October 22 and 23, 2021, by defendant Keating; and (7) on November 5 and December 1, 2021, by defendant Ayer. Compl., ¶¶ 291-295.

At this stage of the proceeding, and mindful of the Second Circuit's directive that a pro se plaintiff's pleadings must be liberally construed, the Court finds that plaintiff's mail tampering claims against defendants Lamica, Lord, Locke, John Doe #6, Keating, and Ayer survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

The Court, however, reaches a different conclusion with respect to plaintiff's mail tampering claim against defendant John Doe #5 because (1) this official's alleged refusal to provide plaintiff with access to legal mail was the first time plaintiff experienced this type of deprivation, and (2) a single incident of mail tampering – the first of its kind – does not plausibly suggest an ongoing practice of censorship unjustified by a substantial government interest.

Accordingly, plaintiff's mail tampering claim against defendant John Doe #5 is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 4. Free Exercise Claims

The First Amendment to the United States Constitution guarantees the right to free exercise of religion. *See* U.S. Const. amend. I; *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005). As is true with regard to the First Amendment generally, the free exercise clause applies to prison inmates, subject to appropriate limiting factors. *See Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (holding that "[p]risoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause") (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)).

To state a claim under the Free Exercise Clause of the First Amendment, an inmate "must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Salahuddin*, 467 F.3d at 274-75 (articulating test that inmates

2023 WL 4744735

"must show at the threshold that the disputed conduct ... burdens his sincerely held religious beliefs," prior to advancing to the *Turner* test and "legitimate penological interests that justify the impinging conduct"). "For a burden to be substantial, a plaintiff must demonstrate that the government's action pressures him to commit an act forbidden by his religion or prevents him from engaging in conduct or having a religious experience mandated by his faith." *Booker v. Maly*, No. 9:12-CV-246 (NAM/ATB), 2014 WL 1289579, at *22 (N.D.N.Y. Mar. 31, 2014), *aff'd*, 590 Fed. App'x 82 (2d Cir. 2015) (summary order).

**\*17**  At this stage of the proceeding, and mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see e.g. Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court finds that plaintiff's Free Exercise claims survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### 5. Excessive Force and Failure-to-Intervene Claims

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). This includes punishments that "involve the unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). The Eighth Amendment's prohibition against cruel and unusual punishment encompasses the use of excessive force against an inmate, who must prove two components: (1) subjectively, that the defendant acted wantonly and in bad faith, and (2) objectively, that the defendant's actions violated "contemporary standards of decency." *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotations omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). [6]

[6]    In this regard, while "a *de minimis* use of force will rarely suffice to state a constitutional claim," *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993), the malicious use of force to cause harm constitutes an Eighth Amendment violation per se because in such an instance "contemporary standards of decency are always violated." *Blyden*, 186 F.3d at 263 (citing *Hudson*, 503 U.S. at 9). The key inquiry into a claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986)); *see also Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973).

"To determine whether a defendant acted maliciously, several factors should be examined including, 'the extent of the injury and the mental state of the defendant, as well as the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response.' " *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003) (quoting *Romano*, 998 F.2d at 105).

When a citizen is subjected to excessive force, "an officer who fails to intervene where he or she observes or has reason to know that excessive force is being used or a constitutional violation has been committed by a fellow officer is liable for the preventable harm caused by that officer." *Portillo v. Webb*, No. 16-CV-4731, 2017 WL 4570374, at *4 (S.D.N.Y. Oct. 11, 2017) (collecting cases), *report and recommendation adopted by* 2018 WL 481889 (S.D.N.Y. Jan. 17, 2018); *see also Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014) ("It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." (internal quotation marks and citation omitted)).

At this stage of the proceeding, and mindful of the Second Circuit's directive that a pro se plaintiff's pleadings must be liberally construed, the Court finds that each of plaintiff's Eighth Amendment excessive force and failure-to-intervene claims survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 251 of 353

Bradshaw v. Annucci, Not Reported in Fed. Supp. (2023)

2023 WL 4744735

### 6. Failure-to-Protect Claims

**\*18** "The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody." *Hayes v. New York City Dept. of Corrs.*, 84 F.3d 614, 620 (2d Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). Prison officials may be held liable under Section 1983 for failing to protect an inmate from conditions posing a substantial risk of serious harm. *See Farmer*, 511 U.S. at 836. In order to establish a "failure to protect," the plaintiff must show that he was incarcerated under conditions posing a substantial risk of serious harm, and prison officials acted with deliberate indifference to that risk and the inmate's safety. *Id.* Deliberate indifference exists when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

"One way to make out such a claim is to allege that 'a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant official being sued had been exposed to information concerning the risk and thus must have known about it.' " *Coronado v. Goord*, No. 99-CV-1674, 2000 WL 1372834, at *4 (S.D.N.Y. Sept. 25, 2000) (quoting *Farmer*, 511 U.S. at 842-43); *see also Hayes*, 84 F.3d at 620-21 (prisoner's repeated expressions of fear following an inmate attack and requests for transfer as a safety measure raised a question of fact). "Courts have [also] found that a prisoner validly states an Eighth Amendment claim based on a failure to protect when he alleges that he informed corrections officers about a specific fear of assault and is then assaulted." *Davis v. Torres*, No. 10-CV-2236, 2012 WL 3070092, at *5 (S.D.N.Y. May 2, 2012), *report and recommendation adopted by* 2012 WL 3070083 (S.D.N.Y. July 27, 2012); *see also Beckles v. Bennett*, No. 05-CV-2000, 2008 WL 821827, at *17 (S.D.N.Y. Mar. 26, 2008) (denying summary judgment where plaintiff presented evidence that he informed sergeant of correction officers' threatening behavior and was later assaulted by those officers).

"On the other hand, an inmate's communications about 'generalized safety concerns' or 'vague concerns of future assault by unknown individuals' are insufficient to provide knowledge that the inmate is subject to a substantial risk of serious harm." *Stephens v. Venettozzi*, No. 13-CV-5779, 2016 WL 929268, at *19 (S.D.N.Y. Feb. 24, 2016) (quoting *Ross v. City of New York*, No. 12-CV-8545, 2014 WL 3844783, at *8 (S.D.N.Y. 2014), *rev'd on other grounds*, No. 14-3327 (2d Cir. July 20, 2015) (summary order)), *report and recommendation adopted sub nom. Stephens v. Venetozzi*, 2016 WL 1047388 (S.D.N.Y. Mar. 10, 2016). "Neither mere negligence nor a prison guard's mere failure to act reasonably is enough to state an Eighth Amendment deliberate indifference claim." *Sawyer v. New York State Depat. of Corr. Servs.*, No. 11-CV-0152, 2015 WL 6644112, at *7 (W.D.N.Y. June 30, 2015) (citing *Garcia v. Witkowski*, 988 F. Supp. 2d 360, 361 (W.D.N.Y. 2013)), *report and recommendation adopted in pertinent part by* 2015 WL 6641471 (W.D.N.Y. Oct. 28, 2015); *Shell v. Brun*, 585 F. Supp. 2d 465, 469-70 (W.D.N.Y. 2008) ("In failure to protect cases, a prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety. Mere negligence (for example if a prison guard should know of a risk but does not) is not enough ....").

At this stage of the proceeding, and mindful of the Second Circuit's directive that a pro se plaintiff's pleadings must be liberally construed, the Court finds that each of plaintiff's Eighth Amendment failure-to-protect claims survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### 7. Conditions-of-Confinement Claims

**\*19** The Second Circuit, in addressing the needs protected by the Eighth Amendment, has stated that sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." *Wolfish v. Levi*, 573 F.2d 118, 125 (2d Cir. 1978), *rev'd on other grounds sub nom. Bell v. Wolfish*, 441 U.S. 520 (1979); *Lareau v. Manson*, 651 F.2d 96, 106 (2d Cir. 1981). To demonstrate that the conditions of confinement constitute cruel and unusual punishment in violation of the Eighth

2023 WL 4744735

Amendment, a plaintiff must satisfy both an objective and subjective element. *See Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996). A plaintiff must demonstrate that (1) the conditions of confinement resulted in "unquestioned and serious deprivations of basic human needs," *Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir. 1985); *see also Jolly*, 76 F.3d at 480, and (2) the defendants acted with "deliberate indifference." *Wilson*, 501 U.S. at 303-04.

At this stage of the proceeding, and mindful of the Second Circuit's directive that a pro se plaintiff's pleadings must be liberally construed, the Court finds the following conditions-of-confinement claims survive sua sponte review and require a response: (1) plaintiff's conditions-of-confinement claims against defendants Gravlin, Uhler, Bishop, Sergeant Jane Doe, Martin, Marshall, Sturgen, and Veneske based on unhygienic conditions, inadequate heating and clothing, and inadequate sleeping accommodations; (2) plaintiff's conditions-of-confinement claims against defendants Uhler, Bishop, and Annucci based on excessive restrictive confinement in the SHU from August 1, 2021 to April 12, 2022; and (3) plaintiff's conditions-of-confinement claims against defendants Martin, Uhler, Rodriguez, Terriah, Bishop, LaPlant, Stickney, and Annucci based on excessive restrictive confinement in the RRU. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

The Court, however, reaches a different conclusion with respect to plaintiff's conditions-of-confinement claims against (1) defendant Sturgen based on this official allegedly forcing plaintiff to quarantine in his cell for fourteen days in July, 2021 and October, 2021, and (2) defendant Annucci based on this official allegedly providing plaintiff with an inadequate diet between 2019 and 2023.

With respect to defendant Sturgen, the Court has no basis to plausibly infer that forcing plaintiff to quarantine in his cell on two separate occasions for fourteen days deprived him of a basic human need. Furthermore, even assuming the quarantine hold subjected plaintiff to an objectively serious condition, the complaint is devoid of allegations which plausibly suggest that defendant Sturgen's decision was made out of deliberate indifference to plaintiff's health and safety (as opposed to out of a desire to reduce the potential spread of COVID-19). Accordingly, plaintiff's Eighth Amendment conditions-of-confinement claim against defendant Sturgen is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

With respect to plaintiff's claim against defendant Annucci based on the meal plan offered to plaintiff since 2019, the complaint generically alleges that plaintiff is on a "meatless" meal plan, which "lacks the necessary daily protien [sic], vitamins and minerals[,]" and "uses soy more than the daily 25 grams recommended by the Food and Drug Administration[.]" Compl., ¶¶ 344-345. The complaint further alleges that as a result of the meal plan, plaintiff "has suffered from low good cholesterol and vitamin D deficiency[.]" *Id.*, ¶ 346.

**\*20** As an initial matter, the complaint fails to explain how plaintiff knows that he suffers from "low good cholesterol and [a] vitamin D deficiency[,]" the severity of these alleged deficiencies, or when in relation to plaintiff's current diet he began suffering these deficiencies. Moreover, the complaint fails to allege facts which plausibly suggest that these deficiencies have impaired plaintiff's daily functioning, or present any long-term health problems, and the Court has no basis to plausibly infer from the allegations in the complaint that the food items offered to plaintiff are not available to the general public for consumption based on health and safety concerns. Thus, plaintiff has failed to adequately allege that his meal plan – which is presumably offered to other inmates as well – presents a known risk to his health. *See, e.g., Mejia v. Goord*, No. 9:03-CV-124 (LEK/DEP), 2005 WL 2179422, at *6 (N.D.N.Y. Aug. 156, 2005) (noting that "the Eighth Amendment does not elevate to constitutional significance an inmate's dislike for the food served or the portions received"); *Collado v. Sposato*, No. 12-CV-2151, 2012 WL 3113837, at *4 (E.D.N.Y. July 25, 2012) ("Preference for certain foods and dislike of others cannot be equated with a constitutional guarantee to a custom-tailored menu."); *Mitchell v. New York State Dep't of Corr. Servs.*, No. 6:06-CV-6278, 2012 WL 6204205, at *12 (W.D.N.Y. Dec. 12, 2012) (dismissing as frivolous prisoner's claim that a soy-based diet causes cancer).

Furthermore, the complaint does not allege that any medical professionals have expressed concerns for plaintiff's health based on his diet, or that plaintiff has sought treatment to address any health-related concerns stemming from his diet. In addition,

2023 WL 4744735

the complaint fails to explain why plaintiff has only been offered a "meatless" meal plan since 2019 if he wishes to consume meat, or how the diet offered to plaintiff is a "cost saving measure[.]" Thus, the Court also has no basis to plausibly infer from the allegations in the complaint that defendant Annucci knew that plaintiff was (or has been) suffering from a nutritionally inadequate diet, yet has continued to deprive plaintiff of alternative meal options, i.e., has acted with deliberate indifference to plaintiff's dietary needs.

Accordingly, plaintiff's Eighth Amendment conditions-of-confinement claim against defendant Annucci based on the meal plan offered to plaintiff since 2019 is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 8. Medical Indifference Claims

Claims that prison officials have intentionally disregarded an inmate's medical needs fall under the umbrella of protection from the imposition of cruel and unusual punishment afforded by the Eighth Amendment. *Estelle*, 429 U.S. at 102, 104. "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.' " *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle*, 429 U.S. at 104). "The standard of deliberate indifference includes both subjective and objective components." *Id.*

"First, the alleged deprivation must be, in objective terms, sufficiently serious." *Chance*, 143 F.3d at 702 (internal quotation marks and citations omitted). "Determining whether a deprivation is an objectively serious deprivation entails two inquiries[:] [1] ... whether the prisoner was actually deprived of adequate medical care[; and 2] ... whether the inadequacy in medical care is sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006) (citations omitted).

The first inquiry under the objective component requires examining "whether the prisoner was actually deprived of adequate medical care." *Salahuddin*, 467 F.3d at 279. Prison officials who act "reasonably" in response to an inmate's health risk will not be found liable because the official's duty is only to provide "reasonable care." *Id.* at 279-80 (citing *Farmer*, 511 U.S. at 844-47).

The second inquiry under the objective component requires examining whether the purported inadequacy in the medical care is "sufficiently serious." *Salahuddin*, 467 F.3d at 280. If the "unreasonable care" consists of a failure to provide any treatment, then the court must examine whether the inmate's condition itself is "sufficiently serious." *Id.* (citing *Smith v. Carpenter*, 316 F.3d 178, 185-86 (2d Cir. 2003)). A condition is "sufficiently serious" in objective terms if it presents "a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).

 **\*21** With respect to the subjective component of a medical indifference claim, a plaintiff must show that the defendant "act[ed] with a sufficiently culpable state of mind," *Chance*, 143 F.3d at 702 (internal quotation marks and citations omitted); that is, the plaintiff must demonstrate that the defendant "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837; *see also Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999) (With respect to the subjective element, a plaintiff must also demonstrate that defendant had "the necessary level of culpability, shown by actions characterized by 'wantonness.' ").

At this stage of the proceeding, and mindful of the Second Circuit's directive that a pro se plaintiff's pleadings must be liberally construed, the Court finds that plaintiff's medical indifference claims against defendants Dumas, Gravell, Jane Doe #1 and Jane Doe #2 survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### 9. Disciplinary Due Process Claims

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 254 of 353

Bradshaw v. Annucci, Not Reported in Fed. Supp. (2023)
2023 WL 4744735

To successfully state a claim under Section 1983 for denial of due process, a plaintiff must establish both the existence of a protected liberty or property interest, and that he or she was deprived of that interest without being afforded sufficient process. *Shakur v. Selsky*, 391 F.3d 106, 118 (2d Cir. 2004) (citing *Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989)). Due process generally requires that the state afford individuals "some kind of hearing" prior to depriving them of a liberty or property interest. *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003).

An inmate's protected liberty interest is implicated where the punishment at issue imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The duration of the challenged confinement, while not determinative, is a significant factor under *Sandin*. The Second Circuit generally takes the position that normal confinement in a segregated housing unit of 101 days or less does not constitute an "atypical and significant hardship" under *Sandin*. *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000) (citing *Sealey v. Giltner*, 197 F.3d 578, 589-90 (2d Cir. 1999)).

The "atypicality" inquiry under *Sandin* is normally a question of law. *Colon*, 215 F.3d at 230-31; *Sealey*, 197 F.3d at 585. In making that determination the Court must consider the specific circumstances of the confinement, including both the duration and the conditions thereof. *Id.*

Although the Second Circuit has declined to provide a bright-line rule as to what duration of punitive confinement implicates a prisoner's constitutional rights, general guidelines have been defined. *See Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004). The Second Circuit generally takes the position that normal confinement in a segregated housing unit of 101 days or less does not constitute an "atypical and significant hardship" under *Sandin*. *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000) (citing *Sealey*, 197 F.3d at 589-90). [7] As a general matter, "[a] period of confinement between 101 and 305 days is considered to be an 'intermediate duration' and could implicate a liberty interest should a detailed record of the conditions of confinement indicate that it was an atypical and significant hardship." *Bunting v. Nagy*, 452 F. Supp. 2d 447, 456 (S.D.N.Y. 2006) (citing *Sealey*, 197 F.3d at 589; *see also Palmer*, 364 F.3d at 64-65 ("Where the plaintiff was confined for an intermediate duration -- between 101 and 305 days -- 'development of a detailed record' of the conditions of confinement relative to ordinary prison conditions is required.") (citing *Colon*, 215 F.3d at 232).

[7]    A New York state inmate confined in SHU is placed in a solitary confinement cell for 23 hours a day. The inmate may exercise in the yard for one hour each day; is limited to two showers a week; and may not work or attend programming. *See Colon*, 215 F.3d at 230; N.Y. Comp. Codes R. & Regs., tit. 7, §§ 304.1-.14 (2008).

**\*22**  Under some circumstances, separate restrictive confinement sentences can be aggregated for purposes of determining whether there is a protected liberty interest. *See Giano v. Selsky*, 238 F.3d 223, 226 (2d Cir. 2001). To determine whether such sentences should be aggregated for this purpose, "the precise issue ... is whether the disciplinary confinements in question constitute a 'sustained' period of confinement[.]" *Taylor v. Artus*, No. 05-CV-271, 2007 WL 4555932, at \*8 (N.D.N.Y. Dec. 19, 2007). Generally, "it appears from Second Circuit decisions that separate SHU sentences constitute a 'sustained' period of confinement when (1) they are contiguous and (2) they either (a) were imposed by the same disciplinary hearing officer or (b) were based on the same administrative rationale and are executed under the same conditions." *Id.* (collecting cases).

The due process protections afforded inmates facing disciplinary hearings that affect a liberty or property interest include advance written notice of the charges, a fair and impartial hearing officer, a hearing that affords the inmate the opportunity to call witnesses and present documentary evidence, and a written statement of the evidence upon which the hearing officer relied in making his determination. *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (citing, *inter alia, Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974)). The hearing officer's findings must be supported by "some" "reliable evidence." *Id.* (citing, *inter alia, Superintendent v. Hill*, 472 U.S. 445, 455 (1985)).

Bradshaw v. Annucci, Not Reported in Fed. Supp. (2023)

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 255 of 353

2023 WL 4744735

In this case, the complaint asserts due process claims based on the First Disciplinary Hearing, the Second Disciplinary Hearing, the Third Disciplinary Hearing, the Fourth Disciplinary Hearing, the Fifth Disciplinary Hearing, and the Sixth Disciplinary Hearing. *See generally*, Compl.

### a. The First Disciplinary Hearing

According to the complaint, on or about November 1, 2021, plaintiff was issued two misbehavior reports charging him with, among other things, two sex offenses based on allegations that he made sexually charged statements to two corrections officials in response to their orders. Compl., ¶¶ 187-189. On November 9, 2021, defendant S. Martin presided over the First Disciplinary Hearing, found plaintiff guilty of all charges except interference in the first report and violent conduct in the second report, and sentenced plaintiff to 90 days confinement in the SHU. *Id.*, ¶¶ 190-194.

The complaint alleges that the charged misconduct, which included making sexually explicit statements to a corrections officer, did not constitute a sex offense, and defendant Martin's guilty determination was "not supported by 'some reliable evidence.'" Compl., ¶¶ 190-191. However, the complaint fails to include any details from which this Court might plausibly infer that the guilty determination was not supported by some reliable evidence. Indeed, the complaint is devoid of any allegations regarding the documentary evidence considered, and the witnesses who testified, during plaintiff's disciplinary hearing. Furthermore, plaintiff does not deny that he refused direct orders issued by a sergeant and made sexually explicit statements to the official as charged.

Simply put, even assuming that the disciplinary sanction triggered a liberty interest, the Court has no basis to plausibly infer that plaintiff was denied the process to which he was entitled during the First Disciplinary Hearing. Accordingly, plaintiff disciplinary due process claims related to the First Disciplinary Hearing are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### b. Remaining Disciplinary Hearings

With respect to the Second Disciplinary Hearing, the Third Disciplinary Hearing, the Fourth Disciplinary Hearing, the Fifth Disciplinary Hearing, and the Sixth Disciplinary Hearing, the complaint does not include any allegations regarding these hearings, let alone allegations which plausibly suggest that plaintiff was denied the process to which he was entitled during any of them. Thus, plaintiff has failed to adequately allege that he suffered a violation of his due process rights in connection with any of the other disciplinary hearings referenced in the complaint.

**\*23** Accordingly, plaintiff's disciplinary due process claims related to the Second Disciplinary Hearing, the Third Disciplinary Hearing, the Fourth Disciplinary Hearing, the Fifth Disciplinary Hearing, and the Sixth Disciplinary Hearing are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted. [8]

[8]  Insofar as the complaint alleges that the disciplinary sentences imposed with respect to each of the six disciplinary hearings was grossly disproportionate to the charged offenses, these allegations form the basis of plaintiff's Eighth Amendment claims for excessive restrictive confinement in the RRU.

### 10. Due Process Claims Based on Denial of Telephone Privileges

The complaint alleges that defendants Veneske and Gravlin denied plaintiff weekly phone calls on four separate occasions between July and December, 2021. *See* Compl., ¶ 297. At the time, plaintiff was confined in the SHU, and New York Correction

Law § 137 was not in effect. [9] Furthermore, the law is well-settled that "[a] prisoner's access to family and friends via telephone may be restricted so long as the prisoner has some other avenue to communicate, even if less than ideal." *See Fox v. Lee*, No. 9:15-CV-0390 (TJM/CFH), 2016 WL 11807252, at *5 (N.D.N.Y. Dec. 19, 2016) (collecting cases).

[9]     This statute, which became effective on March 31, 2022, states, among other things, that "[w]ithin twenty-four hours of disciplinary confinement ... and at weekly intervals thereafter for the duration of such confinement, an incarcerated individual shall be permitted to make at least one personal phone call, except when to do so would create an unacceptable risk to the safety and security of incarcerated individuals or staff." *See* N.Y Corr. Law § 137(6)(g).

Here, plaintiff does not allege that he was altogether denied all forms of communication with the outside world at any point during his confinement in the SHU, let alone during the four weeks that he was allegedly denied his weekly phone calls. Thus, the Court does not construe the complaint to assert a cognizable Section 1983 claim based on the alleged phone deprivations. *See Fox*, 2016 WL 11807252, at *5; *see also Martinez v. Healey*, No. 14-CV-302, 2014 WL 5090056, at *3 (S.D.N.Y. Oct. 10, 2014) (noting that "inmates have no right to unlimited telephone calls" and that "phone restrictions do not impinge on a prisoner's constitutional rights where an inmate has alternate means of communicating with the outside world, and particularly with counsel" (alteration and internal quotation marks omitted)); *Edwards v. Horn*, No. 10-CV-6194, 2012 WL 760172, at *5 (S.D.N.Y. Mar. 8, 2012) ("Because inmates have no right to unlimited telephone calls, [the plaintiff] must, but fails to, allege that he was stripped of alternate methods of communication to state a violation of his constitutional rights" (alterations, citation, and internal quotation marks omitted)); *Henry v. Davis*, No. 10-CV-7575, 2011 WL 3295986, at *2 (S.D.N.Y. Aug. 1, 2011) ("Phone restrictions do not impinge on a prisoner's constitutional rights where an inmate has alternate means of communicating with the outside world, and particularly with counsel."), *report and recommendation adopted by* 2011 WL 5006831 (S.D.N.Y. Oct. 20, 2011).

Accordingly, plaintiff's due process claims against defendants Gravlin and Veneske based on denying him access to phone calls are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 11. Due Process Claims Based on Conditions of RRU Confinement

**\*24** Aside from challenging the disciplinary determinations that resulted in his placement in the RRU, plaintiff challenges both the restrictive nature of his confinement in the RRU, and the extended duration of this confinement. More specifically, the complaint alleges that plaintiff (1) was limited to two hours of out-of-cell programming and subjected to other restrictions throughout his confinement in the RRU, which began on April 12, 2022, (2) was deprived of a rehabilitation plan throughout his confinement in the RRU, which prevented him from obtaining early release, and (3) is scheduled to remain in the RRU for more than one year, despite New York law prohibiting such a restrictive confinement period. Compl., ¶¶ 303-373. According to plaintiff, pursuant to New York Correction Law § 137, he has a liberty interest in accessing the programs, services, privileges, and rehabilitation plan that he was denied, among other things. *Id.*

"A liberty interest under the Fourteenth Amendment arises either directly from the Due Process Clause itself or from a state's laws." *Galloway v. Suffolk Cnty. Corr. Facility*, 232 F. Supp. 2d 4, 8 (E.D.N.Y. 2002) (citing *Klos v. Haskell*, 48 F.3d 81, 86 (2d Cir. 1995)). "For a liberty interest to be conferred by the state, two requirements must be met: (1) the state must have articulated specified substantive predicates which limit the discretion of state officials; and (2) it must have employed explicitly mandatory language, requiring state officials to follow those substantive predicates." *Klos*, 48 F.3d at 87 (internal quotation marks and citations omitted).

Section 6 of New York Correction Law § 137, which became effective on March 31, 2022, provides, in pertinent part, as follows:

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 257 of 353

Bradshaw v. Annucci, Not Reported in Fed. Supp. (2023)

2023 WL 4744735

6. Except as provided in paragraphs (d) and (e) of this subdivision, the superintendent of a correctional facility may keep any incarcerated individual confined in a cell or room, apart from the accommodations provided for incarcerated individuals who are participating in programs of the facility, for such period as may be necessary for maintenance of order or discipline, but in any such case the following conditions shall be observed:

...

(j) (i) All segregated confinement and residential rehabilitation units shall create the least restrictive environment necessary for the safety of incarcerated persons, staff, and the security of the facility.

(ii) Persons in segregated confinement shall be offered out-of-cell programming at least four hours per day, including at least one hour for recreation. Persons admitted to residential rehabilitation units shall be offered at least six hours of daily out-of-cell congregate programming, services, treatment, recreation, activities and/or meals, with an additional minimum of one hour for recreation. Recreation in all residential rehabilitation units shall take place in a congregate setting, unless exceptional circumstances mean doing so would create a significant and unreasonable risk to the safety and security of other incarcerated persons, staff, or the facility. Persons in segregated confinement and residential rehabilitation units shall be offered programming led by program or therapeutic staff five days per week, except on recognized state legal holidays. All other out-of-cell time may include peerled programs, time in a day room or out-of-cell recreation area with other people, congregate meals, volunteer programs, or other congregate activities.

(iii) No limitation on services, treatment, or basic needs such as clothing, food and bedding shall be imposed as a form of punishment. If provision of any such services, treatment or basic needs to an individual would create a significant and unreasonable risk to the safety and security of incarcerated persons, staff, or the facility, such services, treatment or basic needs may be withheld until it reasonably appears that the risk has ended....

(iv) Upon admission to a residential rehabilitation unit, program and mental health staff shall administer assessments and develop an individual rehabilitation plan in consultation with the resident, based upon his or her medical, mental health, and programming needs. Such plan shall identify specific goals and programs, treatment, and services to be offered, with projected time frames for completion and discharge from the residential rehabilitation unit.

  **25**  (v) An incarcerated person in a residential rehabilitation unit shall have access to programs and work assignments comparable to core programs and types of work assignments in general population. Such incarcerated persons shall also have access to additional out-of-cell, trauma-informed therapeutic programming aimed at promoting personal development, addressing underlying causes of problematic behavior resulting in placement in a residential rehabilitation unit, and helping prepare for discharge from the unit and to the community.

(vi) If the department establishes that a person committed an act defined in subparagraph (ii) of paragraph (k) of this subdivision while in segregated confinement or a residential rehabilitation unit and poses a significant and unreasonable risk to the safety and security of other incarcerated persons or staff, the department may restrict such person's participation in programming and out-of-cell activities as necessary for the safety of other incarcerated persons and staff. If such restrictions are imposed, the department must provide at least four hours out-of-cell time daily, including at least two hours of therapeutic programming and two hours of recreation, and must make reasonable efforts to reinstate access to programming as soon as possible. In no case may such restrictions extend beyond fifteen days unless the person commits a new act defined herein justifying restrictions on program access, or if the commissioner and, when appropriate, the commissioner of mental health personally reasonably determine that the person poses an extraordinary and unacceptable risk of imminent harm to the safety or security of incarcerated persons or staff. Any extension of program restrictions beyond fifteen days must be meaningfully reviewed and approved at least every fifteen days by the commissioner and, when appropriate, by the commissioner of mental health. Each review must consider the impact of therapeutic programming provided during the fifteen-day period on the person's risk of imminent harm and the commissioner must articulate in writing, with a copy provided to the incarcerated person, the specific reason why the person currently poses an extraordinary and unacceptable risk of imminent harm to the

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 258 of 353

Bradshaw v. Annucci, Not Reported in Fed. Supp. (2023)
2023 WL 4744735

safety or security of incarcerated persons or staff. In no case may restrictions imposed by the commissioner extend beyond ninety days unless the person commits a new act defined herein justifying restrictions on program access.

(m) (i) Any sanction imposed on an incarcerated person requiring segregated confinement shall run while the person is in a residential rehabilitation unit and the person shall be discharged from the unit before or at the time such sanction expires. If a person successfully completes his or her rehabilitation plan before the sanction expires, the person shall have a right to be discharged from the unit upon such completion.

(ii) If an incarcerated person has not been discharged from a residential rehabilitation unit within one year of initial admission to such a unit or is within sixty days of a fixed or tentatively approved date for release from a correctional facility, he or she shall have a right to be discharged from the unit unless he or she committed an act listed in subparagraph (ii) of paragraph (k) of this subdivision within the prior one hundred eighty days and he or she poses a significant and unreasonable risk to the safety or security of incarcerated persons or staff. In any such case the decision not to discharge such person shall be immediately and automatically subjected to an independent review by the commissioner and the commissioner of mental health or their designees. A person may remain in a residential rehabilitation unit beyond the time limits provided in this section if both commissioners or both of their designees approve this decision. In extraordinary circumstances, a person who has not committed an act listed in subparagraph (ii) of paragraph (k) of this subdivision within the prior one hundred eighty days, may remain in a residential rehabilitation unit beyond the time limits provided in this section if both the commissioner and the commissioner of mental health personally determine that such individual poses an extraordinary and unacceptable risk of imminent harm to the safety or security of incarcerated persons or staff.

**\*26** (iii) There shall be a meaningful periodic review of the status of each incarcerated person in a residential rehabilitation unit at least every sixty days to assess the person's progress and determine if the person should be discharged from the unit. Following such periodic review, if the person is not discharged from the unit, program and mental health staff shall specify in writing the reasons for the determination and the program, treatment, service, and/or corrective action required before discharge. The incarcerated person shall be given access to the programs, treatment and services specified, and shall have a right to be discharged from the residential rehabilitation unit upon the successful fulfillment of such requirements.

(iv) When an incarcerated person is discharged from a residential rehabilitation unit, any remaining time to serve on any underlying disciplinary sanction shall be dismissed. If an incarcerated person substantially completes his or her rehabilitation plan, he or she shall have any associated loss of good time restored upon discharge from the unit

In light of the foregoing statutory language, and mindful of the Second Circuit's directive that a pro se plaintiff's pleadings must be liberally construed, the Court finds that plaintiff's due process claims against defendants Stickney, Bishop, Uhler, Gravlin, Veneske, and Annucci related to restrictions imposed with respect to his RRU confinement survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### 12. Conspiracy Claims

"To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors ...; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). A plaintiff must "make an effort to provide some details of time and place and the alleged effects of the conspiracy ... [including] facts to demonstrate that the defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Warren v. Fischl*, 33 F. Supp. 2d 171, 177 (E.D.N.Y. 1999) (citations omitted). Vague and conclusory allegations that defendants have engaged in a conspiracy must be dismissed. *Ciambriello v. County of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002); *see also Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss.").

The complaint asserts conspiracy claims against defendants Tyler, Phillips, Osborn, Robare, Keleher, Harmer, Gravlin, Hooper, and McGee. Compl. at 44-45.

As an initial matter, the complaint is devoid of any details regarding an agreement entered into between two or more of the named defendants to violate plaintiff's constitutional rights. For example, the complaint lacks any allegations which plausibly suggest that any of the named defendants involved in the alleged use-of-force incidents or housing plaintiff with an inmate who assaulted him, agreed, in advance, to subject plaintiff to physical harm. In any event, plaintiff's excessive force and failure-to-intervene claims against defendants Tyler, Phillips, Osborn, Robare, Keleher, Harmer, and Gravlin have survived sua sponte review, and plaintiff need not establish that these officials agreed in advance to violate his constitutional rights in order to succeed on these claims. *See Clark v. City of Oswego*, No. 5:03-CV-202 (NAM/DEP), 2007 WL 925724, at *7 (N.D.N.Y. Mar. 26, 2007) ("A plaintiff asserting a Section 1983 conspiracy claim must first prove a violation of the underlying constitutional right, ..., or in other words, a civil conspiracy claim do[es] not set forth an independent cause of action but rather is sustainable only after an underlying tort claim has been established[.]" (internal quotation marks and citations omitted)); *see also Droz v. McCadden*, 580 F.3d 106, 109 (2d Cir. 2009), as amended (Oct. 7, 2009) ("Because neither of the underlying section 1983 causes of action can be established, the claim for conspiracy also fails."); *DeStefano v. Duncanson*, No. 08-CV-3419, 2011 WL 651452, at *4 (S.D.N.Y. Feb. 10, 2011) ("A Section 1983 conspiracy claim against private individuals will stand 'only insofar as the plaintiff can prove the sine qua non of a § 1983 action: the violation of a federal right.' ") (quoting *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995)). Furthermore, insofar as plaintiff asserts conspiracy claims against defendants Hooper and McGee based on allegations that these officials prepared false reports regarding the Third Assault in an effort to "conceal" the wrongdoing, Compl., ¶¶ 23, the alleged creation of false reports by officials who were not present during the alleged use-of-force incident is not enough to plausibly suggest participation in an agreement to violate plaintiff's constitutional rights. *See Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (dismissing the plaintiff's conspiracy claim arising from allegations that the defendants conspired to retaliate against him by filing a false misbehavior report); *Lewis v. Havernack*, No. 9:12-CV-0031 (GLS/DEP), 2013 WL 1294606, at *11 (N.D.N.Y. Mar. 28, 2013) ("Here, the allegation that defendants Chapman and Imfeld conspired to file a false misbehavior report against plaintiff is not cognizable under section 1983 because plaintiff has no general constitutional right to be free from being falsely accused in a misbehavior report."), *report and recommendation adopted by* 2013 WL 1294592 (N.D.N.Y. Mar. 28, 2013).

**\*27** Accordingly, plaintiff's conspiracy claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

## IV. PRELIMINARY INJUNCTION MOTION

"In general, district courts may grant a preliminary injunction where a plaintiff demonstrates 'irreparable harm' and meets one of two related standards: 'either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party.' " *Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir. 2014) (quoting *Lynch v. City of N.Y.*, 589 F.3d 94, 98 (2d Cir. 2009) (internal quotation marks omitted)). However, when the moving party seeks a "mandatory injunction that alters the status quo by commanding a positive act," the burden is even higher. *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 (2d Cir. 2011) (citing *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 n.4 (2d Cir. 2010) (internal quotation marks omitted)). A mandatory preliminary injunction "should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." *Cacchillo*, 638 F.3d at 406 (citing *Citigroup Global Mkts.*, 598 F.3d at 35 n.4) (internal quotation marks omitted); *see also Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995) (a plaintiff seeking a mandatory injunction must make a "clear" or "substantial" showing of a likelihood of success on the merits of his claim). The same standards used to review a request for a preliminary injunction govern consideration of an application for a temporary restraining order. *Local 1814, Int'l Longshoremen's Ass'n, AFL-CIO v. New York Shipping Ass'n, Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992); *Perri v. Bloomberg*, No. 06-CV-0403, 2008 WL 2944642, at * 2 (E.D.N.Y. Jul. 31,

2008). The district court has wide discretion in determining whether to grant preliminary injunctive relief. *Moore v. Consol. Edison Co. of New York, Inc.*, 409 F.3d 506, 510 (2d Cir. 2005).

Plaintiff's request for injunctive relief seeks an order enjoining defendants Annucci, Uhler, Bishop, and Dumas from (1) assigning officials "involved in assaulting plaintiff from assuming a post or supervising an area where plaintiff is located," (2) "assigning plaintiff to double-bunk cells or having [him] remain in a double-cell [for] more than 60 days unless he volunteer[s]," (3) "continuing plaintiff's confinement in the RRU[,]" and (4) "denying [him] medical care[.]" *See* Preliminary Injunction Motion at 1.

After plaintiff filed his motion, he notified the Court in another one of his pending actions that he has been transferred to Great Meadow Correctional Facility. *See Bradshaw v. Annucci*, Dkt. No. 150.

In light of plaintiff's transfer, and the absence of any credible evidence that he is likely to continue suffering, at his new facility, the same alleged harm that forms the basis of his Preliminary Injunction motion, his request for injunctive relief is denied as moot. *See Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996) ("It is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility."); *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) ("In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility.").

## V. CONCLUSION

 **\*28 WHEREFORE**, it is hereby

**ORDERED** that plaintiff's application for leave to proceed IFP (Dkt. No. 2) is **GRANTED** in accordance with 28 U.S.C. § 1915(g) because plaintiff has made a preliminary showing that he is entitled to the "imminent danger" exception; and it is further

**ORDERED** that the Clerk provide the Superintendent of the facility designated by plaintiff as his current location with a copy of plaintiff's inmate authorization form (Dkt. No. 3), and notify the official that this action has been filed and that plaintiff is required to pay to the Northern District of New York the statutory filing fee of $350 in installments, over time, pursuant to 28 U.S.C. § 1915; and it is further

**ORDERED** that the Clerk is directed to update the docket to add any officials identified herein as defendants who are not currently recognized as such; and it is further

**ORDERED** that the following claims **SURVIVE** sua sponte review: (1) plaintiff's retaliation claims against defendants Osborn, Bailey, Menard, Trombley, Marshall, Keleher, Plonka, Gettman, Gravlin, Bishop, Mitchell, Fletcher, Veneske, Rowe, Lamica, and Keating (i.e., each of plaintiff's retaliation claims other than the Second Retaliation Claim against defendant Locke, the Third Retaliation Claim, the Seventh Retaliation Claim, the Twelfth Retaliation Claim, and the Fifteenth Retaliation Claim); (2) plaintiff's mail tampering claims against defendants Lamica, Locke, Keating, Lord, John Doe #6, and Ayer; (3) plaintiff's free exercise claims against defendants Bishop, Stickney, Uhler, and Annucci based on the denial of congregate services and religious meals; (4) plaintiff's excessive force and failure-to-intervene claims against defendants Osborn, Corrections Sergeant John Doe #1, Phillips, Tyler, Menard, Bailey, Trombley, Cymbrak, Mitchell, Chase, Marshall, Gettman, Morrison, Corrections Sergeant John Doe #2, Corrections Officer John Doe #3, Gravlin, Robare, Carter, Corrections Officer John Doe #4, Plonka, Keleher, and Harmer (i.e., the excessive force and failure-to-intervene claims related to each of the ten assaults identified in the recitation of facts); (5) plaintiff's failure-to-protect claims against defendants McQuinn, Waite, Bishop, Uhler, Fletcher, Osborn, Rowe, Veneske, Nichols, Holmes, Annucci, Keleher, Debyah, Gravlin, North, Harrigan, Classification and Movement Corrections Officers John Doe #1 and John Doe #2, Orbegozo, Corrections Sergeant John Doe #1, Plonka, Gettman, Carter, Sturgen, Lewis, Sharpe, Dumas, Hollenbeck, DeCosse, Gordon, and Jubert (i.e., the failure-to-protect claims related to each of the nine inmate assaults identified in the recitation of facts); (6) plaintiff's conditions-of-confinement claim against defendant Gravlin based on inadequate heating in plaintiff's housing unit between September 25 and October 2, 2021; (7) plaintiff's conditions-of-

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 261 of 353

Bradshaw v. Annucci, Not Reported in Fed. Supp. (2023)

2023 WL 4744735

confinement claim against defendants Austin Martin and Marshall based on defendant Martin removing plaintiff's mattress from his cell, with approval from defendant Marshall, from December 6 to December 11, 2021; (8) plaintiff's conditions-of-confinement claim against defendant Corrections Sergeant Jane Doe based on this official "compell[ing] plaintiff to remain outside to stand in the freezing cold weather for about five or six hours while the officers and defendant Jane Doe remained inside the facility or on the bus with other prisoners[,]"; (9) plaintiff's conditions-of-confinement claim against defendants Gravlin, Veneske, Uhler, and Bishop based on these officials denying plaintiff in-cell cleaning supplies between April and September, 2022, and December, 2022 and January, 2023; (10) plaintiff's conditions-of-confinement claims against defendants Uhler, Bishop, and Annucci based on excessive restrictive confinement in the SHU from August 1, 2021 to April 12, 2022; (11) plaintiff's conditions-of-confinement claims against defendants S. Martin, Uhler, Rodriguez, Terriah, Bishop, LaPlant, Stickney, and Annucci based on excessive restrictive confinement in the RRU; (12) plaintiff's medical indifference claims against defendants Dumas, Gravell, Jane Doe #1, and Jane Doe #2; and (13) plaintiff's due process claims against defendants Stickney, Bishop, Uhler, Gravlin, Veneske, and Annucci based on the nature of his confinement in the RRU; and it is further

**\*29  ORDERED** that all remaining Section 1983 claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted;[10] and it is further

[10]   Should plaintiff seek to pursue any of the claims dismissed without prejudice, including any claim dismissed against a terminated defendant, he must file an amended complaint. Any amended complaint, which shall supersede and replace the original complaint in its entirety, must allege claims of misconduct or wrongdoing against each named defendant which plaintiff has a legal right to pursue, and over which jurisdiction may properly be exercised. Any amended complaint filed by plaintiff must also comply with the pleading requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure. Plaintiff's deadline to amend his pleading as a matter of course is set forth in Rule 15(a) of the Federal Rules of Civil Procedure.

**ORDERED** that the Preliminary Injunction Motion (Dkt. No. 4) is **DENIED without prejudice** as set forth above; and it is further

**ORDERED** that the Clerk shall **TERMINATE** the following individuals as defendants in this action: Hastings, Peterson, Spinner, Hooper, McGee, and John Doe #5; and it is further

**ORDERED** that upon receipt from plaintiff of the documents required for service, the Clerk shall issue summonses and forward them, along with copies of the complaint, to the United States Marshal for service upon defendants Osborn, Bailey, Menard, Trombley, Marshall, Keleher, Plonka, Gettman, Gravlin, Bishop, Mitchell, Fletcher, Veneske, Rowe, Lamica, Keating Locke, Lord, Ayer, Stickney, Uhler, Annucci, Phillips, Tyler, Cymbrak, Chase, Morrison, Robare, Carter, Harmer, McQuinn, Waite, Nichols, Holmes, Debyah, North, Harrigan, Orbegozo, Sturgen, Lewis, Sharpe, Dumas, Hollenbeck, DeCosse, Gordon, Jubert, Austin Martin, S. Martin, Rodriguez, Terriah, LaPlant, Dumas, and Gravell.[11] The Clerk shall forward a copy of the summons and complaint by electronic mail to the Office of the New York State Attorney General, together with a copy of this Decision and Order; and it is further

[11]   Summonses will not issue for the "Doe" defendants because the U.S. Marshal cannot effect service on an individual who has not been identified by name.

**ORDERED** that a response to the complaint be filed by defendants Osborn, Bailey, Menard, Trombley, Marshall, Keleher, Plonka, Gettman, Gravlin, Bishop, Mitchell, Fletcher, Veneske, Rowe, Lamica, Keating Locke, Lord, Ayer, Stickney, Uhler, Annucci, Phillips, Tyler, Cymbrak, Chase, Morrison, Robare, Carter, Harmer, McQuinn, Waite, Nichols, Holmes, Debyah, North, Harrigan, Orbegozo, Sturgen, Lewis, Sharpe, Dumas, Hollenbeck, DeCosse, Gordon, Jubert, Austin Martin, S. Martin, Rodriguez, Terriah, LaPlant, Dumas, and Gravell, or their counsel, as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that plaintiff must take reasonable steps to ascertain the identity of the remaining "Doe" defendants and, when identified, seek to amend the complaint to add these individuals as defendants in this action pursuant to Federal Rule of Civil Procedure 15(a); and it is further

 **\*30  ORDERED** that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. Plaintiff must comply with requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions; motions will be decided on submitted papers, without oral argument, unless otherwise ordered by this Court. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; his failure to do so will result in the dismissal of this action**; and it is further

**ORDERED** that the Clerk shall serve a copy of this Decision and Order on plaintiff.


**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2023 WL 4744735

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

---

2007 WL 607341
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Paul CIPRIANI, Plaintiff,

v.

Harry C. BUFFARDI, Sheriff; Schenectady County Jail; Cheryl Clark, M.D.; Kevin J. O'Connor, Defendants.

No. 9:06-CV-0889(LEK/DRH).
|
Feb. 20, 2007.

**Attorneys and Law Firms**

Paul Cipriani, Plaintiff, pro se.

### DECISION and ORDER

LAWRENCE E. KAHN, U.S. District Judge.

**\*1** Presently before the Court is an amended complaint filed by Plaintiff Paul Cipriani ("Plaintiff"). Amended Compl. (Dkt. No. 10). This amended complaint was submitted in compliance with the Memorandum-Decision and Order issued by this Court on November 27, 2006 ("November Order"). Mem.-Decision and Order (Dkt. No. 7).

In its November Order, the Court advised plaintiff that he must set forth facts demonstrating that Defendants were personally involved in a violation of Plaintiff's rights. *Id.* at 4. Plaintiff was also advised that in order to establish the liability of a municipality, he must allege a custom or policy which is the moving force behind the violation. *Id.*

In his amended complaint, Plaintiff names thirteen defendants and asserts numerous claims against them arising from his confinement at Schenectady County Jail. Amended Compl. (Dkt. No. 10).

The Court notes that plaintiff has not named "Schenectady County Jail," "Cheryl Clark," or "Kevin J. O'Connor" in his amended Complaint. Therefore, "Schenectady County Jail," "Cheryl Clark," and "Kevin J. O'Connor" are hereby dismissed as defendants in this action.

The Court also notes that Plaintiff's amended Complaint mentions "Mr. Booth" and "Mr. Purdy" only in the caption, and fails to allege any act or omission by these individuals. Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff. *Gonzalez v. City of New* York, No. 97 CIV. 2246(MGC), 1998 WL 382055, at \*2 (S.D.N.Y. July 9, 1998) (citing *Crown v. Wagenstein,* No. 96 CIV. 3895(MGC), 1998 WL 118169, at \*1 (S.D.N.Y.Mar.16, 1998) (mere inclusion of warden's name in complaint insufficient to allege personal involvement) and *Taylor v. City of New York,* 953 F.Supp. 95, 99 (S.D.N.Y.1997)). Because plaintiff has failed to allege any personal involvement on the part of defendants "Mr. Booth" and "Mr. Purdy", they are hereby dismissed as defendants in this action.

In his amended Complaint, Plaintiff alleges that the remaining Defendants committed various violations of his constitutional rights, including inadequate medical care, breach of doctor-patient confidentiality, excessive force, denial of due process in a disciplinary proceeding, and interference with the grievance process. Amended Compl. (Dkt. No. 10).

2007 WL 607341

Based on the foregoing, Plaintiff's amended complaint as against the remaining Defendants is accepted for filing.

Plaintiff is advised, however, that the U.S. Marshals cannot effect service on a "John Doe" defendant. In the event that plaintiff wishes to pursue this claim against the "John Doe" defendants named in the amended Complaint, he must take reasonable steps to ascertain their identities. Plaintiff may then file a Motion to amend his complaint and seek leave of the Court to add such individuals, by name, as defendants to this lawsuit. Plaintiff is further advised that if these individuals are not timely served, the action will be against them will be dismissed.

**\*2**  WHEREFORE, it is hereby

**ORDERED,** that "Mr. Booth," "Mr. Purdy," "Schenectady County Jail," "Cheryl Clark," and "Kevin J. O'Connor" are **DISMISSED** as defendants in this action, and it is further

**ORDERED,** that the Clerk revise the docket to add "Schenectady County," "Mr. Burns," "Mr. Jones," "Mr. Adams," "Ms. Jones," "Ms. Hull," "John Doe # 1," "John Doe # 7," "John Doe # 10," and "Loraine Walker" as defendants in this action, and it is further

**ORDERED,** that the Clerk issue summonses naming the remaining defendants and forward them, along with copies of the amended Complaint (Dkt. No. 10), to the United States Marshal for service upon the defendants, together with a copy of this Order. [1]  The Clerk shall also forward a copy of the summons and amended Complaint by mail to the County Attorney for Schenectady County, together with a copy of this Order, and it is further

[1]     Plaintiff was granted leave to proceed with this action *in forma pauperis.* Mem.-Decision and Order (Dkt. No. 7).

**ORDERED,** that a formal response to Plaintiff's amended Complaint be filed by Defendants or their counsel as provided for in Rule 12 of *the Federal Rules of Civil Procedure* subsequent to service of process on Defendants, and it is further

**ORDERED,** that Plaintiff take reasonable steps to ascertain the identities of any other individual(s) that purportedly violated Plaintiff's civil and/or constitutional rights and, if appropriate, file a Motion to amend his complaint and add such individuals, by name, as defendants to this lawsuit, and it is further

**ORDERED,** that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. *Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of it was mailed to all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a proper certificate of service will be returned, without processing.* Plaintiff must comply with requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions, which must be returnable before the assigned Magistrate Judge with proper allowance for notice as required by the Rules. *Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel of any change in his address; his failure to do so will result in the dismissal of this action.* All motions will be decided on submitted papers without oral argument unless otherwise ordered by the Court; and it is further

**ORDERED,** that the Clerk serve a copy of this Order on plaintiff by regular mail.

**IT IS SO ORDERED.**

2007 WL 607341

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 607341

---

**End of Document**                                   © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 3063725
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Wayne R. SMITH, Plaintiff,

v.

ONEIDA COUNTY SHERIFF DEPARTMENT, et al., Defendants.

6:24-CV-687 (GTS/MJK)

|

Signed June 20, 2024

**Attorneys and Law Firms**

WAYNE R. SMITH, Plaintiff, pro se.

MITCHELL J. KATZ, U.S. Magistrate Judge.

### ORDER and REPORT-RECOMMENDATION

Mitchell J. Katz, United States Magistrate Judge

**\*1** TO THE HONORABLE GLENN T. SUDDABY, United States District Court Judge:

Plaintiff commenced this action on May 20, 2024 by filing a complaint (Dkt. No. 1) together with a motion for leave to proceed in forma pauperis (Dkt. No. 2). On June 7, 2024, plaintiff filed an amended complaint ("Amended Complaint") (Dkt. No. 4) together with an amended motion for leave to proceed in forma pauperis ("Amended IFP Application") (Dkt. No. 5). The Clerk has sent to the court for review the Amended Complaint brought pursuant to 42 U.S.C. § 1983 as well as the Amended IFP Application.

### I. <u>Amended IFP Application</u>

Plaintiff's Amended IFP Application declares that he is unable to pay the filing fee. (Dkt. No. 5). After reviewing plaintiff's application, this court finds that he is financially eligible for IFP status.

However, in addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the Amended Complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915 (e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must consider whether the Amended Complaint lacks an arguable basis in law or in fact. *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and 28 U.S.C. § 1915. Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *See Neitzke*, 490 U.S. at 327; *see also Harkins v. Eldredge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward pro se litigants and must use extreme caution in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint sua sponte even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).

In addition, Fed. R. Civ. P. 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 does not require detailed factual allegations, it does "demand[ ] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Houston v. Collerman*, No. 9:16-CV-1009 (BKS/ATB), 2016 WL 6267968, at *2 (N.D.N.Y. Oct. 26, 2016) (quoting *Ashcroft*, 556 U.S. at 678). A pleading that contains allegations that " 'are so vague as to fail to give the defendants adequate notice of the claims against them' is subject to dismissal." *Id.* (citing *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009)).

## II. Amended Complaint

**\*2** The Amended Complaint alleges violations of plaintiff's constitutional rights pursuant to 42 U.S.C. § 1983. (Dkt. No. 4).

Plaintiff alleges that he was assaulted at his residence on November 5, 2023 by a process server. (Amended Complaint at 4).[1] Specifically, plaintiff alleges that he instructed a process server to leave his property after the process server identified himself as a law enforcement officer, but the process server refused. (*Id.*). Plaintiff alleges that he did not see a badge or uniform identifying the process server as a police officer. (*Id.*). Plaintiff further alleges that he informed the process server that he had a "guard dog." (*Id.*). The process server proceeded to pull out a large can of mace as plaintiff "was getting 'Henry,' [plaintiff's] German Shep[p]ard[.]" (*Id.*).

---

1    The page references to the Amended Complaint are consistent with those assigned by CM/ECF.

Plaintiff alleges that he then proceeded to the front door with Henry on a leash. (*Id.*). When plaintiff opened the door, the process server sprayed plaintiff and his dog with mace and continued to do so, even after the door was shut. (*Id.*). Thereafter, plaintiff called 911 and two Oneida County Sheriff Deputies responded. (*Id.* at 5). Plaintiff recognized the female officer as Deputy Connelly but was unable to identify the male officer, whom plaintiff refers to in the Amended Complaint as Deputy John Doe. (*Id.*). After listening to plaintiff and the process server explain their respective "side[s]," the defendant deputies arrested plaintiff for menacing and harassment. (*Id.*). Plaintiff was issued an appearance ticket to appear in Westmoreland Town Court. (*Id.*). Plaintiff further alleges that Deputies Connelly and Doe "refused to consider the camera footage available to them ... at the scene." (*Id.*). According to plaintiff, the Oneida County District Attorney's Office dismissed the charges against him after reviewing the security camera footage of the incident. (*Id.*).

In his request for relief, plaintiff seeks $10,000,000 in damages for the "gross violation of [his] constitutional rights." (*Id.* at 6).

## III. Oneida County Sheriff Department

The Oneida County Sheriff's Department is not a proper party to this action. "A police department cannot sue or be sued because it does not exist separate and apart from the municipality and does not have its own legal identity." *Baker v. Willett*, 42 F. Supp. 2d 192, 198 (N.D.N.Y. 1999) (dismissing claims against county sheriff's department) (citations omitted); *see also Jackson v. Cnty. of Nassau*, No. 07-CV-245, 2010 WL 335581, at *5 (E.D.N.Y. Jan. 22, 2010) ("Under New York law, departments which are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and cannot sue or be sued."); *La Grande v. Town of Bethlehem Police Dep't*, No. 08-CV-0738 (LEK/DRH), 2009 WL 2868231, at *2 (N.D.N.Y. Sept. 1, 2009) ("Since the Bethlehem Police Department cannot be sued pursuant to 42 U.S.C. § 1983, [the plaintiff's] [c]omplaint is dismissed as against the Town of Bethlehem Police Department."); *Jenkins v. Liadka*, No. 10-CV-1223 (GTS/DEP), 2012 WL 4052286, at *5 (N.D.N.Y. Sept. 13, 2012) ("Because the Syracuse Police Department is merely an administrative arm of the City of Syracuse, it is not a proper defendant.").

2024 WL 3063725

**\*3**  Even if plaintiff had sued the appropriate municipal entity – i.e. Oneida County – his allegations do not sufficiently allege *Monell* liability. When a plaintiff sues a municipality under § 1983, it is insufficient for the plaintiff to allege that one of the municipality's employees or agents engaged in some wrongdoing. The plaintiff must demonstrate that the municipality itself caused the violation of the plaintiff's rights. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable under this section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation.") (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 692 (1978)); *see also Cash v. Cnty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011). Specifically, to state a § 1983 claim against a municipality, the plaintiff must allege facts showing (1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *See Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997) (internal citations omitted).

For the foregoing reasons, the court recommends dismissing plaintiff's Amended Complaint as asserted against the Oneida County Sheriff's Department with prejudice. The court further recommends declining to interpret plaintiff's allegations to plausibly allege *Monell* liability against Oneida County, as plaintiff does not refer to any policy, custom, or practice by a municipality that caused a violation of his constitutional rights. However, in deference to plaintiff's pro se status, the court recommends that plaintiff be provided with an opportunity to amend his Amended Complaint to the extent he can, in good faith, assert a *Monell* claim against Oneida County, including allegations suggesting that a county policy, custom, or practice caused any alleged constitutional violations.

## IV. <u>Oneida County Sheriff Maciol</u>

It has long been established that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983[,]" and supervisory officials may not be held liable merely because they held a position of authority. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted); *see also Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996); *Grullon v. City of New Haven*, 720 F.3d 133, 138-39 (2d Cir. 2013). In *Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995), the Second Circuit articulated standards for courts to use when determining personal involvement or supervisory liability.[2]

[2]    These factors were:
> (1) the defendant participated directly in the alleged constitutional violation;
> (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong;
> (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;
> (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or
> (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.
>
> *Colon*, 58 F.3d at 873.

However, after the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the factors articulated in *Colon* were called into question. District courts, including the Northern District of New York[3] noted the possibility that the *Colon* factors were no longer viable. Eventually, the Second Circuit revised its standard for determining personal involvement or supervisory liability, finding that the *Colon* factors are no longer controlling and articulating the proper standard for the courts in this circuit to utilize. *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. at 676).

[3]    *See e.g. Vance v. State of New York*, No. 9:19-CV-748 (BKS/ATB), 2020 WL 7481585, at \*3 & n.3 (N.D.N.Y. Nov. 30, 2020) (discussing cases), *report-recommendation adopted*, 2020 WL 7480955 (N.D.N.Y. Dec. 18, 2020).

**\*4**  Joining other circuits, the Second Circuit held that, after *Iqbal*, there is no "special" rule for supervisory liability. *Id.*

Smith v. Oneida County Sheriff Department, Slip Copy (2024)

2024 WL 3063725

Instead, a plaintiff must plead and prove 'that each Government official defendant, through the official's own individual actions, has violated the Constitution.' *Iqbal*, 556 U.S. at 676 ... 'The factors necessary to establish a [§ 1983] violation will vary with the constitutional provision at issue' because the elements of different constitutional violations vary. *Id.* The violation must be established against the supervisory official directly.

*Id.* (quoting *Iqbal*, 556 U.S. at 676). The supervisor must have committed the violation him or herself, not by the supervision of others who committed the violation. *Id.* Likewise, the supervisor must personally display the requisite state of mind, depending on the violation at issue. *Id.*

Here, other than being listed as a named defendant, the Amended Complaint is devoid of any allegations against or that otherwise reference Robert Maciol. The fact that Robert Maciol is the Oneida County Sheriff, without more, does not mean that he was personally involved with the alleged violation/deprivation of plaintiff's constitutional rights by his subordinates. The court therefore recommends that the Amended Complaint be dismissed against Robert Maciol without prejudice.

**V. Fourth Amendment Rights/False Arrest/Imprisonment**

**A. Legal Standards**

These three claims as asserted in the Amended Complaint are duplicative of one another. A section 1983 claim for false arrest or false imprisonment "rest[s] on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). "False arrest is simply false imprisonment accomplished by means of an unlawful arrest." *Jenkins v. City of N.Y.*, 478 F.3d 76, 88 n.10 (2d Cir. 2007). Such claims are one and the same because "[f]alse arrest and false imprisonment overlap; the former is a species of the latter." *Wallace v. Kato*, 549 U.S. 384, 388, 127 S. Ct. 1091, 166 L. Ed. 2d 973 (2007). The elements of a Fourth Amendment false arrest/imprisonment claim under 42 U.S.C. § 1983 are the same as those for a false arrest claim under New York law. *Kraft v. City of New York*, 696 F. Supp. 2d 403, 418 (S.D.N.Y. 2010). The New York State standard for false arrest requires that: " '(1) the defendants intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged.' " *Sethi v. Nassau County*, No. 11-CV-6380, 2014 WL 2526620, at *3 (E.D.N.Y. June 3, 2014) (quoting *Jocks v. Tavernier*, 316 F.3d 128, 134-35 (2d Cir. 2003)). An arrest is privileged if it is based on probable cause. *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007) ("The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest.") (citations and quotations omitted).

**B. Analysis**

Plaintiff has pled sufficient facts in the Amended Complaint to survive initial review as against defendant Deputies Connelly and Doe for false arrest/imprisonment.[4] The Amended Complaint alleges the circumstances leading to plaintiff's arrest, the charges ultimately brought against him because of the arrest, and arguably the status of the underlying criminal proceedings.[5]

[4]    In making this determination this court makes no finding as to whether any claims would survive a properly supported motion to dismiss or one for summary judgment.

[5]    In *Heck v. Humphrey*, 512 U.S. 477 (1994) the United States Supreme Court held that a section 1983 action seeking damages is not cognizable if a decision in favor of the plaintiff would necessarily invalidate a criminal conviction unless the conviction or sentence had been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal habeas court. 512 U.S. at 486-87. Although the Amended Complaint alleges that the Oneida County District Attorney's office dismissed the menacing and harassment charges, plaintiff lists the Oneida County Jail as his current address. At this juncture, the court is recommending that plaintiff's false arrest claims survive initial review based on plaintiff's representation that the underlying charges relevant to this action have already

been resolved in his favor. If it is later determined that plaintiff's charges are still pending to some extent, it is possible that plaintiff's false arrest claims may be barred by *Heck*.

**\*5** Because the Amended Complaint asserts claims against an individual whose name is not known to plaintiff, service of process cannot be effectuated on Deputy John Doe until he has been identified by name. If the district court accepts this recommendation, and plaintiff wishes to pursue his claims against defendant Deputy John Doe, he must take reasonable steps to ascertain his identity through discovery. Upon learning the identity of the unnamed defendant, plaintiff must amend the operative complaint to properly name that individual as a party. If plaintiff fails to ascertain the identity of the Deputy John Doe to permit timely service of process, all claims against that individual will be dismissed. [6]

[6]     Rule 4 of the Federal Rules of Civil Procedure require that a party be served within 90 days of issuance of the summons, absent a court order extending that period. Fed. R. Civ. P. 4(m). The Court's local rules shorten the time for service from 90 days under Rule 4(m) to 60 days. N.D.N.Y. L.R. 4.1(b).

## VI. Opportunity to Amend

### A. Legal Standards

Generally, before the court dismisses a pro se complaint or any part of the complaint sua sponte, the court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *See Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

### B. Application

The court recommends that the claims against the Oneida County Sheriff's Department be dismissed with prejudice. However, in deference to plaintiff's pro se status, the court recommends that plaintiff be provided with an opportunity to amend to clarify what, if any, claims he maintains against the County of Oneida, including facts suggesting that a county policy, custom, or practice caused the alleged constitutional violations.

The court further recommends dismissing the Amended Complaint as against Robert Maciol. To the extent defendant Maciol was personally involved in the alleged violation of plaintiff's constitutional rights, plaintiff should be granted leave to amend his complaint to state facts and circumstances in support of his claim against this individual defendant.

**WHEREFORE**, based on the findings above, it is **ORDERED**, that plaintiff's amended motion to proceed IFP (Dkt. No. 5) be **GRANTED**, [7] and it is

[7]     Although his IFP Application has been granted, plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

**RECOMMENDED**, that the district court **DISMISS PLAINTIFF'S AMENDED COMPLAINT IN ITS ENTIRETY, WITH PREJUDICE, only** as to defendant Oneida County Sheriff's Department, and it is

**RECOMMENDED**, that the district court **DISMISS PLAINTIFF'S AMENDED COMPLAINT IN ITS ENTIRETY, WITHOUT PREJUDICE,** as to defendant Robert Maciol, and it is

**RECOMMENDED**, that plaintiff's claims for false arrest/imprisonment proceed as against defendants Connelly and Doe, and it is

2024 WL 3063725

**RECOMMENDED**, that if the District Judge adopts this Order and Report-Recommendation, plaintiff be given thirty (30) days from the date of the District Judge's order, within which to submit a proposed second amended complaint to the court for its consideration, and that plaintiff be advised that **any amended pleading must be a COMPLETE PLEADING, WHICH WILL SUPERCEDE THE AMENDED COMPLAINT**, and that plaintiff must include all the remaining facts and causes of action in the second amended complaint. **No facts or claims from the original complaint may be incorporated by reference**, and it is

**\*6  RECOMMENDED,** that if the District Court adopts this Order and Report-Recommendation, and plaintiff files a proposed second amended complaint, the proposed pleading be returned to me for review, and it is

**RECOMMENDED**, that if the District Court adopts this Order and Report-Recommendation, and plaintiff does not elect to further amend his Amended Complaint, the case be returned to me for any orders relating to service of the Amended Complaint on the remaining defendants, and it is

**ORDERED**, that while plaintiff may file objections to this Order and Report-Recommendation, before plaintiff submits any amended pleading, he should wait for the District Court to rule on the above Orders and Recommendations, and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation on plaintiff by regular mail. [8]

[8]    The Clerk shall also provide plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Hum. Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

**All Citations**

Slip Copy, 2024 WL 3063725

---

**End of Document**      © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 4799461
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Wayne R. SMITH, Plaintiff,

v.

Robert MACIOL, Oneida County Sheriff; Oneida County Sheriff's Dept.; Connelly,
Oneida County Sheriff Deputy; and John Doe, Oneida County Sheriff Deputy, Defendants.

6:24-CV-0687 (GTS/MJK)
|
Signed November 15, 2024

**Attorneys and Law Firms**

WAYNE R. SMITH, 24-B-3346, Plaintiff, Pro Se, Collins Correctional Facility, P.O. Box 340, Collins, New York 14034.

### DECISION and ORDER

GLENN T. SUDDABY, United States District Judge

**\*1** Currently before the Court, in this *pro se* civil rights action filed by Wayne R. Smith ("Plaintiff") against the Oneida County Sheriff's Department and three of its employees ("Defendants"), is United States Magistrate Judge Mitchell J. Katz's Report-Recommendation recommending that the Court dismiss with prejudice Plaintiff's Amended Complaint to the extent it asserts claims against the Oneida County Sheriff's Department, that the Court dismiss without prejudice (to refiling in this action upon leave of the Court) Plaintiff's Amended Complaint to the extent it asserts claims against Oneida County Sheriff Robert Maciol, and that the Court permit Plaintiff's Amended Complaint to proceed for now to the extent that it asserts claims of false arrest and false imprisonment against Defendants Connelly and Doe. (Dkt. No. 7.) Plaintiff has not filed an Objection to the Report-Recommendation, and the deadline by which to do so has expired. (*See generally* Docket Sheet.) Instead, after the expiration of the Objection deadline, Plaintiff apparently attempted to file two different versions of a pleading labeled "Amended Complaint" (which, in actuality, were a Second Amended Complaint and Third Amended Complaint). (Dkt. Nos. 8, 10.) [1] In addition, Plaintiff has filed a motion to appoint counsel. (Dkt. No. 11.)

[1]     The Court notes that neither of the amended pleadings was indicated as being a "proposed" pleading. (Dkt. Nos. 8, 10.)

After carefully reviewing the relevant papers herein, including Magistrate Judge Katz's thorough Report-Recommendation, the Court can find no clear error in the Report-Recommendation: [2] Magistrate Judge Katz employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. (Dkt. No. 7.) As a result, the Report-Recommendation is accepted and adopted in its entirety for the reasons set forth therein. (*Id.*) To those reasons, the Court adds only two points.

[2]     When no objection is made to a report-recommendation, the Court subjects that report-recommendation to only a clear-error review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a clear-error review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.*; *see also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks omitted).

First, because Plaintiff had already filed an Amended Complaint before the issuance of the Report-Recommendation, he had no right to file, "as a matter of course" under Fed. R. Civ. P. 15(a)(1), either a Second Amended Complaint or Third Amended Complaint: rather, he had to "propose[ ]" that amended pleading, as indicated in the Report-Recommendation. (Dkt. Nos. 4, 7, 8, 10.) As a result, the Court will liberally construe those pleadings a *proposed* ones, and will direct the Clerk's Office to re-label Dkt. No. 8 as a "PROPOSED SECOND AMENDED COMPLAINT" and Dkt. No. 10 as a "PROPOSED THIRD AMENDED COMPLAINT."

 **\*2** Second, because Plaintiff had not yet had the benefit of this Court's ruling on the Report-Recommendation when he submitted either of the two above-referenced proposed amended pleadings, [3] the Court will give him thirty days from the entry of this Decision and Order in which to either (1) file a letter indicating which of his two prior proposed amended pleadings he wishes to submit for Magistrate Judge Katz' consideration, or (2) file a proposed Fourth Amended Complaint for Magistrate Judge Katz' consideration. Again, any amended pleading must be a complete pleading, which will supercede Plaintiff's Amended Complaint in all respects, may not incorporate by reference any portion of his Amended Complaint, and must include all remaining facts and causes of action. (To the extent that it does not so include such facts and causes of action, it will be deemed to have abandoned them.)

[3]     The Court is mindful of the Second Circuit's suggestion that it would not be an extension of special solicitude to a plaintiff to consider an amended pleading submitted by him before he had the benefit of a ruling on a pending report-recommendation. *Cf. Cresci v. Mohawk Valley Community College*, 693 F. App'x 21, 25 (2d Cir. June 2, 2017) ("The court's criticism of Cresci for failure to submit a proposed amended complaint before learning whether, and in what respects, the court would find deficiencies was unjustified, and the court's denial of leave to replead, simultaneously with its decision that the complaint was defective, effectively deprived Cresci of a reasonable opportunity to seek leave to amend.").

Finally, Plaintiff's motion to appoint counsel is denied without prejudice as unsupported by a showing of cause. It appears as though, to date, Plaintiff has been able to effectively litigate this action. Moreover, at this point, it appears that the case does not present issues that are novel or more complex than those raised in most civil rights cases. While it is possible that there will be conflicting evidence implicating the need for cross-examination at the time of the trial (as is the case in many actions brought under 42 U.S.C. § 1983 by *pro se* litigants), it is highly probable that this Court will appoint trial counsel at the final pretrial conference (should this case survive the filing of any dispositive motions). As a result, the Court is unaware of any special reasons why appointment of counsel at this time would be more likely to lead to a just determination of this action. *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994); *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986). Plaintiff is hereby notified that he may not file another motion for the appointment of counsel unless and until he can demonstrate that, in light of a specific change in circumstances, consideration of the above-referenced factors warrants the granting of such a motion.

**ACCORDINGLY**, it is

**ORDERED** that the Clerk's Office shall re-label Dkt. No. 8 as a "PROPOSED SECOND AMENDED COMPLAINT" and Dkt. No. 10 as a "PROPOSED THIRD AMENDED COMPLAINT"; and it is further

**ORDERED** that Magistrate Judge Katz's Report-Recommendation (Dkt. No. 7) is **ACCEPTED** and **ADOPTED** in its entirety; and it is further

**ORDERED** that Plaintiff's Amended Complaint (Dkt. No. 4) **SURVIVES** the Court's *sua sponte* review to the extent that it asserts claims of false arrest and false imprisonment against Defendants Connelly and Doe; and it is further

**ORDERED** that Plaintiff's Amended Complaint (Dkt. No. 4) is **DISMISSED with prejudice** to the extent it asserts claims against the Oneida County Sheriff's Department; and it is further

**\*3  ORDERED** that Plaintiff's Amended Complaint (Dkt. No. 4) is **DISMISSED without prejudice** (to refiling in this action, upon leave of the Court) to the extent it asserts claims against the Oneida County Sheriff Robert Maciol; and it is further

**ORDERED** that, if Plaintiff wishes to replead his claims against the Oneida County Sheriff Robert Maciol, he must, within **THIRTY (30) DAYS** from the entry of this Decision and Order, either (1) file a letter indicating which of his two prior proposed amended pleadings he wishes to submit for Magistrate Judge Katz' consideration, or (2) file a proposed Fourth Amended Complaint for Magistrate Judge Katz' consideration; and it is further

**ORDERED** that any such proposed amended pleading must be a complete pleading, which will supercede Plaintiff's Amended Complaint in all respects, may not incorporate by reference any portion of his Amended Complaint, and must include all remaining facts and causes of action; and it is further

**ORDERED** that any such proposed amended pleading submitted by Plaintiff be returned to Magistrate Judge Katz for review; and it is further

**ORDERED** that Plaintiff's motion to appoint counsel (Dkt. No. 11) is **DENIED without prejudice**.

**All Citations**

Slip Copy, 2024 WL 4799461

---

**End of Document**                                                © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 542587
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

PATRICK LAWRENCE, Plaintiff,

v.

DETECTIVE SHATTICK, et al., Defendants.

8:24-CV-656 (MAD/DJS)
|
Filed 02/19/2025

**Attorneys and Law Firms**

APPEARANCES:

PATRICK LAWRENCE, 24-B-3717, Cape Vincent Correctional Facility, Route 12E, PO Box 739, Cape Vincent, New York 13618, Plaintiff, Pro se

### MEMORANDUM-DECISION AND ORDER

Mae A. D'Agostino U.S. District Judge

### I. INTRODUCTION

**\*1** On May 14, 2024, *pro se* Plaintiff Patrick Lawrence commenced this action against Defendants Detective Shattick, St. Lawrence County Correctional Facility ("St. Lawrence C.C.F."), St. Lawrence County Sheriff's Department (the "Sheriff's Department"), Deputy Yerdon, Deputy Tate, Deputy Merria, Deputy Bundette, Sgt. G. Anderson, James Mcgahan, Bradford Reindeau, Thomas Farrell, Greg Storie, Brooks Bigwarfe, Peggy Harper, Tim Amos, Nurse Kerrigan, Chief Nurse Mayo, Chief Nurse Anita Scott, Sgt. Clary, Nurse 1-100, Correctional Officer 1-100, Kim Richards, K. Hillbourne, Yolanda Thompson, Sara Charpentier, Allison Applebe, and Deputy 1-100 (collectively, "Defendants"), bringing claims for violations of his constitutional rights pursuant to 42 U.S.C. §§ 1983, 1985, and 1986, violation of the Americans with Disabilities Act [1] ("ADA") and Rehabilitation Act [2] ("RA"), as well as state law claims. *See* Dkt. No. 1.

[1]     *See* 42 U.S.C. §§ 12101-213.

[2]     *See* 29 U.S.C. § 794.

On September 23, 2024, Magistrate Judge Daniel Stewart issued a Report-Recommendation and Order ("R&R"), recommending that (1) "Plaintiff's Complaint be DISMISSED with prejudice as to Plaintiff's fourth, fifth, seventh, fourteenth, fifteenth, and seventeenth causes of action, as well as, all Eighth Amendment claims, and Defendants Storie, Charpentier, Reindeau, Farrell, Mcgahan, and [St. Lawrence C.C.F.]"; (2) "Plaintiff's sixth, eighth, ninth, tenth, eleventh, [twelfth], and thirteenth causes of action be DISMISSED with leave to amend"; and (3) Plaintiff's first, second, third, and sixteenth causes of action are permitted to proceed and Defendants be directed to respond." Dkt. No. 11 at 14 (emphasis omitted). Magistrate Judge Stewart also denied Plaintiff's motion for appointment of counsel. *See id.* at 12-14. On December 13, 2024, Plaintiff filed objections to the R&R, which he labels "Amendments and Objections." Dkt. No. 14. [3] On December 29, 2024, Plaintiff filed exhibits and medical records in support of his "Amendments and Objections." *See* Dkt. Nos. 15, 16. For the reasons that follow, the R&R is adopted as modified herein.

<sup>3</sup>  Plaintiff's objections are sixty pages. *See* Dkt. No. 14. Local Rule 71.2(c) instructs that "[o]bjections may not exceed twenty-five (25) pages without the Court's prior approval." N.D.N.Y. L.R. 72.1(c). The Court will consider the entirety of Plaintiff's objections because he is proceeding *pro se*. However, the Court warns Plaintiff that future compliance with the Federal Rules, the Court's Local Rules, and the undersigned's Individual Rules is required.

## II. BACKGROUND

For a recitation of the background, the parties are referred to the R&R. *See* Dkt. No. 11 at 4.

## III. DISCUSSION

**A. Standard of Review**

When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However, when a party files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). The district court may also, in its discretion, review recommendations *de novo* even when a party has failed to object or merely asserts general or conclusory objections. *See U.S. v. Male Juvenile (95-CR-1074)*, 121 F.3d 34, 39 (2d Cir. 1997) ("Although [the] defendant did not object to the magistrate judge's recommendation, ... [t]he record indicates that the district court made a *de novo* determination of the Report and Recommendation .... The court's review was well within its discretion") (citing *Grassia v. Scully*, 892 F.2d 16, 19 (2d Cir. 1989)). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

**\*2**  "[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted). The Court is obligated to "make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

In general, a court should not dismiss a *pro se* litigant's complaint without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (quotations and citation omitted). In addition, the court should exercise "extreme caution ... in ordering *sua sponte* dismissal of a *pro se* complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had the opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). An opportunity to amend, however, is not required where "the problem with plaintiff's cause of action is substantive such that better pleading will not cure it." *Townsend v. Pep Boys, Manny Moe and Jack*, No. 1:13-CV-293, 2014 WL 4826681, *2 (N.D.N.Y. Sept. 29, 2014) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)) (internal quotations marks omitted).

**B. Amendment**

Magistrate Judge Stewart recommends granting Plaintiff leave to amend his complaint as to his sixth, eighth, ninth, tenth, eleventh, twelfth, and thirteenth causes of action. *See* Dkt. No. 11 at 14. Plaintiff asserts that, through his objections, he amends some or all of these causes of action. *See* Dkt. No. 14. A plaintiff may not amend his or her factual allegations though objections to an R&R. *See Lombardi v. Choices Women's Med. Ctr., Inc.*, No. 15-CV-05542, 2017 WL 1102678, *3 (E.D.N.Y. Mar. 23, 2017) ("Plaintiff cannot assert a new argument or amend her factual allegations through objections to an R & R") (citing *Yao Wu*

*v. BDK DSD*, 2015 WL 5664534, *1 (E.D.N.Y. Sept. 22, 2015)). Therefore, although Plaintiff will be granted leave amend his complaint for the reasons discussed below, the Court declines to consider the proposed amendments contained within Plaintiff's objections.

**C. Plaintiff's Objections**

Plaintiff does not object to Magistrate Judge Stewart's recitation of the allegations set forth in Plaintiff's complaint. *See* Dkt. No. 14. The Court finds no clear error in the factual background set forth in Magistrate Judge Stewart's R&R and will rely on it throughout this Order. *See* Dkt. No. 11 at 4.

Throughout his objections, Plaintiff reiterates and expands upon his factual allegations, however, he fails to specifically object to many of the procedural deficiencies identified by Magistrate Judge Stewart. *See* Dkt. No. 14. Thus, the majority of the R&R is subject to review for clear error because Plaintiff's objections are conclusory and general. *See Brown v. Peters*, No. 95-CV-1641, 1997 WL 599355, *2 (N.D.N.Y. Sept. 22, 1997), *aff'd*, 175 F.3d 1007 (2d Cir. 1999) ("Even affording the objections the liberal reading required for *pro se* pleadings, I find that these objections fail to state any basis whatsoever, much less a specific one, for the court not to adopt the magistrate judge's rulings. They simply re-state the relief sought and the facts on which [the plaintiff] grounds his complaint and conclude that the magistrate judge's conclusions are wrong. When the parties make only frivolous, conclusive, or general objections, the court reviews the report-recommendation for clear error") (collecting cases). The Court, however, will exercise its discretion to review the R&R *de novo. See Nicosia v. Amazon.com, Inc.*, 384 F. Supp. 3d 254, 263 (E.D.N.Y. 2019), *aff'd*, 815 Fed. Appx. 612 (2d Cir. 2020) ("[T]he Court, in its discretion, may also review [sections of an R&R not objected to] *de novo*") (citing *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976)).

**D. Eighth Amendment Claims**

**\*3** Magistrate Judge Stewart first recommends dismissing, with prejudice, Plaintiff's claims purportedly brought pursuant to the Eighth Amendment because Plaintiff's allegations pertain to his detention without a conviction and, therefore, do not implicate the Eighth Amendment. *See* Dkt. No. 11 at 5. Plaintiff does not raise specific objections to this recommendation. *See* Dkt. No. 14. Nevertheless, even reviewing the recommendation *de novo*, the Court finds no error.

Indeed, "the Eighth Amendment does not apply 'until after conviction and sentence.' " *Wright v. N.Y. City*, No. 09-CV-2452, 2012 WL 4057958, *3 (E.D.N.Y. Sept. 14, 2012) (quoting *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999)). Plaintiff's claims are premised on allegations related to a traffic stop, arrest, detainment, and pre-conviction court proceedings, *see* Dkt. No. 11 at 4, and, therefore, to the extent Plaintiff states claims pursuant to the Eighth Amendment, the Court adopts Magistrate Judge Stewart's recommendation that such claims be dismissed with prejudice, *see id.* at 5.

**E. Immunity and State Action**

*1. Judicial Immunity*

Magistrate Judge Stewart recommends dismissing all claims asserted against Defendant Storie because he is immune from suit for actions taken in the performance of his judicial duties. *See id.* Plaintiff objects to the application of judicial immunity to his claims against Defendant Storie, arguing that Defendant Storie violated the constitution throughout Plaintiff's criminal court proceedings. *See* Dkt. No. 14 at 54-57 (asserting that Defendant Storie, among other things, "lied on the 730 order" and "silenced [Plaintiff] in his court room in violation of the [First] Amendment"). Plaintiff's arguments merely rehash the allegations in his complaint. *See* Dkt. No. 1 at 19-20.

Exercising its discretion to review this section of the R&R *de novo*, the Court finds no error. " '[J]udges generally have absolute immunity from suits for money damages for their judicial actions' and 'even allegations of bad faith or malice cannot overcome judicial immunity.' " *Tewari v. Sattler*, No. 23-36-CV, 2024 WL 177445, *1 (2d Cir. Jan. 17, 2024) (quoting *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009)). "Judges enjoy absolute immunity from personal liability for acts committed within their judicial

jurisdiction .... The absolute immunity of a judge applies however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff." *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994) (quotations and internal quotation marks omitted).

Here, Defendant Storie's alleged actions fall squarely within acts undertaken within his judicial jurisdiction and Plaintiff's claims are, thus, barred by judicial immunity. *See Tewari*, 2024 WL 177445, at *1 (affirming application of judicial immunity to claims against a defendant state court judge for alleged violation of the plaintiff's "constitutional rights in connection with various rulings she made during the course of the proceedings"). Accordingly, the Court adopts Magistrate Judge Stewart's recommendation that the claims against Defendant Storie be dismissed with prejudice. *See* Dkt. No. 11 at 5-6, 14.

### *2. Prosecutorial Immunity*

Magistrate Judge Stewart recommends dismissal of the claims against Defendant Charpentier, on the basis of prosecutorial immunity, because "Plaintiff alleges that Defendant Charpentier violated his rights during the presentation of [Plaintiff's criminal] case to the grand jury and in court proceedings." *Id.* at 6 (citing Dkt. No. 1 at 12-15). Plaintiff asserts objections to Defendant Charpentier's dismissal at various points in his sixty-page filing, including, as to his fourth cause of action for "conspiracy," that Defendant Charpentier should not be dismissed because she "attempted to take advantage of [Plaintiff's] mental health disorders and poverty when [she] did conspire to deprive [Plaintiff] of his right to freedom, travel, life, liberty, property, equal protection of the law, and due process," and because Defendant Charpentier lied to, and fabricated evidence presented to, the grand jury. Dkt. No. 14 at 35-39. [4] Despite Plaintiff's policy arguments regarding the doctrine of prosecutorial immunity, all of Defendant Charpentier's alleged conduct occurred while she performed her duties as a prosecutor. *See, e.g.*, Dkt. No. 1 at 12-15.

[4]  Plaintiff also "urges the Honorable Court to remember that[,] due to the overwhelming evidence[,] 18 U.S.C. § 242 does not allow unconstitutional conduct to go unchecked." Dkt. No. 14 at 35. Plaintiff mentions 18 U.S.C. § 242 at other points in his objections, including in his objection to the dismissal of Defendant Storie. *See id.* at 54-57. However, 18 U.S.C. § 242 is a federal criminal statute that does not create a private right of action. *See Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 511 (2d Cir. 1994). Therefore, Plaintiff is advised that he cannot bring a claim pursuant to 18 U.S.C. § 242. Plaintiff also mentions other criminal statutes throughout his objections, such as New York State Penal Law § 20.20. *See* Dkt. No. 14 at 3. Plaintiff is advised that he cannot bring civil causes of action pursuant to federal or state criminal statutes and that, if he includes such claims in any amended pleading, they will be subject to dismissal. *See Ming v. Brouillete*, No. 6:23-CV-0086, 2023 WL 5779558, *3 (N.D.N.Y. Apr. 7, 2023*), report and recommendation adopted*, 2023 WL 5444485 (N.D.N.Y. Aug. 24, 2023) ("There is no private right of action to enforce state or federal criminal statutes") (collecting cases).

 **\*4**  The Court agrees with Magistrate Judge Stewart that the claims against Defendant Charpentier are barred by prosecutorial immunity because this immunity extends to "prosecutors performing prosecutorial activities that are 'intimately associated with the judicial phase of the criminal process.' " *Ying Jing Gan v. City of N.Y.*, 996 F.2d 522, 530 (2d Cir. 1993) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). "A plaintiff's allegations that a prosecutor violated speedy trial rights, withheld exculpatory evidence, charged a defendant without probable cause, and engaged in prosecutorial misconduct have all been found to be actions that fall within the scope of prosecutorial immunity." *Ramsey v. Smith*, No. 1:19-CV-54, 2020 WL 4053728, *3 (S.D. Miss. July 20, 2020) (citations omitted). Moreover, "[t]he presentation of a case to a grand jury falls squarely within the prosecutor's traditional function and is thus subject to absolute immunity." *Maglione v. Briggs*, 748 F.2d 116, 118 (2d Cir. 1984). Plaintiff's allegations regarding conspiracy between Defendant Charpentier and other defendants does not overcome Defendant Charpentier's prosecutorial immunity, as "a conspiracy claim also falls within the ambit of absolute prosecutorial immunity." *Soley v. Cnty. of Nassau*, No. 18-CV-377, 2022 WL 2954055, *7 (E.D.N.Y. July 26, 2022); *see Hill v. City of N.Y.*, 45 F.3d 653, 661 (2d Cir. 1995) (holding that a prosecutor was absolutely immune from suit for "conspiring to present falsified evidence to ... a grand jury").

2025 WL 542587

For these reasons, the Court finds no error in, and adopts, Magistrate Judge Stewart's recommendation that the claims against Defendant Charpentier be dismissed with prejudice.

## F. Section 1983

### 1. State Action

Magistrate Judge Stewart recommends dismissal of Plaintiff's claims against Defendants Reindeau, Farrell, Mcgahan and Applebe (hereinafter the "Defense Counsel Defendants"), who acted as counsel for Plaintiff during his criminal proceedings, because the Defense Counsel Defendants are not state actors. *See id.* at 6-7. [5] Plaintiff argues that the Defense Counsel Defendants should not be dismissed because "[h]ad it not been for a proceeding brought by the 'People of the State of New York' [he] never would have come across these individuals[, t]hey are licensed to 'practice' by the State Bar Association[, t]hey draw their funds and fees from State backed support[, and t]hey are regulated by the State 'Rules of Professional Conduct.' " Dkt. No. 14 at 53. Plaintiff argues that, for these reasons, "how anyone can come up with ['[]Public Defenders are not state actors['] is far reaching for a man of reasonable understanding." Dkt. No. 14 at 53 (quotation marks omitted).

[5]   Magistrate Judge Stewart also recommends dismissal of the fourteenth cause of action, brought against the Defense Counsel Defendants, because 42 U.S.C. § 1983 is not the appropriate vehicle to bring a claim for ineffective assistance of counsel. *See* Dkt. No. 11 at 7. The Court agrees. *See Welch v. Schenectady Cnty.*, No. 1:22-CV-9, 2022 WL 3904113, *2 (N.D.N.Y. Aug. 10, 2022), *report and recommendation adopted*, 2022 WL 3908798 (N.D.N.Y. Aug. 30, 2022) ("In addition, a section 1983 action 'is not the appropriate vehicle to raise a claim of ineffective assistance of counsel' ") (quotation omitted).

Courts routinely dismiss claims against public defenders and public defenders' offices because they are not state actors or persons under Section 1983. *See Tapp v. Champagne*, 164 Fed. Appx. 106, 108 (2d Cir. 2006) ("A 'public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding' ") (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981)); *Shorter v. Rice*, No. 12-CV-0111, 2012 WL 1340088, *4 (E.D.N.Y. Apr. 10, 2012) ("[I]t is axiomatic that neither public defenders, such as Legal Aid Attorneys, nor court-appointed counsel, nor private attorneys, act under the color of state law merely by virtue of their position").

Plaintiff alleges that that the Defense Counsel Defendants violated the Sixth Amendment because they failed to provide him with adequate representation and violated the Fourteenth Amendment by conspiring to present fabricated evidence to the grand jury in his criminal proceeding. *See* Dkt. No. 1 at 12-15, 22. The Defense Counsel Defendants are not state actors and, thus, the Court adopts Magistrate Judge Stewart's recommendation that the claims against these defendants, brought pursuant to Section 1983, be dismissed with prejudice. [6]

[6]   Specifically, the fourteenth cause of action is dismissed, as it alleges Sixth Amendment violations by the Defense Counsel Defendants. *See* Dkt. No. 1 at 22. Additionally, Defendants Charpentier, Reindeau, Farrell, Mcgahan and Applebe are the only defendants named in the fourth and fifth causes of action. *See* Dkt. No. 1 at 12-15. Because the claims against all of these attorney defendants are dismissed, as Defendant Charpentier is entitled to prosecutorial immunity and the Defense Counsel Defendants are not state actors, the fourth and fifth causes of action, which allege conspiracy to present false evidence to the grand jury, are also dismissed.

### 2. False Arrest and False Imprisonment

**\*5**  Plaintiff's first and second causes of action allege that Defendants Shattick, Yerdon, Tate, Merria, Burdette, Anderson, and Bigwarfe violated his Fourth Amendment right to be free from unreasonable search and seizure, and that such defendants failed to intervene in the Fourth Amendment violations. *See* Dkt. No. 1 at 7-10. Magistrate Judge Stewart recommends that Plaintiff's first and second causes of action survive initial review and should be permitted to proceed. *See* Dkt. No. 11 at 7-8. The parties

2025 WL 542587

do not object to this recommendation and the Court, finding no error, adopts Magistrate Judge Stewart's recommendation that the first and second causes of action survive initial review.

### 3. Deliberate Indifference

Plaintiff's third and sixteenth causes of action allege that Defendants Shattick, Yerdon, Tate, Merria, Burdette, Anderson, Bigwarfe, Harper, Amos, Mayo, Scott, Clancy, Kerrigan, and Nurse 1-100 were deliberately indifferent to his medical needs. *See* Dkt. No. 1 at 10-11, 22-23. Magistrate Judge Stewart recommends that Plaintiff's third and sixteenth causes of action survive initial review and should be permitted to proceed. *See* Dkt. No. 11 at 8. The parties do not object to this recommendation and the Court, finding no error, adopts it.

### 4. Municipal Liability

Plaintiff alleges, through what is labelled his sixth cause of action, that the Sheriff's Department and St. Lawrence C.C.F. are subject to municipal liability, pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). *See* Dkt. No. 1 at 15. Magistrate Judge Stewart recommends that: (1) St. Lawrence C.C.F. be dismissed with prejudice, as the correctional facility is not a distinct entity from the County, and, thus, is not a proper party to a Section 1983 claim; and (2) because Plaintiff has not identified a purported policy, practice, or custom which caused his alleged constitutional violations, that the sixth cause of action be dismissed with leave to replead against St. Lawrence County. *See* Dkt. No. 11 at 9, n.5. Through his objections, Plaintiff seeks to amend his sixth cause of action. *See* Dkt. No. 14 at 1-14.

For the reasons previously discussed, Plaintiff cannot amend his complaint through his objections to the R&R. *See Lombardi*, 2017 WL 1102678, at *3. As for Magistrate Judge Stewart's recommendation that the sixth cause of action be dismissed with leave to replead as against St. Lawrence County, the Court reviews the recommendation *de novo* and adopts it as modified as follows.

To hold a municipality liable, a plaintiff "must show the following: '(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury.' " *Maddox v. City of Syracuse*, No. 5:14-CV-1068, 2017 WL 680439, *3 (N.D.N.Y. Feb. 21, 2017) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir 2008)) (additional citation omitted). However, absent an independent constitutional violation, a municipality cannot be held liable under § 1983. *See Monell*, 436 U.S. at 694 ("A local government may not be sued under § 1983 ... [unless] official policy [is] ... the moving force of the constitutional violation"); *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) ("Thus, our first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation").

Federal courts apply state law to determine whether an entity has capacity to be sued. *See* Fed. R. Civ. P. 17(b). "Under New York law, a county is a municipal corporation capable of bringing suit and being sued." *Baker v. Willett*, 42 F. Supp. 2d 192, 198 (N.D.N.Y. 1999) (citing N.Y. Gen. Mun. Law § 2)). However, a sheriff's department or a police department is an administrative arm of the municipal corporation and does not have a separate identity from the municipality. *See id.*; *Long v. City of Orleans*, 540 F. Supp. 3d 344, 350 (W.D.N.Y. 2021). Because a sheriff's department "does not exist separate and apart from the municipality and does not have its own legal identity," it cannot sue or be sued. *Baker*, 42 F. Supp. 2d at 198; *see Jenkins v. Onondaga Cnty. Sheriff's Dep't*, No. 5:12-CV-855, 2012 WL 4491134, *2 (N.D.N.Y. June 28, 2012) ("[U]nder New York law, departments, like the Onondaga County Sheriff's Department, that are merely administrative arms of a municipality, do not have a legal identity separate from the municipality and may not sue or be sued"). For these same reasons, a county correctional facility cannot be sued under Section 1983. *See Miles v. Albany Corr. Facility*, No. 9:09-CV-1279, 2010 WL 3946956, *1 (N.D.N.Y. Sept. 16, 2010), *report and recommendation adopted*, 2010 WL 3940956 (N.D.N.Y. Oct. 6, 2010) (finding that "the Albany Correctional Facility cannot be sued under 42 U.S.C. § 1983"). Therefore, the causes of action brought against the Sheriff's Department and St. Lawrence C.C.F. are dismissed with prejudice.

**\*6** Furthermore, the Court agrees with Magistrate Judge Stewart that, in his complaint, Plaintiff fails to clearly identify an unconstitutional policy that would support a claim for municipal liability. *See* Dkt. No. 11 at 9; Dkt. No. 1. Now, in his objections, Plaintiff raises various conditions that he believes constitute unconstitutional policies, practices, or customs of St. Lawrence County. *See* Dkt. No. 14 at 8-14 (alleging unconstitutional use of certain restraints, unlawful administration of controlled substances to incarcerated individuals, deprivation of outdoor recreation for pre-trial detainees, "toxic gas" emanating from shower drains at the correctional facility, and arbitrary and extended periods of segregated confinement). Plaintiff argues that these alleged policies violate New York Correction Law §§ 500-c and 137, Article 1 § 6 and § 11 of the New York State Constitution, and the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. *See id.* However, Plaintiff's new and re-hashed allegations do not present cognizable objections to the R&R. *See Ross v. Dempsey Unif. & Linen Supply*, No. 3:16-CV-1208, 2017 WL 1207832, \*1 (N.D.N.Y. Mar. 31, 2017), *aff'd*, 739 Fed. Appx. 59 (2d Cir. 2018) (finding objections insufficient to alter report and recommendation because the "plaintiff simply states general legal principles, and repeats his allegations against the named defendants"). Accordingly, the Court adopts Magistrate Judge Stewart's recommendation that the sixth cause of action be dismissed without prejudice, that St. Lawrence C.C.F. and the Sheriff's Department be dismissed with prejudice, and that Plaintiff be granted leave to amend his municipal liability allegations as against St. Lawrence County. S*ee* Dkt. No. 11 at 9.

### 5. *Supervisory Liability*

The seventh cause of action in Plaintiff's complaint seeks to hold Defendants Brook, Bigwarfe, Anderson, Harper, and Amos liable because "holding and acting in their respective positions as supervisors[, they] were aware of each constitutional violation and chose not to act." Dkt. No. 1 at 16. Magistrate Judge Stewart recommends that the seventh cause of action be dismissed because these Defendants "cannot be held liable simply by virtue of their supervisory position ... [and] each is named as a Defendant with respect to their own involvement in individual events." Dkt. No. 11 at 10. Plaintiff objects to the dismissal of and "re-pleads and seeks reinstatement" of his seventh cause of action. Dkt. No. 14 at 15. After conducting its own *de novo* review of this section of the R&R, the Court agrees with Magistrate Judge Stewart.

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [Section] 1983.' " *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). " 'To establish a violation of [Section] 1983 by a supervisor, as with everyone else, ... the plaintiff must establish a deliberate, intentional act on the part of the defendant to violate the plaintiff's legal rights.' " *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Porro v. Barnes*, 624 F.3d 1322, 1327-28 (10th Cir. 2010)). "[T]here is no special rule for supervisory liability. Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.' " *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).

With this well-established legal principle in mind, the Court adopts Magistrate Judge Stewart's recommendation that Plaintiff's seventh cause of action, which alleges only that the named Defendants should be held liable by virtue of their positions as supervisors, should be dismissed with prejudice. Plaintiff may include allegations regarding any of the Defendant's *own individual violations* of his constitutional rights in his amended pleading.

### G. The ADA and RA

Plaintiff alleges, in his eighth cause of action, that seventeen individual Defendants acted in violation of the ADA and RA. *See* Dkt. No. 1 at 17-18. Magistrate Judge Stewart recommends that this cause of action "be dismissed with prejudice as to the individual Defendants, but that Plaintiff be permitted to replead those claims against a proper party." Dkt. No. 11 at 10-11.

Plaintiff "seeks the Court's help in identifying the appropriate defendant for this claim." Dkt. No. 14 at 43. [7]

2025 WL 542587

7        Plaintiff also requests that the Court subpoena evidence from "the Global Tel Link messaging app" and recorded phone calls. Dkt. No. 14 at 41. Now is not the appropriate time to exercise the Court's subpoena powers. Plaintiff will have the opportunity to engage in the discovery process in due course.

 **\*7**  Neither the ADA nor the RA "provides for individual liability." *Dees v. Zurlo*, No. 1:24-CV-1, 2024 WL 2291701, \*16 (N.D.N.Y. May 21, 2024) (quotation and quotation marks omitted). Indeed, " '[i]t is well-established that there is no individual liability under the ADA or the [RA], whether the individual is sued in their official or individual capacity.' " *Goe v. Zucker*, 43 F.4th 19, 35 (2d Cir. 2022) (quoting *Perros v. Cnty. of Nassau*, 238 F. Supp. 3d 395, 402 n.3 (E.D.N.Y. 2017)).

"Title II of the ADA prohibits a 'public entity' from discrimination against a 'qualified individual with a disability.' " *Pascual v. N.Y. State*, No. 2:24-CV-6723, 2024 WL 5046675, \*5 (E.D.N.Y. Dec. 9, 2024) (quoting 42 U.S.C. § 12132). "A 'public entity' includes 'any State or local government.' " *Id.* (quoting 42 U.S.C. § 12131(1)(A)). Accordingly, counties have been found to be public entities capable of being sued under the ADA. *See id.* (finding Suffolk County to be a public entity as defined by the ADA).

For these reasons, the Court adopts Magistrate Judge Stewart's recommendation that the seventh cause of action be dismissed as against the individual Defendants and Plaintiff is granted leave to replead his ADA and RA claims as against a proper party.

### H. Sections 1985 and 1986
Plaintiff brings his ninth and tenth causes of action pursuant to 42 U.S.C. §§ 1985 and 1986, alleging that certain Defendants engaged in a conspiracy to deprive him of his constitutional rights. *See* Dkt. No. 1 at 19-21. Magistrate Judge Stewart recommends dismissal of the ninth and tenth causes of action, with leave to amend, because Plaintiff has failed to state a claim. *See* Dkt. No. 11 at 11. Specifically, Magistrate Judge Stewart recommends dismissal because Plaintiff does not allege that the conduct by Defendants was motivated by racial or other class-based animus, as required to state a claim under Section 1985 and, as a result, Plaintiff has also failed to state a claim pursuant to Section 1986 because such claim must be predicated on a valid Section 1985 claim. *See id.* Plaintiff asserts no specific objection this recommendation and merely states that his tenth cause of action "should not be dismissed" because he "needs attorney to assist him in prosecuting" his fourth (as well as his tenth) cause of action. Dkt. No. 14 at 39. Exercising its discretion to review this section of the R&R *de novo*, the Court adopts the recommendation that the ninth and tenth causes of action be dismissed with leave to amend.

To state a valid conspiracy claim under 42 U.S.C. § 1985(3), a plaintiff must show:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007) (citing *Britt v. Garcia,* 457 F.3d 264, 270 n.4 (2d Cir. 2006)). "Further, a plaintiff must allege ... that the conspiracy was motivated by some class-based animus." *L.K. v. Sewanhaka Cent. High Sch. Dist.*, 641 Fed. Appx. 56, 59 (2d Cir. 2016) (citing *Cine SK8, Inc.*, 507 F.3d at 791). And, because Section 1986 claims are predicated on a valid Section 1985 claim, courts evaluate these claims together. *See id.* (citing *Brown v. City of Oneonta*, 221 F.3d 329, 341 (2d Cir. 2000)).

 **\*8**  There are no allegations in Plaintiff's complaint that Defendants' alleged conduct was motivated by some class-based animus. *See* Dkt. No. 14. Therefore, the Court adopts Magistrate Judge Stewarts recommendation that the ninth and tenth causes of action, brought pursuant to Sections 1985 and 1986, be dismissed with leave to amend. *See* Dkt. No. 11 at 11.

## I. State Law Claims

Plaintiff asserts, against all Defendants, claims under New York law for negligent infliction of emotional distress, intentional infliction of emotional distress, and negligence—his eleventh, twelfth, and thirteenth causes of action. *See* Dkt. No. 1 at 21. Magistrate Judge Stewart recommends dismissal of these causes of action, with leave to replead, because Plaintiff has not made the proper showing, pursuant to Rule 8(a)(2) of the Federal Rules of Civil Procedure. *See* Dkt. No. 11 at 12. Specifically, Magistrate Judge Stewart recommends dismissal because "the broad assertion that all [Defendants] are liable for these state law torts without any explanation of how each is alleged to have committed the torts is not permissible." *Id.* Plaintiff objects to the dismissal of his state law claims, requests the appointment of *pro bono* counsel, and seeks to amend his eleventh, twelfth, and thirteenth causes of action through his objections to the R&R. *See* Dkt. No. 14 at 46-53.

Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a clam for relief shall contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). "The purpose of this Rule 'is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer [and] prepare an adequate defense.' " *Hudson v. Artuz*, No. 95 CIV. 4768, 1998 WL 832708, *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995)) (other citations omitted).

Plaintiff has failed to show how each Defendant is liable for the state law claims alleged. *See* Dkt. No. 1 at 22. As Magistrate Judge Stewart notes, "[t]he various Defendants are accused of a variety of misconduct over a span of time elsewhere in the Complaint and the broad assertion that all are liable for these state law torts without any explanation of how each is alleged to have committed the torts is not permissible." Dkt. No. 11 at 12. For these reasons, the Court adopts the recommendation that the eleventh, twelfth, and thirteenth causes of action be dismissed with leave to replead. *See id.*

## J. Motion for Appointment of Counsel

Magistrate Judge Stewart denied Plaintiff's motion for the appointment of counsel, with leave to renew at a later stage of this action. *See id.* at 12-14. Throughout Plaintiff's objections, he requests that the Court alter Magistrate Judge Stewart's denial of his motion and appoint him counsel. *See, e.g.*, Dkt. No. 14 at 39, 46.

"Unlike criminal defendants, IFP plaintiffs bringing civil actions have no constitutional right to the appointment of counsel." *Brown v. Utica Police Dep't*, No. 6:17-CV-1190, 2017 WL 5514518, *4 (N.D.N.Y. Nov. 16, 2017) (citing *Wali v. One Source Co.*, No. 07-7550, 2009 WL 3170110, *1 (S.D.N.Y. Sept. 30, 2009)). " 'Appointment' of counsel in a civil action involves the court requesting an attorney to represent an IFP party pro bono under 28 U.S.C. § 1915(a)(1)." *Id.* (citation omitted). In determining whether to make such a request for the indigent party, courts carefully consider a number of factors. *See id.* (citing *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994)).

 **\*9**  The Court agrees with Magistrate Judge Stewart's denial of Plaintiff's motion to appoint counsel, particularly in light of the early stage of this action. *See* Dkt. No. 11 at 12-14; *see also Gervasio v. Diaz*, No. 9:20-CV-0346, 2020 WL 3496423, *2 (N.D.N.Y. June 29, 2020) ("The Court is still not aware of any special reason why appointment of counsel at this early stage of the proceeding would be more likely to lead to a just determination of this litigation").

## K. Leave to Amend

Finally, Magistrate Judge Stewart recommends dismissing, with prejudice, the claims against Defendants Storie, Charpentier, Reindeau, Farrell, Mcgahan, and St. Lawrence C.C.F., as well as Plaintiff's fourth, fifth, seventh, fourteenth, fifteenth, and seventeenth causes of action, and all Eighth Amendment claims. *See* Dkt. No. 11 at 14. However, Magistrate Judge Stewart recommends dismissing Plaintiff's sixth, eighth, ninth, tenth, eleventh, twelfth, and thirteenth causes of action with leave to amend. *See id.* The Court finds no error with this portion of the R&R.

PATRICK LAWRENCE, Plaintiff, v. DETECTIVE SHATTICK, et al.,..., Slip Copy (2025)

2025 WL 542587

In Plaintiff's objections, he specifically asks the Court to allow him leave to amend his complaint. *See* Dkt. No. 14 at 1, 58. It is true that "[w]hen a *pro se* complaint fails to state a cause of action, the court generally 'should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.' " *Robinson v. Hallett*, No. 5:19-CV-406, 2020 WL 1227142, *4 (N.D.N.Y. Mar. 13, 2020) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). However, courts routinely deny an opportunity to amend where a claim is barred on immunity grounds because amendment would be futile. *See Humphrey v. Ct. Clerk ex rel. U.S. Sup. Ct.*, No. 5:11-CV-938, 2011 WL 7112904, *4 (N.D.N.Y. Aug. 12, 2011) ("Because the defendant would be entitled to absolute immunity, this court recommends dismissal with prejudice of plaintiff's action"). Similarly, where an entity is not a person acting under the color of law, a Section 1983 claim cannot be stated. *Guillory v. Bishop Nursing Home*, No. 5:21-CV-410, 2021 WL 2431259, *3 (N.D.N.Y. June 15, 2021) ("Because Plaintiff failed to plausibly allege that the named Defendants acted under color of state law, Magistrate Judge Baxter correctly determined that the complaint fails to state any claims for relief under Section 1983.... Moreover, Magistrate Judge Baxter correctly determined that leave to re-plead should be denied").

As such, the Court agrees with Magistrate Judge Stewart that the claims against Defendants Storie, Charpentier, Reindeau, Farrell, Mcgahan, and St. Lawrence C.C.F., along with Plaintiff's fourth, fifth, seventh, fourteenth, fifteenth, and seventeenth causes of action, and all Eighth Amendment claims, should be dismissed with prejudice and without leave to amend. *See* Dkt. No. 11 at 14. Additionally, the Court modifies the R&R, dismissing the claims against Defendant Sheriff's Department, with prejudice and without leave to amend, for the reasons previously stated. The Court also agrees that Plaintiff should have the opportunity to amend his sixth, eighth, ninth, tenth, eleventh, twelfth, and thirteenth causes of action because it is possible that Plaintiff could cure deficiencies in his pleading. *See id.*

If Plaintiff decides to amend his complaint, he must clearly set forth the facts that give rise to the claims, including, when possible, the dates, times, and places of the alleged underlying acts, as well as each individual who committed each alleged wrongful act. The revised pleading should allege facts demonstrating the personal involvement of any named Defendant. *See Wright*, 21 F.3d at 501. Finally, Plaintiff is informed that any amended complaint will replace the existing complaint and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Jeanty v. Sciortino*, 669 F. Supp. 3d 96, 118-19 (N.D.N.Y. 2023).

## IV. CONCLUSION

**\*10**  After carefully considering the R&R, the entire record in this matter, and the applicable law, the Court hereby

**ORDERS** that Magistrate Judge Stewart's R&R (Dkt. No. 11) is **ADOPTED as modified** herein; and the Court further

**ORDERS** that Plaintiff's amended complaint (Dkt. No. 1) is **DISMISSED without prejudice and with leave to amend** as to Plaintiff's sixth, eighth, ninth, tenth, eleventh, twelfth, and thirteenth causes of action; and the Court further

**ORDERS** that Plaintiff's claims against Defendants Storie, Charpentier, Reindeau, Farrell, Mcgahan, St. Lawrence C.C.F., and the Sheriff's Department are **DISMISSED with prejudice and without leave to amend**; and the Court further

**ORDERS** that Plaintiff's fourth, fifth, seventh, fourteenth, fifteenth, and seventeenth causes of action, as well as, all Eighth Amendment claims, are **DISMISSED with prejudice and without leave to amend**; and the Court further

**ORDERS** that Plaintiff's first, second, third, and sixteenth causes of action survive initial review and are permitted to proceed; and the Court further

**ORDERS** that Plaintiff shall file his amended complaint within **thirty (30) days** of the date of this Order; and the Court further

2025 WL 542587

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2025 WL 542587

---

**End of Document**                                        © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 286 of 353
Davis v. Erie County Sheriff Department, Not Reported in Fed. Supp. (2019)

2019 WL 4926289

⚑ KeyCite Yellow Flag - Negative Treatment
Declined to Extend by  Avant v. County of Erie,   W.D.N.Y.,   April 29, 2024

2019 WL 4926289
Only the Westlaw citation is currently available.
United States District Court, W.D. New York.

Jamillah C. DAVIS, Plaintiff,
v.
ERIE COUNTY SHERIFF DEPARTMENT, Defendant.

17-CV-955
|
Signed 10/07/2019

**Attorneys and Law Firms**

Lindy Korn, Electric Tower, William F. Harper, V, Law Office of Lindy Korn, Buffalo, NY, for Plaintiff.

Anthony B. Targia, Erie County Attorney's Office, Buffalo, NY, for Defendant.

DECISION AND ORDER

LAWRENCE J. VILARDO, UNITED STATES DISTRICT JUDGE

 **\*1** On September 25, 2017, the plaintiff, Jamillah C. Davis, commenced this action under Title VII of the Civil Rights Act of 1964. Docket Item 1. On November 2, 2017, this Court referred this case to United States Magistrate Judge Michael J. Roemer for all proceedings under 28 U.S.C. § 636(b)(1)(A) and (B). Docket Item 4.

On October 30, 2017, the defendant moved for judgment on the pleadings. Docket Item 3. The plaintiff, who at that time was proceeding pro se, did not respond in writing. She appeared at oral argument before Judge Roemer on January 8, 2018, however, and responded orally.

On January 24, 2018, Judge Roemer issued a Report and Recommendation finding that the defendant's motion should be granted in part and denied in part. Docket Item 6. Specifically, Judge Roemer recommended that the defendant's motion be construed as a motion to dismiss for failure to state a claim; that the plaintiff's discriminatory discharge and hostile work environment claims be allowed to proceed; that the plaintiff's retaliation claim be dismissed without prejudice to the filing of an amended complaint; and that the County of Erie be substituted as a defendant in place of the Erie County Sheriff Department. *Id.* at 11-12.

On February 9, 2018, the defendant objected to the R&R on the grounds that the County of Erie could not properly be substituted as a defendant. Docket Item 7. On April 5, 2018, two attorneys appeared on behalf of the plaintiff. Docket Items 10-11. On May 7, 2018, the plaintiff, through counsel, responded to the defendant's objections. Docket Item 12.

A district court may accept, reject, or modify the findings or recommendations of a magistrate judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). A district court must conduct a de novo review of those portions of a magistrate judge's recommendation to which objection is made. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

2019 WL 4926289

This Court has carefully reviewed the thorough R&R, the record in this case, the objection and response, and the parties' submissions. Based on that de novo review, the Court accepts and adopts Judge Roemer's recommendation to grant in part and deny in part the defendant's motion.

Judge Roemer found that the Erie County Sheriff Department "is merely an administrative unit of the County of Erie, not a separate legal entity capable of being sued individually." Docket Item 6 at 11 (citing *Loria v. Town of Irondequoit*, 775 F. Supp. 599, 606 (W.D.N.Y. 1990)). "[R]ather than dismiss Davis' complaint on this basis," however, Judge Roemer "recommended that the County of Erie simply be substituted as defendant in place of the Erie County Sheriff Department." *Id.* (citing *St. John Rennalls v. Cty. of Westchester*, 159 F.R.D. 418, 419 n.1 (S.D.N.Y. 1994)).

The defendant argues in its objection that the County of Erie cannot be held liable in this case because it "does not hire, employ, train or supervise the Erie County Holding Center Deputies," and "there can be no vicarious liability as between the County of Erie and the Erie County Sheriff or his deputies." Docket Item 7 at 2-3. In support of that proposition, the defendant cites the text of the New York County Law: "No head of any agency, department, bureau, or office of a county shall be liable to respond in damages to the county or to any other person for any act or omission of any employee of the county employed within the agency, department, bureau, or office of which he is such head." N.Y. County Law § 54. As the plaintiff points out in her response, however, the defendant's objection omits the following sentence of section 54: "Any lawful claims which but for this section would be claims against such head of an agency, department, bureau, or office shall be lawful claims against the county and shall be deemed to be the liability of the county." *Id.* Thus, by the plain text of the statute, the county may be held liable for acts committed by the Sheriff and his deputies.

 **\*2**  In fact, the county—not the Sheriff—is the proper defendant for a claim under Title VII. *See Kretzmon v. Erie Cty.*, No. 11-CV-0704, 2013 WL 636545, at \*4 (W.D.N.Y. Feb. 20, 2013) (analyzing Title VII claim "with respect to Defendant Erie County only" because "[i]ndividuals are not subject to liability under Title VII"). The defendant cites no authority indicating that a Title VII claim may not proceed against Erie County for acts of discrimination committed by the Erie County Sheriff's Department. *Cf. Brown v. Cty. of Erie*, No. 12-CV-251, 2013 WL 885993, at \*3 (W.D.N.Y. Mar. 8, 2013) (allowing Title VII claim to "proceed with respect to defendant Erie County" and "dismiss[ing] as redundant" claims "against the Erie County Sheriff's Office"). [1]

[1]    The tort law cited by the defendant is inapposite. As the plaintiff points out, "[e]mployment discrimination claims are not 'torts' under New York State law." *Carlson v. Geneva City Sch. Dist.*, 679 F. Supp. 2d 355, 365 n.2 (W.D.N.Y. 2010).

The defendant further contends that "[t]here is no unity of interest as between the County of Erie and either the Erie County Sheriff or his deputies." Docket Item 7 at 3. But that assertion is belied by the defendant's own motion, which represented that "the Erie County Sheriff's Department is an administrative unit of the County of Erie and is not a separate legal entity." Docket Item 3-2 at 2. Accordingly, the Court finds that the County of Erie may properly be substituted as defendant in place of the Erie County Sheriff Department.

For the reasons stated above and in the Report and Recommendation, the defendant's motion for judgment on the pleadings, Docket Item 3, construed as a motion to dismiss, is GRANTED IN PART AND DENIED IN PART; the plaintiff's retaliation claim is dismissed without prejudice to the filing of an amended complaint **within 30 days of the date of this order**; and the County of Erie is substituted as defendant in place of the Erie County Sheriff Department.

The Clerk of Court shall amend the caption of this action to replace the Erie County Sheriff Department with the County of Erie. If the plaintiff seeks to assert her retaliation claim, she must submit an amended complaint consistent with, and **within 30 days** of the date of, this order. The case is referred back to Judge Roemer for further proceedings consistent with the referral order of November 2, 2017, Docket Item 4.

SO ORDERED.

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 288 of 353

**Davis v. Erie County Sheriff Department, Not Reported in Fed. Supp. (2019)**
2019 WL 4926289

**All Citations**

Not Reported in Fed. Supp., 2019 WL 4926289

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 3339881
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Charles WILLIAMS, Jr., Plaintiff,

v.

Eric LEACH, et al., Defendants.

5:24-cv-0721 (BKS/TWD)
|
Signed July 8, 2024

**Attorneys and Law Firms**

CHARLES WILLIAMS, JR., Plaintiff, pro se, 4092, Cayuga County Jail, 7445 County House Road, Auburn, NY 13021.

**REPORT-RECOMMENDATION AND ORDER**

Thérèse Wiley Dancks, United States Magistrate Judge

## I. INTRODUCTION

 **\*1**  The Clerk has sent to the Court for review a complaint submitted by *pro se* plaintiff Charles Williams, Jr. ("Plaintiff") asserting claims pursuant to 42 U.S.C. § 1983. Dkt. No. 1. Plaintiff, who is currently confined at the Cayuga County Jail, has not paid the filing fee for this action and seeks leave to proceed *in forma pauperis* ("IFP"). Dkt. Nos. 2, 3.

## II. IFP APPLICATION

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 1:09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010). "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id.* (citing 28 U.S.C. § 1915(b); *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)); *see also* 28 U.S.C. § 1915A(c) ("As used in this section, the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program.").

Upon review, Plaintiff's IFP application demonstrates economic need. Dkt. No. 2. Because Plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and has filed the inmate authorization form required in this District, Dkt. No. 3, he is granted permission to proceed IFP.[1]

---

[1]  Although his IFP application has been granted, Plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

## III. BACKGROUND

Plaintiff alleges, on or around August 22, 2022, he was followed by Officer Leach. Dkt. No. 1 at 4.[2] As he entered his driveway, located at "21 Derby Ave., cops flashed their lights." *Id.* Plaintiff began to exit the vehicle, "Leach screamed, 'freeze' stiffening

Plaintiff at gunpoint while he remained a quarter of the way out." *Id.* An individual named Curtis Johnson then exited the house and Officer "Young yelled for Plaintiff to 'stay put' ...." *Id.*

2       Citations to Plaintiff's submissions will refer to the pagination generated by CM/ECF, the Court's electronic filing system. Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

Seconds later, the officers "yank Curtis off of the porch where they all tumbled and banged into the open door of the car causing the door to crush Plaintiff's shin bone against the car." *Id.* Then, "Leach & Young initiated a physical altercation." *Id.* As the officers "slammed and wrestled him unto the pavement the car door squeezed causing Plaintiff to wince & scream in excruciating pain." *Id.* The officers "did nothing to help in this emergency." *Id.*

Thereafter, "Plaintiff's car was illegally searched by them." *Id.* Plaintiff received treatment for his injuries at the Auburn Memorial Hospital, where he was "diagnosed with a hairline fracture on left shin." *Id.*

**\*2**  Plaintiff identified Auburn Police Officers Eric Leach, Andrew Young, and Sergeant Micheal Merkley as defendants. *Id.* at 2-3. The complaint asserts claims for "excessive force," "negligence," and "illegal search and seizure." *Id.* at 5. Plaintiff seeks $100,000 in relief. *Id.*

## IV. LEGAL STANDARD

Section 1915 of Title 28 requires a district court to dismiss an *in forma pauperis* complaint if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1)-(2); § 1915(e)(2)(B)(i)-(iii); *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint, or portion thereof, when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest arguments that they *suggest.*" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citation omitted, emphasis in original). A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Denton v. Hernandez*, 504 U.S. 25, 33 (1992) ("[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible"); *Livingston*, 141 F.3d at 437 ("[A]n action is 'frivolous' when either: (1) the factual contentions are clearly baseless ... or (2) the claim is based on an indisputably meritless legal theory.").

Additionally, when reviewing a complaint, a court may look to the Federal Rules of Civil Procedure. To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This short and plain statement of the claim must be "plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citations omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Moreover, a court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## V. ANALYSIS

**\*3** Plaintiff commenced this action pursuant to 42 U.S.C. § 1983, which "establishes a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y.) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To state a valid claim under § 1983, a plaintiff must allege the challenged conduct: (1) was attributable to a person acting under color of state law; and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Whalen v. Cnty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997). To establish liability under the statute, a plaintiff must plead that each government official defendant violated the Constitution through that official's own individual actions. *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020).

### A. Sergeant Micheal Merkley

"It is well-settled that where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted." *Dove v. Fordham Univ.*, 56 F. Supp. 2d 330, 335 (S.D.N.Y. 1999) (internal quotations and citations omitted), *aff'd sub nom., Dove v. O'Hare*, 210 F.3d 354 (2d Cir. 2000). Plaintiff listed Sergeant Micheal Merkley as a defendant in the caption of his complaint, Dkt. No. 1 at 3, but has not asserted any factual allegations against him, *see* Dkt. No. 1 at 4-5. Accordingly, the undersigned recommends dismissal of the complaint as to Micheal Merkley without prejudice. *See, e.g., Drawhorne v. Aloise*, No. 6:23-CV-1278 (TJM/TWD), 2023 WL 8188396, at \*3 (N.D.N.Y. Nov. 27, 2023) (recommending dismissal of plaintiff's claims, without prejudice, as to a defendant listed in the complaint's caption where plaintiff failed to assert allegations against him), *report and recommendation adopted*, 2024 WL 532572 (N.D.N.Y. Feb. 8, 2024); *Cato v. Reardon*, No. 9:22-CV-1173 (AMN/CFH), 2024 WL 1307115, at \*7 (N.D.N.Y. Mar. 27, 2024) (dismissing claims as to an individual "named as a defendant in the caption and list of parties ... [but] not referenced anywhere in the body of the pleading.").

### B. Excessive Force

Plaintiff first asserts an "8th Amendment" claim for "excessive force." Dkt. No. 1 at 5. He avers Officers "Leach & Young ripped Curtis from porch, while his hands were up, causing them to topple crashing against car." *Id.*

"There are three standards for excessive force depending on when the alleged violation occurred." *Porath v. Bird*, No. 9:11-CV-963 (GLS/CFH), 2013 WL 2418253, at \*16 (N.D.N.Y. June 3, 2013). "Where ... the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment ...." *Graham v. Connor*, 490 U.S. 386, 394 (1989); *see also, e.g., Shamir v. City of New York*, 804 F.3d 553, 556 (2d Cir. 2015) (explaining, "the use of excessive force renders a seizure of the person unreasonable and for that reason violates the Fourth Amendment."). "[I]f the alleged excessive force occurs post-arraignment, but before conviction, then Fourteenth Amendment standards apply." *Artis v. Valls*, No. 9:10-CV-0427 (GTS/TWD), 2012 WL 4380921, at \*1 n.1 (N.D.N.Y. Sept. 25, 2012); *see also, Rodriguez v. City of New York*, 594 F. Supp. 3d 534, 545 (E.D.N.Y. 2022) ("The Fourteenth Amendment applies ... to excessive force claims that do not involve 'an arrest, investigatory stop, or other seizure of a free citizen.' ") (citing *Graham*, 490 U.S. at 395) (additional quotations and citation omitted); *Graham*, 490 U.S. at 395 n.10 (explaining, "[a] 'seizure'

triggering the Fourth Amendment's protections occurs only when government actors have, 'by means of physical force or show of authority, ... in some way restrained the liberty of a citizen ....' ") (citing *Terry v. Ohio*, 392 U.S. 1, 19, n.16 (1968)) (additional citation omitted). "After conviction, the Eighth Amendment 'serves as the primary source of substantive protection ... in cases ... where the deliberate use of force is challenged as excessive and unjustified.' " *Graham*, 490 U.S. at 395, n.10 (citing *Whitley v. Albers*, 475 U.S. 312, 327 (1986)); *see also Porath*, 2013 WL 2418253, at *16 ("Allegations of excessive force occurring after conviction are subject to an Eighth Amendment analysis.") (citing *Ingraham v. Wright*, 430 U.S. 651, 671, n.40 (1977) ("the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law.")).

 **\*4** Here, the alleged constitutional violation occurred in Plaintiff's driveway, following police instructions to "freeze" and "stay put[,]" and prior to a search of Plaintiff's vehicle. *See* Dkt. No. 1 at 4. [3] Because it does not appear Plaintiff was arraigned on or convicted of criminal charges prior to the alleged incident, his excessive force claim is properly assessed under the Fourth Amendment. *See Graham*, 490 U.S. at 394. When analyzing such a claim, the relevant "question is whether the officers' actions [we]re 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397 (citing *Scott v. United States*, 436 U.S. 128, 137-139 (1978)) (additional citation omitted).

[3]    The undersigned notes, in his complaint, which was drafted utilizing a form complaint for civil rights violations, Plaintiff indicated he was a "[p]retrial detainee" at the time the alleged wrongdoing occurred. *See* Dkt. No. 1 at 2. However, given that the alleged wrongdoing apparently occurred in the driveway of Plaintiff's residence, *id.* at 4, and that Plaintiff listed his address at the time of filing as the "Cayuga County Jail," *id.* at 2, it appears Plaintiff was not a pretrial detainee at the time the incident giving rise to his claims occurred, and instead indicated his confinement status at the time he commenced the instant action.

Liberally construed, *see, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), Plaintiff's complaint alleges Auburn Police Officers Leach and Young instructed Plaintiff not to move as he stood beside his vehicle with the door ajar, then "slammed and wrestled" a third party, Curtis Johnson, onto the ground, during the course of which, Leach and Young contacted the door of Plaintiff's vehicle with their own and/or Johnson's bodies, "causing the door to crush Plaintiff's shin bone" resulting in a hairline fracture of said bone. *See* Dkt. No. 1 at 4. Accordingly, the undersigned recommends the Court find Plaintiff's Fourth Amendment excessive force claims against Defendants Eric Leach and Andrew Young survive *sua sponte* review and require a response. The Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### C. Negligence

Plaintiff next purports to assert a claim for "negligence." Dkt. No. 1 at 5. He avers, "every officer on the scene watched Plaintiff wince, cry, limp and beg for medical attention [officers] Leach & Young were negligent to demand Plaintiff to stay still." *Id.*

"It is well settled, however, that negligence is not cognizable as a federal claim under Section 1983." *Gambino v. LaClair*, No. 9:20-CV-0162 (DNH/DJS), 2020 WL 13801079, at *3 (N.D.N.Y. Mar. 24, 2020) (citing *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986)) (additional citation omitted); *see also Kingsley v. Hendrickson*, 576 U.S. 389, 396 (2015) ("[L]iability for *negligently* inflicted harm is categorically beneath the threshold of constitutional due process.") (internal quotations omitted, emphasis in original) (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998)); *Heredia v. Doe*, 473 F. Supp. 2d 462, 463 (S.D.N.Y. 2007) ("the pleadings fail to state facts which constitute anything more than a claim for negligence, for which there is no cause of action under 42 U.S.C. § 1983.") (citations omitted); *Johnson v. Annucci*, No. 9:21-CV-0335 (TJM/CFH), 2021 WL 12156681, at *5 (N.D.N.Y. May 20, 2021) (claims grounded in negligence are not actionable under Section 1983) (citations omitted). Therefore, the undersigned recommends dismissal of Plaintiff's negligence claim. *See, e.g., Guzman v. McCarthy*, No. 9:21-CV-1192 (MAD/ATB), 2022 WL 630873, at *2 n.2 (N.D.N.Y. Mar. 4, 2022).

### D. Illegal Search and Seizure

**\*5**  Plaintiff's final claim alleges an "illegal search and seizure." Dkt. No. 1 at 5. In support of his claim, Plaintiff argues he "possessed nothing illegal, nor did anything to warrant a search." *Id.* However, the complaint does not specify which defendant or defendants conducted the allegedly unlawful search. *See id.* at 4 (Plaintiff's car was illegally searched by *them*.") (emphasis added), 5.

"Pleadings that do not differentiate which defendant was involved in the unlawful conduct are insufficient to state a claim." *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 598 (E.D.N.Y. 2017) (citations omitted). Because Plaintiff has not specified which defendant(s) were involved in the alleged search of his vehicle, the undersigned recommends dismissal of Plaintiff's Fourth Amendment search and seizure claim without prejudice. *See, e.g., LaPietra v. City of Albany Police Dep't*, No. 9:19-CV-1527 (TJM/TWD), 2020 WL 5891888, at \*9 (N.D.N.Y. Oct. 5, 2020) (explaining, "[t]he use of the terms 'they,' or 'the police' or 'officer' as a name for alleged defendants is not adequate to state a claim against a 'person' as required in § 1983 actions.") (citation omitted), *report and recommendation adopted*, 2020 WL 7021589 (N.D.N.Y. Nov. 30, 2020).

## VI. CONCLUSION
**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's motion to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**, and it is

**RECOMMENDED** that Plaintiff's complaint be **ACCEPTED** for filing to the extent it asserts claims of Excessive Force, in violation of the Fourth Amendment, against Defendants Leach and Young; and it is further

**RECOMMENDED** that except as to the foregoing, the remaining claims asserted in the complaint be **DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND**; and it is further

**ORDERED** that the Clerk provide to Plaintiff a copy of this Report-Recommendation and Order, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. [4] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

---

[4]  If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**IT IS SO ORDERED.**

## All Citations

Slip Copy, 2024 WL 3339881

---

2024 WL 4291332
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Charles WILLIAMS, Jr., Plaintiff,

v.

Eric LEACH, Andrew Young and Micheal Merkley, Defendants.

5:24-cv-721 (BKS/TWD)
|
Signed September 25, 2024

**Attorneys and Law Firms**

Plaintiff pro se, Charles Williams, Jr., Auburn, NY 13021.

### MEMORANDUM-DECISION AND ORDER

Brenda K. Sannes, Chief United States District Judge:

 **\*1**  Plaintiff Charles Williams, Jr. commenced this proceeding under 42 U.S.C. § 1983, and sought leave to proceed *in forma pauperis* ("IFP"). (Dkt. Nos. 1, 2). This matter was referred to United States Magistrate Judge Therese Wiley Dancks who, on July 8, 2024, granted Plaintiff's application to proceed IFP, and issued a Report-Recommendation, recommending that Plaintiff's complaint be accepted for filing to the extent it asserts claims of Excessive Force, in violation of the Fourth Amendment, against Defendants Leach and Young; and that the remaining claims asserted in the complaint be dismissed without prejudice and with leave to amend. (Dkt. No. 4). Magistrate Judge Dancks found that negligence is not cognizable as a federal claim under 42 U.S.C. § 1983, and that the complaint failed to identify which defendant or defendants conducted the allegedly unlawful search. (*Id.*) Plaintiff was informed that he had fourteen days within which to file written objections to the report under 28 U.S.C. § 636(b)(1), and that the failure to object to the report within fourteen days would preclude appellate review. (*Id.* at 10-11). No objections to the Report-Recommendation have been filed.

As no objection to the Report-Recommendation has been filed, and the time for filing objections has expired, the Court reviews the Report-Recommendation for clear error. *See Petersen v. Astrue*, 2 F. Supp. 3d 223, 228–29 (N.D.N.Y. 2012); Fed. R. Civ. P. 72(b) advisory committee's note to 1983 amendment. As Magistrate Judge Dancks found, negligence is not a viable federal claim under 42 U.S.C. § 1983. (Dkt. No. 4, at 8). To the extent Plaintiff seeks to include a negligence claim under state law, in addition to his claim for excessive force under the Fourth Amendment in violation of § 1983, Plaintiff must allege facts establishing that the defendant had a duty as to the Plaintiff, that the defendant breached that duty, and resulting injury to the Plaintiff. *Lloyd v. City of New York*, 246 F. Supp. 3d 704, 730–31 (S.D.N.Y. 2017). Having reviewed the Report-Recommendation for clear error and found none, the Court adopts the Report-Recommendation in its entirety.

For these reasons, it is hereby

**ORDERED** that Magistrate Judge Dancks's Report-Recommendation (Dkt. No. 4) is **ADOPTED**; and it is further

**ORDERED** that Plaintiff's complaint is ACCEPTED for filing to the extent it asserts claims of Excessive Force, in violation of the Fourth Amendment, under 42 U.S.C. § 1983 against Defendants Leach and Young; and it is further

2024 WL 4291332

**ORDERED** that except as to the foregoing, the remaining claims asserted in the complaint are **DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND**; and it is further

**ORDERED** that any amended complaint must be filed **within thirty (30) days** of the date of this Order. Any amended complaint must be a complete pleading which will replace the current complaint in total; and it is further

**ORDERED** that if Plaintiff files a timely amended complaint, it shall be referred to Magistrate Judge Dancks for review; and if Plaintiff fails to file a timely amended complaint, the Clerk is directed to issue summons as to defendants Leach and Young, and issue a General Order 25; and it is further

**\*2** **ORDERED** that the Clerk serve a copy of this Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2024 WL 4291332

---

**End of Document**                                      © 2025 Thomson Reuters. No claim to original U.S. Government Works.

---

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 296 of 353

Alaei v. State University of New York at Albany, Not Reported in Fed. Supp. (2022)

2022 WL 4094450

2022 WL 4094450
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Dr. Kamiar ALAEI, Plaintiff,

v.

STATE UNIVERSITY OF NEW YORK AT ALBANY, Havidan Rodriguez, individually and in his
official capacity on behalf of the State University of New York at Albany, Bruce P. Szelest, individually
and in his official capacity on behalf of the State University of New York at Albany, and James R. Stellar,
individually and in his official capacity on behalf of the State University of New York at Albany, Defendants.

1:21-cv-00377 (BKS/TWD)
|
Signed September 7, 2022

**Attorneys and Law Firms**

For Plaintiff: Joseph F. Castiglione, Young Sommer, LLC, Five Palisades Drive, Suite 300, Albany, NY 12205.

For Defendants: Letitia James, Attorney General for the State of New York, Helena O. Pederson, David C. White, Assistant
Attorneys General, of Counsel, Office of the Attorney General, The Capitol, Albany, NY 12224.

### MEMORANDUM-DECISION AND ORDER

Brenda K. Sannes, Chief United States District Judge:

### I. INTRODUCTION

**\*1** Plaintiff Kamiar Alaei brings this action against the State University of New York at Albany ("SUNYA"), his former
employer, as well as Defendants Havidan Rodriguez, Bruce P. Szelest, and James R. Stellar (collectively, "individual
defendants").[1] (Dkt. No. 1). Plaintiff alleges that Defendants: discriminated against him on the basis of sex, in violation of
Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq. ("Title IX"); discriminated against him on the basis
of race, religion, and national origin, in violation of 42 U.S.C. § 1981; and deprived him of due process and equal protection, in
violation of the Fourteenth Amendment, 42 U.S.C. § 1983. (*Id.*). Presently before the Court is Plaintiff's motion to amend the
Complaint under Federal Rule of Civil Procedure 15 to add a state law claim for negligent infliction of emotional distress, (Dkt.
No. 23), and Defendants' cross-motion under Rule 12(c) for partial judgment on the pleadings, (Dkt. No. 24). Both parties have
filed opposition and reply papers. (Dkt. Nos. 24, 33, 38, 39). For the reasons stated below, Plaintiff's motion to amend is denied
as futile, and Defendants' cross-motion for partial judgment on the pleadings is granted in part and denied in part.[2]

[1]    Defendant Rodriguez was the President of SUNYA, Defendant Szelest was the Chief of Staff to the President of SUNYA,
and Defendant Stellar was the Provost and Senior Vice President for Academic Affairs at SUNYA. (Dkt. No. 1, ¶¶ 19,
21, 23).

[2]    Since Plaintiff has voluntarily withdrawn the First Amendment claim asserted in the original Complaint as well as the
intentional infliction of emotional distress claim asserted in the proposed Amended Complaint. (Dkt. No. 35), the Court
does not address Defendants' arguments concerning those claims.

### II. FACTS [3]

2022 WL 4094450

3    The facts are drawn from the Complaint, (Dkt. No. 1), and the attachments thereto. The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

**A. Plaintiff's Background and Employment with SUNYA**

Plaintiff, a male born and raised in Iran and of Shi'i/Yarstan faith, is "a global health policy expert" who studies "medicine, epidemiology, international health, health policy, and international human rights law." (Dkt. No. 1, ¶¶ 25, 28). He began his career promoting the prevention and care of HIV/AIDS and helped develop several harm-reduction programs, as well as a medical clinic, in Iran. (*Id.* ¶¶ 28, 31). While in Iran, Plaintiff was convicted of trying to overthrow the government "in a secret, one-day trial" and was detained for two years. (*Id.* ¶ 29). He states that his conviction and resulting detention stemmed from his association with the United States and the Iranian government's opposition to his work. (*Id.*). Plaintiff continued his work upon his release; he was published in various academic journals and won several awards, including the Ellis Island Medal of Honor Award. (*Id.* ¶¶ 26–27, 31–34).

**\*2**   In 2014, Plaintiff was appointed by SUNYA as a lecturer and director of SUNYA's Global Institute for Health and Human Rights ("GIHHR"), which he founded. (*Id.* ¶¶ 34, 36). The GIHHR's goals "were to advance the understanding and protection of health and human rights in a theoretical, academic, practical, and ethical context." (*Id.* ¶ 36). Plaintiff's employment was effectuated by Appointment Letter in April 2014 and renewed through 2018. (*Id.* ¶ 37; Dkt. No. 1-1, at 2–3 (August 16, 2014 Appointment Letter)). His contributions to SUNYA were consistently commended, and having received no discipline or negative evaluations, Plaintiff was promoted to Associate Dean for Global and Interdisciplinary Research in January 2016. (Dkt. No. 1, ¶¶ 39–42). He was also the "principal investigator of two major federal grants," making him responsible for securing approximately three million dollars in funds. (*Id.* ¶ 61).

As part of his employment, Plaintiff was a member of the United University Professions, and as such, was entitled to the benefits and protections established in the 2011-2016 Contract Between United University Professions and the State of New York ("UUP Agreement"). (*Id.* ¶¶ 43–44). The UUP Agreement provided Plaintiff with certain rights pertaining to disciplinary actions. (*Id.* ¶ 46). It stated that discipline could only be imposed for "just cause," and that SUNYA employees must receive a notice specifying both the conduct for which discipline is being imposed and the proposed penalty. (*Id.* ¶ 47). The UUP Agreement also included several antidiscrimination provisions. (*See* Dkt. No. 1-2, at 4). Specifically, in §§ 10.1 and 10.2, the State agreed to continue its "established policy prohibiting discrimination" on race, religion, national origin, and sex. (*Id.*).

**B. Plaintiff's Placement on Alternative Assignment**

On February 8, 2018, acting in response to concerns allegedly raised about Plaintiff in a student complaint,[4] Randy Stark, an Associate Vice President in SUNYA's Office of Human Resource Management, sent a letter to Plaintiff invoking the alternative assignment provision of the UUP Agreement. (*Id.* ¶¶ 53, 55, 220).[5] However, Plaintiff alleges that neither SUNYA, nor Stark, provided him with any explanation as to why he was placed on alternative assignment. (*Id.* ¶ 56). The letter instructed Plaintiff not to discuss the matter with anyone, including SUNYA staff, students, and alumni, and SUNYA subsequently blocked Plaintiff from accessing university facilities and email. (*Id.* ¶¶ 57–60). Additionally, SUNYA informed numerous individuals and institutions that Plaintiff had been removed as director of the GIHHR and replaced with two new co-directors; both were non-Iranian white females. (*Id.* ¶ 69). SUNYA did not inform Plaintiff, or anyone else, why Plaintiff was removed as director, and thus, Plaintiff alleges that SUNYA "implied to [Plaintiff's] colleagues and others ... that it believed there was 'just cause' to replace" Plaintiff. (*Id.* ¶ 68). Several days later, SUNYA personnel emailed Plaintiff to recommend that he contact all venues with which he had previous commitments and advise them not to describe his previous affiliation with the GIHHR and SUNYA. (*Id.* ¶ 71). The same email advised Plaintiff that he could only participate in public events in his personal capacity, and also prohibited Plaintiff from engaging in any education programs offered by SUNYA. (*Id.*).

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 298 of 353

Alaei v. State University of New York at Albany, Not Reported in Fed. Supp. (2022)

2022 WL 4094450

4    In an email attached to the Complaint, a SUNYA employee seems to indicate that the complaint was from a student, (Dkt. No. 1-12, at 3), though Plaintiff avers that no record of a formal or informal student complaint exists, (Dkt. No. 1, ¶ 190).

5    Twice in his proposed amended complaint, Plaintiff refers to Mr. Stark as "Defendant Stark." (Dkt. No. 1, ¶¶ 94, 188). Stark is not named as a Defendant in this action and the Court does not treat him as such.

**\*3** Following Plaintiff's placement on an alternative assignment, Stark began a Title IX investigation. (*Id.* ¶¶ 93, 95). However, Plaintiff alleges that Title IX personnel later disclosed that there was never a formal or informal complaint made against Plaintiff. (*Id.* ¶ 190).

### C. Plaintiff's Letters of Complaint and Grievance

In letters dated February 16 and 28, 2018 to SUNYA, Plaintiff's attorney wrote objecting to SUNYA's actions toward Plaintiff, demanded that SUNYA comply with the UUP Agreement, and demanded that SUNYA "provide [Plaintiff] with access to his email accounts and allow [Plaintiff] to address his federal grant projects." (*Id.* ¶ 87). On March 20, 2018, Plaintiff filed a grievance pursuant to the UUP Agreement alleging that SUNYA wrongfully disciplined him by removing him from his position "without conducting [a] fair and unbiased investigation." (*Id.* ¶¶ 122–24). By letter dated May 23, 2018, Plaintiff filed an additional grievances "appealing his initial March 2018 grievance to Step 3" under the UUP Agreement. (*Id.* ¶ 179). [6]

6    Plaintiff also sued the State of New York in the New York State Court of Claims ("state lawsuit"). (*Id.* ¶ 91).

### D. Discussions of Plaintiff's "Non-Renewal"

Plaintiff alleges that Defendants had decided as early as March 2018 that Plaintiff would not be returning. A March 26, 2018, email exchange between Brian Selchick, a SUNYA employee, and Chantel Cleary, SUNYA's Title IX Coordinator, reflects Cleary's understanding that, at that point it had been agreed that Plaintiff would not be returning to his position and Selchick's understanding that Plaintiff would need to return for a "short" period of time before the "non-renewal pre buy out." (Dkt. No. 1-6, at 2). Notes dated April 3, 2018, reflect Selchick's ideas for how to "maintain the integrity of the non-renewal W/ or W/O the [Notice of Discipline]/ Interrogation." (Dkt. No. 1-8, at 2). The notes also state that it was SUNYA's "[g]oal ... to make sure [Plaintiff] does not come back." (*Id.*). If performance evaluations were necessary to support non-renewal, Selchick indicated that SUNYA "could recreate them." (*Id.*). On April 4, 2018, Leslie Zwicklebauer advised Selchick, Stark, and Cleary that, if they wished to seek non-renewal of Plaintiff's employment, they would need a "current performance program and an evaluation" before issuing a formal notice of non-renewal. (Dkt. No. 1, ¶ 142).

Several weeks later, on April 28, 2018, SUNYA personnel contacted Dr. Harvey Charles, Plaintiff's supervisor, and asked him to sign a document for Plaintiff's non-renewal. (*Id.* ¶ 150). However, the document was addressed to Provost Stellar and written as if Dr. Charles authored it himself. (*Id.* ¶ 151). Dr. Charles refused to sign the document because he felt uncomfortable making a recommendation "without a basis to do so," and asked that the matter be handled differently. (*Id.* ¶ 152). Nevertheless, on April 30, 2018, SUNYA personnel provided Plaintiff with a proposed non-renewal document indicating that Dr. Charles recommended Plaintiff be non-renewed. (*Id.* ¶ 161). Dr. Charles wrote to Stark in early May 2018 to inform him that he never signed the document because he had no basis on which to recommend non-renewal; he also indicated that he would not seek such information as it was "clear to [him] that the provost ha[d] decided not to renew Kamiar's contract." (*Id.* ¶ 162).

### E. Plaintiff's Termination

**\*4** On May 14, 2018, SUNYA personnel communicated to Plaintiff that the provost approved and signed the proposed non-renewal and communicated no basis or reasoning for doing so to Plaintiff. (*Id.* ¶ 166). Shortly after, in late May or early June 2018, Rodriguez approved the predetermination for non-renewal and the decision to provide Plaintiff with only one year of continued employment. [7] (*Id.* ¶ 181).

Alaei v. State University of New York at Albany, Not Reported in Fed. Supp. (2022)

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 299 of 353

2022 WL 4094450

7

Plaintiff alleges that, while Defendants Stellar and Rodriguez did not renew his employment, they approved the renewals of several non-Middle Eastern, non-Shi'i/Yarstan, and non-male SUNYA employees with lesser credentials. (*Id.* ¶ 183). He also alleges that, during the same period, Stellar and Rodriguez did not pursue or approve the non-renewal of several other non-Middle Eastern, non-Shi'i/Yarstan, and non-male SUNYA Faculty with lesser credentials. (*Id.* ¶ 184).

Plaintiff further claims that Defendants recognized that there was no "just cause" for his non-renewal. (*Id.* ¶ 185). To support this claim, Plaintiff cites emails from July 6 and 9, 2018, which show SUNYA personnel discussing their failure to establish a basis to continue the investigation. (*Id.* ¶ 186). In a July 6, 2018, email, Stark wrote the following to SUNYA employee Valerie Ayers:

> I've attached a counseling letter we worked on for Kamiar Alaei. It was a struggle writing it as there wasn't anything to counsel him on since the sexual misconduct allegations were unfounded. We planned to give him policies on sexual harassment, Workplace Violence etc., but for what purpose, as we are going to non-renew him and buy him out. After discussing the question, does it really serve any purpose to issue this memo other than it gives KA and his attorney more info for their war chest?

(Dkt. No. 1-12, at 2). Ayers responded to Stark's email stating that "there has to be something you can get out of the student's complaint." (*Id.* at 3). Plaintiff alleges that in further emails, SUNYA officials stated that there was no record of a formal or informal complaint against Plaintiff. (Dkt. No. 1, ¶ 190).

Subsequently, on August 9, 2018, Stark and Selchick conducted a "counseling session" with Plaintiff and shared that there was in fact no just cause to terminate, or basis to discipline, Plaintiff, and that no SUNYA policies were violated. (*Id.* ¶ 194–95). At the end of the session, Plaintiff was directed to return to work the next morning. (*Id.* ¶ 196).

The next day, on August 10, 2018, SUNYA terminated Plaintiff's employment by letter without explanation and despite his entitlement to two years of guaranteed employment under the UPA Agreement and Appointment Letter. (*Id.* ¶¶ 171, 197). Nevertheless, the termination letter stated that Plaintiff would not be renewed and that he would be paid for one year of employment, ending on August 9, 2019. (*Id.* ¶ 198).

### F. Plaintiff's Professional Losses and Adverse Effects

Plaintiff alleges that he suffered various professional losses and adverse effects, physical and mental, because of Defendants' "illegal campaign of wrongful conduct intended to violate [his] rights." (*Id.* ¶ 203). For example, Plaintiff asserts that he was a finalist for a deanship at York College, but that when SUNYA announced their investigation, the College withdrew its interest. (*Id.* ¶ 211). Further, without access to his email account, Plaintiff was unable to maintain two sensitive, technical, and high security grants, which demanded constant oversight; cut off from several other professional projects; unaware that he received a prestigious scholarly award; and forced to decline an invitation to speak at Los Alamos National Laboratory. (*Id.* ¶¶ 61–64, 76, 81). Additionally, SUNYA allegedly "deterred several organizations and funders around the world from collaborating or dealing with Dr. Alaei on the projects that he was leading ... by asking them to work with other individuals rather than Dr. Alaei." (*Id.* ¶ 80).

### G. Allegations from Proposed Amended Complaint

**\*5** As relevant here, according to the Proposed Amended Complaint, Plaintiff suffered from "severe depression and anxiety" as a result of his termination, as well as "humiliation and embarrassment with friends, family, colleagues, and respective employers." (Dkt. No. 23-4, ¶ 275). He was prescribed medication to address his depression and anxiety. (*Id.* ¶ 278). Additionally, Plaintiff had pre-existing emotional distress from his imprisonment in Iran, which he alleges was exacerbated by Defendants' conduct. (*Id.* ¶ 277). He also contends that he suffered physical side effects as a result of Defendants' conduct, including sleep loss, hair loss, weight loss, and severe skin problems. (*Id.* ¶ 276).

2022 WL 4094450

## III. MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

### A. Standard of Review

"The same standard applicable to Fed. R. Civ. P. 12(b)(6) motions to dismiss applies to Fed. R. Civ. P. 12(c) motions for judgment on the pleadings." *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010). To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.' " *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

### B. Analysis

#### 1. Materials Outside the Pleadings

In opposition to Defendants' motion for judgment on the pleadings, Plaintiff has submitted a number of documents, including: (1) a 34-page affirmation by Plaintiff's counsel containing facts not contained in the Complaint, (Dkt. No. 33-1); (2) Appointment Letters dated April 16, 2014, December 9, 2014, and December 4, 2017, and a change of status form dated November 20 and 21, 2017, (Dkt. No. 33-2); (3) an excerpt from the UUP Agreement, (Dkt. No. 33-3; (4) three deposition transcripts, (Dkt. Nos. 33-4 (Selchick), 33-5 (Stark), 33-6 (Rodriguez); (5) emails authored by SUNYA employees, Defendants, and at least one student, concerning Plaintiff, (Dkt. Nos. 37 and 33-8); and (6) the August 10, 2018 termination letter, (Dkt. No. 33-9). Defendants object to the Court's consideration of most of these materials. (Dkt. No. 39, at 5–7).

"Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). However, considering "materials outside the complaint is not entirely foreclosed on a 12(b)(6) motion." *Id.* A complaint "is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)). "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." *Id.* (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (internal quotation marks omitted)). Even where a document is integral to the complaint, it must be "clear" that "no dispute exists regarding the authenticity or accuracy of the document" and that "there exist no material disputed issues of fact regarding the relevance of the document." *Faulkner*, 463 F.3d at 134. "[I]f material is not integral to or otherwise incorporated in the complaint, it may not be considered unless the motion to dismiss is converted to a motion for summary judgment and all parties are 'given a reasonable opportunity to present all the material that is pertinent to the motion.' " *Id.* (quoting Fed. R. Civ. P. 12(d)).

**\*6**  The Court may properly consider the April 16, 2014, Appointment Letter, because, in addition to submitting it in opposition to Defendant's motion for judgment on the pleadings, (Dkt. No. 33-2, at 2–3), Plaintiff attached it as an exhibit to the Complaint. (Dkt. No. 1-1). The Court will also consider the August 10, 2018, termination letter, (Dkt. No. 33-9), as the Complaint expressly references and relies on the letter. (Dkt. No. 1, ¶¶ 197–99), as well as the exhibit containing Article I of the "2011–2016" UUP Agreement, (Dkt. No. 33-3). The 2011–2016 UUP Agreement is not only referenced in the Complaint, (Dkt. No. 1, ¶ 44), but Articles 5–7, 10–11, and 18–20 are attached as an exhibit to the Complaint, (Dkt. No. 1-2). Further, there is no dispute as to authenticity or accurateness of the Articles from the 2011–2016 UUP Agreement.

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 301 of 353

Alaei v. State University of New York at Albany, Not Reported in Fed. Supp. (2022)

2022 WL 4094450

Turning to the Selchick, Stark, and Rodriguez depositions, (Dkt. Nos. 33-4 to 33-6), the Court notes that the Complaint refers to depositions, but, for the most part, does so in a general manner that does not enable the Court to determine what depositions Plaintiff is relying on. (*See, e.g.*, Dkt. No. 1 ¶¶ 117 (alleging that "SUNY personnel also admitted in depositions" they were not aware of aware of concerns regarding Plaintiff's email use), 120 ("SUNY personnel stated in depositions in the State Lawsuit that such actions were not the usual course of action by SUNYA for similar situations.")). While the Complaint contains no reference to the Selchick deposition, it contains several references to the Stark deposition, (*id.* ¶¶ 116 ("Mr. Stark ... stated at his deposition in the State Lawsuit that prohibiting email access was not normal protocol ... and was a violation of the UUP Agreement."), 118 ("Mr. Stark further stated ... that the SUNYA President's office had directed that Dr. Alaei have no access to his email account and no access to SUNYA/activities."), 200 ("During a recent deposition of Mr. Stark in the State Lawsuit, Mr. Stark stated SUNYA had made the decision to terminate Dr. Alaei before the August 9, 2018 counseling session."); *see also id.* ¶¶ 201–02, 247), and one reference to the Rodriguez deposition, (*see id.* ("Based upon the ... deposition testimony provided in the State Lawsuit, Defendant[ ] Rodriguez [sic] ... w[as] pushing non-renewal and termination.")). When viewed in the context of the 50-page, 269-paragraph Complaint as a whole, the Complaint's few references to the Rodriguez and Stark depositions do not support a conclusion that the Complaint relies heavily on the terms and effects of those depositions. *See Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) ("Merely mentioning a document in the complaint will not satisfy this standard; indeed, even offering 'limited quotation[s]' from the document is not enough.' " (quoting *Global Network Commc'ns*, 458 F.3d at 156)). Accordingly, the Court declines to consider the deposition testimony of Selchick, Rodriguez, or Stark. *See, e.g.*, *id.* at 560 (finding reliance on deposition testimony improper, noting that although the complaint referred several times to "sworn testimony" from a separate action, there was no basis for finding that the complaint "relied so heavily rely on the terms and effect of [the] testimony that the deposition transcript may fairly be deemed integral to the complaint").

The remainder of the exhibits Plaintiff submitted in opposition to Defendant's motion are neither referenced in or integral to the Complaint, and therefore will not be considered in connection with Defendants' motion.

## 2. Sovereign Immunity

Defendants move to dismiss Plaintiff's claims against SUNYA and the individual defendants in their official capacities on the basis of sovereign immunity. (Dkt. No. 24-2, at 18–20). Plaintiff opposes the motion, arguing that by virtue of the UUP Agreement, New York State "expressly waived its immunity to claims of discrimination." (Dkt. No. 33, at 21). The Eleventh Amendment bars suits against a state unless Congress has abrogated the state's sovereign immunity, the state has consented to suit, or the plaintiff is "seeking injunctive relief against a state official for an ongoing violation of law or the Constitution." *N.Y. State Corr. Officers & Police Benevolent Ass'n, Inc. v. New York*, 911 F. Supp. 2d 111, 124–25 (N.D.N.Y. 2012) (citing *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)). "This jurisdictional bar also immunizes a state entity that is an 'arm of the state,' ... including, in appropriate circumstances, a state official acting in his or her official capacity." *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007) (citation omitted); *Leitner v. Westchester Cmty. Coll.*, 779 F.3d 130, 134 (2d Cir. 2015). The State University of New York ("SUNY"), including SUNYA, is considered an arm of the state, and as such, is entitled to sovereign immunity. *See Leitner*, 779 F.3d at 136 (explaining that "SUNY itself is entitled to sovereign immunity because it is 'an integral part of the government of the State' " (quoting *Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990))). So too are SUNYA employees in their official capacities. *See Deposit Ins. Agency*, 482 F.3d at 617; *Garcia v. S.U.N.Y. Health Scis. Ctr. Of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) (noting that when a plaintiff sues "individual defendants in their official capacities, he [seeks] damages from New York, and the Eleventh Amendment therefore shields [the individual defendants] to the same extent that it shields SUNY").

**\*7** However, "[i]n the Rehabilitation Act Amendments of 1986, ...42 U.S.C. § 2000d-7, Congress abrogated the States' Eleventh Amendment immunity" from Title IX claims. *Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 72, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992); *Vega v. State Univ. of N.Y. Bd. of Trustees*, 67 F. Supp. 2d 234, 340 (S.D.N.Y. 1999). Given the recognized congressional abrogation of immunity for Title IX claims, to the extent Defendants move to dismiss Plaintiff's Title IX claim on the basis of sovereign immunity, the Court denies the motion. [8]

Alaei v. State University of New York at Albany, Not Reported in Fed. Supp. (2022)

2022 WL 4094450

8  In their memorandum of law in support of the cross-motion to dismiss, Defendants contend that "Plaintiff's claims against SUNYA and the individual defendants in their official capacities are barred by the Eleventh Amendment," (Dkt. No. 24-2, at 18), but only address the claims under §§ 1981 and 1983, (*id.* at 18–20).

Conversely, Congress has not abrogated, and New York has not waived, sovereign immunity with respect to §§ 1981 and 1983 claims. *Jackson v. Battaglia*, 63 F. Supp. 3d 214, 219–20 (N.D.N.Y. 2014); *Wagner v. Conn. Dep't of Corr.*, 599 F. Supp. 2d 229, 237–38 (D. Conn. 2009). Nevertheless, Plaintiff argues that, in this instance, New York waived its sovereign immunity by virtue of the UUP Agreement. (Dkt. No. 33, at 22–24). Specifically, he contends that § 10.4 of the UUP Agreement, which states, in part, that "[c]laims of illegal discrimination under Sections 10.1 and 10.2 shall ... be subject to review in accordance with State and Federal procedures," constitutes an express waiver of immunity. (*Id.*). The Court disagrees. States may waive sovereign immunity through contract provisions invoking a federal court's jurisdiction, but as Plaintiff acknowledges, (*id.* at 14), "[a] state will be deemed to have waived its immunity 'only where stated by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.' " *Marisol A. ex rel. Forbes v. Giuliani*, 157 F. Supp. 2d 303, 313–14 (S.D.N.Y. 2001) (quoting *Edelman v. Jordan*, 415 U.S. 651, 673, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974)) (internal quotations omitted). The language of § 10.4 of the UUP Agreement, which is included as an attachment to the Complaint, does not meet that burden because it is too vague. (Dkt. No. 1-2, at 4). The review of discrimination claims "in accordance with State and Federal procedures established for such purpose," (*id.*) could refer to procedures other than a lawsuit invoking the jurisdiction of the federal courts. As such, there is no "overwhelming implication[ ]" that New York waived its immunity, *see Forbes*, 157 F. Supp. 2d at 314.

In a sur-reply letter, Plaintiff wrote to "clarify the relief available to the Plaintiff under his claims under 42 U.S.C. § 1981," and asserted that the "relief available ... includes reinstatement to his former position under § 1981." (Dkt. No. 38, at 1). "Under the well-known exception to [the sovereign immunity bar] first set forth in *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), 'a plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for prospective, injunctive relief from violations of federal law.' " *State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 95 (2d Cir. 2007) (quoting *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007)); *see also Ford v. Reynolds*, 316 F.3d 351, 354–55 (2d Cir. 2003) (explaining that "there is 'a limited exception to the general principle of sovereign immunity [that] allows a suit for injunctive relief challenging the constitutionality of a state official's actions in enforcing state law under the theory that such a suit is not one against the State, and therefore not barred by the Eleventh Amendment' " (quoting *CSX Transp. v. N.Y. State Office of Real Prop. Servs.*, 306 F.3d 87, 98 (2d Cir. 2002))). Here, however, as discussed *infra*, Plaintiff's § 1981 claim is dismissed. But even if Plaintiff asserted a viable § 1981 claim, because the Complaint contains no reference to reinstatement and makes only a vague request for "equitable relief," (Dkt. No. 1, ¶ 269(f)), there is no basis for finding that the *Ex parte Young* exception is applicable in this case. *See Emmons v. City Univ. of New York*, 715 F. Supp. 2d 394, 407 (E.D.N.Y. 2010) (dismissing "all claims purportedly brought pursuant to the" *Ex parte Young* exception where the complaint was "far less clear in its request for equitable relief, and 'reinstatement' is never mentioned"); *Falcon v. City Univ. of New York*, No. 15-cv-3421, 2016 WL 3920223, at *9, 2016 U.S. Dist. LEXIS 92396 (E.D.N.Y. July 15, 2016) (dismissing the plaintiff's claim for prospective injunctive relief, where the "only reference to any kind of injunctive relief is a single mention of the phrase alongside every other form of damages remotely available" and the proposed amended complaint did "not assert an explicit claim for reinstatement or any other kind of prospective injunctive remedies").

**\*8** Therefore, as Plaintiff does not seek injunctive relief for an ongoing constitutional or statutory violation, the Court grants the motion to dismiss the §§ 1981 and 1983 claims against SUNYA and the individual defendants in their official capacities.

### 3. Title IX Claim

Defendant SUNYA argues that Plaintiff's Title IX claim against it must be dismissed because the statute does not confer a private right of action for employees who allege gender discrimination in the course of their employment. (Dkt. No. 24-2,

Case 9:22-cv-00638-DNH-TWD   Document 58   Filed 02/28/25   Page 303 of 353

Alaei v. State University of New York at Albany, Not Reported in Fed. Supp. (2022)

2022 WL 4094450

at 21). Plaintiff disagrees, contending that a private right of action does exist, given several "Supreme Court cases broadly construing the application of Title IX." (Dkt. No. 33, at 27). Title IX provides, with certain exceptions not relevant here: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). According to the Second Circuit, "[i]t is now well settled that, while Title IX does not itself provide for a private cause of action to enforce its requirements, a private right of action is implied in a variety of circumstances." *Vangalattore v. Cornell Univ.*, 36 F.4th 87, 104 (2d Cir. 2022); *Cannon v. Univ. of Chicago*, 441 U.S. 677, 688–709, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979). In its recent *Vangalattore* decision, [9] the Second Circuit held that "Title IX allows a private right of action for a university's intentional gender-based discrimination against a faculty member." 36 F.4th at 106. Plaintiff alleges that Defendants intentionally discriminated against him because of his gender; a private right of action is therefore available to him under Title IX. *See id.* Because Defendants move to dismiss Plaintiff's Title IX claim solely on the basis that Title IX does not allow a private right of action, that motion is denied.

[9]    Defendants moved to dismiss the Title IX claim before the Second Circuit's decision in *Vangalattore*, (Dkt. No. 24); prior to *Vangalattore*, district courts in the Second Circuit were split on the issue of whether a private right of action was available. *See Hauff v. State Univ. of N.Y.*, 425 F. Supp. 3d 116, 129–30 (E.D.N.Y. 2019) (collecting cases).

### 4. Section 1981 Claim

Defendants move to dismiss Plaintiff's claim alleging that Defendants violated his rights under 42 U.S.C. § 1981. (Dkt. No. 24-2, at 27–28). Plaintiff opposes Defendants' motion arguing he is permitted to seek redress for the denial of his rights under § 1981, via § 1983 "as the enforcement mechanism." (Dkt. No. 33, at 28–29 (citing *Duplan v. City of N.Y.*, 888 F.3d 612, 621 (2d Cir. 2018); *Smalls v. Collins*, 10 F.4th 117, 144–45 (2d Cir. 2021))). The Second Circuit has expressly held that "§ 1981 does not provide a separate private right of action against state actors." *Duplan*, 888 F.3d at 621; *Smalls*, 10 F.4th at 144–45. As the Circuit has explained, "[b]ecause § 1983 already provides a remedy against state actors, there is no reason to infer [that § 1981] creates an additional, and duplicative, remedy." Duplan, 888 F.3d at 620–21. Therefore, because "the express cause of action for damages created by § 1983 constitutes *the exclusive federal remedy* for violation of the rights guaranteed in § 1981 by state governmental units," *id.* at 619, Plaintiff's § 1981 claims are dismissed.

### 5. Punitive Damages Claim

**\*9**  Defendants move to dismiss Plaintiff's fifth claim for punitive damages. (Dkt. No. 24-2, at 28–29). Plaintiff argues that the issue is irrelevant because "Defendants are on express notice that Plaintiff is seeking punitive damages in this case." (Dkt. No. 33, at 32). Defendants are correct that a claim for punitive damages does not constitute an independent cause of action; it is instead a form of relief. *Farina v. Metro. Transp. Auth.*, 409 F. Supp. 3d 173, 220 (S.D.N.Y. 2019); *Doe v. Indyke*, 457 F. Supp. 3d 278, 284 (S.D.N.Y. 2020) (noting that punitive damages "are a form of damages, not an independent cause of action") (citation omitted). When requests for punitive damages are styled as independent causes of action, courts most often treat motions to dismiss such requests as motions to strike under Fed. R. Civ. P. 12(f) when punitive damages are unavailable as a matter of law. *See Indyke*, 457 F. Supp. 3d at 284–85 (collecting cases). Defendants do not argue that punitive damages are unavailable to Plaintiff as a matter of law, and the Court does not reach that issue. However, the Court notes that because Plaintiff's request for relief expressly includes punitive damages, (Dkt. No. 1, ¶ 269(e)), Plaintiff's Fifth Claim for Punitive Damages, not only fails as an independent cause of action, but is redundant. *See* Fed. R. Civ. P. 12(f) (providing that on a motion or "on its own," a court may strike from a pleading "any *redundant*, immaterial, impertinent, or scandalous matter."). Accordingly, the Court strikes Plaintiff's Fifth Claim for Punitive damages as redundant of Plaintiff's request for relief.

## IV. MOTION TO AMEND THE COMPLAINT

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 304 of 353

Alaei v. State University of New York at Albany, Not Reported in Fed. Supp. (2022)

2022 WL 4094450

#### A. Standard of Review

In general, leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). If the claims in a proposed amended complaint cannot survive a motion to dismiss, a plaintiff's motion to amend will be denied as futile. *See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) ("An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6).").

#### B. Analysis

Plaintiff moves to amend the Complaint to add a claim for negligent infliction of emotional distress. (Dkt. No. 23, at 1). [10] Defendants oppose the motion asserting that amendment would be futile because Plaintiff fails to allege Defendants owed Plaintiff a special duty or that they endangered his physical safety. (Dkt. No. 24-2, at 10). Plaintiff replies that Defendants owed Plaintiff a special duty by virtue of the UUP Agreement and Appointment Letter, and that although Defendants never endangered Plaintiff, they caused him to fear for his physical safety. (Dkt. No. 33, at 15–18).

[10]     Plaintiff also sought to add a claim for intentional infliction of emotional distress in the proposed amended complaint, but later withdrew that claim by stipulation on January 19, 2022. (Dkt. No. 35, at 1–2).

"To plead a negligent infliction of emotional distress claim under New York law, a plaintiff must allege (1) a breach of a duty owed to the plaintiff; (2) emotional harm; (3) a direct causal connection between the breach and the emotional harm; and (4) circumstances providing some guarantee of genuineness of the harm." *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 81 (2d Cir. 2021).

A plaintiff may establish a claim for negligent infliction of emotional distress under "(1) the bystander theory," which is inapplicable here as it typically involves witnessing harm to a close family member, "or (2) the direct duty theory," which allows a plaintiff to recover for emotional injury caused by a defendant's breach of a duty which "unreasonably endangered" the plaintiff's physical safety. *Baker v. Dorfman*, 239 F.3d 415, 421 (2d Cir. 2000). Under both theories, the duty owed "must be specific to the plaintiff, and not some amorphous, free-floating duty to society." *Truman v. Brown*, 434 F. Supp. 3d 100, 123 (S.D.N.Y. 2020) (quoting *Mortise v. United States*, 102 F.3d 693, 696 (2d Cir. 1996)). As stated, "[b]oth theories require 'physical injury or the threat of danger, either to the plaintiff ... or to a close family member.' " *Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 298 (S.D.N.Y. 2015) (quoting *Vaughn v. Am. Multi Cinema, Inc.*, No. 09-cv-8911, 2010 WL 3835191, at *5, 2010 U.S. Dist. LEXIS 96609 (S.D.N.Y. Sept. 13, 2010)). Here, there is no claim under the bystander theory; accordingly, the Court must consider whether Plaintiff sufficiently alleges a claim under the "direct duty" theory.

**\*10** Defendants argue that the Proposed Amended Complaint fails to allege a "direct duty" theory of liability because Plaintiff fails to allege that they owed a "special duty" to Plaintiff, and further fails to allege that Defendants' conduct endangered his physical safety. (Dkt. No. 24-2, at 17). The Court agrees. An employment relationship is generally insufficient to show a special duty. *Alexander v. Westbury Union Free Sch. Dist.*, 829 F. Supp. 2d 89, 112 (E.D.N.Y. 2011) (explaining that "an employer does not owe a special duty to an individual employee, because it has an obligation to treat all employees in the same manner" (citing *Cucchi v. New York City Off–Track Betting Corp.*, 818 F. Supp. 647, 656 (S.D.N.Y. 1993))). Plaintiff has not cited to any caselaw in support of his claim that Defendants owed him a special duty based on his alleged status as a third-party beneficiary of the UUP or the Appointment Letter.

In any event, Plaintiff's claim must be dismissed because there is no allegation that Defendants' alleged breach of this duty caused Plaintiff physical injury or threatened Plaintiff "with physical harm as a result of defendant's negligence." *Mortise*, 102 F.3d at 696; *see Green*, 96 F. Supp. 3d at 299 (dismissing negligent infliction of emotional distress claim because even assuming that the defendants "had a special duty" to the plaintiffs, the claim still failed because any duty breach did not "unreasonably endanger" the plaintiff's safety or cause her to fear for her safety) (internal quotation marks and alteration omitted).

Case 9:22-cv-00638-DNH-TWD   Document 58   Filed 02/28/25   Page 305 of 353

Alaei v. State University of New York at Albany, Not Reported in Fed. Supp. (2022)

2022 WL 4094450

Plaintiff acknowledges that his actual physical safety was not endangered by Defendants' conduct, but asserts he did fear for his physical safety. (Dkt. No. 33, at 18). Specifically, Plaintiff argues that:

> In Iran, Dr. Alaei was alleged to have done something wrong as part of his professional endeavors and his rights were violated as a result of the allegations, as he was not given a fair trial and he feared for his physical safety when he was wrongfully imprisoned. In the instant circumstance Dr. Alaei's rights were violated and he again faced unfounded and arbitrary discipline from Defendants, who stirred up his post-traumatic fears and caused him to once again fear for his physical safety, including wrongful punishment without legal process.

(*Id.*; *see also* Dkt. No. 23-4, ¶ 277 (Proposed Amended Complaint alleging that "based upon his wrongful imprisonment by the government of Iran, Dr. Alaei has suffered from pre-existing emotional distress" and that Defendants' "extreme and outrageous conduct ... has significantly exacerbated pre-existing emotional distress suffered by Dr. Alaei")). However, the "unreasonable endangerment" element is subject to an objective inquiry; it is not a "subjective evaluation dependent on the plaintiff's state of mind." *Carney v. Boston Mkt.*, No. 18-cv-713, 2018 WL 6698444, at *3, 2018 U.S. Dist. LEXIS 214453 (S.D.N.Y. Dec. 20, 2018) (quoting *Torain v. Casey*, No. 16-cv-2682, 2016 WL 6780078, at *6, 2016 U.S. Dist. LEXIS 127681 (S.D.N.Y. Sept. 16, 2016)). Therefore, even accepting Plaintiff's factual allegations regarding his imprisonment in Iran as true and drawing all inferences in his favor, because Plaintiff's subjective fears are insufficient as a matter of law, and because there are no allegations that would allow a plausible inference that Defendants' conduct endangered Plaintiff's physical safety, Plaintiff fails to state a negligent infliction of emotional distress claim under the "direct duty" theory. *See Reid v. United States*, No. 19-cv-1221, 2020 WL 3256331, at *6, 2020 U.S. Dist. LEXIS 104250 (E.D.N.Y. June 15, 2020) (noting that the plaintiff had not alleged any words or physical conduct "that, viewed objectively, caused plaintiff to reasonably fear for his physical safety."); *Vaughn*, 2010 WL 3835191, at *5, 2010 U.S. Dist. LEXIS 96609 (finding allegations that the employer failed "to adequately investigate the circumstances surrounding [the plaintiff's] disciplinary warning and ensuing grievance" did not support bystander or direct duty theory of liability as there was "no suggestion" that the plaintiff's "or anyone else's well-being was ever close to being compromised").

 **11** Finally, as referenced above, in addition to the "bystander" and "direct duty" theories, "New York ... recognizes a cause of action in cases where there is 'an especial likelihood of genuine and serious mental distress, arising from ... special circumstances, which serves as a guarantee that the claim is not spurious.' " *Baker v. Dorfman*, 239 F.3d 415, 421 (2d Cir. 2000) (quoting *Johnson v. State*, 37 N.Y.2d 378, 372 N.Y.S.2d 638, 642, 334 N.E.2d 590 (N.Y. 1975)). "Special circumstances" may exist where, for example, an individual is misinformed by a medical provider that loved one has died. *Id.* Here, Plaintiff's allegations that Defendants discriminated against him and failed to utilize the proper procedures in placing him on alternative assignment, in connection with the ensuing investigation, and in terminating him without just cause, fail to allow a plausible inference of "special circumstances." Indeed, courts have frequently held that "similar circumstances concerning the termination of employment were not sufficient 'special circumstances' " to constitute a negligent infliction of emotional distress claim. *Vaughn*, 2010 WL 3835191, at *5, 2010 U.S. Dist. LEXIS 96609; *see also Kelly v. Chase Manhattan Bank*, 717 F. Supp. 227, 235 (S.D.N.Y. 1989) ("Even under the most optimal circumstances, however, termination of an employee is likely to give rise to bad feelings and anxiety. This cannot mean that every adverse employment decision may give rise to a claim of negligent infliction of emotional distress."); *Dollman v. Mast Indus., Inc.*, 731 F. Supp. 2d 328, 341 (S.D.N.Y. 2010) ("Learning that you or your spouse was terminated by an employer—a common occurrence in this economy—is not sufficient to support a claim for negligent infliction of emotional distress."). Thus, the Proposed Amended Complaint fails to allege special circumstances.

Accordingly, as the Proposed Amended Complaint fails to state a negligent infliction of emotional distress claim, and that is the only basis on which Plaintiff seeks to amend, the motion to amend is denied as futile.

2022 WL 4094450

**V. CONCLUSION**

For these reasons, it is hereby

**ORDERED** that Defendants' cross-motion to dismiss (Dkt. No. 24) is **GRANTED** as to the following claims, and that the following claims are **DISMISSED**: Plaintiff's § 1981 claim against all Defendants, and Plaintiff's § 1983 claims against SUNYA and the individual defendants in their official capacities; and it is further

**ORDERED** that the Fifth Claim for Punitive Damages is **STRICKEN** from the Complaint; and it is further

**ORDERED** that Defendants' cross-motion to dismiss (Dkt. No. 24) is otherwise **DENIED**; and it is further

**ORDERED** that Plaintiff's motion to amend the Complaint (Dkt. No. 23) is **DENIED** as futile.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2022 WL 4094450

---

End of Document                                      © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Hamilton v. New York State Department of Corrections..., Not Reported in Fed....

2019 WL 2352981

2019 WL 2352981

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

Derrick M. HAMILTON, Plaintiff,

v.

NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION, et al., Defendants.

9:18-CV-1312 (MAD/CFH)

|

Signed 06/04/2019

**Attorneys and Law Firms**

DERRICK M. HAMILTON, 89-A-5202, Plaintiff, pro se, Auburn Correctional Facility, P.O. Box 618, Auburn, NY 13021.

**DECISION AND ORDER**

MAE A. D'AGOSTINO, United States District Judge

## I. INTRODUCTION

 **\*1** Pro se plaintiff Derrick M. Hamilton ("Plaintiff") commenced this action by filing a Complaint asserting claims arising out of his confinement in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") at Auburn Correctional Facility ("Auburn C.F."). Dkt. No. 1 ("Compl."). In the original Complaint, Plaintiff identified the following individuals as defendants: Commissioner Anthony J. Annucci ("Annucci"), Superintendent Harold Graham ("Graham"), Prison Guard A. Venditti ("Venditti"), and Prison Guard Delfavero ("Delfavero"). *Id.* at 1-3. Plaintiff also named DOCCS as a defendant. *Id.*

By Decision and Order filed December 17, 2018 (the "December Order"), this Court reviewed the sufficiency of the Complaint in accordance with 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A and dismissed the following claims, with prejudice: (1) claims pursuant to 42 U.S.C. § 1983 ("Section 1983") for monetary damages against DOCCS and defendants in their official capacity; (2) claims pursuant to the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") against defendants in their individual capacity and RLUIPA claims for monetary damages and declaratory judgment against defendants in their official capacities; and (3) claims asserted pursuant to various United States Treaties. Dkt. No. 4. The Court also dismissed the following claims, without prejudice: (1) First Amendment religious claims; (2) equal protection claims; (3) retaliation claims; (4) claims for injunctive relief; and (5) New York State Constitutional claims. *Id.* In light of his pro se status, Plaintiff was afforded an opportunity to submit an amended pleading with respect to the claims that were dismissed without prejudice. *Id.* at 24.

Currently before the Court is Plaintiff's Amended Complaint. Dkt. No. 15 ("Am. Compl.").

## II. LEGAL STANDARD

The legal standard governing the dismissal of a pleading for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) was discussed at length in the December Order and will not be restated here. *See* Dkt. No. 4 at 2-4. Taking into account Plaintiff's pro se status, the Court construes the allegations in the Amended Complaint with the utmost leniency. *See, e.g., Haines v. Kerner,* 404 U.S. 519, 521 (1972) (holding that a pro se litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers.").

Hamilton v. New York State Department of Corrections..., Not Reported in Fed....

2019 WL 2352981

## III. SUMMARY OF AMENDED COMPLAINT [1]

[1]    The Amended Complaint includes exhibits. *See* Am. Compl. at 90-96. To the extent that the exhibits are relevant to the incidents described in the Amended Complaint, the Court will consider the Amended Complaint as well as any documents attached as exhibits. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference). Additionally, Plaintiff's original Complaint included exhibits. *See* Compl. at 15-28. In the Amended Complaint, Plaintiff incorporated, by reference, the same exhibits attached to the original Complaint, but failed to actually attach the exhibits to the Amended Complaint. "Although it is well settled that an amended complaint supersedes a prior complaint in its entirety, it is clear to the court that plaintiff intended to attach the exhibits to his amended complaint." *Wellington v. Langendorf*, No. 12-CV-1019 (FJS/DEP), 2013 WL 3753978, at *3 (N.D.N.Y. July 15, 2013). To require Plaintiff to file an Amended Complaint that includes the original exhibits is, "an unnecessary procedural hoop that would waste resources and delay resolution of this action." *Alexander v. U.S.*, No. 13-CV-678, 2013 WL 4014539, at *4 (N.D. Cal. Aug. 5, 2013). Because Plaintiff is proceeding pro se, the Court will consider the exhibits and documentation attached to the original Complaint as incorporated by reference in the Amended Complaint.

**\*2**  In the Amended Complaint, Plaintiff asserts new claims and realleges previously dismissed claims against Annucci, Graham, Venditti, and Delfavero. Plaintiff also asserts claims against the following new defendants: Deputy Commissioner of Program Services Jeff McKoy ("McKoy"), Director of Division of Ministerial, Family, and Volunteer Services ("DMFVS") Cheryl Morris ("Morris"), Assistant Director of DMFVS Paul Guenette ("Guenette"), Chaplain Marcia Stewart ("Stewart"), Chaplain Wayne Rose ("Rose"), Director of Inmate Grievance Program ("IGP") Karen Bellamy ("Bellamy"), Director of IGP Shelly Mallozzi ("Mallozzi"), Superintendent Timothy McCarthy ("McCarthy"), Deputy Superintendent of Program Services G. Schenk ("Schenk"), Steward D. Vanni ("Vanni"), Assistant Food Service Administrator, A. Bertonica ("Bertonica"), Lieutenant Kelsey ("Kelsey"), Watch Commander John Doe #1 ("WC John Doe #1"), Watch Commander John Doe #2 ("WC John Doe #2"), Watch Commander John Doe #3 ("WC John Doe #3"), Senior Chaplain Deacon John Tomandl ("Tomandl"), Prison Guard S. Pino ("Pino"), Prison Guard John Doe #1 ("PG John Doe #1"), Sergeant Porten ("Porten"), Sergeant Doe ("Sgt. Doe"), North Yard Supervisor Jay Doe ("Yard Supervisor Jay Doe"), Prison Guard James Doe ("PG James Doe"), Inmate Organization Coordinator ("IOC") Dave Porter ("Porter"), Recreation Program Leader ("RPL") Ron Pitoniak ("Pitoniak"), and RPL Travis Silcox ("Silcox"). [2] *See* Am. Compl. at 1, 6-10. The Amended Complaint does not include any claims against DOCCS. [3] The facts are set forth as alleged by Plaintiff in his Amended Complaint.

[2]    The Clerk of the Court is directed to add these defendants to the docket report for this action.

[3]    The Clerk of the Court is directed to terminate DOCCS as a defendant.

### A. Background

Pursuant to DOCCS' Directive #4202, the DMFVS is responsible for ensuring that all religious programs are carried out in accordance with the established tenets and practices of the faith. Am. Compl. at 26.

In 1991 or 1992, DOCCS hired Ascento Fox ("Fox") as the Senior Rastafari Chaplain. Am. Compl. at 11. While Fox was employed as the Chaplain, DOCCS aligned its policies with the "Lived Tenets Rastafari Ecclesiastical Order." *Id.* at 51-52. Specifically, with respect to the blessing, handling, preparation, and distribution of food, DOCCS' policy provided that "food is to be prepared by a faith group member and people who are not initiates of the faith should not be allowed to handle, prepare, or distribute the food." *Id.* at 52. After Fox departed, Annucci "rewrote" the policy to "exclude the sanctity of [Rastafari] food preparation, handling, and distribution." [4] *Id.*

[4]    Plaintiff has not plead when Fox departed.

Case 9:22-cv-00638-DNH-TWD   Document 58   Filed 02/28/25   Page 309 of 353

Hamilton v. New York State Department of Corrections..., Not Reported in Fed....

2019 WL 2352981

In 2012 and 2013, Annucci, McKoy, Morris, and Guenette began rewriting the tenets of Rastafari order. Am. Compl. at 13-14. Defendants implemented a policy that prevented inmates with "significant knowledge" of the Rastafari tenets and beliefs from acting as "clerks." *Id.* at 12. By eliminating clerks, Annucci, McKoy, Morris, and Guenette assumed "authority" over the community and assigned chaplains of other denominations to advise the Rastafari community. *Id.* at 12-14. Defendants allowed "cultural vultures" or "undesirables" such as gang members, homosexuals, and mentally challenged individuals into the "sacred order." *Id.* at 14. These "cultural vultures" were only interested in receiving special meals and avoiding DOCCS' rules related to the length of their hair. Am. Compl. at 11-12. Annucci also hired Stewart and Rose as Rastafari chaplains in an effort to introduce the "state's pro-homosexual" views into the Rastafari order. *Id.* at 15. Additionally, Annucci, McKoy, Morris, and Guenette removed "Negust Day" from the Rastafari practice. [5] *Id.* at 14.

[5]     Negust Day is a principle that is a "sincerely held Rastafari belief" and annually commemorated on October 7th. Am. Compl. at 14-15.

Plaintiff, a practicing Rastafari since birth, filed grievances claiming that Annucci, McKoy, Morris, and Guenette violated the Establishment Clause and unconstitutionally rewrote and created tenets for Rastrafarians. [6] Am. Compl. at 14-15, 16. Plaintiff also filed grievances challenging the decision to remove Negust Day as a High Holy Day. [7] *Id.* at 15. In 2013, Plaintiff filed an Article 78 petition in New York State Supreme Court, Albany County, challenging the removal of Negust Day from the Rastafari practice. *Id.* at 14. The matter was declared "moot" and Annucci was compelled to reintegrate Negust Day into the practice. *Id.*

[6]     The Amended Complaint does not include facts related to where or when these grievances were filed.

[7]     *See* Footnote 5, *supra.*

**B. Facts Related to Plaintiff's Confinement at Auburn C.F. from November 2015 through March 2016**

 **\*3**  On October 21, 2015, Plaintiff was transferred from the Special Housing Unit ("SHU") at Great Meadow Correctional Facility to the SHU at Auburn C.F. Am. Compl. at 15. Upon arriving at Auburn C.F., Plaintiff wrote to Graham advising that his disciplinary sanctions ended on October 30, 2015. *Id.* Plaintiff also wrote to Tomandl, the Rastafari staff advisor, and asked to be placed on all Rastafari call-outs, classes, and services [8] (including Transfiguration Day). *Id.* at 16. Plaintiff expected other members of his community to commemorate Transfiguration Day on November 2, 2015. *Id.* at 11-16. Plaintiff did not receive any response to his correspondence. Am. Compl. at 16-17.

[8]     Plaintiff describes services as "Nyahbinghi". Am. Compl. at 16.

On October 30, 2015, Plaintiff informed SHU staff that his SHU time was complete and presented his disposition sheet as evidence. Am. Compl. at 17. The supervisor informed Plaintiff, "you've pissed somebody off" and, pursuant to Graham's orders, Plaintiff would not be released until the next day. *Id.* On October 31, 2015, Plaintiff was released from the SHU and transferred to cell D-3-11. *Id.*

On November 2, 2015, Plaintiff asked Delfavero for permission to attend Transfiguration Day. Am. Compl. at 17. Delfavero and Venditti refused to allow Plaintiff to attend because he was listed "as a Jew" on the D-Block census. *Id.* at 18. Plaintiff objected to being "branded Jewish," claiming that it endangered Plaintiff's life, health, and well-being. [9] *Id.* at 21. Plaintiff also attempted to explain to Defendants the importance of Transfiguration Day to the practice of his sincerely held Rastafari beliefs. *Id.* at 19. Plaintiff asked Defendants to contact the Chaplain's Office, but Defendants threatened Plaintiff with a misbehavior report. Am. Compl. at 19. As a result of Defendants' actions, Plaintiff was deprived of the opportunity to practice the highest form of Rastafari worship. *Id.* at 19-20. Additionally, Defendants' interceded and prevented other inmates from delivering the Transfiguration Day sacramental meal to Plaintiff. *Id.* at 20; Compl. at 21.

[9]     According to DOCCS' block census, the inmate who previously occupied cell D-3-11 was Jewish. Am. Compl. at 28-29.

Hamilton v. New York State Department of Corrections..., Not Reported in Fed....
Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 310 of 353

2019 WL 2352981

On November 20, 2015, Plaintiff filed a grievance (AUB-68310-15) complaining that Graham retaliated against him and violated his First Amendment religious rights. Am. Compl. at 22; Compl. at 16-19. Specifically, Plaintiff complained that Graham's decision to retain Plaintiff in the SHU for an extra day resulted in Plaintiff being falsely identified as a "Jew" and prevented Plaintiff from observing Transfiguration Day. *Id.* Graham denied the grievance and Plaintiff appealed to the Central Office Review Committee ("CORC"). Compl. at 24, 27. On March 2, 2016, CORC issued a decision "unanimously" accepting the grievance, in part. *Id.* at 28. CORC noted that Plaintiff completed his disciplinary sanctions on October 30, 2015 and was moved to another cell on October 31, 2015, "when it became available." *Id.* CORC also noted that Plaintiff's religion of record was Rastafarian. *Id.*

On December 27, 2015, at 10:00 a.m., Graham ordered WC John Doe #1 to escort Plaintiff to the "penalty box" in the North Yard to await Rastafari services. Am. Compl. at 22. At 10:20 a.m., Plaintiff was released and permitted to enter the chapel for services but was advised that his "time was up at 10:25 a.m." *Id.* On the same day, prisoners belonging to the Nation of Gods and Earths ("NOGE") and Protestant inmates were allowed to study from 1:00 p.m. until 2:45 p.m. and to attend services from 7:00 p.m. until 9:30 a.m. *Id.* at 22-23. Plaintiff filed a grievance (AUB 68521-15) related to the incident. *Id.* at 23.

**\*4** On February 14, 2016, Graham ordered WC John Doe #2 and Yard Supervisor Jay Doe to detain Plaintiff in the "penalty box" to await Rastafari services. Am. Compl. at 23, 31-32. Plaintiff, who suffers from asthma, was forced to endure sub-zero temperatures, for approximately one hour. *Id.* Plaintiff began to experience difficulty breathing and tried to use his inhaler but, the aerosol was frozen. *Id.* Eventually, guards allowed only five Rastafari inmates to enter the chapel at one time while Protestants inmates were sent to the chapel "en masse." *Id.* When Plaintiff finally entered the chapel, Pino questioned Plaintiff's religious beliefs. Am. Compl. at 23.

On February 21, 2016, PG John Doe questioned Plaintiff's religious beliefs regarding gay marriage and homosexuality. Am. Compl. at 24. PG John Doe told Plaintiff that Graham intended to charge Plaintiff with "hate speech and unauthorized religious speech" because Plaintiff was not the "chosen facilitator." *Id.* Plaintiff was compelled to explain his religious beliefs to PG John Doe. *Id.* at 25. PG John Doe responded, "[s]ince this is not going to stop on its own, I'm going to report it." Am. Compl. at 25.

On February 25, 2016, Tomandl, PG John Doe, and Porten, acting upon Graham's order, attempted to remove Plaintiff from all Rastafari call outs by threatening the assigned Inmate Facilitator. Am. Compl. at 25. Plaintiff filed a grievance (AUB 68944-16) claiming that Defendants were attempting to "silence" him. *Id.* While investigating the grievance, Porten prepared a false report claiming that the Inmate Facilitator was unaware of any problems and that services were "running smoothly." *Id.* at 26-27. Porten also threatened Plaintiff, on Graham's behalf, with SHU confinement if he attempted to participate in Rastafari services. *Id.* at 27. As a result of Porten's threat, Plaintiff's "once close Brethren," abandoned him. Am. Compl. at 27.

### C. Christmas Day - December 2016

On December 25, 2016, at 8:45 a.m., Plaintiff asked PG James Doe if Rastafari services would be held at the usual time. Am. Compl. at 39. PG James Doe laughed and responded that only Christian services were being held that day. *Id.* At 10:45 a.m., Plaintiff was released from his cell for a meal and made an attempt to discuss the issue with WC John Doe #3 and Sgt. Doe. *Id.* Sgt. Doe responded, "You're about the fourth one to ask. It's a holiday, where's your Christmas spirit? It's a white Christmas! Have a happy jolly one enjoy your lunch." *Id.* From 7:00 p.m. until 9:30 p.m, Plaintiff witnessed Protestant inmates released from the same cell block to attend services in the chapel. Am. Compl. at 41.

On December 30, 2016, Plaintiff filed a grievance (AUB 70769-17) related to the incident. Am. Compl. at 41. Graham issued a decision conceding that Rastafari services were on the "callout" and should have been held as scheduled. *Id.* Plaintiff appealed Graham's decision to CORC. *Id.* One year and nineteen days after receipt of the appeal, Mallozzi issued a fraudulent decision and noted that, "Rastafari services were not held on 12/25/16 due to a staff shortage on the holiday." *Id.* at 41-42.

### D. Caribbean African Unity

Hamilton v. New York State Department of Corrections..., Not Reported in Fed....
Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 311 of 353
2019 WL 2352981

During the relevant time, Plaintiff was the president of the Caribbean African Unity ("CAU"), a cultural organization that addressed the needs of Auburn C.F. inmates of African, Carribean, Central, and South American ancestry. Am. Compl. at 66. Pursuant to DOCCS' Directive #4760, all cultural organizations must contribute a minimum of fifty percent of any profit to the Inmate Occupational Therapy Fund ("IOTF"). *Id.* Pursuant to the Directive, the formula for profit is the income generated from any fund raising event less the expense of the event. *Id.* Membership dues were not included in the profit analysis. *Id.* Schenk, who was responsible for supervising all cultural organizations at Auburn C.F., implemented new guidelines that contradicted Directive #4760. Am. Compl. at 66-67. For example, Schenk demanded that membership dues be included in the profit calculation and that organizations make quarterly contributions rather than one fiscal year contribution. *Id.*

 **\*5**  In August 2017, Plaintiff began to notice accounting errors in the CAU account and "question[ed] the illegal siphoning of funds[.]" Am. Compl. at 67. Shortly thereafter, Plaintiff received a memorandum from Pitoniak stating that the CAU was not in compliance with DOCCS' directives related to membership quotas. *Id.* at 67-68. As a result, Pitoniak placed the CAU on a 60-day probationary period. *Id.*

In September 2017 and October 2017, Plaintiff discovered discrepancies in the CAU's trust account and addressed the matter with Pitoniak and Porter. Am. Compl. at 68. Plaintiff was advised "not to make a big stink." *Id.*

In October 2017, Pitoniak approached members of the CAU and attempted to enlist them in a plan to remove Plaintiff as President of the CAU. Am. Compl. at 69-70. Pitoniak told the members that Plaintiff "wrote up a bunch of [expletive] on us" and that Porter and Schenk "want him out" because he questioned how much money the CAU paid to the Inmate Liaison Committee. *Id.* at 70. When the members refused, Pitoniak responded, "That doesn't matter, I already have Morris ready to do it for me." *Id.* Plaintiff filed a grievance (AUB 74417-18) related to the incident. *Id.*

On December 4, 2017, Plaintiff wrote to Schenk and explained that the CAU had not received monthly financial statements and was unable to account for transactions. Am. Compl. at 69.

On January 4, 2018, at approximately 2:10 p.m., Plaintiff and Pitoniak met in the staff office in the gymnasium to discuss the goals of the cultural organizations. Am. Compl. at 69. Pitoniak began screaming racial slurs at Plaintiff. *Id.* Plaintiff filed a grievance (AUB 73415-18) against Pitoniak. *Id.* Porter was assigned to investigate the grievance and filed a perjured statement in favor of Pitoniak. *Id.* As a result, Plaintiff filed a grievance against Porter (AUB 73649-18). Am. Compl. at 69.

In February 2018, Plaintiff wrote to Vanni requesting an audit of the CAU account. Am. Compl. at 69. In a "face to face conversation," Vanni promised to conduct the audit, "as soon as possible." *Id.* The audit was never conducted. *Id.*

On June 5, 2018, Plaintiff sent a memorandum to Vanni after discovering that $ 91.00 in membership dues was counted as sales and subjected to Defendants' "illegal profit tanking." Am. Compl. at 70. Vanni did not respond. *Id.*

In June 2018, Plaintiff made repeated verbal and written complaints to Vanni, Porter, Silcox, and Pitoniak claiming that money was illegally withdrawn from the CAU account and reported that food purchased for membership meetings was stolen. Am. Compl. at 71-72. Throughout June 2018, Plaintiff's regularly scheduled weekly meetings with Pitoniak were canceled, orders for fund raisers were not processed or fulfilled, and membership dues were not collected. *Id.* at 72. Effectively, the CAU was administratively "stifled." *Id.* at 73.

On September 6, 2018, Silcox issued a memorandum announcing that the CAU was suspended. Am. Compl. at 73. On October 3, 2018, Plaintiff filed a grievance (AUB 75138-18) claiming that the staff retaliated against the CAU and misappropriated funds. *Id.* Silcox fabricated a report related to his investigation of AUB 75138-18. Am. Compl. at 74-75.

On October 4, 2018, Silcox threatened Plaintiff with SHU confinement if he continued to correspond on behalf of the CAU. Am. Compl. at 74. On October 7, 2018, Plaintiff wrote to Annucci and recounted the recent events surrounding the CAU. *Id.*

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 312 of 353

Hamilton v. New York State Department of Corrections..., Not Reported in Fed....

2019 WL 2352981

On October 28, 2018, Shenk responded to the "packet of letters" sent to "Acting Commissioner Annucci" and advised that the organization would be reimbursed for items that were not received. *Id.* Because the CAU was suspended however, the money was transferred to Schenk's IOTF purse and available for use by employees. *Id.*

### E. Food Preparation and Service

**\*6** On October 2, 2017, when Plaintiff entered the messhall to receive his "medical diet," [10] he noticed an "openly homosexual inmate" serving the diet meals. Am. Compl. at 47. The tenets of Rastafari law prohibit the consumption of food prepared, distributed, or served by homosexuals. *Id.* Following his religious beliefs, Plaintiff opted not to eat or receive any meal prepared by a known homosexual. *Id*. On October 4, 2017, Plaintiff wrote to Bertonica and explained that Rastafaris are prohibited from eating food prepared and served by a homosexual. *Id.* at 48. Plaintiff advised that he would not "sign for" or eat the medical diet meal. Am. Comp. at 48. Bertonica responded in a written memorandum and stated that all servers are "properly trained in the safe and hygiene [sic] handling of foods and serving areas." *Id.*

[10]    Plaintiff's diet was "drug-free medical therapy" as treatment for high cholesterol. Am. Compl. at 47.

On October 16, 2017, Plaintiff wrote to Bertonica and reiterated his sincerely held beliefs and right not to "buy into the state-mandated perception of homosexuality as normal generative human behavior." Am. Compl. at 48. On October 19, 2017, Bertonica issued a misbehavior report charging Plaintiff with missing meals. *Id.* at 48. In total, Plaintiff was deprived of twenty "medically significant meals." *Id.* at 49.

On October 25, 2017, Plaintiff filed a grievance (AUB 73025-17) against Annucci and Bertonica accusing them of "nefarious use of despicable means ... to coerce me into accepting and participating in the state's homosexual agenda." Am. Compl. at 49. After the grievance was denied, Plaintiff appealed to CORC. *Id.* at 53. Mallozzi falsified the record and denied the appeal. *Id.*

On November 2, 2017, Plaintiff attended a disciplinary hearing related to the misbehavior report. Am. Compl. at 49. Kelsey presided over the hearing however, Plaintiff's guilt was "predetermined." *Id.* Plaintiff asserted that the misbehavior report was issued in retaliation for Plaintiff exercising his sincerely held Rastafari beliefs. *Id.* at 50. Plaintiff asked Kelsey to call Stewart as a witness, but Kelsey denied the request as "immaterial." *Id.* As Plaintiff began to testify in his defense, Kelsey stopped the hearing and directed Plaintiff to leave the room so that he could place a telephone call to McCarthy. Am. Compl. at 50. When Plaintiff was recalled, the hearing resumed and he was found guilty of all charges. *Id.* at 51. Plaintiff appealed the determination to Graham and Graham's designee, McCarthy, affirmed. *Id.* Plaintiff was directed to pay at "\$ 5.00 surcharge and \$ 10.35 for missed meals." *Id.*

### F. Causes of Action

Construing the Amended Complaint liberally, [11] Plaintiff asserts the following: (1) First Amendment retaliation claims; (2) First Amendment claims related to the free speech and the right to petition; (3) First Amendment free exercise claims; (4) First Amendment claims related to violations of the Establishment Clause; (5) Fourth Amendment claims; (6) Eighth Amendment claims; (7) Ninth Amendment claims; (8) Fourteenth Amendment equal protection and due process claims [12]; (9) constitutional claims based upon violations of DOCCS' directives; and (10) New York State Law and Constitutional claims. *See generally*, Am. Compl. Plaintiff seeks declaratory relief and monetary damages. *See id.* at 33-38. Plaintiff also seeks prospective and preliminary injunctive relief. *See id.* at 37-38; 61-64; 87-88.

[11]    The Court is mindful of the Second Circuit's instruction that a pleading by a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that it suggests. *See, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts" that a pro se plaintiff's pleadings must be construed liberally); *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005) ("We leave it for the district court to determine what other claims, if any, [plaintiff] has raised. In so doing, the court's imagination should be limited

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 313 of 353

Hamilton v. New York State Department of Corrections..., Not Reported in Fed....

2019 WL 2352981

only by [plaintiff's] factual allegations, not by the legal claims set out in his pleadings."); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) ("[W]e read [a pro se litigant's] supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest.").

12    The Fifth Amendment is applicable to federal actors, not state actors. *Snow v. Vill. of Chatham*, 84 F. Supp. 2d 322, 326 (N.D.N.Y. 2000) (citing *Brock v. North Carolina*, 344 U.S. 424, 426 (1953)). To the extent that Plaintiff is attempting to raise the Fifth Amendment as against the state defendants, that claim must be dismissed with prejudice. *Horton v. Schneiderman*, No. 9:13–CV–742 (GLS/ATB), 2014 WL 2154538, at *7 (N.D.N.Y. 2014). Because Plaintiff is imprisoned in a state institution, the Fourteenth Amendment, and not the Fifth Amendment, applies to his due process violation claims. *See Pugliese v. Nelson*, 617 F.2d 916, 918 n.2 (2d Cir. 1980).

## IV. ANALYSIS

### A. Eleventh Amendment

**\*7**  The law related to Eleventh Amendment was discussed in the December Order and will not be restated herein. *See* Dkt. No. 4 at 9-10. To the extent that Plaintiff attempts to reassert section 1983 claims for monetary damages against Defendants in their official capacity in the Amended Complaint, those claims are dismissed for the reasons set forth in the December Order.

### B. Defendants Stewart, Rose, and Pino

Plaintiff names Stewart, Rose, and Pino as defendants in the caption and list of parties. *See* Am. Compl. at 1, 6, 8-9. Plaintiff claims that Stewart and Rose were hired by Annucci as Rastafari Chaplains as "duplicitous conduits" to introduce the "state's pro-homosexual" policy into the Rastafari order. *See id.* at 15. Plaintiff claims that Pino "questioned why [he] was playing so active a role in [ ] '[r]easoning' amount the Brethren[.]" *See id.* at 23. Plaintiff however, did not attribute any of the alleged constitutional violations to Stewart, Rose, or Pino. In the absence of factual allegations sufficient to plausibly suggest that Defendants were personally involved in conduct that violated Plaintiff's constitutional rights, the Amended Complaint fails to state a cognizable claim against them. *See Cipriani v. Buffardi*, No. 06–CV–0889 (GTS/DRH), 2007 WL 607341, *1 (N.D.N.Y. Feb. 20, 2007) ("Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff.") (citation omitted); *see also Casino v. Rohl*, No. 14-CV-2175, 2014 WL 5425501, at *6 (E.D.N.Y. Oct. 23, 2014) (dismissing complaint since the plaintiff had not adequately pled the defendant's personal involvement in any of the constitutional deprivations alleged in the amended complaint). Accordingly, Plaintiff's claims against Stewart, Rose, and Pino are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief can be granted.

### C. First Amendment

#### 1. Retaliation

The law related to First Amendment retaliation claims was discussed in the December Order and will not be restated herein. *See* Dkt. No. 4 at 16-17. In the Amended Complaint, Plaintiff asserts retaliation claims against Graham, Bertonica, Pitoniak, Schenk, Vanni, Porter, and Silcox, and Annucci. [13] *See generally*, Am. Compl.

13    Plaintiff claims he was transferred to Auburn C.F. in retaliation for grievances against Annucci, McKoy, Guenette, and Morris related to their violations of the Establishment Clause. *See* Am. Compl. at 15. Plaintiff has not identified the person(s) responsible or personally involved in the decision to transfer him to Auburn C.F. Accordingly, this claim is not sufficiently plead.

Hamilton v. New York State Department of Corrections..., Not Reported in Fed....

2019 WL 2352981

### a. Graham

In the Complaint, Plaintiff alleged that Graham retaliated against him "on behalf of his colleagues at Great Meadow" when he detained Plaintiff for an additional day in the SHU without a valid "detention hold." Compl. at 4, 17, 25. In the December Order, the Court dismissed Plaintiff's retaliation claims against Graham holding:

> To the extent that Plaintiff claims that the retaliatory conduct was in response to grievances previously filed at Great Meadow C.F., the claims are nonetheless subject to dismissal. Plaintiff has failed to identify the grievances he filed which allegedly motivated Graham to retaliate against him. *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) ("[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone."); *Edwards v. Bezio*, No. 9:08-CV-256(LEK/RFT), 2010 WL 681369, at *3 (N.D.N.Y. Feb. 24, 2010) (dismissing retaliation claim based on allegation that plaintiff suffered adverse action for "past and present" grievances and lawsuits, noting that plaintiff's "general references to grievances and lawsuits he allegedly filed are not sufficient to establish that he was engaged in protected conduct"). "As a general matter, it is difficult to establish one defendant's retaliation for complaints against another defendant." *Hare v. Hayden*, No. 09 Civ. 3135, 2011 WL 1453789, at *4 (S.D.N.Y. Apr. 14, 2011); *see also Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 369 (S.D.N.Y. 2011) (collecting cases).

> **\*8** Here, Plaintiff did not file any grievances or complaints against Graham or any staff member at Auburn C.F. prior to the alleged retaliatory conduct. As Plaintiff has not sufficiently alleged any causal connection between any protected activity and retaliatory conduct, Plaintiff has not stated a plausible claim for retaliation against Graham in violation of the First Amendment and this claim is dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

Dkt. No. 4 at 18-19.

In the Amended Complaint, Plaintiff alleges that Graham ordered Plaintiff held in the SHU for an extra day in retaliation for grievances Plaintiff filed against Morris, Guenette, McKoy, and Annucci and in response to his "exercise of [his] constitutional protected right" to speak against Annucci's violation of the Establishment Clause. *See* Am. Compl. at 15, 29. Despite the fact that Plaintiff was afforded the opportunity to amend his Complaint, the amended pleading does not cure the deficiencies in the original pleading related to this claim. For the reasons set forth in the December Order, Plaintiff's retaliation claim against Graham is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### b. Bertonica

Plaintiff claims that Bertonica issued a false misbehavior report in retaliation for Plaintiff's free exercise of his Rastafari beliefs. *See* Am. Compl. at 50. At this juncture, Plaintiff has sufficiently plead a First Amendment retaliation claim against Bertonica to warrant a response. *See Parks v. Smith*, No. 908-CV-0586 (TJM/GHL), 2009 WL 3055278, at *1 (N.D.N.Y. Sept. 23, 2009) (finding that the exercise of religion could constitute protected conduct). In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### c. Pitoniak, Schenk, Vanni, Porter, Silcox, and Annucci

Plaintiff claims that Pitoniak suspended the CAU because Plaintiff "questioned the illegal taking of 50% of [CAU] sales." *See* Am. Compl. at 75. Plaintiff also alleges that Vanni, Porter, and Silcox, refused to process purchase orders, membership dues, and callouts and that Schenk authorized the suspension of the CAU because Plaintiff filed grievances related to the "illegal seizure of [his] property" and grievances "necessary to safeguard CAU's funds." *See id.* at 75-79. Plaintiff also claims

that Annucci retaliated against him because Annucci failed to remedy the constitutional violations after being informed of Defendants' "embezzlement scam." *See id.* at 80.

At this juncture, Plaintiff has sufficiently plead a retaliation claim against Pitoniak, Schenk, Vanni, Porter, and Silcox to require a response. *See Barnes v. Cty. of Monroe*, 85 F. Supp. 3d 696, 731 (W.D.N.Y. 2015) (theft of the plaintiff's commissary may be construed as an adverse action). In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

A different conclusion is reached however, with respect to the retaliation claim against Annucci. Courts in this District have held that letters to supervisors and his responses (via his subordinates) do not satisfy the personal involvement requirement. *DeMeo v. Koenigsmann*, No. 11 Civ. 7099, 2015 WL 1283660, at *16 (S.D.N.Y. Mar. 20, 2015) (holding that prisoner letters sent to Dr. Koenigsmann, which were referred to and responded to by subordinates, did not establish Koenigsmann's personal involvement); *see also Yearney v. Sidorowicz*, No. 13 Civ. 3604, 2014 WL 2616801, at *9 (S.D.N.Y. June 10, 2014) (reasoning that Dr. Koenigsmann's subordinate, writing on his behalf, was insufficient to establish Dr. Koenigsmann's personal involvement); *see also Brantley v. Fischer*, No. 12-CV-1051, 2013 WL 5466790, at *9 (N.D.N.Y. Sept. 30, 2013) (holding that the receipt of a letter by Koenigsmann's subordinate which stated that, "Dr. Koenigsmann, Chief Medical Officer, has asked me to respond to your recent letter concerning your health care issue," was insufficient to establish supervisory liability).

 **\*9**  Accordingly, Plaintiff's retaliation claim against Annucci is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 2. Free Speech

Plaintiff claims that Porten and Kelsey violated his right to freely speak against "DOCCS' pro-homosexual agenda." *See* Am. Compl. at 25, 56. Plaintiff also contends that Vanni violated his right to speak on behalf of the CAU and that Silcox "undermind[ed] his right to speak out against the unlawful and unreasonable seizure of [his] property." *See id.* at 78-79.

"[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). "Because of security concerns inherent in correctional facilities, the First Amendment's protection of communication is not without restriction." *Pitsley v. Ricks*, No. 9:96–CV–0372 (NAM/DRH), 2000 WL 362023, at *4 (N.D.N.Y. March 31, 2000) (citing *Morgan v. LaVallee*, 526 F.2d 221, 225 (2d Cir. 1975)). A prisoner's right to free speech is more limited than the right of a non-prisoner, but still any restrictions on the prisoner's First Amendment rights must be "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).

"In order to state a claim for deprivation of a constitutional right to communication, an inmate must make some showing of prejudice or actual injury as a result of the prison officials' conduct." *Pitsley*, 2000 WL 362023, at *3 (citation omitted). "[P]laintiffs who allege a violation of their right to free speech must prove that (1) defendants silenced him or (2) 'defendant[s'] actions had some actual, non-speculative chilling effect' on his speech." *Williams v. Town of Greenburgh*, 535 F.3d 71, 78 (2d Cir. 2008) (citing *inter alia, Colombo v. O'Connell*, 310 F.3d 115, 117 (2d Cir. 2002)).

Here, Plaintiff has not plead that he suffered "prejudice or actual injury." Indeed, throughout the Amended Complaint, Plaintiff claims that he repeatedly and continually voiced his objections to DOCCS' policies and filed several complaints regarding staff behavior with numerous grievances and written correspondence. Thus, as presently plead, the Amended Complaint does not suggest that Defendants "chilled his speech or otherwise prevented him from speaking." *See Williams*, 535 F.3d at 78; *see also Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001) ("[w]here a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech.") (citation omitted).

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 316 of 353

Hamilton v. New York State Department of Corrections..., Not Reported in Fed....

2019 WL 2352981

Accordingly, Plaintiff's First Amendment free speech claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 3. Freedom to Petition

Plaintiff alleges that Annucci, Bellamy, and Mallozzi violated his First Amendment right to petition the government because the grievance process is "corrupt," "irreparably biased," and "operated as a dead end." *See* Am. Compl. at 27-28, 33, 45-46, 53, 60-61.

**\*10** It is well-established that a prison inmate has no constitutional right of access to an internal grievance process. *Rhodes v. Hoy*, No. 9:05-CV-0836 (FJS/DEP), 2007 WL 1343649, at \*6 (N.D.N.Y. May 5, 2007); *Davis v. Buffardi*, No. 9:01-CV-0285 (PAM/GJD), 2005 WL 1174088, at \*3 (N.D.N.Y. May 4, 2005) ("[P]articipation in an inmate grievance process is not a constitutionally protected right."); *Cancel v. Goord*, No. 00-CV-2042, 2001 WL 303713, at \*3 (S.D.N.Y. Mar. 29, 2001) (holding that "inmate grievance procedures are not required by the Constitution" and therefore failure to see to it that grievances are properly processed does not create a claim under Section 1983). Simply stated, there is no underlying constitutional obligation to afford an inmate meaningful access to the internal grievance procedure, or to investigate and properly determine any such grievance.

Accordingly, Plaintiff's First Amendment freedom to petition claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 4. Free Exercise of Religion

The law related to First Amendment Free Exercise Clause was discussed in the December Order and will not be restated herein. *See* Dkt. No. 4 at 11-12. In the December Order, the Court dismissed Plaintiff's First Amendment claims holding:

Plaintiff [ ] alleges that Venditti and Delfavero refused to allow Plaintiff to attend a religious service and denied Plaintiff a religious meal on November 2, 2015 violating Plaintiff's First Amendment rights. Compl. at 4-6. As presently plead, the Complaint lacks facts suggesting that Plaintiff's religious beliefs are "sincerely held." Moreover, Plaintiff has not plead facts establishing that defendants created a substantial burden on his religion or prevented him, in other ways, from practicing his religion. The Complaint was filed in November 2018, nearly three years after the alleged incidents, and is conspicuously devoid of references to any other violations to Plaintiff's religious freedoms before or after the incidents in November 2015. The isolated incidents on November 2, 2015 "are not representative of larger, systematic deprivations [and] are constitutionally de minimis and do not rise to a level sufficient to support a First Amendment claim." *Skates v. Shusda*, No. 9:14-CV-1092 (TJM/DEP), 2016 WL 3882530, at \*4 (N.D.N.Y. May 31, 2016) (citation omitted); *see also Williams v. Weaver*, No. 9:03-CV-0912 (LEK/GHL), 2006 WL 2794417, at \*5, n. 29 (N.D.N.Y. Sept. 26, 2006) (granting the defendant's motion for judgment on the pleadings with respect to prisoner's First Amendment free-exercise claim that defendant caused prisoner to miss two weekly religious services); *Cancel v. Mazzuca*, 205 F.Supp.2d 128, 142 (S.D.N.Y. 2002) (granting defendant's Rule 12(b)(6) motion to dismiss prisoner's First Amendment free-exercise claim that defendant "prevented him, on one occasion, from attending a religious service"); *Gill v. DeFrank*, 8 Fed. App'x 35, 37 (2d Cir. 2001) (affirming lower court dismissal of First Amendment claim holding "missing one religious service does not constitute a substantial burden on an inmate's right to the free exercise of his religion."); *see Butler v. Hogue*, No. 9:08-CV-0264 (GLS/DRH), 2010 WL 4025893, at \*4 (N.D.N.Y. Feb. 4, 2010) (dismissing First Amendment claim based upon allegations that the plaintiff missed two of six meals in a two day period, with no other complaints of prior problems "before, or after, during his tenure at Upstate.").[14]

Dkt. No. 4 at 14-15.

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 317 of 353

Hamilton v. New York State Department of Corrections..., Not Reported in Fed....

2019 WL 2352981

14      The Court also dismissed the First Amendment religious claims against Graham for failure to plead personal involvement for purposes of § 1983. *See* Dkt. No. 4 at 13.

**\*11**  In the Amended Complaint, Plaintiff, a Rastafari "since birth," clearly identifies and explains his religious beliefs. *See generally,* Am. Compl. Accordingly, at this juncture, Plaintiff has sufficiently alleged that he held a sincere religious belief.


### a. Graham, Tomandl, Venditti, Delfavero, WC Doe #1, and Porten

"[P]risoners have a constitutional right to participate in congregate religious services." *Salahuddin v. Coughlin*, 993 F.2d 306, 308 (2d Cir. 1993) (citations omitted). While the Second Circuit has accorded prison officials great deference in the administration and "responsibility of maintaining order in prisons, ... prisoners should be afforded every reasonable opportunity to attend religious services, whenever possible." *Young v. Coughlin*, 866 F.2d 567, 570 (2d Cir. 1989) (citations omitted).

In the Amended Complaint, Plaintiff asserts the following Free Exercise claims related to incidents that occurred in November 2015 and December 2015:

• Graham's failure to release Plaintiff from the SHU on October 30, 2015 resulted in Plaintiff being falsely identified as a "Jew" and a violation of Plaintiff's constitutional right to practice his religion;

• Tomandl, Venditti, and Delfavero refused to allow Plaintiff to attend the Transfiguration Day service and denied him the opportunity to partake in the Transfiguration Day meal, as an alternative means of observing the holiday;

• Plaintiff claims that Graham and WC John Doe #1 violated his right to the free exercise on December 27, 2015 because he was afforded only five minutes to worship in the chapel; and

• Graham and Porten threatened Plaintiff with SHU confinement if he participated in Rastafari services or answered questions from the "Brethren."

*See* Am. Compl. at 16, 18-20, 22-23, 27, 31; Compl. at 17-18.

At this juncture, Plaintiff has sufficiently plead facts suggesting that a pattern and policy of discrimination and interference with his religious rights was prevalent at Auburn C.F. in November and December 2015. *See Bass v. Grottoli*, No. 94 CIV. 3220, 1995 WL 565979, at \*4 (S.D.N.Y. Sept. 25, 1995) (allowing the plaintiff to proceed with First Amendment claim that alleged a pattern of anti-Semitic harassment and deliberate interference with religious services or instruction). Accordingly, Graham, Venditti, Delfavero, WC John Doe #1, and Porten are directed to respond to Plaintiff's First Amendment Free Exercise claims. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

A different conclusion is reached however, with regard to Plaintiff's First Amendment Free Exercise claims against Tomandl. Plaintiff summarily states that he wrote to Tomandl and that he did not receive a response. *See* Am. Compl. at 16-17. The Second Circuit has cautioned against dismissing claims for failure to allege personal involvement without granting leave to amend where the plaintiff may allege that an official failed to respond to a letter of complaint. *Grullon v. City of New Haven,* 720 F.3d 133, 141 (2d Cir. 2013) (holding that a prisoner's letter of complaint sent to a prison warden "at an appropriate address and by appropriate means" would suffice to state facts plausibly suggesting personal involvement). While cognizant of *Grullon*, the Court finds that, as presently plead, Plaintiff has failed to establish that Tomandl was personally involved in any constitutional deprivation. The Amended Complaint lacks facts suggesting where the letter to Tomandl was sent or by what means the letters were forwarded. Without more, the allegations are not enough to allege that the Tomandl was personally involved in violations of Plaintiff's First Amendment rights. *See Bridgewater v. Taylor,* 698 F.Supp.2d 351, 359 (S.D.N.Y. 2010); *Guillory v. Cuomo*, 616 Fed. App'x 12, 14 (2d Cir. 2015) (summary order).

### b. PG James Doe, Sgt. Doe, and WC Doe #3

**\*12**  Plaintiff claims PG James Doe, Sgt. Doe and WC Doe #3 violated his First Amendment rights when they refused to allow him to attend Rastafari services on December 25, 2016. *See* Am. Compl. at 43. Generally, the inability to attend religious services, for one day, does not result in a constitutional violation. *See Scott v. Uhler*, No. 9:16-CV-403 (TJM/CFH), 2017 WL 9511167, at *3–4 (N.D.N.Y. Feb. 8, 2017) (citing *Boomer v. Irvin*, 963 F.Supp. 227, 230-31 (W.D.N.Y. 1997)) (holding that the inability to attend Jumm'ah service on one day did not violate the plaintiff's constitutional rights). While Plaintiff sufficiently plead that other Defendants engaged in a pattern of First Amendment violations in November and December of 2015, as presently plead, the Amended Complaint lacks facts connecting PG James Doe, Sgt. Doe and/or WC Doe #3 to the aforementioned "pattern and practice" of interference with Plaintiff's religious rights. Moreover, the gap between the Christmas Day incident and the prior pattern is too tenuous to suggest that the conduct is associated. Indeed, the Amended Complaint lacks facts related to violations of Plaintiff's free exercise rights between December 2015 and December 2016. Because Plaintiff has not plead facts suggesting that Defendants prevented him, in other ways, from practicing his religion on December 25, 2016, the isolated incident does not give rise to a constitutional violation.

Accordingly, Plaintiff's First Amendment free exercise claims against PG James Doe, Sgt. Doe, and WC Doe #3 are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### c. Bertonica

Plaintiff claims that he wrote to Bertonica, on two occasions, explaining that he could not eat any food known to be prepared or served by homosexuals and that Bertonica "failed to act" on his complaints. *See* Am. Compl. at 48, 55. "Prison authorities must accommodate the right of prisoners to receive diets consistent with their religious scruples." *Ford*, 352 F.3d at 597. "Courts have generally found that to deny prison inmates the provision of food that satisfies the dictates of their faith does unconstitutionally burden their free exercise rights." *McEachin v. McGuinnis*, 357 F.3d 204-05 (2d Cir. 2004).

At this juncture, Plaintiff has sufficiently plead a First Amendment Free Exercise claim against Bertonica to warrant a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion. *See Lewis v. Zon*, 920 F. Supp. 2d 379, 385 (W.D.N.Y. 2013) (holding that "it is the sincerity of plaintiff's beliefs and not their objective reasonableness that is relevant") (citing *Ford*, 352 F.3d at 588 (holding that " 'an individual claiming violation of free exercise rights need only demonstrate that the beliefs professed are sincerely held and in the individual's own scheme of things, religious,' regardless of whether the belief is unorthodox, irrational or even demonstrably false")).

### d. Kelsey and McCarthy

Plaintiff makes conclusory allegations against Kelsey and McCarthy related to his First Amendment right to the free exercise of his religious beliefs. *See* Am. Compl. at 56-57, 59. Because the Amended Complaint lacks facts suggesting how Plaintiff's sincerely held religious beliefs were burdened by Kelsey or McCarthy, Plaintiff's First Amendment free exercise claims against Kelsey and McCarthy are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### e. Annucci, McKoy, Morris, and Guenette

Plaintiff claims that Annucci, McKoy, Morris, and Guenette violated his First Amendment religious rights because they "rewrote the Rastafari ecclesiastical doctrine" related to food preparation, handling, and distribution to "accommodate DOCCS' pro-homosexual doctrine." *See* Am. Compl. at 52, 57.

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). Thus, "a Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.' " *Austin v. Pappas*, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted).

 **\*13**  If the defendant is a supervisory official, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501. In other words, supervisory officials may not be held liable merely because they held a position of authority. *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Prior to *Iqbal*, the Second Circuit held that supervisory personnel may be considered "personally involved" only if they (1) directly participated in the alleged constitutional violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citing *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986)). [15]

[15]    The Second Circuit has not yet addressed how the Supreme Court's decision in *Iqbal* affected the standards in *Colon* for establishing supervisory liability. *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (noting that Iqbal may have "heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations" but not reaching the impact of *Iqbal* on *Colon* because the complaint "did not adequately plead the Warden's personal involvement even under *Colon*"); *see also Hogan v. Fischer*, 738 F.3d 509, 519 n.3 (2d Cir. 2013) (expressing "no view on the extent to which [*Iqbal*] may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations[.]") (citing *Grullon*, 720 F.3d at 139).

The third *Colon* category provides for personal involvement where "the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom." *Colon*, 58 F.3d at 873. With respect to the third *Colon* factor, "[a] policy or custom can be explicitly established in an adopted rule or regulation, or may exist if the 'violative practice is persistent and widespread,' and if the acts of subordinate employees 'imply the constructive acquiescence of senior policy-making officials.' " *Lipton v. Cty. of Orange*, 315 F. Supp. 2d 434, 453 (S.D.N.Y. 2004).

Liberally construing the pleading, particularly at this early juncture, Plaintiff's allegations clearly fall into the third *Colon* category. Plaintiff alleges that Defendants promulgated policies that rewrote "Rastafari Ecclesiastical doctrine and Divine Laws to exclude the sanctity of our food preparation, handling, and distribution" and, thus, violated his right to practice his chosen religion. *See Selah v. Fischer*, No. 9:09-CV-1363 (GLS/DEP), 2013 WL 5603866, at *2 (N.D.N.Y. Oct. 11, 2013) (allowing First Amendment claim against Morris with allegations that she promulgated the policies that allegedly infringed upon the plaintiff's right to practice his chosen religion); *see also Jones v. Annucci*, No. 16-CV-3516, 2018 WL 910594, at *9 (S.D.N.Y. Feb. 14, 2018) (allowing the plaintiff to proceed with First Amendment claim against the Deputy Superintendent of Program Services under third *Colon* factor because the plaintiff alleged that the Deputy instituted the policy requiring Shia inmates to change their religion from "Islam" to "Shia") (citations omitted). At this juncture, Plaintiff has sufficiently plead a First Amendment Free Exercise claim against Defendants to warrant a response. In so ruling, the Court expresses no opinion as to whether this claim can withstand a properly filed dispositive motion.

**5. Establishment Clause**

**\*14**  In addition to the free exercise claim, Plaintiff also claims that Defendants violated the Establishment Clause. The First Amendment's Establishment Clause provides that "Congress shall make no law respecting an establishment of religion." U.S. Const. amend. I. The Establishment Clause guarantees that the government may not "coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which establishes a [state] religion." *Muhammad v. City of New York Dep't of Corrs.*, 904 F.Supp. 161, 197 (S.D.N.Y. 1995). "The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." *Skoros v. City of New York*, 437 F.3d at 1, 39 (2d Cir. 2006) (citation omitted). A government practice satisfies the Establishment Clause, if it (1) has a secular purpose; (2) neither advances nor inhibits religion; and (3) avoids excessive entanglement between the state and religion. *Lemon v. Kurtzman*, 403 U.S. 602, 612-13, *reh'g denied*, 404 U.S. 876 (1971). However, in the prison setting, this test is tempered by an inmate's free exercise rights and legitimate penological interests. *See Pugh v. Goord*, 571 F. Supp. 2d 477, 494 (S.D.N.Y. 2008) (citing *Turner v. Safley*, 482 U.S. 78 (1987)).

Plaintiff claims that Annucci, Graham, McKoy, Morris, and Guenette imposed "pro-homosexual policies" on the Rastafari community and that PG John Doe was an advocate for those policies. *See* Am. Compl. at 25, 26, 32-33, 37, 52. To wit, under Defendants' policies, homosexuals were permitted to handle, prepare, and distribute meals to Rastafarians during religious commemorations in violation of Rastafari tenets and the Establishment Clause. *See id.* at 32, 52.

At this stage of the proceeding, and mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, the Court finds that Plaintiff's Establishment Clause claims against Annucci, McKoy, Morris, Guenette, Graham, and PG John Doe survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

**D. Fourth Amendment**

Plaintiff claims that Schenk, Vanni, Porter, Silcox, Annucci, and McCarthy illegally seized his property in violation of the Fourth Amendment. *See* Am. Compl. at 77, 79, 80, 81.

While inmates do not retain the full range of constitutional rights that unincarcerated individuals enjoy, they do retain "some Fourth Amendment rights upon commitment to a correctional facility." *Bell v. Wolfish*, 441 U.S. 520, 558–60 (1979). "Since the exigencies of prison life authorize officials indefinitely to dispossess inmates of their possessions without specific reason, any losses that occur while the property is in official custody are simply not redressable by Fourth Amendment litigation." *Hudson v. Palmer*, 468 U.S. 517, 539 (1984). Personal effects of inmates are routinely searched, seized, and placed in official custody. *Id.* at 540 (holding that claims related to missing property "have long been redressable in tort" and whether those remedies are "adequate" is a question for the "Takings and Due Process Clauses.")

Plaintiff's claim that his "membership dues" were unreasonably seized by Defendants does not give rise to a Fourth Amendment claim. *See Jackson v. SCI-Camp Hill*, No. 1:11-CV-1135, 2012 WL 3990888, at \*6 (M.D. Pa. Sept. 11, 2012), *aff'd sub nom. Jackson v. SCI Camp Hill*, 530 F. App'x 150 (3d Cir. 2013) ("[C]ourts have [ ] refused to recognize an inmate's claim that the seizure of money from his inmate account violated the Fourth Amendment[.]") (collecting cases); *see also Gardner v. Rogers State Prison*, No. CIV. A. CV608-016, 2009 WL 29572, at \*5 (S.D. Ga. Jan. 5, 2009) ("Even accepting as true Plaintiff's allegation that $ 1 was taken from his inmate reserve account, he does not state a valid Fourth Amendment cause of action.").

Accordingly, Plaintiff's Fourth Amendment claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

**E. Eighth Amendment**

**\*15**  The Second Circuit, in addressing the needs protected by the Eighth Amendment, has stated that sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." *Wolfish v. Levi*, 573 F.2d 118, 125 (2d Cir. 1978), *rev'd on other grounds sub nom. Bell v. Wolfish*, 441 U.S. 520 (1979); *Lareau v. Manson*, 651 F.2d 96, 106 (2d Cir. 1981). "To demonstrate that the conditions of his confinement constitute cruel and unusual punishment, the plaintiff must satisfy both an objective test and a subjective test." *Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996) (citation omitted). To satisfy the objective element, "the plaintiff must demonstrate that the conditions of his confinement result 'in unquestioned and serious deprivations of basic human needs.' " *Id.* (citation omitted). "[The inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (citation omitted).

With respect to the subjective element, plaintiff must "demonstrate that the defendants imposed those conditions with 'deliberate indifference.' " *Jolly*, 76 F.3d at 480 (citation omitted). "To constitute deliberate indifference, '[t]he prison official must know of, and disregard, an excessive risk to inmate health or safety.' " *Walker*, 717 F.3d at 125 (quoting *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012)).

### a. Venditti and Delfavero

Plaintiff claims that Venditti and Delfavero placed him at "unreasonable risk of substantial harm" when they intentionally mislabeled Plaintiff as "Jewish." *See* Am. Compl. at 30. While Plaintiff alleges that being "branded" Jewish endangered his life, health and well being "in a way no less significant than if they had called me an informer," *see* Am. Compl. at 21, he fails to allege that he suffered any actual physical injury, i.e., that he was actually attacked or assaulted. Fear of danger, without more, is insufficient to establish a "sufficiently serious" injury. *See Best v. City of N.Y.*, No. 11 CIV. 4475, 2012 WL 5458054, at \*7 (S.D.N.Y. Nov. 8, 2012) (dismissing the complaint where the plaintiff alleged that he feared his life was in danger because he was not held in protective custody, but did not allege that he was attacked or injured as a result of being denied protective custody status); *see also Newman v. Duncan*, No. 04-CV-395 (TJM/DRH), 2007 WL 2847304, at \*5 (N.D.N.Y. Sept. 26, 2007) ("The law is clear that an inmate must demonstrate an 'actual injury' when alleging a constitutional violation."); *Cruz v. Hillman*, No. 01 CIV. 4169, 2002 WL 31045864, at \*8 (S.D.N.Y. May 16, 2002) (citations omitted) ("Under the relevant case law, fear of assault does not constitute a 'sufficiently serious' injury sufficient to state a claim under the Eighth Amendment."). "A general, conclusory statement that an inmate fears for his safety, without more, is insufficient information from which an inference can be drawn that such inmate's safety is actually at risk." *Wilson v. Campbell*, No. 06-CV-0175 (GLS/RFT), 2008 WL 902187, at \*5 (N.D.N.Y. Mar. 31, 2008) (citation omitted). For the reasons set forth herein, Plaintiff's Eighth Amendment claims against Venditti and Delfavero are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### b. Graham, Yard Supervisor Jay Doe, WC Doe #2

The Second Circuit has found that prisoners claiming detention under very cold temperatures may establish an Eighth Amendment claim of cruel and unusual punishment. *See, e.g., Gaston v. Coughlin*, 249 F.3d 156, 166 (2d Cir. 2001) (reinstating Eighth Amendment claims of frigid temperatures dismissed by district court); *Channer v. Mitchell*, 43 F.3d 786, 788 (2d Cir. 1994) (denying motion to dismiss where prisoner alleged that officer had required him to spend two nights in a holding cell without bedding). Exposure to the "bitter cold of winter in northern-New York State" for "a substantial period of time" may constitute an Eighth Amendment claim. *See Corseli v. Coughlin*, 842 F.2d 23, 27 (2d Cir. 1988); *Ifill v. Goord*, No. 03-CV-355, 2012 WL 176492, at \*3 (W.D.N.Y. Jan. 20, 2012) (holding that "freezing temperatures can constitute the basis of an inhumane conditions of confinement claim."). "It is true that some district courts in this circuit have found that allegations of exposure to cold temperatures for short periods of time, in conjunction with a deprivation of clothing and/or bedding, are insufficient to state a claim under the Eighth Amendment." *Nelson v. Plumley*, No. 9:12-CV-0422 (TJM/DEP), 2013 WL 1121362, at \*10 (N.D.N.Y. Jan. 24, 2013) (collecting cases).

Hamilton v. New York State Department of Corrections..., Not Reported in Fed....

2019 WL 2352981

**\*16** Here, Plaintiff claims that Defendants forced him to remain outside for one hour in "minus twenty degrees below zero." *See* Am. Compl. at 23. The Amended Complaint however, lacks any facts suggesting that Plaintiff suffered any physical injury or that he sought or required medical treatment. Further, while he states that he was exposed to "bone chilling cold," Plaintiff does not contend that he was forced outside without proper clothing or that he was deprived of a jacket or coat.

For the reasons set forth herein, Plaintiff's Eighth Amendment claims against Graham, Yard Supervisor Jay Doe, and WC Doe #2 are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### c. Bertonica

Plaintiff claims that Bertonica "forced" him to miss twenty medical meals causing "unknown damages." *See* Am. Compl. at 55. The Eighth Amendment requires that prisoners be provided with "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (citation omitted); *Brown v. Eagen*, No. 08–CV-0009 (TJM/DRH), 2009 WL 815724, at \*10 (N.D.N.Y. Mar. 26, 2009) (citations omitted); *Midalgo v. Bass*, No. 03–CV–1128 (NAM/RFT), 2006 WL 2795332, at \*11 (N.D.N.Y. Sept. 26, 2006) (citations omitted). "Depriving an inmate of food or serving him contaminated food may constitute a violation of the Eighth Amendment." *Moncrieffe v. Witbeck*, No. 86-CV-253 (NAM), 2000 WL 949457, at \*6 (N.D.N.Y. June 29, 2000) (citing *Robles*, 725 F.2d at 15). Where a particular diet is medically required, denial of a smaller number of meals may be sufficient in some circumstances. *See Abdush-Shahid v. Coughlin*, 933 F. Supp. 168, 180 (N.D.N.Y. 1996) (citing *Robles*, 725 F.2d at 15-16).

Here, Plaintiff does not allege that his decision to refuse medical meals caused any adverse impact upon his health. Rather, Plaintiff asserts, in conclusory terms, that the condition caused "unknown damage." Moreover, Plaintiff has not plead that he was denied any food or meals. Accordingly, Plaintiff's Eighth Amendment claims against Bertonica are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### F. Ninth Amendment

Plaintiff claims that Annucci, Stewart, Rose, Bertonica, and Pitoniak violated the Ninth Amendment. *See* Am. Compl. at 76. The Ninth Amendment to the United States Constitution provides, "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const., amend. IX. Courts from within the Second Circuit have recognized the inapplicability of the Ninth Amendment to prisoner Section 1983 claims. *Muniz v. Goord*, No. 9:04-CV-0479 (TJM/GHL), 2007 WL 2027912, at \*9 (N.D.N.Y. July 11, 2007) (citations omitted); *Newman v. Annucci*, No. 3:17-CV-0918 (LEK/DEP), 2018 WL 4554494, at \*8 (N.D.N.Y. Sept. 21, 2018) (holding that the Ninth Amendment "is not an independent source of constitutional rights that may be asserted in a civil rights action ... [and] cannot serve as the basis for a § 1983 claim because such a claim must be based on the violation of a right guaranteed by the U.S. Constitution or federal law.").

According, Plaintiff's Ninth Amendment claims are dismissed.

### G. Violations of DOCCS' Directives

Construing the Amended Complaint liberally, Plaintiff alleges that Annucci violated DOCCS' Directive #4202 because he "sought to establish tenets and practices of Rastafari." *See* Am. Compl. at 26. Plaintiff also claims that Venditti and Delfavero failed to adhere to DOCCS' procedures and that Pitoniak, Schenk, Vanni, Porter, Silcox, Annucci, and McCarthy violated DOCCS' Directive #4760. *See id.* at 19, 66-75.

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 323 of 353

Hamilton v. New York State Department of Corrections..., Not Reported in Fed....

2019 WL 2352981

**\*17**  A Section 1983 claim brought in federal court is not the appropriate forum to raise violations of prison regulations. *See Hyman v. Holder*, No. 96 Civ. 7748, 2001 WL 262665, \*6 (S.D.N.Y. Mar. 15, 2001) (holding that the failure to follow a New York State DOCCS Directive or prison regulation does not give rise to a federal constitutional claim) (citing *Fluent v. Salamanca Indian Lease Auth.*, 847 F.Supp. 1046, 1056 (W.D.N.Y. 1994)) (holding that section 1983 imposes liability for violations of rights protected by the Constitution and laws of the United States, not for violations arising solely out of state or common-law principles); *see also McAllister v. Call*, No. 9:10-CV-610 (FJS/CFH), 2014 WL 5475293, at \*11 (N.D.N.Y. Oct. 29, 2014) ("A section 1983 claim is not the appropriate forum in which to seek review of a violation of unspecified DOCCS rules, regulations and procedures.") (citation omitted).

Accordingly, Plaintiff's constitutional claims based upon the failure to adhere to DOCCS' directives are dismissed.

### H. Fourteenth Amendment

#### 1. Equal Protection

The law related to the Equal Protection Clause was discussed in the December Order and will not be restated herein. *See* Dkt. No. 4 at 15-16. In the December Order, the Court held:

> Here, Plaintiff claims that Rastafarians represent a "minority religious group" and are "viewed as primitive" and subjected to discrimination. Compl. at 6-7. Plaintiff failed to identify any similarly situated inmates who were treated differently based upon their religious beliefs. Indeed, the Complaint lacks any facts supporting this conclusion and thus, fails to state an equal protection claim. *See Lloyd v. City of New York*, 43 F. Supp. 3d 254, 265 (S.D.N.Y. 2014) (finding that the plaintiffs failed to plead an equal protection claim based upon religion because nothing in the complaint suggested that similarly-situated inmates of other faiths were treated more favorably than the plaintiffs, or that the plaintiffs were singled out for discriminatory treatment on account of their religion).

Dkt. No. 4 at 15-16.

#### a. Tomandl, Venditti, Delfavero, Graham, WC Doe #1, WC Doe #2, Yard Supervisor Jay Doe, PG James Doe, Sgt. Doe, and WC Doe #3

In the Amended Complaint, Plaintiff asserts the following equal protection claims:

• Tomandl allowed Christian and Muslim SHU inmates who wrote, pre-SHU release letters, to attend their religious services upon release;

• Venditti and Delfavero "added" similarly situated "new arrivals" of Protestant, Catholic, and Muslim faiths to the "Feed-up list of their faith" while Plaintiff's "Brethren" was prevented from delivering the Transfiguration Day sacramental meal;

• On December 27, 2015, Graham, WC Doe #1, and Tomandl allowed Protestant and NOGE groups to worship for over one hour and forty five minutes while Plaintiff was "walked in and out of the chapel;"

• On February 14, 2016, Graham, WC Doe #2, and Yard Supervisor Jay Doe allowed only five Rastafari inmates into the chapel at a time while Protestant inmates were allowed in the chapel "en masse;" and

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 324 of 353

Hamilton v. New York State Department of Corrections..., Not Reported in Fed....

2019 WL 2352981

• Similarly situated Protestant and NOGE prisoners were allowed to attend worship and study on December 25, 2016 while PG James Doe, Sgt. Doe, and WC Doe #3 deprived Plaintiff of the same opportunity.

*See* Am. Compl. at 17, 29, 30, 31, 32, 43, 44.

Mindful of the Second Circuit's instruction that a pro se plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court will require a response to the aforementioned equal protection claims from Venditti, Delfavero, Graham, WC Doe #1, WC Doe #2, Yard Supervisor Jay Doe, PG James Doe, Sgt. Doe, and WC Doe #3. *See Scott v. Uhler*, No. 9:16-CV-403 (TJM/CFH), 2018 WL 3130670, at *5 (N.D.N.Y. May 24, 2018) (holding that the plaintiff sufficiently alleged a claim of discrimination in violation of the Equal Protection clause with facts suggesting that similarly-situated inmates were permitted to attend religious services on December 25, 2015 while Muslim inmates intentionally were denied the right to hold and attend services) (citing *Guillory v. Fischer*, No. 9:12-CV-00280 (LEK), 2013 WL 1294626, at *16 (N.D.N.Y. Mar. 7, 2013)) (finding that the plaintiff sufficiently pleaded an equal protection claim based upon the denial of Jewish services on one day because Jewish, Muslim, Catholic and Protestant inmates are similarly situated in that they are all religious groups seeking to utilize prison facilities to hold religious services, and Plaintiff alleges that the Defendants facilitated the use of prison facilities for all of the other religious groups except the Jewish inmates for purely discriminatory reasons). This is not a ruling on the merits and the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment. For the reasons set forth in Part IV(C)(1)(4)(a) *supra*, the equal protection claim against Tomandl is dismissed.

### b. Pitoniak, Vanni, Porter, Annucci, and McCarthy

**\*18** Plaintiff claims that Pitoniak, Vanni, and Porter discriminated and treated the CAU differently than "similarly situated organizations." *See* Am. Compl. at 76-80. Plaintiff also asserts that Annucci and McCarthy failed to protect the CAU "on par with all other similarly situated organizations and individuals" from discrimination and unequal treatment. *See* Am. Compl. at 80-81. As discussed in the December Order, the failure to identify similarly situated individuals who were treated differently is fatal to an equal protection claim. Accordingly for the reasons set forth in the December Order, the equal protection claims against Pitoniak, Vanni, Porter, Annucci, and McCarthy are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 2. Due Process

To successfully state a claim under § 1983 for denial of due process, a plaintiff must show that he both (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process. *See Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004); *Tellier v. Fields*, 280 F.3d 69, 79–80 (2d Cir. 2000); *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998); *Bedoya v. Coughlin*, 91 F.3d 349, 351–52 (2d Cir. 1996). "A prisoner's liberty interest is implicated by prison discipline," "only if the discipline 'imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life' ...." *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009) (citations omitted).

### a. Mallozzi

Plaintiff claims that Mallozzi made false statements during the investigation into his grievances in violation of his due process rights. *See* Am. Compl. at 44, 60-61. It is well-established that prison grievance procedures do not create a due-process-protected liberty interest. *See, e.g., Mateo v. Fischer*, 682 F.Supp.2d 423, 431 n. 3 (S.D.N.Y. 2010); *Mastroianni v. Reilly*, 602 F.Supp.2d 425, 437 (E.D.N.Y. 2009); *Torres v. Mazzuca*, 246 F.Supp.2d 334, 342 (S.D.N.Y. 2003). Thus, Mallozzi's failure to properly

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 325 of 353

Hamilton v. New York State Department of Corrections..., Not Reported in Fed....

2019 WL 2352981

respond to his grievances did not violate Plaintiff's constitutional rights. *See Mimms v. Carr*, No. 09-CV-5740, 2011 WL 2360059, at \*10 (E.D.N.Y. June 9, 2011) ("It is well-established that prison grievance procedures do not create a due-process-protected liberty interest.") (citing cases).

Accordingly, Plaintiff's due process claims against Mallozzi are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### b. Pitoniak, Schenk, Vanni, Porter, Silcox, Annucci, and McCarthy

Plaintiff claims that Pitoniak, Schenk, Vanni, Porter, Silcox, Annucci, and McCarthy failed to adhere to Directive #4760, in violation of his due process rights. *See* Am. Compl. at 82. As discussed *supra*, section 1983 claims based on violations of prison rules are subject to dismissal. Thus, to the extent that Plaintiff claims that his due process rights were violated because of a liberty interest created by DOCCS' directives, that claim is dismissed. *See Turner v. Sidorowicz*, No. 12-CV-7048, 2014 WL 641454, at \*10 (S.D.N.Y. Feb. 18, 2014) (citing *Shakur v. Selsky*, 391 F.3d 106, 118 (2d Cir. 2004) ("[R]egardless of state procedural guarantees, the only process due an inmate is that minimal process guaranteed by the Constitution[.]")).

### c. Kelsey and McCarthy

After the disciplinary hearing, Kelsey found Plaintiff guilty of missing meals and ordered him to pay a $ 5.00 surcharge and $ 10.35 charge for the cost of the meals. *See* Am. Compl. at 49, 51. A "surcharge", without more, is not an atypical hardship. *See Edwards v. Horn*, No. 10 CIV. 6194, 2012 WL 473481, at \*9 (S.D.N.Y. Feb. 14, 2012) (holding that a $ 25 fine implicates the requisite liberty interest to state a due process claim). Because Plaintiff has failed to plead that he was subjected to any disciplinary confinement or otherwise deprived a valid liberty interest, his Fourteenth Amendment Due Process claims related to the disciplinary hearing are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure state a claim upon which relief may be granted. *See id.* ("Because of the absence of any protected liberty interest [...] any failures by the hearing officer to conduct a thorough investigation [...] do not support a cause of action for the denial of due process.") (citation omitted).

## I. New York State Law and Constitutional Claims

### 1. Corrections Law

 **\*19** Plaintiff asserts state law claims, parallel to his free exercise claims, under New York Correction Law §§ 112 and 610. Section 610 guarantees inmates "the free exercise and enjoyment of religious profession and worship" while incarcerated. *See May v. Donneli*, No. 9:06-CV-437 (GLS/RFT), 2009 WL 3049613, at \*4 (N.D.N.Y. Sept. 18, 2009). Similarly, under Correction Law § 112, the Commissioner is empowered to promulgate regulations pertaining to religious service and ministrations. *See U. S. ex rel. Washington v. Fay*, 217 F. Supp. 931, 933, n. 1 (S.D.N.Y. 1963). Because the First Amendment free exercise and establishment law claims survive review, the Court shall exercise supplemental jurisdiction over the corresponding state law claims.

Plaintiff also claims that McCarthy and Annucci violated Correction Law § 116, which vests the Commissioner with the broad power to manage the fiscal affairs of correctional facilities, including inmate accounts. *See Nardi v. Le Fevre*, 235 A.D.2d 602, 603 (1997). Having dismissed all constitutional claims for monetary damages against Annucci and McCarthy, in their individual capacity, related to the CAU, the Court declines in its discretion to retain supplemental jurisdiction over Plaintiff's state law claims against McCarthy and Annucci related to the CAU. *See* 28 U.S.C. § 1367(c)(3); *Doyle v. Suffolk Cty.*, 786 F.2d 523, 525

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 326 of 353

Hamilton v. New York State Department of Corrections..., Not Reported in Fed....

2019 WL 2352981

(2d Cir. 1986) ("With the federal claim failing at the outset of the litigation, the District Judge properly declined to exercise pendent jurisdiction over the state law claims.").

### 2. Constitutional Claims

Plaintiff contends that Defendants violated Article I, §§ 1,3, 5, 6, 8, 9, 11 of the New York State Constitution. In light of the dismissal of Plaintiff's federal claims for deliberate indifference, due process, freedom of speech, and freedom to petition, the Court declines to exercise supplemental jurisdiction over the claims related to violations of Article I, Sections 5, 6, 8, and 9 of the New York State Constitution. *See* 28 U.S.C. § 1367(c)(3); *Valencia v. Sung M. Lee*, 316 F.3d 299, 306 (2d Cir. 2003).

With respect to Plaintiff's claims pursuant to Article I, §§ 1, 3, and 11, while New York recognizes a private cause of action for violations of the New York State Constitution, *Brown v. State*, 89 N.Y.2d 172, 192, 652 N.Y.S.2d 223, 235 (1996), that cause of action is only available, however, "where the plaintiffs have no alternative remedies that would protect their interests." *Vilkhu v. City of New York*, No. 06-CV-2095, 2008 WL 1991099, at *8 (E.D.N.Y. May 5, 2008) (citations omitted). Thus, because Plaintiff has viable First and Fourteenth Amendment Equal Protection claims under section 1983, Plaintiff's state law claims are dismissed because there is no private right of action under the New York State Constitution where, as here, remedies are available under § 1983. *Flores v. City of Mount Vernon*, 41 F.Supp.2d 439, 446-47 (S.D.N.Y. 1999).

### J. Prospective Injunctive Relief

*In Ex Parte Young*, 209 U.S. 123 (1908), the Supreme Court established an exception to state sovereign immunity in federal actions where an individual brings an action seeking injunctive relief against a state official for an ongoing violation of law or the Constitution. Under this doctrine, a suit may proceed against a state official in his or her official capacity, notwithstanding the Eleventh Amendment, when a plaintiff "'(a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective." *See In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (quotations and citations omitted); *see also Santiago v. New York State Dep't of Corr. Serv.*, 945 F.2d 25, 32 (2d Cir. 1991) (holding that such claims, however, cannot be brought directly against the state, or a state agency, but only against state officials in their official capacities); *see also Inside Connect, Inc. v. Fischer*, No. 13-CV-1138, 2014 WL 2933221, at *7 (S.D.N.Y. June 30, 2014) (dismissing the plaintiff's requests for declaratory judgment related to the defendants' policy of refusing delivery of Inmate News because the defendants were no longer refusing to deliver Inmate News) (citing *Green v. Mansour*, 474 U.S. 64, 68 (1985)). "[I]n order to warrant the court's consideration, the plaintiff must be seeking prospective relief from an 'ongoing violation of federal law' which affects him directly, as opposed to others." *Ruggiero v. Brian Fischer, Comm'r, No.* 15-CV-00962, 2017 WL 6999859, at *2 (W.D.N.Y. Aug. 25, 2017), *report and recommendation adopted sub nom.*, 2018 WL 488949 (W.D.N.Y. Jan. 20, 2018) (citations omitted).

**\*20** In the Amended Complaint, Plaintiff seeks an order directing Annucci and McKoy to provide at least one hour of worship and study. *See* Am. Compl. at 37. Because the Court has directed a response to Plaintiff's claim that his First Amendment right to the free exercise of his religion was violated on December 27, 2015 because he was afforded only five minutes to worship in the chapel, the corresponding claim for prospective injunctive relief survives as well.

A different conclusion is reached however, with respect to the remaining requests for prospective injunctive relief. Plaintiff also seeks an order preventing Auburn's administration from allowing "general callouts" of all registered Rastafaris. *See* Am. Compl. at 37-38. However, Plaintiff fails to explain how this injunction is necessary to prevent irreparable injury to his constitutional rights as alleged in the Amended Complaint. Because this claim for injunctive relief is unrelated to the constitutional claims set forth in the Amended Complaint, it is dismissed. *See Betlewicz v. Div. of New York State Police*, No. 1:12-CV-1158 (GLS/ RFT), 2013 WL 2181248, at *3 (N.D.N.Y. May 20, 2013).

Finally, with respect to Plaintiff's request for an order preventing Auburn's administration from utilizing the "penalty box" for callouts in periods of inclement weather, as discussed *supra*, Plaintiff's Eighth Amendment claim related to the "penalty

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 327 of 353

Hamilton v. New York State Department of Corrections..., Not Reported in Fed....

2019 WL 2352981

box," was dismissed. Accordingly, the corresponding claim for injunctive relief is also dismissed. *See Spiteri v. Russo*, No. 12-CV-2780, 2013 WL 4806960, at *44 (E.D.N.Y. Sept. 7, 2013), *aff'd sub nom. Spiteri v. Camacho*, 622 Fed. App'x 9 (2d Cir. 2015); *see also Rossi v. Fishcer*, No. 13-CV-3167, 2015 WL 769551, at *15 (S.D.N.Y. Feb. 24, 2015).

### K. Preliminary Injunctive Relief

In the Amended Complaint, Plaintiff also seeks preliminary injunctive relief. Preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co. of N.Y.*, 409 F.3d 506, 510 (2d Cir. 2005) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). "The district court has wide discretion in determining whether to grant a preliminary injunction." *Id.* at 511. To obtain preliminary injunctive relief, a plaintiff must demonstrate irreparable harm and either a substantial likelihood of success on the merits of the claim, or sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in his favor. *Citigroup Global Markets, Inc. V. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010). However, when the moving party seeks a "mandatory preliminary injunction that alters the status quo by commanding a positive act," the burden is even higher. *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 405-06 (2d Cir. 2011). "A mandatory preliminary injunction 'should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief.' " *Id.* (quoting *Citigroup*, 598 F.3d at 35 n.4).

Generally an alleged violation of a constitutional right creates a presumption of irreparable harm. *Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996). However, speculative, remote or future injury is not the province of injunctive relief. *Los Angeles v. Lyons*, 461 U.S. 95, 111-12 (1983). Rather, a plaintiff seeking to satisfy the irreparable harm requirement must demonstrate that "absent a preliminary injunction [he or she] will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Bisnews AFE (Thailand) Ltd. v. Aspen Research Group Ltd.*, 437 Fed. App'x 57, 58 (2d Cir. 2011) (quoting *Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009)); *Garcia v. Arevalo*, No. 93-CV-8147, 1994 WL 383238, at *2 (S.D.N.Y. June 27, 1994) ("It is well settled that an allegation of the mere possibility of irreparable harm is insufficient to justify the drastic remedy of preliminary injunction.... A party who seeks the extraordinary remedy of a preliminary injunction must show the alleged irreparable harm to be imminent, not remote or speculative, and the alleged injury to constitute one that is incapable of being fully remedied by monetary damages." (citations omitted)). A finding of irreparable harm cannot be based solely on past conduct. *Haden v. Hellinger*, No. 9:14-CV-0318 (GLS), 2016 WL 589703 at *1 (N.D.N.Y. Feb. 11, 2016).

**\*21** Furthermore, the party seeking preliminary injunctive relief must establish a relationship between the alleged irreparable harm claimed and the conduct giving rise to the complaint. *See Candelaria v. Baker,* No. 00-CV-0912, 2006 WL 618576, at *3 (W.D.N.Y. Mar. 10, 2006) (citations omitted)*; see also Allen v. Brown*, No. 96-CV-1599 (RSP/GJD), 1998 WL 214418, at *4 (N.D.N.Y. Apr. 28, 1998) (denying request for injunctive relief where allegations in application for such relief were unrelated to claims asserted in the complaint and thus plaintiff "failed to establish either a likelihood of succeeding on the merits of his underlying claim, or sufficiently serious questions going to the merits of such claim and a balance of hardships tipping decidedly toward" the plaintiff). "In the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of state prisons." *Fisher v. Goord*, 981 F. Supp. 140, 167 (W.D.N.Y. 1997) (citing *Farmer v. Brennan*, 511 U.S. 825, 846-47 (1994)) (other citations omitted). Here, the injunction sought is mandatory, and thus the Court will use the "clear and substantial" showing of a likelihood of success standard.

Plaintiff requests the following preliminary injunctive relief: (1) an order directing Annucci to immediately reinstate DOCCS' policy mandating that food be prepared by a faith group member; (2) an order precluding Annucci from using disciplinary measures to "force" Plaintiff to consume food prepared or served by homosexuals; (3) an order directing Annucci to reinstate the policy requiring Rastafari "brethren" to serve as clerks to prepare callouts, etc.; (4) an order enjoining Annucci, McKoy, McCarthy, and Schenk from posting the Rastafari "Family Day Event" on the commissary buy sheet; (5) an order suspending all aspects of Annucci's and Mallozzi's IGP; (6) an order directing Annucci to reinstate the CAU; (7) an order preventing Annucci from collecting funds from the CAU pending a full and complete forensic audit; (8) an order preventing Annucci from dispersing the CAU funds; and (9) if Plaintiff should be transferred during the pendency of this lawsuit, an Order directing

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 328 of 353
Hamilton v. New York State Department of Corrections..., Not Reported in Fed....
2019 WL 2352981

Annucci to transfer eight property bags containing Plaintiff's research, exhibits, books, and legal material with Plaintiff. *See* Am. Compl. at 61-64, 87-88.

The Court has thoroughly reviewed the Amended Complaint and requests for preliminary injunctive relief and finds that the requests are unrelated to the underlying claims that have survived this Court's review. Further, "the past allegations of misconduct stated in Plaintiff's Amended complaint, standing alone, are insufficient to support a finding of irreparable harm." *Ross v. Smith*, No. 9:18-CV-0039 (GLS/TWD), 2018 WL 5816301, at *2 (N.D.N.Y. Nov. 7, 2018). Thus, Plaintiff has not made any showing that he will suffer an injury that is neither remote nor speculative should the relief not be granted. Upon review, the Court finds that Plaintiff has failed to meet the heavy burden for a mandatory preliminary injunction. As a result, Plaintiff's requests for preliminary injunctive relief are dismissed.

### L. Doe Defendants

Because Plaintiff asserts First and Fourteenth Amendment claims against corrections officers and officials whose names are not known to Plaintiff, service of process cannot be effected on them unless and until these individuals have been identified by name. If Plaintiff wishes to pursue his claims against WC John Doe #1, WC John Doe #2, Yard Supervisor Jay Doe, PG John Doe, PG James Doe, Sgt. Doe and/or WC John Doe #3, he must take reasonable steps to ascertain through discovery the identity of those individuals. Upon learning the identities of the unnamed defendants, Plaintiff must amend the operative complaint to properly name those individuals as parties. If Plaintiff fails to ascertain the identity of the John Doe defendants so as to permit timely service of process, all claims against those individuals will be dismissed. [16]

[16]     Rule 4 of the Federal Rules of Civil Procedure require that a party be served within 90 days of issuance of the summons, absent a court order extending that period. Fed. R. Civ. P. 4(m). The Court's local rules shorten the time for service from 90 days under Rule 4(m) to 60 days. N.D.N.Y. L.R. 4.1(b).

### V. CONCLUSION

**\*22  WHEREFORE**, it is hereby

**ORDERED**, that the Amended Complaint (Dkt. No. 15), and all exhibits annexed (Dkt. No. 1 at 15-28) thereto is accepted for filing and is deemed the operative pleading; and it is further

**ORDERED** that the Clerk of the Court shall amend the docket to add McKoy, Morris, Guenette, Stewart, Rose, Bellamy, Mallozzi, McCarthy, Schenk, Vanni, Bertonica, Kelsey, WC John Doe #1, WC John Doe #2, WC John Doe #3, Tomandl, Pino, PG John Doe, Porten, Sgt. Doe, Yard Supervisor Jay Doe, PG James Doe, Porter, Pitoniak, and Silcox as defendants herein; and it is further

**ORDERED** that the following claims are **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted: (1) section 1983 claims for monetary damages against defendants in their official capacity; (2) claims against Rose, Stewart, and Pino (3) First Amendment retaliation claims against Graham and Annucci; (4) First Amendment claims related to freedom of speech and to petition; (5) First Amendment claims related to the free exercise of religious freedom against Tomandl, PG James Doe, Sgt. Doe, WC Doe #3, Kelsey, and McCarthy; (6) Fourth Amendment claims; (7) Eighth Amendment claims; (8) Ninth Amendment claims; (9) constitutional claims related to violations of DOCCS' directives; (10) Fourteenth Amendment equal protection claims against Tomandl, Pitoniak, Vanni, Porter, Annucci, and McCarthy; (11) Fourteenth Amendment due process claims; (12) state law claims based upon Corrections Law § 116; and (13) New York State constitutional claims; it is further

**ORDERED** that the following claims survive the Court's sua sponte review under 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) and require a response: (1) First Amendment retaliation claims against Bertonica, Pitoniak, Vanni, Porter, Schenk, and Silcox; (2) First Amendment claims related to the free exercise of religious freedom against Graham, Venditti, Delfavero, WC

John Doe #1, Porten, Bertonica, Annucci, McKoy, Morris, and Guenette; (3) First Amendment Establishment Clause claims against Annucci, McKoy, Morris, Guenette, Graham, and PG John Doe; (4) Fourteenth Amendment equal protection claims against Venditti, Delfavero, Graham, WC Doe #1, WC Doe #2, Yard Supervisor Jay Doe, PG James Doe, Sgt. Doe, WC John Doe #3; and (5) corresponding state law claims; and it is further

**ORDERED** that DOCCS, Stewart, Rose, Bellamy, Mallozzi, McCarthy, Kelsey, Tomandl, and Pino are **DISMISSED** as defendants herein; and it is further

**ORDERED**, that upon receipt from Plaintiff of the documents required for service of process, the Clerk shall issue a summonses and forward them, along with copies of the Amended Complaint, to the United States Marshal for service upon the remaining defendants. The Clerk shall forward a copy of the summonses and Amended Complaint to the Office of the Attorney General, together with a copy of this Decision and Order; and it is further

**ORDERED**, that a response to the Amended Complaint be filed by the remaining defendants, or his counsel, as provided for in the Federal Rules of Civil Procedure; and it is further

 **\*23** **ORDERED**, that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of same was served on all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a proper certificate of service will be stricken from the docket.** Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; their failure to do so will result in the dismissal of his action**; and it is further

**ORDERED** that Plaintiff shall take reasonable steps through discovery to ascertain the identity of Defendants WC John Doe #1, WC Doe #2, Yard Supervisor Jay Doe, PG John Doe, PG James Doe, Sgt. Doe and WC John Doe #3. **Plaintiff's failure to timely serve those Defendants will result in dismissal** of the claims asserted against them and termination of those defendants from the action; and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Decision and Order on Plaintiff in accordance with the Local Rules.


**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2019 WL 2352981

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Scott v. Uhler, Not Reported in Fed. Supp. (2018)

2018 WL 3130670

2018 WL 3130670

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

James N. SCOTT, Plaintiff,

v.

D. UHLER; et al., Defendants.

No. 9:16-CV-403 (TJM/CFH)

|

Signed 05/24/2018

**Attorneys and Law Firms**

JAMES N. SCOTT, 96-A-5363, Attica Correctional Facility, Box 149, Attica, New York 14011, pro se.

Attorney General for the, State of New York, OF COUNSEL: RYAN W. HICKEY, ESQ. Assistant Attorney General, The Capitol, Albany, New York 12224-0341, Attorneys for Defendants.

## REPORT-RECOMMENDATION AND ORDER [1]

[1]  This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

CHRISTIAN F. HUMMEL, U.S. MAGISTRATE JUDGE

**\*1**  Plaintiff pro se N. Scott ("Scott"), an inmate who was, at all relevant times, in the custody of the New York Department of Corrections and Community Supervision ("DOCCS"), brings this action pursuant to the Civil Rights Act, 42 U.S.C. § 1983. Dkt. No. 55 ("Am. Compl."). Scott contends that defendants Superintendent D. Uhler ("Uhler"), Deputy Superintendent J. Fitchette ("Fitchette") and Lieutenant W. Trombly ("Trombly") deprived him of his constitutional rights under the First and Fourteenth Amendments. See id. For the reasons that follow, it is recommended that defendants' Motion to Dismiss be granted in part and denied in part.

## I. BACKGROUND

### A. Procedural History

On April 8, 2016, Scott, and eight additional pro se plaintiffs, commenced this action with the filing of a pro se civil rights Complaint. Dkt. No. 1. In a Decision and Order filed on April 15, 2016, the Court reviewed the Complaint in accordance with 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A, and directed defendants to respond to the First and Fourteenth Amendment claims. Dkt. No. 20. On July 25, 2016, in lieu of an answer, defendants moved, pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6), to dismiss the Complaint. Dkt. No. 45. Scott opposed the motion. Dkt. Nos. 38, 40.

In a Report-Recommendation and Order filed on February 8, 2017 (the "February Order"), the undersigned recommended granting Defendants' motion to dismiss and affording plaintiffs the opportunity to amend the Complaint within thirty days. Dkt. No. 47. On March 17, 2017, the Report-Recommendation and Order was adopted in its entirety. Dkt. No. 52. On April

Scott v. Uhler, Not Reported in Fed. Supp. (2018)
Case 9:22-cv-00638-DNH-TWD   Document 58   Filed 02/28/25   Page 331 of 353

2018 WL 3130670

6, 2017, Scott filed an Amended Complaint. Dkt. No. 55. On September 26, 2017, the Court issued an Order dismissing the claims asserted by the remaining plaintiffs, with prejudice and terminating from the action all plaintiffs other than Scott. [2] Dkt. No. 56. In lieu of an Answer, defendants filed a motion to dismiss the Amended Complaint. Dkt. No. 60. Scott opposed the motion. Dkt. No. 62.

[2]  Although plaintiff Scott's Amended Complaint repeatedly references "plaintiffs," plaintiff Scott is advised that **he is the only remaining plaintiff in this action** due to the September 26, 2017 Order dismissing all other plaintiffs from the action with prejudice "because none of the plaintiffs other than James N. Scott filed an amended complaint or sought an extension of time to do so[.]". Dkt. No. 56.

### B. Facts

The facts are related herein in the light most favorable to Scott as the non-moving party. See subsection II(A) infra. At the relevant time, Scott was confined at Upstate Correctional Facility ("Upstate C.F."). See Am. Compl., generally. On December 25, 2015, Scott and other Muslim inmates were not permitted to attend regularly-scheduled Jumm'ah services at Upstate C.F. [3] Id. at 4. [4] Scott, the designated "inmate facilitator of the Islamic Religion" at Upstate C.F., asked to speak with the Sergeant about the Jumm'ah services, but his request was denied. Id. at 5. The Muslim inmates were told only that staff needed to "check and inquire as to how the procedures were going to take place on such a specific day[,]" but no officer ever "returned to the plaintiffs to inform them if they would be permitted to attend these services." Id. at 4. Defendant J. Fitchette made the decision to cancel "all programs" after morning recreation, including Jumm'ah services. Am. Compl. at 5, 7. When Imam Qubaisy arrived at Upstate C.F. to perform the Jumm'ah service on December 25, 2015, defendant W. Trombly refused him entry into the facility. Id. at 8. Trombly in formed Imam Qubaisy that Fitchette cancelled services with approval from defendant D. Uhler. Id. Scott seeks declaratory, injunctive, and monetary relief. See id. at 10.

[3]  Jumm'ah is a weekly group prayer that is obligatory for Muslims, and is the only Muslim congregational service of the week at Upstate C.F. Am. Compl. at 5. Jumm'ah services are regularly scheduled at noon on Friday for general population inmates. Id

[4]  Throughout this Report-Recommendation and Order, references to page numbers in items that appear on the docket refer to the pagination of the header numbers generated by CM/ECF, not to the page numbers used by the parties in the individual documents.

### II. DISCUSSION [5]

[5]  All unpublished opinions cited to by the Court in this Report-Recommendation and Order have been, unless otherwise noted, provided to plaintiff.

 **\*2**  Scott alleges that: (1) defendants violated his First Amendment right to religious freedom; and (2) defendants violated his Fourteenth Amendment rights to due process and equal protection. See Am. Compl., generally. Defendants move to dismiss the Amended Complaint, arguing that Scott's First and Fourteenth Amendment claims fail to state a cause of action. See Dkt. No. 60, generally.

### A. Legal Standard

When considering a motion to dismiss, "a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994). However, this "tenet ...

**Scott v. Uhler, Not Reported in Fed. Supp. (2018)**
Case 9:22-cv-00638-DNH-TWD   Document 58   Filed 02/28/25   Page 332 of 353

2018 WL 3130670

is inapplicable to legal conclusions[; thus, t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007) (holding that "entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action ... [as] courts are not bound to accept as true a legal conclusion couched as a factual allegation.") ).

To defeat a motion to dismiss or a motion for judgment on the pleadings, a claim must include "facial plausibility ... that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556 (explaining that the plausibility test "does not impose a probability requirement ... it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct].") ); see also Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) (holding that, "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible ...") (citations omitted).

Still, "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " Twombly, 550 U.S. at 555 (citations omitted). While a complaint attacked under the standard set forth in Rule 12(b)(6) does not require detailed factual allegations, "a plaintiffs obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (citations omitted).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to special solicitude, that a pro se litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest. At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not consistent with the pro se litigant's allegations or arguments that the submissions themselves do not suggest that we should not excuse frivolous or vexatious filings by pro se litigants, and that pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law[.]

**\*3** Id. at 477 (internal quotation marks, citations, and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds pro se, ... a court is obliged to construe his pleadings liberally.") (internal citations omitted).

## B. Religious Claims

Scott claims that defendants violated his religious rights in violation of the First Amendment when they prevented him from attending Jumm'ah services on December 25, 2015. See Am. Compl., generally. Defendants argue that Scott's religious claims are subject to dismissal because precluding him from attending one religious service did not amount to a substantial burden on his religious beliefs. Dkt. No. 60 at 3-5.

The law pertaining to First Amendment religious claims was discussed in the February 8, 2017 Report-Recommendation & Order and will not be restated herein. Dkt. No. 47 at 6-8. In the February 2018 Report-Recommendation & Order, the Court dismissed Scott's First Amendment claims holding:

... the facts do not suggest that defendants' refusal to allow Plaintiffs to attend Jumm'ah services, for one day, violated Plaintiffs' constitutional rights. Plaintiffs have failed to plead facts suggesting that defendants created a substantial burden on their religion or that defendants prevented Plaintiffs, in other ways, from practicing their religion. The isolated incident on December 25, 2015 does not give rise to a constitutional violation. See Boomer v. Irvin, 963 F.Supp. 227, 230-31 (W.D.N.Y. 1997) (holding that the inability to attend Jumm'ah service on one day did not violate the plaintiff's constitutional rights); see also Powell v. City of New York, No. 14-CV-9937, 2016 WL 4159897, at *5 (S.D.N.Y. July 14, 2016) (holding that missing two consecutive Jumm'ah services was a de minimis deprivation).

Dkt. No. 47 at 9.

The Court also addressed Scott's argument that the Motion to Dismiss should be denied because defendants failed to state any legitimate penological objective for canceling Jumm'ah services. The Court held:

"[b]ecause Plaintiffs failed to sufficiently plead that they suffered a substantial burden on their religious beliefs, defendants are not obligated to demonstrate legitimate penological interests. See Jean-Laurent, 2015 WL 1015383, at *6 ("Before considering the balance between the restrictions posed by a prison regulation on an inmate's constitutional rights and the legitimate penological interest advanced by the same regulation, however, the inmate plaintiff must establish that his exercise of some constitutional right was substantially burdened.").

Dkt. No. 47 at 9-10.

After careful review of the Amended Complaint, it is clear that Scott has not cured the defects identified in the February 8, 2017 Report-Recommendation & Order, adopted by this Court on May 17, 2017 as to his First Amendment claim. Dkt. Nos. 47, 52. Accordingly, for the reasons previously stated in the February 8, 2017 Report-Recommendation & Order, it is recommended that Scott's First Amendment cause of action be dismissed. See Tafari v. McCarthy, 714 F. Supp. 2d 317, 339 (N.D.N.Y. 2010) (explaining that even where the plaintiff is pro se "an opportunity to amend is not required where the plaintiff has already amended the complaint [or] ... where the problem with the plaintiff's causes of action is substantive such that better pleading will not cure it.") (internal punctuation marks and quotations omitted).

### C. Due Process

**\*4** Defendants argue that the Amended Complaint reiterates the conclusory due process allegations from the original Complaint, and, thus, the claims are subject to dismissal. Dkt. No. 60-1 at 6. The law pertaining to Fourteenth Amendment Due Process was discussed in the February Order and will not be restated herein. Dkt. No. 47 at 10-12. In the February 8, 2017 Report-Recommendation & Order, the undersigned concluded that Scott failed to plead facts suggesting that deprivation of access to religious services was an atypical or significant hardship. Id. at 10-11. The undersigned further noted that even assuming that Scott pleaded a protected liberty interest, the Complaint did not include facts explaining how Defendants violated the procedural process requirements of the Fourteenth Amendment. Dkt. No. 47 at 11. The Court also dismissed any potential substantive due process claim holding:

Plaintiffs have not plead facts suggesting that defendants acted in a manner that was "shocking" in a constitutional sense. Morever, Plaintiffs' substantive due process claim must be dismissed on the additional ground that it is duplicative of Plaintiff's First Amendment free exercise claim. See Rother v. NYS Dep't of Corrs. and Cmty. Supervision, 970 F. Supp. 2d 78, 100 (N.D.N.Y. 2013) ("[S]ubstantive-due-process claims must be dismissed where they are 'merely duplicative of

2018 WL 3130670

claims explicitly protected under other constitutional sources.' ") (quoting Roman v. Velleca, 2012 WL 4445475, *10 (D. Conn. Sept. 25, 2012) ).

Dkt. No. 47 at 12.

Despite being afforded the opportunity to amend the Complaint, Scott has failed to plead facts to cure the deficiencies in the prior pleading in this regard. For the reasons set forth in the February 8, 2017 Report-Recommendation & Order, it is recommended that Scott's Fourteenth Amendment Due Process claims be dismissed.

### D. Equal Protection

In the February 8, 2017 Report-Recommendation & Order, adopted by the Court in the March 17, 2017 Decision & Order, the undersigned dismissed Scott's Equal Protection claims holding:

> ... Plaintiffs allege, in conclusory fashion, that defendants violated their equal protection rights. Plaintiffs failed to identify any similarly situated inmates who were treated differently based upon their religious beliefs. Accordingly, defendants' motion to dismiss on this ground should be granted. See Phillips v. Girdich, 408 F.3d 124, 129 (2d Cir. 2005) ("[t]o prove a violation of the Equal Protection Clause ... a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional discrimination").

Dkt. No. 47 at 13.

"To establish an equal protection cause of action, a plaintiff must prove that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination directed at an identifiable or suspect class." Giano v. Senkowski, 54 F.3d 1050, 1057 (2d Cir. 1995). If a court finds such discrimination, "the reasonableness of the prison rules and policies must be examined to determine whether distinctions made between religious groups in prison are reasonably related to legitimate penological interests." Benjamin v. Coughlin, 905 F.2d 571, 574 (2d Cir. 1990).

In the Amended Complaint, Scott alleges:

> It is interesting to note that the Catholic Priest was allowed to perform his Ash Wednesday and Palm Sunday Services, also Chaplain Smith was allowed to perform his services for the Christians, but the Muslims was [sic] denied their services.

> An inference of discrimination may be found where the plaintiffs is [sic] treated less favorably than similarly situated group not in the plaintiff's protected group or class.

Am. Compl. at 4, 9, 19. Plaintiff also states that defendant Fichette "implemented a policy cancelling all programs after the morning rec. run, this cancellation included Jummu'ah services." Id. at 5.

**\*5** Defendants claim that Scott's allegations pertain to "services on other occasions at other times of the year," and that whether inmates of other faiths were permitted to attend religious services at other times of the year is not relevant because those inmates would not be similarly situated to plaintiff. Dkt. No. 60-1 at 9, n.5. Further, defendants argue that plaintiff has not alleged that he was treated differently from similarly-situated inmates because his Amended Complaint indicates that "all programs" were cancelled after morning recreation, not just Jummu'ah services. Id. at 9.

At this juncture, drawing all reasonable inferences in Scott's favor as the nonmoving party and construing the Amended Complaint liberally under the special solicitude due to the pro se plaintiff, the Court declines to adopt defendants' constrictive interpretation. See Barnes v. Ross, 926 F. Supp. 2d 499, 507 (S.D.N.Y. 2013) ("It may be that the facts are not as [the plaintiff] has pleaded—[...]—but that is not the question currently before the Court on defendants' motion to dismiss."). Although plaintiff states that defendant Fichette "cancell[ed] *all programs* after the morning rec. run, this cancellation included Jummu'ah," it is

Scott v. Uhler, Not Reported in Fed. Supp. (2018)
Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 335 of 353
2018 WL 3130670

arguable under these facts that Jummu'ah was the only religious service cancelled, as it is possible that other inmates attended their religious services earlier in the day on December 25, 2015. Compl. at 5. Although defendants argue that it is not relevant if inmates of other faiths were permitted to attend services on days other than December 25, 2015, a fair reading of plaintiff's Amended Complaint suggests that inmates of Christian faith were permitted to attend services on December 25. See Am. Compl. at 4 ("... also Chaplain Smith was allowed to perform his services for the Christians, but the Muslims was [sic] denied their services."). Based on the facts provided, and in absence of any affidavits or other evidence from defendants supporting otherwise, it cannot be said that no reasonable fact-finder could conclude that plaintiff was treated differently from other similarly-situated inmates if inmates of other faiths were permitted to attend religious services on December 25, 2015.

Upon review of the Amended Complaint, the Court finds that Scott has sufficiently alleged a claim of discrimination in violation of the Equal Protection clause with facts suggesting that similarly-situated inmates were permitted to attend religious services on December 25, 2015 while Muslim inmates intentionally were denied the right to hold and attend services. See, e.g., Guillory v. Fischer, No. 9:12-CV-00280 (LEK), 2013 WL 1294626, at *16 (N.D.N.Y. Mar. 7, 2013), report and recommendation adopted, 2013 WL 1293821 (N.D.N.Y. Mar. 28, 2013) (finding that the plaintiff sufficiently pleaded an equal protection claim based upon the denial of Jewish services on one day because "Jewish, Muslim, Catholic and Protestant inmates are similarly situated in that they are all religious groups seeking to utilize prison facilities to hold religious services, and Plaintiff alleges that the Defendants facilitated the use of prison facilities for all of the other religious groups except the Jewish inmates for purely discriminatory reasons."); Giano v. Senkowski, 54 F.3d 1050, 1057 (2d Cir. 1995) ("To prove an equal protection violation, claimants must prove purposeful discrimination directed at an identifiable or suspect class."). Although it may be the case that Christian inmates were not permitted to attend services on December 25, 2015, based on the record presently before the Court, this allegation, *if proven true*, could arguably state an Equal Protection violation.

 **\*6** Because Scott has sufficiently pleaded that he was similarly situated to other prison groups, yet treated differently, dismissal is appropriate only if defendants can show that the decision to cancel Jumm'ah services was "reasonably related to legitimate penological interests." Defendants do not offer in their Motion to Dismiss any explanation or rational basis to justify the decision to cancel Jumm'ah services. See Panayoty v. Annuci, 898 F. Supp.2d 469, 488 (N.D.N.Y. 20120) (noing that, even where a plaintiff can prove that two groups are similarly situated, the different treatment could be warranted if the defendant can demonstrate that the distinctions are reasonably related to legitimate penological interests); Dkt. No. 60. At this juncture, Scott has adequately pleaded an Equal Protection claim to withstand a motion to dismiss. Accordingly, it is recommended that defendants' motion be denied on this ground.

### III. Conclusion

**WHEREFORE**, based on the findings set forth above, it is hereby:

**RECOMMENDED**, that Defendants' motion to dismiss based upon Fed. R. Civ. P. 12(b)(6) (Dkt. No. 60) be:

 1. **GRANTED**, as to Scott's First Amendment claims;

 2. **GRANTED**, as to Scott's Fourteenth Amendment Due Process claims; and

 3. **DENIED**, as to Scott's Fourteenth Amendment Equal Protection claims; and it is further

**ORDERED**, that copies of this Report-Recommendation and Order be served on the parties in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have **fourteen** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. See Roldan v. Racette, 984 F.2d 85, 89

Scott v. Uhler, Not Reported in Fed. Supp. (2018)

2018 WL 3130670

Case 9:22-cv-00638-DNH-TWD   Document 58   Filed 02/28/25   Page 336 of 353

(2d Cir. 1993) (citing <u>Small v. Secretary of Health and Human Services</u>, 892 F.2d 15 (2d Cir. 1989) ); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

**IT IS SO ORDERED**.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 3130670

---

**End of Document**                                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Scott v. Uhler, Not Reported in Fed. Supp. (2018)

2018 WL 3130592

2018 WL 3130592
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

James N. SCOTT, Plaintiff,

v.

D. UHLER, et al., Defendants.

9:16-CV-403 (TJM/CFH)
|
Signed 06/25/2018

**Attorneys and Law Firms**

James N. Scott, Attica, NY, pro se.

Ryan W. Hickey, New York State Attorney General, Albany, NY, for Defendants.

## DECISION & ORDER

Thomas J. McAvoy, Senior, U.S. District Judge

**\*1** The Court referred this 42 U.S.C. § 1983 case, which alleges violations of Plaintiff's First and Fourteenth Amendment rights, to the Hon. Christian F. Hummel, United States Magistrate Judge, for a Report-Recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).

The April 2, 2018, Report-Recommendation, dkt. # 63, recommends that the Defendants' motion to dismiss Plaintiff's Amended Complaint be granted in part and denied in part. Magistrate Judge Hummel recommends that the motion be granted with respect to Plaintiff's First Amendment and Fourteenth Amendment due process claims, and denied with respect to Plaintiff's Fourteenth Amendment equal protection claim.

Plaintiff filed timely objections to the Report-Recommendation. When objections to a magistrate judge's Report-Recommendation are filed, the Court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." See 28 U.S.C. § 636(b)(1). After such a review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." Id.

Having reviewed the record *de novo* and considered the issues raised in the Plaintiff's objections, the Court has determined to accept and adopt the recommendation of Magistrate Judge Hummel for the reasons stated in the Report-Recommendation.

Accordingly,

The Report-Recommendation of Magistrate Judge Hummel, dkt. # 63, is hereby **ACCEPTED** and **ADOPTED**. Plaintiff's objections, dkt. # 64, are hereby **OVERRULED**. Defendants' motion to dismiss, dkt. # 60, is hereby **GRANTED** in part and **DENIED** in part, as follows:

    1. The motion is **GRANTED** with respect to Plaintiff's First Amendment claims, and those claims are hereby **DISMISSED**;

**Scott v. Uhler, Not Reported in Fed. Supp. (2018)**
2018 WL 3130592

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 338 of 353

2. The motion is **GRANTED** with respect to Plaintiff's Fourteenth Amendment due process claims, and those claims are hereby **DISMISSED**; and

3. The motion is **DENIED** with respect to Plaintiff's Fourteenth Amendment equal protection claims.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2018 WL 3130592

---

    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

---

**WESTLAW**    © 2025 Thomson Reuters. No claim to original U.S. Government Works.    2

Israel v. City of Syracuse, Not Reported in Fed. Supp. (2021)

2021 WL 7161914

2021 WL 7161914

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

Bishop Abraham S. ISRAEL; and Jesus Christ Ministries, Plaintiffs,

v.

CITY OF SYRACUSE; Sgt. Carleo, Syracuse Police Officer; Sisley, Syracuse Police Officer; Wolfe, Syracuse Police Officer; Kimpel, Syracuse Police Officer; Marcus DeBottis, Jr., Syracuse Police Officer; Lago, Syracuse Police Officer; and Ranette Releford, CRB Administrator, Defendants.

5:21-CV-0915 (DNH/ML)
|
Signed 12/09/2021

**Attorneys and Law Firms**

ABRAHAM S. ISRAEL, Pro se Plaintiff, 1409 South McBride Street, Syracuse, New York 13202.

**ORDER and REPORT-RECOMMENDATION**

MIROSLAV LOVRIC, United States Magistrate Judge

**\*1** The Clerk has sent this *pro se* Amended Complaint (Dkt. No. 5) and motion for appointment of counsel (Dkt. No. 6) filed by Bishop Abraham S. Israel ("Plaintiff") to the Court for review. For the reasons discussed below, I (1) recommend that Plaintiff's Amended Complaint (Dkt. No. 5) be (a) accepted in part for filing, and (b) dismissed in part without leave to amend, and (2) order that Plaintiff's motion for appointment of counsel (Dkt. No. 6) be denied without prejudice.

**I. BACKGROUND**

On August 13, 2021, Plaintiff[1] commenced this action by filing a Complaint and a motion to proceed *in forma pauperis*. (Dkt. Nos. 1, 2.)

[1]     Plaintiff, who is not an attorney, cannot represent other plaintiffs. Although parties have a statutory right to "plead and conduct their own cases," 28 U.S.C. § 1654, unlicensed laypersons may not "represent anyone else other than themselves." *Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007) (internal quotation marks omitted); *see also Guest v. Hansen*, 603 F.3d 15, 20 (2d Cir. 2010) ("A person who has not been admitted to the practice of law may not represent anybody other than himself."). The Amended Complaint names two plaintiffs—Abraham S. Israel and Jesus Christ Ministries. (Dkt. No. 5 at 1.) However, the IFP application is signed solely by Plaintiff. (Dkt. No. 2.) Accordingly, I reviewed this action with Abraham S. Israel as the sole plaintiff. *See Yerushalayim v. Liecthung*, 19-CV-4101, 2019 WL 3817125, at *2 (E.D.N.Y. Aug. 13, 2019) (reviewing the action as brought by sole plaintiff, Ben-Siyon Ish Yerushalayim, because he was the only signatory on the complaint and IFP application and, as an unlicensed layperson, was incapable of representing the other named plaintiffs).

On September 16, 2021, the undersigned issued an Order and Report-Recommendation, which (1) granted Plaintiff's application for leave to proceed *in forma paupers*, and (2) recommended that the Court (a) accept for filing Plaintiff's claims (i) that his right to free speech/religion was violated pursuant to the First Amendment and 42 U.S.C. § 1983, against Defendants Sisley and Wolfe regarding the incident at Destiny USA on July 17, 2020, (ii) of false arrest pursuant to the Fourth Amendment and 42 U.S.C. § 1983, against Defendants Sisley and Wolfe regarding the incident at Destiny USA on July 17, 2020, (iii) of unreasonable

Case 9:22-cv-00638-DNH-TWD   Document 58   Filed 02/28/25   Page 340 of 353

Israel v. City of Syracuse, Not Reported in Fed. Supp. (2021)

2021 WL 7161914

search and seizure pursuant to the Fourth Amendment and 42 U.S.C. § 1983, against Defendants Sisley and Wolfe regarding the incident at Destiny USA on July 17, 2020, (iv) of unreasonable search and seizure pursuant to the Fourth Amendment and 42 U.S.C. § 1983, against Defendant Kimpel regarding the incident on December 13, 2020, (v) of false arrest pursuant to the Fourth Amendment and 42 U.S.C. § 1983, against Defendant DeBottis regarding the incident on April 23, 2021, (vi) of unreasonable search and seizure pursuant to the Fourth Amendment and 42 U.S.C. § 1983, against Defendant DeBottis regarding the incident on April 23, 2021, and (vii) of negligence pursuant to New York common law against Defendants Carleo and Releford, (b) dismiss with leave to replead Plaintiff's claims (i) pursuant to RICO, against Defendants, (ii) that his right to equal protection was violated pursuant to the Fourteenth Amendment and 42 U.S.C. § 1983, against Defendants, (iii) that his right to free of speech/religion was violated by Defendant Carleo, pursuant to the First Amendment and 42 U.S.C. § 1983, at Destiny USA on July 17, 2020, (iv) of false arrest pursuant to the Fourth Amendment and 42 U.S.C. § 1983, against Defendant Carleo regarding the incident at Destiny USA on July 17, 2020, (v) of unreasonable search and seizure pursuant to the Fourth Amendment and 42 U.S.C. § 1983, against Defendant Carleo regarding the incident at Destiny USA on July 17, 2020, and (vi) of failure to protect against Defendant Kimpel, and (c) dismiss without leave to replead his claims of (i) dereliction of duty pursuant to 10 U.S.C. § 892, against Defendants, (ii) law enforcement misconduct pursuant to 42 U.S.C. § 14141(a) or 34 U.S.C. § 12601, against Defendant City of Syracuse, (iii) harassment in the second degree pursuant to N.Y. Penal Law § 240.26(3), against Defendants, (iv) unlawful imprisonment pursuant to N.Y. Penal Law § 135.05, against Defendants, (v) menacing in the second degree pursuant to N.Y. Penal Law § 120.14(1), against Defendants, (vi) robbery in the second degree pursuant to N.Y. Penal Law § 160.10(1), against Defendants, (vii) criminal tampering in the third degree pursuant to N.Y. Penal Law § 145.14, against Defendants, (viii) kidnapping in the first degree pursuant to N.Y. Penal Law § 135.25(1), against Defendants, and (ix) disruption or disturbance of religious service, burial, or memorial service pursuant to N.Y. Penal Law § 240.21, against Defendants.

**\*2** On October 12, 2021, Plaintiff filed an amended complaint as of right pursuant to Fed. R. Civ. P. 15(a)(1) and a motion for appointment of counsel. (Dkt. Nos. 5, 6.)

On October 13, 2021, United States District Judge David N. Hurd issued an order adopting the undersigned's Order and Report-Recommendation dated September 16, 2021. (Dkt. No. 7.)

## II. ALLEGATIONS OF THE AMENDED COMPLAINT

Construed as liberally as possible, the Amended Complaint alleges that Plaintiff's civil rights were violated by Defendants City of Syracuse, Sgt. Carleo, Sisley, Wolfe, Kimpel, Marcus DeBottis, Jr., Lago, and Ranette Releford (collectively "Defendants") during his interactions with them. (*See generally* Dkt. No. 5 [Am. Compl.].)

The Amended Complaint appears to assert virtually the same factual allegations as the Complaint did, but with additional legalese. More specifically, the Amended Complaint alleges that on or about July 17, 2020, Plaintiff was at a mall in Syracuse, New York ("Destiny USA") preaching the gospel, when Defendants Sisley and Wolfe approached him, escorted him to a private room, detained him for approximately twenty minutes, then escorted him out of Destiny USA, and served him with an appearance ticket—which was ultimately dismissed. (*Id.* at 11-16.) Plaintiff alleges that during this incident, Defendants Sisley and Wolfe took—without a warrant—Plaintiff's passport, "papers," and $10.00. (*Id.*) Plaintiff alleges that he reported this incident to the Citizen's Review Board ("CRB"), was contacted by Defendant Carleo for an in-person interview in August 2020, but that Defendant Carleo denied Plaintiff a "[f]air [h]earing on the allegations against Carleo's co-workers ... and was negligent by denying the Plaintiff the relief request[ed]" and thus, "knowingly and unlawfully participated in the racketeering activity." (*Id.* at 15-16.)

Plaintiff alleges that on December 13, 2020, the Syracuse Police Department was summoned to 1409 South McBride Street, Syracuse, New York 13202, which is Plaintiff's church ("Jesus Christ Ministries"). (*Id.* at 16-18.) Plaintiff alleges that Defendant Kimpel responded, entered Jesus Christ Ministries without a warrant, searched and seized Plaintiff's sword, and then made Plaintiff and his wife, Natalia Israel, lock up and leave the premises. (*Id.*) Plaintiff alleges that approximately one hour later, at an unidentified location, by an unidentified individual, Plaintiff was assaulted and suffered minor contusions to his face, a swollen, black eye, and was hospitalized. (*Id.*) Plaintiff alleges that he called the Syracuse Police Department, Defendant

2021 WL 7161914

Kimpel again responded, Plaintiff reported to Defendant Kimpel who assaulted him, and Defendant Kimpel informed Plaintiff that a warrant would be issued for that person's arrest. (*Id.*) Plaintiff alleges that on December 14, 2020, he called the Syracuse Police Department and discovered that Defendant Kimpel wrote a false report for a missing person, instead of the assault on Plaintiff. (*Id.* at 9-10.)

Plaintiff alleges that on April 23, 2021, he and his wife were engaged in an "alleged [d]omestic dispute" and Defendant DeBottis was the responding officer. (*Id.* at 18-20.) Plaintiff alleges that when Defendant DeBottis arrived on scene, Plaintiff was approximately one block away near his vehicle. (*Id.*) Plaintiff alleges that, without a warrant, Defendant DeBottis approached Plaintiff, placed him under arrest, placed handcuffs on him, seized his personal possessions, and took him to jail. (*Id.*) Plaintiff alleges that he spent seventeen days in jail as a result of this incident. (*Id.*)

 **\*3** Plaintiff alleges that on April 23, 2021, he informed the "City of Syracuse (Erica T. Clarke) ... that his private property was confiscated [without] a warrant" but that, despite this information, he was remanded to jail for seventeen days. (*Id.* at 20-21.)

Plaintiff alleges that on August 12, 2021, he called the police because his wife threatened to shoot him at Jesus Christ Ministries. (*Id.* at 21-22.) Plaintiff alleges that Defendant Lago responded to the call and when he arrived, Plaintiff was alone. (*Id.*) Plaintiff alleges that he signed an accusatory instrument against his wife and indicated that he wanted to press charges against her. (*Id.*) Plaintiff alleges that Defendant Lago informed him that a warrant would be issued for Ms. Israel's arrest. (*Id.*) Plaintiff alleges that after praying, he changed his mind about pressing charges, so he called the Syracuse Police Department and was informed that there was "no trace of his accusatory instrument he had signed ... and there was no record of his formal complaint." (*Id.*)

Plaintiff alleges that on July 27, 2020, he submitted a complaint to the CRB about the unlawful conduct of Defendants Sisley and Wolfe at Destiny USA on July 17, 2020, and that on December 23, 2020, he submitted a complaint to the CRB about the unlawful conduct of Defendant Kimpel on December 13, 2020. (*Id.* at 22-23.) However, Plaintiff alleges that Defendant Releford, the CRB administrator, has failed to provide him with any recourse or means to address the unlawful conduct. (*Id.*)

Plaintiff alleges that he submitted numerous complaints to Syracuse Police Chief Kenton Buckner and received responses but that Chief Buckner has been negligent in his response to the misconduct of Syracuse police officers. (*Id.* at 23-24.)

Based on these factual allegations, the Complaint appears to assert[2] the following fourteen causes of action: (1) a claim against Defendants pursuant to the Racketeer Influenced and Corrupt Organizations statute ("RICO"), 18 U.S.C. Chapter 96; (2) a claim against Defendants for dereliction of duty pursuant to 10 U.S.C. § 892; (3) a claim against Defendants for law enforcement misconduct pursuant to 42 U.S.C. § 14141(a); (4) a claim that Plaintiff's right to equal protection of the laws was violated by Defendants pursuant to the Fourteenth Amendment and 42 U.S.C. § 1983; (5) a claim that Defendants Sisley and Wolfe violated Plaintiff's rights of free speech and freedom of religion pursuant to the First Amendment and 42 U.S.C. § 1983, related to the incident on July 17, 2020; (6) a claim of false arrest against Defendants Sisley and Wolfe in violation of the Fourth Amendment and 42 U.S.C. § 1983, related to the incident on July 17, 2020; (7) a claim of illegal search and seizure against Defendants Sisley and Wolfe in violation of the Fourth Amendment and 42 U.S.C. § 1983, related to the incident on July 17, 2020; (8) a claim of negligence against Defendant Carleo related to Plaintiff's CRB complaint regarding the incident that occurred at Destiny USA on July 17, 2020; (9) a claim of illegal search and seizure against Defendant Kimpel pursuant to the Fourth Amendment and 42 U.S.C. § 1983, related to the incident on December 13, 2020; (10) a claim that Defendant Kimpel failed to protect Plaintiff as a victim of a crime related to the incident on December 13, 2020; (11) a claim of false arrest against Defendant DeBottis pursuant to the Fourth Amendment and 42 U.S.C. § 1983, related to the incident on April 23, 2021; (12) a claim of illegal search and seizure against Defendant DeBottis pursuant to the Fourth Amendment and 42 U.S.C. § 1983, related to the incident on April 23, 2021; (13) a claim of negligence against Defendant Releford for failing to provide Plaintiff "recourse" regarding his CRB complaints; and (14) a claim of defamation/slander/libel against Defendants. (*See generally* Dkt. No. 5.) As relief, Plaintiff seeks an injunction against the City of Syracuse prohibiting any "future Dereliction of Duty" and $3,120,000.00 in damages. (*Id.*)

Case 9:22-cv-00638-DNH-TWD   Document 58   Filed 02/28/25   Page 342 of 353

Israel v. City of Syracuse, Not Reported in Fed. Supp. (2021)

2021 WL 7161914

2  The Amended Complaint (Dkt. No. 5) is brimming with legalese and references to several statutes and purported causes of action without any factual allegations associated that would plausibly suggest a claim. For example, the Amended Complaint lists "40 U.S.C. § 319 Grant of easements" as the ninth cause of action. (Dkt. No. 5 at 6.) "Now codified as 40 U.S.C. section 1314, section 319 permitted the federal government to grant states an easement over property held by the United States and also allowed the federal government to relinquish legislative jurisdiction over the easement area." *State v. Dodson*, 143 Wash. App. 872, 879 (Wash. Ct. App. 2008). Plaintiff's Amended Complaint and Complaint do not appear to allege facts plausibly suggesting any connection with state easements. As a result, based on Plaintiff's factual allegations and construing the Complaint liberally, the Court gleaned the fourteen causes of action cited herein.

## III. LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

 *4  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

"In reviewing a complaint ... the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

"[E]xtreme caution should be exercised in ordering sua sponte dismissal of a ... complaint before the adverse party has been served and [the] parties ... have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

The Court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a plaintiff's complaint to proceed. *See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Aguilar v. United States*, 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

## IV. ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that it be accepted in part for filing and dismissed in part.

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 343 of 353
Israel v. City of Syracuse, Not Reported in Fed. Supp. (2021)
2021 WL 7161914

## A. RICO Claims [3]

3    Under General Order #14 and N.D.N.Y. L.R. 9.2, a party who files a RICO claim must also file a Civil RICO statement within thirty days after the filing date of the complaint. Thirty days after the filing of Plaintiff's Complaint was September 12, 2021. Thirty days after the filing of Plaintiff's Amended Complaint was November 11, 2021. Despite this deficiency being highlighted in the Court's Order and Report-Recommendation dated September 16, 2021, Plaintiff has still noted filed a Civil RICO statement. (*See generally* docket sheet.)

**\*5** As set forth in the Court's Order and Report-Recommendation dated September 16, 2021, to allege an enterprise for purposes of a RICO claim, a plaintiff must allege an "ongoing organization, formal or informal" and that "the various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583 (1981). In particular, a RICO enterprise must be "an entity separate and apart from the pattern of activity in which it engages." *Turkette*, 452 U.S. at 583.

In addition, as stated in the Order and Report-Recommendation dated September 16, 2021, claims to enforce RICO cannot be pursued against Defendant City of Syracuse and the individual Defendants to the extent that they are sued in their official capacities, because the municipality cannot form the requisite criminal intent to establish a predicate act. *Naples v. Stefanelli*, 972 F. Supp. 2d 373, 389 (E.D.N.Y. 2013); *see Liang v. City of New York*, 10-CV-3089, 2013 WL 5366394, at *12 (E.D.N.Y. Sept. 24, 2013) (collecting cases) ("[A]s many previous courts in this Circuit have held, 'a municipal corporation is incapable of having the criminal intent to support RICO's predicate offense requirement.' ").

With respect to Plaintiff's claims against Defendants in their individual capacities, he fails to allege facts plausibly suggesting the existence of an "enterprise" within the meaning of RICO. Although Plaintiff's claims are against individuals employed by the City of Syracuse, he fails to plead any facts plausibly suggesting that Defendants constitute, control, or participate in any enterprise with a distinguishable existence or purpose. *See Mackin v. Auberger*, 59 F. Supp. 3d 528, 543 (W.D.N.Y. 2014) ("Plaintiff fails to allege that [the defendants] had a common or shared purpose or that they functioned as a continuing unit."). In addition, the Amended Complaint fails to allege any facts plausibly suggesting that Defendants functioned as a continuing unit. Plaintiff alleges in a conclusory fashion that "the following named Defendant(s) are an 'ongoing organization, formal or informal' and ... the stated Defendant(s) herein are a corrupt enterprise and/or entity separate and/or apart from the municipal corporation." (Dkt. No. 5 at 9.) However, Plaintiff fails to allege any facts plausibly suggesting those elements of a RICO claim. "Without such an enterprise, a RICO claim like [Plaintiff]'s must fail." *Liang*, 2013 WL 5366394, at *13; *see also Peterson v. City of New York*, 2012 WL 75029, at *3-4 (S.D.N.Y. January 9, 2012) (dismissing the plaintiff's RICO claim because "[t]he existence of a RICO enterprise is a necessary element for liability" and the plaintiff failed to allege facts plausibly suggesting the existence of a RICO enterprise).

As a result, I recommend that Plaintiff's RICO claim be dismissed.

## B. Dereliction of Duty

As set forth in the Court's Order and Report-Recommendation dated September 16, 2021, 10 U.S.C. § 892, is a violation of the Uniform Code of Military Justice, and is wholly inapplicable here. As a result, I recommend that Plaintiff's claim for dereliction of duty be dismissed.

## C. Law Enforcement Misconduct

As set forth in the Court's Order and Report-Recommendation dated September 16, 2021, 42 U.S.C. § 14141, [4] contains no private right of action. *See Maretta-Brooks v. Hanuszczak*, 18-CV-0426, 2018 WL 2021480, at *7 (N.D.N.Y. Apr. 26, 2018) (Peebles, M.J.) (citing 34 U.S.C. § 12601(b)) ("Under 34 U.S.C. § 12601, only the United States Attorney General has the authority to bring a civil action."); *see also Steinhardt v. Bernardsville Police Dep't*, 20-2825, 2021 WL 3929321, at *2 n.2 (3d Cir. Sept. 2, 2021) ("[The plaintiff] also referenced ...34 U.S.C. § 12601, but [that] provision[ ] contain[s] no private right of

Israel v. City of Syracuse, Not Reported in Fed. Supp. (2021)

2021 WL 7161914

Case 9:22-cv-00638-DNH-TWD   Document 58   Filed 02/28/25   Page 344 of 353

action."); *Gumber v. Fagundes*, 21-CV-3155, 2021 WL 3563065, at *2 (N.D. Cal. Aug. 11, 2021) ("[C]laims under ...34 U.S.C. § 12601 ... must be dismissed because there is no private right of action."). As a result, I recommend that this claim be dismissed.

4      Effective September 1, 2017, that section was recodified as 34 U.S.C. § 12601.

### D. Equal Protection Claim

**\*6**  As set forth in the Court's Order and Report-Recommendation dated September 16, 2021, Plaintiff fails to allege any facts plausibly suggesting that he was treated differently from similarly situated individuals or any other individuals. Accordingly, I recommend that Plaintiff's Fourteenth Amendment Equal Protection claims be dismissed for failure to state a claim upon which relief may be granted.

### E. First Amendment Claims

Out of an abundance of caution, mindful of the Second Circuit's instruction that a *pro se* plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff*, 537 F.3d at 191, and without expressing an opinion as to whether Plaintiff can withstand a properly filed motion to dismiss or for summary judgment, I recommend that a response be required to Plaintiff's First Amendment claims against Defendants Sisley and Wolfe.

### F. Fourth Amendment

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "By virtue of its incorporation through the Fourteenth Amendment's Due Process Clause, the Fourth Amendment is binding on states and, relevant here, municipalities such as" the City of Syracuse. *Tsinberg v. City of New York,* 20-CV-0749, 2021 WL 1146942, at *10 (S.D.N.Y. Mar. 25, 2021) (citing *City of Ontario v. Quon*, 560 U.S. 746, 750 (2010)). It "applies in the civil context as well" as the criminal. *Sodal v. Cook Cnty.*, 506 U.S. 56, 57 (1992) (collecting cases).

#### 1. False Arrest

Out of an abundance of caution, mindful of the Second Circuit's instruction that a *pro se* plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff*, 537 F.3d at 191, and without expressing an opinion as to whether Plaintiff can withstand a properly filed motion to dismiss or for summary judgment, I recommend that a response be required to Plaintiff's false arrest claims against Defendants (1) Sisley and Wolfe regarding the incident at Destiny USA on July 17, 2020, and (2) DeBottis regarding the incident on April 23, 2021.

#### 2. Search and Seizure Claims

Out of an abundance of caution, mindful of the Second Circuit's instruction that a *pro se* plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff*, 537 F.3d at 191, and without expressing an opinion as to whether Plaintiff can withstand a properly filed motion to dismiss or for summary judgment, I recommend that a response be required to Plaintiff's Fourth Amendment deprivation of property claim against Defendants (1) Sisley and Wolfe regarding the incident at Destiny USA on July 17, 2020, (2) Kimpel regarding the incident on December 13, 2020, and (3) DeBottis regarding the incident on April 23, 2021.

### G. Failure to Protect

Israel v. City of Syracuse, Not Reported in Fed. Supp. (2021)

2021 WL 7161914

Plaintiff appears to allege that Defendant Kimpel failed to protect him because Defendant Kimpel did not secure an arrest warrant for the person who assaulted Plaintiff on December 13, 2020. (Dkt. No. 5 at 16-18.) However, a police officer's alleged failure to protect one citizen from another does not violate due process, absent the existence of a special relationship between the police officer and the victim such as a custodial relationship (which is not present here). *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195-96 (1989); *Ying Jing Gan v. City of New York*, 996 F.2d 522, 533 (2d Cir. 1993).

As a result, I recommend that Plaintiff's failure to protect claim be dismissed for failure to state a claim.

### H. State Law Negligence Claims

**\*7** "In order to prevail on a negligence claim, 'a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom.' " *Pasternack v. Lab. Corp. of Am. Holdings*, 27 N.Y.3d 817, 825 (N.Y. 2016) (quoting *Solomon v. City of New York*, 66 N.Y.2d 1026, 1027 (N.Y. 1985)).

Out of an abundance of caution, mindful of the Second Circuit's instruction that a *pro se* plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff*, 537 F.3d at 191, and without expressing an opinion as to whether Plaintiff can withstand a properly filed motion to dismiss or for summary judgment, I recommend that a response be required to Plaintiff's negligence claims against Defendants Carleo and Releford.

### I. State Law Defamation/Libel/Slander

Plaintiff appears to assert claims of defamation, libel, and slander against Defendants.

"Defamation, consisting of the twin torts of libel and slander, is the invasion of the interest in a reputation and good name." *Hogan v. Herald Co.*, 84 A.D.2d 470, 474 (N.Y. App. Div. 4th Dep't 1982), *aff'd* 58 N.Y.2d 630 (N.Y. 1982). "Generally, spoken defamatory words are slander; written defamatory words are libel." *Albert v. Loksen*, 239 F.3d 256, 264 (2d Cir. 2001).

"Under New York law a [libel] defamation plaintiff must establish five elements: (1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability." *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019). In addition, "[u]nder New York law, to state a cause of action for slander, the plaintiff must allege facts plausibly suggesting (1) a defamatory statement of fact, (2) that is false, (3) published to a third party, (4) of and concerning the plaintiff, (5) made with the applicable level of fault on the part of the speaker, (6) that causes either special harm or constitutes slander per se, and (7) that is not protected by privilege." *Ryle v. Rehrig Pac. Co.*, 19-CV-1478, 2020 WL 6196144, at \*8 (N.D.N.Y. Oct. 22, 2020) (Suddaby, C.J.) (citing *Albert*, 239 F.3d at 265-66).

Plaintiff fails to allege facts plausibly suggesting any of the elements for a defamation claim. As a result, I recommend that Plaintiff's defamation claims be dismissed for failure to state a claim. [5] *See Bey ex rel. Dickerson v. Kelly*, 20-CV-2399, 2020 WL 3414612, at \*3 (E.D.N.Y. June 22, 2020) (dismissing the plaintiff's defamation claim where he failed to allege facts in support of the five elements of defamation).

[5] The Court also notes that Plaintiff's defamation claims may be time-barred. The statute of limitations for defamation claims under New York law is one year. N.Y. C.P.L.R. § 215(3). Some of the allegations in Plaintiff's Amended Complaint relate to incidents that occurred more than one year before the initiation of this action.

### J. Municipal Claims

As set forth above in Parts IV.A., B., C., and D., of this Order and Report-Recommendation, I recommend that all claims against Defendant City of Syracuse be dismissed. However, in the alternative, I also recommend that the claims against Defendant City of Syracuse—a municipality—be dismissed for failure to state a claim against a municipal entity for the reasons set forth in the Court's Order and Report-Recommendation dated September 16, 2021.

Israel v. City of Syracuse, Not Reported in Fed. Supp. (2021)

2021 WL 7161914

### K. Claims Against Defendants in Their Official Capacities

**\*8** "An official capacity suit against a municipal employee is a suit against the municipality itself." *Pittman v. Billings*, 20-CV-0422, 2020 WL 2079440, at \*9 (N.D.N.Y. Apr. 30, 2020) (Baxter, M.J.), *report and recommendation adopted by* 2020 WL 2574631 (N.D.N.Y. May 21, 2020) (Sharpe, J.). However, for the reasons set forth in Part IV.J. of this Order and Report-Recommendation, I find that Plaintiff in this case has alleged no facts that would state a claim against the City of Syracuse.

As a result, I recommend that to the extent Plaintiff attempts to assert claims against Defendants in their official capacities, those claims are dismissed.

## V. OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at \*1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.). [6]

[6]    *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

In this case, because the Court has already afforded Plaintiff an opportunity to amend the Complaint, I find that it need not grant Plaintiff another opportunity to amend. *See Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 168 (2d Cir. 2003) (quoting *Dluhos v. Floating & Abandoned Vessel, Known as "New York,"* 162 F.3d 63, 69 (2d Cir. 1998)) (finding that the "District Court did not abuse its discretion in denying [the plaintiff] leave to amend the complaint because there was a 'repeated failure to cure deficiencies by amendments previously allowed.' "); *Hall v. Clinton Cnty.*, 18-CV-1405, 2020 WL 1923236, at \*7 (N.D.N.Y. Apr. 21, 2020) (Suddaby, C.J.) (dismissing without leave to amend the *pro se* plaintiff's amended complaint where the court "already afforded Plaintiff an opportunity to amend his Complaint"); *Carrasco v. Annucci*, 17-CV-0246, 2017 WL 6492010, at \*2 (N.D.N.Y. Dec. 15, 2017) (Suddaby, C.J.) (dismissing a complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) without leave to amend "because plaintiff has already had two opportunities to amend the complaint"); *Salinger v. Projectavision, Inc.*, 972 F. Supp. 222, 236 (S.D.N.Y. 1997) ("Three bites at the apple is enough.").

## VI. MOTION FOR APPOINTMENT OF COUNSEL

**\*9** Plaintiff has also submitted a request for appointment of counsel. (Dkt. No. 6.)

In *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335 (2d Cir. 1994), the Second Circuit reiterated the factors that a court must consider in ruling upon such a motion. In deciding whether to appoint counsel, the court should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider a number of other factors in making its determination. *Terminate Control*, 28 F.3d at 1341 (citing *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986)).

Israel v. City of Syracuse, Not Reported in Fed. Supp. (2021)

2021 WL 7161914

Before evaluating a request for appointment of counsel, a party must first demonstrate that he is unable to obtain counsel through the private sector or public interest firms. *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 173-74 (2d Cir 1989) (citing *Hodge*, 802 F.2d at 61).

Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin*, 114 F.3d 390, 392-93 (2d Cir. 1997). Instead, a number of factors must be carefully considered by the court in ruling upon such a motion. As a threshold matter, as noted above, the court should ascertain whether the indigent's claims seem likely to be of substance. If so, the court should then consider:

> The indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control*, 28 F.3d at 1341 (quoting *Hodge*, 802 F.2d at 61). This is not to say that all, or indeed any, of these factors are controlling in a particular case. Rather, each case must be decided on its own facts. *Velasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. 1995) (McAvoy, C.J.) (citing *Hodge*, 802 F.2d at 61).

For purposes of Plaintiff's application, the Court will assume, without deciding, that the case may be of substance. Plaintiff's motion fails to make the requisite showing that he has been unable to obtain counsel through the private sector or public interest firms. (*See generally* Dkt. No. 6.) Plaintiff indicates that he contacted Everett Stern, who is the "CEO/Intelligence Director" of Tactical Rabbit Inc. (Dkt. No. 6 at ¶ 2.) There is no indication that Mr. Stern is an attorney licensed to practice in the United States District Court for the Northern District of New York, and a review of the attorney database does not indicate that he is. [7]

[7]     https://www.nynd.uscourts.gov/attorney-information-lookup last visited December 8, 2021.

In addition, a review of the issues in dispute are not overly complex. This case is early in the litigation process, but it appears to the Court as though, to date, Plaintiff has been able to effectively litigate this action.

While it is possible that there will be conflicting evidence implicating the need for cross-examination at the time of the trial of this matter, as is the case in many actions brought by *pro se* litigants, "this factor alone is not determinative of a motion for appointment of counsel." *Velasquez*, 899 F. Supp. at 974. The Court is unaware of any special reason why appointment of counsel *at this time* would be more likely to lead to a just determination of this litigation. Furthermore, it is highly probable that this Court will appoint trial counsel at the final pretrial conference if this case survives any dispositive motions. The Court therefore finds that, based upon the existing record in this case, appointment of counsel is unwarranted. Plaintiff may only file another motion for appointment of counsel in the event he can demonstrate in light of specific changed circumstances, consideration of the above factors warrants granting the application.

**\*10  ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for appointment of counsel (Dkt. No. 6) is **DENIED** without prejudice; and it is further respectfully

**RECOMMENDED** that Plaintiff's Amended Complaint (Dkt. No. 5) be **ACCEPTED FOR FILING** with respect to Plaintiff's claims

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 348 of 353

Israel v. City of Syracuse, Not Reported in Fed. Supp. (2021)

2021 WL 7161914

(1) That his right to free speech/religion was violated pursuant to the First Amendment and 42 U.S.C. § 1983, against Defendants Sisley and Wolfe regarding the incident at Destiny USA on July 17, 2020;

(2) Of false arrest pursuant to the Fourth Amendment and 42 U.S.C. § 1983, against Defendants Sisley and Wolfe regarding the incident at Destiny USA on July 17, 2020;

(3) Of unreasonable search and seizure pursuant to the Fourth Amendment and 42 U.S.C. § 1983, against Defendants Sisley and Wolfe regarding the incident at Destiny USA on July 17, 2020;

(4) Of unreasonable search and seizure pursuant to the Fourth Amendment and 42 U.S.C. § 1983, against Defendant Kimpel regarding the incident on December 13, 2020;

(5) Of false arrest pursuant to the Fourth Amendment and 42 U.S.C. § 1983, against Defendant DeBottis regarding the incident on April 23, 2021;

(6) Of unreasonable search and seizure pursuant to the Fourth Amendment and 42 U.S.C. § 1983, against Defendant DeBottis regarding the incident on April 23, 2021; and

(7) Of Negligence pursuant to New York common law against Defendants Carleo and Releford;

and it is further respectfully

**RECOMMENDED** that Plaintiff's Amended Complaint (Dkt. No. 5) be **DISMISSED WITHOUT LEAVE TO REPLEAD** with respect to Plaintiff's claims

(1) Pursuant to RICO, against Defendants;

(2) Dereliction of duty pursuant to 10 U.S.C. § 892, against Defendants;

(3) Law enforcement misconduct pursuant to 42 U.S.C. § 14141(a) or 34 U.S.C. § 12601, against Defendants;

(4) That his right to equal protection was violated pursuant to the Fourteenth Amendment and 42 U.S.C. § 1983, against Defendants;

(5) Of failure to protect against Defendant Kimpel;

(6) Of defamation, slander, and libel;

(7) Against Defendant City of Syracuse and the individual Defendants in their official capacities;

pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim; and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this order, report, and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.[8]

[8]    The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[9] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R.

Case 9:22-cv-00638-DNH-TWD    Document 58    Filed 02/28/25    Page 349 of 353

Israel v. City of Syracuse, Not Reported in Fed. Supp. (2021)
2021 WL 7161914

Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 9.84 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

9    If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2021 WL 7161914

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Israel v. City of Syracuse, Not Reported in Fed. Supp. (2022)

2022 WL 18587

2022 WL 18587

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

Bishop Abraham S. ISRAEL and Jesus Christ Ministries, Plaintiffs,

v.

CITY OF SYRACUSE, Sgt. Carleo, Syracuse Police Officer, Sisley, Syracuse Police Officer, Wolfe,

Syracuse Police Officer, Kimpel, Syracuse Police Officer, Marcus Debottis, Jr., Syracuse Police

Officer, Lago, Syracuse Police Officer, and Ranette Releford, CRB Administrator, Defendants.

5:21-CV-915

|

Signed 01/03/2022

**Attorneys and Law Firms**

ABRAHAM S. ISRAEL, Plaintiff, Pro Se, 1409 South McBride Street, Syracuse, NY 13202.

## <u>ORDER ON REPORT & RECOMMENDATION</u>

DAVID N. HURD, United States District Judge

**\*1** On August 13, 2021, *pro se* plaintiff Abraham S. Israel ("plaintiff") filed this action alleging that a laundry list of defendants violated his civil rights while he was preaching the gospel at a mall in Syracuse, New York. Dkt. No. 1. Plaintiff also sought leave to proceed *in forma pauperis* ("IFP application"). Dkt. No. 2.

On September 16, 2021, U.S. Magistrate Judge Miroslav Lovric granted plaintiff's IFP application and advised by Report & Recommendation ("R&R") that several of plaintiff's 42 U.S.C. § 1983 claims should survive initial review. Dkt. No. 4. This Court accepted and adopted Judge Lovric's R&R on October 13, 2021.

Notably, however, while that first R&R was pending review, plaintiff filed an amended complaint and a motion to appoint counsel. Dkt. Nos. 5, 6. On December 9, 2021, Judge Lovric denied plaintiff's motion for counsel without prejudice and advised in a second R&R that plaintiff's amended complaint be accepted for filing in part and dismissed with prejudice in part. Dkt. No. 9.

Plaintiff has not filed objections to the second R&R, and the time period in which to do so has expired. Upon review for clear error, the R&R is accepted and will be adopted. *See* FED. R. CIV. P. 72(b).

Therefore, it is

ORDERED that

1. The Report & Recommendation is ACCEPTED;

2. Plaintiff "Bishop Abraham S. Israel's" amended complaint is ACCEPTED FOR FILING as to his claims:

(1) that his right to free speech / religion was violated pursuant to the First Amendment and 42 U.S.C. § 1983, against defendants Sisley and Wolfe regarding the incident at Destiny USA on July 17, 2020;

Israel v. City of Syracuse, Not Reported in Fed. Supp. (2022)

2022 WL 18587

(2) of false arrest pursuant to the Fourth Amendment and 42 U.S.C. § 1983, against defendants Sisley and Wolfe regarding the incident at Destiny USA on July 17, 2020;

(3) of unreasonable search and seizure pursuant to the Fourth Amendment and 42 U.S.C. § 1983, against defendants Sisley and Wolfe regarding the incident at Destiny USA on July 17, 2020;

(4) of unreasonable search and seizure pursuant to the Fourth Amendment and 42 U.S.C. § 1983, against defendant Kimpel regarding the incident on December 13, 2020;

(5) of false arrest pursuant to the Fourth Amendment and 42 U.S.C. § 1983, against defendant DeBottis regarding the incident on April 23, 2021;

(6) of unreasonable search and seizure pursuant to the Fourth Amendment and 42 U.S.C. § 1983, against defendant DeBottis regarding the incident on April 23, 2021; and

(7) of negligence pursuant to New York common law against defendants Carleo and Releford;

3. The amended complaint is DISMISSED WITH PREJUDICE as to the:

(1) RICO claims against defendants;

(2) dereliction of duty claims against defendants;

(3) law enforcement misconduct claims against defendants;

(4) equal protection claims against defendants;

(5) failure-to-protect claim against defendant Kimpel;

(6) defamation, slander, and libel claims;

(7) claims against the City of Syracuse;

(8) any official-capacity claims against the individual defendants.

4. Plaintiff "Jesus Christ Ministries" is DISMISSED as a plaintiff;

**\*2** 5. The Clerk of the Court is directed to amend the docket to reflect that defendants City of Syracuse and Lago have been dismissed and that defendants Sisley, Wolfe, Kimpel, DeBottis, Carleo, and Releford remain as defendants in this action.

IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2022 WL 18587

---

**End of Document**                          © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Gervasio v. Diaz, Not Reported in Fed. Supp. (2020)

2020 WL 3496423

2020 WL 3496423
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kevin GERVASIO, Plaintiff,

v.

Ricardo DIAZ, et al., Defendants.

9:20-CV-0346 (TJM/DJS)

|

Signed 06/29/2020

**Attorneys and Law Firms**

KEVIN GERVASIO, 18-A-2536, Plaintiff, pro se, Downstate Correctional Facility, Box F, Fishkill, NY 12524.

**DECISION and ORDER**

THOMAS J. McAVOY, Senior United States District Judge

## I. INTRODUCTION

**\*1** Pro se plaintiff Kevin Gervasio commenced this action by filing a civil rights complaint pursuant to 42 U.S.C. § 1983, together with an application to proceed in forma pauperis and a motion for appointment of counsel. Dkt. No. 1 ("Compl."); Dkt. No. 6 ("IFP Application"); [1] Dkt. No. 3 ("Motion for Counsel").

[1]    Plaintiff's initial application to proceed in forma pauperis was denied as incomplete and this action was administratively closed. Dkt. No. 4. Plaintiff then filed his IFP Application, and the action was re-opened. Dkt. Nos. 6, 7.

By Decision and Order dated April 29, 2020, plaintiff's IFP Application was granted, and following review of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), the New York State Parole Office, and plaintiff's claims against this agency, were dismissed, and the Court directed service and a response for the claims against defendants Diaz and Rosa that survived sua sponte review. Dkt. No. 9 ("April 2020 Order"). The Court also denied plaintiff's Motion for Counsel without prejudice to renew at a later stage of the proceeding. *Id.* at 10, 12.

Presently before the Court is plaintiff's motion for reconsideration of the April 2020 Order insofar as that Order denied plaintiff's motion for appointment of counsel. Dkt. No. 15 ("Motion for Reconsideration").

## II. MOTION FOR RECONSIDERATION

A court may justifiably reconsider its previous ruling if: (1) there is an intervening change in the controlling law; (2) new evidence not previously available comes to light; or (3) it becomes necessary to remedy a clear error of law or to prevent manifest injustice. *Delaney v. Selsky*, 899 F. Supp. 923, 925 (N.D.N.Y. 1995) (McAvoy, C.J.) (citing *Doe v. New York City Dep't of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir. 1983)). The standard for granting a motion for reconsideration is strict. *Shrader v. CSX Transportation, Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). A motion for reconsideration "should not be granted where the moving party seeks solely to relitigate an issue already decided." *Id.* [2] Thus, a motion for reconsideration is not to be used for "presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.' " *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998).

2020 WL 3496423

2  Generally, motions for reconsideration are not granted unless "the moving party can point to controlling decisions or data that the court overlooked - matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader*, 70 F.3d at 257.

Plaintiff does not suggest that there has been an intervening change in the controlling law. Rather, liberally construed, plaintiff seeks reconsideration based on new information not previously considered by the Court, and to prevent manifest injustice.

More specifically, plaintiff argues that reconsideration is appropriate because (1) he has attempted to independently obtain counsel on his own, to no avail, (2) he "believe[s] [his] claim is of substance, and is very complex[,]" and (3) he has a learning disability that will hinder his ability to present his case. *See* Motion for Reconsideration. Plaintiff has also attached documents to his Motion for Reconsideration showing his efforts to obtain counsel, as well as documents that he believes support the merits of his claim. *See* Dkt. Nos 15-1, 15-2, 15-3.

 **\*2** Upon a review of the relevant law and its application to the facts of this case, and taking the new information submitted by plaintiff into consideration, the Court concludes that its previous decision remains correct and did not work a manifest injustice.

As noted in the April 2020 Order, even if the Court were to assume that this case may be of substance, at this stage of the proceeding, the dispute is limited to plaintiff's Fourth Amendment claim arising out of discrete events that occurred on or about December 3, 2019. *See* April 2020 Order at 10. While plaintiff argues that the dispute involves complex issues and that he will have difficulty presenting his case in light of his learning disability, the Court has no basis to reach the same conclusions at this time.

Moreover, should one or more defendants answer the complaint, a Mandatory Pretrial Scheduling Order shall issue, which will direct the exchange of initial disclosures and likely help plaintiff frame the issues in the case and investigate the "crucial facts" without the need for counsel. Additionally, if this case proceeds to trial, it is highly probable that this Court will appoint trial counsel at the final pretrial conference. The Court is still not aware of any special reason why appointment of counsel at this early stage of the proceeding would be more likely to lead to a just determination of this litigation.

Accordingly, plaintiff's motion for partial reconsideration of the April 2020 Order is denied. [3]

3  As noted in the April 2020 Order, plaintiff may file another motion for appointment of counsel in the event he can demonstrate that, in light of specific changed circumstances, consideration of the relevant factors governing appointment of counsel warrants granting the application.

### III. CONCLUSION
**WHEREFORE**, it is hereby

**ORDERED** that plaintiff's motion for partial reconsideration of the April 2020 Order (Dkt. No. 15) is **DENIED**; and it is further

**ORDERED** that the Clerk shall serve a copy of this Decision and Order on plaintiff and counsel for the defendants.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2020 WL 3496423

---

End of Document    © 2025 Thomson Reuters. No claim to original U.S. Government Works.