UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LEON PETERS,

                                          Plaintiff,

v.                                                                9:22-cv-0638
                                                                  (DNH/TWD)


ULSTER COUNTY SHERIFFS DEPARTMENT/EMPLOYEES, et al.,

                                          Defendants.
_____

APPEARANCES:                                      OF COUNSEL:

LEON PETERS
*Plaintiff, pro se*
22-R-1965
Orleans Correctional Facility
3531 Gaines Basin Road
Albion, NY 14411

SOKOLOFF STERN LLP                                KIMBERLY H. LEE, ESQ.
Attorneys for Defendants
P.O. Box 509
63 Washington Street
PO Box 509
Poughkeepsie, NY 12602-0509

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## REPORT-RECOMMEDNATION AND ORDER

## I.    INTRODUCTION

This matter has been referred for a report and recommendation by the Honorable David

N. Hurd, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule

72.3(c).  Plaintiff Leon Peters ("Plaintiff") commenced this action alleging violations of his

rights under the United States Constitution while he was confined at the Ulster County Jail.  *See*

Dkt. Nos. 4, 23, 64. Currently before the Court for sufficiency review pursuant to 28 U.S.C. § § 1915(e) and 1915A is Plaintiff's Third Amended Complaint ("TAC"). *See generally*, Dkt. No. 67.

## II.    BACKGROUND

On February 28, 2025,[1] upon review of Plaintiff's amended complaint, the undersigned recommended the Court require an answer to the pleading, "to the extent it asserts the following claims: (1) First Amendment Free Exercise claim against Ulster County; and (2) Fourteenth Amendment Equal Protection claim against Ulster County;" and recommended "Plaintiff be afforded leave to amend the operative pleading, to the extent he seeks to assert a First Amendment Free Exercise claim against any individual defendant, pursuant to 42 U.S.C. § 1983." Dkt. No. 58 at 21-22.[2] On March 19, 2025, Senior District Judge Hurd accepted and adopted the Report and Recommendation in all respects. *See generally*, Dkt. No. 59 at 5-6. Defendant County of Ulster filed an answer on April 2, 2025. *See generally*, Dkt. No. 60. Plaintiff filed a Third Amended Complaint on May 15, 2025. *See generally*, Dkt. No. 67.[3]

---

[1] For a review of the history prior to February 28, 2025, reference is made to the Report-Recommendation and Order. *See generally*, Dkt. No. 58.

[2] Citations refer to the pagination generated by CM/ECF, the Court's electronic filing system. Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

[3] Plaintiff filed a Second Amended Compliant on April 17, 2025. *See generally*, Dkt. No. 64. Upon review of the pleading, the undersigned issued a text order, stating:

> It is hereby ORDERED in the event that Plaintiff intends to pursue the Monell First Amendment free exercise and equal protection clause claims against Ulster County set forth in his amended complaint [Dkt. No. 23], he shall submit for initial review by this Court within thirty (30) days of the filing of this Order a single pleading entitled "third amended complaint" containing all claims he intends to pursue, including any Monell claims against Ulster

## III.    LEGAL STANDARD

Section 1915 of Title 28 requires a district court to dismiss an *in forma pauperis*

complaint if the action is frivolous or malicious, fails to state a claim upon which relief may be

granted, or seeks monetary relief against a defendant who is immune from such relief.  *See* 28

U.S.C. § 1915(e)(2)(B)(i)-(iii); *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d

Cir. 1998).  The Court must also dismiss a complaint, or portion thereof, when the Court lacks

subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that

it lacks subject-matter jurisdiction, the court must dismiss the action.").

While the law mandates dismissal on any of these grounds, the Court is obliged to

construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret

them to raise the "strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*,

470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citation omitted, emphasis in

original).  However, "'special solicitude' for *pro se* pleadings has its limits, because *pro se*

pleadings still must comply with . . . the Federal Rules of Civil Procedure . . . ." *Cole v. Smrtic*,

No. 1:24-CV-00847 (MAD/CFH), 2024 WL 4870495, at *2 (N.D.N.Y. Nov. 21, 2024) (citing

*Kastner v. Tri State Eye*, No. 7:19-CV-10668, 2019 WL 6841952, at *2 (S.D.N.Y. Dec. 13,

2019)), *report and recommendation adopted*, 2025 WL 247901 (N.D.N.Y. Jan. 21, 2025).

---

County. Plaintiff is further advised any amended pleading should
include a request for relief.  It is further ORDERED that in the event
Plaintiff fails to file a third amended complaint for review within
thirty (30) days, the Court will assume that Plaintiff intends to
abandon the First Amendment claims against the County in the
amended complaint and for the second amended complaint to be a
superseding complaint, fully replacing the original complaint, and
will undertake an initial review of the second amended complaint
under 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

Dkt. No. 66.

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citations omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## IV.    ANALYSIS

In addition to his claims against Ulster County, Plaintiff's Third Amended Complaint contains the following allegations against individual defendants: (1) "On april 29, 2021 at approximately 3:45 am, the housing officer C.O. Hunt" "infring[ed] upon [Plaintiff's] religious practices by . . . mishandling [his] ramadan meals;" (2) "on april 22, 2022 C.O. Hunt" was working the "f-pod" when ramadan meals were being distributed at "4:04" and Plaintiff told Hunt "that i do not eat the food the facility provides because it is not hal'lal" and "ask[ed] again to be let out of [his] cell to prepare [his] meal for fast" but was "not let out of my cell early enough," and therefore "force[d] to fast until the sunset without nothing to eat;" and (3) Plaintiff was "denied hal'lal meat's and sweet's to fulfill [his] Islamic observance of Eid-ul-fitr on may 2, 2022 by sergeant, jane doe . . . ." Dkt. No. 67 at 1-2.[4]

---

[4] Plaintiff's TAC also mentions Officers "C.O. Macdonald" and "Col. Klepeis" who worked "on F-pod" during the distribution of ramadan breakfast meals "on april 6, 2022" and "witness[ed]" Plaintiff receive a meal which was "uncooked and with three Big Ant's in it" with sufficient "time to change it" but apparently did not do so, leaving Plaintiff "to fast with nothing to eat." Dkt. No. 67 at 3. However, neither Macdonald nor Klepeis are identified as defendants. *See id.* at 1. In any event, had the individuals been identified, any claim against these officers would be insufficient to state a claim. *See, e.g., Cisse v. Medbury*, No. 9:23-CV-0697 (GLS/ML), 2023 WL 12100477, at *14 (N.D.N.Y. July 24, 2023).

"Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause."  *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)).  It is well established that the reach of the free exercise clause extends to an inmate's diet and participation in religious meals.  *See*, *e.g.*, *Shakur v. Thomas*, No. 9:14-CV-0427 (MAD/TWD), 2016 WL 11478237, at *6 (N.D.N.Y. June 2, 2016), *report and recommendation adopted*, 2016 WL 4617242 (N.D.N.Y. Sept. 6, 2016).

"An impingement on an inmate's diet during religious holidays is often found to constitute no more than a *de minimis* burden on the inmate's free exercise rights."  *Cisse*, 2023 WL 12100477, at *14 (internal quotations and citation omitted); *see also McEachin v. McGuinnis*, 357 F.3d 197, 203 n.6 (2d Cir. 2004) (explaining, "[t]here may be inconveniences [to an inmate's religious practices] so trivial that they are most properly ignored.").  Therefore, "the claim that defendants disposed of one [Ramadan breakfast] meal, without more, does not suggest a constitutional violation."  *Cisse*, 2023 WL 12100477, at *14 (citing *Jean-Laurent v. Los*, No. 1:12-CV-0132 SF, 2015 WL 1015383, at *6 (W.D.N.Y. Mar. 9, 2015) ("[M]issing two of the Ramadan meals also does not constitute a violation of Plaintiff's First Amendment right to the free exercise of his religion.")) (additional citation omitted); *see also*, *e.g.*, *Washington v. Afify*, 968 F. Supp. 2d 532, 537-38 (W.D.N.Y. 2013).  However, in *Ford*, the Second Circuit "recognized that Eid religious meals are 'sufficiently unique in [their] importance within Islam to distinguish the present case from those in which the mere inability to provide a small number of meals commensurate with a prisoner's religious dietary restrictions was found to be a *de minimis* burden.'"  *Shakur*, 2016 WL 11478237, at *6 (citing *Ford*, 352 F.3d at 594 n.12).

5

Accordingly, Plaintiff's claim he was deprived of his Eid religious meal by Ulster County Sergeant Jane Doe is sufficient to state a First Amendment Free Exercise claim against the Jane Doe. However, Plaintiff's claim he was deprived of Ramadan breakfast meals by Ulster County C.O. Hunt once on April 29, 2021, and a second time on April 22, 2022, alleges no more than a *de minimis* burden on his First Amendment Free Exercise rights. Therefore, the undersigned recommends only Plaintiff's First Amendment Free Exercise claim against Sergeant Jane Doe be permitted to proceed. In so ruling, the Court expresses no opinion as to whether the claim can withstand a properly filed dispositive motion.

## V.    CONCLUSION

After carefully reviewing the record, the parties' submissions, and the applicable law, and for the reasons stated herein, it is hereby

**RECOMMENDED** that the Court permit Plaintiff's Third Amended Complaint to proceed, to the extent it asserts a First Amendment Free Exercise claim against Ulster County Sergeant Jane Doe; and it is further

**ORDERED** that the Clerk provide to Plaintiff a copy of this Report-Recommendation and Order, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.[5] Such objections shall be filed with the Clerk of

---

[5] If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS**

**WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993)

(citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C.

§ 636(b)(1); Fed. R. Civ. P. 72.

    **IT IS SO ORDERED.**

Dated:  September 3, 2025
        Syracuse, New York

                        Therèse Wiley Dancks
                        United States Magistrate Judge

2024 WL 4870495
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Matthew H. COLE, Plaintiff,

v.

Honorable Michael W. SMRTIC, et al. Defendants.

No. 1:24-CV-00847 (MAD/CFH)

|

Signed November 21, 2024

**Attorneys and Law Firms**

MATTHEW H. COLE, 271 Market Street, Amsterdam, New York 12010, Plaintiff pro se.

## REPORT-RECOMMENDATION & ORDER

CHRISTIAN F. HUMMEL, United States Magistrate Judge

### I. In Forma Pauperis

**\*1** Plaintiff pro se Matthew H. Cole ("plaintiff") commenced this action (No. 1:24-CV-00623) on May 6, 2024, by filing a complaint. See Dkt. No. 1 ("Compl."). On September 26, 2024, plaintiff submitted what the Court construes to be a supplement to the complaint. [1] See Dkt. No. 7. In lieu of paying this Court's filing fees, he submitted an application for leave to proceed in forma pauperis ("IFP"). See Dkt. No. 2. The undersigned has reviewed plaintiff's IFP application and determines that he financially qualifies to proceed IFP. [2] Thus, the Court proceeds to its review of the complaint pursuant to 28 U.S.C. § 1915. Plaintiff has also submitted for the Court's review a Pro Se Application for Permission to File Electronically and a Motion to Appoint Counsel. See Dkt. Nos. 4, 5.

---

[1]  The submission includes a letter addressed to District Judge D'Agostino, titled, "Requirements for Cases Removed From State Court," Dkt. No. 7; a receipt from Montgomery County Clerk dated December 8, 2022; and a "Notice of Claim" with the caption of Cole v. County of Montgomery, dated December 7, 2022. See Dkt. No. 7. The undersigned has reviewed this submission in connection with the initial review of plaintiff's complaint. See Sira v. Morton, 380 F. 3d 57, 67 (2d Cir. 2004).

[2]  Plaintiff is advised that, although he has been granted IFP status, he is still required to pay all fees and costs he may incur in this action, including, but not limited to, copying fees, transcript fees, and witness fees.

### II. Initial Review

#### A. Legal Standards

Section 1915 of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C.

§ 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

Where, as here, the plaintiff proceeds pro se, "the court must construe his submissions liberally and interpret them to raise the strongest arguments that they suggest." Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks omitted); see also Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994). As the Second Circuit stated,

> There are many cases in which we have said that a pro se litigant is entitled to "special solicitude," that a pro se litigant's submissions must be construed "liberally," and that such submissions must be read to raise the strongest arguments that they "suggest[.]" At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, or arguments that the submissions themselves do not "suggest," that we should not "excuse frivolous or vexatious filings by pro se litigants," and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law[.]"

 **\*2**  Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006) (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008).

"The [Second Circuit]'s 'special solicitude' for pro se pleadings has its limits, because pro se pleadings still must comply with ... the Federal Rules of Civil Procedure [('Fed. R. Civ. P.')]." Kastner v. Tri State Eye, No. 19-CV-10668 (CM), 2019 WL 6841952, at *2 (S.D.N.Y. Dec. 13, 2019) (quoting Ruotolo v. IRS, 28 F.3d 6, 8 (2d Cir. 1994)). Pleading guidelines are provided in the Federal Rules of Civil Procedure. Specifically, Rule 8 requires the pleading to include:

> (1) a short and plain statement of the grounds for the court's jurisdiction ...;

> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

> (3) a demand for the relief sought...

FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. Sheehy v. Brown, 335 F. App'x 102, 104 (2d Cir. 2009) (summary order).

Further, Fed. R. Civ. P. 10 provides:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 54 (internal quotation marks and citations omitted). A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of a defendant's duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal ... is usually reserved for those cases in which

the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted).

 **\*3** This Court also has an overarching obligation to determine that a claim is not legally frivolous before permitting a pro se plaintiff's complaint to proceed. See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp., 221 F.3d 362, 363 (2d Cir. 2000). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' " Aguilar v. United States, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at \*2 (D. Conn. Nov. 8, 1999) [3] (quoting Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998)); see also Neitzke v. Williams, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis.").

[3]    Any unpublished cases cited within this Report-Recommendation & Order have been provided to plaintiff.

### B. Complaint

Plaintiff's civil cover sheet indicates that he seeks to bring this action pursuant to "Title U.S.C. 18 Section 241, Conspiracy Against Rights & Title U.S.C. 18 Section 242 Deprivation of rights Under Color of Law." Dkt. No. 1-1 at 1. The civil cover sheet further provides that his cause of action involves, "Violation of Due process, Speedy Trial Rights, Ineffective Assistance of Counsel. I feel I am being targeted for being black and gay." Id.

Plaintiff's form complaint checks the box indicating that he seeks to bring this case pursuant to 42 U.S.C. § 1983. See Compl. at 3. In response to the question in the form complaint asking in "what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials," plaintiff responds, "Due Process, 30.30 Speedy Trial Violation, Ineffective Assistance of counsel." [4] Id. In response to a question asking him to explain "how each defendant acted under color of state or local law," plaintiff states "Each judge deliberately denied me due process, and refused to look into the paperwork to see that i was improperly denied my speedy trial rights. It was a tean [sic] effort. The ADA/Special Prosecutor withheld potential exculpatory material which was usd [sic] against me. All mentioned actions were done and upheld even after I showed federal law with supportive case law as a pro se litigant." Id.

[4]    Although plaintiff generally references ineffective assistance of counsel, Compl. at 4, he does not name any attorney who may have represented him. Any claims against the prosecutor would not be considered ineffective assistance of counsel because Mr. Maxwell, as the prosecutor, was not plaintiff's attorney.

Plaintiff provides that his "case is still on appeakl [sic] in Appellate Court Third Department. I feel they are guilty, or part of what I call a scandal. I went to them from the very start with a complaint to the grievance committee, where they denied any wrongdoing. It must be ok to violate Constitutional rights there. This is from March 2019 to present" Id.

In response to a question that asks plaintiff to state the facts underlying his claims, plaintiff states, "Please see attached Article 78 that is attached. It was dismissed being in the wrong court, but is on point." Id. at 4. Plaintiff did not provide the Court with any such attachment and has not submitted any Article 78 materials. See Compl., Dkt. No. 7.

In response to the form complaint's question asking about any injuries suffered as a result of the conduct he complains of, plaintiff states, "Sever [sic] depression over 20 years, irreperable [sic] harm, defamation of character [sic] by arguments not legally allowed to give. Loss of income, inability to gain and keep employment, mental trauma, instilled disbelief in justice in the legal system, familial traumam [sic] due to my legal battles." Id. Indicating the relief sought, plaintiff states

> **\*4**  Petitioner seeks reinstatement of driving priveldges [sic], and 10 million dollars for damages caused by conflict of interest, deliberate violation of Due Process, Speedy Trial rights, Ineffective assistance of counsel, malice, Brady Violation, Petitioner claims deliberate misconduct and malice in Montgomery County Court, the Saratoga District Attorney's Office, and the Supreme Court Appellate Division Third department. ** This is subject to change if an attorney agrees to represent.

Compl. at 5. Although he typed his name, plaintiff does not sign the complaint where a signature is indicated. See id. at 8.

Plaintiff provides in his supplement that he "removed this action to district court asserting jurisdiction pursuant to 42 U.S.C. 1983, and § 1441." Dkt. No. 7. at 1. Plaintiff states that he removed this case from Montgomery County Supreme Court. See id. He states that he seeks or sought the removal because he was told he was "not guarantee counsel" at the state, but that "[i]n Federal Court, there is that option, pending qualification, and I am told, if a lawyer agrees to take it, then I really have something. I am in dire need of counsel." Id.

Plaintiff states, "[t]he ineffective assistance of counsel and The County Court are a matter already mentioned in the appeal." Dkt. No. 7 at 2. Plaintiff states that "[t]o get my conviction, I allege judicial and prosecutorial misconduct, and ineffective assistance of counsel × 4. That is why I am pro se. I had to protect myself when appointed counsel did not. It also went through a couple judges which is why they are mentioned in the preliminary complaint/paperwork, and why I mention bias." Id. Plaintiff states he can "prove each thing I saw not just with my words, but with transcripts [5] from the County Court, and the Adult Drug Court." Id. Plaintiff refers to being drug free for four and a half years and having academic success in college. Id. at 3. He states that he wishes this Court to hear his case because he believes he will not "see bias" in federal court "like I saw in others." Id. Plaintiff states that he "also put in a Notice of Removal in the Federal Court for those criminal charges that led to the Complaint. I do not trust the assigned appellate attorney. That case too has Constitutional violations. That case number is 1:24-CR-301 (AMN)." Id.

[5]     Plaintiff did not provide any transcripts.

## C. Discussion [6]

[6]     As a courtesy, the Court has provided plaintiff with copies of any unpublished cases cited within this Report-Recommendation & Order.

### 1. Rule 8

As a threshold issue, plaintiff's complaint fails to meet the requirements of Rule 8. See FED. R. CIV. P. 8(a)(2). He does not provide a short and plain statement of the claim demonstrating why he is entitled to relief. Although he makes general references to both an Article 78 proceeding and a criminal proceeding and unexplained references to "Due Process, 30.30 Speedy Trial Violation, Ineffective of Counsel," he does not provide factual support or context. Thus, his complaint does not provide "fair notice" to defendants of the claims against them. See FED. R. CIV. P. 8(a)(2).

### 2. Heck v. Humphrey

However, there are several substantive concerns that further lead the undersigned to recommend dismissal. First, in referencing to "Due Process, 30.30 Speedy Trial Violation, Ineffective of Counsel" and explicitly referencing a criminal conviction, it is clear that plaintiff is attempting to seek some kind of review of a criminal proceeding or conviction. See Compl. at 3. Plaintiff also accuses all named judges of denying him due process and contends that an unnamed "ADA/Special Prosecutor withheld potential exculpatory material which was usd [sic] against me." Compl. at 4. Plaintiff also references a conviction. See Dkt. No. 7 at 4. Such claims would be barred by Heck v. Humphrey.

**\*5** As this Court, citing the District of Connecticut, has set forth:

In Heck, the Supreme Court held that in order for a plaintiff "to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Id. at 486-87. The court further held that "[a] claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." Id. at 487 (emphasis in original).

[ ]

Thus, under Heck and its progeny, if a conviction has not been invalidated previously, a "§ 1983 action is barred ... no matter the target of the prisoner's suit ... if success in that action would necessarily demonstrate the invalidity of confinement or its duration." Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005) (emphasis in original).

Ali v. Shattuck, No. 8:24-CV-0128 (DNH/CFH), 2024 WL 2747619, at \*3 (N.D.N.Y. May 29, 2024), report-recommendation adopted sub nom. Ali v. Dow, No. 8:24-CV-128, 2024 WL 3460745 (N.D.N.Y. July 18, 2024) (quoting Zografidis v. Richards, No. 3:22-CV-00631 (AVC), 2022 WL 21756775, at \*7 (D. Conn. July 6, 2022), report and recommendation adopted (Oct. 7, 2022), aff'd, No. 22-3197, 2023 WL 7538211 (2d Cir. Nov. 14, 2023)).

Plaintiff has failed to demonstrate that any criminal charge(s), conviction, or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Zografidis, 2022 WL 21756775, at \*7. Although plaintiff's complaint wants for detail, the undersigned can clearly determine that plaintiff seeks review of his criminal proceedings, conviction, and/ or sentence. The claims plaintiff seeks to pursue relate to allegations that he was denied due process, denied speedy trial rights, and experienced ineffective assistance of counsel. Accordingly, plaintiff's claims are barred by Heck unless and until he can demonstrate favorable termination of his criminal conviction. [7]

[7]    The undersigned recognizes that claims that are determined to be barred by Heck are dismissed without prejudice. However, the undersigned has recommended dismissal with prejudice because plaintiff has only named defendants who are immune from relief. Accordingly, the undersigned is recommending dismissal of the claims based on these immunities, rather than a Heck dismissal. The undersigned has included the Heck review for sake of completeness.

### 3. Immunities

Plaintiff names as defendants several defendants who are immune from suit. Insofar as plaintiff names Hon. Michael W. Smrtic, Interim Montgomery County Judge and Tatiana N. Coffinger, "County/Family/Surrogate's Court Judge" [8] such claims would be barred by judicial immunity.

[8]    Although plaintiff provides no facts regarding any family court proceedings, that he named a family court judge and makes general reference to that he seeks review over actions taken by a family court judge. Even if plaintiff were to amend his complaint to provide facts about any possible family court proceedings and details about any alleged

violations of his rights that he believes he faced in that Court, if plaintiff seeks this Court's review of an order of the family court, such review would be barred by Rooker-Feldman, and if plaintiff seeks this Court's review or intervention of a currently pending/ongoing Family Court proceeding, such review would be barred by Younger. See Porter v. Nasci, No. 5:24-CV-0033 (GTS/TWD), 2024 WL 1142144, at *4 (N.D.N.Y. Mar. 15, 2024) (citations omitted), report and recommendation adopted, 2024 WL 3158645 (N.D.N.Y. June 25, 2024) ("Under the Rooker-Feldman doctrine, a federal district court lacks authority to review a final state court order or judgment where a litigant seeks relief that invites the federal district court to reject or overturn such a final state court order or judgment."); see also Diamond "D" Constr. Corp. v. McGowan, 282 F.3d 191, 198 (2d Cir. 2002) ("[F]ederal courts [must] abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings.").

**\*6** "With minor exceptions, judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions." Zavalidroga v. Girouard, No. 6:17-CV-682 (BKS/ATB), 2017 WL 8777370, at *8 (N.D.N.Y. July 7, 2017) (citing Mireles v. Waco, 502 U.S. 9, 9-10 (1991) (per curiam)). "Judicial immunity has been created for the public interest in having judges who are 'at liberty to exercise their functions with independence and without fear of consequences.' " Id. (quoting Huminski v. Corsones, 396 F.3d 53, 74 (2d Cir. 2004)). "Judicial immunity applies even when the judge is accused of acting maliciously or corruptly." Id. (citation omitted); see Positano v. New York, No. 12-CV-2288 (ADS/AKT), 2013 WL 880329, at *4 (E.D.N.Y. Mar. 7, 2013) (explaining that the plaintiff may not bring action against a judge for actions taken in his judicial capacity, even when the actions violated the ADA).

"Judicial immunity is immunity from suit, not just immunity from the assessment of damages." Zavalidroga, 2017 WL 8777370, at *8 (citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). "The only two circumstances in which judicial immunity does not apply is when he or she takes action 'outside' his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken 'in absence of jurisdiction.' " Id. (quoting Mireles, 502 U.S. at 11-12). "In determining whether or not a judge acted in the clear absence of all jurisdiction, the judge's jurisdiction is 'to be construed broadly, and the asserted immunity will only be overcome when the judge clearly lacks jurisdiction over the subject matter.' " Pacherille v. Burns, 30 F. Supp. 3d 159, 163 (N.D.N.Y. 2014) (quoting Ceparano v. Southampton Just. Ct., 404 F. App'x 537, 539 (2d Cir. 2011) (summary order)). "Whether a judge acted in a judicial capacity depends on the nature of the act [complained of] itself, i.e., whether it is a function normally performed by a judge, and [on] the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." Ceparano, 404 F. App'x at 539 (internal quotation marks and citation omitted). "Further, if the judge is performing in his judicial capacity," he " 'will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction.' " Ceparano, 404 F. App'x at 539 (quoting Stump v. Sparkman, 435 U.S. 349, 362 (1978)). "Judges are not, however, absolutely 'immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity.' " Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir. 2009) (quoting Mireles, 502 U.S. at 11).

Thus, as plaintiff names the judicial defendants in relation to actions or omissions that they took in their roles as judges, their actions are protected by absolute judicial immunity. To the extent plaintiff names Hon. Felix Catena, "Retired Administrative Law Judge," Judge Catena is also protected by absolute judicial immunity as a judge's retirement, "does not impact [his or] her immunity for acts taken in [his or] her official capacity before her retirement." McCray v. Lewis, No. 16-CV-3855 (WFK/VMS), 2016 WL 4579081, at *2 (E.D.N.Y. Aug. 31, 2016). To the extent plaintiff may seek to sue the judges their official capacities, the suit is barred by the Eleventh Amendment. See Pacherille v. Burns, 30 F. Supp. 3d 159, 163 n.5 (N.D.N.Y. 2014) ("The Eleventh Amendment shields judges from suit to the extent that they are sued in their official capacities.").

**\*7** In addition, plaintiff also references, exclusively in his "relief" section of the form complaint, "the Supreme Court Appellate Division, Third Department" when stating that he experienced "deliberate misconduct and malice." Compl. at 7. He does not name this Court as a defendant anywhere in the complaint. However, even if plaintiff were to have named the Appellate Division, Third Department as a defendant, such defendant would also need to be dismissed based on Eleventh Amendment immunity as the Appellate Division "is merely an agency or arm of New York State." Benyi v. New York, No. 3:20-CV-1463 (DNH/ML), 2021 WL 1406649, at *5 (N.D.N.Y. Mar. 23, 2021), report and recommendation adopted, No. 3:20-CV-1463, 2021 WL 1404555 (N.D.N.Y. Apr. 13, 2021) (citation omitted). Accordingly, to the extent a liberal reading of the complaint may suggest

2024 WL 4870495

that plaintiff seeks to name the Appellate Division as a defendant, such claims are barred by Eleventh Amendment immunity. See Compl.

Finally, insofar as plaintiff seeks to sue Prosecutor Samuel V. Maxwell, Esq., Assistant District Attorney, in addition to the Heck issues noted above, he would be protected by absolute prosecutorial immunity. As this Court has recently reiterated,

> Prosecutors enjoy "absolute immunity from § 1983 liability for those prosecutorial activities 'intimately associated with the judicial phase of the criminal process.' " Barr v. Abrams, 810 F.2d 358, 360-61 (2d Cir. 1987) (citing Imbler v. Pachtman, 424 U.S. 409, 430 (1976)). This immunity encompasses "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." Hill v. City of New York, 45 F.3d 653, 661 (2d Cir. 1995) (internal quotations and citation omitted). Absolute immunity applies when a prosecutor's conduct, acting as an advocate during the judicial phase of the criminal process, "involves the exercise of discretion." Flagler v. Trainor, 663 F.3d 543, 547 (2d Cir. 2011) (citing Kalina v. Fletcher, 522 U.S. 118, 127 (1997)).

> Accordingly, absolute immunity extends to functions such as "deciding whether to bring charges and presenting a case to a grand jury or a court, along with the tasks generally considered adjunct to those functions, such as witness preparation, witness selection, and issuing subpoenas." Simon v. City of New York, 727 F.3d 167, 171 (2d Cir. 2013) (citing Imbler, 424 U.S. at 431 n.33); see also Flagler, 663 F.3d at 547 (explaining, "the Supreme Court has found prosecutors absolutely immune from suit for alleged misconduct during a probable cause hearing, in initiating a prosecution, and in presenting the State's case ... [but] withheld absolute immunity for conduct unrelated to advocacy, such as giving legal advice, holding a press conference, or acting as a complaining witness."). "[O]nce a court determines that challenged conduct involves a function covered by absolute immunity, the actor is shielded from liability for damages regardless of the wrongfulness of his motive or the degree of injury caused ...." Bernard v. Cnty. of Suffolk, 356 F.3d 495, 503 (2d Cir. 2004) (citing Cleavinger v. Saxner, 474 U.S. 193, 199-200 (1985)).

Williams v. Atkins, No. 5:24-CV-0573 (DNH/TWD), 2024 WL 3649849, at *5 (N.D.N.Y. June 11, 2024), report and recommendation adopted, No. 5:24-CV-573, 2024 WL 3548760 (N.D.N.Y. July 26, 2024).

Plaintiff appears to suggest that Mr. Maxwell "withheld potentially exculpatory material" that was used against him. Compl. at 4. Beyond the Heck barriers already discussed, even if plaintiff could amend to provide greater detail, absolute immunity would extent to even this alleged misconduct as such allegations clearly fall within the scope of prosecutorial immunity. Accordingly, it is recommended that any claims against ADA Samuel V. Maxwell be dismissed for absolute prosecutorial immunity. "Furthermore, because the District Attorney's prosecutorial immunity is substantive and not something that can be corrected by a better pleading, I recommend that the dismissal be with prejudice." Phillips v. New York, No. 5:13-CV-927, 2013 WL 5703629, at *5 (N.D.N.Y. Oct. 17, 2013) (quoting Cuoco v. Moritsugu, 222 F.3d 99, 223 (2d Cir. 2000)). [9]

[9]    Plaintiff appears to characterize his submissions as a purported removal to federal court or suggests that he seeks to remove his case from Montgomery County Court to this Court. See Dkt. No. 7 (citing 28 U.S.C. § 1441). However, in addition to the infirmities mentioned above, plaintiff has not demonstrated that any proceeding related to this complaint has been properly removed to, or is subject to removal to, this Court. See, e.g., 28 U.S.C. § 1446. Indeed, plaintiff's submissions appear to indicate that plaintiff is the plaintiff in the County Court action. See id. § 1446(a).

### III. Conclusion

 **\*8**  It is **ORDERED**, that plaintiff's in forma pauperis application (dkt. no. 2) be **GRANTED**; and it is

**RECOMMENDED**, that plaintiff's section 1983 claims against Honorable Michael W. Smrtic; Tatiana N. Coffinger, County/Family/Surrogate's Court Judge; and Felix Catena, Retired Administrative Law Judge (Dkt. Nos. 1, 7) be **DISMISSED WITH**

**PREJUDICE** as follows: (1) claims brought against them in their personal/individual capacities for judicial immunity, and (2) claims brought against them in their official capacities for Eleventh Amendment immunity; and it is further

**RECOMMENDED**, that plaintiff's section 1983 claims against Assistant District Attorney Samuel V. Maxwell (Dkt. Nos. 1, 7) be **DISMISSED WITH PREJUDICE** due to absolute prosecutorial immunity; and it is further

**RECOMMENDED**, that, to the extent a liberal reading of the complaint may suggest that plaintiff seeks to name the Appellate Division, Third Department, as a defendant (Dkt. Nos. 1, 7), such claims be **DISMISSED WITH PREJUDICE** as barred by Eleventh Amendment immunity, and it is

**RECOMMENDED**, that plaintiff's pro se motion for permission to file electronically (dkt. no. 4) and motion to appoint counsel [10] (dkt. no. 5) be **DISMISSED AS MOOT** based on the above recommendations, and it is

[10]    The undersigned also notes that plaintiff did not contend that he made any efforts to obtain counsel on his own, show proof of any attorneys he contacted. See Terminate Control Corp v. Horowitz, 28 F.3d 1335 (2d Cir. 1994). See Dkt. No. 5.

**ORDERED**, that the Clerk serve this Report-Recommendation & Order on plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), parties have
**FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 72. [11]

[11]    If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(c).

**All Citations**

Slip Copy, 2024 WL 4870495

---

**End of Document**                                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Kastner v. Tri State Eye, Not Reported in Fed. Supp. (2019)

2019 WL 6841952

2019 WL 6841952
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Joseph KASTNER, et al., Plaintiffs,

v.

TRI STATE EYE, et al., Defendants.

19-CV-10668 (CM)
|
Signed 12/13/2019

**Attorneys and Law Firms**

Joseph Kastner, Monticello, NY, pro se.

John and Jane Doe 1-20, pro se.

ORDER TO AMEND

COLLEEN McMAHON, Chief United States District Judge:

**\*1** Plaintiff brings this *pro se* action, for which the filing fee has been paid, alleging that Defendants violated his rights. For the reasons set forth below, the Court grants Plaintiff leave to file an amended complaint within thirty days of the date of this order.

## STANDARD OF REVIEW

The Court has the authority to dismiss a complaint, even when the plaintiff has paid the filing fee, if it determines that the action is frivolous, *Fitzgerald v. First E. Seventh Tenants Corp.*, 221 F.3d 362, 363-64 (2d Cir. 2000) (*per curiam*) (citing *Pillay v. INS*, 45 F.3d 14, 16-17 (2d Cir. 1995) (*per curiam*) (holding that Court of Appeals has inherent authority to dismiss frivolous appeal)), or that the Court lacks subject matter jurisdiction, *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999). The Court is obliged, however, to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original).

## BACKGROUND

Plaintiff brings this 154-page, single-spaced complaint, most of which contains bold text in all caps, against: (1) Tri State Eye; (2) Crystal Run Healthcare; (3) Coverys RFG, Inc.; (4) Douglas Sansted; (5) Feldman, Kleidman, Coffey & Sappe; (6) Orange Regional Medical Center (OMRC); (7) New York State; (8) Town of Newburgh New York Police; (9) Town of Middletown New York Police Department; (10) "The US Attorney"; (11) "The FDA"; (12) "USA"; (13) "The EEOC"; (14) "The SSA-USA"; (15) "The US Inspector General"; (16) "The US Department of Justice"; (17) "The US Department of Health & Human Services "HHS-HIPAA" Office of Civil Rights Enforcements"; (18) "The US Department of the Attorney General Office of Civil Rights Enforcements"; and (19) CIGNA.

Plaintiff asserts that he is

Kastner v. Tri State Eye, Not Reported in Fed. Supp. (2019)

2019 WL 6841952

> innocent of all [his] non violent past frivolous offenses and will prove it on examination: if asked: about how NYS, "SSA," et al. and others railroaded me all my life to ruin my name, because; I complain and protect, But some of the doctors in this case: are guilty of my physical harm and are violent criminal offenders: who are on the loose and are: a front: for their employers,' not including other employers and/ in their 49 other states: through; proven not needed: blinking laser shots to myself and some of the entire trusted public in the USA.

(ECF No. 1, at 4.) [1] He brings:

> claims for: malpractices, negligence, sheer greed by their 5 referred doctor's for, lying, cover-ups, threats, false truths (false medical histories,) lies, and assaults from each laser short that is {un-necessary that is a proven criminal assault} and conspiracy and the misuse/abuse of laser eye surgery equipment at ORMC with FDA violations, holding binding/blinding a patient against their/my will and wishes. Failure to inject and administer proper needed eye medicines/and future litigations. 30 day expired notice to cure violations and future laser changed procedures/laws are needed: attempted 2019 insurance fraud/ extortion botched false NYS arrests for: Joseph rec Kastner and also for 2018.

**\*2**  (*Id.*) In short, Plaintiff asserts that a doctor associated with ORMC "destroyed [his] left eye's eye sight." (*Id.* at 35.)

[1]    The Court notes that in the quoted sections of the complaint, it does not omit Plaintiff's unique use of punctuation.

Plaintiff filed two prior cases in this Court where he sued multiple unrelated defendants. *See Kastner v. State Farm Mutual Automobile Co. Corp.*, ECF 1:15-CV-2757, 8 (S.D.N.Y. Oct. 22, 2015); *The Homeless Patrol, Kastner v. Joseph Volpe Family*, ECF 1:09-CV-3628, 63 (S.D.N.Y. July 22, 2010). In the 15-CV-2757 action, Judge Loretta A. Preska noted that Plaintiff failed to comply with the pleading requirements under Rule 8 and Rule 20 of the Federal Rules of Civil Procedure because he (1) failed to make a short and plain statement showing he was entitled to relief, and (2) asserted unrelated claims against multiple defendants. Judge Preska granted Plaintiff leave to amend to cure this deficiency, but in his amended complaint, he failed to comply with Rule 8 and Rule 20, naming multiple defendants and asserting unrelated claims. Judge Preska dismissed the amended complaint for failure to state a claim.

## DISCUSSION

The Court's "special solicitude" for *pro se* pleadings, *Ruotolo v. IRS*, 28 F.3d 6, 8 (2d Cir. 1994), has its limits, because *pro se* pleadings still must comply with Rule 8(a) of the Federal Rules of Civil Procedure. Under Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, a complaint's statement of claim should not be prolix (lengthy) or contain unnecessary details. *See Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (noting that under Rule 8(a)(2), the statement of claim "should be short because '[u]nnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage' ") (citation omitted); *Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir. 1972) (holding that complaint did not comply with Rule 8 because "it contained a labyrinthian prolixity of unrelated and vituperative charges that defied comprehension"); *see also The Annuity, Welfare and Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs Local 15, 15A, 15C & 15D, AFL-CIO v. Tightseal Constr. Inc.*, No. 17-CV-3670 (KPF), 2018 WL

2019 WL 6841952

3910827, at *12 (S.D.N.Y. Aug. 14, 2018) ("[C]ourts in this Circuit have dismissed complaints that are unnecessarily long-winded, unclear, or conclusory.")

Under Rule 20 of the Federal Rules of Civil Procedure, a plaintiff may not pursue unrelated claims against multiple defendants. *See* Fed. R. Civ. P. 20(a)(2) ("Persons ... may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the *same transaction, occurrence, or series of transactions or occurrences*; and (B) any question of law or fact *common to all defendants* will arise in the action.") (emphasis added); *e.g., Peterson v. Regina*, 935 F. Supp. 2d 628, 638 (S.D.N.Y. 2013) ("Case law makes clear that '[i]n the absence of a connection between Defendants' alleged misconduct, the mere allegation that Plaintiff was injured by all Defendants is not sufficient [by itself] to join unrelated parties as defendants in the same lawsuit pursuant to Rule 20(a).' ") (alterations in original) (quoting *Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 167 (S.D.N.Y. 2009)).

 **\*3**  Generally, district courts must construe *pro se* complaints liberally, but "even a *pro se* litigant cannot simply dump a stack of exhibits on the court and expect the court to sift through them to determine if some nugget is buried somewhere in that mountain of papers, waiting to be unearthed and refined into a cognizable claim." *Carmel v. CSH & C*, 32 F. Supp. 3d 434, 436 (W.D.N.Y. 2014).

Plaintiff fails to make a short and plain statement showing that he is entitled to relief. Rather, he submits an unreadable 154-page complaint, apparently expecting the Court "to sift through" it to find Plaintiff's claims. *Carmel*, 32 F. Supp. 3d at 436. Moreover, the complaint does not suggest that any questions of law or fact are common to the 19 named defendants.

In recognition of the "special solicitude" afforded *pro se* litigants, the Court grants Plaintiff 30 days' leave to submit an amended complaint that complies with Rules 8 and 20 of the Federal Rules of Civil Procedure. The amended complaint must contain a short and plain statement showing that he is entitled to relief and may not contain unrelated claims against multiple defendants. Plaintiff's amended complaint must be limited to 20 pages. The Court strongly encourages Plaintiff to use the Court's amended complaint form.

## CONCLUSION

The Clerk of Court is directed to assign this matter to my docket, mail a copy of this order to Plaintiff, and note service on the docket. Plaintiff is granted leave to file an amended complaint that complies with the standards set forth above. Plaintiff must submit the amended complaint to this Court's Pro Se Intake Unit within thirty days of the date of this order, caption the document as an "Amended Complaint," and label the document with docket number 19-CV-10668 (CM). An Amended Complaint form is attached to this order. No summons will issue at this time. If Plaintiff fails to comply within the time allowed, and he cannot show good cause to excuse such failure, the complaint will be dismissed for failure to state a claim upon which relief may be granted.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

SO ORDERED.

Attachment

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

Write the full name of each plaintiff.

_____CV_____
(Include case number if one has been
assigned)

-against-

**AMENDED**

_____

**COMPLAINT**

_____

Do you want a jury trial?
☐ Yes     ☐ No

_____

Write the full name of each defendant. If you need more
space, please write "see attached" in the space above and
attach an additional sheet of paper with the full list of
names. The names listed above must be identical to those
contained in Section II.

---

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed
with the court should therefore *not* contain: an individual's full social security number or full
birth date; the full name of a person known to be a minor; or a complete financial account
number. A filing may include *only*: the last four digits of a social security number; the year of
an individual's birth; a minor's initials; and the last four digits of a financial account number.
See Federal Rule of Civil Procedure 5.2.

---

Rev. 2/10/17

Kastner v. Tri State Eye, Not Reported in Fed. Supp. (2019)
Case 9:22-cv-00638-DNH-TWD    Document 69    Filed 09/03/25    Page 20 of 72
2019 WL 6841952

## I. BASIS FOR JURISDICTION

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation, and the amount in controversy is more than $75,000, is a diversity case. In a diversity case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal-court jurisdiction in your case?

☐   Federal Question

☐   Diversity of Citizenship

## A. If you checked Federal Question

Which of your federal constitutional or federal statutory rights have been violated?

_____

_____

_____

_____

## B. If you checked Diversity of Citizenship

### 1. Citizenship of the parties

Of what State is each party a citizen?

The plaintiff , _____ , is a citizen of the State of
                    (Plaintiff's name)

_____
(State in which the person resides and intends to remain.)

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

_____ .

If more than one plaintiff is named in the complaint, attach additional pages providing information for each additional plaintiff.

Page 2

Kastner v. Tri State Eye, Not Reported in Fed. Supp. (2019)

Case 9:22-cv-00638-DNH-TWD    Document 69    Filed 09/03/25    Page 21 of 72

2019 WL 6841952

If the defendant is an individual:

The defendant, _____ , is a citizen of the State of
                  (Defendant's name)

_____

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

_____ .

If the defendant is a corporation:

The defendant, _____ , is incorporated under the laws of

the State of _____

and has its principal place of business in the State of _____

or is incorporated under the laws of (foreign state) _____

and has its principal place of business in _____ .

If more than one defendant is named in the complaint, attach additional pages providing information for each additional defendant.

## II.  PARTIES

### A.  Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

_____

First Name                Middle Initial        Last Name

_____

Street Address

_____

County, City                      State              Zip Code

_____

Telephone Number                  Email Address (if available)

Page 3

**Kastner v. Tri State Eye, Not Reported in Fed. Supp. (2019)**
Case 9:22-cv-00638-DNH-TWD    Document 69    Filed 09/03/25    Page 22 of 72
2019 WL 6841952

## B.  Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. Attach additional pages if needed.

Defendant 1:

First Name                Last Name

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

County, City                State                Zip Code

Defendant 2:

First Name                Last Name

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

County, City                State                Zip Code

Defendant 3:

First Name                Last Name

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

County, City                State                Zip Code

Page 4

**Kastner v. Tri State Eye, Not Reported in Fed. Supp. (2019)**
2019 WL 6841952

Case 9:22-cv-00638-DNH-TWD    Document 69    Filed 09/03/25    Page 23 of 72

Defendant 4:

First Name                    Last Name

_____

Current Job Title (or other identifying information)

_____

Current Work Address (or other address where defendant may be served)

_____

County, City                  State          Zip Code

## III. STATEMENT OF CLAIM

Place(s) of occurrence: _____

Date(s) of occurrence: _____

## FACTS:

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and what each defendant personally did or failed to do that harmed you. Attach additional pages if needed.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Page 5

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical
treatment, if any, you required and received.

_____

_____

_____

_____

## IV. RELIEF

State briefly what money damages or other relief you want the court to order.

_____

_____

_____

_____

Page 6

## V. PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| Dated | Plaintiff's Signature |

| | | |
|---|---|---|
| First Name | Middle Initial | Last Name |

Street Address

| | | |
|---|---|---|
| County, City | State | Zip Code |

| | |
|---|---|
| Telephone Number | Email Address (if available) |

I have read the Pro Se (Nonprisoner) Consent to Receive Documents Electronically:

☐ Yes   ☐ No

If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.

Page 7

**All Citations**

Not Reported in Fed. Supp., 2019 WL 6841952

**End of Document**　　　　　　　　　　　　　　　　© 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 247901
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Matthew H. COLE, Plaintiff,

v.

Honorable Michael W. SMRTIC, Interim Montgomery County Judge; Tatiana N. Coffinger,

County/Family/Surrogate's Court Judge; Honorable Felix Catena, Retired Administrative

Law Judge; and Samuel V. Maxwell, Esq., Assistant District Attorney, Defendants.

1:24-CV-847 (MAD/PJE)
|
Signed January 21, 2025

**Attorneys and Law Firms**

MATTHEW H. COLE, 271 Market Street, Amsterdam, New York 12010, Plaintiff pro se.

## ORDER

Mae A. D'Agostino, United States District Judge:

**\*1** Plaintiff commenced this action on May 6, 2024, asserting that Defendants violated his due process and speedy trial rights, and that he received ineffective assistance of counsel in an underlying state criminal action. *See* Dkt. No. 1. In a Report-Recommendation and Order dated November 21, 2024, Magistrate Judge Hummel granted Plaintiff's request to proceed *in forma pauperis* and conducted an initial review of the complaint. *See* Dkt. No. 8. In the Report-Recommendation and Order, Magistrate Judge Hummel concluded that, in addition to the complaint being subject to dismissal for failure to comply with Rule 8 of the Federal Rules of Civil Procedure, Plaintiff's due process, speedy trial, and ineffective assistance of counsel claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), because Plaintiff's underlying state court conviction has not been reversed on direct appeal or otherwise expunged. *See id.* at 8-10. Moreover, the Report-Recommendation and Order recommended dismissal of the claims against Defendants Smrtic, Coffinger, and Catena since they are barred by absolute judicial immunity. *See id.* at 10-12. To the extent Plaintiff is attempting to assert a claim against the Appellate Division, Third Department, Magistrate Judge Hummel found that the claim is barred by Eleventh Amendment immunity because the Appellate Division " ' is merely an agency or arm of New York State." *Id.* at 12-13 (quotation omitted). Finally, Magistrate Judge Hummel recommended that the claims against Defendant Maxwell be dismissed because he is protected by prosecutorial immunity. *See id.* at 13-14. Plaintiff has not objected to the Report-Recommendation and Order.

When a party files specific objections to a magistrate judge's report-recommendation, the district court "make[s] a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). However, when a party files "[g]eneral or conclusory objections, or objections which merely recite the same arguments [that he] presented to the magistrate judge," the court reviews those recommendations for clear error only. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, \*2 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

In the present matter, the Court finds that Magistrate Judge Hummel correctly determined that Plaintiff's complaint must be dismissed. Plaintiff's complaint makes clear that his claims stem from alleged violations of his rights that occurred during an underlying state criminal case. *See* Dkt. No. 1 at 3-4; Dkt. No. 7 at 4. Since Plaintiff's criminal conviction has not been reversed,

2025 WL 247901

expunged by executive order, or called into question by a federal court's issuance of a writ of habeas corpus, Plaintiff's claims brought pursuant to Section 1983 are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). *See Strong v. Watson*, No. 1:22-cv-552, 2023 WL 8439445, *14-15 (W.D.N.Y. Sept. 26, 2023) (dismissing the plaintiff's claims of malicious prosecution, conspiracy, speedy trial violations, denial of due process, and denial of equal protection under *Heck* because the claims "all seek to impugn the validity of his underlying state court criminal charges").

**\*2** Magistrate Judge Hummel also correctly determined that, in the alternative, the claims against the named Defendants are subject to dismissal based on absolute judicial and prosecutorial immunity. The allegations against Defendants Smrtic, Coffinger, and Catena make clear that these individuals were acting in their judicial capacities and that their actions were not taken in the absence of jurisdiction. Accordingly, they are entitled to absolute judicial immunity. *See Ceparano v. Southampton Just. Ct.*, 404 Fed. Appx. 537, 539 (2d Cir. 2011). As to Defendant Maxwell, Plaintiff has alleged that he withheld exculpatory evidence in the underlying criminal matter. Since this conduct clearly involves "prosecutorial activities 'intimately associated with the judicial phase of the criminal process,' " Defendant Maxwell is entitled to absolute prosecutorial immunity. *See Barr v. Abrams*, 810 F.2d 358, 360-61 (2d Cir. 1987) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). Additionally, to the extent Plaintiff has attempted to assert claims against the Appellate Division, Third Department, the claims must be dismissed because the Third Department is an arm of New York State and is entitled to Eleventh Amendment immunity. *See Benyi v. New York*, No. 3:20-cv-1463, 2021 WL 1406649, *5 (N.D.N.Y. Mar. 23, 2021) (citation omitted).

Finally, the Court agrees with Magistrate Judge Hummel that, because it is clear that the issues with Plaintiff's complaint are substantive and not something that can be corrected by better pleading, Plaintiff will not be afforded an opportunity to amend his complaint. *See Phillips v. New York*, No. 5:13-cv-927, 2013 WL 5703629, *5 (N.D.N.Y. Oct. 17, 2013) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

Accordingly, the Court hereby

**ORDERS** that Magistrate Judge Hummel's November 21, 2024, Report-Recommendation and Order (Dkt. No. 8) is **ADOPTED in its entirety** for the reasons set forth herein; and the Court further

**ORDERS** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED without leave to amend**; and the Court further

**ORDERS** that Plaintiff's motion for permission to file electronically (Dkt. No. 4) and motion to appoint counsel (Dkt. No. 5) are **DENIED as moot**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2025 WL 247901

---

End of Document    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:22-cv-00638-DNH-TWD    Document 69    Filed 09/03/25    Page 28 of 72
Shakur v. Thomas, Not Reported in Fed. Supp. (2016)
2016 WL 11478237

2016 WL 11478237
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Shabaka SHAKUR, Plaintiff,

v.

Justin THOMAS, et al., Defendants.

9:14-CV-00427 (MAD/TWD)

|

Signed 06/02/2016

**Attorneys and Law Firms**

SHABAKA SHAKUR, Plaintiff pro se, 145-38 106 Avenue, Queens, NY 11435.

HON. ERIC T. SCHNEIDERMAN, OF COUNSEL: NICOLE E. HAIMSON, ESQ., The Capitol, Albany, NY 12224, Attorney General for the State of New York, Counsel for Defendants.

## ORDER AND REPORT-RECOMMENDATION

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

*1 This pro se prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Mae A. D'Agostino, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Currently before the Court for report and recommendation is Defendants' motion to dismiss Plaintiff's Amended Complaint (Dkt. No. 39) for failure to state a claim upon which relief may be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 41.) For the reasons that follow, the Court recommends that Defendants' motion to dismiss be granted in part and denied in part.

## I. PROCEDURAL HISTORY

On April 16, 2014, Plaintiff Shabaka Shakur commenced this civil rights action asserting claims for the violation of his rights protected under the First, Eighth, and Fourteenth Amendments to the United States Constitution and the Religious Land Use and Institutionalized Person Act ("RLUIPA"), 42 U.S.C. § 2000cc, *et seq.*, arising out of his confinement at Auburn Correctional Facility ("Auburn") from September 2012 through September 2013.[1] (Dkt. No. 1.) Plaintiff originally named eleven Department of Corrections and Community Supervision ("DOCCS") employees working at Auburn as Defendants. (Dkt. No. 1.)

[1]     Plaintiff was released from Department of Corrections and Community Supervision custody in June 2015. (Dkt. No. 27.)

### A. Initial Review

By Decision and Order dated May 1, 2015, the Court dismissed all but three of Plaintiff's causes of action on initial review pursuant to 28 U.S.C. §§ 1915(e) and 1915A. (Dkt. No. 12.) The following causes of action survived initial review: (1) First Amendment Free Exercise Clause claim against Defendants Corrections Officer Pelc ("Pelc"), food service administrator Martin ("Martin"), Deputy Superintendent Thomas ("Thomas"), Corrections Officer Hewite ("Hewite"), and G. Steinberg ("Steinberg"); (2) First Amendment retaliation claims against Defendant Security Captain Chutty ("Chutty"), Corrections Officer Gifford ("Gifford"), Corrections Captain Fagan ("Fagan"), and Steinberg; and (3) Plaintiff's Fourteenth Amendment

Shakur v. Thomas, Not Reported in Fed. Supp. (2016)

2016 WL 11478237

Equal Protection claim against Defendants Chutty and Gifford. *Id.* A number of Plaintiff's claims were dismissed without prejudice and with leave to amend. (*See* Dkt. Nos. 6 and 12.)

### B. Motion to File an Amended Complaint

On September 16, 2015, Plaintiff moved for leave to file an amended complaint. (Dkt. No. 34.) Defendants did not oppose the Plaintiff's motion, subject to the Court's review and Defendants' ability to fully respond. (Dkt. No. 35.) By Decision and Order dated September 28, 2015, the Court granted in part and denied in part Plaintiff's motion. (Dkt. No. 38.) [2]

[2]    The Amended Complaint (Dkt. No. 39) as accepted by the Court (Dkt. No. 38) became the operative pleading in this case.

The Court granted the motion to amend as to the following claims: (1) violation of Plaintiff's rights under the First Amendment Free Exercise Clause by Defendants Pelc, Martin, and Thomas in denying Plaintiff an Eid ul-Adha ("Eid") religious meal on October 27, 2012, (Dkt. No. 39 at ¶¶ 108-110); (2) violation of Plaintiff's rights under the First Amendment Free Exercise Clause by Defendant Thomas in refusing to provide Plaintiff with halal meals and sahur bags from July 29, 2013, through August 3, 2013, thereby preventing him from participating in the mandatory religious fasting during Ramadan, *id.* at ¶¶ 111-12; (3) violation of Plaintiff's rights under the First Amendment Free Exercise Clause by Defendants Hewite and Steinberg in preventing Plaintiff from participating in the religious congregational prayer during Shawwal and denying him a halal meal on August 12, 2013, *id.* at ¶¶ 113-15; (4) retaliation in violation of Plaintiff's First Amendment rights and violation of his rights under the Fourteenth Amendment Equal Protection Clause by Defendants Chutty and Gifford with regard to the September 17, 2012, urine test, cell search, planting a weapon in Plaintiff's cell, and filing a false misbehavior report against Plaintiff, resulting in his placement in the Special Housing Unit ("SHU"), *id.* at ¶¶ 118-19; (5) First Amendment retaliation claim against Defendant Steinberg with regard to the August 12, 2013, urine test and retaliatory false misbehavior report, *id.* at ¶ 120; and (6) First Amendment retaliation claim against Defendant Fagan for placing Plaintiff in administrative segregation in retaliation for filing grievances to redress violations of his rights under the First Amendment Free Exercise Clause. *Id.* at ¶ 121.

## II. BACKGROUND

### A. September 12, 2012

**\*2**  In September of 2012, while confined at Auburn, Plaintiff was the inmate facilitator for the Muslim Shia community at Auburn, and Rashad Ruhani ("Ruhani") was the inmate facilitator for the Muslim Sunni community. (Dkt. No. 39 at ¶ 21.) On September 12, 2012, Plaintiff learned from Ruhani that they were the subject of an investigation by Corrections Sergeant Hai because they were allegedly planning a work stoppage/protest for September 13, 2012, in commemoration of the Attica riot in 1971. *Id.* at ¶¶ 20, 22. The investigation had been ordered by Defendant Chutty. *Id.* at ¶ 23.

There was no protest on September 13, 2012. *Id.* at ¶ 24. On September 17, 2012, Defendant Chutty ordered Plaintiff to undergo a urine test, which was negative for drugs. *Id.* at ¶¶ 25-26. Upon Defendant Chutty's orders, Plaintiff's cell was then searched by Defendant Gifford. (Dkt. No. 39 at ¶ 27.) According to Plaintiff, Defendant Gifford planted a weapon in his cell, and Plaintiff was immediately escorted to Special Housing Unit ("SHU") and served with a false misbehavior report because of the weapon. *Id.* at ¶¶ 28-30. On September 19, 2012, Plaintiff was told by Auburn Muslim Chaplain, Ali Muhsin, that Ruhani had also been brought to SHU for a weapon allegedly found in his cell by Defendant Gifford on September 17, 2012. *Id.* at ¶ 32. The Chaplain told Plaintiff that he believed Plaintiff was being targeted because of his position as Muslim Shia inmate facilitator. *Id.* at ¶ 31. Plaintiff was found guilty of weapon possession at the hearing on the misbehavior report and given ninety days in SHU, including ninety days loss of phone, packages, and commissary. *Id.* at ¶ 33. Plaintiff's appeal was denied by the DOCCS central office. *Id.* at ¶ 55. However, on or about April 29, 2013, the misbehavior report of September 17, 2012, was expunged after review by Superintendent Graham. *Id.* at ¶ 62. Plaintiff's request to be reinstated to honor block status in light of the expungement was denied per Defendant Chutty. *Id.* at ¶ 63.

2016 WL 11478237

**B. Eid ul-Adha Religious Feast**

Plaintiff, registered as a member of the Islamic faith while at Auburn, was in SHU at the time of the Eid feast in October of 2012. (*Id.* at ¶ 38.) The policy in place at Auburn allowed prisoners confined to SHU to observe the Eid by making the Eid prayer in their cells, and they were provided a halal meal. *Id.* at ¶ 39. Although Plaintiff placed Defendant Pelc on notice that he was a practicing Muslim and would be observing the Eid feast in his cell, on the morning of October 27, 2012, when Plaintiff inquired about his halal meal at lunch time, he was told by Pelc that the mess hall had not sent any halal meals to SHU. *Id.* at ¶¶ 40-41. Plaintiff did not receive his halal meal and since he was in SHU had no alternative halal food supply of his own. (Dkt. No. 39 at ¶ 44.)

Plaintiff wrote to Defendant Martin to find out why he had not been given his halal meal, and she responded that the halal meals had been prepared and delivered to SHU. *Id.* at ¶ 48. An investigation revealed that none of the Muslim inmates in SHU had received a halal meal on October 27, 2012. *Id.* at ¶ 53. Plaintiff filed a grievance regarding the denial of the halal meal and requesting that a procedure be implemented to ensure that inmates in SHU receive their religious meals. *Id.* at ¶ 51. The grievance response from Defendant Thomas stated that the food service had been reminded to closely monitor special diet delivery locations but did not address Plaintiff's suggestion for implementation of a special procedure. *Id.* at ¶ 56.

**C. Prison Shutdown During Ramadan in 2013**

**\*3** On July 8, 2013, Plaintiff began his thirty-day fast of Ramadan. (Dkt. No. 39 at ¶ 66.) Auburn was shut down for a routine facility search from July 29, 2013, to August 3, 2013, and during that time no halal meals or sahur bags were distributed.[3] *Id.* at ¶ 67, second ¶ 70. The Auburn Muslim Chaplain made an announcement to the Muslim community that he had asked Defendant Thomas to provide Muslim inmates with halal meals, and Thomas had refused. *Id.* at ¶ 71.

[3]    Sahur is the light pre-dawn meal eaten by Muslims during Ramadan. *See* http://en.islamway.net/article/12571/suhur-pre-dawn-meal (last visited May 25, 2016).

Plaintiff filed a grievance regarding the halal meals and sahur bags on August 7, 2013, and on August 8, 2013, was warned by an inmate who worked as a prison grievance clerk, that Plaintiff's name had come up in a discussion among officers in the grievance office as a litigator who would cause trouble over the prison shutdown. (Dkt. No. 39 at ¶¶ 72-73.) On August 11, 2013, Plaintiff was interviewed by a crisis intervention officer who indicated he had been assigned by the security captain to investigate allegations that Plaintiff was "riling up" the Muslim inmates to protest the shutdown of the prison during Ramadan. *Id.* at ¶ 74. Plaintiff assured the officer that he was not instigating problems and had followed the facility sanctioned process of filing a grievance. *Id.* at ¶ 75. On August 29, 2013, the Inmate Grievance Review Committee ("IGRC") reached a deadlocked decision on Plaintiff's August 7, 2013, grievance with Defendant Martin stating that the facility did not have to provide the Muslim inmates with their halal meal. *Id.* at ¶ 97. Plaintiff passed the grievance on to Superintendent Graham. *Id.*

**D. Urine Test**

On August 12, 2013, while Plaintiff was in the mosque during the six day fast of Shawwal, he was summoned for a urine test and was unable to make the Shawwal congregational prayer or have his halal meal. *Id.* at ¶ 76. Plaintiff was told by Defendant Hewite that the test had been authorized based on confidential information. *Id.* at ¶ 77. Plaintiff informed Defendant Hewite that he had been fasting for fifteen hours and was dehydrated. *Id.* at ¶ 78. Plaintiff requested water in accordance with a DOCCS directive governing urine testing and was told by Hewite that he would be given three cups of water, one each hour. *Id.* at ¶¶ 78-79. Plaintiff also requested that his halal meal be sent to the clinic where he had been taken for the urine test, or to his cell. *Id.* at ¶ 78. Hewite gave Plaintiff one cup of water at approximately 8:30pm and placed him in the waiting pens. *Id.* at ¶¶ 79-80. Plaintiff was not given the remaining cups of water. *Id.* at ¶ 82. At 11:25pm, Defendant Steinberg removed Plaintiff from the waiting area and ordered him to urinate. *Id.* at ¶ 81. When Plaintiff explained to Steinberg that he had not been given the three cups of water and could not urinate, Steinberg escorted Plaintiff to his cell and placed him in keeplock. (Dkt. No. 39 at ¶ 82.) Plaintiff was not given his halal meal or anything else to eat. *Id.* at ¶ 83.

Case 9:22-cv-00638-DNH-TWD    Document 69    Filed 09/03/25    Page 31 of 72

Shakur v. Thomas, Not Reported in Fed. Supp. (2016)

2016 WL 11478237

On August 13, 2013, Plaintiff was served with what he claims to have been a fabricated misbehavior report in which Defendant Steinberg falsely implied that he had personally given Plaintiff three cups of water. *Id.* at ¶ 84. At the August 16, 2013, hearing on the urine test misbehavior report, Plaintiff argued that the misbehavior report was false and was written in response to a grievance filed by Plaintiff. *Id.* at ¶ 90. Plaintiff was found not guilty and the charge was dismissed. *Id.* at ¶ 91.

**\*4**  On August 15, 2013, Plaintiff filed a grievance over not having been given his halal meal on August 12, 2013. *Id.* at ¶ 89. On September 5, 2013, the IGRC reached a deadlocked decision on Plaintiff's grievance. *Id.* at ¶ 98. The grievance was passed on to Superintendent Graham. *Id.* On September 16, 2013, Plaintiff received a decision on his grievance from Graham, who concluded that Plaintiff should have been given his halal meal for Shawwal on August 12, 2013. *Id.* at ¶ 104.

### E. Administrative Segregation

On August 13, 2013, Plaintiff was taken to SHU and placed in administrative segregation based upon confidential information. (Dkt. No. 39 at ¶ 85.) On August 15, 2013, Plaintiff was served with an administrative segregation recommendation authored by Defendant Fagan and alleging that Plaintiff was a "facilitator of information" and detrimental to the safety and security of the facility. *Id.* at ¶ 88. At Plaintiff's administrative segregation hearing, which commenced on August 23, 2013, there was testimony from two Muslim inmates that they had also had their cells searched, urine taken, and were placed in SHU on administrative segregation after filing complaints regarding the Ramadan shutdown. *Id.* at ¶¶ 93-943. On August 28, 2013, hearing officer Deputy Superintendent Robinson upheld the administrative segregation stating that while he did not believe Plaintiff was a threat, he could not risk placing him back in general population and risk having an incident occur. *Id.* at ¶ 96. Plaintiff was transferred to Wende Correctional Facility just over a week later on September 6, 2013. *Id.* at 99. Albert Prack, DOCCS Director of SHU, subsequently upheld the determination on the administrative segregation on appeal. *Id.* at ¶ 107.

### III. LEGAL STANDARD GOVERNING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

A defendant may move to dismiss a complaint "for failure to state a claim upon which relief can be granted" under Rule 12(b)(6). The motion tests the formal legal sufficiency of the complaint by determining whether it conforms to Federal Rule of Civil Procedure 8(a)(2), which requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bush v. Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y. 1972). Satisfaction of the requirement that a plaintiff "show" that he or she is entitled to relief requires that the complaint "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ). "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Iqbal,* 556 U.S. at 679 (internal citation and punctuation omitted).

A complaint may be dismissed, pursuant to Rule 12(b)(6), only where it appears that there are not "enough facts to state a claim that is plausible on its face." *Twombly.* 550 U.S. at 570. While Rule 8(a)(2) "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-harmed-me-accusation." *Iqbal,* 556 U.S. at 678 (citation and internal quotation marks omitted). A complaint which "tenders 'naked assertion[s] devoid of 'further factual enhancement' " does not suffice. *Id.* (citation omitted).

**\*5**  "In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

In considering a Rule 12(b)(6) motion, "the court considers the complaint, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (citation and internal quotation marks omitted); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (A court may consider "any written instrument attached [to the complaint] as an exhibit or documents incorporated in it by reference."). "The mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual allegations are consistent with the allegations of the Plaintiff's complaint." *Robles v. Bleau*, No. 07-CV-0464, 2008 WL 4693153, at *6 and n.41 (N.D.N.Y. Oct. 22, 2008) [4] (collecting cases); *Donhauser v. Goord*, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004) (where a *pro se* is faced with a motion to dismiss, a court may consider materials outside of the complaint "to the extent they are consistent with the allegations in the complaint."), *vacated in part on other grounds*, 317 F. Supp. 2d 160 (N.D.N.Y. 2004); *see also Gil v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987) (in reviewing district court's dismissal of *pro se* plaintiff's claim, Second Circuit considered plaintiff's affidavit submitted in opposition to motion to dismiss). The Court has taken judicial notice of papers filed in other litigation involving Plaintiff and has considered documents in Plaintiff's submissions in opposition to the extent they are consistent with the allegations in Plaintiff's Amended Complaint.

[4]     The Court will provide Plaintiff with copies of all unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Where a party is proceeding pro se, the court is obliged to "read [the pro se party's] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (citations omitted); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (courts remain obligated to construe pro se complaints liberally even after *Twombly* ).

Where a pro se complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Id.* (citation omitted).

## IV. ANALYSIS

### A. Denial of Plaintiff's Eid ul-Adha Meal (First Cause of Action)

 *6  Plaintiff claims that Defendants Pelc, Martin, and Thomas violated the First Amendment Free Exercise Clause by denying him a religious meal on the Eid festival on October 27, 2012. (Dkt. No. 39 at ¶¶ 108-110.) "Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause." *Ford v. McGinnis*, 352 F. 3d 582, 588 (2d Cir. 2003) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974) ). The reach of the free exercise clause extends to the "right to participate in congregate religious services," *Salahuddin v. Coughlin*, 993 F.2d 306, 308 (2d Cir. 1993), and to "an inmate's diet and participation in religious meals." *Johnson v. Guiffere*, No. 9:04-CV-57 (DNH/DEP), 2007 WL 3046703, at *4 (N.D.N.Y. Oct. 17, 2007) ("Courts have generally found that to deny prison inmates the provision of food that satisfies the dictates of their faith does unconstitutionally burden their free exercise rights.").

In *Holland v. Goord*, 758 F.3d 215, 220-21 (2d Cir. 2014), the Second Circuit clarified that it had yet to decide "whether, to state a claim under the First Amendment's Free Exercise Clause, a 'prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs.' " (quoting *Salahuddin v. Goord*, 467 F.3d 263, 274-75 (2d Cir. 2006) ). Because Plaintiff argues in this case that his sincerely held religious beliefs were substantially burdened by denial of the Eid meal (Dkt. No. 43 at 4), the threshold requirement issue need not be resolved. *See Williams v. Does*, No. 15-692, 2016 WL 2610028 (Mem), at *1 (2d Cir. May 6, 2016). Assuming that the substantial burden requirement does apply, Second Circuit

Shakur v. Thomas, Not Reported in Fed. Supp. (2016)

2016 WL 11478237

precedent leads to the conclusion that denial of Plaintiff's Eid religious meal did substantially burden what the Court accepts to be, for purposes of this motion, Plaintiff's sincerely held religious beliefs.

Defendants seek dismissal of Plaintiff's claim on the grounds that denial of one or two religious meals is *de minimis* and does not substantially burden an inmate's sincerely held religious beliefs. (Dkt. No. 41-1 at 6.[5]) In *McEachin v. McGuinnis*, 357 F.3d 197, 203 n.6 (2d Cir. 2004), the Second Circuit recognized that "[t]here may be inconveniences [to one's religious practices] so trivial that they are most properly ignored." A number of district court decisions in the Circuit have subsequently concluded that the denial of a single or small number of religious meals represents a *de minimis*, or insubstantial burden on an inmate's ability to freely exercise his religion. *See, e.g., Wilson v. Woodburne Correctional Facility,* No. 9:11-CV-1088 (DNH/ATB), 2012 WL 1377615, at *3 (N.D.N.Y. March 21, 2012) ("The withholding of a single meal ... is at most, a *de minimis* burden on plaintiff's religious expression.") (collecting cases); *Thaxton v. Simmons*, No. 10-CV-1318, 2012 WL 360104, at *6 (N.D.N.Y. Jan. 5, 2012) ("[T]he minor disruption of two kosher meals during a four-month period can hardly be called a substantial burden. At best, these incidents present a *de minimis,* or insubstantial, burden on Plaintiff's ability to freely exercise his religion.)

[5]    **Error! Main Document Only.** Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.

In seeking dismissal of Plaintiff's claim, however, Defendants have completely ignored the Second Circuit decision in *Ford*, 352 F.3d at 595 n.12, in which the Court recognized that Eid religious meals are "sufficiently unique in [their] importance within Islam to distinguish the present case from those in which the mere inability to provide a small number of meals commensurate with a prisoner's religious dietary restrictions was found to be a *de minimis* burden." *See also Shakur v. Selsky*, 391 F.3d 106, 120 (2d Cir. 2004) (reversing the district court holding that "the missing of a single Eid ul Fitr feast simply does not amount to a 'substantial burden' on his religious exercise.").

 **\*7**   In light of the Second Circuit decisions in *Ford* and *Selsky*, the Court finds that Plaintiff has stated a claim for violation of the First Amendment Free Exercise Clause against Defendants Pelc, Martin, and Thomas with regard to being deprived of his Eid religious meal, and recommends that their motion to dismiss Plaintiff's first cause of action for failure to state a claim be denied.

### B. Denial of Halal Meals and Sahur Bags During Ramadan (Second Cause of Action)

Plaintiff also claims that Defendant Thomas violated his First Amendment Free Exercise Clause rights by refusing to provide him with halal meals and sahur bags during the prison shutdown from July 29, 2013, through August 3, 2013, thereby preventing him from participating in the mandatory religious fasting during Ramadan. (Dkt. No. 39 at ¶¶ 111-12.)

In *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987), the Supreme Court acknowledged that while prisoners do not abandon their constitutional rights when they become incarcerated, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations of our prison system." (citation and internal quotation marks omitted). "Accordingly, the Court held that a challenged prison regulation [or conduct] is judged 'under a reasonableness test less restrictive than that ordinarily applied': a regulation [or conduct] that burdens a protected right passes constitutional muster 'if it is reasonably related to legitimate penological interests.' " *Salahuddin*, 467 F.3d at 274 (quoting *O'Lone*, 482 U.S. at 349) (some internal quotation marks omitted). Once a plaintiff has established that a sincere religious belief has been substantially burdened, "[t]he defendants then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct; the burden remains with the prisoner to show that these articulated concerns were irrational." *Id.* at 275 (quoting *Ford*, 352 F. 3d at 595).

When determining whether an action that impinges on an inmate's constitutional rights can be sustained as reasonably related to a valid legitimate penological interest, a court evaluates four factors: (1) whether there is a valid, rational connection between the action and the claimed legitimate penological interest; (2) whether there are alternative means of exercising the right that remain open to inmates; (3) the impact that accommodation of the asserted constitutional right will have on fellow inmates or

2016 WL 11478237

prison staff; and (4) whether there is an alternative to the conduct that accommodates the asserted constitutional right at a *de minimis* cost to the legitimate penological interest. *Turner v. Safley*, 482 U.S. 78, 89-91 (1987) (citations omitted).

Defendants have conceded solely for purposes of this motion that the denial of religious meals for six days of Ramadan burdened Plaintiff's sincerely held religious beliefs. (Dkt. No. 41-1 at 10.) They seek dismissal of the claim instead on the ground that there was a legitimate penological purpose for the denial of halal meals and sahur bags during the prison shutdown. (Dkt. No. 41-1 at 9-12.)

In support of their motion for dismissal of the claim, Defendants rely on Plaintiff's failure to contest that the shutdown was imposed for legitimate reasons, namely, a routine facility search.[6] *Id.* at 12. The question, however, is not whether there was a legitimate penological interest for the shutdown, but rather whether there was a legitimate penological interest in withholding Ramadan meals from Muslim inmates during the shutdown.

[6]    Despite acknowledging that the lockdown was for a routine facility search, Defendants rely on *McLeod v. Scully*, No. 81 Civ. 3139 (RLC), 1984 WL 692, at *1 (S.D.N.Y. July 30, 1984) in support of their argument that "there are clearly legitimate penological purposes for any denial of Plaintiff's religious meals during the Auburn C.F. lockdown." (Dkt. No. 41-1 at 11.) The lockdown in *Scully*, however, was hardly for a routine facility search. In *Scully*, a lockdown was ordered when a corrections officer was reported missing on duty and there had been an unsuccessful initial search to locate her. The lockdown in *Scully* was continued after the body of the officer, who had been brutally murdered, was found the following day in a landfill twenty miles from the correctional facility. *Id.* Given the dramatic reason for the lockdown in *Scully*, Defendants' reliance on the court's description of a lockdown *Scully* as "undoubtedly one of the most extreme and disruptive measures a prison can impose ... [where] '[g]enerally, dining room meals are suspended and in some cases, only two meals per day are served for a period of time," to establish legitimate penological interest is questionable. *Id.* at *1.

**\*8**    "[The] Turner factors are highly fact-intensive and, therefore commonly cannot be adequately addressed until the summary judgment stage." *Colón v. Davis*, No. 11-cv-01169-WJM-KMT, 2012 WL 4120001, at *6 (D. Colo. Aug. 8, 2012); *Beerheide v. Suthers*, 286 F.3d 1179, 1185 (10th Cir. 2002) ("*Turner* thus requires courts, on a case-by-case basis, to look closely at the facts of a particular case and the specific regulations and interests of the prison system in determining whether prisoner's constitutional rights may be curtailed."); *Ford v. Fischer*, No. 09-CV-723, 2011 WL 856416, at *12 (N.D.N.Y. Jan. 31, 2011) ("Because prison officials have some burden to demonstrate a penological justification for restricting an inmate's right to marry, and to satisfy elements of the *Turner* test, such claims are not conducive to resolution in the context of a Rule 12(b)(6) motion to dismiss."); *Al-Owhali v. Mukasey*, No. 07-cv-02214-LTB-BNB, 2012 WL 5651033, at *11 (D. Colo. June 17, 2010) ("[The *Turner*] analysis requires facts that are not properly before the court on a motion to dismiss pursuant to Rule 12(b)(6).").

The *Turner* analysis required to determine whether Thomas had a legitimate penological interest in denying Plaintiff his halal meals and sahur bags during six days of Ramadan due to the facility shutdown will be fact intensive. Therefore, the Court therefore concludes that the issue of legitimate penological interest claim cannot be resolved in the context of a Rule 12(b)(6) motion and recommends that Thomas's motion to dismiss the free exercise claim alleged in Plaintiff's second cause of action for failure to state a claim be denied.

### C. Denial of Participation in Congregational Prayer During Shawwal and Halal Meal (Third Cause of Action)

Plaintiff has alleged that Defendants Hewite and Steinberg violated his First Amendment Free Exercise Clause rights by preventing him from participating in the religious congregational prayer during Shawwal and denying him a halal meal without any legitimate penological interest on August 12, 2013. (Dkt. No. 39 at ¶¶ 113-15.) Defendants argue that while Plaintiff has alleged that Hewite and Steinberg denied him the right to congregational prayer during the Muslim holiday of Shawwal, missing one or two religious services is *de minimis*, and that Plaintiff has in any event failed to allege he was prevented from worshiping privately in his cell, or participating in other religious ceremonies, prayer, or discussion. *Id.* at 7. Defendants further assert that being denied one or two religious meals over the course of approximately 359 days was *de minimis*. *Id.* at 6.

Shakur v. Thomas, Not Reported in Fed. Supp. (2016)

2016 WL 11478237

In Plaintiff's opposing papers, which as noted above may properly be considered by the Court as effectively amending his Amended Complaint, *Robles*, 2008 WL 4693153, at *6, n.41, he has explained the religious significance of his removal from the Shawwal congregational prayer on August 12, 2013. (Dkt. No. 43 at 4-5.) According to Plaintiff, the significance of the Shawwal congregational prayer, which is followed by a supplication and halal meal, is that it allows for the proper breaking of the Shawwal fast. *Id.* at 5. In addition, Plaintiff points out that, contrary to Defendants' claim, he was not allowed to go to his cell to worship privately because he was taken from the mosque to the clinic for the urine test. *Id.*

"A substantial burden exists where the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996) (quotation and alterations omitted). In *McEachin*, 357 F.3d at 203, the Second Circuit explained that "[w]e have reasoned that when determining whether a prisoner's religious beliefs have been substantially burdened, the relevant question is whether the infringed-upon religious activity is considered central or important to the prisoner's practice of his religion. *See also Lopez v. Cipolini*, 136 F. Supp. 3d 570, 588 (S.D.N.Y. 2015) (dismissing without prejudice plaintiff's claim that her religious beliefs was substantially burdened by missing two religious services where plaintiff did not allege that the services were "central or important to [her] faith.") (quoting *Rossi v. Fischer*, No. 13-cv-3167 (PKC)(DF), 2015 WL 769551, at *8 (S.D.N.Y. Feb. 24, 2015) (finding that plaintiff, who had shown that celebrating the four holy days at issue, refraining from work and programming, attending a congregate worship service, and sharing a holy day meal were central or important to his faith, had plausibly alleged a substantial burden on his religious beliefs) ).

**\*9** Recently, in its unpublished decision in *Williams* 2016 WL 2610028, at *1, the Second Circuit, in rejecting the district court's determination that the burden on the plaintiff's sincerely held religious beliefs was *de minimis* because only a few of his Ramadan meals had been delivered prematurely, explained that a proper focus in considering substantial burden is on whether the religious expression of which Plaintiff has been deprived is considered by him to be "central or important" to the practice of his religion, not only whether the deprivation occurred a small number of times. *Id.* The Court finds that Plaintiff, in his Amended Complaint as amended by his opposition papers, has made a plausible showing that the Shawwal congregate prayer and supplication, and the halal meal intended to break the fast were important to his religious faith, and that the denial of those things by Defendants Hewite and Steinberg as a result of ordering Plaintiff to undergo a urine test substantially burdened his sincerely held religious beliefs. Therefore, the Court recommends that Defendants Hewite and Steinberg's motion to dismiss the third cause of action in Plaintiff's Amended Complaint be denied. [7]

[7] Defendants argue that ordering Plaintiff to undergo a urine test on August 12, 2013, did not violate his rights under the First Amendment Free Exercise Clause by requiring him to drink water during the Shawwal fast. (Dkt. No. 41-1 at 8-9.) *See Holland*, 758 F.3d at 221 (ordering plaintiff to drink water in violation of his Ramadan fast to produce a urine sample substantially burdened his religious expression where plaintiff submitted evidence that breaking his fast prior to sundown would be a grave sin). Plaintiff does not claim that he was forced to drink water and has not asserted a free exercise claim regarding drinking water so that he could comply with the urine test in his Amended Complaint. (Dkt. Nos. 39 at ¶¶ 113-15; 41-1 at 8-9.) Plaintiff has alleged that he requested that he be given the three cups of water he was entitled to under a DOCCS directive. (Dkt. No. 39 at ¶ 77.) Moreover, in his opposition papers, Plaintiff states that Defendants did not force him to drink water. (Dkt. No. 43 at 8.)

**D. Retaliation Claim against Defendants Chutty and Gifford (Fourth Cause of Action)**

Plaintiff claims that Defendants Chutty and Gifford violated his First Amendment right to freely exercise his religious beliefs when they retaliated against him because of his leadership position in the Muslim community as Muslim Shia inmate facilitator by forcing him to undergo a urine test, searching his cell, planting a weapon during the search, filing a false misbehavior report, and placing him in SHU. (Dkt. No. 39 at ¶¶ 24-30, 118-19.)

To prevail on a First Amendment retaliation claim, an inmate must establish "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) there was a causal connection between the protected speech [or conduct] and the adverse action." *Holland,* 758 F.3d at 225 (quoting *Espinal v. Goord*, 558 F.3d 119, 128

Shakur v. Thomas, Not Reported in Fed. Supp. (2016)

2016 WL 11478237

(2d Cir. 2009) ); *see also Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (quoting *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001), *overruled on other grounds, Swierkiewicz v. Sorema,* 534 U.S. 506, 508 (2002) ). "Adverse action" for purposes of a retaliation claim has been defined objectively as "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising ... constitutional rights." *Pidlypchak*, 389 F.3d at 381. The Second Circuit has made clear that the objective test applies even where a particular plaintiff was not himself subjectively deterred and continued the protected conduct. *Id.*

Several factors may be considered in determining whether a causal connection exists between the plaintiff's protected activity and a prison official's actions. *Baskerville v. Blot*, 224 F. Supp. 2d 723, 732 (N.D.N.Y. 2002) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) ). Those factors include: (1) the temporal proximity between the protected activity and the alleged retaliatory act; (2) the inmate's prior good disciplinary record; (3) vindication at a hearing on the matter; and (4) statements by the defendant concerning his or her motivation. *Id.* (citing *Colon*, 58 F.3d at 872-73). The causal connection must be sufficient to support an inference that the protected conduct played a substantial part in the adverse action." *Id.*

**\*10** Because of the relative ease with which claims of retaliation can be incanted, however, courts have scrutinized such retaliation claims with particular care. *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983), *overruled on other grounds, Swierkiewicz,* 534 U.S. 506. As the Second Circuit has noted,

> [t]his is true for several reasons. First, claims of retaliation are difficult to dispose of on the pleadings because they involve questions of intent and are therefore easily fabricated. Second, prisoners' claims of retaliation pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act.

Once the plaintiff has made the requisite showing to state a claim for retaliation, the burden shifts to the defendant to show that he would have taken exactly the same action absent the improper motive. *Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) (citing *Mt. Healthy City Sch. Dist. Bd. Of Educ. V. Doyle*, 429 U.S. 274, 287 (1977) ).

### 1. Urine Test

Prison inmates retain First Amendment protection of the free exercise of religion. *O'Lone*, 482 U.S. at 348. The Court finds that for purposes of this motion to dismiss Plaintiff has made a plausible showing that maintaining a leadership position in the Muslim community as Muslim Shia inmate facilitator at Auburn was conduct protected under the First Amendment for purposes of his retaliation claim against Chutty and Gifford.

However, the Court also finds that requiring Plaintiff to undergo a single urine test on September 17, 2012, does not constitute adverse action for purposes of a retaliation claim. In *Bumpus v. Canfield*, 495 F. Supp. 2d 316, 327 (W.D.N.Y. 2007), the court explained that, "[p]risoners may be required to tolerate more than average citizens, before a [retaliatory] action taken against them is considered adverse. Urine tests are a fact of prison life, and ... one urine test would [not] chill a prisoner of ordinary firmness from filing grievances." (quoting, *inter alia, Dawes,* 239 F.3d at 491 (2d Cir. 2001) (internal quotation marks omitted) ). *See also Fann v. Arnold*, No. 14-CV-6187-FPG, 2016 WL 2858927, at \*3 (W.D.N.Y. May 16, 2016) (subjecting plaintiff to a single urine test did not constitute adverse action); *Partak v. Behrle*, No. 9:09-CV-1256 (FJS/ATB), 2011 WL 7629500, at \*14 (N.D.N.Y. Sept. 12, 2011) (three urine tests in three days did not constitute adverse action for purposes of a retaliation claim); *Carl v. Griffin*, No. 08 Civ. 4981(RMB) (MHD), 2011 WL 723553, at \*5 (S.D.N.Y. March 2, 2011) (being forced to

Case 9:22-cv-00638-DNH-TWD    Document 69    Filed 09/03/25    Page 37 of 72
Shakur v. Thomas, Not Reported in Fed. Supp. (2016)
2016 WL 11478237

give a urine sample on one occasion not an adverse action because it is not sufficient to deter a person of ordinary firmness from exercising First Amendment rights).

Therefore, the Court finds that Plaintiff has failed to state a retaliation claim against Chutty and Gifford with regard to ordering him to undergo a urine test on September 12, 2012.

### 2. Cell Search

"It is well-settled that retaliatory cell searches are not actionable under section 1983." *Partak,* 2011 WL 7629500, at *14 (citing *Salahuddin v. Mead,* No. 95 Civ. 8581 (MBM), 2002 WL 1968329, at * 5 (S.D.N.Y. Aug. 26, 2002) ); *Jones v. Harris,* 665 F. Supp. 2d 384, 398 (S.D.N.Y. 2009) ("If a prisoner, who enjoys no Fourth Amendment privacy right in his cell, can be expected to tolerate such interruptions in the ordinary course, it is hard to see how the three searches of which plaintiff complains, taken together, would qualify as an 'adverse action' for purposes of the First Amendment retaliation analysis."); *Lashley v. Wakefield,* 367 F. Supp. 2d 461, 470 (W.D.N.Y. 2005) (no constitutional protection from retaliatory cell searches).

 **\*11**  Therefore, the Court finds that Plaintiff has failed to state a retaliation claim against Chutty and Gifford with regard to the cell search on September 12, 2012.

### 3. Planting a Weapon and False Misbehavior Report

The Court finds that Plaintiff has stated retaliation claims against Gifford with respect to his claim that Gifford planted a weapon in his cell (Dkt. No. 39 at ¶ 28), and against both Gifford and Chutty with respect to filing a false misbehavior report based upon the planted weapon in retaliation for Plaintiff's actions as Muslim Shia inmate facilitator. *Id.* at ¶ 118. According to Plaintiff, Gifford planted a weapon in his cell during a cell search, and as a result, Plaintiff was taken to SHU. (Dkt. No. 39 at ¶¶ 27-28.) Gifford, with Chutty's alleged involvement, thereafter authored a false misbehavior report alleging that Plaintiff was in possession of a weapon. *Id.* at ¶¶ 30, 118-19. Although Chutty is alleged to have instructed Gifford to search Plaintiff's cell and to have been involved in the filing of a false misbehavior report, there are no allegations in Plaintiff's Amended Complaint plausibly showing Chutty's involvement in the alleged planting of a weapon. *Id.* at ¶¶ 28, 118-19.

The planting of evidence and issuance of a false misbehavior report based upon that evidence has been found to constitute adverse action for purposes of a retaliation claim. *See Pidlypchak,* 389 F.3d at 384 (filing a false misbehavior report constitutes adverse action); *Colon,* 58 F.3d at 872-73 (finding adverse action where plaintiff alleged that prison officials had planted contraband in his cell); *Williams v. King,* 56 F. Supp. 3d 308, 328 (S.D.N.Y. 2014) (the alleged planting of contraband and allegedly disproportionate administrative actions that follow have been found serious enough to constitute adverse action for retaliation purposes), *order clarified on other grounds, Williams v, King,* 56 F. Supp. 3d 389 (S.D.N.Y. 2014); *Payne v. Axelrod,* 871 F. Supp. 1551, 1556 (N.D.N.Y. 1995) (valid § 1983 retaliation claim stated where prisoner alleged that corrections officers planted contraband evidence in his cell and falsely charged him with possession).

Furthermore, the allegations in Plaintiff's Amended Complaint plausibly show a causal connection between Plaintiff's position as Muslim Shia inmate facilitator and the alleged planting of a weapon in his cell by Gifford and false misbehavior report by Gifford and Chutty. Plaintiff has alleged that on September 19, 2012, he was informed by Muslim Chaplain Muhsin that he believed Plaintiff was being targeted because of his position as inmate facilitator. *Id.* at ¶ 31. The existence of a causal connection finds further support in the allegation that Muslim Sunni inmate facilitator Ruhani had been taken to SHU on the same day as Plaintiff for a weapon allegedly found in his cell by Defendant Gifford. *Id.* at ¶ 32.

Based on the foregoing, the Court finds that Plaintiff has stated a retaliation claim against Gifford with regard to planting a weapon in Plaintiff's cell and filing a false misbehavior report, and a retaliation claim against Chutty with respect to filing a

Case 9:22-cv-00638-DNH-TWD    Document 69    Filed 09/03/25    Page 38 of 72
Shakur v. Thomas, Not Reported in Fed. Supp. (2016)
2016 WL 11478237

false misbehavior report. The Court further finds that Plaintiff has failed to state a retaliation claim against Chutty with regard to planting a weapon in his cell.

### 4. Summary

**\*12** The Court recommends that Defendant Chutty and Gifford's motion to dismiss Plaintiff's retaliation claims with respect to the urine test and cell search be granted. Because the law is well-settled that neither a urine test nor a cell search constitutes an adverse action for retaliation purposes, the Court recommends that the dismissal be with prejudice. *See Cuoco,* 222 F.3d at 112 (opportunity to amend is not required where the problem is substantive such that a better pleading will not cure it).

In addition, Court recommends that Gifford's motion to dismiss Plaintiff's retaliation claim with respect to planting the weapon and the false misbehavior report be denied. As to Defendant Chutty, the Court recommends that the motion to dismiss Plaintiff's retaliation claim with respect to planting the weapon be granted and the claim be dismissed, and that the motion be denied as to the false misbehavior report. The Court further recommends that dismissal of the retaliation claim against Chutty with respect to planting the weapon be without prejudice and with leave to amend in light of Plaintiff's pro se status and the allegations in Plaintiff's Amended Complaint, which although inadequate to state a conspiracy claim, may suggest Chutty's possible involvement in the alleged planting of a weapon. *Id.* at ¶ 119.

### E. Fourteenth Amendment Equal Protection Claim Against Defendants Chutty and Gifford (Fourth Cause of Action)

Plaintiff claims that Defendants Chutty and Gifford violated his rights under the Fourteenth Amendment Equal Protection Clause because of his leadership position in the Muslim community by: (1) ordering an investigation by Sergeant Hai of Plaintiff and Muslim Sunni inmate facilitator Ruhani's involvement in a planned work stoppage/protest in commemoration of the Attica riot of 1971, while none of the non-muslim inmate facilitators were investigated; and (2) ordering a urine test, searching Plaintiff's cell, planting a weapon in Plaintiff's cell, and filing a false misbehavior report regarding the weapon, because of his position as a Muslim Shia inmate facilitator. (Dkt. No. 39 at ¶¶ 20, 22-23; 25-30; 118-19.)

The Equal Protection Clause provides that "no State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. This is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985). The Equal Protection Clause "bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if 'such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, *or malicious or bad faith intent to injure a person.*' " *Bizzarro v. Miranda,* 394 F.3d 82, 86 (2d Cir. 2005) (quoting *LeClair v. Saunders,* 627 F.2d 606, 609-10 (2d Cir. 1980) ) (emphasis added).

Thus, a plaintiff asserting an equal protection claim must allege facts plausibly suggesting that (1) he was treated differently from similarly situated individuals; and (2) the defendants treated him differently due to his membership in a suspect class, inhibited his exercise of a fundamental right, acted out of malice, or acted irrationally and arbitrarily. *Harlen Assocs. V. Incorp. Vill. of Mineola,* 273 F.3d 494, 499 (2d Cir. 2001).

Plaintiff claims that he was treated differently than non-Muslim inmate facilitators with respect to the investigation conducted by Sergeant Hai because of his leadership status in the Muslim community at Auburn. (Dkt. No. 39 at ¶ 21.) The Amended Complaint is, however, devoid of factual allegations providing information regarding the identity or religion of the non-Muslim inmate facilitators, or their connection, if any, to the alleged planning of a work stoppage/protest. Conclusory assertions are not sufficient to state a claim. *See Gebhardt v. Allspect,* 96 F. Supp. 2d 331, 333 (S.D.N.Y. 2000) ("Generally, conclusory assertions or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss") (citation and internal quotation marks and punctuation omitted). As to the urine test, cell search, planted weapon, and false misbehavior

Case 9:22-cv-00638-DNH-TWD    Document 69    Filed 09/03/25    Page 39 of 72

Shakur v. Thomas, Not Reported in Fed. Supp. (2016)

2016 WL 11478237

report, Plaintiff has not identified similarly situated persons who were treated differently. Given the foregoing, the Court finds that Plaintiff has failed to state an equal protection claim against Chutty and Gifford.

**\*13** Even if the Court were to find that Plaintiff had stated an equal protection claim, because the claim involves the same set of facts implicated in his retaliation claim against Chutty and Gifford, Plaintiff's equal protection claim would be redundant. *See Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005) (dismissing equal protection and Eighth Amendment claims based on the same circumstances as free exercise claim because free exercise claim "gains nothing by attracting additional constitutional labels"); *Williams v. Snyder*, 150 F. App'x 549, 552 (7th Cir. 2005) (dismissing as redundant equal protection claim which involved same set of facts as in retaliation and free exercise claims); *Washington v. Afify*, 968 F. Supp. 2d 532, 541 (W.D.N.Y. 2013) (claims that plaintiff has been "singled out" for retaliatory treatment are more properly addressed in the context of his retaliation claims); *Frisenda v. Incorp. Vill. Of Malverne*, 775 F. Supp. 2d 486, 518 (E.D.N.Y. 2011) ("To the extent that plaintiff also may be attempting to assert an equal protection claim based upon retaliation for First Amendment activity ..., such a claim is completely duplicative of the First Amendment retaliation claim and, therefore, should not go forward.").

Based upon the foregoing, the Court recommends dismissal of Plaintiff's equal protection claim against Chutty and Gifford with prejudice for failure to state a claim and on redundancy grounds inasmuch as it merely duplicates his retaliation claim against the Defendants.

### F. Retaliation Claim Against Defendant Steinberg (Fourth Cause of Action)

Plaintiff claims that Defendant Steinberg ordered him to undergo a urine test on August 12, 2013, and filed a false misbehavior report implying that he had given Plaintiff three cups of water and Plaintiff had failed to comply with the urine test. (Dkt. No. 39 at ¶¶ 82, 84.) Plaintiff claims that the actions were taken in retaliation for the filing of grievances by Plaintiff to redress the violation of his First Amendment right to the free exercise of his religion. *Id.* at ¶ 120.

The filing of grievances has been found to constitute protected First Amendment conduct for purposes of a retaliation claim. *See Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996) ("Retaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances guaranteed by the First and Fourteenth Amendment.") Therefore, Plaintiff has made a plausible showing as to the first element of a retaliation claim.

As discussed above, being required to undergo a urine test does not constitute adverse action for purposes of a retaliation claim, *Bumpus*, 495 F. Supp. 2d at 327, while the filing of a false misbehavior report does. *See Pidlypchak*, 389 F.3d at 384. On the question of a causal relationship, Plaintiff has failed to identify the grievance that he claims was the cause for Steinberg's retaliation. Allegations in the Amended Complaint, however, reveal that on or about August 7, 2013, less than a week before Steinberg's alleged retaliatory actions, Plaintiff filed a grievance regarding the failure of the facility to provide him with halal meals and sahur bags for a number of days during Ramadan. (Dkt. No. 39 at ¶ 72.) In addition, Plaintiff has alleged that on August 8, 2013, he was warned by the inmate grievance clerk that his name had come up in discussions by officers in the grievance office as a litigator who would cause trouble over the Ramadan matter. *Id.* at ¶ 73. On August 11, 2013, Plaintiff was interviewed by a crisis intervention officer assigned to investigate whether Plaintiff was riling up the Muslim inmate population to protest in response to the Ramadan matter. *Id.* at ¶ 74. The urine test, which led to the false misbehavior report occurred just a day after the interview. *Id.* at ¶ 12.

The temporal proximity between the protected activity and the alleged retaliatory act is one of the factors given consideration in determining causal connection. *See Baskerville,* 224 F. Supp. 2d at 732; *see also Bennet v. Goord*, 343 F.3d 133, 138 (2d Cir. 2003) ("the temporal proximity of an allegedly retaliatory misbehavior report to a grievance may serve as circumstantial evidence of retaliation.") (citation and internal quotation marks omitted). Although the Amended Complaint does not allege a direct connection between the grievance and Steinberg, the Court finds for purposes of Defendant's motion to dismiss, that the extremely close temporal proximity to the filing of Plaintiff's grievance, along with the allegation that two other Muslim inmates were subjected to urine tests after complaining about Ramadan, *id.* at ¶ 94, plausibly shows a causal connection between the grievance and the filing of the allegedly false misbehavior report by Steinberg.

Case 9:22-cv-00638-DNH-TWD    Document 69    Filed 09/03/25    Page 40 of 72
Shakur v. Thomas, Not Reported in Fed. Supp. (2016)
2016 WL 11478237

**\*14**  Therefore, the Court recommends that Steinberg's motion to dismiss be granted with prejudice as to Plaintiff's retaliation claim with regard to the urine test and be denied with regard to the alleged filing of a false misbehavior report.

### G. Retaliation Claim Against Defendant Fagan (Fourth Cause of Action)

Plaintiff has alleged that on August 15, 2013, he was served with an administrative segregation recommendation authored by Defendant Fagan, in which it was alleged that Plaintiff was a "facilitator of information" and detrimental to the safety and security of the facility. (Dkt. No. 39 at ¶ 88.) Plaintiff learned at his administrative segregation hearing that a member of the Muslim Sunni Community and a member of the NOI Muslim Community had both had their cell searched and urine taken and were also placed in SHU on administrative segregation after filing complaints about the shutdown during Ramadan. *Id.* at ¶ 94. Plaintiff was in administrative segregation from August 15, 2013, until his transfer to Wende Correctional Facility on September 6, 2013. *Id.* at ¶¶ 88, 99.

Plaintiff has alleged that he was placed in administrative segregation by Fagan for filing a grievance to redress the violations of his First Amendment rights to freely exercise his religion. *Id.* at ¶ 121. As noted above, Plaintiff filed a grievance on August 7, 2013, regarding the failure to provide him with halal meals and sahur bags for Ramadan during the lockdown. *Id.* at ¶ 72. In light of the temporal proximity between the filing of the grievance and Plaintiff's placement in administrative segregation, the Court finds that for purposes of this motion, Plaintiff has sufficiently alleged protected conduct.

In *Allah v. Seiverling*, 229 F.3d 220, 225-26 (3d Cir. 2000), the Third Court vacated a district court order that had dismissed the plaintiff's retaliation claim on initial review in part based upon a finding that being placed in administrative segregation did not constitute adverse action. The Court explained that

> [a]lthough it is possible that in some cases placement in administrative segregation would not deter a prisoner of ordinary firmness from exercising his or her First Amendment rights, we cannot say that such action can never amount to adverse action. On the contrary, whether a prisoner-plaintiff has met that prong of his or her retaliation claim will depend on the facts of a particular case.

In *Allah*, the plaintiff had specifically alleged in his complaint that his confinement in administrative segregation resulted, *inter alia*, in reduced access to recreation, phone calls, commissary, rehabilitative programs, and access to legal research materials, and he was confined to his cell for all but five hours a week. *Id.* at 225.

Although unlike the plaintiff in *Allah*, Plaintiff has not included allegations in his Amended Complaint regarding the conditions to which he was subjected during the approximately three weeks he remained in administrative segregation, the Amended Complaint does allege that he was placed in SHU for administrative segregation. *Id.* at ¶ 85. Thus, while Plaintiff may not ultimately be able to establish adverse action, the Court is not willing to find on Defendants' 12(b)(6) motion that Plaintiff has failed to sufficiently allege adverse action with regard to his retaliation claim against Fagan.

**\*15**  The Court finds for purposes of the motion to dismiss that Plaintiff has also made a plausible showing of a causal connection between his grievance regarding Ramadan and his being placed in administrative segregation. Not only was there a close temporal proximity, but according to Plaintiff's Amended Complaint, two other Muslin inmates had been placed in administrative segregation following their complaints regarding Ramadan. *Id.* at ¶ 94.

Therefore, based upon the foregoing, the Court recommends that Fagan's motion to dismiss Plaintiff's retaliation claim against him for failure to state a claim be denied.

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that Defendants' motion to dismiss (Dkt. No. 41) for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure be **GRANTED IN PART AND DENIED IN PART**; and it is further

**RECOMMENDED** that the motion to dismiss be **GRANTED** as to Plaintiff's retaliation claim against Defendants Chutty and Gifford with regard to ordering Plaintiff to undergo a urine test and searching his cell on September 12, 2012 (Fourth Cause of Action), and that the claim be **DISMISSED WITH PREJUDICE**; and it is further

**RECOMMENDED** that the motion to dismiss be **GRANTED** as to Plaintiff's retaliation claim against Defendant Chutty with regard to the planting of a weapon in Plaintiff's cell on September 12, 2012 (Fourth Cause of Action), and that the claim be **DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND**; and it is further

**RECOMMENDED** that the motion to dismiss be **GRANTED** as to Plaintiff's Fourteenth Amendment Equal Protection Clause claim against Defendants Chutty and Gifford and retaliation claim against Defendant Steinberg with regard to ordering Plaintiff to undergo a urine test on August 12, 2013 (Fourth Cause of Action), and that those claims be **DISMISSED WITH PREJUDICE**; and it is further

**RECOMMENDED** that Defendants' Rule 12(b)(6) motion to dismiss be in all other respects **DENIED**, including as to Plaintiff's claims for: (1) violation of his rights under the First Amendment Free exercise Clause against Defendants Pelc, Martin, and Thomas with respect to the denial of his Eid meal (First Cause of Action); (2) violation of his rights under the First Amendment Free Exercise Clause against Defendant Thomas with respect to denial of Ramadan meals (Second Cause of Action); (3) violation of his rights under the First Amendment Free Exercise Clause against Defendants Hewite and Steinberg with respect to denial of participation in religious congregational prayer during Shawwal and denial of a halal meal; (4) First Amendment retaliation claim against Defendant Steinberg with respect to filing a false misbehavior report; (5) First Amendment retaliation claim against Defendant Gifford with respect to planting a weapon in Plaintiff's cell and filing a false misbehavior report (Fourth Cause of Action); (6) First Amendment retaliation claim against Defendant Chutty with respect to issuing a false misbehavior report (Fourth Cause of Action); and (7) First Amendment retaliation claim against Defendant Fagan with respect to placing Plaintiff in administrative segregation (Fourth Cause of Action); and it is hereby

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

 **\*16** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989) ); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 11478237

---

**End of Document**                                              © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:22-cv-00638-DNH-TWD    Document 69    Filed 09/03/25    Page 42 of 72
Shakur v. Thomas, Not Reported in Fed. Supp. (2016)

2016 WL 4617242

2016 WL 4617242
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Shabaka SHAKUR, Plaintiff,

v.

Justin THOMAS, individually and in his official capacity as Deputy Superintendent of Programs; Chutty,
individually and in his official capacity as Security Captain; E. Fagan, individually and in his official
capacity as Captain; G. Steinberg, individually and in his official capacity as Correctional Officer; Gifford,
individually and in his official capacity as Correctional Officer; Pelc, individually and in his official
capacity as Correctional Officer; Hewite, individually and in his official capacity as Correctional Officer;
and Donna Martin, individually and in her official capacity as Food Service Administrator, Defendant.

9:14-CV-00427(MAD/TWD)
|
Signed 09/06/2016

**Attorneys and Law Firms**

SHABAKA SHAKUR, 145-38 106 Avenue, Queens, New York 11435, Plaintiff pro se.

OFFICE OF THE NEW YORK STATE ATTORNEY GENERAL, The Capitol, OF COUNSEL: NICOLE E. HAIMSON, AAG,
Albany, New York 12224, Attorneys for Defendants.

## MEMORANDUM-DECISION AND ORDER

Mae A. D'Agostino, U.S. District Judge

### I. INTRODUCTION

On April 16, 2014, Plaintiff Shabaka Shakur commenced this civil rights action asserting claims for the violation of his rights
protected under the First, Eighth, and Fourteenth Amendments to the United States Constitution and the Religious Land Use
and Institutionalized Person Act ("RLUIPA"), arising out of his confinement at Auburn Correctional Facility ("Auburn C.F.")
from September 2012 through September 2013. *See* Dkt. No. 1. [1]

[1]    Plaintiff was released from the custody of the Department of Corrections and Community Supervision in June of 2015.
       *See* Dkt. No. 27.

On September 16, 2015 Plaintiff moved for leave to file an amended complaint. *See* Dkt. No. 34. By Decision and Order dated
September 28, 2015, Magistrate Judge Dancks granted in part and denied in part Plaintiff's motion. *See* Dkt. No. 38. Specifically,
Magistrate Judge Dancks granted the motion to amend as to the following claims: (1) violation of Plaintiff's rights under the
First Amendment Free Exercise Clause by Defendants Pelc, Martin, and Thomas in denying Plaintiff an Eid ul-Adha ("Eid")
religious meal on October 27, 2012; (2) violation of Plaintiff's rights under the First Amendment Free Exercise Clause by
Defendant Thomas in refusing to provide Plaintiff with halal meals and sahur bags from July 29, 2013, through August 3, 2013,
thereby preventing him from participating in the mandatory religious fasting during Ramadan; (3) violation of Plaintiff's rights
under the First Amendment Free Exercise Clause by Defendants Hewite and Steinberg in preventing Plaintiff from participating
in the religious congregational prayer during Shawwal and denying him a halal meal on August 12, 2013; (4) retaliation in

Case 9:22-cv-00638-DNH-TWD    Document 69    Filed 09/03/25    Page 43 of 72

Shakur v. Thomas, Not Reported in Fed. Supp. (2016)

2016 WL 4617242

violation of Plaintiff's First Amendment rights and violation of his rights under the Fourteenth Amendment Equal Protection Clause by Defendants Chutty and Gifford with regard to the September 17, 2012, urine test, cell search, planting a weapon in Plaintiff's cell, and filing a false misbehavior report against Plaintiff, resulting in his placement in the Special Housing Unit ("SHU"); (5) First Amendment retaliation claim against Defendant Steinberg with regard to the August 12, 2013, urine test and retaliatory false misbehavior report; and (6) First Amendment retaliation claim against Defendant Fagan for placing Plaintiff in administrative segregation in retaliation for filing grievances to redress violations of his rights under the First Amendment Free Exercise Clause. *See* Dkt. No. 39.

On October 13, 2015, Defendants moved to dismiss the remaining claims in Plaintiff's amended complaint. *See* Dkt. No. 41. In a June 2, 2016 Order and Report-Recommendation, Magistrate Judge Dancks recommended that the Court grant in part and deny in part Defendants' motion. *See* Dkt. No. 45. Specifically, Magistrate Judge Dancks recommended that the Court deny the motion to dismiss with respect to the following claims: (1) the First Amendment Free Exercise claim against Defendants Pelc, Martin, and Thomas with respect to the denial of his Eid meal (First Cause of Action); (2) the First Amendment Free Exercise claim against Defendant Thomas with respect to the denial of Ramadan meals (Second Cause of Action); (3) the First Amendment Free Exercise claim against Defendants Hewite and Steinberg with respect to the denial of participation in religious congregation prayer during Shawwal and denial of a halal meal; (4) the First Amendment retaliation claim against Defendant Steinberg with respect to filing a false misbehavior report; (5) the First Amendment retaliation claim against Defendant Gifford with respect to planting a weapon in Plaintiff's cell and filing a false misbehavior report (Fourth Cause of Action); (6) the First Amendment retaliation claim against Defendant Chutty with respect to issuing a false misbehavior report (Fourth Cause of Action); and (7) the First Amendment retaliation claim against Defendant Fagan with respect to placing Plaintiff in administrative segregation (Fourth Cause of Action). *See id.*

 **\*2**  On June 20, 2016, Defendants objected to Magistrate Judge Dancks' Order and Report-Recommendation insofar as it recommended denying the motion to dismiss as to Plaintiff's retaliation claim against Defendants Chutty and Gifford for allegedly planting a weapon in Plaintiff's cell and writing a false misbehavior report. *See* Dkt. No. 46. Currently before the Court is Magistrate Judge Dancks' Order and Report-Recommendation and Defendants' objection thereto.

## II. DISCUSSION [2]

[2]     For a complete statement of the underlying facts in this case, the Court refers the parties to Magistrate Judge Dancks' June 2, 2016 Order and Report-Recommendation. Dkt. No. 45.

### A. Standard of Review

When specific objections to a magistrate judge's report-recommendation and order are made, the district court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). If, however a party files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the magistrate judge's recommendations are reviewed for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, at \*1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). The court will "ordinarily refuse to consider argument[s] that could have been, but [were] not, presented to the magistrate judge in the first instance." *Mosley v. Superintendent of Collins Corr. Facility*, No. 9:11-CV-1416, 2015 U.S. Dist. LEXIS 6985, at \*5, 2015 WL 277133 (N.D.N.Y. Jan. 22, 2015) (citations omitted). Upon review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

A litigant's failure to file objections to a magistrate judge's report and recommendation, even when that litigant is proceeding *pro se*, waives any challenge to the report on appeal. *See Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003) (holding that, "[a]s a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point" (citation omitted)). A *pro se* litigant must be given notice of this rule; notice is sufficient if it informs the litigant

that the failure to timely object will result in the waiver of further judicial review and cites pertinent statutory and civil rules authority. *See Frank v. Johnson*, 968 F.2d 298, 299 (2d Cir. 1992); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (holding that a *pro se* party's failure to object to a report and recommendation does not waive his right to appellate review unless the report explicitly states that failure to object will preclude appellate review and specifically cites 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and former 6(e) of the Federal Rules of Civil Procedure).

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

**\*3** To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]' " *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief." ' " *Id.* (quoting [*Twombly*, 550 U.S.] at 557, 127 S. Ct. 1955). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed[,]" *id.* at 570.

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L.Ed. 2d 652 (1972)) (other citations omitted). The Second Circuit has opined that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

## B. Defendants' objection

Plaintiff claims that Defendants Chutty and Gifford violated his First Amendment right to freely exercise his religious beliefs when they retaliated against him because of his leadership position as a Muslim Shia inmate facilitator by planting a weapon in his cell during a search and filing a false misbehavior report against him. Defendants contend that Magistrate Judge Dancks erred in her Order and Report-Recommendation when she held that Plaintiff made a plausible showing that " 'maintaining a leadership position in the Muslim community as Muslim Shia inmate facilitator at Auburn was conduct protected under the First Amendment for purposes of his retaliation claim against Chutty and Gifford.' " Dkt. No. 46 at 1 (quoting Dkt. No. 45 at 21). Defendants contend that they were unable to find any legal authority to support the proposition that "an inmate's mere employment as a Muslim Shia inmate facilitator, or any religious leader, constitutes protected conduct for a retaliation claim." *Id.*

"To prevail on a First Amendment retaliation claim, an inmate must establish '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) there was a causal connection between the protected speech [or conduct] and the adverse action.' " *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014) (quoting *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009)).

Case 9:22-cv-00638-DNH-TWD    Document 69    Filed 09/03/25    Page 45 of 72

Shakur v. Thomas, Not Reported in Fed. Supp. (2016)

2016 WL 4617242

In the present matter, the Court finds that Magistrate Judge Dancks correctly determined that "for purposes of this motion to dismiss Plaintiff has made a plausible showing that maintaining a leadership position in the Muslim community as Muslim Shia inmate facilitator at Auburn was conduct protected under the First Amendment for purposes of his retaliation claim against Chutty and Gifford." Dkt. No. 45 at 21. First, the Court notes that, in their motion to dismiss, Defendants do not directly address whether serving as the Muslim Shia inmate facilitator could be considered protected speech or conduct in their motion to dismiss. *See* Dkt. No. 41-1 at 14. In his amended complaint, Plaintiff specifically alleges that he was retaliated against because of his leadership position in the Muslim community, as well as for filing grievances to redress continuous and repetitive violations of his rights. *See* Dkt. No. 39 at ¶ 117. In their motion, Defendants do not address whether Plaintiff's position in the Muslim community could satisfy the first element of his retaliation claim. Instead, they simply focus on the allegation that he was retaliated against for " 'filing grievances to redress the continuous and repetitive violations of his free exercise of religion rights.' " Dkt. No. 41-1 at 14. Although specific situations may warrant a district court addressing arguments raised for the first time in objections to a magistrate judge's report and recommendation, this is not such a situation. *See Stock Market Recovery Consultants Inc. v. Watkins*, No. 13-cv-193, 2015 WL 5771997, *3 (E.D.N.Y. Sept. 30, 2015) (discussing situations in which a district court should exercise its discretion to consider arguments raised for the first time in objections to a magistrate judge's report and recommendation) (citations omitted). Plaintiff clearly and specifically alleges that he was retaliated against "because of plaintiff's leadership position in the [M]uslim community...." Dkt. No. 39 at ¶ 117. Defendants have failed to raise any excuse for its failure to make this argument before Magistrate Judge Dancks and permitting Defendants to belatedly raise this theory would thwart " 'the efficiencies gained through the Magistrates Act[.]' " *Watkins*, 2015 WL 5771997, at *3. As such, they cannot properly raise this argument for the first time in their objections to the Order and Report-Recommendation. *See Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir. 1994) (finding no abuse of discretion in the district court's refusal to consider supplemental evidence); *Pan American World Airways, Inc. v. International Bhd. of Teamsters*, 894 F.2d 36, 40 n.3 (2d Cir. 1990) (holding that the district court did not abuse its discretion in denying the plaintiff's request to present additional testimony where the plaintiff offered no justification for not offering the testimony at the hearing before the magistrate judge).

 **\*4** Second, even assuming Defendants had not waived this argument, the Court nevertheless finds that Magistrate Judge Dancks correctly determined that, for purposes of the pending motion to dismiss, Plaintiff has plausibly alleged that maintaining a leadership position in the Muslim community as Muslim Shia inmate facilitator at Auburn was conduct protected under the First Amendment. In *Lowrance v. Coughlin*, 862 F. Supp. 1090 (S.D.N.Y. 1994), the plaintiff "held several leadership roles in the Muslim community while in prison, including Imam, or prayer leader." *Id.* at 1102. The plaintiff testified that, upon arriving a new facility, one of the defendant's informed the plaintiff that he was not welcome "because his institutional files demonstrated that [he] was a Muslim leader." *Id.* at 1106. The plaintiff also alleged that the guards repeatedly harassed him for "proselytizing" and counseling other Muslim prisoners. *See id.* Additionally, the plaintiff introduced evidence that the reasons for his repeated transfers between prison facilities was due to the fact that he was " 'a leader in the Muslim Community and has a strong following of inmates.' " *Id.* at 1108. After a bench trial, the court found that this evidence, among other things, was sufficient to support the plaintiff's First Amendment retaliation claims. *See id.* at 1106-1120.

Similar to the situation in *Lowrance*, the Court finds that Plaintiff has plausibly alleged that his leadership position as a Muslim Shia inmate facilitator is protected speech or conduct for purposes of his retaliation claim. "Inmate Facilitators" are specifically discussed in DOCCS Directive Number 4202, Religious Programs and Practices. The directive discusses the important role the facilitators play in ensuring that all inmates can practice their particular religion and details the process by which such facilitators are selected and approved. *See Religious Programs and Practices*, Attachment "A," at 12, *available at* http://www.doccs.ny.gov/directives/4202.pdf (last visited September 2, 2016). According to the directive, it is clear that inmate facilitators actively engage with prison staff to help ensure that inmates of their faith are able to follow the various tenets of their religion. *See id.* at 12-13. Considering Plaintiff's *pro se* status and the special solicitude afforded to such litigants, the Court finds that Plaintiff has plausibly alleged that his position as a Muslim Shia inmate facilitator is a protected activity or conduct for purposes of this claim. *See Dolan v. Connolly*, 794 F.3d 290, 294-95 (2d Cir. 2015) (holding that prison officials violate the First Amendment when they retaliation against a prisoner "for filing or voicing grievances on behalf of a prison population as a member of an inmate grievance body" and suggesting that the First Amendment extends not just to activity by an inmate in filing his own grievance, but also to activity that assists another inmate to file a grievance).

Case 9:22-cv-00638-DNH-TWD    Document 69    Filed 09/03/25    Page 46 of 72
Shakur v. Thomas, Not Reported in Fed. Supp. (2016)
2016 WL 4617242

**C. Remaining claims**

Upon careful review of the remaining claims addressed in the Order and Report-Recommendation, to which neither party objected, the Court finds no clear error in Magistrate Judge Dancks' findings and adopts the Order and Report-Recommendation as the opinion of the Court. Accordingly, Defendants' motion to dismiss the amended complaint is granted in part and denied in part as set forth in Magistrate Judge Dancks' June 2, 2016 Order and Report-Recommendation.

## III. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Magistrate Judge Dancks' June 2, 2016 Order and Report-Recommendation is **ADOPTED** in its entirety for the reasons stated therein; and the Court further

**ORDERS** that Defendants' motion to dismiss the amended complaint (Dkt. No. 41) is **GRANTED** in part and **DENIED** in part; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: September 6, 2016.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 4617242

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

---

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.    5

Case 9:22-cv-00638-DNH-TWD    Document 69    Filed 09/03/25    Page 47 of 72

Cisse v. Medbury, Not Reported in Fed. Supp. (2023)

2023 WL 12100477

2023 WL 12100477
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Ali CISSE, Plaintiff,

v.

Danielle C. MEDBURY et al., Defendants.

9:23-CV-0697 (GLS/ML)
|
Filed 07/24/2023

**Attorneys and Law Firms**

ALI CISSE, Plaintiff, pro se, 14-A-2736, Marcy Correctional Facility, P.O. Box 3600, Marcy, NY 1340.

**DECISION and ORDER**

GARY L. SHARPE, Senior United States District Judge

## I. INTRODUCTION

**\*1** The Clerk has sent to the Court for review a pro se complaint filed by plaintiff Ali Cisse pursuant to 42 U.S.C. § 1983 ("Section 1983"), asserting claims arising out of his confinement at Marcy Correctional Facility ("Marcy C.F.") and Auburn Correctional Facility ("Auburn C.F."). *See* Dkt. No. 1 ("Compl."). Plaintiff, who is currently confined at Marcy C.F., has not paid the statutory filing fee, and seeks leave to proceed in forma pauperis (IFP). Dkt. No. 2 ("IFP Application").

## II. IFP APPLICATION

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at \*1 (S.D.N.Y. Oct. 26, 2010).[1] "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id.* (citing 28 U.S.C. § 1915(b) and *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

[1]    Section 1915(g) prohibits a prisoner from proceeding IFP where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g). The Court has reviewed plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records (PACER) Service. *See* http://pacer.uspci.uscourts.gov. It does not appear from that review that plaintiff had accumulated three strikes for purposes of 28 U.S.C. § 1915(g) as of the date this action was commenced.

Upon review of plaintiff's IFP Application, he has demonstrated sufficient economic need. *See* 28 U.S.C. § 1915(a)(2). Plaintiff has also filed the inmate authorization form required in this District. Dkt. No. 3. Accordingly, the Court grants plaintiff's IFP Application.

## III. SUFFICIENCY OF THE COMPLAINT

### A. Standard of Review

Case 9:22-cv-00638-DNH-TWD    Document 69    Filed 09/03/25    Page 48 of 72

Cisse v. Medbury, Not Reported in Fed. Supp. (2023)
2023 WL 12100477

Having found that plaintiff meets the financial criteria for commencing this action in forma pauperis, and because plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the Complaint in light of 28 U.S.C. §§ 1915(e) and 1915A. Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed in forma pauperis, "the court shall dismiss the case at any time if the court determines that – ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [2]

[2]    To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

 **2**  Additionally, when reviewing a complaint, the Court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Hudson v. Artuz*, No. 95 Civ. 4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, No. 95-CV-0063 (TJM), 162 F.R.D. 15, 16 (N.D.N.Y. June 23, 1995) (other citations omitted)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

The Court will construe the allegations in the complaint with the utmost leniency. *See, e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that a pro se litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers").

### B. Summary of the Complaint [3]

[3]    The complaint includes exhibits. *See* Dkt. No. 1-1. To the extent that the exhibits are relevant to the incidents described in the complaint, they have been considered. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference).

The following facts are set forth as alleged by plaintiff in the complaint. In April 2022, plaintiff was confined in the Residential Mental Health Unit (RMHU) in Marcy C.F. Compl. at 4. Plaintiff ordered a pair of sneakers that were delivered to the facility on April 21, 2022, but not forwarded to plaintiff. *Id.* Plaintiff spoke to defendant Deputy Superintendent Danielle C. Medbury, "on numerous occasions," about the package during Medbury's weekly rounds in the RMHU and gave Medbury the "pinkslip" or disbursement form/receipt. *Id.* at 4.

Case 9:22-cv-00638-DNH-TWD    Document 69    Filed 09/03/25    Page 49 of 72

Cisse v. Medbury, Not Reported in Fed. Supp. (2023)

2023 WL 12100477

On April 27, 2022, plaintiff filed a property claim with defendant Facility Claim Officer Ted Pelky. Compl. at 17; Dkt. No. 1-1 at 11. On May 25, 2022, plaintiff wrote to Pelky and asked for an update on his claim. *Id.* at 12. Pelky responded that the matter was, "[s]till under investigation." *Id.*

On June 13, 2022, plaintiff was transferred to Auburn C.F. Compl. at 4, 5. On the evening of his arrival, plaintiff received his previously prescribed medications for high blood pressure, stomach pain, and back pain. *Id.* at 5. The medications were prescribed by a nurse at Marcy C.F. in September 2021 and were not due to be refilled until September 2022. *Id.* at 6. Sometime thereafter, defendant Nurse Practitioner Godfrey discontinued the medications, without notifying or examining plaintiff. *Id.* at 5. As a result, plaintiff had difficulty sleeping, walking, sitting and standing. Compl. at 5.

**\*3**  On June 19, 2022, plaintiff submitted a sick call request to address his medications. Compl. at 5. On June 21, 2022, defendant Nurse Smusnale came to plaintiff's cell on E-Block and discussed plaintiff's medications, in the presence of other inmates and officers, and told him that the medications were stopped because they were prescribed "years ago." *Id.* at 6.

On June 23, 2022, plaintiff was transported to Mohawk Correctional Facility for an appointment with a pain specialist for complaints of back pain. Compl. at 6. During the appointment, plaintiff received injections in three different areas of his midsection and lower back. *Id.* The specialist recommended that medical staff at the facility provide plaintiff with cold packs and Motrin to prevent soreness and swelling. *Id.* Smusnale refused to follow the recommendations. *Id.* As a result, plaintiff's back became sore and stiff and he experienced numbness. Compl. at 6.

On June 24, 2022, plaintiff signed up for sick call for back pain and was seen by Smusnale. Compl. at 6. Smusnale issued an order placing plaintiff in medical keeplock for two days. *Id.* at 5-6; Dkt. No. 1-1 at 1. During medical keeplock, plaintiff was deprived of telephone privileges and showers. Compl. at 7.

On June 27, 2022, at approximately 6:30 A.M., plaintiff was treated at sick call by defendant Nurse Jane Doe #2 in the presence of defendant Correctional Officer R. Pflueger in the center room of E-Block. Compl. at 7. The room was not equipped with "necessary tools" to provide medical attention. *Id.* As plaintiff began to ask Nurse Doe questions, Pflueger interrupted and directed plaintiff to return to his cell. *Id.* at 7. Pflueger told plaintiff that he was "always arguing with the nurses." Compl. at 7. When plaintiff stated that he was not finished with his sick call, Pflueger shouted at him. *Id.* Pflueger asked if plaintiff was refusing to return to his cell, but before plaintiff could respond, Pflueger turned plaintiff around with "force" causing plaintiff to hit his head on a wall. *Id.* Defendant Sergeant John Doe responded and escorted plaintiff to the catwalk between the cells. Compl. at 7. Plaintiff informed Sgt. Doe that he needed medical attention because he hit his head against a wall. *Id.* Sgt. Doe responded, "you're not seeing medical." *Id.*

On June 28, 2022, at approximately 10:00 A.M., plaintiff received a misbehavior report, issued by Pflueger, charging him with creating a disturbance, movement violations, and threats. Compl. at 8; Dkt. No. 1-1 at 26. On June 29, 2022, defendant Senior Offender Rehabilitation Coordinator P. Kennedy presided over a hearing related to the misbehavior report. Compl. at 8; Dkt. No. 1-1 at 29. Kennedy denied plaintiff's request to present audio/video recordings of the incident and witness testimony. Compl. at 8; Dkt. No. 1-1 at 37. Kennedy found plaintiff guilty of the charges and sentenced him to fifty-six days in the Special Housing Unit (SHU) with a corresponding loss of privileges. Compl. at 9; Dkt. No. 1-1 at 29. Plaintiff appealed the determination to the Acting Commissioner. Dkt. No. 1-1 at 25. Kennedy's determination was reversed on September 9, 2022, however, plaintiff was not released from the SHU until October 3, 2022. Compl. at 8; Dkt. No. 1-1 at 38.

On February 9, 2023, plaintiff returned to Marcy C.F. Compl. at 9. On March 21, 2023, at approximately 10:30 A.M., defendant Correctional Officer Amber J. Bliss began "trailing" and harassing plaintiff. Compl. at 9. Plaintiff, who is a practicing Muslim, told Bliss that he could only be frisked by a male officer, in accordance with his religious beliefs. *Id.* at 9-10. Bliss ignored plaintiff and frisked him. *Id.* The same day, plaintiff filed a grievance (MCY 0241-23) against Bliss related to the incident. Compl. at 18; Dkt. No. 1-1 at 51.

Case 9:22-cv-00638-DNH-TWD    Document 69    Filed 09/03/25    Page 50 of 72

Cisse v. Medbury, Not Reported in Fed. Supp. (2023)

2023 WL 12100477

**\*4**  On March 28, 2023, at approximately 8:10 A.M., Bliss arrived at plaintiff's cell. Compl. at 10. Plaintiff reiterated to Bliss that he was Muslim and did not want to be frisked by a female officer. *Id.* As a result, Bliss did not released plaintiff for programs. *Id.*

Forty-five minutes later, plaintiff was praying in his cell when officers began to bang on his cell door. Compl. at 10. Plaintiff continued to pray and the officers continued to "bang" on his door. *Id.* Defendant Sergeant Jason Miller ordered defendants Correction Officer Capponie and Correction Officer Leone to shut the shield on plaintiff's cell door, turn off his water, and turn on his light, because he would not come out of his cell. *Id.* at 10, 12. Plaintiff completed his prayers and was informed by a nurse that an extraction had been ordered because plaintiff refused to leave his cell for a "bar and hammer" inspection. *Id.* at 11. Plaintiff indicated that he did not refuse to leave, but wanted to finish his prayer. Compl. at 11. Miller issued a "negative informational report" that impacted plaintiff's conditional release date.[4] *Id.*

4      "Negative informational reports" are punitive reports issued by OMH or DOCCS staff in the RMHU. Compl. at 14. While the punishments may not be as "harsh" as those rendered as a result of disciplinary reports, a negative informational may have a detrimental effect upon an inmate's release date. *Id.*

At 10:45 A.M., Leone and Capponie escorted plaintiff to an interview room in the RMHU. Compl. at 11. Leone handcuffed plaintiff "tightly" and when plaintiff complained, Capponie stated "you won't be long." *Id.* Plaintiff was interviewed by an officer with the Office of Special Investigations (OSI). *Id.* The officer told Leone and Capponie that plaintiff was ready to return to his cell. *Id.* However, plaintiff was compelled to wait for Capponie and Leone for ninety minutes. *Id.* During that time, plaintiff remained in the interview room, in handcuffs, with his hands behind his back. *Id.* Plaintiff's hands "went numb" and he "lost circulation." Compl. at 12.

On March 28, 2023, plaintiff filed a grievance (MCY 0205-23) claiming that Miller retaliated against him and violated his religious rights. Compl. at 18; Dkt. No. 1-1 at 58-59. On March 31, 2023, plaintiff filed a grievance (MCY 0218-23) against Leone and Capponie related to excessive handcuffing. Compl. at 18; Dkt. No. 1-1 at 43, 60-61.

On March 29, 2023, plaintiff wrote to Medbury regarding the negative informational he received on March 28, 2023. Dkt. No. 1-1 at 57. On April 1, 2023, plaintiff wrote to defendant Unit Chief C. Santopietro and requested that "she look into" the negative informational report and review the audio/video. Compl. at 13; Dkt. No. 1-1 at 50. Plaintiff gave the letter, addressed to Santopietro, to an OMH Therapist, "which is how OMH letters are transported to their [sic] intended ... parties." *Id.* Santopietro did not respond. *Id.* at 14.

On April 3, 2023, plaintiff wrote to Medbury claiming his religious rights were violated. Dkt. No. 1-1 at 44. On April 3, 2023, Medbury responded indicating that she "looked into the issue regarding the negative" plaintiff received for failing to exit his cell for the "bar and hammer check" and indicated that plaintiff's prayer times did not "coincide" with the time that the bar and hammer occurred. *Id.* Medbury acknowledged plaintiff's request for a male pat frisk and noted it would be "honored to the best of our ability. *Id.*

**\*5**  On April 9, 2023, at approximately 8:20 A.M., plaintiff was standing outside of his cell while an officer was conducting a bar and hammer inspection. Compl. at 15. Bliss and Miller entered plaintiff's cell with a garbage can and threw plaintiff's Ramadan breakfast into the garbage. *Id.* Plaintiff's cell door and ID card are marked "Ramadan" and plaintiff intended to eat the meal at sunset. *Id.* at 15-16.

On April 9, 2023, plaintiff filed a grievance (MCY 0242-23) claiming that Miller and Bliss conspired to discriminate against him and discarded his religious breakfast in retaliation for grievances. Compl. at 18; Dkt. No. 1-1 at 53-54.

On April 10, 2023, defendant Captain Kierpiec denied plaintiff's grievance (MCY 0205-23) and indicated that "safety and security of the facility supersedes prayer." Dkt. No. 1-1 at 3. Kierpiec directed officers to move plaintiff "downstairs," an area reserved for inmates who misbehave. Compl. at 15-16.

On May 9, 2023, at approximately 8:30 A.M., an officer was conducting an inspection of plaintiff's cell. Compl. at 16. Miller entered the cell and plaintiff heard his "prayer schedule get knocked off the wall." *Id.* On May 12, 2023, plaintiff filed a grievance (MCY 0303-23) claiming that Miller harassed him. Compl. at 18; Dkt. No. 1-1 at 55-56.

Construed liberally,[5] the complaint contains the following: (1) First Amendment access-to-court claims; (2) Fourteenth Amendment equal protection claims, property deprivation claims, and due process claims; (3) Eighth Amendment harassment claims, deliberate medical indifference claims, and excessive force claims; (4) First Amendment free exercise claims; (5) First Amendment retaliation claims; (6) claims related to violations of DOCCS' directives; (7) HIPAA claims; (8) claims related to the grievance process; (9) conspiracy claims; and (10) state law claims.[6] *See generally* Compl. For a complete statement of plaintiff's claims and the facts he relies on in support of those claims, reference is made to the complaint.

[5] The Court is mindful of the Second Circuit's instruction that a pleading by a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that it suggests. *See, e.g.*, *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (explaining that, "[o]n occasions too numerous to count, we have reminded district courts" that a pro se plaintiff's pleadings must be construed liberally); *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005) ("We leave it for the district court to determine what other claims, if any, [plaintiff] has raised. In so doing, the court's imagination should be limited only by [plaintiff's] factual allegations, not by the legal claims set out in his pleadings."); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) ("[W]e read [a pro se litigant's] supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest.").

[6] The complaint does not clearly state any particular cause of action against any particular defendant. The Court has used its best efforts to attempt to ascertain which defendants are responsible for what actions. However, where the factual allegations are sparse, the Court will not infer that the elements of any cause of action have been met.

### C. Nature of Action

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983 ("Section 1983"), which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498, 508 (1990)); *see Myers v. Wollowitz*, No. 95-CV-0272, 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (finding that "[Section] 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights"). "Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993).

## IV. ANALYSIS

### A. First Amendment Access-to-Courts

**\*6** In *Bounds v. Smith*, the Supreme Court held that access to the courts is a fundamental right that requires prison authorities to "assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." 430 U.S. 817, 828 (1977). The right of access to the courts is also implicated when a prisoner experiences interference with his mail. *See Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003).

The "right of access to the courts" requires states "to give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights." *Bounds*, 430 U.S. at 828, *modified on other grounds, Lewis v. Casey*, 518 U.S. 343, 350 (1996); *see Bourdon v. Loughren*, 386 F.2d 88, 92 (2d Cir. 2004). "However, this right is not 'an abstract, freestanding right ...' and cannot ground a Section 1983 claim without a showing of 'actual injury.' " *Collins v. Goord*, 438 F.Supp.2d 399, 415 (S.D.N.Y. 2006) (quoting *Lewis*, 518 U.S. at 351).

To state a claim for denial of access to the courts, a plaintiff must assert non-conclusory allegations demonstrating that (1) the defendant acted deliberately, and (2) the plaintiff suffered an actual injury. *See Lewis*, 518 U.S. at 353; *Konigsberg v. Lefevre*, 267 F. Supp. 2d 255, 261 (N.D.N.Y. 2003) ("Prison officials may only be held liable for such injury if they frustrated or impeded a prisoner's efforts to pursue a non-frivolous legal claim.").

"A hypothetical injury is not sufficient to state a claim for violation of the right of access to the courts." *Amaker v. Haponik*, No. 98-CV-2663, 1999 WL 76798, at *3 (S.D.N.Y. Feb. 17, 1999). Instead, a plaintiff must demonstrate "actual injury" by establishing that the denial "hindered his efforts" to pursue a non-frivolous legal claim. *Lewis*, 518 U.S. at 349, 351-53 (noting that "an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense"). "Mere 'delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation.' " *Davis*, 320 F.3d at 352 (citing *Jermosen v. Coughlin*, 877 F. Supp. 864, 871 (S.D.N.Y. 1995)).

The Supreme Court has stated that, in order to allege a denial of access to the courts claim, "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). The underlying claim "must be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." *Id.* at 415-16.

"Finally, ... the injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 354. Rather, the injury must be to an inmate's ability "to attack [his] sentence[ ], directly or collaterally, [or] to challenge the conditions of [his] confinement." *Id.* at 355. "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.*

Plaintiff alleges he was unable to "support [his] claim in court" because defendants refused to return his pinkslip/receipt and refused to investigate his claim. Compl. at 4-5. The complaint however, does not include facts that would allow the Court to plausibly infer that any such "claim" supported a request for post-conviction relief or a legal action related to his conditions of confinement. Hence, plaintiff has not sufficiently alleged that he suffered an "actual injury" as a result of defendants' conduct.

**\*7** Accordingly, plaintiff's access-to-court claims are dismissed without prejudice for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). *See, e.g.*, *Chalif v. Spitzer*, No. 05-CV-1355 (LEK/ DEP), 2008 WL 1848650, at *11 (N.D.N.Y. Apr. 23, 2008) ("Since plaintiff's complaint fails to allege any prejudice in the form of interference with his pursuit of a non-frivolous legal claim, this provides an independent basis for dismissal."); *Joseph v. State, Dep't of Corrs.*, No. 92-CV-1566 (TJM), 1994 WL 688303, at *1 (N.D.N.Y. Nov. 24, 1994) (dismissing the plaintiff's access to courts claim because the complaint "failed to allege any adverse effect caused by the alleged denial of his legal mail"); *see Myers v. Bucca*, No. 6:15-CV-553 (DNH/ATB), 2015 WL 13401929, at *11 (N.D.N.Y. Dec. 7, 2015) (dismissing access-to-court claim based upon allegation that the plaintiff "lost his housing case," resulting in a loss of property), *report and recommendation adopted*, 2016 WL 165016 (N.D.N.Y. Jan. 14, 2016).

### B. Fourteenth Amendment

#### 1. Equal Protection

The Fourteenth Amendment's Equal Protection Clause mandates equal treatment under the law. Essential to that protection is the guarantee that similarly situated persons be treated equally. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Specifically, the Equal Protection Clause "bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if 'such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.' " *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)). To state a viable claim for denial of equal protection, a plaintiff generally must allege "purposeful discrimination ... directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995). In the alternative, under

Case 9:22-cv-00638-DNH-TWD    Document 69    Filed 09/03/25    Page 53 of 72

Cisse v. Medbury, Not Reported in Fed. Supp. (2023)

2023 WL 12100477

a "class of one" theory, plaintiff must allege that he has been intentionally treated differently from others similarly situated, with no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see DeMuria v. Hawkes*, 328 F.3d 704, 706 (2d Cir. 2003).

Here, plaintiff alleges in a conclusory fashion that he was treated differently than similarly situated incarcerated individuals because Medbury "caters to prisoners who masterbate [sic] to her or provide her with information." *See* Compl. at 12-13. Plaintiff also claims that Miller endangered his health by entering his cell and exposing him to COVID-19 when he does "not enter[ ] no one else's cell." *Id.* at 17. Plaintiff fails to allege any facts to suggest how he was treated differently than a similarly situated inmate. Indeed, plaintiff has not identified any inmate or other individuals "with whom he can be compared for equal protection purposes." *See Diaz v. Burns*, No. 6:10-CV-6595, 2013 WL 5951866, at *4 (W.D.N.Y. Nov. 6, 2013) (dismissing equal protection claim because the plaintiff did "not come close to sufficiently alleging facts that could be used to infer an allegation that similarly situated prisoners were treated more favorably than he was ... beyond a speculative level"). Plaintiff's vague and conclusory allegations are insufficient to plausibly suggest an equal protection violation. *See Byng v. Delta Recovery Servs., LLC*, No. 13-CV-733, 2013 WL 3897485, at *15 n.5 (N.D.N.Y. July 29, 2013) (holding that inmate alleged no facts in the complaint to indicate he was similarly situated to any other inmate or that such inmate(s) was treated differently than he was), *aff'd*, 568 F. App'x 65 (2d Cir. 2014) (summary order); *see, e.g.*, *Thomas v. Pingotti*, No. 9:17-CV-0300 (GTS/DEP), 2017 WL 3913018, at *7 (N.D.N.Y. Sept. 6, 2017) ("Conclusory allegations of disparate treatment or a plaintiff's personal belief of discriminatory intent are patently insufficient to plead a valid claim under the Equal Protection clause.").

**\*8** Accordingly, plaintiff's equal protection claims are dismissed without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) for failure to state a claim upon which relief may be granted.

### 2. Property Deprivation

The destruction of a prisoner's property may not be the basis for constitutional claims if sufficient post deprivation remedies are available to address the claim. *See Hudson v. Palmer*, 468 U.S. 517, 531 (1984); *Rivera-Powell v. N.Y.C. Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006) ("When the state conduct in question is random and unauthorized, the state satisfies procedural due process requirements so long as it provides meaningful post deprivation remedy."); *Davis v. New York*, 311 F. App'x 397, 400 (2d Cir. 2009) ("An alleged loss of property, 'whether intentional or negligent-will not support a due process claim redressable under § 1983 if adequate state post-deprivation remedies are available.' ") (quoting *Hudson*, 468 U.S. 533). "New York in fact affords an adequate post-deprivation remedy in the form of, inter alia, a Court of Claims action." *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001). Because plaintiff has access to adequate state law remedies, he has not been deprived of property without due process of law and therefore cannot state a claim for relief pursuant to Section 1983. See Love v. Coughlin, 714 F.2d 207, 208-09 (2d Cir. 1983) (per curiam).

For the reasons set forth herein, the Fourteenth Amendment claim related to plaintiff's sneakers is dismissed without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) for failure to state a claim upon which relief may be granted pursuant to Section 1983.

### 3. Procedural Due Process

To successfully state a claim under Section 1983 for denial of due process, a plaintiff must establish both the existence of a protected liberty or property interest, and that he or she was deprived of that interest without being afforded sufficient process. *See Shakur v. Selsky*, 391 F.3d 106, 118 (2d Cir. 2004). Due process generally requires that the state afford individuals "some kind of hearing" prior to depriving them of a liberty or property interest. *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003).

A prisoner's protected liberty interest is implicated where the deprivation at issue imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The duration of the challenged confinement, while not determinative, is a significant factor under *Sandin*. The Second Circuit generally takes the position that normal confinement in a segregated housing unit of 101 days or less does not constitute an "atypical and

Cisse v. Medbury, Not Reported in Fed. Supp. (2023)

2023 WL 12100477

significant hardship" under *Sandin*. *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000) (citing *Sealey v. Giltner*, 197 F.3d 578, 589-90 (2d Cir. 1999)). The "atypicality" inquiry under *Sandin* is normally a question of law. *See Colon*, 215 F.3d at 230-31; *Sealey*, 197 F.3d at 585. In making that determination the Court must consider the specific circumstances of the confinement, including both the duration and the conditions thereof. *Id*.

To determine whether an inmate has suffered an "atypical and significant hardship," the conditions imposed upon the inmate must be compared with those imposed upon the rest of the general population of the facility, as well as those in administrative and protective confinement. *See Welch v. Bartlett*, 196 F.3d 389, 393 (2d Cir. 1999); *Vega v. Lantz*, 596 F.3d 77, 83 (2d Cir. 2010) ("To be actionable, the liberty interest must subject the prisoner to 'atypical and significant hardship ... in relation to the ordinary incidents of prison life.' " (quoting *Sandin*, 515 U.S. at 484)).

**\*9** The due process protections afforded inmates facing disciplinary hearings that affect a liberty or property interest include advance written notice of the charges, a fair and impartial hearing officer, a hearing that affords the inmate the opportunity to call witnesses and present documentary evidence, and a written statement of the evidence upon which the hearing officer relied in making his determination. *See Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (citing, among other things, *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974)). The hearing officer's findings must be supported by "some" "reliable evidence." *Id*. (citing, among other things, *Sup't v. Hill*, 472 U.S. 445, 455 (1985)).

### a. Medical Keeplock

Here, plaintiff alleges that Smusnale violated his due process rights when she confined him to medical keeplock without notice. Compl. at 5-7. Even assuming that plaintiff was denied due process, his short period of confinement; two days, does not constitute an atypical or significant hardship. *See Delisser v. Goord*, No. 9:02-CV-0073 (FJS/GLS), 2003 WL 133271, at \*7 (N.D.N.Y. Jan. 15, 2003) (holding that the plaintiff's 41-day and 52-day medical keeplock was "relatively" short and did not constitute an atypical or significant hardship); *Zappulla v. Fischer*, No. 11 CIV. 6733, 2013 WL 1387033, at \*7 (S.D.N.Y. Apr. 5, 2013) (holding that a five-day period of medical keeplock "is plainly too short to state a claim"). Accordingly, plaintiff's due process claim against Smusnale is dismissed without prejudice for failure to state a claim.

### b. Disciplinary Hearing

Plaintiff alleges Kennedy violated his due process rights because he denied plaintiff's request to present audio/video evidence or witnesses during his disciplinary hearing. *See* Compl. at 8.

Even assuming plaintiff was denied sufficient process during the hearing and that he served the entire 56-day sentence, his SHU confinement for this amount of time does not, in and of itself implicate atypicality. *See Colon*, 215 F.3d at 231; *Elleby v. Martucello*, No. 9:16-CV-1335 (MAD/DEP), 2018 WL 3769965, at \*3 (N.D.N.Y. Aug. 9, 2018) (holding that a 90-day sentence in SHU, without additional allegations, is insufficient to establish that he suffered from an atypical and significant confinement). In addition, plaintiff's complaint is completely devoid of any facts regarding the conditions of his SHU confinement.

Accordingly, plaintiff has failed to plead the existence of a valid liberty interest with respect to his 56-day confinement in SHU. *See, e.g.*, *Elleby*, 2018 WL 3769965, at \*3 (dismissing the due process claim because the plaintiff "does not allege that the conditions in which he was kept were more onerous than normal SHU conditions").

Based upon the foregoing, plaintiff's Fourteenth Amendment due process claim against Kennedy is dismissed without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) for failure to state a claim upon which relief may be granted.

### c. Negative Informational

Case 9:22-cv-00638-DNH-TWD    Document 69    Filed 09/03/25    Page 55 of 72

Cisse v. Medbury, Not Reported in Fed. Supp. (2023)
2023 WL 12100477

Plaintiff claims Miller, Medbury, and Santopietro violated his Fourteenth Amendment due process rights when he issued a negative informational report that prevented plaintiff from participating in programming that impacted his conditional release date. *See* Compl. at 11, 14.

It is well established that prisoners do not have a constitutional right to parole or other conditional release from prison. *See Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). "Where a state has created a statutory scheme for parole, the Due Process Clause protects prisoners insofar as they 'have a legitimate expectancy of release that is grounded in the state's statutory scheme.' " *Barna v. Travis*, 239 F.3d 169, 170-72 (2d Cir. 2001) (per curiam) (citing *Greenholtz*, 442 U.S. at 11-13). "New York's parole scheme is not one that creates in any prisoner a legitimate expectancy of release." *Barna*, 239 F.3d at 171. "An inmate's federally-protected liberty interest in parole release is limited to not being denied parole for arbitrary or impermissible reasons." *Villalobos v. N.Y. Div. of Parole*, No. 09 CIV 8431, 2010 WL 3528926, at *3 (S.D.N.Y. Aug. 23, 2010) *appeal dismissed and remanded sub nom. Villalobos v. N.Y. State Div. of Parole*, 475 F. App'x 400 (2d Cir. 2012).

 **\*10**  "The Second Circuit has also determined that an inmate has no constitutional right to discretionary good time release, or to participation in prison programs which might expedite release." *Fifield v. Eaton*, 669 F.Supp.2d 294, 297 (W.D.N.Y. 2009); *see Nieves v. Prack*, No. 6:15-CV-6101, 2016 WL 1165820, at *4 (W.D.N.Y. March 24, 2016) ("[Plaintiff's] claim that his inability ... to participate in various educational, vocational, rehabilitative or self-help programs might have hindered his ability to receive an early parole or release is ... speculative and fails to allege interference with a protected liberty interest.") (citations omitted).

As presently pleaded, the complaint does not suggest that plaintiff suffered from a deprivation of any liberty interest when he received the negative informational report. *See Allen v. New York*, No. 9:05-CV-1613 (NAM/GJD), 2008 WL 2864951, at *1 (N.D.N.Y. Oct. 5, 2006) ("It is well-settled that inmates do not enjoy constitutionally rights to participate in particular programs or to parole release.") (citations omitted). Thus, plaintiff's due process claim based upon the decision to exclude him from participating in programming, is dismissed without prejudice. *See Pruitt v. Heimgartner*, 620 F. App'x 653, 657 (10th Cir. 2015) (citing *Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976) (holding that prison officials have "full discretion to control" "eligibility for rehabilitative programs" and that these programs do not implicate any "constitutional entitlement"; *Long v. Annucci*, No. 9:17-CV-0916 (GLS/TWD), 2019 WL 7602175, at *5 (N.D.N.Y. May 6, 2019) (dismissing due process claim based upon the plaintiff's inability to receive the required programming for early release), *report and recommendation adopted*, 2019 WL 6111517 (N.D.N.Y. Nov. 18, 2019).

### C. Eighth Amendment

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991); *see Estelle v. Gamble*, 429 U.S. 97, 104 (1976). This includes punishments that "involve the unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). Although the Constitution does not mandate a comfortable prison setting, prisoners are entitled to "basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety." *Brown v. Doe*, No. 13 Civ 8409, 2014 WL 5461815, at *6 (S.D.N.Y. Oct. 28, 2014) (quoting, among other things, *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).

### 1. Verbal Harassment

Plaintiff claims that Miller and Bliss verbally harassed him with disparaging comments. *See* Compl. at 9, 10, 16, 17. Regardless of defendants' motivation, verbal harassment is not a violation of the Eighth Amendment. *See Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986)*; see also Fox v. Sheftic*, No. 9:19-CV-498 (BKS/ATB), 2019 WL 5597906, at *3 (N.D.N.Y. Oct. 3, 2019), *report and recommendation adopted*, 2019 WL 5596359 (N.D.N.Y. Oct. 30, 2019) (dismissing claim that the defendant violated the plaintiff's Eighth Amendment rights when he verbally harassed the plaintiff about his hairstyle, and told him that "things were not going to be easy").

Accordingly, plaintiff's constitutional claims related to verbal harassment are dismissed without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) for failure to state a claim upon which relief may be granted.

### 2. Deliberate Medical Indifference

Construing the complaint liberally, plaintiff asserts Eighth Amendment deliberate medical indifference claims against Godfrey, Smusnale, Nurse Doe, Pflueger, and Sgt. Doe. *See generally* Compl.

**\*11**  "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.' " *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle v. Gamble*, 429 U.S. 94, 104 (1976)). Addressing the objective element, to prevail a plaintiff must demonstrate a violation sufficiently serious by objective terms, "in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).

"Second, the defendant must act with a sufficiently culpable state of mind," *Chance*, 143 F.3d at 702 (internal quotation marks and citations omitted); that is, the plaintiff must demonstrate that the defendant "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999) (with respect to the subjective element, a plaintiff must also demonstrate that defendant had "the necessary level of culpability, shown by actions characterized by 'wantonness' ").

### a. Godfrey

Plaintiff alleges that Godfrey acted with deliberate indifference when she discontinued his prescription medications for high blood pressure, stomach pain, and back pain, without notice or an examination. *See* Compl. at 5.

Even assuming, for the purposes of this review, that plaintiff's medical condition was objectively serious, plaintiff's allegations, without more, do not suggest that Godfrey acted with a "reckless disregard to a known substantial risk of serious injury." The complaint lacks any facts to plausibly suggest that Godfrey was personally involved in plaintiff's medical treatment. Plaintiff does not alleged that he requested, and was denied, medical care from Godfrey. Indeed, the facts, as presently plead, do not allow the Court to infer that plaintiff ever met or interacted with Godfrey. Thus, plaintiff's conclusory assertion that Godfrey was deliberately indifferent is not sufficient to give rise to a deliberate medical indifference claim. *See Ross v. Holland*, No. 9:19-CV-1207 (MAD/DJS), 2019 WL 6836981, at \*3 (N.D.N.Y. Dec. 16, 2019) (dismissing deliberate indifference claim that the defendants "refused, for no reason" to provide medical assistance as "vague and conclusory").

### b. Smusnale and Nurse Doe

Plaintiff alleges that Smusnale was deliberately indifferent to his serious medical needs because she failed to provide cold packs and Motrin in accordance with the specialist's recommendation. *See* Compl. at 6. Plaintiff also claims that Nurse Doe was deliberately indifferent to his serious medical needs because she failed to "address[ ] his sick call complaints." *Id.* at 8.

"It is well-established that mere disagreement over the proper treatment does not create a constitutional claim" so long as the treatment was adequate. *Tatta v. Wright*, 616 F.Supp.2d 308, 318 (N.D.N.Y. 2007) (citing *McKenna v. Wright*, No. Civ. 01-6571, 2002 WL 338375, at \*8 (S.D.N.Y. Mar. 4, 2002) ("[C]ourts have repeatedly held that dispute between two doctors as to the proper course of medical treatment will not give rise to an Eighth Amendment violation.") (citations and internal quotations omitted)). Plaintiff's conclusory allegations, without more, do not establish an Eighth Amendment violation. Even assuming the truth of plaintiff's allegations, the decision not to treat plaintiff's back pain with cold packs and Motrin is, at most, "a difference in opinion as to [plaintiff's] medical treatment rather than any deliberate indifference to his medical needs." *Goris v. Breslin*, No. 04-CV-5666, 2010 WL 376626, at \*8 (E.D.N.Y. Jan. 26, 2010), *aff'd*, 402 F. App'x 582 (2d Cir. 2010); *see Douglas v. Stanwick*, 93 F.Supp.2d 320, 325 (W.D.N.Y. 2000) ("Not every physician will treat every ailment in exactly the same manner. That does not mean that one of the physicians must be acting with deliberate indifference to the patient's needs."). Moreover, simply because Smusnale did not agree with the specialist's recommended course of treatment, does not mean that Smusnale was deliberately indifferent. Mere disagreement concerning the course of treatment is insufficient to support plaintiff's constitutional claim.

Cisse v. Meabury, Not Reported in Fed. Supp. (2023)
2023 WL 12100477

Case 9:22-cv-00638-DNH-TWD    Document 69    Filed 09/03/25    Page 57 of 72

**\*12** Accordingly, plaintiff's Eighth Amendment claims against Smusnale and Nurse Doe are dismissed without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) for failure to state a claim upon which relief may be granted.

### c. Pflueger and Sgt. Doe

Non-medical prison personnel engage in deliberate indifference where they "intentionally delayed access to medical care when the inmate was in extreme pain and has made his medical problem known to the attendant prison personnel." *Hodge v. Coughlin*, No. 92-CV-0622, 1994 WL 519902, at \*11 (S.D.N.Y. Sept. 22, 1994), *aff'd*, 52 F.3d 310 (2d Cir. 1995); *see Estelle*, 429 U.S. at 104-05 (noting that deliberate indifference can be manifested by "prison guards in intentionally denying or delaying access to medical care").

Plaintiff's deliberate medical indifference claim against Pflueger is based on the allegation that he interrupted plaintiff's sick call visit with Nurse Doe. *See* Compl. at 7-8. The complaint, however, does not allege that plaintiff was in need of further medical treatment when Pflueger interrupted plaintiff's sick call visit. Moreover, plaintiff does not allege that his sick call visit with Nurse Doe was made in response to his complaints of pain. *See Burgos v. Bell*, No. 9:22-CV-1327 (GTS/CFH), 2023 WL 2624337, at \*5 (N.D.N.Y. Mar. 24, 2023) (dismissing deliberate medical indifference claim against non-medical defendant based upon the allegation that the defendant refused to allow a nurse to enter his cell).

Plaintiff also asserts a claim against Sgt. Doe based upon the allegation that Sgt. Doe refused plaintiff's request for medical attention after "[his] head hit the wall." Compl. at 7. With due regard to plaintiff's pro se status, even assuming those allegations are sufficient to satisfy the objective element of a deliberate indifference claim, they do not plausibly suggest that defendant acted with the requisite deliberate indifference. Plaintiff does not allege that Sgt. Doe denied or delayed medical treatment to him for any length of time that would permit a reasonable inference that any failure or delay in providing medical treatment placed plaintiff at risk of serious harm. Moreover, the complaint lacks allegations which plausibly suggest that plaintiff's condition worsened, in any respect, as a result of not receiving evaluation of his "head."

Accordingly, plaintiff's deliberate medical indifference claims asserted against these defendants are dismissed without prejudice for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 3. Excessive Force

The prohibition against cruel and unusual punishment encompasses the use of excessive force against an inmate, who must prove two components: (1) subjectively, that the defendant acted wantonly and in bad faith, and (2) objectively, that the defendant's actions violated "contemporary standards of decency." *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotations omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). In this regard, while "a *de minimis* use of force will rarely suffice to state a constitutional claim," *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993), the malicious use of force to cause harm constitutes an Eighth Amendment violation per se because in such an instance "contemporary standards of decency are always violated." *Blyden*, 186 F.3d at 263 (citing *Hudson*, 503 U.S. at 9). The key inquiry into a claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986)).

**\*13** "To determine whether a defendant acted maliciously, several factors should be examined including, 'the extent of the injury and the mental state of the defendant, as well as the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response.' " *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003) (quoting *Romano*, 998 F.2d at 105).

### a. Pflueger

At this juncture, plaintiff has alleged sufficient facts to support an Eighth Amendment claim against Pflueger to require a response. This is not a ruling on the merits and the Court expresses no opinion whether this claim can survive a properly filed motion to dismiss or for summary judgment.

**b. Caponnie and Leone**

To the extent plaintiff attempts to assert an Eighth Amendment claim against Caponnie and Leone for "overly tight" handcuffs, *see* Compl. at 11-12, that claim is subject to dismissal. "[W]hile handcuffs must be reasonably tight to be effective, overly tight handcuffing may constitute excessive force." *See Lynch ex rel. Lynch v. City of Mount Vernon*, 567 F. Supp. 2d 459, 468 (S.D.N.Y. 2008). To sufficiently plead an excessive force claim based upon tight handcuffing, a plaintiff must allege more than a temporary injury. *Jackson v. City of New York*, 939 F. Supp. 2d 219, 231 (E.D.N.Y. 2013). Here, in the absence of any facts alleging any injury as a result of the pat frisk or tight handcuffing, plaintiff's claims fail to state a cause of action under section 1983. Accordingly, plaintiff's Eighth Amendment excessive force claims against Caponnie and Leone are dismissed without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) for failure to state a claim.

**D. First Amendment Free Exercise Claims**

Prisoners have long been understood to retain some measure of the constitutional protection afforded by the Free Exercise Clause of the First Amendment. *See Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003); *see also Nolley v. County of Erie*, No. 07-CV-488S, 2008 WL 859165 (W.D.N.Y. Mar. 31, 2008) (applying First Amendment freedom of religion protections to a pretrial detainee). "Balanced against the constitutional protections afforded prison inmates, including the right to free exercise of religion, [however,] are the interests of prison officials charged with complex duties arising from administration of the penal system." *Id.* (citing *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990)). A prisoner "must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Salahuddin v. Goord*, 467 F.3d 263, 274–75 (2d Cir. 2006) (citing *Ford*, 352 F.3d at 591). A religious belief is "sincerely held" when the plaintiff subjectively, sincerely holds a particular belief that is religious in nature. *Ford*, 352 F.3d at 590. A prisoner's sincerely held religious belief is "substantially burdened" where "the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Jolly v. Coughlin*, 76 F.3d 468, 476-77 (2d Cir. 1996).

**1. Pat Frisks by Bliss**

At this juncture, the Court finds that plaintiff's First Amendment claim Bliss based upon pat-frisks, *see* Compl. at 9-10, survives sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment. *See Lewis v. Soto*, 2017 WL 11469999, at *6 (C.D. Cal. Sept. 15, 2017) (allowing the plaintiff to proceed with First Amendment claim based upon the allegation that his Muslim faith did not permit him to be strip searched by a female officer).

**2. Bar/Hammer Search**

**\*14** Plaintiff claims that Miller, Caponnie, and Leone "disturbed and distracted" him as he prayed, on one occasion. *See* Compl. at 10. Plaintiff also asserts a supervisory claim against Medbury, based upon the search. These claims do not survive for two reasons. First, "a single incident in which [p]laintiff's prayer was interrupted does not rise to a substantial burden." *Long v. Gray*, No. CV-2000-097, 2022 WL 872006, at *12 (D. Ariz. Mar. 1, 2022) (citations omitted); *see Kravitz v. Fischer*, No. 9:12-CV-1011 (LEK/TWD), 2014 WL 4199245, at *12 (N.D.N.Y. Aug. 22, 2014) (preventing the group prayer on only one occasion was *de minimis* and not a substantial burden). Second, plaintiff concedes that he "completed [his] prayers," *see* Compl. at 11, and, as such, he cannot claim he was substantially burdened.

Accordingly, this claim is dismissed without prejudice.

**3. Religious Meal**

Case 9:22-cv-00638-DNH-TWD    Document 69    Filed 09/03/25    Page 59 of 72

Cisse v. Medbury, Not Reported in Fed. Supp. (2023)

2023 WL 12100477

Plaintiff's allegations against Bliss and related to his Ramadan breakfast on April 9, 2023, *see* Compl. at 15-16, fail to state a claim. "[A]n impingement on an inmate's diet during religious holidays is often found to constitute no more than a *de minimis* burden on the inmate's free exercise rights." *Wells v. McKoy*, No. 1:16-CV-00113, 2018 WL 6833665, at *8 (W.D.N.Y. Dec. 27, 2018) (citations omitted). Further, the claim that defendants disposed of one meal, without more, does not suggest a constitutional violation. *See Jean-Laurent v. Los*, No. 12-CV-132S F, 2015 WL 1015383, at *6 (W.D.N.Y. Mar. 9, 2015) ("[M]issing two of the Ramadan meals ... does not constitute a violation of [an inmate's] First Amendment right to the free exercise of his religion."); *see also Barry v. LaManna*, No. 19 CV 4189, 2019 WL 6790515, at *3 (S.D.N.Y. Dec. 12, 2019) (reasoning that the failure to receive three religious meals—two breakfasts and one dinner—during the holy month of Ramadan, was a de minimis violation) (citation omitted).

Accordingly, this claim is dismissed without prejudice.

### E. Retaliation

To state a claim of retaliation under the First Amendment, a plaintiff must allege facts plausibly suggesting the following: (1) the speech or conduct at issue was "protected;" (2) the defendants took "adverse action" against the plaintiff – namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the defendant's decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *see Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004). The Second Circuit has stated that courts must approach prisoner retaliation claims "with skepticism and particular care," because "virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002); *Franco v. Kelly*, 854 F.2d 584, 590 (2d Cir. 1988).

As to the first element of a retaliation claim, the filing a grievance or lawsuit is constitutionally protected conduct. *See Johnson v. Eggersdorf*, 8 F. App'x 140, 144 (2d Cir. 2001). With respect to the second and third elements of a retaliation claim, the Second Circuit has defined "adverse action objectively, as retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising constitutional rights." *Gill*, 389 F.3d at 381 (emphasis in original). The "objective test applies even where a particular plaintiff was not himself subjectively deterred" from exercising his rights. *Id.* "A plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action." *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2001). While there is no "bright line ... defin[ing] the outer limits" of the "temporal relationship," courts in the Second Circuit have held that an adverse action taken as much as eight months after the protected activity indicated a causal connection. *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 45-46 (2d Cir. 1980).

**\*15** The complaint contains several retaliation claims against various defendants. The Court will address the claims in turn.

#### 1. Claims Against Medbury, Pelky, Smusnale, Nurse Doe, and Pflueger

Plaintiff alleges, in a conclusory fashion only, that Medbury, Pelky, Smusnale, Nurse Doe, and Pflueger "retaliated" against him. Compl. at 5, 7-8. However, the complaint lacks facts identifying what protected conduct motivated the aforementioned defendants to subject plaintiff to adverse actions, and, more importantly, how defendants became aware of the alleged protected conduct. Conclusory allegations that plaintiff was the victim of retaliatory conduct, without more, are not actionable under the First Amendment. *See Green v. Cent. Off. Rev. Comm.*, No. 06-CV-6312, 2012 WL 1191596, at *9 (W.D.N.Y. Apr. 9, 2012) (citations omitted). Accordingly, plaintiff has not pleaded viable retaliations claim against these defendants. *See Guillory v. Haywood*, No. 13-CV-1564 (MAD/TWD), 2015 WL 268933, at *23 (N.D.N.Y. Jan. 21, 2015) (concluding that the plaintiff failed to allege facts identifying the grievances and lawsuits from which the defendant's awareness could be inferred).

Cisse v. Medbury, Not Reported in Fed. Supp. (2023)

Case 9:22-cv-00638-DNH-TWD    Document 69    Filed 09/03/25    Page 60 of 72

2023 WL 12100477

### 2. Claim Against Bliss

Plaintiff claims that Bliss refused to allow him to attend programming on March 28, 2023 in retaliation for plaintiff's March 21, 2023 grievance against Bliss. *See* Compl. at 10.

"To constitute adverse action, the retaliatory conduct must be such that it would deter a similarly situated individual of ordinary firmness f[ro]m exercising ... constitutional rights. Conduct that is de minimis does not provide this deterrent effect and does not give rise to actionable retaliation." *Zimmerman v. Racette*, No. 9:17-CV-375, 2020 WL 3038275, at *20 (N.D.N.Y. Jan. 24, 2020), *report and recommendation adopted*, 2020 WL 1329138 (N.D.N.Y. Mar. 23, 2020). "[T]he isolated or sporadic denial of privileges do not suffice to state a claim of actionable retaliation". *See Lunney v. Brureton*, 04 CIV. 2438, 2007 WL 1544629, at *21 (S.D.N.Y. May 29, 2007). Here, Bliss' refusal to allow plaintiff to attend programming, on one occasion, without more, does not constitute an adverse action. *See Smith v. Prack*, No. 9:12-CV-1474 (GTS/DEP), 2015 WL 5512951, at *9 (N.D.N.Y. Sept. 14, 2015) (denying recreation to the plaintiff on one occasion does not, standing alone, constitute adverse action) (citation omitted), *aff'd sub nom. Smith v. Graham*, 684 F. App'x 13 (2d Cir. 2017); *Santos v. Keenan*, No. 17-CV-0984, 2020 WL 2859202, at *10 (W.D.N.Y. Feb. 6, 2020), *report and recommendation adopted*, 2020 WL 1025189 (W.D.N.Y. Mar. 3, 2020) (holding that the denial of recreation on one or two occasions does not rise to the level of an adverse action sufficient to state a plausible claim of retaliation).

### 3. Claims Against Miller, Caponnie, and Leone Related to Prayer

Plaintiff claims Miller, Caponnie, and Leone distracted and disturbed him during his prayer and retaliated against him for "practicing [his] religion" and "for the incident with Amber J. Bliss." Compl. at 10-11. Assuming, for the purposes of this review, that plaintiff was engaged in protected conduct because he was praying, the complaint nonetheless fails to state a retaliation claim. As discussed above, plaintiff admits he "completed [his] prayers." *Id.* at 11. Thus, plaintiff has failed to satisfy the "adverse action" prong of a retaliation claim. *See Monk v. Williams*, 516 F. Supp. 2d 343, 348-49 (D. Del. 2007) (reasoning that, because the plaintiff was not deterred from praying, he failed to establish that he suffered an adverse action). Moreover, with respect to his complaints against Bliss, plaintiff has not pleaded, as he must, facts suggesting a connection between the defendant and the protected conduct. *See Flood v. Cappelli*, No. 18-CV-3897, 2019 WL 3778736, at *8 (S.D.N.Y. Aug. 12, 2019). Without facts including how and when defendants became aware of the "incident" against Bliss or why they would be motivated to retaliate against plaintiff as a result of any complaints against Bliss, plaintiff's retaliation claim, on this ground, is dismissed without prejudice for failure to state a claim. *See Hare v. Hayden*, No. 09 Civ. 3135, 2011 WL 1453789, at *4-5 (S.D.N.Y. Apr. 14, 2011) (holding that the plaintiff "fail[ed] to establish that [the defendant] had a motive to retaliate" against him for complaints filed against another corrections officer).

### 4. Claims Against Miller and Bliss Related to Ramadan Meal

**\*16**  Plaintiff alleges Miller and Bliss disposed of his Ramadan breakfast in retaliation for complaints against the officers. Compl. at 18. At this juncture, plaintiff has sufficiently pleaded a retaliation claim against Miller and Bliss to require a response. This is not a ruling on the merits and the Court expresses no opinion whether this claim can survive a properly filed motion to dismiss or for summary judgment.

### 5. Negative Informational Report

Plaintiff alleges that Miller issued a negative informational in retaliation for plaintiff exercising his religious rights. Compl. at 13. At this juncture, plaintiff has sufficiently pleaded a retaliation claim against Miller to require a response. This is not a ruling on the merits and the Court expresses no opinion whether this claim can survive a properly filed motion to dismiss or for summary judgment.

Plaintiff also asserts a retaliation claim against Santopietro arguing that he reported the retaliation to Santopietro and that she failed to remedy the issue. While plaintiff simply alleges that Santopietro was aware of the First Amendment violation, he

Case 9:22-cv-00638-DNH-TWD    Document 69    Filed 09/03/25    Page 61 of 72

Cisse v. Medbury, Not Reported in Fed. Supp. (2023)

2023 WL 12100477

does not claim that Santopietro was personally involved in any manner, which is insufficient to support a retaliation claim. *See Tangreti v. Bachman*, 983 F.3d 609, 618 (2d Cir. 2020); *see also Smart v. Annucci*, No. 19-CV-7908, 2021 WL 260105, at \*5 (S.D.N.Y. Jan. 26, 2021) (holding that the defendant's failure to act on the plaintiff's complaints does not "support the inference that the[ ] [d]efendants, through [their] own individual actions, [have] violated the Constitution") (internal quotation marks omitted).

Accordingly, plaintiff's retaliation claim against Santopietro is dismissed without prejudice for failure to state a claim.

### 6. Claim Against Kierpiec

Plaintiff's allegation that Kierpiec retaliated against him for filing a grievance does not give rise to an actionable retaliation claim. While plaintiff claims Kierpiec directed officers to move plaintiff "downstairs," an area reserved for inmates who misbehave, *see* Compl. at 15-16, plaintiff has not alleged that the reassignment had any adverse consequences. *See Barnes v. Alves*, 58 F. Supp. 3d 296, 317 (W.D.N.Y. 2014) (dismissing retaliation claim based upon new cell assignment in SHU where the plaintiff failed to allege that he suffered any impact as a result of the additional SHU assignment).

### F. Violations of DOCCS Directives

Plaintiff claims that Caponnie, Leone, and Sgt. Doe failed to adhere to DOCCS directives related to the use of handcuffs and documenting a "use of force" incident. *See* Compl. at 7, 12. A section 1983 claim brought in federal court is not the appropriate forum to raise violations of prison regulations. *See Hyman v. Holder*, No. 96-7748, 2001 WL 262665, at \*6 (S.D.N.Y. Mar. 15, 2001) (concluding that allegations that prison officials failed to follow prison regulations are not sufficient to give rise to a Section 1983 claim). Because an official's failure to comply with a DOCCS directive does not give rise to a Section 1983 claim, all claims asserted in plaintiff's complaint on that basis are dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) for failure to state a claim upon which relief may be granted.

### G. HIPAA

Plaintiff claims Smusnale and Nurse Doe violated his HIPAA rights because they conducted sick call visits in the presence of other inmates and officers. *See* Compl. at 6, 7. However, there is no express or implied private right of action under HIPAA, and HIPAA cannot be privately enforced via § 1983. *See, e.g.*, *Rodgers v. Rensselaer Cty. Sheriff's Dep't*, No. 14-CV-1162, 2015 WL 4404788, at \*7 (N.D.N.Y. July 17, 2015) (citations omitted); *Bibeau v. Soden*, No. 08-CV-671, 2009 WL 701918, at \*6 (N.D.N.Y. March 13, 2009) (citation omitted); *see also Adams v. Eureka Fire Prot. Dist.*, 352 F. App'x 137, 139 (8th Cir. 2009) (holding that "[s]ince HIPAA does not create a private right, it cannot be privately enforced either via § 1983 or through an implied right of action"); *Acara v. Banks*, 470 F.3d 569, 571 (5th Cir. 2006) (finding that Congress intended that HIPAA be enforced only by the Secretary of Health and Human Services).

**\*17** Accordingly, this claim is dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) for failure to state a claim upon which relief may be granted.

### H. Claims Related to Grievance Process

Plaintiff's complaint asserts a constitutional claim against based upon allegations that his grievances were not properly processed or investigated. Compl. at 15.

Although prisoners undoubtedly retain a First Amendment right to meaningfully access the courts and petition the government for redress, *see Bounds*, 430 U.S. at 824, the Constitution does not mandate that prisoners be provided access to a grievance procedure during their incarceration, *see Cancel v. Goord*, No. 00-CV-2042, 2001 WL 303713, at \*3 (S.D.N.Y. Mar. 29, 2001) (dismissing the amended complaint where the plaintiff alleged that the defendant "failed to process" his grievance because such allegations do not give rise to a constitutional claim); *accord Shell v. Brzezniak*, 365 F. Supp. 2d 362, 369 (W.D.N.Y. 2005); *see*

Case 9:22-cv-00638-DNH-TWD    Document 69    Filed 09/03/25    Page 62 of 72

Cisse v. Medbury, Not Reported in Fed. Supp. (2023)

2023 WL 12100477

also *Justice v. Coughlin*, 941 F.Supp. 1312, 1316 (N.D.N.Y. 1996) ("[M]ere violations of an inmate grievance system do not violate the Constitution."). Accordingly, plaintiff's claims on this ground are dismissed for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### I. Conspiracy

The complaint includes conclusory claims that defendants conspired with each other to violate plaintiff's constitutional rights. *See generally* Compl. "To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). Vague and conclusory allegations that defendants have engaged in a conspiracy must be dismissed. *See Ciambriello v. County of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002). "[A]lthough a plaintiff does not need to provide detailed factual allegations, the allegations in the complaint must be 'enough to raise a right to relief above the speculative level.' " *Flores v. Levy*, No. 07-CV-3753, 2008 WL 4394681, at *9 (E.D.N.Y. Sep. 23, 2008) (quoting *Twombly*, 550 U.S. at 554).

Here, plaintiff does not assert any facts giving rise to a conspiracy, but, instead, makes only a vague statement that the defendants worked together to violate his rights. Plaintiff's conclusory allegations do not support a "plausible" conspiracy claim involving any of the defendants.

As a result, the Court finds that plaintiff has failed to state a claim for conspiracy upon which relief may be granted and the claim is dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

### J. State Law Claims

Construing the complaint liberally, plaintiff asserts state law negligence and/or medical malpractice claims against Smusnale and Nurse Doe. Compl. at 6-7. However, in light of the dismissal of plaintiff's Eighth Amendment claims, and given the early stage of the case, the Court declines to exercise supplemental jurisdiction over plaintiff's state law claim at this juncture. *See* 28 U.S.C. § 1367(c)(3); *Valencia v. Sung M. Lee*, 316 F.3d 299, 306 (2d Cir. 2003). In the event plaintiff amends the complaint to state a valid Eighth Amendment claim, the Court will exercise jurisdiction over his state law claims.

### V. CONCLUSION

**\*18  WHEREFORE**, it is hereby

**ORDERED** that plaintiff's IFP application (Dkt. No. 2) is **GRANTED** [7]; and it is further

[7]    Plaintiff should note that, although the Court has granted his application to proceed IFP, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

**ORDERED** that the Clerk provide the Superintendent of the facility, designated by plaintiff as his current location, with a copy of plaintiff's inmate authorization form, and notify the official that this action has been filed and that plaintiff is required to pay the entire statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915; and it is further

**ORDERED** that the Clerk of the Court provide a copy of plaintiff's inmate authorization form to the Financial Deputy of the Clerk's Office; and it is further

**ORDERED** that plaintiff's HIPAA claim and claims related to the violation of DOCCS' directives are **DISMISSED with prejudice** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) for failure to state a claim upon which relief may be granted; and it is further

**ORDERED** that the following claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) for failure to state a claim upon which relief may be granted: (1) First Amendment access-to-court claims; (2) Fourteenth Amendment equal protection claims, property deprivation claims, and due process claims; (3) Eighth Amendment harassment claims, deliberate medical indifference claims, and excessive force claims against Caponnie and Leone; (4) First Amendment free exercise claims against Miller, Caponnie, Leone, Medbury; (5) First Amendment free exercise claim related to plaintiff's Ramadan meal; (6) First Amendment retaliation claims against Medbury, Pelky, Smusnale, Nurse Doe, Pflueger, Caponnie, Leone, Santopietro, and Kierpiec; (7) First Amendment retaliation claim against Bliss related to pat-frisks; (8) First Amendment retaliation claim against Miller related to plaintiff's prayer; (9) claims related to the grievance process; (10) conspiracy claims; and (11) state law claims [8] ; and it is further

[8]    Should plaintiff seek to pursue one or more of the claims dismissed without prejudice by the Court herein, he must file an amended complaint. Any amended complaint, which shall supersede and replace the original complaint in its entirety, must allege claims of misconduct or wrongdoing against each named defendant which plaintiff has a legal right to pursue, and over which this Court may properly exercise jurisdiction. Any amended complaint filed by plaintiff must also comply with the pleading requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure.

**ORDERED** that the following claims survive the Court's sua sponte review under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) and require a response: (1) Eighth Amendment excessive force claims against Pflueger; (2) First Amendment free exercise claim against Bliss related to pat-frisks; (3) First Amendment retaliation claim against Miller and Bliss related to plaintiff's Ramadan breakfast; and (4) First Amendment retaliation claim against Miller related to a negative informational; and it is further

**\*19 ORDERED** that Medbury, Smusnale, Pelky, Kierpiec, Godfrey, Santopietro, Kennedy, Caponnie, Leone, Nurse Jane Doe, and Sgt. Doe are **DISMISSED** as defendants herein; and it is further

**ORDERED** that, upon receipt of copies of the documents for service from plaintiff, the Clerk shall issue summonses and forward them, along with copies of the complaint, to the United States Marshal for service upon the remaining defendants. The Clerk shall forward a copy of the summonses and complaint to the Office of the Attorney General, together with a copy of this Decision and Order by electronic mail only; and it is further

**ORDERED** that a response to the complaint be filed by the remaining defendants, or his/her counsel, as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; their failure to do so will result in the dismissal of his action**; and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Decision and Order on plaintiff in accordance with the Local Rules of Practice.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2023 WL 12100477

---

    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 1015383
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Phillip JEAN–LAURENT, Plaintiff

v.

C.O. R. LOS and C.O. J. Damstetter, Defendants.

No. 12–CV–132S(F).
|
Signed March 8, 2015.
|
Filed March 9, 2015.

**Attorneys and Law Firms**

Phillip Jean–Laurent, South Ozone Park, NY, pro se.

Eric T. Schneiderman, Attorney General, State of New York, Stephanie Joy Calhoun, Assistant Attorney General, of Counsel, Main Place Tower, Buffalo, NY, for Defendants.

**DECISION AND ORDER**

WILLIAM M. SKRETNY, Chief Judge.

**\*1** 1. This Court previously referred the matter to the Honorable Leslie G. Foschio, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) to prepare and file a report and recommendation containing findings of fact, conclusions of law and a recommended disposition on any dispositive motion. On June 5, 2014, Defendants filed a motion for summary judgment dismissing Plaintiff's complaint for relief pursuant to 42 U.S.C. § 1983 in its entirety. Despite the scheduling order and the express warning in Defendants' notice of motion that failure to respond could result in dismissal of his complaint, Plaintiff failed to file any opposition to Defendants' motion.

2. On December 2, 2014, Judge Foschio filed a Report and Recommendation finding that Defendants had established their entitlement to summary judgment and recommending that the motion be granted in its entirety. This Court then accepted Plaintiff's untimely-filed objections to the Report and Recommendation on January 14, 2015. Plaintiff objects therein to the Magistrate Judge's conclusions that: (1) precluding Plaintiff from attending both the law library and Ramadan services during the same evening call-out did not impose a substantial burden on his ability to freely exercise his religion; and (2) the enforcement of the correctional facility's Movement Policy was reasonably related to a legitimate penological interest. (Docket No. 47.)

3. Because Plaintiff failed to raise these arguments before the Magistrate Judge, the Report and Recommendation is reviewed under a clear error rather than de novo standard. *See Reiseck v. Universal Comm'ns of Miami,* No. 06 Civ. 0777(LGS), 2014 WL 5364081, *1 (S.D.N.Y. Oct. 22, 2014); *see also Patterson–Leitch Co. v. Massachusetts Municipal Wholesale Electric Co.,* 840 F.2d 985, 990–91 (1st Cir.1988). This Court finds no clear error in the Magistrate Judge's analysis and conclusions, and therefore accepts the Report and Recommendation in its entirety.

IT HEREBY IS ORDERED, that this Court ACCEPTS Judge Foschio's December 2, 2014 Report and Recommendation (Docket No. 45) in its entirety;

Jean-Laurent v. Los, Not Reported in F.Supp.3d (2015)
2015 WL 1015383
Case 9:22-cv-00638-DNH-TWD    Document 69    Filed 09/03/25    Page 65 of 72

FURTHER, that Plaintiff's Objections (Docket No. 47) are DENIED.

FURTHER, that Defendants' motion for summary judgment dismissing the complaint (Docket No. 41) is GRANTED and the complaint is dismissed;

FURTHER, that the Clerk of the Court shall close this case.

SO ORDERED.

REPORT and RECOMMENDATION

LESLIE G. FOSCHIO, United States Magistrate Judge.

### *JURISDICTION*

This case was referred to the undersigned by Honorable William M. Skretny on October 23, 2013, for all pretrial matters. The matter is presently before the court on Defendants' motion for summary judgment (Doc. No. 41), filed June 5, 2014.

### *BACKGROUND*

Plaintiff Phillip Jean–Laurent ("Plaintiff"), proceeding *pro se,* commenced this civil rights action on February 13, 2012, alleging that while incarcerated at Collins II Correctional Facility, Defendants R. Los ("Los"), and J. Damstetter ("Damstetter"), both Corrections Officers with New York Department of Corrections and Community Supervision ("DOCCS"), interfered with his First Amendment rights to the free exercise of his Muslim religion, and access to the courts, and the Eighth Amendment. [1] Plaintiff specifically alleges that between August and September 2009, during Ramadan, a period of required Islamic religious exercises, Defendants deprived Plaintiff of morning and evening meals and also prevented Plaintiff from attending Islamic religious services after using the correctional facility's law library as Plaintiff maintains he needed to do to meet deadlines relating to Plaintiff's court cases, causing Plaintiff to miss two of the religious diet meals for consumption during Ramadan's non-fasting hours.

[1]    By Order filed August 28, 2012 (Doc. No. 3), Plaintiff's claim under the Religious Land Use and Institutionalized Persons Act, 42 U . S.C. § 2000cc–1, *et seq.,* was dismissed, and the action was also dismissed as against Defendants Thompson, Berbary, and Bellamy.

**\*2**  On June 5, 2014, Defendants filed the instant motion for summary judgment (Doc. No. 41) ("Defendants' Motion"), attaching Defendants' Memorandum of Law in Support of Motion for Summary Judgment (Doc. No. 41–1) ("Defendants' Memorandum"), Statement of Undisputed Facts (Doc. No. 41–2) ("Undisputed Facts"), the Declaration of Defendant John Damstetter (Doc. No. 41–3) ("Damstetter Declaration"), the Declaration of Defendant Rickie Los (Doc. No. 41–4) ("Los Declaration"), the Declaration of Philip Greis (Doc. No. 41–5) ("Greis Declaration"), and the Declaration of Assistant Attorney General Stephanie Joy Calhoun (Doc. No. 41–6) ("Calhoun Declaration"). The Notice of Motion contains the admonishment that "THE CLAIMS PLAINTIFF ASSERTS IN HIS COMPLAINT MAY BE DISMISSED WITHOUT A TRIAL IF HE DOES NOT RESPOND TO THIS MOTION by filing his own sworn affidavits or other papers as required by Rule 56(d)." Defendants' Motion at 2. Plaintiff, however, did not file any response in opposition to summary judgment. Oral argument was deemed unnecessary.

Based on the following, Defendants' Motion should be GRANTED.

*FACTS* [2]

[2]    The Facts are taken from the pleadings and motion papers filed in this action.

At all times relevant to this action, Plaintiff Phillip Jean–Laurent ("Plaintiff" or "Jean–Laurent"), who is Muslim, was incarcerated at Collins II Correctional Facility ("Collins" or "the correctional facility"), where Defendants John Damstetter ("Damstetter"), and Rickie Los ("Los"), served as New York Department of Corrections and Community Supervision ("DOCCS") corrections officers. Collins Policy and Procedure No.2006 ("P & P No.2006"), pertaining to inmate movement within the correctional facility provides that an inmate may sign out to only one destination or "call-out" at a time, and must return to his dorm room and sign out for a second call-out before he is allowed to attend the second call-out. According to Collins Policy and Procedure No.2066 ("P & P No.2066"), an inmate is required to report to his housing unit officer for all correctional facility movements except for Mess Hall call-outs. The housing unit officer then records the designation and time out and in for each call-out.

The regular diet provided to inmates housed in Collins consists of three daily meals including one cold meal and two hot meals. As a Muslim, Plaintiff observes a ritual fast during Ramadan, which takes place during the months of August and September, requiring observants fast between sunrise and sunset. Because participating in the regular diet would result in non-compliance with the Ramadan fasting requirements, each night during Ramadan, observant inmates are allowed to take food from the evening meal served in the correctional facility's cafeteria to non-observant inmates, to their cubes to eat after sundown, and are provided with bags of food which the inmates can consume for the breakfast meal or "Sahor" prior to sunrise. Observant inmates are also permitted to have in their cubes food products purchased from the commissary, which they may eat before sunrise, and inmate may further prepare any commissary items in the kitchens located on the housing units.

*3  Collins Correctional P & P No.2066 is an inmate movement policy restricting each inmate's movement to that necessary to attend specific programs for which the inmates must sign-up to attend. Movement Policy. [3]  The Movement Policy's stated purpose is the provision of a procedure to insure the movement of inmates throughout the correctional facility in an orderly fashion so as to maintain accountability and safety for both staff and inmates. Movement Policy § II. In particular, inmates "must report to housing unit officer for all movements except for Mess Hall movements. Housing unit officers will record the time out/in destination on time out sheets." *Id.* § V.F.1. Movement is by call-out under staff direction for both law library *id.,* § V.B., and for religious services. *Id.* § V.C.

[3]    Greis Declaration Exh. B.

To attend any correctional facility program, including law library and Ramadan services, an inmate must sign up for that program's "call-out." Some call-outs at the correctional facility are voluntary, and some are mandatory. An inmate who signs up for a mandatory call-out takes the place of another inmate such that attendance is required whereas attendance at a voluntary call-out is not required. An inmate who fails to report to a mandatory call-out may be charged with a violation of prison disciplinary rule 109.10 forbidding an inmate within a DOCCS correctional facility from being out of place. Ramadan is a voluntary call-out, whereas the law library is a mandatory call-out because of the limited space and resources available for each call-out time.

At all times relevant to this action, the correctional facility's law library was available to general population inmates twice a day, seven days a week, with law library call-outs held between the hours of 2:00 P.M. and 4:00 P.M. ("afternoon call-out"), and again between 6:00 P.M. and 10:00 P.M. ("evening call-out"). Each day, an inmate may sign up to attend one, both, or none of the law library call-outs. Ramadan call-outs were scheduled for the entire evening, with an inmate allowed to report at 5:30 P.M. to the masjid [4]  for evening prayer, following which the inmates were escorted by corrections officers to the messhall for the evening meal, after which the inmates were permitted either to return to the masjid to participate in further services until 9:30 P.M., or to return to their housing units. When both Ramadan and law library call-outs occur at the same time, an inmate

may choose to attend one or the other, but never both. As such, inmates are not allowed to freely move between the law library and Ramadan services that are scheduled for the same time.

4    In the interest of consistency with the papers filed by Plaintiff and Defendants, the court refers to the place where Muslims gather for congregate prayer by the Arabic word "masjid" rather than the English word "mosque."

DOCCS's accommodations at Collins permitted Muslim inmates to participate in Ramadan services in the correctional facility's masjid each evening at 5:30 P.M., during which they could participate in congregate prayers, read the Koran, conduct religious classes and break the fast at sunset. In particular, upon the Ramadan call-out, Muslim inmates would report to the masjid for congregate prayer, before being escorted by a correctional officer to the messhall to receive the evening meal and the sahor bag for the following morning meal to be eaten before sunrise. An inmate who signed up for, yet missed the call-out for three Ramadan services would be removed from the Ramadan list and no longer permitted to participate in Ramadan services or to receive the Ramadan meals.

**\*4** Plaintiff alleges that on August 21, 2009, he commenced his observance of Ramadan requiring Plaintiff, as relevant to this action, to fast between sunrise and sunset, and attend congregate prayer five times each day. At 3:30 A.M. on August 22, 2009, Plaintiff began the daily fast, and reported for Ramadan services to the masjid at 5:30 P.M., then returned to his housing unit to sign out for the law library's evening call-out. Defendant Damstetter, however, advised Plaintiff that because Plaintiff had already chosen to attend Ramadan services, Plaintiff could not interrupt Ramadan services for the law library call-out and that Plaintiff would have to choose to attend one or the other, despite Plaintiff's assertion to Damstetter that deadlines in several of Plaintiff's court cases were approaching. On August 23, 2009, Plaintiff again reported to the masjid for Ramadan services at 5:30 P.M., before returning to his housing unit to sign-up for the evening law library call-out. Plaintiff was permitted to attend the evening law library call-out, but at 7:00 P.M., when Plaintiff informed Defendant Los of his intention to return to the masjid to attend further Ramadan services that evening, Los advised Plaintiff that such action would subject Plaintiff to punitive confinement and directed Plaintiff to return to his housing unit, advising Plaintiff could not attend both Ramadan services and the law library during the same scheduled call-out. As such, although Plaintiff fasted from sunrise to sunset, in order to attend the law library's evening call-out, Plaintiff was required to forgo participating in Ramadan services, including eating the evening Ramadan meal and receiving the sahor meal bag.

On August 24, 2004, Plaintiff filed an inmate grievance ("inmate grievance"), and complained to the correctional facility's Islamic chaplain ("the chaplain"), about not being allowed to attend both Ramadan call-out and the evening law library call-out. The chaplain informed DOCCS Deputy Superintendent of Programs Thompson ("Thompson"), of the situation, yet Thompson took no action to remedy the problem because of Plaintiff's pending inmate grievance. On September 9, 2009, the inmate grievance was denied. Upon appeal to DOCCS Central Officer Review Committee ("CORC"), the discretion of the correctional facility's administrators to promulgate procedures for inmate movement was upheld, with CORC noting "that accommodations were made for the grievant to have special access to the Law Library and that [Plaintiff] attended regularly." CORC Decision.[5]

5    Damstetter Declaration Exh. A at Bates 20.

## DISCUSSION

### 1. Summary Judgment

Summary judgment of a claim or defense will be granted when a moving party demonstrates that there are no genuine issues as to any material fact and that a moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a) and (b); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250–51 (1986); *Miller v. Wolpoff & Abramson, L.L.P.,* 321 F.3d 292, 300 (2d Cir.2003). The court is required to construe the evidence in the light most favorable to the non-moving party. *Collazo v. Pagano,* 656 F.3d 131, 134 (2d Cir.2011). The party moving for summary judgment bears the burden of establishing the nonexistence of any genuine issue of material fact and if there is any evidence in the record based

upon any source from which a reasonable inference in the non-moving party's favor may be drawn, a moving party cannot obtain a summary judgment. *Celotex,* 477 U.S. at 322; *see Anderson,* 477 U.S. at 247–48 ("summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party"). "A fact is material if it 'might affect the outcome of the suit under governing law.' " *Roe v. City of Waterbury,* 542 F.3d 31, 35 (2d Cir.2008) (quoting *Anderson,* 477 U.S. at 248).

**\*5** "[T]he evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions." *Brady v. Town of Colchester,* 863 F.2d 205, 211 (2d Cir.1988)). A defendant is entitled to summary judgment where " 'the plaintiff has failed to come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on' " an essential element of a claim on which the plaintiff bears the burden of proof. *In re Omnicom Group, Inc., Sec. Litig.,* 597 F.3d 501, 509 (2d Cir.2010) (quoting *Burke v. Jacoby,* 981 F.2d 1372, 1379 (2d Cir.1992)). Once a party moving for summary judgment has made a properly supported showing of the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor. *Goenaga v. March of Dimes Birth Defects Foundation,* 51 F.3d 14, 18 (2d Cir.1995). "[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial." *Hayes v. New York City Dept. of Corrections,* 84 F.3d 614, 619 (2d Cir.1996).

Plaintiff's claims seeks damages for alleged violations of his constitutional rights pursuant to 42 U.S.C. § 1983 (" § 1983"), which imposes civil liability upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws of the United States. Section 1983, however, does not itself provide a source of substantive rights, but instead provides the mechanism by which a plaintiff may seek vindication of federal rights conferred elsewhere. *Graham v. Connor,* 490 U.S. 386, 393–94 (1989). Here, Plaintiff's claims alleging Defendants denied him access to both Ramadan services and the law library, interfered with his rights to religious freedom and access to the courts in violation of the First, Eighth, and Fourteenth Amendments.

Moving Defendants argue in support of summary judgment that Defendants' refusal to permit Plaintiff to both attend Ramadan services and visit the correctional facility's law library during the same call-out was in furtherance of a legitimate prison policy in maintaining prison security, Defendants' Memorandum at 3–6; Defendants' actions did not substantially burden Plaintiff's practice of his religion, *id.* at 7–13; that Plaintiff missed two meals is *de minimis* in nature and does not rise to the level of a constitutional violation, *id.* at 13–14; Plaintiff's inability to attend the law library on one occasion was not a denial of his access to the courts. *Id.* at 15–16. As stated, Background and Facts, *supra,* at 2, Plaintiff has not presented any argument in opposition to summary judgment.

## 2. Movement Policy

Although not articulated as such, Plaintiff's claims arise from Defendants' enforcement of the correctional facility's Movement Policy which prevented Plaintiff, as an inmate, from attending on the same day during the month of Ramadan both Ramadan services and the evening law library call-out, thereby allegedly interfering both with Plaintiff's right to the free exercise of his religion as well as his right of access to the courts. It is settled that prisoners do not abandon their constitutional rights at the "jailhouse door." *Bell v. Wolfish,* 441 U.S. 520, 576 (1979) (Marshall, J., dissenting). Nevertheless, " '[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.' " *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348 (1987) (quoting *Price v. Johnston,* 334 U.S. 266, 285 (1948)). "The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives—including deterrence of crime, rehabilitation of prisoners, and institutional security." *O'Lone,* 482 U.S. at 348 (citing cases). To ensure appropriate deference is afforded to prison administrators, "prison regulations alleged to infringe constitutional rights are judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *Id.* at 349 (citing *Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 128 (1977)). " '[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.' " *Id.* (quoting *Turner v. Safley,* 482 U.S. 78, 89 (1987)). "This approach ensures the ability of corrections officials 'to anticipate security problems and to adopt innovative solutions to the intractable problems of

prison administration,' and avoids unnecessary intrusion of the judiciary into problems particularly ill suited to 'resolution by decree.' " *Id.* at 349–50 (quoting *Procunier v.. Martinez,* 416 U.S. 396, 405 (1974), *overruled on other grounds by Thornburgh v. Abbott,* 490 U.S. 401 (1989)). As such, "a challenged prison regulation is judged 'under a 'reasonableness' test less restrictive than that ordinarily applied': a regulation that burdens a protected right passes constitutional muster 'if it is reasonably related to legitimate penological interests.' " *Salahuddin,* 467 F.3d at 274 (quoting *O'Lone,* 482 U.S. at 349 (additional internal quotation marks omitted)).

**\*6** Before considering the balance between the restrictions posed by a prison regulation on an inmate's constitutional rights and the legitimate penological interest advanced by the same regulation, however, the inmate plaintiff must establish that his exercise of some constitutional right was substantially burdened. *See Ford v. McGinnis,* 352 F.3d 582, 593–94 (2d Cir.2003) (determining first whether challenged action placed substantial burden on inmate plaintiff's religion before determining whether such action was reasonably related to legitimate penological interest). "The defendants [prison officials] then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct" to shift the burden back to the inmate to "show that these articulated concerns were irrational." *Salahuddin,* at 275 (internal quotation marks, citations, and brackets omitted). As such, before the court addresses the balance between the interests of the inmate and the prison officials, an inmate plaintiff must allege how the conduct infringes the free exercise of his religion. *Candelaria v. Coughlin,* 787 F.Supp.2d 368, 376–77 (S.D.N.Y.1992). Similarly, Plaintiff's access to court claim, based on the First Amendment, requires Plaintiff first demonstrate the alleged interference with his law library attendance during the evening call-out hindered Plaintiff's pursuit of some legal claim. *Lewis v. Casey,* 518 U.S. 343, 351 (1996).

### A. Free Exercise of Religion

With regard to Plaintiff's claim under the First Amendment that he was wrongfully denied his right to freely exercise his religion when Defendants refused Plaintiff permission to leave the law library to attend Ramadan services, Defendants argue that Plaintiff's inability to attend the masjid for Ramadan services on two occasions, including on August 22 and 23, 2009, was only a *de minimis* infringement on Plaintiff's exercise of his religion and, thus, did not pose a substantial burden Plaintiff's freedom of religion. Defendants' Memorandum at 8–10. Because Plaintiff did not file anything in opposition to summary judgment, Plaintiff does not argue otherwise.

It is well-settled that despite incarceration, prisoners retain their right to religious freedom and are entitled to reasonable accommodation of their religious beliefs, consistent with the needs of prison security. As such, a religious liberty claim asserted under the First Amendment requires the prisoner first demonstrate "that the disputed conduct substantially burdens his sincerely held religious beliefs." *Salahuddin v. Goord,* 467 F.3d 263, 274–75 (3d Cir.2006). Courts within the Second Circuit have consistently held that missing two religious services does not pose a substantial burden on an inmate's religion. *See Blabock v. Jacobsen,* 2014 WL 5324326, at \* 7 (S.D.N.Y. Oct. 20, 2014) (dismissing inmate plaintiff's claims alleging a violation of Free Exercise Clause because missing two Muslim religious services while awaiting disciplinary hearing did not substantially burden the plaintiff's ability to freely exercise his religion); *Shapiro v. Community First Services, Inc.,* 2014 WL 1276479, at \* 11 (E.D.N.Y. Mar. 27, 2014) (holding missing two religious services poses only an insubstantial burden on an inmate's free exercise of his religion); *Williams v. Weaver,* 2006 WL 2794417, at \* 5 (N.D.N.Y. Sept. 26, 2006) (missing two Muslim religious services and two Muslim religious classes did not arise to constitutional violation). Although not argued by Plaintiff, missing two of the Ramadan meals also does not constitute a violation of Plaintiff's First Amendment right to the free exercise of his religion. *See Washington v. Afify,* 968 F.Supp.2d 532, 537–38 (W.D.N.Y.2013) (denial of three consecutive Ramadan meals, including two breakfasts and one evening meal, does not violate First Amendment). Moreover, Plaintiff's inability to attend the Ramadan services at issue is attributed to Plaintiff's decision to attend the evening law library call-out, which required Plaintiff to forgo attending the Ramadan services, rather than any arbitrary decision by any Defendant to prevent Plaintiff from attending Ramadan services. *See Wray v. City of New York,* 490 F.3d 189, 193–94 (2d Cir.2007) (requiring causal connection between defendant's action and plaintiff's injury to pursue § 1983 claim).

**\*7** Defendants' Motion seeking summary judgment thus should be GRANTED insofar as Plaintiff alleges the Movement Policy interfered with the free exercise of his religion pursuant to which Plaintiff was not permitted to be called-out for two

programs scheduled for the same or overlapping times such that Plaintiff was able, during Ramadan, to attend in the evening either Ramadan services or the evening law library call-out, but not both.

### B. Access to Courts

"It is settled that 'meaningful access to the courts is the touchstone' of the First Amendment as it pertains to litigation commenced by a prison inmate." *Ramsey v. Goord,* 661 F.Supp.2d 370, 401 (W.D.N.Y.2009) (citing *Bounds v. Smith,* 430 U.S. 817, 823 (1977), and *Monsky v. Moraghan,* 127 F.3d 243, 246 (2d Cir.1997)). An inmate's right of meaningful access to the courts "is rooted in the constitutional guarantees of equal protection of the laws and due process of law." *Bourdon v. Loughren,* 386 F.3d 88, 95 (2d Cir.2004). Among the requirements for such meaningful access is assistance in the preparation and filing of legal papers by providing inmates with, *inter alia,* adequate law libraries. *Bounds,* 430 U.S. at 828. "Mere 'delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation.' " *Davis v. Goord,* 320 F.3d 346, 352 (2d Cir.2003) (citing *Jeromsen v. Coughlin,* 877 F.Supp. 864, 871 (S.D.N.Y.1995)). Rather, "to establish a constitutional violation based on a denial of access to the courts, a plaintiff must show that the defendant's conduct was deliberate and malicious, and that the defendant's actions resulted in actual injury to the plaintiff." *Lewis v. Casey,* 518 U.S. 343, 351 (1996). Further, to show actual injury, the challenged conduct must have "hindered his efforts to pursue a legal claim." *Id.* Even a prison regulation that substantially burdens an inmate's access to the courts and results in actual injury, however, will not violate the inmate's constitutional right of access to the courts provided the regulation is reasonably related to legitimate penological interests. *Lewis v. Casey,* 518 U.S. 343, 361–62 (1996).

Here, despite asserting that his inability to attend the evening law library call-out would hamper Plaintiff's ability to meet several impending deadlines in pending court actions, Plaintiff has utterly failed to specify what deadlines he was in danger of missing in what cases if he chose to attend Ramadan services, thus forgoing the opportunity to attend evening law library call-out. Plaintiff does not assert he was unable to attend the afternoon law library call-out, and utterly fails to attempt to explain why attending only the afternoon law library call-out would not provide him with ample time to prepare papers for such cases. Accordingly, Plaintiff has failed to show the requisite actual injury caused by his inability to attend the evening law library call-out so as to establish the Movement Policy substantially interfered with his constitutional right of access to the courts. *See Wray,* 490 F.3d at 193–94 (requiring causal connection between defendant's action and plaintiff's injury to establish § 1983 claim).

### C. Legitimate Penological Interest

**\*8** Although summary judgment in favor of Defendants may be granted based solely on Plaintiff's failure to establish Defendants' restriction of Plaintiff's movement throughout the correctional facility in accordance with the Movement Policy resulted in any substantial interference with Plaintiffs constitutional rights to the free exercise of his religion and of access to the courts, because Defendants' motion is before the undersigned for a report and recommendation, whether the Movement Policy serves a legitimate penological interest is addressed in the alternative.

Because of the "difficult judgments" attendant to prison operation, a generally applicable correctional facility policy, despite burdening an inmate's exercise of his religion, will not violate the inmate's exercise of his religious freedom provided the policy is reasonably related to legitimate penological interests. *Holland v. Goord,* 758 F.3d 215, 222 (2d Cir.2014) (internal quotation marks omitted and citing *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 349 (1987); *Turner v. Safley,* 482 U.S. 78, 89 (1987); and *Redd v. Wright,* 597 F.3d 532, 536 (2d Cir.2010)). In other words, constitutional protections afforded to inmates must be balanced against the interest of prison officials charged with the complex duties arising from administering the prison system. *Benjamin v. Coughlin,* 905 F.2d 571, 574 (2d Cir.1990). In making this determination, the court must consider:

> whether the challenged regulation or official action has a valid, rational connection to a legitimate governmental objective; whether prisoners have alternative means of exercising the burdened right; the impact on guards, inmates, and prison resources of accommodating the rights; and the existence of

alternative means of facilitating exercise of the right that have only a de minimis adverse effect on valid penological interests.

*Holland,* 758 F.3d at 222–23 (quoting *Salahuddin v. Goord,* 467 F.3d 263, 274 (2d Cir.2006)).

In support of summary judgment, Defendants argue they have demonstrated a neutral and legitimate penal interest in maintaining the inmate movement policy which does not permit Plaintiff or any other inmate to freely move about the correctional facility, but instead restricts movement to call-outs for specific programs. *See* Movement Policy, *passim.* Defendant Greis states that as Collins Deputy of Security, he is responsible for "oversight of security matters and personnel, investigations, and generating as well as enforcing department policies." Greis Declaration ¶ 1. Greis explains that religious celebrations at the correctional facility "like all programs, involve the coordination of programming and security." *Id.* ¶ 3. Significantly, "movement throughout the [correctional] facility is important to the safety and security of both the security personnel, civil personnel and inmates." *Id.* ¶ 16. The Movement Policy is maintained to direct the movement of inmates throughout the correctional facility, *id.,* and all inmates, including Plaintiff are required to adhere to the Movement Policy, *id.* ¶ 17, which does not change during the year. *Id.* ¶ 16. Because DOCCS security personnel are required to enforce the Movement Policy, where two call-outs would occur simultaneously or overlap, an inmate, including Plaintiff, is required to decide which of the programs he wishes to attend. *Id.* ¶¶ 17–19. Greis further maintains that there are two library call-outs each day, with only the evening law library call-out coinciding with Ramadan, such that Plaintiff could have attended the afternoon law library call-out which would not have interfered with also attending the Ramadan services call-out. *Id.* Plaintiff, who has not responded in opposition to summary judgment, does not argue otherwise.

**\*9** Greis's assertions, unchallenged by Plaintiff, establish that Collins's Movement Policy has a "valid, rational connection to a legitimate governmental objective," for which the corrections officers have no alternative means of ensuring. *Holland,* 758 F.3d at 222–23. Moreover, although the Movement Policy does prevent Plaintiff from attending on the same day during Ramadan both the evening law library call-out as well as the Ramadan call-out, Plaintiff can attend both the afternoon law library call-out and the Ramadan call-out on the same day. *Id.* As discussed, Discussion, *supra,* at 14, Plaintiff does not claim that his inability to attend the evening law library call-out resulting in missing any deadlines in any of his then pending litigation, or resulted in the dismissal of any such action.

On this record, Defendants' enforcement of the Movement Policy, despite rendering it impossible for Plaintiff to attend both the evening law library call-out and Ramadan services call-out, is related to a valid penological interest and poses little hardship on Plaintiff's free exercise of his religion or to Plaintiff's access to the courts. As such, summary judgment should be GRANTED insofar as Plaintiff challenges the Movement Policy.

### 3. Missed Meals

On August 23, 2009, after reporting to the madjid for Ramadan services at 5:30 P.M., Plaintiff then returned to his housing unit to sign-up for the evening law library call-out, subsequent to which Plaintiff's request to return to the masjid to attend further Ramadan services that evening was denied, and Plaintiff was required to return to his housing unit. Complaint ¶¶ 21–22. As such, although Plaintiff fasted from sunrise to sunset, the denial of permission to return for the remaining Ramadan services resulted in Plaintiff's not eating the evening Ramadan meal or receiving the sahor bag for the next morning's breakfast. *Id.* ¶ 23. Plaintiff thus missed two consecutive meals and did not again eat until the evening of August 24, 2009. *Id.* Plaintiff asserts the denial of the two meals constituted cruel and unusual punishment in violation of the Eighth Amendment. Complaint ¶¶ 31–33. Defendants argue in support of summary judgment that missing two meals is *de minimus* and does not arise to a constitutional violation. Defendants' Memorandum at 14.

The Eighth Amendment "require[s] that prisoners be served nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and wellbeing of the inmates who consume it." *Robles v.*

*Coughlin,* 725 F.2d 12, 15 (2d Cir.1983). "While no court has held that denial of food is a *per se* violation of a prisoner's Eighth Amendment rights, under certain circumstances a substantial deprivation ... may well be recognized as being of constitutional dimension." *Id.* (citations omitted). A substantial deprivation of food is one that is sufficient to create a serious danger to the inmate's health. *See, e.g., Beckford v. Portuondo,* 151 F.Supp.2d 204, 213 (N.D.N.Y.2001) (denying summary judgment of Eighth Amendment claim alleging deprivation of two of three meals per day for eight days); and *Moss v. Ward,* 450 F.Supp. 591, 596–97 (W.D.N.Y.1978) (holding denial of all food for four days as punishment for breaking a prison disciplinary rule violated Eighth Amendment). Significantly, courts within the Second Circuit have consistently held the deprivation of two meals is *de minimus* and, thus, insufficient to establish a substantial deprivation creating a serious danger to an inmate's health so as to support an Eighth Amendment claim. *See, e.g., Benjamin v. Kooi,* 2010 WL 985844, at * 11 (N.D.N.Y. Feb. 25, 2010) (missing two or three meals did not "deprive [plaintiff] of the minimal measures of necessities required for civilized living"), *report and recommendation adopted,* 2010 WL 985823 (N.D.N.Y. Mar. 17, 2010); *Waring v. Meachum,* 175 F.Supp.2d 230, 240–41 (D.Conn.2001) (holding no Eighth Amendment violation where inmates missed one or two meals in absence of any indication that future meals were also missed). Moreover, the undisputed facts establish that Plaintiff's missed meals, including the evening meal on August 23, 2009, and breakfast on August 24, 2009, can only be attributed to Plaintiff's attempt to attend two call-outs that were scheduled for the same time, in violation of the correctional facility's Movement Policy. *See Wray,* 490 F.3d at 193–94 (no § 1983 claim lies absent causal connection between defendant's action and plaintiff's injury).

**\*10** Accordingly, summary judgment on Plaintiff's Eighth Amendment claim that he missed two consecutive meals should be GRANTED.

## CONCLUSION

Based on the foregoing, Defendants' Motion (Doc. No. 41), should be GRANTED; the Clerk of the Court should be directed to close the file.

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

***Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.*** *Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Report and Recommendation to the Plaintiff and the attorneys for the Defendants.

SO ORDERED.

DATED: December 2, 2014.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 1015383

**End of Document**                                          © 2025 Thomson Reuters. No claim to original U.S. Government Works.